IN THE UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MICHAEL BOWLING,<br>a Resident of Arizona, | : | |
| Plaintiff, | : | C.A. No. 05-229S |
| v. | : | |
| HASBRO, INC.,<br>a Rhode Island Corporation, | : | |
| Defendant. | : | |

**PLAINTIFF'S OBJECTION TO HASBRO'S MOTION FOR LEAVE TO AMEND AFFIRMATIVE DEFENSES AND COUNTERCLAIMS**

Plaintiff Michael Bowling ("Bowling") hereby objects to Hasbro, Inc.'s Motion to Amend the Pleadings. As grounds for this Objection, Bowling relies on the Memorandum of Law filed herewith.

Michael Bowling,
By His Attorneys,

Date: April 13, 2006

Craig M. Scott, Esq. (#4237)
Christine K. Bush, Esq. (#5587)
DUFFY SWEENEY & SCOTT, LTD
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700
(401) 455-0701 (Facsimile)

Douglas J. Williams, MN (*pro hac vice*)
Thomas J. Leach, MN (*pro hac vice*)
MERCHANT & GOULD, P.C.
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(612) 332-5300
(612) 332-9081 (Facsimile)

**CERTIFICATION**

TO:

Todd D. White, Esq.
Jeffrey K. Techentin, Esq.
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345

David K. S. Cornwell, Esq.
Tracey-Gene G. Durkin, Esq.
Sterne Kessler Goldstein & Fox P.L.L.C.
1100 New York Avenue N.W.
Washington, DC 20005

I hereby certify that I caused a true copy of the within *Plaintiff Bowling's Objection to Motion to Amend* to be served via First Class Mail to the above named counsel of record on the 13 day of April, 2005.

Sharon Benson

H:\Clients\Bowling\Pleadings\Obj Hasbro's Motion To Amend.doc

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

MICHAEL BOWLING, :
a Resident of Arizona, :
:
Plaintiff, : C.A. No. 05-229S
:
v. :
:
HASBRO, INC., :
a Rhode Island Corporation, :
:
Defendant. :

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OBJECTION TO HASBRO'S MOTION FOR LEAVE TO AMEND AFFIRMATIVE DEFENSES AND COUNTERCLAIMS**

Hasbro, Inc.'s ("Hasbro") motion to amend the pleadings should be denied because its amendments are futile and prejudicial. The basis for Hasbro's proposed amended pleadings is Hasbro's allegation that Mr. Lizarraga ("Lizarraga") is a joint inventor of the '197 patent. Essentially, Hasbro alleges that Lizarraga—not Michael Bowling—conceived of the die being symmetrical and having facets of equal surface area so the die would generate random numbers.

Lizarraga, however, does not claim he is an inventor. Lizarraga is a professional draftsman whom Michael Bowling ("Bowling") hired to prepare formal drawings for his patent application almost nine years ago. Hasbro recently contacted Lizarraga, suggested that he might be a joint inventor, and paid him $10,000.00 for whatever "rights" he might have in the '197 patent. In consideration for the $10,000.00, Lizarraga agreed to cooperate in Hasbro's defense of this litigation.

Now, Hasbro's proposed amended pleadings allege that (1) Lizarraga is a joint inventor of the '197 patent; (2) Bowling committed fraud and inequitable conduct by failing to disclose

Lizarraga as a joint inventor to the Patent Office; (3) the '197 patent is invalid for failing to name Lizarraga as joint inventor; and (4) Hasbro has a complete defense to its willful infringement because it purchased Lizarraga's "rights" in the '197 patent.

Hasbro's motion should be denied because Hasbro has not pled any facts that, if assumed true by this Court, could establish that Lizarraga is a joint inventor. It is black letter law that an alleged inventor's testimony, without corroboration, is insufficient as a matter of law to prove he is a joint inventor of an issued patent. After the Court allowed it additional time for discovery on this issue, Hasbro still pled no facts that could corroborate its claim that Lizarraga is a joint inventor. Because all of Hasbro's proposed amendments are based on its meritless claim that Lizarraga is a joint inventor, they are all futile. Allowing Hasbro's futile claims into this case will waste the Court's resources, drive up costs, and cause delay and prejudice to Bowling by forcing him to address this issue on summary judgment.

## RELEVANT FACTS

### A. Procedural Background

On October 20, 2005, Bowling disclosed Lizarraga as the draftsman who prepared the formal drawings for his patent application in response to Hasbro's First Set of Interrogatories. Leach Decl.[1] Ex. A. Hasbro did not contact Lizarraga until January 18, 2006, after discovering that its original fraud/inequitable conduct claim was meritless. Leach Decl. Ex. B; Hasbro's Brief at 2. Now Hasbro attempts to replace its original fraud/inequitable conduct claim with a new fraud/inequitable conduct claim.[2] Hasbro's Brief, Ex. F (Hasbro's relined Amended Answer and Counterclaims) at ¶¶ 9-17.

---

[1] The Declaration of Thomas Leach, hereinafter "Leach Decl.," is filed herewith as Exhibit 1.

[2] Claims of inequitable conduct are heavily disfavored—"an absolute plague". *See Burlington Indus., Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988) ("the habit of charging inequitable conduct in almost every major patent case has become an absolute plague."). Hasbro's amended pleadings again accuse Bowling of fraud and

Despite negotiating and exchanging correspondence with Lizarraga since January 18, 2006, Hasbro did not disclose its contentions concerning Lizarraga or produce any of these documents (which Bowling's discovery requests cover) until March 2, 2006—a week *after* Bowling served its expert reports on Hasbro. Leach Decl. Ex. C.

On March 3, 2006, Hasbro wrote this Court requesting a stay based on "recently" discovered information concerning Lizarraga. Leach Decl. Ex. D. The Court allowed Hasbro a 30 day extension to take discovery on this issue and to serve its expert reports on Bowling. Hasbro deposed Bowling, Lizarraga, Lizarraga's wife Susan, and Julie Daulton, the attorney who prosecuted Bowling's patent application. Fact discovery closes on April 20, 2006.

**B. Background Facts**

Bowling, an engineer by education, has a passion for game playing and designing dice. Bowling Decl.[3] ¶¶ 2-4. He has been designing dice for 20 years. Bowling Decl. ¶ 4. In designing dice, Bowling draws on his engineering background and specifically his study of mathematics and physics. *Id.* Bowling has eight patents in which he is named as the sole inventor. *Id.* at ¶ 5.

In 1997 Bowling invented a new crystal shaped die that was not only aesthetically appealing, but also functional. Bowling Decl. ¶ 6. Aside from looking unique, Bowling's innovative die design allows for multiple facets that are large enough to legibly display indicia, such as numbers or dots. *Id.* Bowling's design accomplishes this by arranging the extension

inequitable conduct despite having no facts that Bowling believed that Lizarraga was a joint inventor and intended to deceive the Patent Office by concealing him. To the contrary, Bowling states his is the sole inventor of the '197 patent and adamantly denies that Lizarraga contributed anything to his die design. Bowling Decl. at ¶ 1. Hasbro's inequitable conduct claim is futile and should not be allowed in this case. *Warner-Lambert Co. v. Teva Pharms. USA*, 289 F.Supp. 2d 515, 545 (Fed. Cir. 2003) (holding motion for leave to amend answer to add inequitable conduct defense futile because discovery had been completed and absolutely no evidence pointed to an intent to deceive).

[3] The Declaration of Michael Bowling, hereinafter "Bowling Decl.," is filed herewith as Exhibit 2.

member facets into opposing triangles. *Id.* Bowling's patented die design is depicted below along with a picture of a die he sells under the patent:




('197 Patent Fig. 1.)




(Bowling's Commercial Product)

Bowling believed that this new crystal shaped die would appeal to other gamers, like him, looking for something different from the standard cubical dice.

To protect his idea, Bowling decided to file for a United States Patent on his invention. Bowling Decl. ¶ 7. Bowling contacted Lizarraga, a professional draftsman, to prepare formal mechanical drawings of his invention for his patent application. *Id.* Lizarraga's training consists of a technical degree in drafting. Leach Decl. Ex. E at 88:19-89:1; 9:16-20 (Albert Lizarraga Deposition Transcript). Lizarraga does not have an engineering degree. *Id.* at 88:19-21. He has no experience designing dice. *Id.* at 89:2-7. In fact, Lizarraga has been doing the same type of drafting work he did for Bowling for years and has *never* been named as an inventor on any patent. *Id.* at 71:5-72:11; 6:9-9:25.

Lizarraga came to Bowling's home and met with both Bowling and Bowling's wife, Elizabeth. Bowling Decl. ¶ 8. At that first meeting, Bowling provided Lizarraga with a few

sketches of his invention and explained his invention in detail to Lizarraga. *Id.* One of the sketches Bowling provided to Lizarraga looked like the following sketch:



*Id.* Bowling explained that the invention was a die to generate random numbers for game playing. *Id*; Leach Decl. Ex. E at 69:11-22. Bowling explained to Lizarraga that the die had to be symmetrical to generate random numbers. Bowling Decl. ¶ 8. Bowling explained to Lizarraga that the drawings were for a patent application Bowling was filing on his die invention and that he was going to start a business selling these dice. *Id.*

Lizarraga used Bowling's sketches and his explanation to produce formal mechanical drawings of Bowling's invention. *Id.* ¶ 9. When Lizarraga showed the formal drawings to Bowling, Bowling was pleased because they were just as he explained his invention to Lizarraga. Bowling Decl. ¶ 9; Leach Decl. Ex. F at 129:2-19; 189:19-21 (Michael Bowling Deposition Transcript); Leach Decl. Ex. E at 24:18-25:16. Bowling used the formal drawings in his patent application. An example of the formal drawings Lizarraga provided to Bowling is below:



Bowling Decl. ¶ 9.

At that time, despite being aware of Bowling's plans to file a patent application, Lizarraga never claimed that he invented the shape contained in the drawings or contributed in any way to Bowling's invention. *Id.* ¶ 10. Instead, Bowling paid Lizarraga for the drafting work

and did not hear from him for almost nine years. *Id.* When Lizarraga was first shown the '197 patent, he did not react as if *his* idea had been taken, but thought it was cool that drawings he prepared were in a patent. Leach Ex. E. at 65:12-22.

**C. Hasbro's Counsel Suggested That Lizarraga Was An Inventor and Paid Him $10,000.00 to assign "whatever rights" Lizarraga Has In The '197 Patent and to Cooperate In Hasbro's Defense**

Hasbro's counsel contacted Lizarraga, suggested to him that he may have rights in the '197 patent, and offered to buy whatever "rights" he might have. Leach Decl. Ex. E at 75:17-23; 76:4-9; 77:21-78:9. Lizarraga never contacted Bowling regarding this matter. Bowling Decl. ¶ 10. Rather Lizarraga told Hasbro he was willing to sell Hasbro whatever "rights" he had, provided Hasbro would indemnify him for any claims Bowling may bring against him. Leach Decl. Ex. G. Hasbro paid Lizarraga $10,000.00 for "whatever rights" he had in the '197 patent and to cooperate in Hasbro's defense of this litigation. Leach Decl. Ex. E at 82:20-83:6; Leach Decl. Ex. C.

**D. Lizarraga Does Not Claim To Be An Inventor**

During Lizarraga's deposition it became clear that Hasbro—not Lizarraga—claimed he was a joint inventor of the '197 patent:

Mr. Leach: And how did [money] come up? Did Mr. Techentin say Hasbro may be willing to pay you something?

Mr. Lizarraga: Just the fact that if it was found that I had any rights, that you know, if I was interested in—if it was defined that I had any rights, would I be willing to give them to Hasbro. That's kind of how [money] came up, and I am like, sure. But we would talk about it depending on the money and the conditions of the contract and all that. **I wanted to make sure that nothing defined that I was, that I was saying that I was the inventor.**

Mr. Leach: You wanted to make sure what?

Mr. Lizarraga: **I wanted to make sure that nothing defined that I was stating that I was part inventor.**

Leach Decl. Ex. E at 77:21-78:9 (emphasis added).

**E. Lizarraga's Recollection Is Not Firm**

What was also apparent from the deposition was that Lizarraga's recollection of what Bowling directed him to draw is, at best, vague:

Mr. Techentin: What information did [Bowling] provide you about the dice that he wanted drawings for?

Mr. Lizarraga: As far as I recall, it was kind of like a hand sketch, you know, white piece of paper, and it was like a sketch of a, like a crystal shard, more of a natural crystal shard. And I think the only other information that I recall is maybe an overall length and perhaps the diameter.

Mr. Techentin: What do you mean by crystal shard?

Mr. Lizarraga: [Bowling] was interested in getting some dice that looked kind of like crystals.

Mr. Techentin: Other than telling you that he wanted a die that looked like a crystal and showing you a drawing, did he provide you with any other information at that time?

Mr. Lizarraga: Not too much that I recall. . . .

Mr. Techentin: Do you recall what [the sketch] looked like?

Mr. Lizarraga: Vaguely. I recall it being kind of like on like a white piece of paper, not grade paper or anything, and it was just kind of a, sort of a three dimensional with a lot of different facets and sides.

Mr. Techentin: **Would it be possible for you to draw what you recall about that drawing**?

Mr. Lizarraga: **Probably not. I don't think it would –it was nine years ago. It was a long time ago.**

*Id.* at 12:19-14:17 (emphasis added).

Hasbro argues that Lizarraga recalls that Bowling's design was more of a "natural crystal" shape, and that Lizarraga came up with the idea of making the die symmetrical and the facets of equal surface areas so the die would produce random numbers. Hasbro's Brief at 2-3. Essentially, Hasbro asks this Court to believe that Bowling, an engineer with course work in mathematics and physics and years of experience designing dice, did not know that the die had to be symmetrical to generate random numbers. Moreover, despite testifying that he believes it was his idea to make the facets symmetrical and of equal surface area, Lizarraga testifies that he cannot remember whether Bowling directed him to make the end caps symmetrically equal:

| | |
|---|---|
| Mr. Techentin: | Did the drawings that Mr. Bowling give you—gave you have end caps? |
| Mr. Lizarraga: | I believe it did. I just don't recall if they were completely equal or, you know, symmetrically equal. I don't recall that. Again, it was, to my recollection actually looks like a rough natural crystal. |

*Id.* at 31:5-11.

| | |
|---|---|
| Mr. Techentin: | Was it the case that Mr. Bowling's initial concept reflected identically shaped surface areas on the end caps? |
| Mr. Lizarraga: | **I do not recall whether they did or did not**. It was a sketch. On the end caps, it's difficult to say. |

*Id.* at 52:14-20 (emphasis added). After admitting that he cannot remember whether Bowling instructed him to make the end caps symmetrically equal, Lizarraga admitted that if the end caps are symmetrically equal, the extension member facets would be as well:

| | |
|---|---|
| Mr. Lizarraga: | In order to make that dice geometrically equal, they would have to be the same size, same areas, same angles. And the end caps pretty much define the extension facets. |

*Id.* at 57:13-16.

Lizarraga also stated that surface area was not a design consideration on his part when he drew the dice:

Lizarraga: The surface area, when I created the dice, were not a consideration in the design, only the angles and the dimensions of the segments. If all the angle are the same, it comes out that the surface area is the same, **but surface area were not a design consideration on my part**.

*Id.* at 60:18-23 (emphasis added).

### F. Most Importantly Lizarraga's Testimony Is Uncorroborated

Finally, Lizarraga testified that he has no drawings or other documents that corroborate his vague recollection that he might have contributed to the design of Bowling's invention. *Id.* at 75:10-16. The documents Lizarraga provided before the deposition to illustrate a natural crystal were all documents that he recently collected, and none was created contemporaneously with his work for Bowling in 1997. *Id.* at 32:11-35:10. Hasbro also attempted to corroborate Lizarraga's testimony by deposing Lizarraga's wife, Susan Lizarraga ("Susan"), but she was not at the initial meeting when Bowling disclosed his invention to Lizarraga. Leach Decl. Ex. H at 6:5-9 (Susan Lizarraga Deposition Transcript). Susan also testified that she had no involvement in Lizarraga's work for Bowling. *Id.* at 11:22-12:2. Hasbro even deposed the attorney who prosecuted Bowling's patent application that became the '197 patent, which provided no support for Hasbro's proposed amendments.

## ARGUMENT

The grant or denial of a motion to amend is within the discretion of the District Court, and the Court may deny leave to amend where the amendments cause undue prejudice to the opposing party, are brought in bad faith, or are futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Hasbro's motion to amend should be denied because its proposed amendments are futile and prejudicial. *See Glassman v. Computervision Corp.*, 90 F.3d 617, 628 (1st Cir. 1996) (affirming the denial of a motion to amend as futile where, after discovery on the issue, the factual allegations did not support the legal conclusion); *Warner-Lambert Co. v. Teva Pharms.*

*USA*, 298 F.Supp. 2d 515, 545 (Fed. Cir. 2003) (holding motion for leave to amend answer to add inequitable conduct defense futile because discovery had been completed and absolutely no evidence pointing to an intent to deceive).[4] In deciding whether Hasbro's amendments are futile, this Court must review the proposed amendment under a Motion to Dismiss standard. *Glassman*, 90 F.3d at 623. However, when the motion comes after discovery on the issue, such as in this case, courts "look more closely at the factual allegations to see if they support the legal conclusions pled." *Id.* at 628. Hasbro's amendments must contain factual allegations respecting each material element necessary to prove Lizarraga is a joint inventor of the '197 patent. *See id.* at 628. While the Court must take all well-pled facts as true, it should not credit Hasbro's bald assertions or legal conclusion. *Id.*

Hasbro has pled no facts that, if assumed true by this Court, could establish that Lizarraga is a joint inventor of the '197 patent. After discovery on this issue, Hasbro's sole basis for alleging that Lizarraga is a joint inventor is Lizarraga's uncorroborated testimony of his vague recollection of events that occurred almost nine years ago. Hasbro's Brief at pp. 1-3. Even if Lizarraga's testimony clearly stated that he is a joint inventor—which it does not—such testimony is insufficient as a matter of law to establish that he is joint inventor. And because all of Hasbro's amendments are based on its assertion that Lizarraga is a joint inventor, they are all futile.

An inventor named on an issued patent, such as Bowling, is presumed to be the true and only inventor. *Acromed Corp. v. Sofamord Danek Group, Inc.*, 253 F.3d 1371, 1379 (Fed. Cir. 2001); *Hess v. Advanced Cardiovascular Sys., Inc.*, 106 F.3d 976, 980 (Fed. Cir. 1997). To rebut

---

[4] Federal Circuit law governs because the permissibility of amendments to add substantive patent-law defenses, such as inequitable conduct and invalidity, to an answer "pertains to or is unique to patent law." *See Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1303 (Fed. Cir. 2001) (holding that Federal Circuit Law governs the permissibility of amendments to add invalidity defenses to an accused infringer's answer).

this presumption, Hasbro must present clear and convincing evidence that Lizarraga actually invented the claimed invention. *Acromed Corp., 253 F.3d 1379; Hess*, 106 F.3d at 979 (stating the "burden of showing misjoinder or nonjoinder of inventors is a heavy one and must be proved by clear and convincing evidence"). Clear and convincing evidence is described "as evidence which produces in the mind of the trier of fact an abiding conviction that the truth of a factual contention is highly probable." *Price v. Symsek*, 988 F.2d 1187, 1191 (Fed. Cir. 1993). Moreover, because conception is the touchstone of inventorship, a joint inventor must contribute in some significant manner to the conception of the invention. *Gemstar-TV Guide Int'l v. Starsight Telecast, Inc.*, 383 F.3d 1352, 1381 (Fed. Cir. 2004). An inventor, such as Bowling, may solicit the assistance of others when perfecting the invention without "losing" any patent rights. *Id; Hess*, 106 F.3d at 981.

To meet this heavy burden, an alleged joint inventor must produce evidence that corroborates his asserted significant contribution to the conception of the invention. *Acromed Corp.*, 253 F.3d at 1379. The case law is unequivocal that an alleged inventor's testimony—even if clear—respecting the facts surrounding a claim of inventorship, standing alone, cannot meet the clear and convincing standard. *Acromed Corp.*, 253 F.3d at 1379-81 (holding that an alleged inventor's testimony without corroboration is insufficient to meet the clear and convincing standard to prove that the alleged inventor was excluded as an inventor on the patent); *Gemstar*, 383 F.3d at 1382 (reversing a finding of unenforceability for failure to name an alleged inventor as a co-inventor because the alleged inventor's testimony was not corroborated); *Price*, 988 F.2d at 1194 (stating "the case law is unequivocal that an inventor's testimony respecting the facts surrounding a claim of derivation or priority of invention cannot, standing alone, rise to the level of clear and convincing proof."); *Juicy Whip, Inc. v. Orange Bang, Inc.*,

292 F.3d 728, 742-43 (Fed. Cir. 2002) (holding the oral testimony of six witnesses insufficient as a matter of law to meet the clear and convincing standard to invalidate a patent); *The Barbed Wire Patent*, 143 U.S. 275, 288-92 (1892) (holding the oral testimony from 24 witnesses insufficient to invalidate a patent). This heavy burden is required because, as here, where a patent has been outstanding for a considerable time and the patented invention has been successful, "there is a strong temptation for persons who consulted with the inventor and provided him with materials and advice, to reconstruct, so as to further their own position, the extent of their contribution to the conception of the invention." *Hess*, 106 F.3d at 980; see *also The Barbed Wire Patent*, 143 U.S. at 284-85.

In this case, Hasbro's proposed amendments are unsupported by any corroborating facts, despite having conducted discovery on the issue, that could support the proposed amendments. *See* Hasbro's Brief Ex. F. at ¶¶ 9-17. Instead, Hasbro's motion to amend relies solely on Lizarraga's uncorroborated oral testimony for its proposed amendments. Moreover, Lizarraga's testimony is not clear on the "inventorship" issue. First, Lizarraga refused to state he is a joint inventor of the '197 patent. Leach Decl. Ex. E at 77:21-78:9 ("[Lizarraga] wanted to make sure that nothing [in the assignment to Hasbro] defined that [he] was stating that [he] was part inventor."). Moreover, Lizarraga testified that he could not remember whether Bowling instructed him to make the end caps symmetrical and of equal surface areas. *Id.* at 31:5-11; 52:14-20. Lizarraga then testified that the end caps defined the extension member facets. *Id.* at 57:13-16. According to Lizarraga, Bowling may have instructed him to make the end caps symmetrical and of equal surface area and that would have determined the same of the die's extension member facets. Thus, Lizarraga's testimony shows that he cannot recall whether he conceived of the extension members and end cap facets having equal surface areas.

Indeed, Bowling adamantly denies that Lizarraga contributed in any way to his die design. Bowling Decl. at ¶ 1. Bowling conceived of and sketched the die disclosed and claimed in the '197 patent before ever contacting Lizarraga. *Id.* Lizarraga is not a joint inventor; and Hasbro has not pled any facts that could establish him as one.

## CONCLUSION

Hasbro's motion to amend should be denied because its proposed amendments are futile and prejudicial. Hasbro has not pled any facts that, if assumed true, could establish that Lizarraga is a joint inventor of the '197 patent. Because all of Hasbro's amended pleadings depend on establishing Lizarraga as a joint inventor they are futile. Allowing Hasbro's futile claims into this case will only waste this Court resources, add delay and drive up costs by forcing Bowling to address the claims on summary judgment. For these reasons, Bowling respectfully requests that Hasbro's motion be denied.

Michael Bowling,
By His Attorneys,

Date: April 13, 2006

Craig M. Scott, Esq. (#4237)
Christine K. Bush, Esq. (#5587)
DUFFY SWEENEY & SCOTT, LTD
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700
(401) 455-0701 (Facsimile)

Douglas J. Williams, MN (*pro hac vice*)
Thomas J. Leach, MN (*pro hac vice*)
MERCHANT & GOULD, P.C.
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(612) 332-5300
(612) 332-9081 (Facsimile)

**CERTIFICATION**

TO:

Todd D. White, Esq.
Jeffrey K. Techentin, Esq.
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345

David K. S. Cornwell, Esq.
Tracey-Gene G. Durkin, Esq.
Sterne Kessler Goldstein & Fox P.L.L.C.
1100 New York Avenue N.W.
Washington, DC 20005

I hereby certify that I caused a true copy of the within *Memorandum in Support of Plaintiff Bowling's Objection to Motion to Amend* to be served via First Class Mail to the above named counsel of record on the 13 day of April, 2005.

Theresa Benson

H:\Clients\Bowling\Pleadings\Mem Opposition to Hasbro's Motion To Amend.doc