UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MICHAEL BOWLING, a Resident of Arizona, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 05-229 S |
| HASBRO, INC., a Rhode Island Corporation, | : | |
| Defendant. | : | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO AMEND AFFIRMATIVE DEFENSES AND COUNTERCLAIM**

Pursuant to Fed. R. Civ. P. Rule 15(a) and Local Rule (Civil) 15, Defendant/Plaintiff-in-Counterclaim Hasbro, Inc. ("Hasbro"), respectfully submits this Reply Memorandum of Law in support of its motion to amend its Answer and Counterclaim to assert (1) affirmative defenses, and (2) an amended claim for invalidity and/or unenforceability of patent no. 5,938,197 (the "'197 Patent"). The Plaintiff/Defendant-Counterclaim Michael Bowling ("Bowling") opposes the motion to amend on only one ground, futility. The motion is not futile and should therefore be granted in its entirety.

**FACTS**

As explained below, because this motion to amend was brought during the discovery period when no summary judgment motion had been brought, the question of whether the proposed amendments would be futile is determined by the standards governing motions to dismiss under Fed. R. Civ. P. Rule 12(b)(6). Accordingly, all facts alleged in the proposed amended answer and counterclaim are deemed to be true, and the sole question for this Court, at this point, is whether those facts are sufficient to state a claim for relief. The facts alleged in

Hasbro's counterclaim relevant to this motion are as follows (numerical references are to paragraphs in the proposed Amended Answer and Counterclaim) (emphasis added):

> 5. Plaintiff/Defendant-in-counterclaim Bowling claims to be the owner of United Patent No. 5,938,197 (the "'197 Patent").
>
> 6. Bowling has brought suit against Hasbro for alleged infringement of the '197 Patent.
>
> 7. An actual case or controversy exists between Hasbro and Bowling based upon Bowling having filed a complaint for patent infringement against Hasbro.
>
> 8. Hasbro has not infringed any valid claims of the '197 Patent.
>
> 9. Upon information and belief, the '197 Patent is invalid, null, void and/or unenforceable for failure to comply with the conditions and requirements for patentability specified in Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 102, 111, 115, and 116.
>
> 10. Specifically, upon information and belief, **the dice that are the subject matter of the '197 Patent were not conceived of and invented by Bowling, but were instead conceived of and invented by Albert Lizarraga ("Lizarraga"), a designer whom Bowling hired to create drawings of a crystal shaped die**.
>
> 11. Alternatively, upon information and belief, **Lizarraga and Bowling jointly conceived of and invented the dice that are the subject matter of the '197 Patent.**
>
> 12. Despite his full knowledge of Lizarraga's involvement in the conception of the dice that are the subject matter of the '197 Patent, **Bowling violated his duty of candor, good faith, and honesty owed to the United States Patent and Trademark Office ("PTO") by claiming to be the sole inventor of the dice.**
>
> 13. **With an intent to deceive and mislead, Bowling failed to disclose material information to the PTO relating to the true inventorship of the dice**. By doing so Bowling violated his duty of candor and good faith in dealing with the PTO as required by 37 CFR § 1.56.
>
> 14. Upon information and belief, **by claiming sole inventorship in himself and concealing the role of Lizarraga in the conception and invention of the material claimed in the**

> **'197 Patent, Bowling was able to obtain allowance of the claims of the '197 Patent and the issuance of the '197 Patent.**
>
> 15. For the foregoing reasons, the '197 Patent is unenforceable due to inequitable conduct and/or fraud, and/or invalid under 35 U.S.C. § 102.
>
> 16. Hasbro has been injured and damaged by Bowling's filing of a Complaint based on an invalid and enforceable patent which has not been infringed by Hasbro.
>
> 17. **By virtue of the assignment of rights by Albert Lizarraga to Hasbro, Hasbro is the owner or, in the alternative, a co-owner with Bowling of the '197 Patent within the meaning of 35 U.S.C. § 262.**

These allegations must be accepted as true for the purposes of this motion. These are not "bald assertions" or mere conclusions of law, but are properly-pled factual allegations that, notwithstanding Bowling's vociferous opposition, are supported by the testimony of Mr. Lizarraga, his wife, Bowling's attorney, and even Bowling himself. *See generally* Hasbro Mem. at 2-3; *see also* Deposition of Julie R. Daulton (attorney to Bowling) ("Daulton Dep.") at 18:1-15, 20:14-22:11 (**Exhibit A**) *and* Third Amended Privilege Log of Michael Bowling (**Exhibit B**).[1] Hasbro did not advance every fact that it believed supported the fact that Lizarraga is the inventor or a joint inventor of the dice at issue, nor does Hasbro believe either that it is required to do so or that the Court has any interest in reviewing the entire record relating to Lizarraga's

---

[1] Julie R. Daulton, Esq., is the attorney who prosecuted the '197 patent on Bowling's behalf. Ms. Daulton testified that "[i]t would have been typical that there would be some sort of record of invention or description from Mr. Bowling in the file," but that she did not recall receiving one from Bowling. Daulton Dep. at 17:20-25. No record of invention has been produced by Bowling in this case, and Ms. Daulton could not identify any such record on Bowling's privilege log. *Id.* at 18:1-15, 20:14-22:11, and Exhibit B thereto (reviewing Second Amended Privilege Log of Michael Bowling). Minutes before Ms. Daulton's deposition, Bowling's attorneys had produced a Third Amended Privilege Log (**Exhibit B** to this Memorandum), which deleted certain entries from the version of the privilege log that Ms. Daulton had reviewed, and contained more detailed descriptions of the withheld documents. None of those entries appears to correspond to any "record of invention" from Bowling. *See generally* **Exhibit B.**

She further testified that she had no recollection of having performed an "inventorship review" with Bowling to determine if, in fact, he claimed to be the sole inventor of the claimed invention (as would be her standard practice), and that she did not recall ever having spoken to or about Albert Lizarraga. Daulton Dep. at 49:6-9, 107:15-25.

involvement at this stage. Indeed, until Bowling filed a declaration in opposition to Hasbro's motion to amend, there was ***nothing*** in the record that contradicted – or was inconsistent with -- Lizarraga's testimony that he had contributed materially to the invention of the dice.

Notwithstanding the fact that this motion is to be determined with reference to a Rule 12(b)(6) standard, Bowling's opposition to the motion attempts to contest the validity of those allegations, or to cast doubt upon Hasbro's ability to prove such matters to the relevant evidentiary standard. *See* Bowling Memorandum at 3-9.[2] While the Court need not determine the ultimate facts at this juncture, it is important for the Court to understand that the facts relied upon by Bowling are, for the most part, either grossly misleading or flat wrong.

One example of Bowling's mischaracterization of the record appears on page 5 of his Memorandum. There, Bowling shows the Court two pictures of the dice at issue, one hand-drawn with a circled "3" next to it, and one mechanically-drawn and apparently taken from the patent. Bowling Mem. at 5. According to the Memorandum, in reliance on the freshly-minted Declaration of Michael Bowling – a Declaration that is directly contradictory to Bowling's earlier, sworn testimony – this hand-drawn sketch resembles "one of the sketches Bowling provided to Lizarraga." *Id.* Bowling then argues, with apparent reasonableness, that the mechanical drawings, which included one sketch substantially identical to the hand-drawn sketch, were just "formal mechanical drawings" reflecting Bowling's clearly-expressed idea for a die design. This entire story is, however, untrue.

---

[2] Bowling pays lipservice to the notion that futility is determined under a "Motion to Dismiss standard" (Bowling Mem. at 10), but improperly conflates his analysis of ***factual allegations*** and of ***record evidence*** supporting those allegations. Thus although Bowling recites the fact that "the Court must take all well-pled facts as true," he immediately proceeds to dispute the allegations by claiming they are "unsupported by corroborating facts" and that the testimony of Albert Lizarraga is "vague." Bowling never addresses the facts actually pled in Hasbro's proposed counterclaim, but instead argues the weight of evidence and advances a self-serving, conclusory declaration in an attempt to prove those allegations wrong. At the appropriate time, upon a full consideration of the facts, this Court will have occasion to draw conclusions about the issues implicated by Hasbro's amended pleading, but weighing the credibility of testimony has no place in a motion to dismiss or, as here, a motion to amend.

The hand-drawn sketch was not what Bowling had given Lizarraga; rather, it was a depiction of a die design that ***is based upon*** the conceptual drawings that Bowling testified that he ***actually*** gave to Lizarraga. The relevant excerpt from the Bowling deposition transcript – entirely absent from Bowling's Memorandum – places the drawing in the proper context. The drawing was one of three that Bowling drew at his deposition, reproduced immediately below:




The three drawings depicted, in sequence (1) a prototype die that Bowling testified he had conceived of years before he had the idea for the patented dice, (2) the "concept of opposing triangles" that is reflected in the patented dice, and (3) the completed die design that is now reflected in the '197 patent. Bowling volunteered drawing number one as background; drawing number two reflected what he had given Lizarraga, and drawing number three – the one included in Bowling's declaration and Memorandum – is a completed die design that Bowling testified unequivocally he did ***not*** give to Lizarraga.

The deposition transcript reflects this sequence clearly. Hasbro asked Bowling what he'd drawn when he went to Lizarraga (emphasis added):

Q. What did you sketch? What type of die?

A. **It wasn't a die type. It was just -- it was more the image of the opposing triangles.**

Q. Can you draw for me what you mean by that?

A. Yeah. See, what I had was this, right, and it would go around the page, so this may be a three, this might be four, right. But, I thought, why can't you take this same, right, and to simplify it, if you make it -- if you went here, this drives home the point of all of the room. Now you could do this.

But to make it to show how it would actually be laid out on the die, right, it might be more like this. This being here. This being part of, you know what I mean, there's another part that wraps around here that's like this, see, you know, the wraparound.

So what I did was I took this that had a small surface area, you can't hardly make a number legible to something that's doubled or more my size. Now I can draw a big number. Now I can apply this to a D20.

Q. Okay. Just so the record is clear, could you just put a number one next to the first figure that you drew there.

A. (Witness complies.)

Q. And that, if I'm correct, is the one that you were using to describe the prototype dice that we've looked at, correct?

A. Yes, correct.

Q. **And can you put a number two next to the next drawing?**

A. **(Witness complies.)**

Q. **And if I understand that correctly, that's the drawing that you were using to describe the concept of using opposing triangles, correct?**

A. **Yes.**

Q. And if you could put a number three next to the third drawing you did there.

A. (Witness complies.)

Q. That is your representation of more of the practical application of crystal die design; is that correct?

A. Mm-hmm.

Bowling Dep. at 83:5-84:24 (**Exhibit C**).

Contrary to Bowling's present claim, he did not give anything like the third drawing to Lizarraga, but rather an "image of the opposing triangles." Placing that drawing next to the completed mechanical drawing included in the patent provides an enormously different context for Lizarraga's testimony that he independently created the regular, symmetrical geometric shape that is embodied in the '197 patent:

FIG. 1





Another example of Bowling's manhandling of the facts of record is his assertion that Lizarraga's recollection of events is "at best, vague." Bowling Mem. at 7. Lizarraga's deposition transcript as a whole suggests that Lizarraga was both careful and precise in his response to questions, studiously avoiding speculation and stating clearly when the lapse of time had clouded his recollection of events. Thus his testimony reflects clearly what events he recalled with precision, and those as to which he had no distinct recollection. *See, e.g.*, Bowling Mem. at 8-9 (quoting Lizarraga Dep.). While Lizarraga was careful to explain that he couldn't faithfully reproduce Bowling's original sketch, he had earlier sent an e-mail to counsel for Hasbro attaching images that reflected the way in which "the sketch … [had] non equal sides or surface areas." One of those images is reproduced below:




Lizarraga Dep. (**Exhibit D**) at 34:19-35:9 and Exhibit 3 thereto; *see also* Declaration of Jeffrey Techentin in Support of Motion to Amend at Exhibit A. At his deposition, Lizarraga testified with certainty that (1) Bowling had requested that he design a die in the form of a natural crystal, which he understood to be an irregular polyhedral shape, (2) it was his idea to have identical surface areas on the extension member facets, (3) it was his idea to have identical shapes for each of the extension member facets, and (4) it was his idea to have consistent angles on the extension member sides. *See id.* at 24:9-27; 49:14-24; 60:6-12; 60:25-61:16.[3] Taken as whole, Lizarraga's testimony is clear and unambiguous that Bowling's notion for the dice was materially different from the actual concept for the dice that is reflected in the mechanical drawings prepared by Lizarraga, and which was ultimately claimed in the '197 patent.

---

[3] Bowling urges the Court to conclude that Lizarraga is not the inventor or a joint inventor based on Lizarraga's clear statement that, whatever his testimony might be, he did not wish to represent or warrant himself as such. *See* Bowling Mem. at 6-7. No such inference is warranted. Lizarraga's own feelings about whether he meets the legal standard for inventorship are completely irrelevant. More importantly, Lizarraga explained precisely what he meant by refusing to hold himself out as an inventor, testimony ignored by Bowling (**Exhibit C** at 78:10-17) (emphasis added):

> Q. So you don't believe you are part inventor?
>
> A. I'm not saying that. **I am saying I don't have the legal background to know what constitutes what is an inventor and what is not. So I didn't want to put myself in that position**, so... If somebody else says based on the facts that I'm part inventor, okay, but I am not making that call.

Bowling is also wrong to suggest that Lizarraga's testimony is uncorroborated. *See* Bowling Mem. at 9. Bowling writes off the testimony of Lizarraga's wife, Susan, on the grounds that she had not been "at the initial meeting when Bowling disclosed his invention to Lizarraga" and that she had "no involvement in Lizarraga's work for bowling." *Id.* However, Susan Lizarraga corroborates her husband's testimony in two key respects. First, she recalls that "he [Lizarraga] didn't feel like the dice were going to be really random if he were to design them as the information that he was given." Deposition of Susan Lizarraga (**Exhibit** E) at 7:6-22. Second, she also recalled that her husband had spent five to ten or more hours working on this project at home. *Id.* at 10:3-16. As Mr. Lizarraga explained in his deposition, his work at home was spent designing the dice and trying to work out the mathematics of a "natural crystal shape," as opposed to the drafting work, which he performed at his work computer. **Exhibit D** at 19:6-22; 28:19-29:20; 92:1-18.

Ms. Lizarraga isn't the only corroboration of Mr. Lizarraga's invention of the die shape, however. Corroboration can also be found in the technical drawings that Bowling submitted to his attorneys, and through them the United States Patent and Trademark Office. Those drawings are undeniable corroboration of that Mr. Lizarraga had, by the time the drawings were complete, fully conceptualized the die design now claimed in the '197 patent. Indeed, the existence of those drawings highlights a critical fact that Bowling, unsurprisingly, avoids: he has no corroboration of his own invention of the dice whatsoever. He has no drawings that pre-date Lizarraga's, no invention record, no prototypes, no notes, no friends or acquaintances who saw his idea. Nothing. Indeed, even if Bowling were to produce such a witness at this stage, his or her testimony would be highly suspect given Bowling's testimony that (1) he never shared details of his concept with anyone other than Lizarraga, and (2) he never drew a sketch of a die

before going to Lizarraga. In other words, Bowling himself has confirmed that there is no corroboration of his own inventorship. **Exhibit C** at 97:3-17; 98:2-5 (Q: "In the concept phase though, limit yourself there, before you filed your patent application, at that point had you ever sketched out a complete die?" A. "I don't believe so."); 115:17-116:3.

## ARGUMENT

### A. The Amendment Would Not Be Futile.

Bowling does not refute the basic proposition that Rule 15(a) of the Federal Rules of Civil Procedure provides that "leave [to amend] shall be freely given when justice so requires," but instead relies exclusively on an argument that the amendment would be futile because there is insufficient evidence, as a matter of law, to support the conclusion that Albert Lizarraga ("Lizarraga") is a joint inventor. To support this proposition, Bowling (1) wrongly asserts that there is no corroboration of Lizarraga's testimony that he materially contributed to the conception of the invention; (2) offers a self-serving declaration that he was the sole inventor; and (3) brazenly misstates his deposition testimony in this case to create the illusion that he had given a complete drawing of the die concept to Lizarraga before Lizarraga began his work.

Even if all of the facts asserted by Bowling in his opposition papers were true, which they are not, the amendment would not be futile. The mere fact that certain discovery related to Lizarraga's involvement has been taken does not entitle Bowling to have the Court review the limited record to weigh the evidence supporting the proposed amended claim, which is essentially what Bowling urges in this case. *Compare* Bowling Mem. at 11 (discussing application of clear and convincing evidentiary standard) *with Torres-Matos v. St. Lawrence Garment Co.*, 901 F.2d 1144, 1146-47 (1st Cir. 1990) (pendency of summary judgment motion triggers requirement that movant show substantial and convincing evidence in support of

proposed amended claim); *see also Watson v. Deaconess Waltham Hosp.*, 298 F.3d 102, 109 (1st Cir. 2002) ("If, however, leave to amend is not sought until after discovery has closed and a summary judgment motion has been docketed, the proposed amendment must be not only theoretically viable but also solidly grounded in the record...."). Where leave to amend is sought prior to the close of discovery and where there is no summary judgment motion pending, "the accuracy of the 'futility' label is gauged by reference to the liberal criteria of Federal Rule of Civil Procedure 12(b)(6)." *Hatch v. Dept. for Children, Youth, and Families*, 274 F.3d 12, 19 (1st Cir. 2001). That is precisely the status of this motion and therefore the motion for leave to amend should only be denied as futile if Bowling can prevail on the standards applicable under Fed. R. Civ. P. Rule 12(b)(6).[4] Bowling has not, and cannot, meet this standard.

**B. <u>Independent, Corroborating Evidence Supports Finding Lizarraga to Be The Sole Inventor.</u>**

The proposed amendments concern inventorship, which "'is a question of who actually invented the subject matter claimed in a patent.'" *Sewall v. Walters*, 21 F.3d 411, 417 (Fed. Cir. 1994). Bowling correctly notes that "conception is the touchstone of invention." Bowling Mem. at 11; *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1227-28 (Fed. Cir. 1994). "Conception" refers to the "completion of the mental part of invention." *Id.* The Federal Circuit

---

4 The cases cited and relied upon by Bowling do not stand for any different proposition. For example, *Glassman v. Computervision Corp.*, 90 F.3d 617 (1st Cir. 1996) (cited at page 9 of Bowling's Memorandum) merely provides that the allegations of the complaint, taken as true, must address "'each material element necessary to sustain recovery under some actionable legal theory.'" *Id.* at 628 (quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988).

The only other case cited by Bowling on this issue is *Warner-Lambert Co. v. Teva Pharmaceuticals USA*, 289 F. Supp. 2d. 515 (D.N.J. 2003) (erroneously cited by Bowling as 298 F. Supp. 2d 515 (Fed. Cir. 2003)). That decision – reversed in part by the Federal Circuit at 418 F.3d 1326 (Fed. Cir. 2005) – is entirely consistent with the First Circuit decisions, *supra*. The motion to amend was just one of seven motions considered by the New Jersey District Court at the same time, five of which were motions for summary judgment. 289 F. Supp. 2d at 519-20. Again, no summary judgment motions are pending in this case; there are no stipulated or undisputed facts upon which the Court could reasonably conclude the question of inventorship one way or another. The only aspect of the *Warner-Lambert* decision that might be informative of the present situation would be the Federal Circuit's uncritical observation that the lower court had ***granted*** a motion to amend an answer and to assert an affirmative defense based upon inequitable conduct that had been brought ***during the discovery period***. 418 F.3d at 1333-34.

describes conception as "'the formation in the mind of the inventor, of a definite and permanent idea of **the complete and operative invention**, as it is hereafter to be applied in practice.'" *Id.* at 1228 (quoting *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed. Cir. 1986) (emphasis added). Where a party (either a patent holder or anyone else) attempts to prove conception through oral testimony, the Federal Circuit requires corroborating evidence:

> Thus, the test for conception is whether the inventor had an idea that was definite and permanent enough that one skilled in the art could understand the invention; **the inventor must prove his conception by corroborating evidence, preferably by showing a contemporaneous disclosure**. An idea is definite and permanent when the inventor has a specific, settled idea, a particular solution to the problem at hand, not just a general goal or research plan he hopes to pursue.

*Id.* (emphasis added); *see also Chen v. Bouchard*, 347 F.3d 1299, 1309 (Fed. Cir. 2003) (noting that the corroboration rule "addresses the concern that a party claiming inventorship might be tempted to describe his actions in an unjustifiably self-serving manner in order to obtain a patent **or to maintain an existing patent**.") (emphasis added).

As noted above, there is no corroboration of Bowling's conception of the invention of the dice at issue, and Bowling does not even claim that at some contemporaneous time there would have been corroborating evidence of his conception. Bowling denies having told anyone of his invention (except for his recent Declaration, in which he claims he explained it in detail to Albert Lizarraga). He denies having created any prototype. He denies having even drawn a depiction of the die design itself. At most, according to Bowling himself, even if one were to go back in time to 1997, the only "corroboration" one would find that Bowling – and not Lizarraga – had "conceived of" the dice at issue would be a drawing that looked approximately like this:




Not even Bowling can seriously contend that such a drawing would corroborate his "definite and permanent idea of the complete and operative invention," to wit:

FIG. 1



*Burroughs Wellcome*, 40 F.3d at 1228.

By contrast, the record is clear and without contradiction that those same technical drawings were, in fact, created by Lizarraga. There can be no dispute but that the drawings themselves corroborate that the complete concept for the dice, as they were later to be made in practice, was fully formed in Lizarraga's mind. *Id.* His testimony is also corroborated by other information of record: Bowling's acceptance, without comment or change, of Lizarraga's first draft of the drawings, Bowling having paid Lizarraga for hours of design work performed at Lizarraga's home, Bowling's attorney having failed to evaluate Lizarraga's involvement in the development of the design for the dice, Susan Lizarraga's observation of her husband's work and her contemporary conversations with him about the nature of his efforts on Bowling's behalf.

Contrary to Bowling's self-serving Declaration and his broad allegation that "Hasbro's proposed amendments are unsupported by any corroborating facts" (Bowling Mem. at 12), the record contains a complete and definitive basis upon which this Court may consider the question of inventorship, and the evidence strongly supports the conclusion that Lizarraga was the sole

inventor of the dice, or at minimum a joint inventor with Bowling. In either event, the proposed amendments are warranted.

## CONCLUSION

Based on the foregoing, Hasbro respectfully submits that its motion to amend should be granted.

HASBRO, INC.
By its Attorneys,

Todd D. White (# 5943)
Jeffrey K. Techentin (#6651)
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
(401) 274-7200
Fax: (401) 751-0604/ 351-4607
Dated: March 27, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of March 2006, I caused a true copy of the within to be served on the following individuals by regular mail, postage prepaid:

Craig M. Scott, Esq.
Christine K. Bush, Esq.
Duffy & Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903

Of Counsel:

Thomas J. Leach, Esq.
Douglas J. Williams, Esq.
Law Firm of Merchant and Gould P.C.
3200 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402-2215

David K. S. Cornwell, Esq.
Sterne Kessler Goldstein Fox
1100 New York Avenue, NW
Washington, D.C. 20005

[signature]

*378783_1*