UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MICHAEL BOWLING, a Resident of Arizona, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 05-229 S |
| HASBRO, INC., a Rhode Island Corporation, | : | |
| Defendant. | : | |

**MOTION TO CORRECT INVENTORSHIP**

Pursuant to 35 U.S.C. § 256 and applicable Orders of this Court, Defendant/Plaintiff-in-Counterclaim Hasbro, Inc. ("Hasbro"), respectfully moves this Court to correct the inventorship of patent no. 5,938,197. Because inventorship presents a mixed question of fact and law, Hasbro respectfully submits that a limited evidentiary hearing is both necessary and appropriate for the Court's consideration of the issues presented. *See, e.g.*, *Perseptive Biosystems v. Pharmacia Biotech*, 225 F.3d 1315, 1318 (Fed. Cir. 2000). Hasbro anticipates that such a hearing would take approximately one-half of one day.

The grounds for this motion are set forth in the accompanying Memorandum of Law.

HASBRO, INC.
By its Attorneys,

Todd D. White (# 5943)
Jeffrey K. Techentin (#6651)
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
(401) 274-7200
Fax: (401) 751-0604/ 351-4607
Dated: March 27, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of May 2006, I caused a true copy of the within to be served on the following individuals by regular mail, postage prepaid:

Craig M. Scott, Esq.
Christine K. Bush, Esq.
Duffy & Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903

Of Counsel:

Thomas J. Leach, Esq.
Douglas J. Williams, Esq.
Law Firm of Merchant and Gould P.C.
3200 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402-2215

David K. S. Cornwell, Esq.
Sterne Kessler Goldstein Fox
1100 New York Avenue, NW
Washington, D.C. 20005

*383271_1*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MICHAEL BOWLING, a Resident of Arizona, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 05-229 S |
| HASBRO, INC., a Rhode Island Corporation, | : | |
| Defendant. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO CORRECT INVENTORSHIP**

Pursuant to 35 U.S.C. § 256 and applicable Orders of this Court, Defendant/Plaintiff-in-Counterclaim Hasbro, Inc. ("Hasbro"), respectfully submits this Memorandum of Law in support of its motion to correct the inventorship of patent no. 5,938,197 (the "'197 Patent"). Because, as explained below, the Plaintiff, Michael Bowling ("Bowling") is not the true, sole inventor of the subject matter of the '197 Patent, Albert Lizarraga should be declared the true inventor thereof or, in the alternative, Albert Lizarraga should be declared a co-inventor of the '197 Patent. Because inventorship presents a mixed question of fact and law, Hasbro respectfully submits that a limited evidentiary hearing is both necessary and appropriate for the Court's consideration of the issues presented. *See, e.g., Perseptive Biosystems v. Pharmacia Biotech*, 225 F.3d 1315, 1318 (Fed. Cir. 2000). Hasbro anticipates that such a hearing would take approximately one-half of one day.

At its heart, this case, the '197 Patent, and even this motion concern a particular geometric shape, and more particularly who conceived of that geometric shape. The patent is not for a process or a complex system, but for a playing die in a particular configuration. Bowling

claims it was his idea to make dice in that configuration, but that notion is belied by the facts that (1) he never drew any dice before hiring someone to them for him, (2) the person he hired was the first one ever to draw dice using that configuration, and (3) that person recalls that Bowling did not seek dice using that configuration, but in another, distinctly different form. At most, Bowling conceived of a component of the die design that is in the patent – the use of "opposing triangles" to create polyhedral dice. The actual shapes claimed by the patent, however, are the work product of Albert Lizarraga, and not Bowling. Because the patent covers those shapes and not the idea of "opposing triangles" generally, the patent should reflect Mr. Lizarraga as the true inventor.

## FACTS

The '197 Patent claims and describes particular geometrically-shaped playing dice. *See generally* **Exhibit A**. While the design of these dice shares certain features with previous dice – *e.g.*, displaying numbers or other indicia on the top surface after being rolled – the design was a departure from traditional dice in that they contained, in the words of Mr. Bowling's dice expert, "elongated triangles." *See* Kevin Cook Dep. (rough transcript) (**Exhibit B**) at 149:4-12. Bowling contends that he first had this idea in approximately August 1997. Michael Bowling Dep. (**Exhibit C**) at 80:20-81:9. Bowling explained his inventive process in the following words:

> It was sometime in '97. I'd say -- I want to say summer of '97 maybe, and I was driving in my car, and as I said, I remember the cross streets. I was in the intersection. I was at Speedway and Swan, that's an intersection in Tucson, and as I – I don't know how, but I was working on the thesis, and I was still amending that shape, and I simply had the thought -- in my mind, I saw this rectangle, and I said, this is a long rectangle, and all I need is -- you know, I number it here on one side of that rectangle. I put my number and look at all that extra space that I have here.

> And I said, it's a shame that I couldn't squeeze that extra space down into the -- and **as I thought that squeezing it down, I thought of the triangle**. All that surface area, and the base half -- the bottom half of the triangle, and that tapered top, and then it just **-- it hit me, opposing triangles, and it just fell out just like that**. And it was really exciting in the moment. So the first thing I did when I got pulled over, I got stopped somewhere, **I started drawing that, and then it just hit me that that's how it would work**.

**Exhibit C** at 80:22-81:21 (emphasis added). Bowling was clear, however, that what he was drawing was the "image of the opposing triangles," not a complete die. *Id.* at 83:5-7. This distinction is critical, because there is no evidence whatsoever, other than the presumptive validity of the '197 Patent itself, that Bowling had conceived of the application of the concept of the "opposing triangles" to form a complete playing die. But the '197 Patent describes and claims complete dice, not merely one component of those dice, and there is no evidence that anyone other than Albert Lizarraga actually invented the dice even if one were to credit Mr. Bowling's testimony in full.

Indeed, the '197 Patent is very specific with respect to the shape of the dice, and those specifics go far beyond mere application of the idea of "opposing triangles," or even the "elongated triangles" that Bowling's dice expert found to be innovative. The patent repeatedly notes, for example, that the facets of the "extension member" and the "end caps" of the dice are "**identically** shaped" and have "an **equal** surface area to one another" (that is, each of the extension member facets have equal surface areas, and each of the end caps have equal surface areas, although the two are different). *See*, *e.g.*, **Exhibit A** at Col. 1, Lines 34-36; Col. 3, Lines 50-53; and Col. 7, Lines 46-54 (emphasis added).

The dice are described in very precise terms in other contexts as well. In the detailed description of the preferred embodiments of the '197 Patent, the dice are described as being "constructed such that the center of mass of die **20** is in the precise center of symmetry of die

**20**." *Id.* at Col. 4, Lines 55-56. "Center of symmetry" is defined to mean "a point that is related to a geographical figure in such a way that for any point on the figure, there is another point on the figure such that a straight line joining the two points is bisected by the original point." *Id.* at Col. 4, Lines 56-60. Bowling claims, in the patent, that the "combination of the center of symmetry being the center and the equal surface areas of facets **32** provides for a fair playing die," which he defines as meaning that no given facet "is more likely to be rolled" than any other facet. *Id.* at Col. 4, Lines 60-65.

As can be seen from the drawing sheets in the patent (and as explicitly claimed in the patent), the dice are comprised of an equal number of extension member and end cap facets, with half of the end cap facets at each end of a given die. The specific surface areas of these facets cannot be discerned from the language of the patent, which allows for a wide range of surface areas. Claim 8, for example, claims 0.0089 – 0.89 square inches for the extension member facets and 0.0033 – 0.33 square inches for the end cap facets. *Id.* at Col. 8, lines 20-28. However, Claim 16 limits the **ratio** of the surface areas of the extension member facets and the end cap facets to approximately 2-3:1. That is, the surface area of an extension member facet on a given die will be approximately two to three times the surface area of an end cap facet on that same die. The relative size of the facets – and thus the restrictions in Claim 16 – is not a function of the basic geometry of these dice, but is a design consideration. In other words, it would be possible to create a die with an extension member and end caps, as described in Claim 1, in which the surface area of an end cap facet was actually larger than the surface area of the extension member; Claim 16 not only eliminates this possibility, but limits the end caps to a relative size approximating those depicted in the drawing sheets in the '197 Patent.

Other aspects of the patent are equally precise. Although the claims do not reflect

specific dimensions for the dice, the detailed description of the preferred embodiments of the patent do describe "typical" surface areas for certain of the dice. For example, for the six-sided die, shown in figures one through five of the patent, the surface area of the extension member facets is stated be "about 0.0089 to 0.89 sq. in., typically about 0.089 sq. in." **Exhibit A** at Col. 4, lines 66-67. This figure – stated with precision to the 1/1000th of a square inch – is obviously based on Lizarraga's undisputed involvement in the design of these dice. At least one version of Lizarraga's mechanical drawings included dimensions for the dice. *See* **Exhibit D**. The six-sided die is depicted in **Exhibit D** by the following two illustrations (neither drawing is depicted to scale):







Calculating the surface area of the extension member facet, one applies the formula ½(base * height), or 0.5 * (0.313 * 0.565), for a total of 0.0884, within six ten-thousandths of a square inch of the preferred, "typical" surface area. This resemblance is beyond coincidence, and consistent with the prosecuting attorney, Julie Daulton's explanation that the numbers included in the patent description were selected based upon whether they accurately depicted the embodiment that was being described, and that she may have drafted the description based upon her review of the drawings themselves. *See* Julie R. Daulton Dep. (**Exhibit E**) at 83:1 – 84:1.

Bowling freely admitted that although he had made drawings reflecting this idea, those drawings never approached the detail of the Lizarraga drawings that are included in the patent, and aspects of which have been copied into the description and the claims of the dice. Indeed,

Bowling admits that his own drawing(s) did not depict an actual die, but rather merely depicted "the image of the opposing triangles." It was that drawing, or those drawings, that he gave to Lizarraga, who "did [Bowling's] mechanical drawings for [him]." Bowling Dep. (**Exhibit C**) at 82:19-83:7. Bowling thus supplied a general idea of one feature of the dice, and Lizarraga, without further input from Bowling, proceeded to invent the dice that are the subject matter of the '197 Patent.

Lizarraga's testimony is clear that when Bowling first discussed the die design with him, Bowling had presented him with a concept for a die in the shape of a "natural" crystal shard, in the sense that the sides were asymmetrical and uneven. *See*, *e.g.*, Deposition of Albert Lizarraga at 12:19-13:1 (**Exhibit F**) (Bowling's depiction was "a sketch of a, like a crystal shard, more of a natural crystal shard."); *id.* at 20:6-14 (Bowling provided no guidance that die was to be symmetrical). After attempting to engineer a die in the natural crystal shape that Bowling had presented to him, Lizarraga abandoned the idea as impractical and designed a die that was symmetrical, with "perfect" sides. *Id.* at 23:14-24:8. After Lizarraga conceived of the symmetrical geometric shape for the dice, he proceeded to model and then draw the dice using a computer program called Pro-Engineer. *Id.* at 25:22-26:18. Lizarraga presented paper printouts of the drawings to Bowling. *Id.* Despite the substantial differences between the "natural" crystal shape initially presented by Bowling to Lizarraga, Bowling accepted the drawings without making or requesting any changes. *Id.* at 49:20-24 ("I believe that was my idea because I could not define a die the way the conceptual sketch looked; it looked like it had different sizes of facets. Therefore, I created each one identical. That is something I did."); *id.* at 27:13-17; Bowling Dep. (**Exhibit C**) at 189:16-18 ("I think what he did was he just generated some drawings based on my sketches, and they looked good to me, so I went with them."). Bowling

included Lizarraga's drawings in his patent application for the '197 Patent, and Lizarraga's drawings are now a part of the '197 Patent, albeit with certain numerical notations added for reference to language in the patent itself. *See* Lizarraga Dep. at 41:22-42:7 (with reference to drawings in '197 Patent, "They're my drawings, except for the numbers on the outside"). Bowling did not disclose Lizarraga's involvement to the U.S. Patent & Trademark Office or identify Lizarraga as a co-inventor of the subject matter of the '197 Patent. *See*, *e.g.*, **Exhibit A** at 1 (noting Michael Bowling as inventor).

Since the deposition of Lizarraga, Bowling has modified his earlier description of the information he provided to Lizarraga, claiming that he presented Lizarraga with a drawing of a complete die, and that he fully and completely explained the concept for the dice to Lizarraga. However, Bowling's new testimony in this regard is irreconcilable with his earlier deposition testimony. Moreover, even if his new testimony were 100% accurate and truthful, Bowling has not claimed to be the inventor of all aspects of the claims of the '197 Patent, nor does his testimony dispute the basic fact that Lizarraga materially contributed to the subject matter of various claims of the '197 Patent. Accordingly, Lizarraga should be substituted as the inventor of the patent, or at least added as a co-inventor.

## ARGUMENT

### A. Applicable Legal Standards.

The Federal Circuit has explained the rationale and standards for correcting inventorship on a patent in great detail. *See*, *e.g.*, *Trovan, Ltd. v. Sokymat SA, Irori*, 299 F.3d 1292 (2002), 1301 -1303 (Fed. Cir. 2002). Patents that do not reflect all of the true inventors of the patent are invalid. *Id.* (citing *Jamesbury Corp. v. United States*, 518 F.2d 1384, 1395 (Ct. Cl. 1975). Patents are, however, presumed valid, and there is therefore a presumption that the named

inventors on a patent are the true and only inventors. *Id.* Upon a showing that the patent does not name as inventors all of the true inventors, a court must either (1) declare the patent invalid, or (2) correct the patent to name the appropriate inventors. Such correction may be had, however, only where the original failure to name the true inventors was done "without deceptive intent on the part of the person erroneously left off the patent." *Id.* (citing 35 U.S.C. § 256).[1]

To determine inventorship, this Court must determine who conceived of the dice that are the subject of the patent. Conception is defined as "the 'formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice.'" *Stern v. Trustees of Columbia Univ.*, 434 F.3d 1375, 1378 (Fed. Cir. 2006) (contribution to the conception of a single claim of a patent sufficient for co-inventorship) (citing *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998) and quoting *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed. Cir. 1986)). Co-inventors need not "physically work together or at the same time,""make the same type or amount of contribution," or even "make a contribution to the subject matter of every claim of the patent." 35 U.S.C. § 116. Because '[c]onception is the touchstone of inventorship,' each joint inventor must generally contribute to the conception of the invention." *Ethicon*, 135 F.3d at 1460.

Because co-inventors need not "make a contribution to the subject matter of every claim of the patent," inventorship must be examined on a claim-by-claim basis. *See Ethicon*, 135 F.3d at 1460. The Court should correct inventorship upon a showing, by clear and convincing evidence and with corroboration, that the patent does not reflect all true inventors. *Price v. Symsek*, 988 F.2d 1187, 1194 (Fed. Cir. 1993). Sufficiency of the corroboration is evaluated under a "rule of reason" analysis. *Id.* at 1195. This standard requires that "[a]n evaluation of all

---

[1] "Although patent infringement and invalidity are separate and distinct issues, an invalid patent cannot give rise to liability for infringement." *Medtronic, Inc. V. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1583 (Fed. Cir. 1983).

pertinent evidence must be made so that a sound determination of the credibility of the [alleged] inventor's story may be reached." *Id.* (citing *Coleman v. Dines*, 754 F.2d 353, 360 (Fed. Cir. 1985)). Reliable corroborating evidence has been found in both contemporary documentary records, in circumstantial evidence regarding the inventive process, and in the testimony of third parties. *See, e.g.*, *Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344, 1350-51 (Fed. Cir. 2001); *Knorr v. Pearson*, 671 F.2d 1368, 1373 (CCPA 1982); *Price*, 988 F.2d at 1195-96.

### B. Clear And Convincing Evidence Shows That Lizarraga Invented The Dice in Question.

Mr. Lizarraga's involvement in the conception and invention of the die design claimed in the '197 Patent amounts to inventorship within the meaning of the relevant provisions of the Patent Act, specifically 35 U.S.C. §§ 102 and 256. In this case, Lizarraga conceived of – or at least contributed materially to – all of the claims of the patent. Essentially, the '197 Patent claims a die construction in which the die consists of an "extension member" consisting of several triangular facets arranged to form, roughly, a cylindrical object, with pyramidal "end caps" on each end of the extension member. *See generally* **Exhibit A**.

Each claim of the '197 Patent includes as an element of the claim that both the extension member of the die and the end caps consist of facets having identical shapes and equal surface areas.[2] Claims 1 and 17 of the '197 Patent contain this express language (*see* **Exhibit A** at 8-10), and each of the other claims are dependent either on Claim 1 or Claim 17 and therefore incorporate the elements involving identical shapes and surface areas. *See id.* The symmetrical regular geometric shape was conceived by Lizarraga and not by Bowling. *See*, *e.g.*, Lizarraga

[2] That is, each of the facets of each end cap has the same shape and the same surface area, and each of the facets of the extension member has the same properties, although the shape and surface area of each end cap facet is different from the shape and surface area of each extension member facet.

Dep. (**Exhibit F**) at 12:19-13:1 and 20:6-14. This precise symmetry is required by each and every claim of the '197 Patent. Because Lizarraga contributed materially to each of those claims, he is at least a co-inventor. Moreover, because those claims describe a "perfect" geometric shape as designed by Lizarraga, and not the "natural crystal" shape conceived of by Bowling, Lizarraga is the true inventor of the dice.

Separately, the fact that the patent is, in large part, a mere written description of the drawings created by Lizarraga reveals that Lizarraga – and not Bowling – conceived of at least one of the claims of the patent. Claim 16 claims a die construction wherein the ratio of the surface areas of each of the extension member facets to the surface areas of each of the end cap facets is approximately 2-3:1. **Exhibit A** at Col. 8, Lines 52-54. The basis for the range of from two to three is revealed in the detailed description of the preferred embodiments, in which it is stated that the drawing sheets show three dice with ratios of 2.7:1 (six-sided die), 2.3:1 (ten-sided die), and 2.06:1 (twenty-sided die). *Id.* at Col. 5, Lines 8-11, Col. 6, Lines 6-8, and Col. 7, Lines 3-4. As shown above, these ratios are merely the ratios for the embodiments selected and designed by Lizarraga. Had Mr. Lizarraga chosen a different height of the end cap relative to the length of the extension member, Claim 16 would have been different because the drawings would have reflected a different length. Bowling and Lizarraga agree that the height of the end caps was not a matter that Bowling had considered before asking Lizarraga to design the dice. *See* Bowling Dep. (**Exhibit C**) at 128:11-24; Lizarraga Dep. (**Exhibit F**) at 61:21-62:18.[3]

As explained in Hasbro's Reply Memorandum of Law in support of its motion to amend its counterclaim and affirmative defenses, Lizarraga's testimony is substantially corroborated by

[3] In fact, as Hasbro anticipates showing at the evidentiary hearing on this matter, the height of the end caps (and consequently the ratio of the surface areas of the extension member facets and the end cap facets) was determined by Mr. Lizarraga to be one-half the diameter of a virtual "barrel" that he used to "carve" the dice using a computer program. This was Mr. Lizarraga's solution, and one as to which Mr. Bowling provided no input.

(1) the testimony of his wife, who testified regarding Mr. Lizarraga's work on the design of the dice, (2) Bowling's testimony itself, which admits the paucity of information provided to Mr. Lizarraga and the fact that Lizarraga produced the first depictions of dice using the concept reflected in the '197 patent, (3) the testimony of Bowling's attorney, who admits the significant role of the drawings in the patent and the fact that she has no other evidence of Bowling's conception of the idea, and, most importantly, (4) the drawings of the dice themselves, which are actually included in the patent and which show, definitively, that Lizarraga conceived of the dice as reflected in each of the claims of the '197 Patent. This evidence is more than sufficient to show, clearly and convincingly, that Mr. Lizarraga materially contributed to the conception of the invention of the die construction claimed in the '197 Patent.

## CONCLUSION

Because the evidence clearly and convincingly shows that Lizarraga was either the true inventor or, at a minimum, a co-inventor of one or more claims of the '197 Patent, Hasbro respectfully asks that its Motion to Correct Inventorship be granted.

HASBRO, INC.
By its Attorneys,

Todd D. White (# 5943)
Jeffrey K. Techentin (#6651)
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
(401) 274-7200
Fax: (401) 751-0604/ 351-4607
Dated: March 27, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of May 2006, I caused a true copy of the within to be served on the following individuals by regular mail, postage prepaid:

Craig M. Scott, Esq.
Christine K. Bush, Esq.
Duffy & Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903

Of Counsel:

Thomas J. Leach, Esq.
Douglas J. Williams, Esq.
Law Firm of Merchant and Gould P.C.
3200 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402-2215

David K. S. Cornwell, Esq.
Sterne Kessler Goldstein Fox
1100 New York Avenue, NW
Washington, D.C. 20005

*383092_1*