UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MICHAEL BOWLING, a Resident of Arizona, Plaintiff, | : | |
| v. | : | C.A. No. 05-229 S |
| HASBRO, INC., a Rhode Island Corporation, Defendant. | : | |

## MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. Rule 56 and Local Rule (Civil) 56, Defendant/Plaintiff-in-Counterclaim Hasbro, Inc. ("Hasbro"), respectfully moves this Court for entry of partial summary judgment. As reflected in the accompanying Memorandum of Law and Statement of Undisputed Facts, plaintiff Michael Bowling (1) failed to plead compliance with the marking requirements of 35 U.S.C. § 287(a), and (2) actually failed to comply with those marking requirements, and therefore no damages may accrue prior to the uncontested date of actual notice to Hasbro, November 3, 1999. Notwithstanding the plaintiff's undeniable failure to so plead or mark, the plaintiff has taken the position that he is entitled to damages for alleged infringement from the date of the patent's issuance, August 17, 1999. Because the plaintiff cannot be entitled to damages from August 17 through November 2, 1999 as a matter of law, partial summary judgment with respect to the applicable damages period is warranted.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MICHAEL BOWLING, a Resident of Arizona, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 05-229 S |
| HASBRO, INC., a Rhode Island Corporation, | : | |
| Defendant. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. Rule 56 and Local Rule (Civil) 56, Defendant/Plaintiff-in-Counterclaim Hasbro, Inc. ("Hasbro"), submits this Memorandum of Law in support of its Motion for Partial Summary Judgment. Because the plaintiff Michael Bowling ("Bowling") (1) has failed to plead compliance with the marking requirements of 35 U.S.C. § 287(a), and (2) actually failed to comply with those marking requirements, no damages for any alleged infringement may accrue prior to the uncontested date of actual notice to Hasbro, November 3, 1999. Hasbro therefore seeks partial summary judgment with respect to the applicable damages period.

## I. Factual Background

Bowling was issued U.S. Patent No. 5,938,197 (the "'197 Patent") on August 17, 1999. **Undisputed Fact No. 1**. Prior to the issuance of the '197 Patent, Bowling had sold commercial embodiments of at least one of the dice later claimed in the '197 Patent, which Bowling describes as "crystal dice." **Undisputed Facts No. 2**. Upon issuance of the '197 Patent,

Bowling continued to sell crystal dice. **Undisputed Fact No. 3**. Beginning in 2000, Bowling began selling sets of seven different crystal dice in addition to selling quantities of single types (*e.g.*, ten-sided or six-sided) of crystal dice. **Undisputed Fact No. 4**.

Bowling has retained and proffered the testimony of a claimed expert in "dice and dice design," Kevin B. Cook, who freely concedes that it is possible to mark dice with a patent number. **Undisputed Fact Nos. 5 and 6**. He even acknowledged that at least one patented die is marked with the patent number. *Id.* Despite the fact that it was possible, Bowling did not mark the dice with the patent number even after he was issued the '197 Patent. **Undisputed Fact No. 7**. Rather, Bowling claims that he satisfied the patent marking statute after the issuance of the '197 Patent because (1) he created stickers with the patent number on them, (2) he sent the stickers to his customers with instructions that they place the stickers on display bins containing the crystal dice and, in the case of his distributors, send the stickers to the distributors' customers with instructions that they do the same, and (3) he only sold dice in bulk, packaged in "Zip-Lock" bags that contained one of the stickers, at least until December 1999. **Undisputed Fact No. 8**. With respect to gaining compliance from his customers, Bowling's cover letters with the stickers indicated that unless the customers countersigned the letter, indicating their agreement to abide by its terms, he would cease doing business with them. **Undisputed Fact No. 10**.

Bowling may well have created the stickers, but there is no reason to believe that his attempt to associate the stickers with his crystal dice had any effect. He continued to sell "crystal dice" to customers who failed to countersign the cover letters, and one of his larger distributors doesn't even recall seeing the stickers or even knowing that the dice were patented. **Undisputed Facts Nos. 11-13**. Moreover, Bowling's sworn interrogatory response, in which he claims that

during the "relevant" time period[1], he only sold in bags of 50 dice with a patent sticker in each of the bags, is belied by his own financial records, which plainly show that he was selling much smaller quantities than bags of 50 dice. **Undisputed Fact No. 17**. Bowling has never adduced any evidence that he associated any markings, whatsoever, with those sales. **Undisputed Fact No. 17**.

Furthermore, although Bowling has refused to state whether he marked his products after November 1999, the evidence clearly shows that he has not succeeded in marking all, substantially all, or perhaps any of his crystal dice. Hasbro's agent has purchased numerous dice and visited numerous hobby shops that carry Bowling's dice, and has never found a crystal die that is marked. None of the agent's direct-to-consumer purchases of the dice had any patent markings either on the dice or on the packaging. Only one of the several locations that Hasbro's agent visited, and which were identified on Bowling's own website as retailers for his dice, actually had crystal dice in a bin bearing a sticker with the '197 Patent number on it. One of the other locations, far from displaying patent information on the bin, simply had a label reading "Ugly Dice for Half Price 50 Cents." **Undisputed Fact Nos. 21-23**. Even the "cubes" of dice that delivered by Bowling's own company *during the pendency of this suit when marking was directly at issue*, do not have a sticker. *Id.* Bowling's self-serving deposition testimony, in

1 Bowling contends that the only period of relevance to his marking of dice was from August 17, 1999 (the date of issuance of the patent) through November 3, 1999 (the date on which he gave Hasbro actual notice of alleged infringement). *See* **Undisputed Fact No. 19**. Bowling's decision not to disclose whether he has failed to mark outside of that period is clearly engineered to avoid admitting that he has never systematically marked, either the dice or their packaging. For example, during his deposition, Bowling disclosed that he had distributed some 60,000 dice as a giveaway with Dragon Magazine. Hasbro has obtained one of those magazines with the free die enclosed, and there was, of course, no marking whatsoever associated with the die. **Undisputed Fact No. 20**. His failure to mark these 60,000 dice is fatal to any claim that he marked "substantially all" of his dice.

which he claims that he and his employees manually affix stickers, or verify that the cubes of dice have stickers, is inaccurate at best. *See* **Undisputed Fact No. 24**.

Bowling was aware of Hasbro's use of the "accused dice in its Monopoly Millennium Edition even prior to the issuance of the patent. **Undisputed Fact No. 25**. Apparently aware that his "efforts" at marking the dice were inadequate to constitute constructive notice, Bowling sent actual notice that he considered Hasbro's dice to infringe the '197 Patent to Hasbro on November 3, 1999. **Undisputed Fact No. 26**. This is punctuated by the fact that in his Complaint for patent infringement, Bowling did not plead compliance with the marking statute, 35 U.S.C. § 287(a). **Undisputed Fact No. 27**.

Bowling has never stated his damages or his damage calculations except by reference to the Expert Report on Damages of Neil N. Lapidus, CPA. **Undisputed Fact No. 28**. In that report, Mr. Lapidus opines that "the damages period begins to run from the date of the patent's issuance" and further opines that Bowling's damages include a reasonably royalty on all allegedly infringing dice sold by Hasbro after the issuance of the patent. *Id.*

## II. Argument

Partial summary judgment is appropriate because Bowling cannot prove notice to Hasbro prior to November 3, 1999. It is beyond dispute that a patentee is entitled to damages for infringement only upon showing that the infringer had notice of the patent in suit. Under the Patent Act, that notice can take two forms, actual or constructive. Constructive notice can only

be achieved through proper patent marking; actual notice requires an affirmative allegation of infringement by the patentee to the alleged infringer.[2]

The relevant dates are not in dispute. The patent issued on August 17, 1999. Hasbro did not receive actual notice until November 3, 1999. Bowling claims damages from August 17, 1999, but can only be entitled to such damages if he *pleads* and, at trial, *proves* constructive notice to Hasbro by virtue of marking sufficient to satisfy the marking statute of the Patent Act. Bowling has not plead marking, and therefore any claim for pre-actual notice damages fails as a matter of law. But even assuming Bowling had plead adequate marking, the undisputable facts of record show that he did not adequately mark the products, and therefore cannot prove such marking at trial. Summary judgment in this regard is therefore appropriate.

### A. Bowling Has Not Plead Marking And Summary Judgment Is Therefore Appropriate.

It is well-settled and beyond dispute that a patentee who seeks to recover damages for infringement prior to actual notice to the alleged infringer must (1) allege that he satisfied the marking statute (35 U.S.C. § 287(a)), and (2) prove that fact. *See Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996) (Plaintiff "had the burden of pleading and proving at trial that she complied with the statutory requirements."). *See also, e.g., Sessions v. Romadka*, 145 U.S. 29, 37 (1892) ("We submit that such a notice must be given in writing; also, that a complainant

---

2 Hasbro's subjective knowledge that the '197 Patent existed is irrelevant to notice (either constructive or actual) as a matter of law. "Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device." *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994); *see also Dunlap v. Schofield*, 152 U.S. 244, 247-48 (1894) (notice is an "affirmative act, and something to be done by [the patentee]"). In order to provide actual notice, the patentee must provide notice "of 'the infringement,' not merely notice of the patent's existence or ownership." *Amsted*, 24 F.3d at 187. In other words, actual notice requires the patentee to communicate to the alleged infringer "the identity of the patent and the activity that is believed to be an infringement, accompanied by a proposal to abate the infringement, whether by license or otherwise." *SRI Int'l. Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1470 (Fed. Cir. 1997). In this case, actual notice was not given to Hasbro until November 3, 1999, despite the fact that the Plaintiff knew of Hasbro's allegedly infringing sales even before the '197 Patent issued, nearly three months before. *See* **Undisputed Facts Nos. 24 and 25.**

who would rely upon it, in place of complying with the statute duty of marking his goods, should allege it and make satisfactory proof."), and *Sentry Protection Prods. v. Eagle Mfg.*, 400 F.3d 910, 918 (Fed. Cir. 2005) (discussing *Dunlap v. Schofield*, 152 U.S. 244, 248 (1984)). In *Sentry Protection Prods.*, the Federal Circuit explained that the rule, articulated in *Dunlap*, was essentially that a plaintiff must plead the equivalent of the defendant having a "knowledge of the patent and of his infringement []," and "notice to the public or to the defendant, from which such knowledge must necessarily be inferred." *Id.* The Federal Circuit concluded that because the plaintiff, in that case, had plead that the defendant's infringement, which it alleged took place prior to actual notice, had been "willful and with full knowledge of the [patents in suit]," the pleading was sufficient to allege constructive notice through marking. *Id.*

Here, the Plaintiff's pleading is precisely the opposite: the Complaint contains references *only* to actual notice, and makes no claim whatsoever that Hasbro had constructive notice. Thus the relevant portion of the Complaint reads, in full (emphasis added):

> 7. Hasbro, Inc. began selling its infringing die in its "Monopoly, Millennium" game but did not contact Bowling about his patent rights prior to these initial sales. In about September 1999, following Hasbro's introduction of its product containing the infringing die, Hasbro contacted Bowling to explore the possibility of using the patented die design. In response to Hasbro's September 1999 contact, *Bowling informed Hasbro of its infringement*. Following this initial correspondence, the parties have exchanged correspondence on several occasions without being able to resolve the dispute.
>
> [* * *]
>
> 13. Defendant Hasbro has manufactured, used, imported, offered for sale, and/or plans to sell board games that infringe United States Patent No. 5,938,197, or otherwise infringed or induced infringement.
>
> 14. Defendant Hasbro had *actual knowledge* of United States Patent No. 5,938,197, and its infringing activities *at least since*

> *Hasbro received notice from the Plaintiff* have been and continue to be willful and deliberate.

There has been no allegation that Hasbro had constructive knowledge, or that Hasbro is even liable for any infringement that predates the actual notice from Bowling. To the contrary, the Complaint only alleges that Hasbro is responsible for post-notice infringement. Under these circumstances, the Plaintiff has not plead constructive notice, and therefore cannot claim damages based on constructive notice. *Dunlap*, 152 U.S. at 248-49 (noting that where a plaintiff seeks enhanced damages based on willfulness, "[t]he reasons for holding the patentee to allege and prove either such knowledge, or else a notice to the public or to the defendant, from which such knowledge must necessarily be inferred, are even stronger, in a suit for such a penalty, than in a suit to recover ordinary damages only."). *See also Motorola, Inc. v. United States*, 729 F.2d 765, 770 (Fed. Cir. 1984) (citing, *inter alia*, *Horvath v. McCord Radiator & Manufacturing Co.*, 100 F.2d 326, 337 (6th Cir. 1938)). Summary judgment is appropriate to the extent the Plaintiff seeks damages for any infringement prior to the actual notice date of November 3, 1999.

**B. <u>Bowling Did Not Mark The Dice In Accord with 35 U.S.C. § 287(a) And Summary Judgment Is Therefore Appropriate.</u>**

Even if the Court were to construe the Complaint to have "pled" constructive notice, Bowling cannot prove compliance with the marking statute at trial, and therefore summary judgment limiting any damages to the post-actual notice period is warranted. In full, Section 287(a) of the Patent Act (35 U.S.C. § 287(a)) provides:

> Patentees, and persons making or selling any patented article for or under them, may give notice to the public that the same is patented, *either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice*. In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the

> infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice.

(Emphasis added). The language of the statute is plain and unambiguous: potential infringers are on constructive notice only if the patented article (in this case, the "crystal dice") bear the appropriate markings or, if that marking "can not be done" due to the nature of the patented article (*e.g.*, where the article is a liquid) by putting a label on the article or on its package. Bowling does not and cannot claim to have marked the dice. Without such marking, the public cannot be held to be on notice of the patent. His "dice expert" freely concedes that there is nothing about dice that precludes marking them (and acknowledges that at least some dice do, in fact, have patent markings). It is therefore irrelevant whether Bowling marked the packaging for the dice. Even if the Court were to conclude, however, that Bowling should for some reason be excused from marking the dice, his efforts at marking what he apparently considers to be the "packaging" were seriously delinquent and as a matter of law he cannot prove, as he must to rely on constructive notice to support a claim for damages, that he marked "all or substantially all" of his crystal dice.

Again, the burden is on the Plaintiff. Inadequate marking is not a defense; the plaintiff bears the burden of showing compliance with the requirements of Section 287(a) in order to be entitled to damages prior to the date of actual notice. *Motorola v. United States*, 729 F.2d 765, 770 (Fed. Cir. 1984). Strict compliance with the marking statute is required; this standard is both fair and equitable as compliance constitutes notice to the entire world of the protected nature of the goods so marked. *See T.C. Weygandt Co. v. Van Emden*, 40 F.2d 938 (S.D.N.Y. 1930). Moreover, a plaintiff like Bowling, who sold product prior to the issuance of the patent, must show when he ceased distributing unmarked product, and is only entitled to damages starting on the date of full compliance with the marking statute, which requires that the plaintiff consistently

mark substantially all of the patented products. *American Medical Systems v. Medical Eng'g Corp.*, 6 F.3d 1523, 1538 (Fed. Cir. 1993) (full compliance with the marking statute was not achieved until the patentee "consistently marked substantially all" of the patented products, and was no longer distributing unmarked products).[3]

In this case, Bowling cannot show compliance with the marking statute. He never marked the dice themselves, even though his own expert on "dice and dice design" admitts that they can be marked. *Compare* **Undisputed Fact No. 6** *with* 35 U.S.C. § 287(a) (excusing actual marking of the product only "when, from the character of the article, this can not be done"). Because the dice are fully capable of being marked, Bowling is not permitted under the marking statute to resort to a mark on the packaging. *See, e.g.*, *Creative Pioneer Prods. Corp. v. K Mart Corp.*, 5 U.S.P.Q.2d 1841, 1848 (S.D. Tex. 1987); *John L. Rie, Inc. v. Shelly Bros., Inc.*, 366 F. Supp. 84, 90-91 (E.D. Pa. 1973) (rejecting argument that "the devices in question were too small to clearly mark").[4] Bowling's utter failure to mark the dice themselves is fatal to any claim for damages prior to the date of actual notice.

Even assuming away Bowling's failure to mark the dice themselves, Bowling has not complied with the marking statute's alternative means of providing constructive notice, which is

---

[3] Again, Hasbro's subjective knowledge of the patent is irrelevant to the question of notice. *See Amsted Industries v. Buckeye Steel Castings*, 24 F.3d 178, 187 (Fed. Cir. 1994) ("The correct approach to determining notice under section 287 must focus on the action of the patentee, not the knowledge or understanding of the infringer."). Thus even where the alleged infringer is aware of the existence of the patent itself, or even of its terms, the plaintiff's claim for damages is entirely dependent on the plaintiff's actions, *i.e.*, whether they were sufficient to constitute constructive notice or actual notice to the alleged infringer.

[4] Even courts that have excused "strict" compliance with the statute would not permit alternate marking under the facts of this case. For example, one court has excused marking on the product in favor of a mark on the packaging because, among other reasons, the addition of a mark to the product itself would have necessitated an additional manufacturing step. *Rutherford v. Trim-Tex, Inc.*, 803 F. Supp. 158, 164 (N.D. Ill. 1992). The court did, however, note an express "caveat or limitation" to this approach: "Where the patented article has markings or printing on it, other than the appropriate patent marking, then the alternative form of patent marking on the package is *not sufficient compliance with the statute.*" *Id.* at 163. Bowling's "crystal dice," of course, bear numerous non-patent markings such as one or more numerals on various sides.

"by fixing to [the patented device], or to the package wherein one or more of them is contained, a label containing a [patent] notice." 35 U.S.C. § 287(a). Bowling has never claimed to have affixed a label either to the dice or to the packaging containing the dice. Rather, he only claims to have provided labels and to have requested that others place them on a display tub. *See* **Undisputed Facts Nos. 9-11**. This claimed scheme, even if true, does not satisfy the marking statute.

First, Bowling's inclusion of a label in a bag of dice is insufficient. The labels were neither affixed to the dice nor to the packaging. This is not a trivial distinction between "fixing" the labels and including them within the packaging. Because he did not fix the labels to the packaging, Bowling had no expectation that the labels would actually remain with the dice, which is the basic rationale permitting alternative marking of patented goods. *See, e.g.*, *Miller v. Daytona-Ottawa Corp.*, 291 F. Supp. 896, 903 (N.D. Ohio 1968) (noting that inconsistent marking defeats the rationale permitting an inference of notice to the public; holding that the plaintiff's failure to consistently mark defeated claim of constructive notice). And, in fact, the labels did not remain with the dice. As one of Bowling's distributors explained, Bowling's packaging, including the labels that might have been in the package, were simply discarded as soon as the dice were brought into the distributor's warehouse. **Undisputed Fact No. 14**. The marking statute's requirement that the labels be fixed to the item or the packaging itself is not onerous; Bowling could have packaged his dice individually and labeled the individual packages. Certainly cost would not have been prohibitive, as Bowling maintained a gross profit margin of at least approximately $0.32 per die. Hasbro was able to procure two "Accused Dice" *in a bag* for less than $0.12. *Compare* **Undisputed Fact No. 30** *with* **Undisputed Fact No. 31**. Bowling

simply elected not to mark the dice or to use any packaging that could be marked in compliance with the statute.

Second, Bowling's sworn interrogatory response, in which he explains his purported "compliance" with the marking statute, is demonstrably false. Bowling claims that "the patented dice were sold loose in bags of 50 pieces" and that "[e]ach bag included a sticker bearing the '197 patent number and instructions to place it on any display where the patented dice were sold." **Undisputed Fact No. 9**. Bowling may have sold bags of 50 dice, but his sales records reveal that he also sold dice in other, much smaller quantities. Even during the short three-month span identified as Bowling as "relevant" to his marking activities, the invoices produced reveal that Bowling was selling the patented dice in various quantities (10, 13, 21, 25, 50, and 100) and that his basic quantity for sales was ten, not 50. **Undisputed Fact No. 17**. Bowling's interrogatory response, issued before the invoices were produced to Hasbro, both (1) fails to account for his having shipped patented dice in these quantities, and (2) does not even claim that Bowling was packing quantities of 10, 13, or 21 dice in the same manner as his supposed packs of 50. There is simply no reason to credit Bowling's claim of marking.

The consequence of Bowling's failure to mark the packaging is both unsurprising and serious with respect to "constructive notice" issues. Bowling says he insisted that his customers comply with his marking scheme, but they did not. Bowling told his customers that he would discontinue selling to them if they didn't agree to the scheme, but he did not. Bowling's dice wound up on display at retailers and for sale on the internet without any patent markings.

The likely explanation for Bowling's indifference is that he knows full well that his dice have never been labeled in accord with the marking statute. He knew that in September 1999, even if he thought his original marking scheme was adequate, when he continued to do business

with firms that ignored his marking letter. He knew that in November 1999, when he chose to send Hasbro actual notice of its alleged infringement rather than relying on constructive notice. And he still knew that in May 2005, when he filed a complaint against Hasbro and chose not to allege compliance with the marking statute. Each of these actions by Bowling constitutes an admission that he did not, in fact, mark the dice in a manner that would allow him to collect damages for alleged infringement prior to actual notice.

## III. Conclusion

For the foregoing reasons, Hasbro respectfully requests that the Court enter partial summary judgment in its favor, limiting the Plaintiff's damages to those associated with infringement proved to have occurred after November 3, 1999.

HASBRO, INC.
By its Attorneys,

Todd D. White (# 5943)
Jeffrey K. Techentin (#6651)
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
(401) 274-7200
Fax: (401) 751-0604/ 351-4607
Dated: June 9, 2006

Of Counsel:

David K. S. Cornwell, Esq.
Tracy-Gene G. Durkin, Esq.
Sterne Kessler Goldstein Fox
1100 New York Avenue, NW
Washington, D.C. 20005

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of June 2006, I caused a true copy of the within to be served on the following individuals by regular mail, postage prepaid:

Craig M. Scott, Esq.
Christine K. Bush, Esq.
Duffy & Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903

Of Counsel:

Thomas J. Leach, Esq.
Douglas J. Williams, Esq.
Law Firm of Merchant and Gould P.C.
3200 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402-2215

David K. S. Cornwell, Esq.
Sterne Kessler Goldstein Fox
1100 New York Avenue, NW
Washington, D.C. 20005

*383497_1*