UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MICHAEL BOWLING, a Resident of Arizona, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 05-229 S |
| HASBRO, INC., a Rhode Island Corporation, | : | |
| Defendant. | : | |

**STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF HASBRO, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56 (Civil) of the Local Rules of this Court, Defendant/Plaintiff-in-Counterclaim Hasbro, Inc. ("Hasbro") hereby submits the following statement of undisputed facts in support of its motion for partial summary judgment:

**Parties**

1. Bowling was issued U.S. Patent No. 5,938,197 (the "'197 Patent") on August 17, 1999. (U.S. Patent No. 5,938,197, at 1 (B00211))

2. Prior to the issuance of the '197 Patent, Bowling, through his company Crystal Caste, had sold commercial embodiments of at least one of the dice later claimed in the '197 Patent, which Bowling describes as "crystal dice." (Deposition of Michael Bowling ("Bowling Dep.") at 80:1-3; 137:11-15; *see also* Invoices issued prior to August 17, 1999 (*e.g.*, B03128))

3. Upon issuance of the '197 Patent, Bowling continued to sell crystal dice. (*See* Invoices issued subsequent to August 17, 1999 (*e.g.*, B03226))

4. Beginning in approximately 2000, Bowling began selling sets of seven different crystal dice in addition to selling quantities of single types (*e.g.*, ten-sided or six-sided) of crystal

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MICHAEL BOWLING, a Resident of Arizona, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 05-229 S |
| HASBRO, INC., a Rhode Island Corporation, | : | |
| Defendant. | : | |

**STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF HASBRO, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56 (Civil) of the Local Rules of this Court, Defendant/Plaintiff-in-Counterclaim Hasbro, Inc. ("Hasbro") hereby submits the following statement of undisputed facts in support of its motion for partial summary judgment:

**Parties**

1. Bowling was issued U.S. Patent No. 5,938,197 (the "'197 Patent") on August 17, 1999. (U.S. Patent No. 5,938,197, at 1 (B00211))

2. Prior to the issuance of the '197 Patent, Bowling, through his company Crystal Caste, had sold commercial embodiments of at least one of the dice later claimed in the '197 Patent, which Bowling describes as "crystal dice." (Deposition of Michael Bowling ("Bowling Dep.") at 80:1-3; 137:11-15; *see also* Invoices issued prior to August 17, 1999 (*e.g.*, B03128))

3. Upon issuance of the '197 Patent, Bowling continued to sell crystal dice. (*See* Invoices issued subsequent to August 17, 1999 (*e.g.*, B03226))

4. Beginning in approximately 2000, Bowling began selling sets of seven different crystal dice in addition to selling quantities of single types (*e.g.*, ten-sided or six-sided) of crystal

dice. (Bowling Dep. at 152:10-21)

5. One of Bowling's has retained expert witnesses is Kevin B. Cook, who purports to be an expert in "dice and dice design," Kevin B. Cook. (Expert Report of Kevin B. Cook; Kevin B. Cook ("Cook Dep.") at 5:7-8)

6. Mr. Cook admitted that it is possible to mark dice with a patent number and that at least one patented die is marked with the corresponding patent number. (Cook Dep. at 56:18-58:3)

7. Bowling did not mark the dice with the patent number even after he was issued the '197 Patent. (*See* dice produced by Plaintiff (B01901); *see also* Response to Interrogatory No. 18)

8. Bowling claims that he satisfied the patent marking statute after the issuance of the '197 Patent because (1) he created stickers with the patent number on them, (2) he sent the stickers to his customers with instructions that they place the stickers on display bins containing the crystal dice and, in the case of his distributors, send the stickers to the distributors' customers with instructions that they do the same, and (3) he only sold dice in bulk, packaged in "Zip-Lock" bags that contained one of the stickers, at least until December 1999. (Bowling Dep. at 173:11-15; 203:14-213:8; Response to Interrogatory No. 21)

9. Bowling claims that the "patented dice were sold loose in bags of 50 pieces" and that "[e]ach bag included a sticker bearing the '197 patent number and instructions to place it on any display where the patented dice were sold." (Response to Interrogatory No. 21)

10. With respect to gaining compliance from his customers, Bowling's cover letters with the stickers indicated that unless the customers countersigned the letter, indicating their agreement to abide by its terms, he would cease doing business with them. (Bowling Dep. at

203:14-213:8; Patent Agreement Letters (B00695 – B00710))

11. Bowling continued to do business with customers who failed to countersign the cover letters, including selling his "crystal dice" to them. (*Compare* Patent Agreement Letters (B00695 – B00710) *with* later Invoices (*e.g.*, B03257, B03252, B03254, B03258))

12. Steen Jensen, worked as a purchaser for Berkeley Top Line North, one of Bowling's distributors prior to and after the issuance of the patent, and one that never countersigned Bowling's patent labeling agreement. (Deposition of Steen Jensen ("Jensen Dep.") at 10:19-11:4; Distributor Patent Agreement Letters (B00705 – B00710))

13. Steen Jensen has no recollection of ever seeing the stickers or even knowing that the dice were patented, despite the fact that he had detailed knowledge of Bowling's dice, their inventory at Berkeley Top Line North, and Berkeley Top Line North's fulfillment of orders for "crystal dice" to its own customers. (*E.g.*, Jensen Dep. at 23:5-25:2; 27:10-29:9)

14. The standard procedures at Berkeley Top Line North included disposing of all packaging sent by Bowling and holding the "crystal dice" in inventory in small tubs. (Jensen Dep. at 23:5-25:2)

15. Berkeley Top Line North's customers typically sold small quantities of "crystal dice" to their customers; in fact, Steen Jensen did not recall a single customer ordering a quantity of 50 or more of the "crystal dice." (Jensen Dep. at 25:20-26:11)

16. Berkeley Top Line North did not provide any notice of the patented nature of the dice to its customers. (Jensen Dep. at 30:13-31:3)

17. Bowling's sworn interrogatory response, in which he claims that during the "relevant" time period, he only sold in bags of 50 dice with a patent sticker in each of the bags, is not true. As reflected in Bowling's own own financial records, Bowling (through his company,

Crystal Caste) was selling quantities other than bags of 50 dice (10, 13, 21, 25, 50, and 100), and his basic unit of sale was ten dice, not 50. (*See* Invoices dated from August 17, 1999 through November 3, 1999 (B03226, B03227, B03230, B03242, B03253))

18. Bowling has never adduced any evidence that he associated any markings, whatsoever, with sales of dice in quantities less than 50. (*E.g.*, Bowling's Response to Interrogatory No. 21)

19. Bowling contends that the only period of relevance to his marking of dice was from August 17, 1999 (the date of issuance of the patent) through November 3, 1999 (the date on which he gave Hasbro actual notice of alleged infringement). (Bowling's Response to Interrogatory No. 21)

20. Bowling has never systematically marked either the dice or their packaging. For example, during his deposition, Bowling disclosed that he had distributed some 60,000 dice as a giveaway with Dragon Magazine. Hasbro has obtained one of those magazines with the free die enclosed, and there was, of course, no marking whatsoever associated with the die. (Bowling Dep. at 245:14-20, 252:6-18; Declaration of Irina Slavina at ¶ 9; Response to Interrogatory No. 18)

21. Hasbro's agent has purchased numerous dice and visited numerous hobby shops that carry Bowling's dice and has ordered Bowling's dice from various online retailers, and has never found a crystal die that is marked, nor has Bowling produced a single marked die. (*See* dice produced by Plaintiff (B01901); *see generally* Declaration of Irina Slavina)

22. None of the agent's direct-to-consumer purchases of the dice had any patent markings either on the dice or on the packaging. Only one of the several locations that Hasbro's agent visited, and which were identified on Bowling's own website as retailers for his dice,

actually had crystal dice in a bin bearing a sticker with the '197 Patent number on it. One of the other locations, far from displaying patent information on the bin, simply had a label reading "Ugly Dice for Half Price 50 Cents." (Declaration of Irina Slavina at ¶¶ 5-8)

23. Even the "cubes" of dice that delivered by Bowling's own company during the pendency of this suit when marking was directly at issue, do not have a sticker. (Declaration of Irina Slavina at ¶ 4)

24. Bowling's self-serving deposition testimony, in which he claims that he and his employees manually affix stickers, or verify that the cubes of dice have stickers, is inaccurate. (*Compare* Declaration of Irina Slavina *with* Bowling Dep. at 223:16-224:7)

25. Bowling was aware of Hasbro's use of the accused dice in its Monopoly Millennium Edition even prior to the issuance of the patent. (Deposition of Julie R. Daulton at 128:12-131:8)

26. Bowling sent actual notice that he considered Hasbro's dice to infringe the '197 Patent to Hasbro on November 3, 1999. (Letter from Merchant & Gould to Hasbro (HA000594 – HA000596))

27. In his Complaint for patent infringement, Bowling did not plead compliance with the marking statute, 35 U.S.C. § 287(a). (*See generally* Complaint)

28. Bowling has never stated his damages or his damage calculations except by reference to the Expert Report on Damages of Neil N. Lapidus, CPA. (Bowling's Rule 26(a)(1) Initial Disclosures, as amended; *see also* Bowling's Response to Interrogatory No. 11 *and* Expert Report of Neil N. Lapidus, CPA)

29. Mr. Lapidus opines that "the damages period begins to run from the date of the patent's issuance" and further opines that Bowling's damages include a reasonably royalty on all

allegedly infringing dice sold by Hasbro after the issuance of the patent. (Expert Report of Neil N. Lapidus, CPA at 4-5)

30. Hasbro purchased the accused dice for approximately $0.115 per pair, each pair individually bagged. (Purchase orders for accused dice (HA008120-HA008135))

31. In 1999, Bowling maintained a gross profit margin on his crystal dice of approximately $0.3215 per die, even after accounting for a 30% "distributor discount" off his wholesale prices. (*E.g.*, B03201)

HASBRO, INC.
By its Attorneys,

Todd D. White (# 5943)
Jeffrey K. Techentin (#6651)
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
(401) 274-7200
Fax: (401) 751-0604/ 351-4607
Dated: June 9, 2006

Of Counsel:

David K. S. Cornwell, Esq.
Tracy-Gene G. Durkin, Esq.
Sterne Kessler Goldstein Fox
1100 New York Avenue, NW
Washington, D.C. 20005

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of June 2006, I caused a true copy of the within to be served on the following individuals by regular mail, postage prepaid:

Craig M. Scott, Esq.
Christine K. Bush, Esq.
Duffy & Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903

Of Counsel:

Thomas J. Leach, Esq.
Douglas J. Williams, Esq.
Law Firm of Merchant and Gould P.C.
3200 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402-2215

David K. S. Cornwell, Esq.
Sterne Kessler Goldstein Fox
1100 New York Avenue, NW
Washington, D.C. 20005

Kathleen A. Young

*383933_1*