UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MICHAEL BOWLING, a Resident of Arizona, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 05-229 S |
| HASBRO, INC., a Rhode Island Corporation, | : | |
| Defendant. | : | |

**MOTION TO COMPEL DEPOSITION TESTIMONY AND FOR OTHER RELIEF**

Pursuant to Fed. R. Civ. P. Rule 37 and 28 U.S.C. § 1927, Defendant/Plaintiff-in-Counterclaim Hasbro, Inc. ("Hasbro"), respectfully moves this court to compel further deposition testimony of one expert witness retained and identified by the Plaintiff and for other associated relief. As explained in the accompanying Memorandum of law, because of the extraordinary nature of this situation, Hasbro respectfully requests (1) the right to re-depose the expert in Providence, Rhode Island at the Plaintiff's expense, (2) an award of expenses and fees associated with the deposition of the expert in Denver, Colorado, and (3) an inference as to the expert's response to one question posed by Hasbro but which he refused to answer.

**Rule 37 Certification**

Counsel for Hasbro hereby certifies that it has made a good faith attempt to obtain the requested discovery without the need for court intervention.

HASBRO, INC.
By its Attorneys,

______________________________
Todd D. White (# 5943)
Jeffrey K. Techentin (#6651)
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
(401) 274-7200
Fax: (401) 751-0604/ 351-4607
Dated: June 9, 2006

Of Counsel:

David K. S. Cornwell, Esq.
Tracy-Gene G. Durkin, Esq.
Sterne Kessler Goldstein Fox
1100 New York Avenue, NW
Washington, D.C. 20005

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of June 2006, I caused a true copy of the within to be served on the following individuals by regular mail, postage prepaid:

Craig M. Scott, Esq.
Christine K. Bush, Esq.
Duffy & Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903

Of Counsel:

Thomas J. Leach, Esq.
Douglas J. Williams, Esq.
Law Firm of Merchant and Gould P.C.
3200 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402-2215

David K. S. Cornwell, Esq.
Sterne Kessler Goldstein Fox
1100 New York Avenue, NW
Washington, D.C. 20005

*384236_1*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

FILED
JUN 0 9 2006
U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

MICHAEL BOWLING, a Resident of Arizona,

Plaintiff,

v.

HASBRO, INC., a Rhode Island Corporation,

Defendant.

C.A. No. 05-229 S

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL DEPOSITION TESTIMONY AND FOR OTHER RELIEF**

Pursuant to Fed. R. Civ. P. Rule 37 and 28 U.S.C. § 1927, Defendant/Plaintiff-in-Counterclaim Hasbro, Inc. ("Hasbro"), submits this Memorandum of Law in support of its Motion to Compel Deposition Testimony and for Other Relief. As explained below, Kevin Cook, the Plaintiff's expert in "dice and dice design," refused to answer questions properly placed before him during his deposition without substantial justification. Moreover, the conduct of Plaintiff's counsel during the deposition amounted to rank coaching of the witness and interference with the deposition. Such conduct would be offensive to the rules and practices of this Court under any circumstances, but in the context of an *expert deposition*, where Hasbro was inquiring about the witness's own words and opinions, counsel's speaking objections, instructions to the witness, and outright interference with Hasbro's right to cross examine the witness are beyond the pale. Worst of all, the conjunction of counsel's interference with the expert's apparent understanding that he could simply refuse to answer lawfully-posed questions has materially prejudiced Hasbro's ability to effectively cross examine the witness.

Because of the extraordinary nature of this situation, Hasbro respectfully submits that an appropriate order providing redress for this conduct would give Hasbro (1) the right to re-depose Mr. Cook in Providence, Rhode Island at the Plaintiff's expense, (2) an award of expenses and fees associated with the deposition of Mr. Cook in Denver, Colorado, and (3) an inference as to Mr. Cook's response to one question posed by Hasbro but which Mr. Cook refused to answer.

## I. **Factual Background**

On February 22, 2006, counsel for the Plaintiff served on Hasbro the expert report of Kevin B. Cook (a copy of the Cook Expert Report is attached hereto as **Exhibit A**). Mr. Cook purports to be an expert in dice and dice design. *See* Deposition of Kevin B. Cook ("Cook Dep.") (**Exhibit B**) at 5:7-8. According to his report, Mr. Cook was retained to opine as to whether the Hasbro dice at issue in this case infringe U.S. Patent No. 5,938,197 (the "'197 Patent"). **Exhibit A** at 2. Mr. Cook explained that he "expect[ed] to testify that Hasbro's accused dice infringe Claims 1-9 and 16-19 of the '197 patent literally and under the doctrine of equivalents." *Id.*

Mr. Cook's report contained numerous statements of opinion that reflected the application of his understanding of the facts to relevant legal principles. Thus Mr. Cook construed each of the claims one through nine and 16 through 19 of the '197 Patent, concluding (among other things) that the patent's reference to "equal surface areas" on facets of dice meant equal surface areas "without regard to any indented indicia" and that the patent's reference to the "facets" on the dice did not mean that the dice were actually comprised of facets (that is, flat surfaces like those on a gem). *See generally id.* at 7-13. Mr. Cook further opined that Hasbro's dice infringe under the doctrine of equivalents. *Id.* at 14-15. On that subject, he even claimed to have reviewed the prosecution history of the patent and to have "found nothing that would limit

the application of the doctrine of equivalents."[1] Mr. Cook even opined that the '197 Patent was valid because he was not aware of any prior art that met each and every element of any claims of the '197 Patent,[2] and that he had not seen any prior art that would render the patent invalid based on obviousness.[3] Mr. Cook's opinion also contained conclusions regarding the underlying factual disputes in this case. For example, Mr. Cook opined that it was "highly unlikely" that Hasbro independently developed the design of its dice. *Id.* at 5.

On May 22, 2006, Hasbro deposed Mr. Cook. During the deposition, Mr. Cook unilaterally refused, point blank, to answer certain questions posed. For example, Hasbro asked Mr. Cook: "Have you given any thought to shapes of dice that would be covered by the patent other than what's drawn in the patent, Mr. Bowling's commercial crystal dice, and Hasbro's dice?" **Exhibit B** at 156:8-12. Rather than saying yes or no (that is, whether he had considered any other shapes that might be covered by the patent), Mr. Cook responded: "I was asked to examine how the Hasbro accused die applies and infringes the elements of the '197 patent. That was all I was asked to do." *Id.* at 156:9-16. The following colloquy ensued:

> Q. Is that a no?
>
> A. That was all I was asked to do.
>
> Q. Is that a no?
>
> A. I examined the '197 patent Claims 1 through 9, 16 through 19, and how they apply to the Hasbro accused die.
>
> Q. Is there some reason you're refusing to answer my question?

---

[1] This statement is a clear reference to prosecution history estoppel, a doctrine under which a patentee may not avail itself of protection under the doctrine of equivalents based upon representations or amendments made during the course of prosecuting the patent application. *See, e.g., Norian Corp. v. Stryker Corp.*, 432 F.3d 1356, 1362-63 (Fed. Cir. 2006).

[2] *See* 35 U.S.C. § 102; *Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1373 (Fed. Cir. 2001).

[3] *See* 35 U.S.C. § 103(a).

A. No.

Q. Could you answer it then, please, and I'l[l] ask the court reporter to read it back.

(The last question was read back.)

A. I don'[t] know how to answer that question other than the answers that I have given twice.

Q. Well, the answer, I can prospectively suggest, would either be yes or no, yes if you have in fact looked at the patent language and said, "Oh, this other shape would be covered by the patent," and no if you've never done anything like that.

MR. LEACH: For the record, he responded to your question. I mean –

MR. TECHENTIN: Yeah, he responded, but he hasn't answered it.

MR. LEACH: He's given you an answer twice.

Q. (BY MR. TECHENTIN) That's the best you can do?

A. That's the best I can do.

*Id.* at 156:17-157:21.

Hasbro encountered similar problems when trying to ask Mr. Cook about his concept of "surface area" and the reasons for his conclusion that, in this case, surface area was to be calculated without regard to the contour of the surface being measured. Mr. Cook refused to answer the questions posed, instead offering nonresponsive statements and declaring that he would only answer questions that he was "willing" to answer:

Q. Well, without regard to the '197 patent, what does surface area mean?

A. Surface area means the square unit area of a particular surface.

Q. And a surface can be contoured, correct?

A. Yes.

Q. And the ordinary definition of surface area would account for the contours on the surface, correct?

A. I have been asked to interpret the '197 patent as regards the facets, the extension member facets, and the relationship between equal surface areas and my interpretation of what equal surface area means.

Q. Mr. Cook, this is going to take a lot longer if you don't answer the questions I ask.

A. I know.

MR. LEACH: He's trying to answer your questions.

MR. TECHENTIN: No, he's not. Could I have that last question read back, please.

MR. LEACH: That's your opinion.

(The last question was read back.)

A. As I'd stated before, I am interpreting this patent. I'm not going to comment outside of the scope of this patent.

Q. (BY MR. TECHENTIN) ***Are you telling me that you didn't look up what surface area means before you rendered this opinion?***

A. ***I know what surface area means.***

Q. ***But you won't tell me?***

A. ***Correct.***

Q. Because it's different from your interpretation of the '197 patent?

A. No.

Q. They're the same?

A. My interpretation of the '197 patent -- do you want me to continue?

Q. I'd like an answer to my question.

Q. Are they the same? Are you not going to answer that question?

> A. I have answered it when you asked me the question. ***I told you what I'm willing to answer.***

*Id.* at 175:20-177:17 (emphasis added).

Hasbro's difficulties in conducting the deposition of Mr. Cook also involved Plaintiff's counsel, who interposed numerous "speaking" objections, attempted to answer questions on behalf of the witness, and even instructed the witness not to answer questions. On numerous occasions, Plaintiff's counsel, rather than objecting to a question that he thought might call for speculation, "caution[ed] the witness not to speculate," telling Mr. Cook to "[j]ust answer the question if you know." *Id.* at 6:25-7:3; *see also id.* at 55:14-15; 56:7-9; 90:13-16; 131:18-20; 158:8-23. While counsel was literally telling the witness not to "speculate," it was clear from the context in which the objections were interposed and the responses actually given by the witness whenever counsel offered those objections that the instruction was, in reality, telling the witness not to remember. For example, as Hasbro was inquiring into the discussions between Mr. Cook and Plaintiff's counsel, the following ensued:

> Q. Did you discuss with Mr. Leach the fact that the report, as you had drafted it, included pictures of the commercial embodiment of Mr. Bowling's die?
>
> MR. LEACH: I object, and I'm instructing the witness not to speculate. If he can recall, he may answer.

*Id.* at 90:13-19. Hasbro's question was simple and straightforward: had he discussed the fact that his report included pictures of the plaintiff's commercial dice with Plaintiff's counsel? The response should have been either "yes" or "no." Instead, the response (after the same Plaintiff's counsel invoked "speculation" four times, said the plaintiff should only respond if he remembers,

and made a speech about Mr. Cook not being an expert in patent law) was "I don't remember." *Id.* at 90:13-92:20.[4]

Plaintiff's counsel, in addition to abetting the witness's refusal to answer questions, actively interfered with Hasbro's questioning of the Plaintiff's expert. For example, Hasbro had tried to inquire about whether other types of dice might violate the patent or, conversely, if Hasbro had available to it non-infringing alternative dice for use in its Monopoly games. When Hasbro asked if it was correct that Hasbro could have manufactured a die that was similar to the "accused die," but with certain specified changes, that the die would not have infringed the patent, Plaintiff's counsel interjected with "Object to the question. I'm not going to have him opine on a hypothetical like that." *Id.* at 225:4-13. He proceeded to explain – in front of the witness – that the "question is so vague, he can't answer it" and "it's a hypothetical with nothing in front of him." Counsel stated flatly that "He's not going to do it." *Id.* at 225:20-25. When Hasbro tried to ask the expert about the scope of the claims of the patent (which he purported to have construed for his infringement analysis), Plaintiff's counsel interjected:

> His job as an expert has not been to determine what everything possible about this patent could cover. I mean, that's not what he's testifying as an expert on.
>
> Like I've said before, Jeff, he's not an expert in patent law, he's not an expert in claim construction, so to try to get him to answer those questions is wrong, and I'm not going to have him do it, and I'm not going to let him do it. He's an expert in die and die design. If you want to stick to questions that relate to that, that's fine.

---

[4] Other example of speaking objections included counsel's interjection during Hasbro's examination of Mr. Cook regarding the fact that certain portions of his report had been copied verbatim from an unrelated expert report that he had been provided by Plaintiff's counsel. Rather than permit Hasbro to inquire *of the expert* why portions of the expert reports appeared to be identical, counsel elected to try to explain the situation himself. *See* **Exhibit B** at 81:10-82:2. Counsel also tried to forestall Hasbro's inquiry into the discussions of the applicable law between Mr. Cook and Plaintiff's counsel by suggesting answers. *See id.* at 86:22-87:24.

*Id.* at 226:8-227:3. After counsel for Hasbro suggested to the witness that he could answer the question, Mr. Cook declined to do so, stating that he "would have to have time to examine the question in relation to the entire patent as it exists to make a truthful analysis." *Id.* at 227:6-8.

Finally, the witness and Plaintiff's counsel successfully refused to answer questions relating to the application of the doctrine of obviousness. As noted above, Mr. Cook had offered the opinion that he was not aware of any prior art references that would render the '197 Patent obvious. Hasbro suspected that there was at least one prior art reference that Mr. Cook had not considered. Accordingly, Hasbro attempted to describe the prior art reference to Mr. Cook in an effort to obtain his conclusions about whether that reference would render the '197 Patent obvious:

> Q. Let's go back to the question that I had. My question was whether a prior art reference that shared the same basic configuration, that is, the alternating triangle format that you testified was the unique characteristic of these dice –
>
> A. Um-hum.
>
> Q. -- and the end caps, except that the end caps were the same length as the extension member facets –
>
> MR. LEACH: Object.
>
> Q. (BY MR. TECHENTIN) -- My question –
>
> MR. LEACH: Go ahead, finish.
>
> Q. (BY MR. TECHENTIN) -- my question is, if that had been a prior art reference, would that render this die obvious?
>
> MR. LEACH: Object to the question. It's a hypothetical. And, again, he's not an expert in patent law, and he's not here to testify on that stuff.
>
> A. I really couldn't say.
>
> Q. (BY MR. TECHENTIN) Well, why not?

A. Because I'm not a hundred percent clear as to how that question would apply to obviousness.

Q. Well, when you reviewed the prior art references –

A. Um-hum.

Q. -- for the '197 patent, you had a clear understanding as to whether obviousness would be applicable, did you not?

A. Yes.

Q. And do you still?

A. I still -- as to the prior art, yes.

Q. Why can't you apply that to the shape that I described?

A. Because I'd need to see the shape itself.

Q. Why?

A. That's the way I interpret it. I interpret it by seeing the shape and seeing if it's obvious.

Q. And if you saw the shape, you'd be able to tell whether it was obvious?

A. I believe so.

*Id.* at 259:2-260:21.

When Mr. Cook declined to respond on the ground that he needed to see the shape itself, Hasbro showed him the die that had been described (a picture of which is attached hereto as **Exhibit C**). The following ensued:

Q. Is that a shape you've seen before (indicating)?

MR. LEACH: Have you disclosed this before?

MR. TECHENTIN: Yes.

MR. LEACH: To us?

MR. TECHENTIN: Well, not that physical die, but it didn't exist until a couple weeks ago.

MR. LEACH: So I -- and you haven't -- you haven't given us any pictures of it?

MR. TECHENTIN: Oh, yeah.

MR. LEACH: You've given us – you've provided pictures of it? Do you know the Bates numbers of those pictures?

MR. TECHENTIN: Not offhand.

MR. LEACH: I'm not going to have him do an analysis on the fly, Counsel.

MR. TECHENTIN: Well, he just told me he can.

MR. LEACH: I'm not going to let him do an analysis on the fly.

MR. TECHENTIN: You're going to instruct him not to answer my question?

MR. LEACH: We've got five minutes left, and, no, I'm not going to let him sit here and do that.

Q. (BY MR. TECHENTIN) Let me ask this prefatory question.

MR. LEACH: You can ask -- you can ask the question, but he's not an expert in patent law, and I believe I've been stating this all along.

Q. (BY MR. TECHENTIN) Can you analyze whether this would constitute a prior art reference, assuming it's prior art to the '197 patent, that would render the '197 patent obvious?

A. I have never seen this die before.

MR. LEACH: And I object to the question.

Q. (BY MR. TECHENTIN) I understand that, and I asked you to hypothesize a shape, and you said I'd need to see the die. I said if you could see the die, could you do it, and you said you could. Can you?

A. Yes, I can.

Q. And what's your conclusion?

A. I would need to study it more in depth.

Q. Well, I thought you said you could do it.

A. I can.

Q. How long will it take you?

A. I can't say at this point.

Q. More than five minutes?

A. Yes.

Q. More than a day?

A. I would say yes.

*Id.* at 260:24-263:8. Thereafter Hasbro terminated the deposition, without obtaining a response to its questions. *Id.* at 265:17-21.

## II. Argument

The facts set forth above largely speak for themselves. In defending its expert at deposition, the role of Plaintiff's counsel was to listen to questions, object where appropriate, and allow Hasbro to inquire into the expert, his qualifications, his opinions, the bases and factual grounds therefor, and any other relevant area deemed appropriate by Hasbro. Rather than doing so, Plaintiff's counsel sat by as the witness attempted to define for himself what questions he was "willing" to answer. Worse, when the questions probed areas in which Plaintiff's counsel apparently believed Mr. Cook's opinions to be weak, Plaintiff's counsel actively thwarted Hasbro's inquiry, attempted to respond on behalf of the witness, coached the witness, and even instructed the witness not to answer. The net result of the conduct of the witness and Plaintiff's counsel is to have effectively prevented Hasbro from deposing Mr. Cook, as is Hasbro's right under the Federal Rules of Civil Procedure.

In light of the Plaintiff's egregious refusal to permit Hasbro to depose his expert, Kevin Cook, in accord with the applicable rules and standards of practice, relief is appropriate under both Fed. R. Civ. P. Rule 37 and 28 U.S.C. § 1927. Under Rule 37, this Court has broad latitude

to fashion relief appropriate to the Plaintiff's failure to make discovery. Mr. Cook, as a retained expert, is the agent of the Plaintiff, and his refusal to answer proper deposition question is without substantial justification. Moreover, Mr. Cook's intransigence during the deposition was aided and abetted by Plaintiff's counsel, who frequently interposed groundless objections and thinly-veiled instructions to the witness regarding suggested responses to Hasbro's questions. Moreover, Plaintiff's counsel's suggestions that the witness should not answer questions, or that questions were objectionable merely because they involved "hypothetical" situations, were completely without factual or legal basis.

Under these circumstances, Hasbro respectfully suggests that this situation can only be corrected by an order providing Hasbro three separate forms of relief. First, Hasbro should be permitted to conduct further deposition of Mr. Cook, this time without the intermeddling of Plaintiff's counsel and with Mr. Cook fully aware of his obligations to answer questions put to him, under oath, with the Plaintiff bearing the expense of bringing Mr. Cook to Providence for this further deposition. *See* Fed. R. Civ. P. Rule 37(a)(1)(A). Second, Hasbro should be compensated for the its expenses, including fees, associated with taking Mr. Cook's deposition in Denver, Colorado. *See* Fed. R. Civ. P. Rule 37(b)(2) and (c)(1). Third, the Plaintiff should be precluded from having Mr. Cook now testify (when he refused to do so previously) regarding his analysis of the "obviousness" issue with respect to Exhibit 4 at his deposition. Specifically, Hasbro requests that the court order that Mr. Cook's response to the question "Would the die design embodied in Exhibit 4 to the Kevin Cook deposition, if prior art to the '197 Patent, render the '197 Patent obvious?" be deemed "yes." *See* Fed. R. Civ. P. Rule 37(b)(2)(A).

Because counsel's actions (as opposed to those of either Mr. Cook or the Plaintiff himself) have substantially contributed to the expense associated with Mr. Cook's deposition

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of June 2006, I caused a true copy of the within to be served on the following individuals by regular mail, postage prepaid:

Craig M. Scott, Esq.
Christine K. Bush, Esq.
Duffy & Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903

Of Counsel:

Thomas J. Leach, Esq.
Douglas J. Williams, Esq.
Law Firm of Merchant and Gould P.C.
3200 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402-2215

David K. S. Cornwell, Esq.
Sterne Kessler Goldstein Fox
1100 New York Avenue, NW
Washington, D.C. 20005

[signature]

*383852_1*