IN THE UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MICHAEL BOWLING,<br>a Resident of Arizona,<br><br>Plaintiff,<br><br>v.<br><br>HASBRO, INC.,<br>a Rhode Island Corporation,<br><br>Defendant. | : | C.A. No. 05-229S |

**STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT MOTION**

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56, Plaintiff Michael Bowling ("Bowling") hereby submits the following statement of undisputed facts in support of Plaintiff's Motion for Summary Judgment:

1. Bowling, an engineer by education, has been designing dice for 20 years. (Deposition of Michael Bowling ("Bowling Depo.") at 12-14, 53:15-56:2, attached hereto as Exhibit A.)

2. In designing dice, Bowling draws on his engineering background and specifically his study of mathematics and physics. (Declaration of Michael Bowling dated April 12, 2006 ("Bowling Decl.") at ¶ 2, attached hereto as Exhibit B.)

3. Bowling has eight patents, all with formal drawings, in which he is named as the sole inventor. (*Id.* at ¶ 5.)

4. While in college, Bowling noticed an old wooden six-sided pencil and thought why not make an elongated die of similar shape. (Exhibit A at 57:18-62.)

5. Bowling attempted to create a die shaped like the old wooden pencil but found that it was not practical. Bowling also found that it was difficult to place legible numbers on the small rectangular facets, especially when he tried to increase the number of facets on the die, which made the facets even smaller. Bowling continued to think about how to make an elongated, multiple faceted die that provided enough area for legible indicia. (*Id.* at 77:22-78:23.)

6. In the summer of 1997, while driving, Bowling was struck with the idea of converting the rectangular facets to opposing triangles, thereby creating a larger area (at the triangle's base) for the indicia. (*Id.* at 80:20-81:17.)

7. Converting rectangular facets into opposing triangle-shaped facets creates facets that are identically shaped and of equal surface area. Bowling immediately pulled over and drew his idea. Bowling explained that his die design included end caps to prevent the die from landing on its end, make it more attractive, and to make it bounce more. Bowling drew the die a half dozen times before providing some of the sketches to Albert Lizarraga ("Lizarraga") to prepare formal drawings. Below are examples of the rectangular facets, the divided rectangular facets into two opposing triangles, and a three-dimensional view of the entire opposing-triangle faceted die that Bowling drew at his deposition. (Bowling Deposition Exhibit No. 1, attached hereto as Exhibit C.)




Bowling gave sketches such as these to Lizarraga. (Exhibit A at 81:18-85:24, 97:18-22.)

8. Lizarraga confirmed that the sketches Bowling provided him were three-dimensional, multifaceted and included end caps. (Albert Lizarraga Deposition ("Lizarraga Depo.") at 14:9-17, 31:5-9, attached hereto as Exhibit D.)

9. Bowling's patented die design is depicted below along with a commercial embodiment:







('197 Patent Fig. 1.) (Bowling's Commercial Product)

To protect his idea, Bowling decided to file for a United States Patent. (United States Patent No. 5,938,197, attached hereto as Exhibit E.)

10. Bowling hired Lizarraga, a professional draftsman, to prepare formal drawings of the new crystal-shaped die for the patent application. (Exhibit A at 82:19-83:4, 100:16-106:13.)

11. Bowling explained to Lizarraga that the invention was a die to generate random numbers for game playing. (Exhibit D at 69:11-23.)

12. Lizarraga has no experience designing dice. (*Id.* at 89:2-7.)

13. Lizarraga's training consists of a technical degree in drafting. (*Id.* at 88:19-89:1, 9:16-20.)

14. Lizarraga has been doing the same type of drafting work he did for Bowling for 20 years and has never been named as a co-inventor on *any* patent. (*Id.* at 71:5-72:11, 6:9-9:25.)

15. Lizarraga came to Bowling's home and met with both Bowling and Bowling's wife, Elizabeth. (*Id.* at 12:3-6, 73:11-19.)

16. At the first meeting, Bowling provided Lizarraga with sketches of the invention and explained it in detail. (Exhibit A at 101:19-102:4, 187:18-188:23; Exhibit D at 73:11-23, 12:19-13:1, 14:9-13, 31:5-11.)

17. One of the sketches Bowling provided to Lizarraga looked like the following sketch of a three-dimensional, multi-faceted die having end caps:




(Exhibit A at 101:19-102:4, 189:19-21, 82:21-24, 97:18-21; Exhibit B at ¶ 8; Exhibit C; Exhibit D at 14:9-13, 31:5-11, 55:5-11, 73:14-23.)

18. Lizarraga recalled that one of the sketches Bowling provided him was three-dimensional with multiple facets and that it had end caps. (Exhibit D at 14:9-13, 31:5-11, 55:5-11, 73:14-23, 52:14-20.)

19. Bowling also provided Lizarraga with an overall dimension and diameter. (Exhibit A at 187:18-188:23; Exhibit D at 12:19-13:1, 62:2-8.)

20. Lizarraga used Bowling's sketch and his explanation to produce formal drawings of Bowling's invention. (Exhibit D at 12:8-14:21.)

21. When Lizarraga showed the formal drawings to Bowling, Bowling was pleased because they were just as he explained his invention to Lizarraga. (Exhibit A at 129:2-5, 189:18-21; Exhibit B at ¶ 9; Exhibit D at 25:12-16.)

22. An example of the formal drawings Lizarraga provided to Bowling is below:



(Exhibit A at 185:8-186:21; Exhibit B at ¶ 9; Bowling Deposition Exhibit No. 12 (B00511), attached hereto as Exhibit F.)

23. After Bowling received the formal drawings back from Lizarraga, Bowling adjusted the die's size based on what he thought was appropriate. (Exhibit A at 122:6-125:11.)

24. After Bowling put all the drawings on one page, he wrote in by hand the approximate sizes of the die. (*Id.* at 122:6-124:8; Bowling Deposition Exhibit No. 4, attached hereto as Exhibit G.)

25. Bowling paid Lizarraga for the drafting work and did not hear from him for almost nine years. (Exhibit A at 100:23-24, 190:1; Exhibit B at ¶ 10.)

26. Recently, Hasbro's counsel sought out Lizarraga, suggested to him that he might be a co-inventor, and offered him $10,000.00 for whatever "right," if any, he might have in the '197 patent. (Exhibit D at 82:18-83:6, 75:17-23, 76:4-9, 77:21-78:9.)

27. Lizarraga offered to assign essentially a "quit claim" of his rights provided that Hasbro would indemnify him for any claims Bowling might bring against him.

(E-mail from Jeffrey Techentin to Steven Bosse (Lizarraga 0072-0073), attached hereto as Exhibit H.)

28. Hasbro paid Lizarraga $10,000 to assign whatever "right," if any, he might have and to cooperate in Hasbro's defense of this litigation. (Assignment and Sale of Rights, attached hereto as Exhibit I; March 14, 2006 check to Albert Lizarraga from Hasbro, Inc., attached hereto as Exhibit J.)

29. During Lizarraga's deposition it became clear that Hasbro—not Lizarraga—claimed he was a co-inventor. (Exhibit D at 77:21-78:17.)

30. Lizarraga's recollection of what Bowling provided him is at best vague. (*Id.* at 12:19-14:17.)

31. Lizarraga claims to have come up with the idea of identically shaped extension-member facets. (*Id.* at 49:14-24.)

32. Lizarraga's testimony about symmetrically shaped end caps directly contradicts his claim because he agrees that equally shaped end caps would define identically shaped facets. (*Id.* at 57:13-16.)

33. If Bowling provided symmetrical end caps then identically shaped extension member facets would naturally follow and could not have been created by Lizarraga. (*Id.* at 31:5-11, 52:14-20.)

34. After admitting that he cannot remember whether Bowling instructed him to make the end caps symmetrically equal, Lizarraga admitted that if the end caps are symmetrically equal, the extension member facets would be as well. (*Id.* at 57:13-16.)

35. Lizarraga also stated that surface area was not a design consideration on his part when he drew the dice. (*Id.* at 60:18-23.)

36. Lizarraga testified that the ratio of the surface area of the end caps to extension member facets was not a design consideration. (*Id.* at 63:14-23.)

37. Lizarraga has no drawings or other evidence that corroborate his testimony about contributing identically shaped facets to the invention. (*Id.* at 75:10-16.)

38. Susan Lizarraga ("Susan") was not at the initial meeting when Bowling disclosed his invention to Lizarraga. (Deposition of Susan Lizarraga ("S. Lizarraga Depo.") at 6:5-9, attached hereto as Exhibit K.)

39. Her information basically came from what her husband told her. (*Id.* at 6:19-21.)

40. She was told that Bowling asked her husband to do some drawings for dice. (*Id.* at 5:23-24.)

41. Susan had no involvement in Lizarraga's work for Bowling. (*Id.* at 11:19-12:2.)

42. Nothing in the patent drawings that Lizarraga prepared for Bowling show that Lizarraga, and not Bowling, conceived of the identically shaped facets or the die's symmetry. (Exhibit D at 35:11-36:19; Exhibit E and excerpts of Lizarraga Deposition Exhibit No. 4, attached hereto as Exhibit L.)

43. Bowling's patent attorney, Julie Daulton, testified that she probably received specific information regarding the die from asking Bowling or possibly from the drawings. (Deposition of Julie Daulton ("Daulton Depo.") at 83:7-14, attached hereto as Exhibit M.)

44. Her standard practice is also to do an inventorship interview with the client. Such an interview would reveal if anyone else was a co-inventor. After such a review,

Bowling signed a declaration that he was the sole inventor of the '197 Patent. (*Id.* at 47:3-53:21, 84:2-17 and B00105-B00108, attached hereto as Exhibit N.)

Michael Bowling,
By His Attorneys,

Date: June 19, 2006

Craig M. Scott, Esq. (#4237)
Christine K. Bush, Esq. (#5587)
DUFFY SWEENEY & SCOTT, LTD
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700
(401) 455-0701 (Facsimile)

Douglas J. Williams, MN (*pro hac vice*)
Thomas J. Leach, MN (*pro hac vice*)
MERCHANT & GOULD, P.C.
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(612) 332-5300
(612) 332-9081 (Facsimile)

**CERTIFICATION**

TO:

Todd D. White, Esq.
Jeffrey K. Techentin, Esq.
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345

David K. S. Cornwell, Esq.
Tracey-Gene G. Durkin, Esq.
Sterne Kessler Goldstein & Fox P.L.L.C.
1100 New York Avenue N.W.
Washington, DC 20005

I hereby certify that I caused a true copy of the within *Plaintiff's Statement of Undisputed Facts* to be delivered via First Class Mail to the above named counsel of record on the 19 day of June, 2006.

Theresa Benson

H:\Clients\Bowling\Pleadings\Statement of Undisputed Facts.doc