UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MICHAEL BOWLING, a Resident of Arizona, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 05-229 S |
| HASBRO, INC., a Rhode Island Corporation, | : | |
| Defendant. | : | |

# DEFENDANT'S CLAIM CONSTRUCTION BRIEF

Pursuant to applicable orders of this Court, Defendant/Plaintiff-in-Counterclaim Hasbro, Inc. ("Hasbro") submits this brief with respect to the construction of the claims of U.S. Patent No. 5,938,197 (the "'197 Patent").

## I. Introduction

Plaintiff's construction of the claim language is contrary to the ordinary and customary meaning of the relevant terms and directly contrary to the explicit, unambiguous description of the invention in the patent itself. Plaintiff engages tortuous logic to suggest that when the patent describes extension member facets having "equal surface areas," it really means that "the abstract geometric shapes defined by the outer perimeters of each of the extension member facets have equal surface areas" and that the facets being "identically shaped" really means that "the outside perimeter of the facets are identically shaped, notwithstanding the fact that the facets themselves are differently shaped." This construction is unsupported and wrong. Hasbro's position is straightforward and consistent with all applicable language of the patent: "equal surface areas" means "equal surface areas" and "identically shaped" means "identically shaped."

Plaintiff also attempts to short-cut the claims construction process by declaring that "[t]he

invention is basically what you see in the drawings." This is both factually and legally inaccurate, and belied even by the testimony of the Plaintiff's own dice expert.[1] Even if the "invention" that the Plaintiff sought to protect by means of the '197 Patent ***is*** depicted in the drawings, the Plaintiff is limited in the actual protection of the patent to the claims themselves. As the Federal Circuit put it, "[t]he invention disclosed in [the patentee's] written description may be outstanding in its field, but the name of the game is the claim." *In re Hiniker Co.*, 150 F.3d 1562, 1569 (Fed. Cir. 1998). Those claims unambiguously refer ***only*** to dice with flat, equal extension member faces, and the patent should be construed accordingly.

## II. Factual Background and Applicable Legal Standard

Bowling claims to have invented a new form of playing die in 1997. In January 1998, he applied for a patent for his "crystal-shaped" dice, and was issued the '197 Patent on August 17, 1999. In relevant part, for the purposes of the construction of the disputed claim language, Bowling claimed inventorship in the following (emphasis added):

> 1. A die construction comprising: (a) a body having first and second, opposite end caps and an extension member therebetween; (b) ***said extension member having a first number of discrete facets*** and no more than said first number; (i) ***each of said discrete facets being identically shaped and having equal surface areas***; (c) said first end cap having a second number of discrete facets and no more than said second number; said second number being one-half of said first number; (i) each of said first end cap discrete facets being identically shaped and having equal surface areas; and (d) said second end cap having said second number of discrete facets and no more than said second number; (i) each of said second end cap discrete facets being shaped identically as said first end cap discrete facets; and each of said second end cap discrete facets having a surface area equal a surface area of each of said

[1] The Plaintiff's attempt to avoid his own claims language is reflected in his suggestion that "the technology is not complex and does not require an exacting scientific or highly technical analysis." Plaintiff's Br. at 1. The disputed claim language might not be technologically complex, but its interpretation requires an understanding of scientific terminology (*e.g.*, "precise center of symmetry" and "center of mass"). Consideration of those scientific terms, and their underlying scientific principles, is necessary and appropriate. Plaintiff offers no rationale for applying those terms in some "unexacting" manner.

> first end cap discrete facets; and (e) each of said discrete facets of said extension member having a surface area that is different from a surface area of each of said discrete facets of said first and second end caps.
>
> 2. A die construction according to claim 1, wherein: (a) ***each of said extension member discrete facets include printed indicia thereon.***
>
> [* * *]
>
> 17. A die comprising: (a) a body including a first end cap, a second end cap, and an extension member in extension therebetween; (b) said first end cap including a first number of facets and no more than said first number; said second end cap including a second number of facets and no more than said second number; and ***said extension member defining a third number of facets*** and no more than said third number; (i) said first number being equal to one-fourth of a total of said first number and said second number and said third number; (ii) said second number being equal to one-fourth of the total of said first number and said second number and said third number; (iii) ***each of said extension member facets being equal in surface area***; (iv) each of said extension member facets being triangular-shaped; (v) ***each of said extension member facets having indicia thereon indicating a number***; and (vi) ***each of said extension member facets having a surface area that is different from a surface area of each of said first and second end cap facets.***

The '197 Patent included a "Detailed Description of the Preferred Embodiments," in which Bowling explained, *inter alia*, the meaning and significance of the emphasized terms above. In the Detailed Description, Bowling stated:

> The extension member **28** includes a plurality of discrete facets **32**. Preferably, each of the discrete facets **32** are identically shaped and have equal surface areas to each other. That is, each of facets **32** has a surface area which is equal to and no greater and no less than the surface area of any other of the facets **32**. Each of facets **32** is angled relative to an adjacent facet **32** to define corner or edge surfaces **34**.
>
> [* * *]
>
> Die **20** is constructed such that the center of mass of die **20** is in the precise center of symmetry of die **20**. By "center of symmetry",

> it is meant a point that is related to a geographical figure in such a way that for any point on the figure, there is another point on the figure such that a straight line joining the two points is bisected by the original point. Each of the surface areas of discrete facets **32** of extension member **28** are equal. The combination of the center of symmetry being the center and the equal surface areas of facets **32** provides for a fair playing die. That is, no one facet **32** is more likely to be rolled than any other of the facets **32**.
>
> [* * *]
>
> As with the first embodiment of the die, die **50** is constructed so that the center of mass is in the precise geometric center of die **50**. Further, each of facets **58** has an identical and equal surface area. This provides for a fair playing die.
>
> [* * *]
>
> As with the first and second embodiments of the die, die **70** is constructed so that the center of mass is in the precise geometric center of die **70**. Further, each of facets **78** has an identical and equal surface area. This provides for a fair playing die.

The legal standards governing the Court's construction of the claims language are well settled. Essentially, the Court must examine the claim language itself and if unambiguous, construe the claims accordingly. To the extent the claims language is ambiguous, the details in the Specification may be used to clarify the claims. If the claims and the Specification are collectively insufficient to provide definition to the claim language, extrinsic evidence (such as dictionary definitions and expert testimony) may be used. In this case, the claim language itself is clear, and that plain meaning is not contradicted either by the Specification or relevant extrinsic evidence.

"In construing claims, [the] analysis must begin and remain centered on the claim language itself." *Novartis Pharms. v. Abbott Labs.*, 375 F.3d 1328, 1334 (Fed. Cir. 2004 (citing *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001)). Words in the patent claim are given their ordinary and customary meaning as understood by one

of ordinary skill in the relevant art. *Id.* (citing *Tex. Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1202 (Fed. Cir. 2002)). Only if "the disputed claim term 'is a term with no previous meaning to those of ordinary skill in the prior art[,] [i]ts meaning, then, must be found [elsewhere] in the patent.'" *Id.* (quoting *J.T. Eaton & Co. v. Atl. Paste & Glue Co.*, 106 F.3d 1563, 1568 (Fed. Cir. 1997)). The Plaintiff leapfrogged over this last hurdle, however. He made no showing that the claims language involved unknown terms, but dived into the remainder of the patent (the Specification and the associated drawings) to find a different meaning of "equal surface areas" and "identically shaped."[2]

Despite its complete irrelevance to the question of claims construction, the Plaintiff's *Markman* brief asserts various facts that are either unsupported or erroneous. For example, Plaintiff claims that his "crystal" die design is "very popular," but there is no evidentiary support for that, nor does he even offer any basis for what might constitute a "popular" playing die. Bowling also claims that Hasbro's accused die is "identical" or "nearly identical" not only to the die "shown in Bowling's patent," but also to the commercial embodiment of the invention. Plaintiff's Br. at 2-4 (implying that Hasbro copied his commercially-produced die after "attending the 1998 trade show and seeing Bowling's popular new crystal-shaped die"). As a matter of law, however, Bowling's commercial embodiment is irrelevant, and Bowling's brief appropriately makes no claim that it should be considered as evidence to support any particular construction of the claims language. *See SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107,

---

[2] Hasbro does not dispute that patent claims must always be read in conjunction with the Specification, which is generally the "single best guide to the meaning of a disputed term." *See, e.g.*, *Philips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005). However, where the meaning of language in the claims is undisputed based on the understanding of one with ordinary skill in the relevant art, there is no need to resort to the Specification to find some different meaning, unless the Plaintiff has specifically granted terms some operational definition, which has not happened here. *See, e.g., Irdeto Access v. Echostar Satellite Corp.*, 383 F.3d 1295, 1300 (Fed. Cir. 2004) (patentee may act as his own lexicographer "so long as he clearly states any special definitions of the claim terms in the patent Specification or file history").

1121 (Fed. Cir. 1985) (en banc) ("Infringement, literal or by equivalence, is determined by comparing an accused product not with a preferred embodiment described in the Specification, or with a commercialized embodiment of the patentee, but with the properly and previously construed claims in suit.").

The Plaintiff implies that Hasbro copied the die without accusing Hasbro outright because that is not what happened. Bowling first showed his die to the public in August 1998 at the "trade show" mentioned in the Plaintiff's brief. Hasbro had developed the accused die in July 1998, evidenced by the testimony and dated drawings of the woman who invented the die for Hasbro. *See* Dep. of Eileen Sefchick at 13:4-15:20 (**Exhibit A**). Moreover, Bowling's casual assertion that Hasbro's die was "nearly identical" to the dice Bowling was selling at that trade show is flatly incorrect. Hasbro's die was a "six sided" die, meaning it generated a number from one to six. Bowling's was "ten sided." Hasbro's die was marked with "pips," the dots on each face indicating the number rolled. Bowling's was marked with integers. Hasbro's die was comparatively wide and thick, with short end caps. Bowling's was thin with pointy end caps. As side-by-side picture of the two dice shows how different the two dice were (on the left is Hasbro's accused die, on the right Bowling's commercially-produced ten-sided die)[3]:



[3] Tellingly, Bowling's claim construction brief only includes a photograph of the commercial embodiment of his six-sided die, which he had not produced at the time of the 1998 trade show. *Compare* Plaintiff's Br. at 2 *with* Dep. of M. Bowling at 107:8-108:20 (**Exhibit B**).

The choice between a tortured interpretation of the contested claim language, advocated by the Plaintiff, and Hasbro's plain-language interpretation could not be any starker:

| **Disputed Claim Term**[4] | **Plaintiff's Construction** | **Hasbro's Construction** |
|---|---|---|
| Extension member facets being "Identically shaped" | Extension member facets are identically shaped without regard to any indented indicia | Each extension member facet has the same or substantially the same shape, as defined by the outer perimeter of each such facet |
| Extension member facets having "equal surface areas" | Extension member facets have equal surface areas without regard to any indented indicia | Each extension member facet has the same or substantially the same surface area, measured as the surface of a three-dimensional object |

## III. Argument

### A. "Equal Surface Areas" and "Identically Shaped" Should Be Afforded Their Plain Meanings

The disputed claim language could not be clearer. "Equal surface areas" has a definite and unambiguous meaning: the surface area for each facet on the extension members of the patented dice must be equal to (that is, the same as) the surface area of each of the other facets on the extension member of a given playing die. Surface area for a three-dimensional object is calculated not by merely applying a formula to determine the area of the perimeter of the object, but by reference to the contours or textures of the object itself. Thus as one authority explains, "The area of a surface or lamina is the amount of material needed to 'cover' it completely. The area of a surface or collection of surfaces bounding a solid is called, not surprisingly, the surface area." Eric W. Weisstein, *Area*, MathWorld--A Wolfram Web Resource (http://mathworld.wolfram.com/Area.html) (last accessed June 20, 2006) (**Exhibit C**).

[4] Hasbro recognizes that the Plaintiff has construed the entire phrases in which the disputed language appears; however, Hasbro does not believe that the selection of the language from Claim 1 or Claim 17, or the context in which the language appears in each of those claims, provide different meaning to extension member "discrete facets ... having equal surface areas" than to "extension member facets being equal in surface area."

The surface area of the facets of the extension members for dice claimed in the patent is therefore calculated to be the "amount of material needed to 'cover'" the facets completely. If the facets are flat, essentially two-dimensional surfaces, the surface area can be calculated as suggested by the Plaintiff, by the basic formula of $\frac{1}{2}bh$, where $b$ is the length of the base of the triangular facet, and $h$ is the height of the triangle. *Id.*; *see also* Plaintiff's Br. at 11. Where the surface being measured is not a simple plane, however, more complex formulae are required to determine how much "material" would be necessary to cover the surface in all three dimensions. For example, the surface area of a dome (which would be a rough equivalent to the pips on Hasbro's die, for example) is determined by reference to the following formula: $2\pi Rh$, where $R$ is the radius of the base of the dome, and $h$ is the height of the dome. Eric W. Weisstein, *Spherical Cap*, MathWorld--A Wolfram Web Resource (http://mathworld.wolfram.com/SphericalCap.html) (last accessed June 20, 2006) (**Exhibit C**).[5]

For the purposes of constructing the claims of the '197 Patent, resort to the calculus necessary to determine the true surface area of the extension member faces of the Plaintiff's commercial dice or of Hasbro's accused dice is unnecessary because it is apparent that the area of an irregular surface is greater than the area of the two-dimensional figure defined by the perimeter of that surface.[6] *See supra* at n. 4. Stated otherwise, because the indented indicia would have a greater surface area than the portion of the die that was "carved out" to make those

---

[5] Applying the formula $2\pi Rh$, it is evident that the surface area for a dome will be greater than the surface area of the circle that forms its base, which would be calculated by $2\pi R$. Because the height of a dome is some positive value (there must be some height or it would not be a dome), the value $h$ will inevitably increase product of the equation, which represents the total surface area.

[6] Alternatively, if one were to look at the "planar surface area" of the extension member sides of the Hasbro dice, the surface area of the face with just one pip would actually be greater than the surface area with six pips, since (on the plane defined by the perimeter of the face), there would be holes that would not constitute "surface area" of the extension member face itself. *See, e.g.*, Dep. of Kevin Cook at 180:23-181:20 (**Exhibit D**) (agreeing that in

indicia, a die with indented indicia will always have a greater surface area than a similar die that has only "facetted" sides.

Likewise, the fact that the claims describe extension member facets that are "identically shaped" means that each has a shape that is precisely the same as all of the other extension member facets. As used in the patent, "shaped" is simply a participial form of the verb "to shape," which means to give a particular form or shape to, with shape itself being defined as "the visible makeup characteristic of a particular item or kind of item" or a "spatial form or contour." *See* "Shape," *Merriam-Webster Online Dictionary* (http://www.merriam-webster.com) (last accessed June 20, 2006) (**Exhibit E**). The patent thus expressly claims that each of the extension members will have an identical shape, which is to say an identical "spatial form or contour." In the context of the Plaintiff's dice, "identically shaped" refers to their perimeter, whether "tapered" (*see* '197 Patent at Claim 3(a)) or "triangular-shaped" (*see id.* at Claim 4(a)). Bowling's contention that "identically shaped" has some connotation as to the contour of the surface of the facets themselves is without support either in the patent or any proffered extrinsic evidence. The Plaintiff does not even attempt to suggest that "identically shaped" can have some constructive meaning other than its plain meaning, relying only on the ambiguity of his selected dictionary definitions for "identical" to support his contention that the term is "not absolute." *See* Plaintiff's Br. at 11-12.

### B. Plaintiff's Proposed Claim Construction Is Irreconcilable With The Language of The Patent

One need not look beyond the patent to determine that Hasbro's plain-language construction of these terms is appropriate and that Bowling's is incorrect. First, the patent

---

calculating the surface area of three-hole-punched paper, one would have to discount the surface area of the holes to determine surface area of the paper).

consistently refers to the extension member as being composed of "facets." As the Plaintiff concedes, a "facet" is a two-dimensional surface, as on a cut gem. If the die had claimed some non-flat surface, it could easily have described the "facets" as "faces" or "surfaces" or "sides." Or, the patent could have described something like "surfaces that are generally flat other than the indicia thereon, which may be raised or indented." The use of "facet" is a very particular choice, and one which cannot be washed away by conflating irrelevant definitions with relevant ones, arguing that because "facet" refers to a two-dimensional surface, and "plane" has a similar definition, the use of "facet" must mean just the "planar surfaces of the die without regard to indented indicia." *Id.* at 9-10.

Hasbro agrees with the Plaintiff that he "explicitly explained what 'being identically shaped' and of 'equal surface areas' means in the context of his invention" [*sic*]. *See* Plaintiff's Br. at 7. He explained that the extension member is comprised of "discrete facets." *See, e.g.*, '197 Patent at Col. 3, lines 5-6, Col. 7, lines 46-50. "Facets" are flat surfaces, as on a diamond. *See* Plaintiff's Br. at 9 and **Exhibits H and E** thereto. Thus the patent (in both the claims and in the Specification) states unequivocally that the extension member is comprised of a number of flat surfaces, each of the same shape (tapered or triangular) and consequently having the same surface area.[7]

If there were any doubt but that the extension member (and other surfaces) were flat, the Plaintiff removed it in describing the geometrical properties of the claimed dice:

> Die **20** is constructed such that the center of mass of die **20** is in the precise center of symmetry of die **20**. By "center of symmetry", it is meant a point that is related to a geographical figure in such a way that for any point on the figure, there is

[7] Because the surfaces are flat, identically-shaped facets must have equal surface areas. Just as two points define a line, three points (such as the vertices of a triangle) define a plane, and a two planar figures comprising equivalent triangles will each have the same surface area, calculated as ½*bh*.

> another point on the figure such that a straight line joining the two points is bisected by the original point. Each of the surface areas of discrete facets **32** of extension member **28** are equal. The combination of the center of symmetry being the center and the equal surface areas of facets **32** provide for a fair playing die. That is, no one facet **32** is more likely to be rolled than any other of the facets **32**.

'197 Patent at Col. 4, lines 55-65.

It is impossible to reconcile the foregoing paragraph with the Plaintiff's proffered construction of the claim language. If the extension member "facets" contain indented indicia, (1) they are no longer facets, (2) there is no longer a center of symmetry, and (3) the center of mass of the die is no longer the center of symmetry. Although applying the relevant geometry for the Plaintiff's dice would be complex (assuming the Plaintiff's claim construction), the underlying concept is relatively straightforward. The patent explains that there is a "center of symmetry" for each of the claimed dice. As defined in the patent, "center of symmetry" means a single point (roughly speaking, in the middle of the die) through which all lines of symmetry must pass. That is, the patent says that for each point on the surface of the die, a line runs from that point to another point on a symmetrically-opposite surface of the die, and that all of those lines run through a single point, the "center of symmetry," which bisects each of those lines (*i.e.*, one half of the line is on each "side" of the center of symmetry).[8] Further, the patent specifies that the center of mass is in the "precise center of symmetry." The following illustration roughly represents a cross-section of one of the Plaintiff's dice. The point in the center would be the "center of symmetry," and one can see that each of the lines proceeds from one point to an opposite point; each passes through a single point in the center; and that each of the lines is

---

[8] *See* **Exhibit F** (American Heritage Dictionary (4th Ed. 2000); defining "bisect" as "to cut or divide into two parts, especially two equal parts.").

bisected by that point.




Accepting the Plaintiff's claim construction, this description of the preferred embodiment would be impossible. That is, if the surfaces of the extension members (the outside lines of the octagon, above) are irregular, as would occur if a pip or number were engraved into the surface of the die, there would no longer be a center of symmetry. A line proceeding from one of the indentations would proceed to a point on the opposite face of the die, but because the opposite face is not indented in a symmetrical fashion, the line would not be bisected by a single point. Because there would not be a single point through which lines of symmetry might pass, there is no "center of symmetry." The following illustration reflects this point:




Additionally, the Plaintiff's claim construction would permit the center of mass of the die to shift in a way that is not contemplated in the detailed description of the preferred embodiments. As the plaintiff's dice expert conceded, engraving the surfaces of the extension member has the effect of moving the center of mass of the die. *See* Deposition of Kevin Cook at 196:7-21 (**Exhibit D**). This proposition is also straightforward: where there is less material

on one side of the die than on the other, the center of mass shifts towards the side with more material. Even if there could still be a "center of symmetry" of the dice with engraved sides, the uneven removal of material from one extension member facet to the next (irregular because there would be a number 1 engraved on one face, and a number 8 on another, or one pip versus six pips) results in the center of mass moving towards faces that have less engraving. The center of mass would be different for each die that had different engraving, depending on the extent and depth of the engraving and its location on the surfaces of the die. The center of symmetry, if there were one, would not change (for example, even if there are indentations on the extension members, the lines of symmetry running between the end cap facets on the dice would continue to be bisected by the original center of symmetry). As a result, the Plaintiff's claim construction would describe a die in which the center of mass was different from the "precise center of symmetry" of the die. As a result, by the Plaintiff's own reasoning, his claim construction would not "provide[] for a fair playing die." *See* '197 Patent at Col. 4, Lines 62-65, Col. 6, Lines 9-13, Col. 7, Lines 6-10. Had the Plaintiff truly thought he was claiming dice with indented indicia, he would not have gone to such great lengths to explain the significance of the relationship of the center of symmetry and the center of mass for his dice. The only reasonable deduction is that the Plaintiff did not, in fact, claim non-flat-sided dice.

The Plaintiff's claim construction would therefore exclude his own preferred embodiments, a construction that the Plaintiff concedes would be inappropriate. *See* Plaintiff's Br. at 9 ("a claim construction that excludes a preferred embodiment of a patent is rarely, if ever, correct") (citing *Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 429 F.3d 1364, 1374 Fed. Cir. 2005). The Federal Circuit has explained the limitations of that general rule, however: a claim construction that excludes a preferred embodiment may be correct where there is "highly persuasive evidentiary support" for the construction. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996). In this case, the explicit, highly specific language describing the identical points for the "center of symmetry" and "center of

mass" of the dice (which the purportedly contribute to the fact that the claimed dice are "fair playing" dice) constitutes highly persuasive evidence such that, even if one were to conclude that the drawings *might* depict a different embodiment of the Plaintiff's concept for the dice, the only reasonable claim construction would exclude those embodiments, since to conclude otherwise would do violence to the express language of the claims and the detailed description in the patent itself.

In light of the Specification's statement that the drawings are illustrations of the preferred embodiments described verbally in the Specification, and the Plaintiff's brief wherein he does not claim that the drawings reflect different preferred embodiments of the invention, Hasbro submits that the drawings are likely just inaccurate illustrations and should not be considered to expand on the express claims. *See id.* at 1582 (noting that patent terms are afforded their ordinary and customary meaning; patentee will be found to have modified the terms only where such a definition is "clearly stated") and *Don Lee, Inc. v. Walker*, 61 F.2d 58, 64 (9th Cir. 1932) (finding patent drawings to be clearly mistaken when contradicted by the text of the patent).

By contrast, Plaintiff's argument that Hasbro's construction must be incorrect because it "excludes a preferred embodiment" is without merit. First, Plaintiff assumes that the preferred embodiments described in the patent include extension member facets of differing shape and differing surface area. *See* Plaintiff's Br. at 9 ("Patent Figure 1 clearly shows that the indicia (30) is printed into the facet (32)."). The drawings are not nearly so clear as the Plaintiff suggests. Although Hasbro freely concedes that there appears to be a three-dimensional aspect to the numbers on the extension member facets depicted in the patent, there is no indication that those numbers amount to a hollowed-out area (that is, that the numbers are empty recesses in the extension member faces). The three-dimensionality depicted is fully consistent with the numbers being made of some material distinct from the balance of the die inserted into the extension

member surface, leaving a flush, flat surface (*e.g.*, a different-colored plastic pressed into the die). Another alternative is that the indicia could be the result of "dye sublimation printing," a process whereby a dye is heated and vaporized, permitting the dye to penetrate a polymer substrate by anywhere from a few thousandths of an inch to a full quarter-inch. *See* Lilli Manolis Sherman, *Dye Sublimation Printing: Durable Color Decoration for 3D Parts*, Plastics Technology Online, http://www.plasticstechnology.com/articles/200509cu1.html (**Exhibit G**); *see also* Deposition of Kurt Benson at 36:9-37:3 (**Exhibit H**). Many of the dice depicted on the website of Plaintiff's dice expert, Kevin Cook, illustrate the possibility of having indicia that appear to have a three-dimensional presence, but whose inclusion does not render the dice non-flat. For example, the following is represented to be a "precision" die and appears to be from the Flamingo Casino in Las Vegas (image taken from the Plaintiff's dice expert's website, at http://www.dicecollector.com/CASINO_FLAMINGO_03.jpg (last accessed June 20, 2006)):




If a draftsman were to depict these dice in a wire diagram, he might naturally reflect the structure involved in the casino logos and associated lettering; that would not mean, however, that the sides of the dice were non-flat.

In short, although the drawings suggest some ***structure*** to the indicia, they do not clearly or definitively show that the indicia are recessed or indented, or that the indicia cause the so-called "facets" to be anything other than that: facets.

The Plaintiff's contention that Hasbro's construction would exclude preferred embodiments also fails because the Plaintiff inaccurately suggests that the drawings constitute "preferred embodiments." Rather, the preferred embodiments are those described in the "Detailed Description of the Preferred Embodiments," contained in Columns 2 through 7 of the '197 Patent, and which the patent claims are "illustrated in the accompanying drawings." *See* '197 Patent at Col. 2, lines 58-60. The Specification clearly describes an embodiment of the invention in which the extension member is comprised of "facets" having identical shapes and equal surface areas (inclusive of the indicia), and therefore the drawings, to the extent they are considered, must be understood to be consistent with that plain, unambiguous language. Assuming that the drawings depict dice with engraved indicia, it would be incorrect as a matter of law to disregard the plain language of the claims in favor of an otherwise undisclosed claim to dice with non-flat extension member sides. *Athletic Alternatives, Inc. v. Prince Manufacturing, Inc.*, 73 F.3d 1573, 1581 (Fed. Cir. 1996). Nor can the Plaintiff rely on the supposed tension between the claims and the written Specification, on the one hand, and the drawings on the other. A patent claim may be interpreted only as broadly as its unambiguous scope. Indeed, to the extent that the claim is ambiguous, the Court must adopt a narrow reading that excludes ambiguously covered subject matter. *Id.* at 1581 (construing 35 U.S.C. § 112).

The Plaintiff is incorrect in his argument that the inclusion of "printed indicia" in dependent claim 2 means that the claimed "facets" would not be flat. *See* Plaintiff's Br. at 10. In the gaming (*i.e.*, gambling) industry, the physical form of dice is subject to very specific regulations. *See, e.g.*, 68 IND. ADM. CODE 14-3-3 ("Dice Specifications"); MO. CODE REGS. ANN. tit. 11, § 45-5.260 ("Dice Specifications"); N.J. ADM. CODE § 19:46-1.15 ("Dice; Physical Characteristics") (**Exhibit I**). Just as the claim language in the '197 Patent, these state regulations speak of information (*e.g.*, spots or serial numbers) being "imprinted or impressed" on a die, while at the same time requiring that the die have "the surface of each of its sides

perfectly flat and the spots contained in each side perfectly flush with the area surrounding them." *Id.* Each of these regulations also explicitly requires that the texture and finish of each die must be identical to the texture and finish of each of the other sides. *Id.*[9] The Plaintiff is simply wrong to suggest that there is some inconsistency between the claim language, which permits for "printed indicia" on the extension member facets, and Hasbro's construction of the claims in accord with their plain meaning. The claimed "facets" can be facets (that is, flat surfaces) while still containing "imprinted or impressed" indicia.

The Plaintiff's dice expert, Kevin Cook, agrees. At his deposition, Mr. Cook drew a sharp distinction between "printing" symbols on dice and "indenting" them. *See* Dep. of Kevin Cook (**Exhibit D**) at 207:16-208:17. Despite this candid admission that "printed indicia" is different from engraved or recessed indicia, Mr. Cook later stated that he believed that "printed indicia" in the patent meant any form of indicia at all, whatsoever and however applied to the die (printing, molding, engraving, etc.), but his sole explanation for that conclusion had nothing to do with the claim language, but only that it is common to use such means of marking dice. *Id.* at 211:4-212:19. Such use of extrinsic evidence to expand the actual claims of the patent is entirely inappropriate. *Sunrace Roots Enterprise Co. v. Sram Corp.*, 336 F.3d 1298, 1307 (Fed. Cir. 2003) ("the intrinsic evidence resolves any ambiguity about the appropriate construction of 'shift actuator,' and therefore consideration of extrinsic evidence is inappropriate."); *Pfizer, Inc. v. Teva Pharms. USA*, 429 F.3d 1364 (Fed. Cir. 2006) (expert testimony is a form of extrinsic evidence). *See also White v. Dunbar*, 119 U.S. 47, 52 (1886) ("[I]t is unjust to the public, as well

---

[9] For example, the Indiana Regulation, in relevant part, mandates that all dice (1) must be "formed in the shape of a perfect cube," (2) must be be transparent except for spots, the name or logo of the licensee, and serial number or letters, (3) must have sides with surfaces that are "perfectly flat,", with "the spots contained in each side of the die [...] perfectly flush with the area surrounding the spots; (4) must have "the texture and finish of each side [...] exactly identical to the texture and finish of all other sides" and (5) must have weight that is equally distributed throughout the cube, and no side of the cube may be heavier or lighter than any other side of the cube."

as an evasion of the law, to construe [a claim] in a manner different from the plain import of its terms. This has been so often expressed in the opinions of this court that it is unnecessary to pursue the subject further."). Fuzzy dice with strings attached that can be hung from rear view mirrors might be common, but that is not what the Plaintiff claimed in his patent.

Moreover, there is no reason to conclude that "printing" means anything other than what Mr. Cook meant when he referred to printed, as opposed to indented, indicia on dice. Had the patent meant to claim dice with indicia that were engraved, stamped, printed, or otherwise placed on the dice, it would have been the essence of simplicity to indicate that. The patent could have described them explicitly (using the words "engraved," etc.) or it could simply have indicated that the extension member faces bore indicia. *See Nystrom v. Trex Company, Inc.*, 374 F.3d 1105, 1112 (Fed. Cir. 2004); *see also*, *e.g.*, *Ranbaxy Pharms. v. Apotex, Inc.*, 350 F.3d 1235, 1241 (Fed. Cir. 2003) (patentee obliged to include foreseeable equivalents in express claim language). Of course, it would also have been necessary to account for the fact that non-printed (*i.e.*, non-flat) indicia would have changed the nature of the "facets" and the description of the center of mass and center of symmetry of the dice. But the Plaintiff's decision ***not*** to include such information, either in the claims or anywhere else in the written description of the dice, is strong evidence that the Plaintiff was, in fact, only claiming what was actually described.

### C. Plaintiff's Proposed Claim Construction Would Render The Limitation Concerning "Equal Surface Areas" Surplusage

Finally, the Plaintiff's position in this case is at odds with well-established canons of claim construction. The Plaintiff would have this Court conclude that of the two limitations at issue, namely that the extension member facets are "identically shaped" and that they have "equal surface areas," *the latter is entirely superfluous*. By construing the latter to refer only to the two-dimensional area bounded by the shape of the extension member facet (*i.e.*, its shape),

the Plaintiff turns the two limitations into just one. If the facets each have the same physical shape, their perimeters will of necessity define the same surface area. For example, a given circle would define a particular surface area. In measuring the surface area of a dome with a circumference equal to that circle, however, the result would be precisely the same if one were merely to look at the circular outline at the base of the dome.[10] In the context of the Plaintiff's dice, if one simply assumes away contours on the surfaces of the dice, there would be no need to specify separately that (1) the shape is the same and (2) that each has the same surface area.

Such a result would be contrary to principles of claim construction. Where a patentee uses two different terms in his claims, there is an inference that the two terms have distinct meanings, and that neither is superfluous. *See, e.g.*, *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1119 (Fed. Cir. 2004); *Bancorp Services v. Hartford Life Ins.*, 359 F.3d 1367, 1373 (Fed. Cir. 2004); *Texas Instruments Inc. v. Int'l Trade Comm'n*, 988 F.2d 1165, 1171 (Fed. Cir. 1993) (improper to "read an express limitation out of the claims" or "render the disputed claim language mere surplusage").

## IV. Conclusion

For the foregoing reasons, Hasbro respectfully submits that the proper construction of the disputed claim language is as follows:

A. "Identically shaped" means that each extension member facet has the same or substantially the same shape, as defined by the outer perimeter of each such facet; and

B. "Equal surface areas" means that each extension member facet has the same or substantially the same surface area, measured as the surface of a three-dimensional object (*i.e.*, taking into account the contours of such facets).

---

10 *See supra* at 7-8 and n. 4.

HASBRO, INC.
By its Attorneys,

Todd D. White (# 5943)
Jeffrey K. Techentin (#6651)
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
(401) 274-7200
Fax: (401) 751-0604/ 351-4607
Dated: June 20, 2006

Of Counsel:

David K. S. Cornwell, Esq.
Tracy-Gene G. Durkin, Esq.
Sterne Kessler Goldstein Fox
1100 New York Avenue, NW
Washington, D.C. 20005

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of June 2006, I caused a true copy of the within to be served on the following individuals by the methods indicated:

***Via Hand Delivery and Electronic Mail***
Craig M. Scott, Esq.
Christine K. Bush, Esq.
Duffy & Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903

Of Counsel:

***Via First Class and Electronic Mail***
Thomas J. Leach, Esq.
Douglas J. Williams, Esq.
Law Firm of Merchant and Gould P.C.
3200 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402-2215

***Via First Class and Electronic Mail***
David K. S. Cornwell, Esq.
Sterne Kessler Goldstein Fox
1100 New York Avenue, NW
Washington, D.C. 20005

*384471_1*