IN THE UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MICHAEL BOWLING, a Resident of Arizona, Plaintiff, | : | C.A. No. 05-229S |
| v. | : | |
| HASBRO, INC., a Rhode Island Corporation, Defendant. | : | |

## PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF

### I. INTRODUCTION

This patent infringement case involves a unique and very popular new design for game dice. Until Michael Bowling's ("Bowling") invention, the basic shape for common game dice had not changed for many years. The patent illustrates several ways to make the "jewel-like" dice, including a six, ten and twenty sided die. The basic concept Bowling invented is alternating triangle-shaped surfaces with smaller triangles on the ends to create a crystal/jewel like appearance. The triangular shape provides a larger area at the base for the dots or the numbers to be printed on each facet. While the patent provides a variety of written claims defining the invention in various word descriptions, the technology is not complex and does not require an exacting scientific or highly technical analysis. The invention is basically what you see in the drawings.

Hasbro, Inc.'s ("Hasbro") accused die is identical to the die shown in Bowling's patent. While the drawings show engraved numbers on the sides, the patent expressly covers "dots" (which Hasbro uses) or other kinds of markings. In an attempt to avoid responsibility for its

clear infringement, Hasbro wants the Court, through the process of construing the patent claims, to require very limited and unintended meanings for certain of the patent's claim phrases. To that end, Hasbro has asked the Court to construe the following two claim phrases: (1) "facets being identically shaped and having equal surface areas" (claim 1) and (2) "facets being equal in surface area" (claim 17). Hasbro likely hopes that this Court will ignore the specification and adopt a construction that excludes dice with indented indicia—a construction that would be reversed on appeal because it is contrary to the specification and excludes the preferred embodiments described in the patent.

## II. BACKGROUND

### A. Michael Bowling's Dice Invention

In 1997, Bowling invented a new die for game playing. The new die was generally crystal-shaped; not the traditional six-sided cubic die. In 1998, Bowling applied to the U.S. Patent and Trademark Office ("Patent Office") for a patent on his new crystal die. A commercial embodiment of Bowling's crystal die is shown below:




(Bowling's Patented Commercial Product)

Bowling started a company named "Crystal Caste" to sell his patented die. The crystal-shaped die was an instant success. At a 1998 trade show, Bowling's company brought 10,000 of his new crystal die and sold out before the show was over. (Ex. A at p. 141:11-13.) Hasbro's director of game design attended the 1998 trade show and saw Bowling's new crystal-shaped die. (Ex. B at p. 15:19 - p. 22.)

**B. U.S. Patent Office Grants Bowling A Patent**

On August 17, 1999, after full examination of Bowling's patent application and several prior art references, the Patent Office granted Bowling U.S. Patent No. 5,938,197 ("the '197 patent"), entitled Random Number Generator for Game Playing. (Ex. C.)

Figures 1, 4, and 5 of the '197 patent illustrate one embodiment of Bowling's innovative new crystal-shaped die:




(Ex. C at Sheet 1 (emphasis added).) Importantly, all of the die shown have numbers (indicia (30)) indented on each extension-member facet (32).[1] *Id.* In describing this preferred embodiment, which so clearly shows indented indicia, the specification expressly states that the facets (32) are identically shaped and have equal surface areas: **"Preferably, each of the**

[1] Hasbro's former game designer, Eileen Sefchick, experienced in reading design drawings, including patent drawings like those in the '197 patent testified that the '197 patent Figures clearly show engraved numbers. (Ex. D at p.102:22-105:22.)

**discrete facets 32 are identically shaped and have equal surface areas to each other.**" (Ex. C, Col. 3, ll. 6-8 (emphasis added).) Thus, the specification explicitly states that in the context of this invention, extension-member facet (32) with the "6" engraved into it is identically shaped and of equal surface area as the extension-member facet (32) with the "3" engraved into it, which is identically shaped and of equal surface area as the extension-member facet (32) with the "2" engraved into it.

**C. Hasbro's Accused Die**

After attending the 1998 trade show and seeing Bowling's popular new crystal-shaped die, Hasbro included a near identical copy of Bowling's crystal die in its Monopoly Millennium Game—the only difference being that polka dots were used instead of alphanumeric indicia:



(Hasbro's Accused Die)

**D. The Claim Phrases In Dispute**

Claims 1 and 17 of the '197 patent contain the disputed language and read as follows, with the disputed language bolded:

| | |
|---|---|
| 1. A die construction comprising:<br><br>(a) a body having first and second, opposite end caps and an extension member therebetween;<br><br>(b) said extension member having a first number of discrete facets and no more than said first number; | 17. A die comprising:<br><br>(a) a body including a first end cap, a second end cap, and an extension member in extension therebetween;<br><br>(b) said first end cap including a first number of facets and no more than said first number; said second end cap including |

| | |
|---|---|
| (i) each of said discrete **facets being identically shaped and having equal surface areas**;<br><br>(c) said first end cap having a second number of discrete facets and no more than said second number; said second number being one-half of said first number;<br><br>(i) each of said first end cap discrete facets being identically shaped and having equal surface areas; and<br><br>(d) said second end cap having said second number of discrete facets and no more than said second number;<br><br>(i) each of said second end cap discrete facets being shaped identically as said first end cap discrete facets; and each of said second end cap discrete facets having a surface area equal a surface area of each of said first end cap discrete facets; and<br><br>(e) each of said discrete facets of said extension member having a surface area that is different from a surface area of each of said discrete facets of said first and second end caps. | a second number of facets and no more than said second number; and said extension member defining a third number of facets and no more than said third number;<br><br>(i) said first number being equal to one-fourth of a total of said first number and said second number and said third number;<br><br>(ii) said second number being equal to one-fourth of the total of said first number and said second number and said third number;<br><br>(iii) each of said **extension member facets being equal in surface area**;<br><br>(iv) each of said extension member facets being triangular-shaped;<br><br>(v) each of said extension member facets having indicia thereon indicating a number; and<br><br>(vi) each of said extension member facets having a surface area that is different from a surface area of each of said first and second end cap facets. |

Ex. C, at Col. 7:42-67 (claim 1) and Col. 8:56-Col. 9:13 (emphasis added).

Hasbro asked this Court to construe the following phrases of the '197 patent: "being identically shaped" and "having equal surface areas." To properly construe these phrases, however, the entire phrase must be construed, not just portions of it. *Deere & Co. v. Toro Co.*, 57 Fed. Appx. 442, 445 n.1 (Fed. Cir. 2003) (unpublished). Thus, the phrases in dispute are the following phrases of claims 1 and 17:

**Claim 1**: "facets being identically shaped and having equal surface areas"

**Claim 17**: "extension member facets being equal in surface area."

## III. ARGUMENT

### A. Claim Construction Law

The construction of patent claims is a legal determination. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 391 (1996). The words of a claim "are generally given their ordinary and customary meaning" as understood by one of ordinary skill in the art. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F3d. 1576, 1582 (Fed. Cir. 1996)). "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but also in the context of the entire patent, including the specification." *Id.* at 1313. As a general rule, the patent specification is "the single best guide to the meaning of a disputed term." *Id.* at 1315 (quoting *Vitronics*, 90 F.3d at 1582). "The specification is, thus, the primary basis for construing the claims." *Phillips,* 415 F.3d at 1315 (quoting *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985)). Where a claim term is capable of more than one "ordinary and customary meaning," it must be given its broadest interpretation. *Phillips*, 415 F.3d at 1316 (noting that the Patent and Trademark Office determines the scope of claims in patent applications by giving the claims their broadest reasonable construction in light of the specification as it would be construed by one of ordinary skill in the art).

In addition, an inventor may, in the specification, explicitly explain the meaning of terms used in the claims. *Jack Guttman, Inc. v. Kopykake Enter., Inc.*, 302 F.3d 1352, 1360-61 (Fed. Cir. 2002); *Phillips*, 415 F.3d at 1316 (stating that "the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise posses"). In such circumstances the patentee's meaning of the term controls. *Id.*

Finally, extrinsic evidence may also be used in construing claims, as long as it does not contradict the intrinsic evidence. *Phillips*, 415 F.3d at 1317-18. Extrinsic evidence includes dictionaries, treatises and expert testimony. *Id.* at 1317. Where a claim term is capable of more than one definition that is consistent with the use of the word in the intrinsic record, the claim term encompasses all consistent meanings. *Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1300 (Fed. Cir. 2003). Expert testimony may also provide background on the technology, explain an invention, or establish that a particular term in a patent has a particular meaning in the pertinent field. *Phillips*, 415 F.3d at 1318.

**B. The Disputed Claim Language Means That The Facets Have An Identical Shape And Equal Surface Areas, Without Regard To The Indented Indicia.**

The intrinsic evidence, in this case the claim language and the specification, makes clear that Bowling's proposed claim construction (shape and surface area without regard to indented indicia) is the correct construction. Any other construction is at odds with the intrinsic evidence.

**1. The Inventor Clearly Explains The Disputed Claim Language's Meaning In The Context Of The Invention And That Meaning Controls**

The patent specification provides the inventor the opportunity to explain how terms are used in the context of the invention. *Phillips*, 415 F.3d at 1316. Here, the inventor explicitly explained what "being identically shaped" and of "equal surface areas" means in the context of his invention. In the specification, the inventor explained that the extension-member facets of the patent figures are "identically shaped" and of "equal surface areas" despite differences due to indicia indented into the facets. That meaning controls. *Id.*

The specification illustrates preferred embodiments of the invention in Figures 1-5. (Ex. C. Col. 2:63-64.) Figures 1-5 illustrate that in a preferred embodiment of the invention, numeric indicia are printed (indented) into the extension-member facets (32). For example, Figure 1

shows that the indicia, the "2," "3," and "6," are engraved into the extension-member facets (32), by use of three-dimensional numbers. The specification explains that despite the "2," "3," and "6" engraved into the facets (32), each are identically shaped and have equal surface areas: [2]

FIG. 1




> The extension member 28 includes a plurality of discrete facets 32. Preferably, **each of the discrete facets 32 are identically shaped and have equal surface areas to each other.** That is, each of facets 32 has a surface area which is equal to and no greater and no less than the surface area of any other of the facets 32.
>
> (Ex. C at Col. 3:5-10 (emphasis added))

The patent specification also explains that, despite numbers indented into the facets of Figure 1, "[e]ach of the surface areas of discrete facets 32 of extension member 28 are equal." (*Id.* at Col. 4:61-62.) Thus, the specification makes clear that the extension-member facets (32) are "identically shaped" and "of equal surface areas," despite the engraved numbers, such as the "2," "3," and "6."

The specification also explains that the extension member facets include printed[3] indicia. (Ex. C at Col. 1:48-50.) Such printed indicia may take the form of numbers or other markings, such as polka dots. (*Id.*) Polka dots, commonly referred to as "pips," are slight indents, usually

[2] The reference numbers 32 in Figure 1, highlighted by the red circles, refer to the extension-member facets (32), namely the facets (32) with the "2," "3," and "6," engraved into it.

[3] Print means "to make an impression in or upon," "to cause (as a mark) to be stamped: make (an impression or mark ) by as or if by pressure," or "to apply pressure with . . . so as to leave an impression." Ex. E at 1803.

colored, on the facet of the die used to represent numeric values. (Ex. I at ¶¶ 6-7) An example of a standard six-sided die with polka dots or pips is shown below:



In the context of the preferred embodiments, the specification teaches that the extension member "facets 32 has indicia 30 thereon, and in the illustrated embodiment, this indicia 30 is a numerical integer from one to six, inclusive." (Ex. C, Col. 5:14-16; *see also* Ex. C at Col. 1:48-50.) Patent Figure 1 clearly shows that the indicia (30) is printed into the facet (32). Construing the disputed claim language to take into account the indented indicia in the facets' shape and surface area in determining if they are "identical" and "equal" would not only exclude the most common method of placing indicia on a die, but would also exclude the preferred embodiments shown in the patent figures. In other words, such a claim construction would only cover a flat-sided die, and not the patent's preferred embodiments. The Federal Circuit has held that a claim construction that excludes a preferred embodiment of a patent is rarely, if ever, correct. *Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 429 F.3d 1364, 1374 (Fed. Cir. 2005).

**2. The Claim Language Supports Bowling's Construction**

**a. "Facet" refers to the two-dimensional planar surface.**

Claim 1 uses the words "discrete *facets* being identically shaped and having equal surface areas." It is important to understand that it is the facets, in this case the extension-member facets, that are identically shaped and have equal surface areas. A facet is a planar surface, such as on a diamond. (Ex. H at 271; Ex. E at 812.) A plane is a two-dimensional surface that has no depth. (Ex. H at 560; Ex. E at 1730.) In other words, when the claim talks about the facet's

shape it is specifically describing the planar surfaces of the die without regard to indented indicia. Thus, the indented indicia on the facets of the die have no impact on the "facet's" shape or surface area. In other words, the "facets" are identically shaped and of equal surface area without regard to the indented indicia. Again, this meaning is underscored by the specification (see above).

**b. Hasbro's claim interpretation would cover only a flat-sided die.**

Hasbro has argued that because its die has six indented polka dots on one facet, five on another, and so on, that each facet's shape is not identical to any other and that each facet has a different surface area than the others. Hasbro's anticipated proposed claim construction—that the facet's shape and surface area take into account the indentations and those indentations preclude the facets from being identically shaped and of equal surface area—is contrary to the claim language which clearly contemplates facets being "identically shaped" and of "equal surface area" despite indented indicia.

Dependent claim 2 adds the limitation that the extension-member facets include printed indicia. (Ex. C at Col. 8:2-3.) In addition to the indented indicia shown in the patent figures, the term "print" means "to make an impression in or upon," "to cause (as a mark) to be stamped: make (an impression or mark) by or as if by pressure," and "to apply pressure with (as a stomp of the foot) so as to leave an impression," (Ex. E at 1803) and "a mark made by pressure," "something stamped with an impression." (Ex. H at 583.) In other words, dependent claim 2, which includes by definition all of the elements of claim 1 (including identically shaped facets with equal surface areas),[4] would be nonsensical under Hasbro's proposed construction because the printed (indented) indicia in claim 2 would make the extension-member facets both not

[4] A dependent claim incorporates by reference each element from the claim from which it depends. 35 U.S.C. §112. Thus, claim 2 includes each element from claim 1 and its stated additional element.

identically shaped, and unequal in surface area (assuming of course that each facet bears a different number). Hasbro's construction attempts to limit the invention to indicia that is printed perfectly flat on the facets. This construction is at odds with established claim construction principles. *See Brookhill-Wilk 1, LLC*, 334 F.3d at 1300; *Phillips*, 415 F.3d at 1316.

### 3. Dictionary Definitions Support Bowling's Claim Construction

In addition to the intrinsic evidence, the extrinsic evidence also supports Bowling's claim construction. The definition of "surface area," in the context of the patented invention also illuminates the meaning of the disputed claim language. In the context of geometric structures, such as die facets in this case, "surface area" means "the extent of a 2-dimensional surface enclosed within a boundary; 'the area of a rectangle.'"(Ex. F at Dictionary.com, http://dictionary.reference.com/search?q=surface%20area.) The calculation of a triangle's surface area is ½ x base x height. (Ex. G at Reference.com, http://www.reference.com/browse/columbia/areaTABLE). Thus, the definition of surface area and how to calculate it supports the construction of the disputed language, which means the surface area without regard to the indented indicia.

Finally, the definitions of "identical," and "equal" in the context of the patented invention also illuminate the meaning of the disputed claim language. The specification clearly shows that the facets are "identically shaped" and of "equal surface areas" despite the differences due to indented indicia. The dictionary definitions of "identical" and "equal" are consistent with their use in the claims and specification.

"Identical" means "being the same," "essentially alike" (Ex. H at 368) and "being the same," "very similar," and "having such close resemblance and such minor difference as to be essentially the same" (Ex. E at 1122-23). "Equal" means "of the same measure, quantity,

amount, or number as another," "identical in mathematical value or logical denotation: EQUIVALENT," "uniform in quantity or quality, measure or degree." (Ex. E at 766.) These definitions show that the words are not absolute, but are understood in the context of their use. In the context of the invention, the facets are "identically shaped" and of "equal surface areas" without regard to indented indicia. That is, the facets' shape and surface areas are unaffected by the indicia for purposes of the invention. (Ex. I. at ¶ 10; Ex. B at pp. 112-13.)

**4. One Skilled In The Art of Die And Die Design Confirms Bowling's Construction.**

The Federal Circuit has also held that extrinsic evidence in the form of expert testimony can be useful to a court to ensure that the court's understanding of the technical aspects of the patent is consisted with that of a person of skill in the art. *Phillips*, 415 F.3d at 1318. Kevin Cook, a person who holds the Guinness Book Of World Records record for the largest collection of dice and who spent many years designing dice, testified that the disputed claim language requires that the facets be identically shaped and of equal surface areas without regard to indented indicia. (Ex. I at ¶¶ 8-9.)

He explained that to one skilled in the art this is the proper interpretation because a die's facet's shape and surface area, without regard to indented indicia, is what causes the die to be as likely to land on any one facet as another. (*Id.* at ¶ 10.) That is, the tiny differences caused by the indented indicia on the die's facets, whether they be engraved numerals or dots, cause only insignificant variation in the die's performance. (Ex. I at ¶ 10.) Hasbro's own game expert, Mike Gray, agrees with Mr. Cook's conclusions. Mr. Gray testified that for all practical purposes the tiny differences due to indented indicia cause only small unnoticed variations in the die's performance that are well within the acceptable range. (Ex. B at pp. 112-13.) Thus, those

skilled in the art confirm that the proper construction of facets "being identically shaped" and of "equal surface area" means without regard to indented indicia.

## IV. CONCLUSION

The proper construction of the disputed claim language is as follows:

Claim 1: "discrete facets being identically shaped and having equal surface areas" means that the facets are identically shaped and have equal surface areas, without regard to any indented indicia.

Claim 17: "extension member facets being equal in surface area" means that the facets are of equal surface area, without regard to any indented indicia.

The claim language, the specification, including the figures, and the extrinsic evidence confirm that these are the proper constructions.

Date: June 6, 2006

Michael Bowling,

By His Attorneys,

Craig M. Scott, Esq. (#4237)
Christine K. Bush, Esq. (#5587)
DUFFY SWEENEY & SCOTT, LTD
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700
(401) 455-0701 (Facsimile)

Douglas J. Williams, MN (*pro hac vice*)
Thomas J. Leach, MN (*pro hac vice*)
MERCHANT & GOULD, P.C.
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Phone: 612.332.5300
Fax: 612.332.9081

H:\Clients\Bowling\Pleadings\Plaintiff's Claim Construction Brief.doc

TO:

Todd D. White, Esq.
Jeffrey K. Techentin, Esq.
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345

David K. S. Cornwell, Esq.
Tracey-Gene G. Durkin, Esq.
Sterne Kessler Goldstein & Fox P.L.L.C.
1100 New York Avenue N.W.
Washington, DC 20005

I hereby certify that I caused a true copy of the within *Plaintiff's Claims Construction Brief* to be forwarded via First Class Mail to the above named counsel of record on the 6th day of June, 2006.