IN THE UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MICHAEL BOWLING,<br>a Resident of Arizona,<br><br>Plaintiff,<br><br>v.<br><br>HASBRO, INC.,<br>a Rhode Island Corporation,<br><br>Defendant. | : | C.A. No. 05-229S |

**PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION TO COMPEL DEPOSITION TESTIMONY AND FOR OTHER RELIEF**

Plaintiff Michael Bowling ("Bowling") hereby objects to Defendant's Motion to Compel Deposition Testimony and for Other Relief. As grounds for this Objection, Bowling relies on the Memorandum of Law filed herewith.

Michael Bowling,
By His Attorneys,

Date: June 26, 2006

Craig M. Scott, Esq. (#4237)
Christine K. Bush, Esq. (#5587)
DUFFY SWEENEY & SCOTT, LTD
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700
(401) 455-0701 (Facsimile)

Douglas J. Williams, MN (*pro hac vice*)
Thomas J. Leach, MN (*pro hac vice*)
MERCHANT & GOULD, P.C.
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(612) 332-5300
(612) 332-9081 (Facsimile)

**CERTIFICATION**

TO:

Todd D. White, Esq.
Jeffrey K. Techentin, Esq.
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345

David K. S. Cornwell, Esq.
Tracey-Gene G. Durkin, Esq.
Sterne Kessler Goldstein & Fox P.L.L.C.
1100 New York Avenue N.W.
Washington, DC 20005

I hereby certify that I caused a true copy of the within *Plaintiff's Objection to Motion to Compel Deposition Testimony and for Other Relief* to forwarded via First Class Mail to the above named counsel of record on the 26 day of June, 2006.

Theresa Benson

H:\Clients\Bowling\Pleadings\Objection to Motion to Compel Deposition Testimony.doc

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MICHAEL BOWLING, a Resident of Arizona, | : | |
| Plaintiff, | : | C.A. No. 05-229S |
| v. | : | |
| HASBRO, INC., a Rhode Island Corporation, | : | |
| Defendant. | : | |

**MEMORANDUM IN SUPPORT OF BOWLING'S OBJECTION TO HASBRO'S MOTION TO COMPEL DEPOSITION TESTIMONY AND FOR OTHER RELIEF**

## I. INTRODUCTION

Hasbro, Inc.'s ("Hasbro") Motion to Compel Deposition Testimony from Kevin Cook should be denied. Strikingly, after a full-day deposition, Hasbro cites to just three questions it alleges were not answered by Mr. Cook. A fair reading of these three questions and answers, however, reveals that Mr. Cook either answered the questions or explained why he could not do so without further investigation. In one instance, with just minutes remaining in the deposition, Hasbro surprised Mr. Cook and Michael Bowling's ("Bowling") counsel with a previously undisclosed model of alleged prior art dice. Responding to a demand for an on-the-fly analysis of the model, Mr. Cook explained he needed more time than the remaining five minutes to do the analysis and answer the question posed. In short, this example and the two others cited do not support requiring Bowling to fly to his expert across the country to Rhode Island for another day long deposition.

Moreover, contrary to Hasbro's assertions, Bowling's counsel did not interfere with the deposition or prevent Hasbro from deposing Mr. Cook, but instead acted entirely properly throughout. Hasbro is not entitled to the fees and expenses it incurred in connection with the original deposition, nor is it entitled to an inference that Bowling's witness would have answered "yes" to the question asking if Bowling's patent was invalid.

## II. RELEVANT FACTS

### A. Background Facts

Plaintiff, Michael Bowling ("Bowling") hired Mr. Cook to provide analysis, as one skilled in dice and dice design, as to the meaning of particular claim terms.[1] (Ex. A at 168:9-11.) Mr. Cook was not retained as an expert in patent law and has no experience in patent law. (*Id.* at 5:7-11; 6:18-20; 168:9-11.) He has also never been an expert witness in a lawsuit, prepared an expert report, or been deposed.

Bowling's counsel provided Mr. Cook with the appropriate legal standards, which are disclosed in Mr. Cook's report. (Hasbro's Brief at Ex. A.) Bowling's counsel also provided Mr. Cook with an example report for Mr. Cook to review for format. (Ex. A at 80:10-14.) Mr. Cook used the legal standards and his experience in dice and dice design to determine the meaning of the disputed terms and to compare the patent claims to Hasbro's accused dice to determine if Hasbro's dice infringe any claims of the '197 patent. (Hasbro's Brief Ex. A and B.) Mr. Cook concluded that Hasbro's dice infringed certain claims of the '197 patent and provided to Hasbro a report explaining his opinions and basis therefore. (*Id.*)

---

[1] In construing a patent, claim terms are given their ordinary and customary meaning, which is the meaning that term would have to a person of ordinary skill in the particular art. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc).

Hasbro's counsel had seven hours to depose Mr. Cook regarding his opinions provided in his report. (Ex. A at 265:22-266:13.) Hasbro's counsel wasted the entire morning inquiring into Mr. Cook's background and procedure for preparing his report rather than his opinions.

**B. Mr. Cook Answered Hasbro's Questions.**

Hasbro's counsel asked Mr. Cook whether he had given any thought to shapes of dice not at issue in this lawsuit. (*Id.* at 156:8-12.) Mr. Cook responded to the question stating that "I was asked to examine how the Hasbro accused dice applies and infringe the elements of the '197 patent. That was all I was asked to do." (*Id.* at 156:13-157:21.) Hasbro's counsel proceeded to argue with Mr. Cook about his answer. (*Id.*) Mr. Cook again answered his question and explained that was the best he could do. (*Id.*)

Hasbro's counsel also asked Mr. Cook about the meaning of surface area. (Hasbro's Brief at 4.) Mr. Cook responded by provided his meaning of surface area in the context of the '197 patent. (Ex. A at 175:10-14.) Hasbro's counsel then asked what surface area means to Mr. Cook without regard to the '197 patent. (*Id.* at 175:20-23.) Mr. Cook answered the question: "[s]urface area means the square unit area of a particular surface." (*Id.*)

**C. Hasbro Attempted To Force Mr. Cook To Conduct On The Fly Legal Analysis With Insufficient Information and Time.**

Near the end of the deposition, Hasbro's counsel attempted to force Mr. Cook to conduct legal analysis without providing him with sufficient time or information. (*Id.* at 225:4-229:6.) Mr. Cook stated that "I wasn't going to answer the question." (*Id.* at 226:3-4.) Bowling's counsel objected, explaining that Mr. Cook was not an expert in patent law. (*Id.* at 226:12-227:3.) After Bowling's counsel's objection, Hasbro's counsel

stated "[y]ou may answer the question." (*Id.* at 227:4-5.) Bowling's counsel did not thereafter object and Mr. Cook provided his answer explaining that he would need more information to answer the question. (*Id.* 227:6-15 ("I would have to see the die to make a determination").) Hasbro's counsel proceed to badger the witness trying to force him to conduct an on the fly analysis. (*Id.* at 228:7-24.) Mr. Cook again answered "I can't answer a question on a theoretical die that I have not examined yet." (*Id.* at 228:23-24.) [2]

Later, Hasbro again tried to force Mr. Cook to conduct an on the fly analysis without sufficient information or time. (Ex. A at 259:2-260:18.) Mr. Cook clearly explained that he would need to see the shape to conduct the analysis. (*Id.* at 260:11-18.)

Finally, with about five minutes left in Hasbro's seven hours of deposing Mr. Cook, Hasbro's counsel pull out a physical exhibit, which Hasbro had not previously disclosed to Bowling, and asked Cook to perform an on the fly obviousness analysis on it. (*Id.* at 260-264.) Mr. Cook explained that he would need more that five minutes to perform such an analysis:

| | |
|---|---|
| Q. (BY MR. TECHENTIN) | Can you analyze whether this would constitute a prior art reference, assuming it's prior art to the '197 patent, that would render the '197 patent obvious? |
| A. | I have never seen this die before. |
| MR. LEACH: | And I object to the question. |
| Q. (BY MR. TECHENTIN) | I understand that, and I asked you to hypothesize a shape, and you said I'd need to see the die. I said if you could see the die, could you do it, and you said you could. Can you? |

[2] While Hasbro's attorney claims the witness was instructed not to answer, the record shows that the witness did answer his questions to the best of his ability. (Ex. A at 227:14-228:24.) This is in stark contrast to Hasbro's counsel's behavior instructing a Hasbro witness not to answer a key question. For example, during the 30(b) (6) deposition of Hasbro, Hasbro's counsel instructed a witness not to answer a straight forward question. (Ex. C at 87:3-88:1.) The witness provided no answer. (*Id.*)

A. Yes, I can.

Q. And what's your conclusion?

A. I would need to study it more in depth.

Q. Well, I thought you said you could do it.

A. I can.

Q. How long will it take you?

A. I can't say at this point.

Q. More than five minutes?

A. Yes.

Q. More than a day?

A. I would say yes.

(*Id.* at 262:8-263:8.) Mr. Cook went on to explain that he would need to study the die and the applicable law to come to a conclusion. (*Id.* at 263:22-265:10.)[3] After seven hours of deposing Mr. Cook, the deposition was concluded. (Ex. A at 265:17-266:25.)

## III. ARGUMENT

Hasbro complains that Mr. Cook "refused, point blank" to answer three of its questions during a seven-hour deposition and that Bowling's counsel interfered with the deposition to the point of "materially prejudic[ing] Hasbro's ability to effectively cross examine the witness." But the record provided by Hasbro shows that Mr. Cook either answered Hasbro's questions or stated that he could not do so because Hasbro did not

---

[3] While Hasbro complains that Mr. Cook would not perform on the fly analysis, it quickly forgets that its own more experienced witnesses refused to do so. Hasbro designated its in-house patent counsel, who has 25 years of patent law experience, to testify on a 30(b) (6) topic related to infringement. At that deposition, Hasbro's patent attorney refused to conduct an "off the cuff" infringement analysis despite having advanced notice and being designated to testify on the exact issue on which he was questioned. (Ex. D at 75:7-77:12.)

give him enough information or time to conduct a proper analysis. Similarly, Bowling's counsel did not interfere with Hasbro's seven-hour examination of Mr. Cook, and any less than "textbook" objections did not prejudice Hasbro.

**A. Question One: Thoughts about covered dice shapes not involved in this case?**

Mr. Cook was hired by Bowling to examine the Hasbro dice in view of Bowling's patent claims. Hasbro spent hours deposing Mr. Cook about his opinions. Then Hasbro asked a question not about the dice in this case, not about dice in general, but about "shapes of dice" that would be covered by Bowling's patent. (Hasbro Brief at 3.) Despite being a confusing question about "thoughts" and "shapes," Mr. Cook answered the question, three times. He first responded "I was asked to examine how the Hasbro accused die applies and infringes the elements of the '197 patent. That was all I was asked to do." (Ex. A at 156:8-16.) He also stated that he examined the '197 patent Claims 1 through 9, 16 through 19, and how they apply to the Hasbro accused die." Hasbro's counsel then proceed to argue with Mr. Cook because he did not like his answer. (*Id.* at 156:17-157:21.) Mr. Cook told Hasbro's counsel "I don'[t] know how to answer that question other than the answers that I have given twice." (*Id.* at 157:4-6.) Hasbro apparently wanted a "yes" or "no" answer to its original answer but neither the Federal Rules of Civil Procedure nor the Rules of Evidence entitle Hasbro to such an answer. Bowling's counsel only objected when it became clear that Hasbro would not stop arguing with Mr. Cook about his answer. Mr. Cook then explained that his answer was "the best I can do." (*Id.* at 157:21.)

In a related question, where Hasbro's counsel asked about a hypothetical die not at issue in this case, Mr. Cook stated that he wasn't going to answer the question *even*

*before* Bowling's counsel objected because the question did not define the hypothetical die with enough specificity to conduct the analysis. (*Id.* at 225:4-226:4.) Mr. Cook was not instructed not to answer the question; rather he clearly stated that he could not based on the information provided in the incomplete hypothetical. (*Id.* at 227:4-15; 228:23-24.) In fact, after Bowling's counsel objected Hasbro's counsel stated "[y]ou may answer the question." (*Id.* at 227:4-5.) Bowling's counsel did not object and Mr. Cook provided his answer. (*Id.* at 227:4-15.)

**B. Question Two: What is an ordinary definition?**

Hasbro never explains what an "ordinary definition" of a word is or why it is relevant or even likely to lead to admissible evidence, but Hasbro wanted it from Mr. Cook for the patent claim term "surface area." (Hasbro Brief at 4-5.) Hasbro asked and received an answer as to the definition of "surface area" *with regard* to the '197 patent. (Ex. A at 175:10-14.) Then again *without regard* to the '197 patent: "Surface area means the square unit area of a particular surface." (*Id.* at 175:20-23.) In view of the two answers above, and without laying any foundation as to how an "ordinary definition" differs from one or both of the previous definitions of "surface area," Hasbro launched into a question about whether the "ordinary definition" of surface area would account for contours on the surface. (Hasbro Br. at 5.) Perhaps not eloquent but certainly sufficient, Mr. Cook answered the question: "I have been asked to interpret the '197 patent as regards the facets, the extension member facets, and the relationship between equal surface areas and my interpretation of what equal surface area means." (Ex. A at 176:5-9.) Again, only after Hasbro's counsel began arguing with Mr. Cook, did Bowling's counsel object and attempt to prevent Hasbro's counsel from badgering the witness. The

remainder of the transcript cited by Hasbro reveals that Mr. Cook explained that he had answered the question. (*Id.* at 177:15-16 ("I have answered it when you asked me the question").)

**C. Question Three: Can you analyze this never-before seen model die in 5 minutes?**

One of the tenets of discovery is to avoid surprise and ambush. But Hasbro tried to employ both at Cook's deposition. With just five minutes remaining in an all-day deposition, Hasbro pulled out a previously undisclosed model[4] of an allegedly prior art die and asked Mr. Cook to do an on-the-fly obviousness analysis. Obviousness is very fact intensive analysis. *In re Dembiczak*, 175 F.3d 994, 998 (Fed. Cir. 1999). Mr. Cook did not "point blank" refuse to do the analysis, as Hasbro would have this Court believe. (Hasbro Br. at 3, 8.) Rather, Mr. Cook informed Hasbro's counsel that "he would need to study it more in depth." (Ex. A at 262:16-24.) Mr. Cook answered by explaining that he could not conduct such an analysis in five minutes. (*Id.* at 263:3-6.)

While Hasbro complains that Mr. Cook would not conduct on the fly analysis, Hasbro's own witnesses, Mr. Benson similarly was unable to answer such questions on the very same basis. Mr. Benson, Hasbro's in-house patent attorney with 25 years of patent law experience, appeared to testify on the 30(b)(6) topic of infringement but would not conduct an analysis at the deposition. (Ex. D at 75:7-77:12.) Despite having notice of the topic to which he was supposed to be prepared to testify on, Hasbro's patent attorney refused to conduct an "off the cuff" infringement analysis. (*Id.*)

[4] Hasbro admitted that not only had the model die not been disclosed but it had just been created for the deposition: "Well, not that physical die, but it didn't exist until a couple weeks ago." (*Id.* at 261:1-7.) Although Hasbro claims it disclosed pictures of it, Bowling has no record of such photographs. (*Id.* at 261:1-15.) And even if it did, Hasbro was not using the photos at the deposition but rather the undisclosed, newly created model. When asked for the specific bates numbers of those pictures, Hasbro's counsel provided Bates Number HA008424. Hasbro's Bates No. HA008424 does not disclose a picture of Cook Ex. 4.

### D. The Record Does Not Support Any Of Hasbro's Requested Relief

Bowling's counsel's objections merely reminded Hasbro's counsel that Mr. Cook was not an expert in patent law and at times instructed the witness not to speculate, especially in areas of patent law.[5] The record also shows that Mr. Cook did answer Hasbro's questions or requested more time to do so. Hasbro attempts to use this motion to avoid clear liability by having this Court deem Mr. Cook to have admitted that the '197 patent is invalid. That Mr. Cook could not perform on the fly analysis on a previously undisclosed model with five minutes left in the deposition does not justify this Court deeming Mr. Cook to have admitted the patent is invalid. It also does not justify granting Hasbro more than a full-day deposition or requiring Bowling to pay Hasbro's costs and fees related to the deposition.

## IV. CONCLUSION

Hasbro's motion to compel an additional deposition of Mr. Cook should be denied in its entirety. Hasbro had a full seven hours to depose Mr. Cook and counsel acted appropriately throughout that deposition. Mr. Cook responded to Hasbro's questions or explained why he could not do so without additional information or time. For all these reasons, Hasbro should not get a second chance to depose Mr. Cook, nor is it entitled to an inference, because he could not conduct on-the-fly legal analysis on previously undisclosed dice.

---

[5] While Bowling's counsel cautioned the witness not to speculate that does not amount to coaching the witness. In contrast, at Bowling's 30(b)(6) deposition of Hasbro, Hasbro's counsel coached a witness not to admit that its accused dice have facets, but rather to call them "sides." (Ex. D at 26:24-28:1.) In another deposition, it seemed that Hasbro's counsel was coaching the witness through its objections. (Ex. E at 44:15-24.)

Date: June 26, 2006

Michael Bowling,

By His Attorneys,

Craig M. Scott, Esq. (#4237)
Christine K. Bush, Esq. (#5587)
DUFFY SWEENEY & SCOTT, LTD
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700
(401) 455-0701 (Facsimile)

Douglas J. Williams, MN (*pro hac vice*)
Thomas J. Leach, MN (*pro hac vice*)
MERCHANT & GOULD, P.C.
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(612) 332.5300
(612) 332.9081 (Facsimile)

**CERTIFICATION**

TO:

Todd D. White, Esq.
Jeffrey K. Techentin, Esq.
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345

David K. S. Cornwell, Esq.
Tracey-Gene G. Durkin, Esq.
Sterne Kessler Goldstein & Fox P.L.L.C.
1100 New York Avenue N.W.
Washington, DC 20005

I hereby certify that I caused a true copy of the within *Plaintiff Bowling's Memorandum of Law* to be forwarded via First Class Mail hand delivered to the above named counsel of record on the 26 day of June 2006.