IN THE UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MICHAEL BOWLING, a Resident of Arizona, Plaintiff, v. HASBRO, INC., a Rhode Island Corporation, Defendant. | : | C.A. No. 05-229S |

**PLAINTIFF'S REPLY TO HASBRO'S CLAIM CONSTRUCTION BRIEF**

## I. INTRODUCTION

Hasbro's proposed construction attempts to construe the disputed claim terms in a vacuum, apart from the context of the invention—dice for game playing. It is axiomatic that a patent's terms relate to the particular field of the invention. What "equal" means in the context of an invention dealing with microscopic semiconductor chips, where differences are measured in millionths of an inch, compared to what "equal" means to a baker where ingredients are measured in cups, teaspoons, or dashes can be very different when taken in context. Hasbro's proposed construction ignores the invention's context and unreasonably limits it to flat-sided dice, excluding some of the most common indicia—indented pips—and even the preferred embodiments of the invention.

Hasbro attempts to support this litigation-driven construction by misstating the law and the facts. Hasbro urges the Court to ignore the specification, and even argues erroneously that it can disregard the patent drawings. Hasbro cites no legal authority for its construction methodology because it is directly contrary to established claim construction principles. Hasbro

urges this methodology to prevent the Court from construing the claims in the context of the invention as one skilled in the technology of dice would after review of the entire patent. When properly construed in this context it becomes clear that the disputed claim terms refer to facets being identically shaped and of equal surface areas without regard to indented indicia.

## II. ARGUMENT

### A. The Disputed Terms Must Be Interpreted As Would One Skilled In The Dice Art After Review of The Entire Patent

This Court must construe the disputed claim terms as one skilled in the relevant art would in view of the entire patent, including the drawings. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (*en banc*) ("the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question"). Hasbro attempts to mislead the Court into believing that it must give the disputed claim language its "plain meaning" disregarding the specification's teaching because the disputed claim terms are, as Hasbro puts it, "unambiguous." (Hasbro's Brief at 4.) According to Hasbro, the specification need only be consulted if the claim language is ambiguous. (*Id.*) Hasbro cites no authority for its flawed methodology because there is none. (*Id.*) The Federal Circuit has affirmed *en banc* that claims must be interpreted in view of the specification, which is always highly relevant to the claim construction analysis. *Phillips*, 415 F.3d at 1315. Review of the specification is usually dispositive because it is the single best guide to the meaning of disputed claim terms. *Id.*

Hasbro ignores the specification, argues that "equal" means equal and "identical" means identical, devoid of any context provided by the specification, and proceeds to prove mathematically that a surface with indented indicia has a greater surface area than that surface's plane and that a facet with six pips does not have the same shape as a facet with one pip.

(Hasbro's Brief at 7-8.) None of this, however, has anything to do with construing the disputed claim language of the '197 patent.

Claims are not construed in a vacuum, but in the particular context of the invention. *Phillips*, 415 F.3d at 1313-14. Hasbro's mathematical dissertation is irrelevant to what the disputed claim terms mean in the context of the invention to one of ordinary skill in the art. It is this context that is missing from Hasbro's proposed constructions, when it interprets equal and identical as mathematical absolutes apart from the context of the invention provided by the specification. Like anything, terms have different meanings depending on the context in which they are used. For example, to cut a cake in eight "equal" pieces does not mean that the pieces are mathematically the same, but simply "equal" for purposes of serving cake. A parent may treat all of his children in an "equal" manner, which would be understood in that context. Likewise, the phrases facets having "equal surface area" and being "identically shaped" must be understood in the context of this invention; and the specification must be consulted to provide that context. *Id.* at 1315.

In the context of this invention, facets having "equal surface areas" and being "identically shaped" mean that the facets have the same surface areas and shape despite inconsequential differences due to the indented indicia. In the context of dice, what is important is that the facets have the same planer surface areas (which set the facet's size) and shapes such that it is as likely to land on one facet as another.[1] The specification makes clear that for the purposes of the invention the indented indicia do not affect the die's performance. This construction is supported by the specification where it explicitly states that the extension-member facets (32)

[1] Hasbro confuses "shape" with surface area assuming that if two objects have identical shapes they too must have the same size. However, two equilateral triangles can be identically *shaped* despite one of the triangles being twice as big as the other. The patent, by defining the facets' shapes as being identical *and* surface areas as being equal assures that the facets are the same shape and size.

shown in Figure 1 are all identically shaped and of equal surface areas despite the indented indicia. (Ex. C[2] at Col. 3:6-10.) Moreover, the Summary of the Invention explicitly states that the extension-member facets are identically shaped and of equal surface areas despite having printed indicia thereon. (*Id.* at Col. 1:48-52.) "Printed indicia" clearly includes indented indicia (Ex. I.), which is one of the most common types of indicia used on dice. In the context of the invention, the specification, including the drawings, makes clear that the facets are identically shaped and have equal surface areas despite differences due to "printed" or indented indicia.

While Hasbro attempts to construe the disputed terms to require absolutely mathematically equal and identical facets to exclude dice with indented indicia, it admits that the differences caused by indented indicia (indented pips) are inconsequential for purposes of dice. Hasbro's 30(b)(6) witness, Mr. Kurt Benson admitted that dice, despite having differences due to indented indicia, are "certainly" good enough for their purpose because those differences are inconsequential to the die's performance. (Ex. J at 61:6-62:17; *see also* Ex. K at 43:5-15.) Hasbro argues that the claims require this mathematical precision, which accounts for all possible physical differences due to indented indicia, to avoid infringement because only flat-sided dice could be covered by its proposed construction, and Hasbro's accused die has indented indicia, i.e. indented "pips" or "polka dots."

**B. Hasbro Asks The Court To Ignore The Specification, The Single Best Guide To The Meaning Of Disputed Claim Terms, And Adopt Construction At Odds With It**

**1. The claim term "facets" in the context of the specification shows that it refers to the planar surface area and shape without regard to indented indicia**

The claim language uses the term "facet" as what must be equal in surface area and identically shaped. Hasbro ignores the specification, which shows that the extension-member

[2] Plaintiff refers to Exhibits A-I previously filed in support of Plaintiff's Opening Claim Construction Brief. Any additional Exhibits filed in support of this reply brief start where the previous Exhibits left off, i.e. at Exhibit J.

facets are identically shaped and of equal surface areas despite indented indicia. (Ex. C at Figure 1 and Col. 3:5-10.) That the patentee chose the term "facet" as compared to "faces" or "surfaces" or "sides" shows that in the context of the invention it is the planar shape and surface area that is relevant, not the surface area of the "side" or "face" including slight differences due to indented indicia. As Hasbro freely admits, the slight variation caused by indented indicia is inconsequential to the die's performance. (Ex. J at 61:6-62:6; *see also* Ex. K at 43:5-15.) This admission is critical to putting the meaning of "equal" in the proper context of this "low-tech" invention.

Moreover, in the Summary of the Invention section of the patent, the specification describes the invention as having extension-member *facets* that are identically shaped and of equal surface area despite having printed indicia (Ex. C at Col. 1:34-52.) Nothing in the specification limits "printed indicia" to the particular methods that produce indicia with perfectly flat sides. To the contrary, the Summary of the Invention states that the printed indicia can take the form of "numbers or other *markings*. . ." was specifically intended to cover all the different ways that ordinary dice are made. (*Id.* at Col. 1:48-52.) There the specification shows that in the context of the invention it is the facet's shape and size, without regard to the indicia, including indented indicia, that is relevant, and the term should be construed accordingly.

**2. Hasbro attempts to limit the invention to a preferred embodiment**

Rather than review the entire patent, Hasbro latches on to one paragraph describing one preferred embodiment and attempts to limit the invention to flat-sided dice. (Hasbro's Brief at 10-12.) That the patent describes one preferred embodiment that has a center of mass that is also the center of symmetry does nothing more than explain that in a preferred embodiment the die should be symmetrical and balanced such that it is fair for its intended purpose, dice that produce

random numbers. While this description would include a die that is symmetrical and balanced, the specification makes clear that any differences due to indented indicia are inconsequential. The specification points to a preferred embodiment shown in Figure 1 to explain. (*See* Ex. C at Fig. 1 and Col. 4:55-65.) There it shows that in the context of dice, the center of symmetry and center of mass are the same despite the inconsequential difference caused by indented indicia. In fact, after explaining that the center of mass and center of symmetry are the same despite indented indicia, the specification explains that this combination provides "fair playing dice," and Hasbro agrees. (Ex. J at 61:6-62:6 (Hasbro admitted that despite weight variations in the die caused by indented indicia (indented pips), for the purposes of dice, such differences are inconsequential)).

Importantly, the discussion of center of symmetry and mass appears nowhere in the Summary of the Invention. (Ex. C at Col. 1:24-2:24.) There is also no mention of flat-sided dice in the Summary of the Invention. (*Id.*) The only place center of symmetry and mass are referenced is in describing preferred embodiments of the invention. That is because the invention is not, as Hasbro argues, limited to a mathematically precise die having flat sides such that it has a center of symmetry that is also the center of mass taking into consideration variation due to indented indicia.

Plaintiff's construction reconciles perfectly with the specification's discussion of center of mass and symmetry. Plaintiff's proposed construction (without regard to indented indicia) would have a center of symmetry which is the center of mass disregarding any difference due to indented indicia. The point being that the indented indicia does not materially affect the die's performance. That is a die having a center of mass that is the center of symmetry, disregarding indented indicia, is still a fair die as Hasbro admits. (Ex. J at 61:6-62:6.) Moreover, nothing in

this discussion precludes the die from having flat sides, rather it illustrates that for the purpose of the invention, the die are determined without regard to inconsequential differences caused by the indented indicia.

### 3. Hasbro's construction—not Plaintiff's—improperly excludes preferred embodiments of the invention

Hasbro asks the Court to ignore the drawings and incorrectly argues that they are not preferred embodiments or rather inaccurate illustrations of the "written" preferred embodiments. (Hasbro's Brief at 14, 16.) However, the '197 patent specification explicitly states that the drawings are part of the specification and independently illustrate example preferred embodiments:

> [T]he general description and the following detailed description are exemplary and explanatory only and are not restrictive of the invention, as claimed. The **accompanying drawings, which are incorporated in and constitute part of the specification, illustrate example embodiments of the invention** and together with the description, serve to explain the principles of the invention.

(Ex. C at Col. 2:17-24 (emphasis added).) Realizing that it cannot support its position in view of these preferred embodiments, Hasbro asks the Court to ignore them, or conclude that the drawings do not accurately reflect the invention. (Hasbro's Brief at 14, 16.) Because a claim construction that excludes preferred embodiments is rarely, if ever, correct, Hasbro simply asks the Court to ignore the preferred embodiments that its construction excludes. This argument merely highlights Hasbro's litigation-driven construction.

Hasbro's construction, not Plaintiff's, inappropriately excludes preferred embodiments. Hasbro attempts to limit the scope of the patent to very particular methods of printing indicia on a die to support its construction. However the patent specification and the claims use the generic term "printed" to describe how the indicia is placed on the die. (Ex. C at Col. 1:48-49; 8:1-3.) Nothing in the claims or the specification limits "printed" to one particular method of printing.

And printed certainly is not limited to a specific definition used in a particular gambling regulation. To the contrary, claims should be construed to include all consistent definitions of a particular term. *Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1203 (Fed. Cir. 2002) ("If more than one dictionary definition is consistent with the use of the words in the intrinsic record, the claim terms may be construed to encompass all such consistent meanings.").

On the other hand, Plaintiff's construction (without regard to indented indicia) includes *both* dice having facets that are flat and dice having facets with indented indicia. Nothing in the claim language or the specification precludes the facets from being flat *or* from having indented indicia. In fact, the drawings show that the facets have indented indicia, as is common with many dice. Hasbro "freely concedes" that the patent figures disclose three-dimensional numbers on the facets. (Hasbro's Brief at 14.) In the very next sentence, Hasbro argues that the patent could have been describing indicia that appear to be engraved, but are really flat. (*Id.*) That is not how patents are construed. *Phillips*, 415 F.3d at 1316 (noting that the Patent and Trademark Office determines the scope of claims in patent applications by giving the claims their broadest reasonable construction in light of the specification as is would be construed by one of ordinary skill in the art). Plaintiff's construction is consistent with the disclosed preferred embodiments, both illustrated and described.

**C. Hasbro Is Wrong That Plaintiff's Construction Renders The Element "Equal Surface Area" Surplusage.**

Plaintiff's construction does not render the limitation "equal surface area" surplusage. Hasbro improperly assumes that "identically shaped" sets the facet's shape *and* size. This is incorrect. To illustrate, two equilateral triangles have the same *shape* despite one being twice as big as the other.



In the context of the invention, the claim elements "identically shaped" combined with "equal surface areas" ensure that the die's facets are the same shape and size.

## III. CONCLUSION

Hasbro ignores basic claim construction principles and asks the Court to construe the claims in a mathematical vacuum apart from the context of the invention provided by the specification and the relevant art. It also asks the Court to ignore preferred embodiments disclosed in the patent specification or conclude that they are erroneous because those preferred embodiments show that Hasbro's construction is wrong.

In contrast, Plaintiff's proposed construction stays true to principles of claim construction, the specification, and the understanding of one skilled in the art of dice. The proper construction of "facets being identically shaped and of equal surface area" is extension member facets are identically shaped and have equal surface areas without regard to indented indicia.

Date: June 30, 2006

Michael Bowling,

By His Attorneys,

Craig M. Scott, Esq. (#4237)
Christine K. Bush, Esq. (#5587)
DUFFY SWEENEY & SCOTT, LTD
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700
(401) 455-0701 (Facsimile)

Douglas J. Williams, MN (*pro hac vice*)
Thomas J. Leach, MN (*pro hac vice*)
MERCHANT & GOULD, P.C.
3200 IDS Center, 80 South Eighth Street
Minneapolis, MN 55402
(612) 332-5300
(612) 332-9081 (Facsimile)

**CERTIFICATION**

TO:

Todd D. White, Esq.
Jeffrey K. Techentin, Esq.
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345

David K. S. Cornwell, Esq.
Tracey-Gene G. Durkin, Esq.
Sterne Kessler Goldstein & Fox P.L.L.C.
1100 New York Avenue N.W.
Washington, DC 20005

I hereby certify that I caused a true copy of the within *Plaintiff's Reply to Hasbro's Claim Construction Brief* to be forwarded via First Class Mail hand delivered to the above named counsel of record on the 30th day of June 2006.

_______________________