UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

MICHAEL BOWLING,
a Resident of Arizona,
Plaintiff

VS. C. A. NO. 05-229S

HASBRO, INC.,
a Rhode Island Corporation,
Defendant

--------------------/

DEPOSITION OF KURT BENSON, a witness, in the above-entitled cause, taken on behalf of the Plaintiff, pursuant to notice, before Jo Anne M. Sutcliffe, Notary Public in and for the State of Rhode Island, at the offices of Duffy, Sweeney & Scott, Ltd., One Turks Head Place, Providence, Rhode Island, on January 17, 2006, at 9:08 a.m.

APPEARANCES:

FOR THE PLAINTIFF: MERCHANT & GOULD
THOMAS J. LEACH, ESQ.
-AND-
DOUGLAS J. WILLIAMS, ESQ.

FOR THE DEFENDANT: ADLER, POLLOCK & SHEEHAN
JEFFREY K. TECHENTIN, ESQ.



9810b48e-8c7c-4f64-aead-b3783264b920

Page 58

member discrete facets include printed indicia thereon," doesn't that mean that the patent defines the term facets as having dimples?
A. No.
Q. Or possibly could have dimples?
A. No.
MR. LEACH: I'm going to take a moment. Just a second.
(BRIEF PAUSE)
Q. I'm handing you what I'm representing as Webster's New Collegial Dictionary, Copyright 2001, and it's Webster's II New College Dictionary; the American Congress on Surveying and Mapping I think is the editor. And I've turned to Page 879 where you'll find the definition of print. Can you read the first entry?
MR. TECHENTIN: You mean after the No. 1?
MR. LEACH: Yes.
A. "A mark or impression made in or on a surface by pressure."
Q. In Claim 2 of the patent where it says, "Each of said extension member discrete facets include

Page 59

printed indicia thereon," do you think given that dictionary how one would use in the normal course, and given what you know about dice having dimples --
MR. WILLIAMS: Ask one at a time.
Q. Do you believe --
MR. WILLIAMS: Start over.
MR. LEACH: Okay.
Q. Looking at Claim 2, "Each of said extension member discrete facets include printed indicia thereon," do you see that?
A. Yes.
Q. Do you agree that printed indicia could be an engraving or an indent?
A. No.
Q. An impression?
A. Well, it uses the term thereon, which I would say is on, not beneath the surface.
Q. Okay.
A. So I disagree.
Q. So your testimony is that then in Claim 2 printed indicia thereon means something on top of the surface? Is that your sworn testimony?
A. I'm not sure what you mean by on top of.

Page 60

Q. Well, you just said thereon.
A. Right. And I previously gave you an example of thereon being sublimation printing on an item where there is no raised area on the surface and there is no impression and that is printed on the surface.
Q. Would you agree that -- and I'm holding the accused dice, that the dots on the extension member are impressions?
MR. TECHENTIN: I object to form. No. Withdrawn.
A. No.
Q. Why not?
A. I believe impression would be an impression. According to the dictionary definition, when it's -- a printing leaves an impression, it's from pressure on the surface. These are molded in recesses. They are not impressed on the surface.
Q. Is the result the same? There's an indent in the surface?
A. I can't necessarily conclude that because I think you probably would not get nearly as deep an impression if you somehow manage to impress on

Page 61

a surface.
Q. How deep would a dimple have to be to change the surface area?
A. I can't answer that. I can say that these are deep enough to reduce the surface area.
Q. For purposes of rolling dice and the randomness of the numbers generated, do printed dice work any differently than engraved dice?
A. I suspect they might.
Q. How?
A. Because by providing a number of depressions on a surface, as opposed to this surface has one recessed dimple, this has six, therefore, the weight of the die is predominantly towards this side, it is off balance slightly, and it probably does have a different effect.
Q. Would Hasbro sell dice that would have an off balance effect in their game?
A. I doubt that we tested them.
Q. So it's good enough for the game?
A. Yes.
Q. It's good enough for use by the consumers?
A. Yes.
Q. So it functions the same way?

A. Well, you're -- again, if you want to be precise about it, there is probably a weight difference.
Q. We're talking about dice, though, and for the purposes of dice, it's good enough?
A. It probably is, yes. It certainly is.
Q. So there would be no material difference in function of the dice based on the material on the side with six versus the side with the one dimple?
A. As far as I'm aware, that's correct.
Q. So it would function in substantially the same way?
A. That's correct.
Q. And you'd get substantially the same result, a dice that generates random numbers?
A. Yes, you would.
Q. And do you admit that the accused dice infringe under the doctrine of equivalence?
MR. TECHENTIN: Objection.
A. I don't. I'm not going reach that legal conclusion.
Q. Why not?
A. I just don't agree.



Q. You have to have a reason.
A. I have not done a complete analysis for the doctrine of equivalence of these dice and I'm not about to --
Q. Do you agree, then, that for all practical purposes these die, the accused die, that they function in substantially the same way?
A. Yes.
Q. And they provide substantially the same result as the dice claimed in Claim 1 of the 197 patent?
THE WITNESS: What is the result you're asking me?
MR. LEACH: Generating random numbers for the purposes of a board game.
A. Yes.
Q. So for all practical purposes, Hasbro's accused dice perform substantially the same function, is that correct?
A. Correct.
Q. In substantially the same way?
A. Correct.
Q. To provide substantially the same result?
A. I really can't -- I'm not, as I said, have not done a full analysis of the doctrine of



equivalence.
Q. You just stated --
MR. WILLIAMS: Let him finish.
MR. LEACH: Sorry.
A. And I really don't think -- I know I don't want to answer questions based on my, you know, not completely -- based on less than a complete analysis.
Q. Well, you're here today to testify on Hasbro's position on infringement and defenses.
A. Well, you're asking for a legal opinion.
Q. No. I'm asking for whether the accused dice provides for substantially the same result as the dice claimed in the 197 patent, Claim 1.
A. Yes. I answered that before.
MR. WILLIAMS: Ask him to say it again.
MR. TECHENTIN: No. He did, in fact, say it before. If you want to go back in the transcript, you're welcome to.
MR. LEACH: Well, instead of searching the record, I'll just ask the question one more time to make sure it's clear.
Q. Do the accused dice provide substantially the same result as the die claimed in Claim 1 of the



197 patent?
A. Yes.
Q. So would you agree, then, that it infringes under the doctrine of equivalence?
MR. TECHENTIN: Objection.
A. No.
Q. Are you familiar with the file history?
A. Yes. I have not looked at it in six or eight months probably.
Q. Are you familiar with any of the amendments?
A. Not off the top of my head I really am not.
MR. LEACH: Jeff, I apologize, but I don't have a copy for you. This is from --
MR. TECHENTIN: Yesterday.
MR. LEACH: -- Bowling's exhibit yesterday. Can you mark this as a Plaintiff's exhibit?
(WHEREUPON, EXHIBIT NO. 4 WAS MARKED FOR IDENTIFICATION)
Q. Can you look through that and find me the amendments, if any, that relate to the doctrine of equivalence?
A. There's an examiner's amendment dated November 23rd, 1998.





9810b48e-8c7c-4f64-aead-b3783264b920