UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MICHAEL BOWLING, a Resident of Arizona, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 05-229 S |
| HASBRO, INC., a Rhode Island Corporation, | : | |
| Defendant. | : | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL DEPOSITION TESTIMONY AND FOR OTHER RELIEF**

Pursuant to Fed. R. Civ. P. Rule 37 and 28 U.S.C. § 1927, Defendant/Plaintiff-in-Counterclaim Hasbro, Inc. ("Hasbro"), submits this Reply Memorandum of Law in support of its Motion to Compel Deposition Testimony and for Other Relief.

As explained in Hasbro's opening memorandum, this motion is necessitated by a pattern of obstructive conduct at the deposition of Plaintiff's "infringement" expert, Kevin Cook, as well as the expert's unexplained and outright refusal to answer questions lawfully posed to him at his deposition. Plaintiff wrongly asserts that Hasbro's motion is based on just three unanswered questions posed during that deposition. *See* Plaintiff's Br. at 1. An order compelling further deposition, ***without*** coaching and improper interjections of counsel and with full adherence to the expert's oath to fully and truthfully respond to the questions posed, is warranted. Because this situation is entirely of the Plaintiff's making, an award of costs and fees is also appropriate.

## I. Plaintiff Has Misstated The Facts Pertinent to This Motion

The Plaintiff alleges that he "hired Mr. Cook to provide analysis, as one skilled in dice and dice design, as to the meaning of particular claim terms." That does not fully or accurately

reflect the scope of Cook's expert report or his anticipated testimony. In the introduction to his expert report, Cook explains that he was retained to render an opinion as to whether Hasbro's accused dice infringe the '197 patent. *See* Cook Report (**Exhibit A** to Hasbro's Opening Brief) at 2. His conclusion is that the accused dice infringe both literally and under the doctrine of equivalents. *Id.* In explaining that conclusion, Cook went well beyond analyzing "the meaning of particular claim terms." For example, he offered that "Given the vast number [*sic*] of different die designs that are available the chances that Hasbro independently developed their die is highly unlikely." *Id.* at 5.[1] Cook also offered opinions on the issue of infringement under the doctrine

---

1 Hasbro's attempt to inquire into this aspect of Cook's opinion is indicative of the difficulties Hasbro encountered as a result of Cook's evasive responses to deposition questions. At the deposition, Cook testified that the question of independent development of the die was irrelevant to the question of infringement, and that he had not been made aware of the fact that Eileen Sefchick testified that her drawings of Hasbro's die predated Bowling's public display of his die design. Hasbro inquired as to whether Cook expected to offer testimony on the subject of whether or not Hasbro had copied the die design from the Plaintiff, but couldn't get a straight answer (Cook Dep. (**Exhibit A**) at 165:14-167:5):

> Q. So do you expect to offer testimony on this subject at trial?
>
> A. On the subject of?
>
> Q. Copying or no copying.
>
> A. I expect to offer testimony on what I have covered in the expert witness statement.
>
> Q. And that includes the likelihood of Hasbro independently developing the die?
>
> A. I expect to offer testimony as to my opinion, which is what I have written in the statement.
>
> Q. And that includes your opinion that it was highly unlikely that Hasbro independently created the die?
>
> A. That includes the entire expert witness statement.
>
> Q. And you're willing to offer an opinion at trial without the benefit of information of -- without the benefit of the evidence that's available as to the development of the die?
>
> A. I don't see the relevance.
>
> Q. You don't see the relevance of the testimony --
>
> A. I don't see –
>
> Q. – that –
>
> A. -- the relevance.

of equivalents, concluding that even if Hasbro's dice do not contain the claim elements literally (*i.e.*, Hasbro's dice do not match his interpretation of the claim language), the die performed the same function, in the same way, with the same result as the die claimed in the patent. *Id.* at 14-15. Part of this analysis was based on a physical testing performed by Cook, which was completely undisclosed in his expert report. *See* Cook Dep. at 199:13-200:8 (admitting that Cook threw away the written results of his testing). Cook even offered an opinion as to whether the testimony of one of Hasbro's witnesses constituted an admission on doctrine of equivalents issues. Cook Report at 15.

Cook's report didn't stop there. He proceeded to opine on the validity of the patent, examining the question of whether the patent had been anticipated by any prior art references and concluding that he had "not seen any prior art that would render any claim of the '197 patent invalid." *Id.* He even stated that if Hasbro were to contend that the patent had been anticipated by some prior art, he expected to provide an opinion on that subject. *Id.*

The Plaintiff also grossly misstates the record in accusing Hasbro of "wast[ing] the entire morning inquiring into Mr. Cook's background and procedure for preparing his report rather than his opinions." Plaintiff's Br. at 3. First, this statement is flat wrong. During the morning, Hasbro inquired extensively regarding Cook's decision to include in his report commentary on

---

Q. You don't see the relevance of the testimony of Ms. Sefgic [*sic*] or the relevance of your opinion?

A. I don't see the relevance of it being independently developed.

Q. Then why are you going to offer that opinion?

A. You asked me what I would offer, and I have to stand by my statement. It is in my statement.

Q. So the only reason that you expect to offer the testimony that, in your opinion, it was highly unlikely that Hasbro independently developed it is because it's in your report?

A. And it is my opinion.

and pictures of the "commercial embodiment" of the Plaintiff's die, despite Cook's unqualified admission that the Plaintiff's commercial exploitation of the invention is irrelevant as a matter of law to his infringement analysis. *See* Cook Dep. at 84:9-95:9. Hasbro also inquired as to Cook's opinions on the question of whether dice are capable of bearing patent markings. *Id.* at 55:10-62:8.

Second, Hasbro's "procedural" inquiries were necessitated by the unorthodox manner in which Cook prepared his expert report. To prepare his report, counsel for the Plaintiff sent Cook a complete expert report by another expert, from another case, including a "claim chart" analogous to the one produced by Cook in this case. *See* Plaintiff's Br. at 2; *see also* **Exhibit B** (Expert report of James Fitzgibbon). Portions of Cook's expert report – the statement of his expert conclusions and bases for those opinions – were lifted *verbatim* from Fitzgibbon's report, and Hasbro naturally inquired into which opinions in the report were *Cook's*, and which were *Fitzgibbon's*. Also, Cook and Plaintiff's counsel had gone through an elaborate process of generating and editing the expert report such that both worked collaboratively on the documents, while the two studiously avoided printing out copies that might have to be produced to Hasbro as draft expert reports. Cook Dep. at 118:20-131:5. Hasbro, naturally, inquired into the process by which Plaintiff's *counsel* and his *expert* worked *collaboratively* on the expert witness report. *Id.* Finally, Hasbro also was provided no meaningful information regarding Cook's qualifications despite the requirements of Fed. R. Civ. P. Rule 26(b)(2)(B) (expert disclosure "shall contain … the qualifications of the witness"). *See* Cook Report at 16 (noting qualifications as (1) having a bachelor's degree in software engineering, (2) being the Guiness Record holder for largest collection of dice, and (3) being the assistant manager of an internet-based dice collector forum). Given such scanty disclosures, Hasbro *had* to spend substantial time inquiring into Cook's

background and qualifications.

## II. <u>Cook Refused to Answer Questions at His Deposition</u>

Plaintiff attempts to warp reality by arguing that Cook actually answered the questions put to him at his deposition. *See* Plaintiff's Br. at 3. When Hasbro asked whether Cook had, in fact, considered shapes of dice other than Hasbro's in connection with his infringement analysis, the question clearly called for either a "yes" or a "no." Cook offered neither, repeatedly stating that he wasn't asked to do that. By the Plaintiff's reasoning, so long as the witness's mouth moves and words come out after a question is posed, that constitutes an answer to the question. That is not the case. *See, e.g., Fashion House, Inc. v. K Mart Corp.*, 892 F.2d 1096, 1081-82 (1st Cir. 1989) (upholding sanction for failure to provide responsive answers to interrogatories). Cook refused to answer and should be compelled to respond meaningfully to the questions posed.

The same problem occurred when Hasbro tried to inquire about the meaning of "surface area," a key question with respect to his opinion in light of Hasbro's contention that the difference in surface area on the "extension member" faces of its die means that its dice do not infringe the '197 Patent. The Plaintiff now contends that Cook's response that "Surface area means the square unit area of a particular surface" constituted an answer to Hasbro's questions regarding surface area. This contention is completely without merit. Cook refused to answer Hasbro's *follow-up* questions, not the initial question of what surface area means. Cook's opinion is that surface area, in the context of the Plaintiff's patent, has a significantly different meaning than it does under ordinary circumstances, and Hasbro is entitled to explore his opinion, its inconsistency with common usage and common sense, and the implications of those inconsistencies for his opinions regarding infringement. Cook's refusal to answer those *follow-up* questions destroyed Hasbro's ability to do so.

## III. <u>Plaintiff's Counsel's Interjections Were Improper</u>

Defending his conduct at the deposition, Plaintiff's counsel now argues that the

objections interposed at Cook's deposition "merely reminded Hasbro's counsel that Mr. Cook was not an expert in patent law and at times instructed the witness not to speculate." Plaintiff's Br. at 9. That is untrue. The objections were interposed clearly for the benefit of the witness and the Plaintiff, not Hasbro's counsel, nor were they limited as Plaintiff's counsel now suggests. For example, when Hasbro inquired about Cook's preparation for the deposition, it asked what discussions Cook had had with Plaintiff's counsel regarding his expert opinion. Plaintiff's counsel interjected, stating "And, you know, to the extent you recall, obviously." Cook Dep. at 51:19-24. The objection had the desired effect. Cook's response to the question – which sought specific information regarding a conversation he had had only one day before – was "I don't recall any specifics other than to make certain that my opinion that was expressed in the report had not changed." *Id.* at 51:25-52:2.[2]

Plaintiff's counsel also offered speaking objections to Hasbro's inquiry with respect to Cook's copying of portions of his report from the expert report of James Fitzgibbon, stating:

> Counsel, I object. He was pro – the witness was provided an example expert report for the format. He's not here to testify about patent law or he's not a patent law expert. I'll represent that we

---

[2] In an attempt to create some sense of moral equivalence, Plaintiff refers the Court to Hasbro's defense of the deposition of Michael Gray for the proposition that "Hasbro's counsel was coaching the witness through its objections." Plaintiff's Br. at 9 n. 5. This, also, is untrue. In support, Plaintiff points to page 44 of Gray's deposition, which contains the following exchange:

> Q. Mr. Gray, if you drew that dice, how it looks, and asked you to make it to generate random numbers, would your first reaction be to make the sides the same?
>
> MR. TECHENTIN: Objection.
>
> A. No. Your question is very unclear.
>
> Q. How come every time Mr. Techentin objects you say the question is very unclear?
>
> MR. TECHENTIN: Objection.
>
> A. I don't think I did every time. Your –
>
> MR. TECHENTIN: Let him ask a question.
>
> A. Okay. Go ahead. Ask me a question.

Hasbro's objections were appropriate. The question was unclear and asked the witness what he would do to "make" a hypothetical drawing – which had not been made – of an unbalanced die "generate random numbers." Also, Mr. Gray was absolutely correct to point out to Plaintiff's counsel that Hasbro's objections, which consisted solely of the word "objection" or the phrase "objection to form," did not trigger a Pavlovian refusal to answer the question. *See, e.g.*, Gray Dep. **(Exhibit C)** at 4:16-24; 5:25-6:8; 25:24-26:3; 27:10-18; and 37:17-22.

> provided him with an accurate statement of the law to use in developing his opinion.

Cook Dep. at 81:6-16. Plaintiff's counsel even entered into a protracted debate over the propriety of his objections, after he had "instructed" the witness not to speculate and said that "if he can recall, he may answer." *See id.* at 90:13-92:15. Plaintiff's counsel tried to explain away his objections as pertaining to the fact that "he's not here as a patent law expert" (the same explanation now offered), but that issue had *nothing whatsoever to do* with the actual objection he had interposed. The question had been: "Did you discuss with Mr. Leach the fact that the report, as you had drafted it, included pictures of the commercial embodiment of Mr. Bowling's die?" Hasbro had not asked for the witness's opinions about some issue of patent law; the objection was clearly designed to avoid having the witness reveal (entirely discoverable) information regarding the communications among counsel and the witness.

## IV. **The Witness, Abetted by Counsel, Refused To Answer A Broad Range of Relevant Questions**

Contrary to the Plaintiff's contention that Cook refused to answer just three questions during his deposition, the witness's obstreperous, non-responsive testimony substantially thwarted Hasbro's ability to cross-examine him on a broad variety of topics. Many of these were identified in Hasbro's opening brief, but the witness outright refused to respond meaningfully to an array of other questions. For example, Hasbro attempted to question Cook regarding the availability of non-infringing alternatives to the accused dice, but Cook, after coaching by Plaintiff's counsel, refused to provide any meaningful response. The following exchange is illustrative:

> Q. (BY MR. TECHENTIN) Mr. Cook, you would agree that, had Hasbro manufactured a die that was similar to the accused die, but which didn't have triangular or end caps that were composed of triangular facets, for example, it would not have infringed the patent; is that correct?
>
> MR. LEACH: Object to the question. I'm not going to have him opine on a hypothetical like that.

MR. TECHENTIN: Well, I mean –

MR. LEACH: If you want to give him a physical structure -- well, he's not going to answer it.

MR. TECHENTIN: You're going to instruct him not to answer?

MR. LEACH: That question is so vague, he can't answer it. I mean, it's a hypothetical with nothing in front of him, and you're asking him on the fly do an infringement or a validity analysis? He's not going to do it.

Q. (BY MR. TECHENTIN) Are you not going to do it?

A. I wasn't going to answer the question.

Q. Excellent. All right. That's terrific.

MR. LEACH: Excuse me?

Q. (BY MR. TECHENTIN) You would agree that the '197 patent only applies to a die that has end caps that consist of tapered or triangular facets, correct?

MR. LEACH: Object to the question.

MR. TECHENTIN: Why?

MR. LEACH: Please repeat the question.

(The last question was read back.)

A.[3] His job as an expert has not been to determine what everything possible about this patent could cover. I mean, that's not what he's testifying as an expert on. Like I've said before, Jeff, he's not an expert in patent law, he's not an expert in claim construction, so to try to get him to answer those questions is wrong, and I'm not going to have him do it, and I'm not going to let him do it. He's an expert in die and die design. If you want to stick to questions that relate to that, that's fine.

Q. (BY MR. TECHENTIN) You may answer the question.

A. I would have to have time to examine the question in relation to the entire patent as it exists to make a truthful analysis.

3 Although the transcript attributes this statement to the witness, the speaker was, in fact, counsel for Plaintiff, as is clear from the context.

Cook Dep. at 225:4-227:8.

Hasbro's inquiry was completely fair game. The witness had opined that the Hasbro die infringed literally. Hasbro sought to explore the witness's understanding of the extent of the patent's protection – a key concept underlying his infringement opinion. The witness claimed to construe the claims language, but refused to explain his conclusions except by reference to the claims language itself. The Plaintiff's position is apparently that the witness can opine on the question of whether all of the limitations of various claims of the '197 Patent are met by Hasbro's dice, but does not have to explain how he arrived at that conclusion. When Hasbro asked the straightforward question "Well that's one of the elements of the first claim of the patent, isn't that correct?" (referring to end caps consisting of facets that are identically shaped and with equal surface areas), counsel demanded that Hasbro's question be re-read twice and announced that the witness was "not here to testify about the total breadth of the patent." When Hasbro finally got a response from the witness, he stated that he would only "answer the question by reading [] Claim 1." *Id.* at 227:9-228:14.

## V. <u>The Witness's Failure To Answer Questions Regarding Prior Art Was Unjustified</u>

As explained in Hasbro's opening memorandum, Cook refused to answer questions regarding whether a physical specimen, if prior art to the '197 Patent, would render the Plaintiff's invention obvious. Plaintiff now claims this amounts to "surprise and ambush" because Hasbro hadn't shown the Plaintiff the physical die prior to the deposition. While Hasbro certainly agrees that one of the purposes of discovery is to allow parties to explore positions, facts, experts' opinions, and so forth prior to trial, there is no "tenet of discovery" that provides that a witness at a deposition can refuse to answer questions because he hadn't been confronted with the evidence prior to his deposition. This is the discovery process (which helps the Plaintiff avoid "surprise and ambush"), not trial.

Just as importantly, the Plaintiff is wrong to suggest that the die form was not

previously disclosed.[4] Months prior to the deposition, Hasbro had produced document HA008424 (**Exhibit D**), which contains the diagram below, which is shown side-by-side with a photograph of Exhibit 4 from Cook's deposition:



[redacted]

Hasbro also did not demand that the witness perform an obviousness analysis in five minutes, as Plaintiff now argues. Rather, Hasbro (1) confirmed that the witness had all the information necessary for the expert to consider the question and was clear on what it takes to trigger obviousness, and (2) asked him how long he would need to consider the question. Because the expert's answer was that it would take "more than a day," despite the fact that he testified he had conducted the precise same analysis with respect to more than 200 other prior art references, Hasbro knew it could not obtain meaningful answers to its questions.[5]

---

[4] The Plaintiff avoids actually saying that the die form had not been disclosed, artfully stating that Hasbro had "pulled out a previously undisclosed *model*" at the deposition. *See* Plaintiff's Br. at 8 (emphasis added).

[5] The witness's refusal to state whether the proffered exhibit would, if prior art, render the '197 Patent obvious is not equivalent to Kurt Benson's refusal to perform an off-the-cuff analysis under the doctrine of equivalents. *See* Plaintiff's Br. at 8. While infringement under that doctrine is primarily determined by reference to the so-called "function-way-result" test, actual infringement is limited by the doctrine of prosecution history estoppel, as the Plaintiff well knows. Therefore one cannot draw any conclusions with respect to actual infringement under that doctrine without a full consideration of the impact of the prosecution history on the scope of the claims, a subject on which Mr. Benson properly deferred to outside counsel. In stark contrast to Cook's refusal to answer questions, Mr. Benson freely responded to questions regarding the equivalency of the function, way, and result of the patented and the accused dice:

> Q. So there would be no material difference in function of the dice based on the material on the side with six versus the side with the one dimple?
>
> A. As far as I'm aware, that's correct.
>
> Q. So it would function in substantially the same way?
>
> A. That's correct.

## IV. Conclusion

For the foregoing reasons and the reasons set forth in Hasbro's opening memorandum, Hasbro respectfully requests that the Court enter an order (1) permitting Hasbro to re-depose Kevin B. Cook in Providence, Rhode Island at the Plaintiff's expense, and (2) awarding Hasbro its costs, expenses, and fees associated with the deposition of Mr. Cook in Denver, Colorado on May 22, 2006, and (3) establishing that Mr. Cook's response to the question "Would the die design embodied in Exhibit 4 to the Kevin Cook deposition, if prior art to the '197 Patent, render the '197 Patent obvious?" is "yes."

HASBRO, INC.
By its Attorneys,

Todd D. White (# 5943)
Jeffrey K. Techentin (#6651)
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
(401) 274-7200
Fax: (401) 751-0604/ 351-4607
Dated: July 10, 2006

Of Counsel:

David K. S. Cornwell, Esq.
Tracy-Gene G. Durkin, Esq.
Sterne Kessler Goldstein Fox
1100 New York Avenue, NW
Washington, D.C. 20005

---

Q. And you'd get substantially the same result, a dice that generates random numbers?

A. Yes, you would.

Q. And do you admit that the accused dice infringe under the doctrine of equivalence [sic]?

MR. TECHENTIN: Objection.

A. I don't. I'm not going reach that legal conclusion.

Benson Dep. at 62:7-22 (**Exhibit E**).

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of July 2006, I caused a true copy of the within to be served on the following individuals by regular mail, postage prepaid:

Craig M. Scott, Esq.
Christine K. Bush, Esq.
Duffy & Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903

Of Counsel:

Thomas J. Leach, Esq.
Douglas J. Williams, Esq.
Law Firm of Merchant and Gould P.C.
3200 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402-2215

David K. S. Cornwell, Esq.
Sterne Kessler Goldstein Fox
1100 New York Avenue, NW
Washington, D.C. 20005

Kathleen A. Yormey

*385966_1*