UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MICHAEL BOWLING, a Resident of Arizona, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 05-229 S |
| HASBRO, INC., a Rhode Island Corporation, | : | |
| Defendant. | : | |

**STATEMENT OF DISPUTED AND UNDISPUTED FACTS IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56 (Civil) of the Local Rules of this Court, Defendant/Plaintiff-in-Counterclaim Hasbro, Inc. ("Hasbro") hereby submits the following statement of disputed and undisputed facts in opposition to the Plaintiff's Motion for Summary Judgment[1]:

PROPOSED FACT NO. 1. Bowling, an engineer by education, has been designing dice for 20 years.

RESPONSE: Uncontroverted only that Bowling is an engineer by education. Denied that he has been designing dice for 20 years. By way of further response, Bowling was educated as an electrical engineer (Bowling Dep. at 12:2-18. **(Exhibit A)**) Bowling designed dice for approximately two years beginning in approximately 1990, and did not design any dice between that period and the summer or fall of 1997, when he claims to have invented the "crystal dice" described in U.S. Patent No. 5,938,197 (the "'197 Patent"). (*Id.* at 57:15-59:17; 86:6-10.) Bowling has not invented any dice since 1997. (*See*, *e.g.*,B01616-B01627 **(Exhibit B)**; *see also*

[1] Although styled a motion for summary judgment, the Plaintiff only seeks partial summary judgment, pertaining to the issue of whether Albert Lizarraga was the sole inventor or a joint inventor of U.S. Patent No. 5,938,197.

*generally* www.crystalcaste.com ("Crystal Caste offers the adventure game player something no other dice manufacturer does: a totally new shape for polyhedral dice. Imagine dice in the shape of geometric crystals. For those who prefer the *traditional fantasy dice shapes*, but want something special, we created Dwarven Stones.") (emphasis added) (**Exhibit C**).)

PROPOSED FACT NO. 2. In designing dice, Bowling draws on his engineering background and specifically his study of mathematics and physics.

RESPONSE: Denied.[2] The dice designs that the Plaintiff claims to have created do not require any specialized training, either in mathematics or physics, and therefore the Plaintiff would have no cause to "draw on" such training. The Plaintiff claims to have designed just two "new" forms of dice: one in the shape of the barrel of a pencil, and the so-called "crystal dice" claimed in the '197 Patent. As for the pencil-shaped die, the Plaintiff claims merely to have observed the beveled edges of the pencil and to have concluded that it could be rolled in such a manner that it would operate as a die, where the topmost, rectangular facet could bear a number that would indicate the result of the roll. (Bowling Dep. at 57:13-58:10.) The Plaintiff did not employ either mathematics or physics to determine the shape, form, or function of the die. Likewise, the Plaintiff did not employ mathematics or physics in the development of the "crystal dice," even assuming that he had come up with the idea for the dice claimed in the '197 Patent. Rather, he claims merely to have had an "epiphany" that, rather having the barrel of the die comprised of conjoined rectangles, it would be comprised of "alternating triangles," which would allow a larger area at one end of each facet on which to place a number. (Bowling Dep. at

[2] The Plaintiff cites to Paragraph 2 of the Declaration of Michael Bowling dated April 12, 2006 as the sole factual support in support of this Proposed Undisputed Fact, but that paragraph reads in full: "I received my bachelor of science in electrical engineering from the University of Arizona on May 16, 1992. I have taken courses in mathematics and physics." *See* Plaintiff's Statement of Undisputed Facts at **Exhibit B**. The Plaintiff's proffered fact presumably relates to Paragraph 4 of that declaration, in which Bowling avers "In designing dice, I draw on my technical education and specifically my courses in mathematics and physics."

70:19-71:5; 80:20-81:21.) Other than the Plaintiff's self-serving and conclusory statement in his declaration (created only after his deposition and the revelation of Albert Lizarraga as a potential inventor or co-inventor of the '197 Patent), the Plaintiff has never claimed that the design of his dice required any specialized skill or knowledge, or that any specialized skill or knowledge was actually employed in their design.

PROPOSED FACT NO. 3. Bowling has eight patents, all with formal drawings, in which he is named as the sole inventor.

RESPONSE: Uncontroverted that Bowling is the named inventor on a total of eight patents, each of which contains drawings. Bowling does not explain, and Hasbro does not know, the meaning of the term "formal drawings," and therefore Hasbro denies that Bowling's patents contain "formal" drawings. By way of further response, (1) the '197 Patent was Bowling's first patent, (2) five of Bowling's patents are design patents, (3) Bowling's two dice-related utility patents other than the '197 Patent are *both* continuations of the '197 Patent itself, and (4) to the extent any of Bowling's patents pertain to dice, the drawings contained in them post-date and are the same or substantially the same as the drawings provided to Bowling by Albert Lizarraga. *See generally* U.S. Patent Nos. D517,612, D515,937, D504,621, D496,542, 6,318,720, D436,635, and 6,123,332 (**Exhibit D**).

PROPOSED FACT NO. 4. While in college, Bowling noticed an old wooden six-sided pencil and thought why not make an elongated die of similar shape.

RESPONSE: Denied.[3] Bowling did not testify that the pencil was old or that he "thought why not make an elongated die of similar shape." Rather, Bowling testified that while in college, he began considering the possibility of an elongated die shape after observing a six-

[3] Bowling's stated support for Proposed Fact No. 4 consists of Bowling deposition testimony from page 57, line 18, through page 62. Bowling did not include pages 58 through 62 with his Statement of Undisputed Facts. They are attached hereto at **Exhibit A**.

sided beveled pencil, and that at some point after that he attempted to make an elongated die that was in the shape of a segment of the barrel of a pencil. Bowling Dep. at 57:18-63:23.

PROPOSED FACT NO. 5. Bowling attempted to create a die shaped like the old wooden pencil but found that it was not practical. Bowling also found that it was difficult to place legible numbers on the small rectangular facets, especially when he tried to increase the number of facets on the die, which made the facets even smaller. Bowling continued to think about how to make an elongated, multiple faceted die that provided enough area for legible indicia.

RESPONSE: Uncontroverted that Bowling attempted to make a die in the form of a segment of a pencil, that Bowling found that it was difficult to place legible numbers on the small rectangular facets of the dice that he made, and that Bowling testified that he continued to consider the problem of fitting indicia on the facets of elongated dice from until 1997. Hasbro denies Proposed Fact No. 5 to the extent it states that Bowling "found" that increasing the number of facets on the dice caused the facets to be smaller, or that his conclusion that it was difficult to place legible numbers on the facets of the dice was connected to an increasing number of facets on the dice because (1) it finds no evidentiary support in the record, including the record evidence referenced by the Plaintiff in the Statement of Undisputed Facts; (2) it inaccurately and unfairly characterizes the record evidence that Plaintiff cites in purported support of the Proposed Fact; and (3) it is offered in violation of Local Rule (Civil) 56, in that the cited evidence does not establish the Proposed Fact. By way of further response, Bowling's testimony was that he attempted to make a six-sided die out of wood, but never succeeded, and that the only pencil-shaped dice he ever created were eight-sided dice made out of crystal. Bowling's conclusions regarding the difficulties in scaling his pencil-die design to dice with

greater numbers of sides were based upon his own speculation and not on observation. (Bowling Dep. at 57:18-63:23.)

PROPOSED FACT NO. 6. In the summer of 1997, while driving, Bowling was struck with the idea of converting the rectangular facets to opposing triangles, thereby creating a larger area (at the triangle's base) for the indicia.

RESPONSE: Uncontroverted that Bowling testified that he conceived of the concept of using opposing triangles, rather than conjoined rectangles, on his elongated die in the summer of 1997, while driving, and that the effect of using opposing triangles would be to increase the surface area (at the triangle's base) for the indicia. Bowling's testimony is inconsistent with prior, public statements he has made with respect to when he conceived of this shape, and therefore Hasbro denies that he had this "epiphany" in the summer of 1997. *See, e.g.*, Bowling Dep. at Exhibits 5 and 7 (**Exhibit E**).

PROPOSED FACT NO. 7. Converting rectangular facets into opposing triangle-shaped facets creates facets that are identically shaped and of equal surface area. Bowling immediately pulled over and drew his idea. Bowling explained that his die design included end caps to prevent the die from landing on its end, make it more attractive, and to make it bounce more. Bowling drew the die a half dozen times before providing some of the sketches to Albert Lizarraga ("Lizarraga") to prepare formal drawings. Below are examples of the rectangular facets, the divided rectangular facets into two opposing triangles, and a three-dimensional view of the entire opposing-triangle faceted die that Bowling drew at his deposition. Bowling gave sketches such as these to Lizarraga.

RESPONSE: Hasbro denies Proposed Fact No. 7 because (1) it finds no evidentiary support in the record, including the record evidence referenced by the Plaintiff in the Statement of Undisputed Facts; (2) it inaccurately and unfairly characterizes the record evidence that

Plaintiff cites in purported support of the Proposed Fact; and (3) it is offered in violation of Local Rule (Civil) 56, in that the cited evidence does not establish the Proposed Fact. By way of further response, the Plaintiff's statement that "[c]onverting rectangular facets into opposing triangle-shaped facets creates facets that are identically shaped and of equal surface area" is unsupported in the record and incorrect as a matter of geometry. A rectangle is a four-sided, two-dimensional object containing four 90 degree angles. "Converting" a rectangle into "opposing triangle-shaped facets" can be done in any number of ways that may or may not result in "facets that are identically shaped and of equal surface area." For example, the rectangle below may be converted into "opposing" triangles of different shape and surface area as shown below:



Hasbro further denies that "Bowling immediately pulled over and drew his idea." Bowling testified that after being "hit" with the idea of opposing triangles, he pulled over and *started drawing* that concept. (Bowling Dep. at 81:18-21) Hasbro admits that Bowling testified that the reasons for having end caps on the dice included preventing the dice from landing on their ends, making them more attractive, and making them bounce more; however, Hasbro denies the implication (by inclusion in the same proposed Undisputed Fact) that Bowling had these purposes or even the idea for the end caps at the same time as his "epiphany" with respect to the concept of opposing triangles. There is no record evidence of when Bowling claims to have come up with the idea of the end caps or decided that they would make the dice more functional, attractive, or bouncy and therefore Hasbro denies the Proposed Fact to the extent it states the

same. Hasbro further denies that Bowling conceived of the idea of using end caps, as claimed in the '197 Patent, on the dice, and therefore contends that Bowling could not have decided to include them on the dice to make them more functional, attractive, or bouncy. Hasbro further denies that Bowling "drew the die a half dozen times before providing some of the sketches to Albert Lizarraga." Bowling testified unequivocally that he had never drawn a complete die prior to his application for the patent, which occurred in January 1998. (Bowling Dep. at 97:18-98:5.) Lizarraga prepared the so-called "formal drawings" of the dice beginning in August 1997, prior to Bowling's having drawn any complete die. (B00557 (**Exhibit F**).) Hasbro further denies that the drawings included in Proposed Fact No. 7 are "examples" of anything; Hasbro admits, however, that they were drawn at the Plaintiff's deposition. Hasbro denies that Bowling gave "sketches such as these to Lizarraga." (Bowling Dep. at 82:19-83:7.)

PROPOSED FACT NO. 8. Lizarraga confirmed that the sketches Bowling provided him were three-dimensional, multifaceted and included end caps.

RESPONSE: Denied. (Lizarraga Dep. at 14:9-17, 31:5-9)

PROPOSED FACT NO. 9. Bowling's patented die design is depicted below along with a commercial embodiment. To protect his idea, Bowling decided to file for a United States Patent.

RESPONSE: Hasbro denies Proposed Fact No. 9's legal description of the Plaintiff's commercially-produced die as a "commercial embodiment [of the '197 Patent]" because (1) it finds no evidentiary support in the record, including the record evidence referenced by the Plaintiff in the Statement of Undisputed Facts; (2) it inaccurately and unfairly characterizes the record evidence that Plaintiff cites in purported support of the Proposed Fact; and (3) it is offered in violation of Local Rule (Civil) 56, in that the cited evidence does not establish the Proposed

Fact. The remainder of Proposed Fact No. 9 is uncontroverted.

PROPOSED FACT NO. 10. Bowling hired Lizarraga, a professional draftsman, to prepare formal drawings of the new crystal-shaped die for the patent application.

RESPONSE: Uncontroverted only that Bowling hired Lizarraga. At the time the Plaintiff hired him, Lizarraga was a professional designer, not a professional draftsman. (A. Lizarraga Dep. at 8:7-9:13.) The Plaintiff hired Lizarraga to design the dice, not simply to produce drawings. (A. Lizarraga Dep. at 12:7-13:9.) At the time he hired Lizarraga, the Plaintiff had not fully conceptualized the "crystal-shaped" die. (A. Lizarraga Dep. at 12:7-13:9; 14:18-21.) Bowling did not advise Lizarraga that the resulting drawings were for a patent application, and the record evidence suggests that at least one purpose of obtaining the design and drawings for the dice was for manufacturing, not for a patent application. (A. Lizarraga Dep. at 12:7-13:9; 14:18-21; B00510-00511 (**Exhibit H**).)

PROPOSED FACT NO. 11. Bowling explained to Lizarraga that the invention was a die to generate random numbers for game playing.

RESPONSE: Denied. (Lizarraga Dep. at 69:11-23)

PROPOSED FACT NO. 12. Lizarraga has no experience designing dice.

RESPONSE: Denied. (*See generally* Lizarraga Deposition (noting experience designing polyhedral dice for Plaintiff))

PROPOSED FACT NO. 13. Lizarraga's training consists of a technical degree in drafting.

RESPONSE: Denied. Lizarraga's training *includes* a technical degree in drafting, but also much more training, both formal and informal, including over twenty years' experience working for major industrial corporations and defense contractors. (Lizarraga Dep. at 9:14-25.)

PROPOSED FACT NO. 14. Lizarraga has been doing the same type of drafting work he did for Bowling for 20 years and has *never* been named as a co-inventor on *any* patent. (Emphasis in original)

RESPONSE: Uncontroverted that Lizarraga has never been named a co-inventor on any patent. Hasbro denies Proposed Fact No. 10 to the extent it states that Lizarraga has been doing "the same type of drafting work he did for Bowling for 20 years because (1) it finds no evidentiary support in the record, including the record evidence referenced by the Plaintiff in the Statement of Undisputed Facts; (2) it inaccurately and unfairly characterizes the record evidence that Plaintiff cites in purported support of the Proposed Fact; and (3) it is offered in violation of Local Rule (Civil) 56, in that the cited evidence does not establish the Proposed Fact. By way of further response, Lizarraga clearly testified that his work focused on design and other technical work on defense-related projects, which is work of a different "type" than designing or drafting mechanical drawings for playing dice. (Lizarraga Dep. at 6:9-9:25)

PROPOSED FACT NO. 15. Lizarraga came to Bowling's home and met with both Bowling and Bowling's wife, Elizabeth.

RESPONSE: Uncontroverted that Lizarraga came to Bowling's home and met with Bowling. Denied that Lizarraga met with Bowling's wife. (Lizarraga Dep. at 12:3-15 and 73:11-19 (noting only that Bowling's wife was "present" at Bowling's house at the time of the meeting between Bowling and Lizarraga).) Bowling's deposition testimony described his meetings with Lizarraga without reference to his wife's presence. (*See*, *e.g.*, Bowling Dep. at 105:1-13.)

PROPOSED FACT NO. 16. At the first meeting, Bowling provided Lizarraga with sketches of the invention and explained it in detail.

RESPONSE: Denied. At their first meeting, Bowling provided Lizarraga with at most a single sketch of one form of the die and explained that he wanted a die in a natural crystal shape. He did not explain the die design "in detail." (Bowling Dep. at 101:19-24 ("And, you know, the first time I would draw the sketch"); Lizarraga Dep. at 13:5-9; 73:17-19.)

PROPOSED FACT NO. 17. One of the sketches Bowling provided to Lizarraga looked like the following sketch of a three-dimensional, multi-faceted die having end caps:

RESPONSE: Hasbro denies Proposed Fact No. 17 because (1) it finds no evidentiary support in the record, including the record evidence referenced by the Plaintiff in the Statement of Undisputed Facts; (2) it inaccurately and unfairly characterizes the record evidence that Plaintiff cites in purported support of the Proposed Fact; and (3) it is offered in violation of Local Rule (Civil) 56, in that the cited evidence does not establish the Proposed Fact. By way of further response, the Plaintiff testified unequivocally that he had never drawn a complete sketch of a die prior to filing his patent application, which occurred months after Bowling met with Lizarraga. (Bowling Dep. at 98:2-5.) Whatever the drawing Bowling presented to Lizarraga might have looked like, it did not look like the drawing included with Proposed Fact No. 17, which, as the Plaintiff's Proposed Fact posits, shows a complete die.

PROPOSED FACT NO. 18. Lizarraga recalled that one of the sketches Bowling provided him was three-dimensional with multiple facets and that it had end caps.

RESPONSE: Denied that Lizarraga recalled receiving more than one sketch from the Plaintiff. (*See* Response to Proposed Fact No. 16.) Uncontroverted that he recalled that it was a three-dimensional drawing of a multifaceted die, and that it probably had end caps of some sort. Denied that Lizarraga recalled that the drawing "had end caps"; there is no testimony to that effect in the record.

PROPOSED FACT NO. 19. Bowling also provided Lizarraga with an overall dimension and diameter.

RESPONSE: Denied. Hasbro admits that Lizarraga testified that the drawing "maybe" had an overall length and "perhaps the diameter." (Lizarraga Dep. at 12:19-25)

PROPOSED FACT NO. 20. Lizarraga used Bowling's sketch and his explanation to produce formal drawings of Bowling's invention.

RESPONSE: Uncontroverted that Lizarraga referred to Bowling's sketch and to his explanation for his concept of a natural-crystal-shaped die in engineering the shape of, and consequently producing the drawings of, the die that is the subject of the '197 Patent. Hasbro denies that the so-called formal drawings represent "Bowling's invention," or that Lizarraga's involvement was limited to producing drawings, which is implicit in the Plaintiff's Proposed Fact. (Lizarraga Dep. at 20:23-22:6.)

PROPOSED FACT NO. 21. When Lizarraga showed the formal drawings to Bowling, Bowling was pleased because they were just as he explained his invention to Lizarraga.

RESPONSE: Denied. When Lizarraga showed the drawings to Bowling, Bowling accepted them without comment despite the fact that they did not reflect the idea of a natural-crystal-shaped die that Bowling had communicated to Lizarraga. (Lizarraga Dep. at 25:17-24.)

PROPOSED FACT NO. 22. An example of the formal drawings Lizarraga provided to Bowling is below.

RESPONSE: Uncontroverted.

PROPOSED FACT NO. 23. After Bowling received the formal drawings back from Lizarraga, Bowling adjusted the die's size based on what he thought was appropriate.

RESPONSE: Hasbro denies Proposed Fact No. 24 to the extent that it states that

Bowling actually adjusted the size of any particular die because (1) it finds no evidentiary support in the record, including the record evidence referenced by the Plaintiff in the Statement of Undisputed Facts; (2) it inaccurately and unfairly characterizes the record evidence that Plaintiff cites in purported support of the Proposed Fact; and (3) it is offered in violation of Local Rule (Civil) 56, in that the cited evidence does not establish the Proposed Fact. Uncontroverted that Bowling testified that he adjusted the size of the drawings of dice in the drawings presented to Bowling by Lizarraga using a photocopier with the purpose of providing a uniform pattern of sizes for the dice.

PROPOSED FACT NO. 24. After Bowling put all the drawings on one page, he wrote in by hand the approximate sizes of the die [*sic*].

RESPONSE: Hasbro denies Proposed Fact No. 24 because (1) it finds no evidentiary support in the record, including the record evidence referenced by the Plaintiff in the Statement of Undisputed Facts; (2) it inaccurately and unfairly characterizes the record evidence that Plaintiff cites in purported support of the Proposed Fact; and (3) it is offered in violation of Local Rule (Civil) 56, in that the cited evidence does not establish the Proposed Fact. By way of further response, Hasbro states that there is no evidence either that "Bowling put all the drawings on one page," or that the hand-written notations actually represent the "sizes of the die [*sic*]." Rather, Bowling's testimony was that he photo-reduced or –enlarged Lizarraga's drawings of the dice to reflect sizes for the dice that he deemed appropriate, and that he noted by hand sizes for certain of the dice, as reflected on Exhibit 4 to Bowling's deposition. (Bowling Dep. at 123:3-124:6.)

PROPOSED FACT NO. 25. Bowling paid Lizarraga for the drafting work and did not hear from him for almost nine years.

RESPONSE: Uncontroverted, except the allegation that Lizarraga and Bowling did not communicate for almost nine years, which is denied. Lizarraga continued to work for Bowling throughout most of 1998, and Lizarraga's deposition was taken in May 2006, less than eight years later. (B00557.)

PROPOSED FACT NO. 26. Recently, Hasbro's counsel sought out Lizarraga, suggested to him that he might be a co-inventor, and offered him $10,000.00 for whatever "right," if any, he might have in the '197 patent.

RESPONSE: Hasbro denies Proposed Fact No. 26 because (1) it is contrary to the evidentiary support in the record, including the record evidence referenced by the Plaintiff in the Statement of Undisputed Facts; (2) it inaccurately and unfairly characterizes the record evidence that Plaintiff cites in purported support of the Proposed Fact; and (3) it is offered in violation of Local Rule (Civil) 56, in that the cited evidence does not establish the Proposed Fact. By way of further response, Hasbro states that its counsel contacted Lizarraga after his role in the conceptualization of the invention claimed in the '197 Patent was explained by the Plaintiff at his deposition, discussed the factual background with Mr. Lizarraga on the phone, including Mr. Lizarraga's statement that he did more than mere drafting for Mr. Bowling, and thereafter negotiated a sale and assignment of rights from Lizarraga to Hasbro. (Lizarraga Dep. at 73:24-79:6.)

PROPOSED FACT NO. 27. Lizarraga offered to assign essentially a "quit claim" of his rights provided that Hasbro would indemnify him for any claims Bowling might bring against him.

RESPONSE: Hasbro denies Proposed Fact No. 27 because (1) it is contrary to the evidentiary support in the record, including the record evidence referenced by the Plaintiff in the

Statement of Undisputed Facts; (2) it inaccurately and unfairly characterizes the record evidence that Plaintiff cites in purported support of the Proposed Fact; and (3) it is offered in violation of Local Rule (Civil) 56, in that the cited evidence does not establish the Proposed Fact. By way of further response, Lizarraga never offered any assignment, or agreed to the terms of any assignment, other than the Agreement to which he and Hasbro are now signatories, which agreement requires other and different terms from those described in Proposed Fact No. 27, and which Agreement speaks for itself. (Lizarraga 0072-Lizarraga 0073; Exhibit I to *Plaintiff's Statement of Undisputed Facts*.)

PROPOSED FACT NO. 28. Hasbro paid Lizarraga $10,000 to assign whatever "right," if any, he might have and to cooperate in Hasbro's defense of this litigation.

RESPONSE: Hasbro denies Proposed Fact No. 28 because (1) it is contrary to the evidentiary support in the record, including the record evidence referenced by the Plaintiff in the Statement of Undisputed Facts; (2) it inaccurately and unfairly characterizes the record evidence that Plaintiff cites in purported support of the Proposed Fact; and (3) it is offered in violation of Local Rule (Civil) 56, in that the cited evidence does not establish the Proposed Fact. By way of further response, the consideration offered by both Hasbro and Lizarraga with respect to the Agreement, under which Hasbro paid Lizarraga $10,000 and Lizarraga sold and assigned all of his rights in the invention to Hasbro, is reflected in the Agreement itself, which speaks for itself. (Exhibit I to *Plaintiff's Statement of Undisputed Facts*.)

PROPOSED FACT NO. 29. During Lizarraga's deposition it became clear that Hasbro – not Lizarraga – claimed he was a co-inventor.

RESPONSE: Hasbro denies Proposed Fact No. 29 because (1) it finds no evidentiary support in the record, including the record evidence referenced by the Plaintiff in the Statement

of Undisputed Facts; (2) it inaccurately and unfairly characterizes the record evidence that Plaintiff cites in purported support of the Proposed Fact; and (3) it is offered in violation of Local Rule (Civil) 56, in that the cited evidence does not establish the Proposed Fact. By way of further response, as of the date of Lizarraga's deposition, Hasbro had made no claim regarding Lizarraga's status as an inventor or co-inventor. Moreover, Lizarraga's testimony was most definitely *not* that he was not a co-inventor, but only that he would not take the legal position that he was a co-inventor because he was not qualified to do so. (Lizzaraga Dep. at 77:21-78:6.)

PROPOSED FACT NO. 30. Lizarraga's recollection of what Bowling provided him is at best vague.

RESPONSE: Hasbro denies Proposed Fact No. 24 because (1) it finds no evidentiary support in the record, including the record evidence referenced by the Plaintiff in the Statement of Undisputed Facts; (2) it inaccurately and unfairly characterizes the record evidence that Plaintiff cites in purported support of the Proposed Fact; and (3) it is offered in violation of Local Rule (Civil) 56, in that the cited evidence does not establish the Proposed Fact. (*See* Lizarraga Dep. at 12:19-14:17.)

PROPOSED FACT NO. 31. Lizarraga claims to have come up with the idea of identically shaped extension-member facets.

RESPONSE: Uncontroverted.

PROPOSED FACT NO. 32. Lizarraga's testimony about symmetrically shaped end caps directly contradicts his claim because he agrees that equally shaped end caps would define identically shaped facets.

RESPONSE: Hasbro denies Proposed Fact No. 32 because (1) it finds no evidentiary support in the record, including the record evidence referenced by the Plaintiff in the Statement

of Undisputed Facts; (2) it inaccurately and unfairly characterizes the record evidence that Plaintiff cites in purported support of the Proposed Fact; and (3) it is offered in violation of Local Rule (Civil) 56, in that the cited evidence does not establish the Proposed Fact. By way of further response, Lizarraga's testimony in this regard was that "In order to make that dice geometrically equal, they would have to be the same size, same areas, same angles. And the end caps pretty much define the extension facets." (Lizarraga Dep. at 57:13-16) This is not contradictory to any other claim by Lizarraga, including the claim (apparently the reference in Proposed Fact No. 32) that Lizarraga, and not Bowling, came up with the idea for identically-shaped extension member facets.

PROPOSED FACT NO. 33. If Bowling provided symmetrical end caps then identically shaped extension member facets would naturally follow and could not have been created by Lizarraga.

RESPONSE: Hasbro denies Proposed Fact No. 33 because (1) it finds no evidentiary support in the record, including the record evidence referenced by the Plaintiff in the Statement of Undisputed Facts; (2) it inaccurately and unfairly characterizes the record evidence that Plaintiff cites in purported support of the Proposed Fact; and (3) it is offered in violation of Local Rule (Civil) 56, in that the cited evidence does not establish the Proposed Fact. By way of further response, Bowling did not "provide[] symmetrical end caps." (Lizarraga Dep. at 34:19-35:4) Moreover, contrary to the reasoning of the Plaintiff in Proposed Fact No. 33, the shape of "end caps" on dice do not "naturally follow" from the shape of the extension member faces. A few examples from the dice collection of the Plaintiff's expert witness, Kevin Cook, illustrate this point:







(*See generally* www.dicecollector.com) Finally, as a matter of logic, the question of whether Bowling or Lizarraga first conceived of using uniform isosceles triangles on the extension member of the die does not in any way mean that it was, or could not have been, either Bowling or Lizarraga who conceived of the use of uniform triangles on the end caps of the dice.

PROPOSED FACT NO. 34. After admitting that he cannot remember whether Bowling instructed him to make the end caps symmetrically equal, Lizarraga admitted that if the end caps are symmetrically equal, the extension member facets would be as well.

RESPONSE: Hasbro denies Proposed Fact No. 34 because (1) it finds no evidentiary support in the record, including the record evidence referenced by the Plaintiff in the Statement of Undisputed Facts; (2) it inaccurately and unfairly characterizes the record evidence that Plaintiff cites in purported support of the Proposed Fact; and (3) it is offered in violation of Local Rule (Civil) 56, in that the cited evidence does not establish the Proposed Fact. By way of further response, Lizarraga never testified that he could not "remember whether Bowling instructed him to make the end caps symmetrically equal" nor did he testifiy that "if the end caps are symmetrically equal, the extension member facets would be as well." (*See* Lizarraga Dep. at 57:13-16) Rather, Lizarraga testified that he didn't recall if Bowling's initial concept of the invention reflected *identically-shaped* surfaces on the end caps of the dice (Lizarraga Dep. at 52:14-20) and that with respect to *his own conception* of the dice, "the end caps pretty much define the extension facets." (Lizarraga Dep. at 57:13-16)

PROPOSED FACT NO. 35. Lizarraga also stated that surface area was not a design consideration on his part when he drew the dice.

RESPONSE: Uncontroverted.

PROPOSED FACT NO. 36. Lizarraga testified that the ratio of the surface area of the end caps to extension member facets [*sic*] was not a design consideration.

RESPONSE: Uncontroverted.

PROPOSED FACT NO. 37. Lizarraga has no drawings or other evidence that corroborate his testimony about contributing identically shaped facets to the invention.

RESPONSE: Denied. As the Plaintiff concedes, all drawings that pre-date the patent application were prepared by Lizarraga and not the Plaintiff, each of which corroborates the fact that Lizarraga had fully conceived of the invention as of the date of each drawing.

PROPOSED FACT NO. 38. Susan Lizarraga ("Susan") was not at the initial meeting when Bowling disclosed his invention to Lizarraga.

RESPONSE: Uncontroverted that Susan Lizarraga was not at the initial meeting of Bowling and Lizarraga. Hasbro denies that Bowling disclosed a complete invention to Lizarraga at that meeting. (Lizarraga Dep. at 13:3-18.)

PROPOSED FACT NO. 39. Her [Susan Lizarraga's] information basically came from what her husband told her.

RESPONSE: Hasbro denies Proposed Fact No. 39 because (1) it finds no evidentiary support in the record, including the record evidence referenced by the Plaintiff in the Statement of Undisputed Facts; (2) it inaccurately and unfairly characterizes the record evidence that Plaintiff cites in purported support of the Proposed Fact; and (3) it is offered in violation of Local Rule (Civil) 56, in that the cited evidence does not establish the Proposed Fact. By way of

further response, Susan Lizarraga testified that her knowledge came both "from what he told me, I had seen things that he had drawn up, just basically what I had seen him draw as well as what he had told me." (S. Lizarraga Dep. at 6:19-21)

PROPOSED FACT NO. 40. She [Susan Lizarraga] was told that Bowling asked her husband to do some drawings for dice.

RESPONSE: Denied. Susan Lizarraga testified that her husband had been asked to design dice for Bowling, in addition to "do[ing] some drawings for dice," and that he, in fact, designed dice for Bowling. (S. Lizarraga Dep. at 6:3-14) **(Exhibit I)**

PROPOSED FACT NO. 41. Susan [Lizarraga] had no involvement in Lizarraga's work for Bowling.

RESPONSE: Uncontroverted.

PROPOSED FACT NO. 42. Nothing in the patent drawings that Lizarraga prepared for Bowling show that Lizarraga, and not Bowling, conceived of the identically shaped facets or the die's [*sic*] symmetry.

RESPONSE: Uncontroverted only that the patent drawings do not indicate whether Bowling had conceived of the identically-shaped facets or the symmetry of the dice. The drawings prepared by Lizarraga are not "patent drawings"; rather, they are mechanical drawings that Bowling elected to include in his patent application. (*See*, *e.g.*, B00510-B00511 (communication from Bowling to manufacturer enclosing drawings for use in manufacturing process) **(Exhibit H)**) Further, the drawings show that Lizarraga *had* conceived of both the identically-shaped facets of the dice and the symmetry of the dice; had Lizarraga not conceived of these ideas, he could not have engineered the drawings.

PROPOSED FACT NO. 43. Bowling's patent attorney, Julie Daulton, testified that she

probably received specific information regarding the die [*sic*] from asking Bowling or possibly from the drawings.

RESPONSE: Uncontroverted.

PROPOSED FACT NO. 44. Her [Julie Daulton's] standard practice is also [*sic*] to do an inventorship interview with the client. Such an interview would reveal if anyone else was a co-inventor. After such a review, Bowling signed a declaration that he was the sole inventor of the '197 patent.

RESPONSE: Uncontroverted only that Julie Daulton testified that her standard practice is to conduct inventorship reviews with clients and that the Plaintiff signed a declaration that he was the sole inventor of the '197 Patent. Hasbro denies Proposed Fact No. 44, other than that Julie Daulton testified that her standard practice is to conduct inventorship reviews with clients and that the Plaintiff signed a declaration that he was the sole inventor of the '197 Patent, because (1) it finds no evidentiary support in the record, including the record evidence referenced by the Plaintiff in the Statement of Undisputed Facts; (2) it inaccurately and unfairly characterizes the record evidence that Plaintiff cites in purported support of the Proposed Fact; and (3) it is offered in violation of Local Rule (Civil) 56, in that the cited evidence does not establish the Proposed Fact. Specifically, such an interview would not necessarily "reveal if anyone else was a co-inventor" because Julie Daulton testified unequivocally that her interview is necessarily limited to the information provided to her by the client. (*See generally* Daulton Dep. at 47:25-54:11 (explaining inventorship review as involving only a telephone interview of the client) (**Exhibit K**) Julie Daulton admitted that she never contacted Albert Lizarraga and therefore could never have considered Mr. Lizarraga's contention that Bowling had not asked him to develop a symmetrical, regularly-shaped geometric figure for use as a die, or that Mr.

Lizarraga, and not Bowling, had conceived of the relative size of the facets of the extension member and the end caps. (Daulton Dep. at 67:8-14; 108:15-22) Moreover, Julie Daulton admitted that she had no recollection whatsoever of ever having conducted an inventorship review with the Plaintiff, or of having discussed factual issues pertinent to inventorship with him. (Daulton Dep. at 49:1-9) The Plaintiff's assertion that he "signed a declaration that he was the sole inventor of the '197 Patent" "[a]fter such a review" is utterly baseless.

HASBRO, INC.
By its Attorneys,

Todd D. White (# 5943)
Jeffrey K. Techentin (#6651)
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
(401) 274-7200
Fax: (401) 751-0604/ 351-4607
Dated: July 10, 2006

Of Counsel:

David K. S. Cornwell, Esq.
Tracy-Gene G. Durkin, Esq.
Sterne Kessler Goldstein Fox
1100 New York Avenue, NW
Washington, D.C. 20005

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of July 2006, I caused a true copy of the within to be served on the following individuals by regular mail, postage prepaid:

Craig M. Scott, Esq.
Christine K. Bush, Esq.
Duffy & Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903

Of Counsel:

Thomas J. Leach, Esq.
Douglas J. Williams, Esq.
Law Firm of Merchant and Gould P.C.
3200 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402-2215

David K. S. Cornwell, Esq.
Sterne Kessler Goldstein Fox
1100 New York Avenue, NW
Washington, D.C. 20005

[signature]

*385717_1*