IN THE UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MICHAEL BOWLING,<br>a Resident of Arizona,<br><br>Plaintiff,<br>v.<br><br>HASBRO, INC.,<br>a Rhode Island Corporation,<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | <br><br><br>C.A. No. 05-229S |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OBJECTION TO HASBRO'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON MARKING**

Pursuant to Fed. R. Civ. P. 56 and Local Rule (Civil) 56, Plaintiff, Michael Bowling ("Bowling"), respectfully submits this memorandum of law in opposition to Defendant's, Hasbro, Inc. ("Hasbro"), motion for partial summary judgment regarding marking.

## I. INTRODUCTION

Hasbro attempts to escape paying damages for nearly 60 percent of its infringing sales arguing that Bowling did not properly mark his patented dice. Yet Hasbro has no evidence that Bowling did not properly mark his dice before Hasbro received actual notice on November 3, 1999. In fact, from the day the patent issued, Bowling consistently marked substantially all his patented dice and took reasonable efforts to ensure that his distributors and retailers did as well. Through Bowling's consistent and continuous marking, the public, including Hasbro, was properly put on notice that Bowling's dice were patented. Whether Bowling complied with the marking statute, however, is a question of fact for the jury and not properly decided on summary judgment.

Not only did Bowling contact every one of his customers concerning marking his product, just days before the patent issued he sent letters to his distributors and retailers, including stickers bearing the patent number, instructing them to place the patent-number sticker on any bins or tubs containing his patented dice. Immediately after the patent issued, Bowling also included in every new shipment plastic tubs, with the patent-number sticker affixed thereto, along with bags of the dice containing the patent-number stickers. Throughout its brief, Hasbro asks the Court to usurp the jury's function and weigh evidence, make credibility determinations, and determine if Bowling's marking procedures were reasonable.

Moreover, Hasbro's argument that Bowling did not properly plead marking is also specious under the liberal notice pleading standards, and because Hasbro has known from day one that Bowling sought damages from the date the patent issued because he properly marked under 35 U.S.C. § 287. Tellingly, Hasbro's Answer raises the Affirmative Defense that Bowling's claims are limited by § 287 for failure to properly mark. Yet Hasbro asks the Court to believe that it just recently learned that marking was an issue. That is not true. In addition to Hasbro's Affirmative Defense, Hasbro spent nearly 20 percent of Bowling's deposition on marking and served an interrogatory specifically directed to marking. Hasbro did not go to such lengths to learn of Bowling's marking activities because it believed marking was not an issue.

## II. FACTS

### A. BACKGROUND

After inventing the dice now covered by U.S. Patent No. 5,938,197 ("the '197 patent"), Bowling started Crystal Caste™, a small business out of his garage, selling his new crystal dice. Bowling first sold his dice at the 1998 Gen Con trade show. (Deposition Transcript of Michael Bowling ("Bowling Depo.") at 107:8-14, attached hereto as Exhibit A.) At that tradeshow

Bowling displayed placards that informed the public that the dice were patent pending. (*Id*. at 142:16-143:1.) Mike Gray, who is in charge of Hasbro's product acquisitions, attended the 1998 Gen Con trade show and systematically visited every booth, including Bowling's. (Deposition Transcript of Michael Gray ("Gray Depo.") at 15:19-17:12; 20:16-22:2, attached hereto as Exhibit B.) Bowling also attended the 1999 Gen Con trade show and again displayed the "patent pending" placards. (Exhibit A at 143:9-13; 178:8-18; 183:6-21.) Mr. Gray also attended the 1999 Gen Con Trade show. (Exhibit B at 15:19-16:2.) Bowling also sent out tubs, which had a patent pending sticker affixed thereto, out of which its customers could sell his dice. (Exhibit A at 167:8-175:18.) Bowling's '197 patent issued just weeks after the 1999 Gen Con tradeshow, on August 17, 1999.

**B. BOWLING PROPERLY MARKED HIS DICE UNDER THE MARKING STATUTE**

Just before the '197 patent issued, Bowling changed the patent sticker from "patent pending" to "U.S. Patent # 5,938,197" and affixed them to every display tub used to sell his crystal dice and included a patent-number sticker in all bags of dice sold. (Exhibit A at 199:19-205:12; *See* also Declaration of Michael Bowling ("Bowling Decl.") at ¶ 2.) An example of the point-of-purchase display tubs, which Bowling affixed the patent-number sticker to and sent to its retail and distributor customers, is shown below:




In addition to placing patent-number stickers on the tubs, Bowling also included the patent-number sticker in all bags of dice that were sold. (Exhibit A at 208:2-9.) Bowling also instructed all of his distributor and retail customers to properly mark his dice with the patent number. In addition, he provided them with patent stickers to place on any bins containing the dice.

**1. Bowling Instructed His Customers To Properly Mark And Provided Them Patent-Number Stickers And Tubs Marked With The Patent Number**

Bowling personally contacted every retail and distributor customer by phone and instructed them to mark their bins with the patent-number sticker. (*Id.* at 209:7-210:6) To drive the point home, on August 15, 1999, two days before Bowling's '197 patent issued, Bowling sent formal letters to his distributor and retail customers including stickers bearing "U.S. Patent #

5,938,197" instructing them to affix the patent-number stickers to all containers, bags or tubs. (*Id.* at 205:7-208:9.) The letter Bowling sent to his retail customers explained that "[i]t is important that all Crystal Caste™ dice on display be labeled with our sticker identifying our patent protection. If you need more [stickers] please contact us at (888) 3CC-DICE." (Exhibit C.) The letter also explained that Crystal Caste would be placing patent stickers on its tubs and in the bags of loose dice. (*Id.*) A copy of the letter Bowling sent to its retail customers is below:

CRYSTAL CASTE™ The Magical Choice

August 15, 1999

The Book Stan
3895 Caulder
Beaumont, TX 77706

Dear Buyer,

This letter is to inform you that from this date forward we require that Crystal Caste™ dice be sold with it's patent identification, U.S. patent #5,938,197. Our patent number must be affixed to all containers, bags or tubs.

It is important that all Crystal Caste™ dice on display be labeled with our sticker identifying our patent protection. We are asking you to label your existing tubs or bins with the enclosed stickers. If you need more please contact us at (888) 3CC-DICE.

From today forward, we will place a sticker on our tubs and in the bags of loose dice.

Please indicate your agreement with this by signing below and returning this letter to us. You may return this letter to 7931 S. Avenida De Pina, Tucson, AZ 85747 or you may fax it to (520) 571-4065. Without this agreement, we cannot continue to sell dice to you.

Your cooperation is greatly appreciated.

Thank you,

Michael Bowling
Crystal Caste™, LLC

JENNA STANLEY = BOOK STAN [signature] 8-25-99
Name (please print) Company Name Signature Date

WE NEED 3 MORE PATENT PRO. STICKERS

(*Id*.) Similarly, Bowling sent a marking letter to his distributors stressing that it was "important that all Crystal Caste™ dice out in the stores, or in your inventory, today be labeled with our sticker identifying the patent protection." (Exhibit D.) Bowling instructed his distributors to label all of their Crystal Caste™ containers with the sticker and place a patent sticker in each bag of dice sold. (*Id*.) Bowling's marking letter also instructed the distributors to send a patent sticker to all of their retail customers so they too could appropriately mark any containers holding the patented dice. (*Id*.)

After Bowling sent out patent-number stickers and instructed his customers to mark the dice, Bowling periodically received requests from both his distributors and retailers asking for more stickers or replacement tubs as they became worn or dirty. (Exhibit A at 172:17-173:24.) Bowling also sent out new tubs that had the patent-number sticker affixed thereto on new display tubs that went out. (*Id.* 203:1-20.)

Bowling's dice were sold loose in tubs marked with his patent number until about 2000, when Crystal Caste introduced a set of dice packaged in a plastic containers. (*Id*. at 221:3-222:19.) Bowling marked these plastic containers with the patent number. (*Id*. at 222:10-19.) An example of how such containers were marked is shown below:



To ensure that his employees were properly marking the packaging, Bowling would visit the factory. (*Id*. at 227:6-8.) Nothing led Bowling to believe that his patented dice were not being properly marked. (Bowling Decl. at ¶ 3.)

**2. Steen Jensen's Testimony Supports That Bowling Properly Marked**

Steen Jensen ("Mr. Jensen") worked for Berkeley Topline distributors from the date the patent issued, August 17, 1999, until the fall of 2000. (Deposition Transcript of Steen Jensen ("Jensen Depo.") at 9:10-10:15, attached hereto as Exhibit E.) Mr. Jensen was responsible for ordering products and maintaining inventory for about 20,000 products, including dice which were a very small part of his duties. (*Id*. at 11:4-12:25; 63:5-23.) Mr. Jensen would not recognize small details concerning each individual product. (*Id*.) Mr. Jensen, however, confidently testified that one of the people working for him, Robert Waros, signed Bowling's letter instructing Berkeley Topline to mark all of Crystal Caste's dice and instruct their retail stores to do so as well. (Exhibit F; Exhibit E at 64:18-67:2.) Mr. Jensen also confidently testified that if Berkeley received such a letter, which it did, it would have followed those instructions. (*Id*. at 69:4-70:7; 74:5-76:14.) Mr. Jensen did not work in the receiving department and did not see how Bowling's dice arrived at Berkeley Topline. (*Id*. at 23:5-24:3.) Mr. Jensen also did not package orders and ship them out. (*Id*. at 72:8-72:20.) Mr. Jensen simply ordered the product and had very little to do with actually receiving or shipping it. (*Id*. at 72:13-73:20.) Berkeley Topline's sales people may have been the ones who passed on the patent-number stickers to its customers. (*Id*. at 65:22-66:13.)

Moreover, Bowling's invoice dated November 27, 1999, clearly shows that it sent 12 "Point of Purchase Tub Displays" to Berkeley Topline North. (Exhibit G.) Bowling testified that he affixed the patent-number stickers on all such point-of-purchase displays. (Exhibit A at

199:19-200:14; 203:14-204:8.) Mr. Jensen clearly stated that if the point-of-purchase display tubs received from Bowling had patent-number stickers on them Berkeley Topline would have left the patent-number stickers on the display tubs. (Exhibit E at 66:9-67:2.)

### C. BOWLING PROPERLY PLED MARKING AND HASBRO HAS KNOWN THAT FROM DAY ONE

Bowling's Complaint properly pled marking under the liberal notice pleading standard. (*See* Complaint at ¶¶ 6, 7, 12-14.) Specifically, Bowling's complaint, among other things, alleged that "Defendant Hasbro had actual knowledge of United States Patent No. 5,938,197, and its infringing activities at least since Hasbro received notice from the plaintiff have been and continue to be willful and deliberate." (Compl. at ¶ 14.) Hasbro's Answer included an Affirmative Defense to Bowling's claim that it properly marked under 35 U.S.C. § 287: "Pursuant to 35 USC § 287, *Plaintiff's claims* are barred or limited based on Plaintiff's failure to properly mark the product and/or packaging with the requisite patent designation. (*See* Answer at ¶ 4 (emphasis added).)

Aside from properly pleading marking, from the beginning of this dispute Bowling claimed that he was entitled to damages from the date the patent issued, August 17, 1999, which necessarily means that Bowling claimed he properly marked. (Exhibit H ("For each die having the geometry as shown in the photographs of Exhibit A, the number of dice sold by or on behalf of Hasbro *since August 17, 1999*.") (emphasis added).) In Hasbro's deposition of Bowling, nearly 20 percent is dedicated to whether Bowling sufficiently marked his product under 35 U.S.C. § 287. (Exhibit A at 162-183; 199-227.) In Hasbro's first set of interrogatories to Bowling, dated August 5, 2005, Hasbro specifically asked Bowling to explain how he complied with the marking statute:

**INTERROGATORY NO. 18:**

State whether any die manufactured or sold under Patent '197 carried any notice of the type described in 35 U.S.C. § 287, either on the product or its packaging and, if so, explain where the patent designation may be found and state in detail which dice bore such notice.

(Exhibit J.) On October 20, 2005, Bowling served responses to Hasbro's interrogatory directed to marking explaining how Bowling properly marked its products. (*Id*.)

## III. ARGUMENT

### A. GENUINE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER BOWLING SUFFICIENTLY COMPLIED WITH 35 U.S.C. § 287

Hasbro's motion for summary judgment should be denied because Bowling complied with the marking statute, or at the very least, there are genuine issues of material facts as to whether Bowling's marking was sufficient. Whether Bowling complied with the marking statute *is a question of fact* for the jury to decide. *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996). All reasonable inferences must be drawn in Bowling's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The evidence must be reviewed through the same evidentiary standard that would prevail at trial. *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1318 (Fed. Cir. 2004). In this case, Bowling must prove by a preponderance of the evidence that he complied with the marking statute. *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1446 (Fed. Cir. 1998). Hasbro's motion should be denied because there are at least genuine issues of material fact regarding whether Bowling's marking was sufficient. *See Imagexpo, L.L.C. v. Microsoft Corp.*, 299 F.Supp. 2d 550, 554 (E.D. Va. 2003) (denying partial summary judgment stating that whether the plaintiff satisfied constructive notice through marking presents "classic issues for resolution by the trier of fact.")

During the relevant period (August 17, 1999 to November 3, 1999) all that was required of Bowling is that he continuously marked substantially all of his dice and that he took reasonable steps to insure his retailers and distributors did as well. *Maxwell*, 86 F. 3d at 1111-12. The law recognizes that with parties unrelated to the patentee it is more difficult for a patentee to ensure compliance with marking. *Id*. Thus, courts apply a "rule of reason" approach to determine whether the marking statute was properly complied with. *Id*. When a failure to mark is caused by a third party, courts consider whether the patentee took reasonable steps to ensure compliance. *Id*. In this case Bowling contacted his retail and distributor customers by phone and instructed them to mark. (Exhibit A at 209:7-210:6.) He provided them with the materials to properly mark the bins from which the dice were sold. (*Id*. at 199:19-205:12 and 208:8-9.) He sent letter agreements to his customers instructing them to mark. (*Id*. at 205:7-208:9.) Finally, Bowling was assured they were marking because his customers would periodically ask for more tubs and stickers. (*Id*. at 172:17-173:24.) Bowling properly complied with the marking statute or there are at least genuine issues of fact that preclude summary judgment.

**1. Bowling Appropriately Gave Notice To The Public By Marking The Packaging, Or At Least Issues Of Fact Remain As To Whether Marking The Packaging Was Sufficient**

Hasbro contends that it is not liable for damages for nearly 60 percent of its infringing sales arguing that Bowling was required to place "U.S. Patent # 5,938,197" directly on his patented dice rather than mark the packaging. (Hasbro's Brief at 8.) The products Hasbro claims Bowling must have marked are dice for game playing as shown below:




Hasbro incorrectly focuses on "technicalities" in an attempt to escape liability, rather than on the purpose of the statute—to provide notice to the public that the product is patented. *Rutherford v. Trim-Tex, Inc.*, 803 F.Supp. 158, 161 (N.D. Ill. 1992).

Contrary to Hasbro, the law does not require Bowling to physically mark the die. As far back as 1892 the Supreme Court has recognized that some discretion must be left to the patentee as whether to mark the packaging instead of a small product. *Sessions v. Romadka*, 145 U.S. 29, 50 (1892) ("It is not altogether clear that the stamp could not have been made upon the smaller sizes [of trunk catches], but, in a doubtful case, something must be left to the judgment of the patentee, who . . . affix[ed] a label to the packages in which the fasteners were shipped and sold."); *Metrologic Instruments., Inc. v. PSC, Inc.*, No. 99-4876, 2004 U.S. Dist. LEXIS 24949, at *57 (D. N.J. Dec. 13, 2004) (marking the packaging is sufficient even though it is physically possible to place the patent number on the article) (Exhibit N.); *Wayne-Gossard Corp. v. Sondra Mfg. Co.*, 579 F.2d 41, 43 (3d Cir. 1978) (finding that despite being able to mark socks, marking the packaging satisfied the notice requirement of § 287). The objects size is an important factor in determining whether marking the packaging is sufficient. *Rutherford*, 803 F.Supp. at 162.

While Hasbro provides evidence that it is *possible* to mark *a die* with a patent number, that is not dispositive as to whether Bowling could mark *his die* or whether he complied with the marking statute by alternatively marking the packaging. *Rutherford*, 803 F.Supp. at 162 ("Marking the package is a sufficient alternative so long as the patentee, the licensees or

distributors act so that the package marking is actually seen by the consuming public.); *Wayne-Gossard Corp.*, 579 F.2d at 43; *Sessions*, 145 U.S. at 50.

Here, it would have been very difficult, if not impossible, to mark the dice because of their small size and the manufacturing process used. (*See* Declaration of Clive Jezard ("Jezard Decl.") at ¶¶ 5-8.) Bowling testified that the die was too small to place "Pat. # 5,938,197" on the die. (Exhibit A at 164:9-11.) The manufacture of Bowling's dice confirmed that the dice could not be marked with the patent number because of their size and the manufacturing process used to make the die's mold tool. (Jezard Decl. at ¶¶ 5-11.) Bowling's dice are manufactured using a process that would only allow very shallow lettering of the size required to fit "Pat. # 5,938,197" on the dice. (*Id*. at ¶7-8.) Lettering of this depth would be removed in the post mold process when the dice are barreled (sanded) to remove mold tool lines and excess paint. (*Id*. at ¶¶ 9-11.)

The cases Hasbro cites claiming Bowling must have marked the die are readily distinguishable. In *Creative Pioneer*, the court held that marking the packaging was insufficient when marking the product would have been a "relatively simple matter." *Creative Pioneer Prods. Corp. v. K Mart Corp.*, No. H-83-4137, 1987 U.S. Dist. LEXIS 13474, at *15 (S.D. Tex. July 10, 1987). (Exhibit O.) Unlike a wire cutting tool, the product at issue here is a game die, which is about 1 1/8 inch long and about 3/8 inch in diameter and has multiple facets. It would be very difficult, if not impossible, given the manufacturing process used to place on Bowling's die "Pat. # 5,938,197" such that it would be legible. (Jezard Decl. at ¶ 5.)

In *John L. Rie, Inc.*, the court applied a stricter standard in rejecting the argument that the device was too small to mark because the patentee had already marked the device "PAT PEND." and the device also contained the inscription "JOHN L. RIE, INC. YONKERS, N.Y." *John L. Rie, Inc. v. Shelly Bros., Inc.*, 366 F. Supp. 84, 90-91 (E.D. Pa. 1973). In the present

case, while the die has markings, i.e. numbers centered on each facet, those markings are fundamentally different than those in *John L. Rie, Inc*. The stricter standard applied in *John L. Rie, Inc.*, was explained as follows: "where the public finds markings or writings upon the article itself, the public should be able to rely upon the fact that a patent, if it exists, should also be noted with that writing." *Rutherford*, 803 F.Supp. at 163. Nothing about the numbers on a die would lead the public to conclude that the die is not patented because a patent number is not on the die.

In *Rutherford*, the court found marking the package sufficient despite the product being capable of being marked, because marking the product would have required an additional step and the marking was sufficient to provide notice to the public. *Rutherford*, 803 F.Supp. at 164. Here, like in *Rutherford*, it is *possible* to mark the Crystal Caste die, however, to add the patent number would require an additional manufacturing step of laser etching or silk screening to get the patent number legibly on the die. (Jezard Decl. at ¶¶ 12.) Placing the patent number on the die is not an industry standard and, in Bowling's case, would likely double the cost of the die. (*Id*. at ¶13-14.)

**2. Bowling Complied With The Marking Statute By Affixing Labels To The Tubs And Placing Patent-Number Stickers In The Dice Bags, And At Least Issues Of Fact Remain As To Whether This Was Sufficient**

Hasbro asks the Court to summarily decide that Bowling did not comply with the marking statute because he placed the patent-number stickers in the clear plastic bags of dice he sold rather than "affixing" them to the bag. (Hasbro's Brief at 10.) This is not a determination appropriate for summary judgment. Whether Bowling complied with the marking statute is a question of fact for the jury. *Maxwell*, 86 F.3d at 1111. That the parties dispute whether this was sufficient highlights that it is inappropriate for summary judgment.

In arguing that summary judgment is appropriate, Hasbro provides only half the story concerning Bowling's marking. Not only did Bowling mark the product as he sold it, by placing patent-number stickers in the see-through bags of dice, he provided patent-number stickers to his retail and distributor customers and instructed them to mark the product's display container so consumers would know that his dice were patented. (Exhibit C; Exhibit D; Exhibit A at 204:24-210:6.) Just before the patent issued, Bowling provided his retail and distributor customers with patent-number stickers and point-of-purchase display tubs on which he affixed the patent-number sticker. (Exhibit A at 199:19-203:18; Bowling Decl. at ¶ 2.) An example of one of Bowling's point-of-purchase display tubs is shown below:




In addition, Bowling called every customer and personally instructed them how to mark his die. (Exhibit A at 209:2-210:6.)

That Bowling did not "affix" the patent-number sticker directly to the bag of dice, but rather placed it in the bag provided *better* notice to the public given the industry and how his products were sold, i.e. loose in tubs. Below is an example of how Bowling packaged his dice[1]:



While Bowling sent out point-of-purchase displays and patent-number stickers to his customers, he also included a sticker in every one of the bags of dice he shipped so when the dice were removed from the bags and placed in the sales tubs or bins, the sticker could be affixed to the display rather than be thrown out with the bag as would have occurred had it been "affixed" to the bag. Thus, not only did Bowling mark the packaging, but he made it easy for retailers to properly mark the containers in which the dice were sold.

Hasbro misstates the testimony of Mr. Jensen, an employee of Berkeley Topline, arguing that a distributor would have received Bowling's bags of dice and thrown away the packaging *and the patent-number sticker*. (Hasbro's Brief at 10.) That was not his testimony. Mr. Jensen only stated that the *plastic bags* would be thrown away. (Exhibit E at 23:5-25:2.) Mr. Jensen

[1] Hasbro argues that because Bowling recalled only selling in bags of 50 dice and because there were a few orders that went out with less than 50 dice, Bowling must not have included stickers in those packages. Hasbro's logic simply does not follow. From the date the patent issued, Bowling consistently marked all of his dice. (Exhibit D ("From today forward we will place a sticker on our tubs and in the bags of loose dice.); Exhibit M at p. 4; Bowling Decl. ¶ 2.))

confidently testified that the patent-number stickers would have been sent to customers and placed in the bins. (*Id*. at 65:17-66:13.) By including the patent-number sticker in the bag, Bowling marked the packaging (the sticker was contained in and visible through the packaging) and provided better notice to the public because retailers could use the stickers to mark their bins. Mr. Jensen clearly testified that if Berkeley received Bowling's marking letter, it would have complied with those instructions. (*Id*. at 69:4-70:7; 74:5-76:14.) Bowling has a letter back from Berkeley Topline bearing the signature of an employee, Robert Waros, who reported directly to Mr. Jensen. (Exhibit F; Exhibit E at 64:18-67:2.)

Such marking complies with the marking statute given "the Court's long-standing focus on the notice effected by the method of marking the patented article rather than on the precise mechanistic compliance with the statute." *Rutherford*, 803 F.Supp. at 161 (citing *Sessions*, 145 U.S. at 50). Not only did Bowling properly mark, but his method of marking was specifically tailored to the industry to assure that the public received notice of his patent. Summary judgment is inappropriate because, at the very least, genuine issues of material fact exist as to whether Bowling properly marked his dice.

**2. Bowling's Marking Activity After Bowling Gave Actual Notice To Hasbro, On November 3, 1999, Is A Red Herring**

Hasbro points to a few instances *after* November 3, 1999, the date Bowling provided actual notice to Hasbro, where unmarked products were shipped. However, the only relevant inquire is whether Bowling continuously marked substantially all of his products from the date the patent issued until Bowling gave actual notice to Hasbro. *Metrologic Instruments,* 2004 U.S. Dist. LEXIS 24949 at *60-61 (holding that a subsequent failure to mark does not insulate the infringer from damages for the period in which proper marking was in effect.) (citing *Clancy Sys. Int'l, Inc. v. Symbol Techs., Inc.*, 953 F.Supp. 1170, 1174 (D. Colo. 1997) (Exhibit N); *See*

*also Tulip Computers Int'l B.V. v. Dell Computer Corp.*, No. 00-981, 2003 U.S. Dist. LEXIS 5409, at *45-55 (D. Del. Feb. 4, 2003) (Exhibit P.) Hasbro incorrectly suggests that any failure to mark after November 3, 1999, precludes damages for sales made before November 3, 1999. That Hasbro recently ordered a small number of products that were allegedly unmarked does not prove that Bowling is not and did not continuously mark substantially all of his products. And it certainly does not prove that he was not properly marking during the period from August 17, 1999 through November 3, 1999, such that summary judgment would be appropriate.

### B. Bowling Adequately Pled Allegations to Satisfy Notice-Pleading Requirements for Marking

Defendant attempts to modify the notice-pleading requirements of the Federal Rule of Civil Procedure 8(a), by suggesting that Bowling was obligated to plead constructive notice with particularity. Defendant received adequate notice of Bowling's allegations of infringement through the notice-pleading function of the Complaint, as well as through discovery. Despite Hasbro's contentions that it just learned of the claim to damages predating actual notice, Hasbro has had notice to prepare a defense and in fact has done so.

The Federal Rules only require allegations sufficient to put the defendant on notice of the claims against him. Rule 8(a) requires a short plain statement of claim showing pleader is entitled to relief and a demand for judgment. Fed. R. Civ. P. 8(a)(2) and (3). This Court has further explained notice-pleading requirements, stating "[b]ecause a complaint is a precursor to discovery, it need not state all the possible facts at issue." *Taylor v. Woods,* 2006 U.S. Dist. LEXIS 22310 at *3-4 (D.R.I. 2006) (Exhibit K.) As long as the pleading gives the defendant the ability to understand the nature and extent of charges against it, details should be gleaned through discovery. (*Id*. at *4-5.)

As to § 287 compliance, the complaint need not plead with particularity compliance with marking requirements. In fact, the cases cited by Defendant do not support the contention that compliance with marking must be specifically pled. For example, in *Sentry Protection*, the Federal Circuit found that a complaint alleging willful infringement with knowledge of the patent at issue was sufficient to meet the notice-pleading requirements with regard to § 287. *Sentry Prot. Prods., Inc. v. Eagle Mfg. Co.*, 400 F.3d 910, 918 (Fed. Cir. 2005). Courts have followed this jurisprudence and have not required specific pleading of marking compliance. *See e.g., AVID Identification Sys., Inc. v. Philips Elecs. N. Am. Corp.*, 2006 U.S. Dist. LEXIS 30981, at *6 (E.D. Tex. May 17, 2006) (holding that an allegation of "willful and deliberate" infringement was sufficient to fulfill a plaintiff's duty to plead compliance with § 287(a)) (Exhibit L.) In addition, other courts have declined to grant summary judgment even in view of a party's failure to supply allegations of willful and deliberate infringement, when defendant has not been unfairly prejudiced. *See e.g., Civix-DDI, L.L.C. v. Cellco P'ship*, 387 F.Supp. 2d 869, 901 n.38 (N.D. Ill. 2005) (denying summary judgment for failure to plead marking compliance when no prejudice to defendant).

Defendant attempts to reconstruct Bowlings complaint in an effort to demonstrate Defendant's did not have notice of the claim that Bowling would be seeking damages based on constructive notice through marking. However, a review of the Complaint demonstrates that Bowling has adequately met his burden to provide notice under Rule 8(a) to preserve the right to collect damages prior to actual notice. [2] Defendant even highlights the language in its brief.

---

[2] Bowling's reference in ¶ 14 of the Complaint to "actual knowledge" *of the patent* refers to a September 30, 1999 letter Hasbro sent Bowling inquiring about using the dice claimed in Bowling's '197 patent. (Exhibit I.) Unlike actual notice of the infringement for damages, willful infringement begins from the date Hasbro had actual *knowledge of the patent*. *Imonex Servs., Inc. v. W.H. Munzprufer Dietmar Trenner GmbH*, 408 F.3d 1374, 1377 (Fed. Cir. 2005). At the time of the Complaint, Bowling knew Hasbro had actual knowledge of the patent because it referenced the '197 patent in its September 30, 1999 letter to Bowling. Thus, contrary to Hasbro, the Complaint

(Hasbro's Brief at 7.) Bowling states that Defendant's infringing activities have taken place "*at least* since Hasbro received notice from plaintiff have been and continue to be willful and deliberate." (Compl. at ¶ 14.) The language "at least," coupled with the allegation of willful and deliberate infringement, sufficiently fulfilled Bowling's obligation to plead compliance with § 287.

Apart from Bowling's sufficient pleading, Defendant's own actions demonstrate it was fully aware of Bowling's allegation of constructive notice under the § 287. As early as Defendant's Answer, it was attempting to rebut compliance with marking. In its Fifth Affirmative Defense, Defendant states "[p]ursuant to 35 U.S.C. § 287, Plaintiff's claims are barred or limited based on Plaintiff's failure to properly mark the product and/or packaging with the requisite patent designation." (Answer at p. 4). Further, Defendant spent approximately 20 percent of Bowling's deposition focusing on Bowling's marking. (Exhibit A at 162-183; 199-227.) Finally, as Defendant cites, Bowling has maintained the right to collect damages prior to actual notice in response to interrogatories. (Exhibit M at p. 4.) Given Defendant's own pleading and discovery in this case, it is clear that Defendant has not suffered any prejudice to warrant a grant of summary judgment on this basis.

## **CONCLUSION**

Whether Bowling properly marked his dice is a question of fact for a jury to decide. Hasbro's motion for summary judgment should be denied because at the very least there exist genuine issues of material fact as to whether Bowling properly marked his dice. Moreover, Hasbro's argument that Bowling did not satisfy the notice pleading requirements regarding

alleged willful infringement at least back to September 30, 1999, which necessarily means Bowling claimed Hasbro was on constructive notice by Bowling's marking.

marking is specious given Bowling's complaint, the fact that Hasbro specifically responded to the marking allegation in its answer, and Hasbro's substantial discovery on the marking issue.

Plaintiff,
Michael Bowling,
By his attorneys,

Date: August 2, 2006

/s/ Christine K. Bush

Craig M. Scott, Esq. (#4237)
Christine K. Bush, Esq. (#5587)
DUFFY SWEENEY & SCOTT, LTD
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700
(401) 455-0701 (Facsimile)
cbush@duffysweeney.com

Douglas J. Williams, *pro hac vice*
Thomas J. Leach, *pro hac vice*
MERCHANT & GOULD, P.C.
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(612) 332-5300
(612) 332-9081 (Facsimile)

## CERTIFICATION

TO:

Todd D. White, Esq.
Jeffrey K. Techentin, Esq.
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345

David K. S. Cornwell, Esq.
Tracey-Gene G. Durkin, Esq.
Sterne Kessler Goldstein & Fox P.L.L.C.
1100 New York Avenue N.W.
Washington, DC 20005

I hereby certify that the within *Memorandum of Law in Support of Plaintiff Bowling's Objection to Motion for Partial Summary Judgment* was filed through the ECF system on the 2nd day of August, 2006, and will be sent electronically to the above-named counsel who are registered participants identified on the Notice of Electronic Filing.

/s/ Christine K. Bush

H:\Clients\Bowling\Pleadings\Mem Support Opposition To Hasbro's Marking SJ_V2.doc