UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MICHAEL BOWLING, a Resident of Arizona, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 05-229 S |
| HASBRO, INC., a Rhode Island Corporation, | : | |
| Defendant. | : | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. Rule 56 and Local Rule (Civil) 56, Defendant/Plaintiff-in-Counterclaim Hasbro, Inc. ("Hasbro"), submits this Reply Memorandum of Law in further support of its Motion for Partial Summary Judgment.

## I. Introduction

Hasbro is entitled to summary judgment with respect to the question of whether the plaintiff Michael Bowling ("Bowling") has pled and can prove that he marked his dice in compliance with the requirements of 35 U.S.C. § 287(a). In opposition to Hasbro's motion, Bowling makes essentially two arguments. First, he contends that he adequately pled a claim for damages based upon the constructive notice permitted by the marking statute because Hasbro raised an affirmative defense to such a claim and took discovery from Bowling on that subject. Second, he contends that the facts of this case support the conclusion that he actually marked the dice in compliance with that statute, or at least that there are sufficient disputed facts on that subject to survive summary judgment. Bowling is wrong as a matter of law on both points.

Of course, the Plaintiff's burden in pleading his complaint is his own, and is not excused by the diligent pleading or discovery efforts of Hasbro. Bowling concedes that he is obliged to plead compliance with the marking statute in order to be entitled to damages for infringement occurring prior to actual notice to Hasbro. But because his complaint does not contain any allegations sufficient to constitute such a pleading, Bowling unabashedly tries to rewrite his own complaint, and then to argue that because Hasbro defended against a possible claim for pre-notice damages, that must mean that he actually pled such a claim. As explained below, it is apparent that his complaint does not plead compliance with the marking statute, and summary judgment is therefore appropriate.

Separately, there are no genuine issues of material fact that preclude entry of summary judgment. Although Bowling has tried to deny some of the undisputed facts advanced by Hasbro on the basis of specious, tortured interpretation of the plain language of those facts, the basic facts are undisputed. Bowling didn't physically mark his dice. He didn't place a mark on the packaging for the dice. He merely claims to have included patent stickers with the dice he sent to retailers and distributors and to have instructed those customers to display the stickers. He never actually checked to see if retailers were, in fact, displaying his marks. And, indeed, they did not. Critically, Bowling failed to gain the agreement of even half of his distributors to even abide by his plan, and he sold the vast majority of his dice to customers without any agreement in place. As Bowling correctly notes, the marking inquiry that this Court needs to undertake essentially examines the question of whether Bowling acted in such a way to "provide notice to the public that the product is patented." *See* Plaintiff's Br. at 11 (citing *Rutherford v. Trim-Tex, Inc.*, 803 F. Supp. 158, 161 (N.D. Ill. 1992)). The undisputed facts show that he did not.

## II. Factual Background

The facts relevant to Hasbro's motion are beyond dispute. On the question of whether the Plaintiff has pled compliance with the marking statute, the only relevant fact is the contents of the Complaint itself. The Plaintiff attempts to dodge the fact that the Complaint makes no reference to marking and that it lacks any allegation that Hasbro had notice of the patent prior to the actual notice sent on November 3, 1999 by discussing Hasbro's having pled his failure to mark as an affirmative defense and Hasbro's having conducted discovery on the issue. *See* Plaintiff's Br. at 19. But the relevant fact is what the Plaintiff has pled, not what Hasbro has done in defense, and the sole allegation in this regard is the following:

> Defendant Hasbro had *actual knowledge* of United States Patent No. 5,938,197, and its infringing activities *at least since Hasbro received notice from the Plaintiff* have been and continue to be willful and deliberate.

Complaint at ¶ 14 (emphasis added).[1] The Plaintiff acknowledges that Hasbro was first placed on actual notice of the alleged infringement on November 3, 1999.

Of course, if the Plaintiff can somehow show that he pled an entitlement to damages based on the constructive notice resulting from continuous and systematic marking of his patented goods, the Plaintiff must still prove that from November 17, 1999, when the patent issued, until November 3, 1999, when he gave actual notice to Hasbro, he actually complied with the marking statute for his patented dice. On this issue, also, the material facts are beyond

---

[1] The Plaintiff's brief brazenly attempts to rewrite this allegation by claiming that his reference to "actual knowledge" of the patent refers to a communication from Hasbro to the Plaintiff on September 30, 1999. That contradicts the plain language of Paragraph 14 of the Complaint, which expressly refers to Hasbro "receiv[ing] notice ***from the plaintiff***." Complaint at ¶ 14 (emphasis added). Moreover, Plaintiff's counsel are surely aware that no communication from Hasbro to their client could possibly constitute "actual notice" under applicable patent law principles, since such actual notice requires an affirmative communication from the patentee to the alleged infringer. *See, e.g.*, *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994) ("Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device."). The Plaintiff could not have alleged actual notice in good faith on the basis of Hasbro having written a letter to the Plaintiff.

dispute. The Plaintiff did not mark his dice, but instead attempted a substitute marking scheme that involved providing stickers to his customers that those customers were then asked to place on the containers in which dice were displayed to the buying public or, in the case of his distributors, to send the stickers to their own retailer customers for display.

The Plaintiff's business records establish when and how he undertook this marking scheme: On August 15, 1999 (two days before the patent issued) he sent letters to the following entities:

| Company | Street Address | City_State_Zip |
|---|---|---|
| ✓ ACD Distribution | 2140 W. Greenview, Suite 10 | Middleton, WI 53562 |
| Barchetta Distributing | 2420 Grand Avenue, Suite F | Vista, CA 92083 |
| ✓ Berkeley Topline East | 43686 Gratiot Avenue | Clinton Township, MI 48036 |
| Berkeley Topline North | 2950 San Pablo Ave | Berkeley, CA 94702 |
| ✓ Berkeley Topline South | 17121 S. Central Ave Unit 2M | Carson, CA 90746 |
| Black Hawk Distributors | 14225 Hansberry Rd | Rockton, IL 61072 |
| ✓ Four Aces | 855 Inca Street | Denver, CO 80204 |
| Gameboard Distributors | 3501 Workman Road, Suite D | Knoxville, TN 37921 |
| ✓ RPV Distributors | 580 West Lambert Rd, #K | Brea, CA 92621 |
| Wargames West | 2434 Baylor SE | Albuquerque, NM 87106 |
| Yellow Submarine U.S.A. | 550 A Coralridge Place | City of Industry, CA 91746 |
| Zocchi Distributors | 535 Hwy 7 North | Holly Springs, MS 38634 |

| | | | |
|---|---|---|---|
| ✓ Adventurer's Guild | 320 Mary Street | Riverside, CA 92506 | |
| Agents of Comics | 601 N. West Street, Suite 200 | Wichata, KS 67203-1245 | |
| Air Traffic | 1172 S Cliff Road | Burnsville, MN 55337 | |
| ✓ Attactix | 15107 E. Hampden | Aurora, CO 80014 | |
| Batter's Box | 9566 Old Keene Mill Rd. | Burke, VA 22015 | Shelly R. Jennings |
| Dream Wizards | 104 G. Halpine Rd. | Rockville, MD 20852 | Laurel Chiat |
| Emerald Comics | 1431 Kingston Rd. | Scarbourough, Ontario | |
| Flying Buffalo | 8149 E. Thomas Road | Scottsdale, AZ 85251 | Rick Loomis |
| Galactic Games | 518 N. Main Street | Crown Point, IN 46307 | |
| Galileo Games Inc | 3630 Capitol Drive | Ft. Collins, CO 80526 | Krista White |
| Game Chest | 2137 Valleyview Mall | Dallas, TX 75240 | Tennant Tranchin |
| out of bus. ~~Gamer's Guild~~ | 222 Main Street | Milford, MA 01757 | |
| Games of War & More | 2500 Deer Valley Rd. #1513 | San Rafael, CA 94903 | Ed Cahill |
| • Games People Play | 1100 Massachusetts Ave. | Cambridge, MA 02138 | Carol Monica |
| Glass City Games | 3659 Uptown Ave. | Toledo, OH 43613 | Chris Watson |
| Ground Zero | 42741 45th St. W. (B-2) | Lancaster, CA 93536 | Gary Havlland |
| Gryphon Collectibles | 8526 Baker Dr. | Houston, TX 77017 | Marvin Knighton, Jr. |
| Hobby Shop | 7000 Cross Roads Blvd. | Cross Roads Mall | Mike Conner |
| ✓ Hobby Town USA | 1000 Lake Street | Oak Park, IL 60301 | Wray |
| House of Armand | 406 Mission Avenue | Oceanside, CA 92054-2828 | Ron Graf |
| ✓ Light Trading Company | P.O. Box 24 | Cuyahoga Falls, OH 44222 | Bob Kindel |
| • Pegasus Loft | 2731 S.W. Parkway, Suite 6 | Wichita Falls, TX 76308 | Sheldon Fugate |
| Phoenix Comics & Games | 2424 Montrose | Houston, TX 77006 | Sarah Durham |
| ✓ Pyramid Comics & Games | 175 E. Fry Blvd | Sierra Vista, AZ 85635 | |
| Select Games | 121 E. 19th St. | Lawrence, KS 66046 | Mike Thornton |
| Source Comics and Games | 1601 W. Larpenteur | Falcon Heights, MN 55113 | Bob Brynildson |
| ✓ The Book Stan | 3895 Caulder | Beaumont, TX 77706 | |
| Toy Town | 147 S. Center | Casper, WY 82601 | Dalene Lockhart |

*See generally* Exhibit I to Statement of Undisputed Facts (images taken from B00696 and B00705, respectively).

Each of the letters provided instructions to the customers with respect to marking containers holding the Plaintiff's dice. In the case of retailer customers, the letters included the following:

> This letter is to inform you that from this date forward we require that Crystal Caste™ dice be sold with it's patent identification, U.S. patent #5,938,197. Our patent number must be affixed to all containers, bags or tubs.
>
> It is important that all Crystal Caste™ dice on display be labeled with our sticker identifying our patent protection. We are asking you to label your existing tubs or bins with the enclosed stickers. If you need more please contact us at (888) 3CC-DICE.

*Id.* (image taken from B00697). For distributors, the Plaintiff's letter read as follows:

> This letter is to inform you that from this date forward we require that Crystal Caste™ dice be sold with it's patent identification, U.S. patent #5,938,197. Our patent number must be affixed to all containers, bags or tubs.
>
> It is important that all Crystal Caste™ dice out in the stores, or in your inventory, today be labeled with our sticker identifying the patent protection. We are asking you to label all of your Crystal Caste™ containers with the enclosed sticker and place one inside of each bag of dice that you have on hand. Also, please send a label to all of your retail customers with an existing supply of Crystal Caste™ dice so that they may place the sticker on our, or whatever, container our dice is in. If you need more please contact us at (888) 3CC-DICE.

*Id.* (image taken from B00706). The Plaintiff included patent stickers with his dice for customers to use in fulfilling his request. Bowling has produced no evidence that he ever sent out a single letter after August 15, 1999, nor has he claimed to have done so. Likewise, Bowling has never even claimed to have sent out letters other than to those listed in his "Signed Patent Label Agreement File." *See* Statement of Disputed and Undisputed Facts at 3 (referencing Exhibit I to Hasbro's Statement of Undisputed Facts).[2]

Apparently aware that some customers might not promise to comply, Bowling stated in each of his letters that unless the customer countersigned the letter, indicating its willingness to comply with Bowling's requirements, Crystal Caste would no longer do business with them. His

[2] Both at his deposition and now in his opposition papers, the Plaintiff claims that he called his customers about the patent label issue prior to sending out the letters. He has not, however, claimed that he called any customers other than those identified in the records excerpted above, or that he called any customers after August 15, 1999.

fears were realized. As the check marks on the lists above indicate, only five of his 13 distributors returned countersigned letters (38%), and only eight of his 27 retailer customers (30%) returned the letters. *See also generally* Exhibit I to Hasbro's Statement of Undisputed Facts (containing all countersigned patent label letters produced by Plaintiff).[3]

But contrary to his threats in his letters, the failure to return countersigned letters did not dissuade Bowling from continuing to sell patented dice to those customers. Hasbro included several examples with its Statement of Undisputed Facts. For example, document B03252 is an invoice dated October 27, 1999 reflecting the sale of 1,800 crystal dice to Gameboard Distributors in Knoxville, Tennesee.[4] Document B03254 shows the sale of 1,440 crystal dice on November 8, 1999 to Barchetta Distributing. Document B03257 shows the sale of 4,460 crystal dice to Zocchi Distributors on November 11, 1999. Document B03258 shows the sale of 2,900 crystal dice to Wargames West on the same date.

These documents show undeniably that Bowling was not taking any precautions whatsoever to ensure that his patented dice were only distributed where there was some agreement in place. Indeed, Hasbro has calculated that Bowling sold a total of 23,188 dice from the issuance of his patent through November 3, 1999. Significantly less than one-third – just 29% – of his crystal dice went to customers who actually signed the patent label agreement, as

---

[3] Bowling has avoided explicitly admitting that he never received letters from other customers, but his denials are simply not credible. Bowling maintained a file entitled "Signed Patent Label Agreement" that contained a list of the customers to whom he sent the letters and the countersigned letters. There are check marks next to each entity for which there is a countersigned letter in the file, and there is no check mark next to any entity for which there is not a countersigned letter. The only reasonable interpretation of these records is that he checked off the entities as countersigned letters were returned, and that those entities that are not checked off did not return countersigned patent label letters.

[4] At his deposition, which occurred before Bowling turned over the actual invoices to Hasbro in discovery (which he only did after substantial negotiation pursuant to Rule 37), Bowling was questioned about whether he continued to do business with customers who did not countersign the letters. Bowling stated that he didn't "believe we did anything further with Yellow Submarine or Gameboard Distributors." Bowling Dep. at 212:3-5 (Exhibit B to Hasbro's Statement of Undisputed Facts).

opposed to the 71% of the dice that went to customers with no signed patent label agreement. The following chart places the Plaintiff's claim to have marked substantially all of his dice in stark relief with the truth:




This data was compiled from the Plaintiff's own invoices, all of which from the relevant time period (August 17 through November 3, 1999) are attached hereto as **Exhibit A**.

Bowling admits that his "marking" efforts were no more effective after November 3, 1999. Although he purported to deny Hasbro's proposed fact no. 20 "that Bowling has never systematically marked either the dice or the packaging," he does ***not*** deny, for example, that Bowling distributed 60,000 of his crystal dice through a magazine giveaway, that Hasbro obtained one of those magazines containing the dice, and that there was no patent marking whatsoever associated with the enclosed die. Bowling also admits that he sold crystal dice to Hasbro's agent during the pendency of this suit that had no patent number label on the packaging, and that when Hasbro's agent went to purchase dice in retail stores, she was as likely to find the dice in bins without any label or labeled "Ugly Dice for Half Price 50 Cents" as she was to find them sold in bins with the Plaintiff's patent sticker. Perhaps if Bowling had ***ever***

***visited a retail store to verify that his marking scheme was working***, he would have discovered the problem and done something to fix it. But Bowling states candidly that he has never gone to any retail store to see his dice, ever.

Even if the Plaintiff's claimed marking scheme could have worked in theory (and if it could have satisfied the patent marking statute), there are two further facts that in the end are fatal to any claim of systematic marking of his goods. First, the patent labels that he sent to his customers and the agreements that he asked them to sign make no distinction between the Plaintiff's patented goods and his other, non-patented dice. Thus the patent label agreements stated

> This letter is to inform you that from this date forward we require that Crystal Caste™ dice be sold with it's [*sic*] patent identification, U.S. patent #5,936,197. Our patent number must be affixed to all containers, bags or tubs.

*See* Plaintiff's Br. at 5. The Plaintiff's own instructions drew no distinction between crystal dice and other dice, which are not covered by the patent and which represented a significant portion of the Plaintiff's business. *See*, *e.g.*, **Exhibit A** (containing all Crystal Caste invoices from August 17, 1999 through November 3, 1999 and reflecting substantial sales of non-patented goods). In essence, the Plaintiff asked his customers to mark non-patented goods with his patent number. And, of course, the Plaintiff did nothing to check on what his customers were actually doing as far as the marking scheme was concerned, so he never would have discovered if, in fact, they were essentially marking non-patented dice.

As it turns out, they were. Crystal Caste sells (and during the relevant time frame, sole) a variety of dice, including non-patented traditional cube dice. Also, the seven-die sets of "crystal dice" included a four-sided die that is not covered by the patent. Where the dice were displayed in a container holding only the "crystal dice," the inclusion of the four-sided die meant that the

label was effectively associating the patent with a non-patented item. But if the Plaintiff's customers actually did as he asked, and labeled all containers with Crystal Caste dice in them, of whatever shape, the label would essentially be claiming a patent on crystal dice, the Plaintiff's unusual but non-patented four sided die, traditional cube dice, and traditional polyhedral dice (*e.g.*, twenty sided dice in an icosohedral shape). These situations actually arose. The picture of the patent-labeled tub of dice found at one retailer by Irina Slavina shows that the bin had both patented and non-patented items in it. *See* Declaration of Irina Slavina at Tab E.

Additionally, the Plaintiff's business records reveal a second fatal flaw in the Plaintiff's marking scheme: he only sent out letters on August 15, 1999, and took no action with respect to marking for later customers to whom he had not sold any crystal dice prior to that date. Thus the Plaintiff's business records do not show that Bowling took any action to ensure that later customers who first purchased dice after August 15 would undertake any marking. The Plaintiff's invoices reveal that between August 17 and November 3, 1999, Crystal Caste was, in fact, selling to numerous customers that were not included in his lists of recipients of patent label agreement letters. *See* B03228-29 (BERI Distributors), B03232 (Robert S. Jones), B03239 (Dragon's Lair), and B03247 (Old Guard Hobbies) (included in **Exhibit A**).

The undisputed facts make it apparent that the Plaintiff has never had any serious intention of marking his patented goods. This is apparent even from the Plaintiff's own packaging that he used to ship dice purchased by Hasbro's agent. The packaging consists of a plastic box with a lid, which is held down by a small catch mechanism. Pushing on the catch releases the lid, which then pops up. That box is contained in a mylar sleeve, which is printed with the Crystal Caste logo. Irina Slavina, a paralegal working on behalf of Hasbro, ordered sets of crystal dice from the Plaintiff, which he shipped to her in boxes of this type. As discussed in

Hasbro's opening memorandum, the boxes sent to Ms. Slavina had no patent markings on them whatsoever, whereas boxes of the same type that were sent to Thomas McCabe, but addressed to him at Adler Pollock & Sheehan, P.C., were labeled with the '197 Patent number.

What is remarkable here, though, is that there is not just one patent in use in these boxes: the Plaintiff has a patent on the box itself in addition to his crystal dice patent. Yet the box has no patent markings whatsoever, despite the fact that (1) the Crystal Caste logo is molded into the plastic of the box, and (2) there is extensive printing, including the Crystal Caste logo in multiple colors, on the mylar sleeve. The Plaintiff has apparently taken no efforts, whatsoever, to display any patent mark on his patented box, just as he has utterly failed to systematically mark his crystal dice.

## III. Argument

There is no dispute but that Hasbro did not receive actual notice of the patent prior to November 3, 1999. Bowling admits that in order to be entitled to damages for the sale of any allegedly infringing goods prior to that date, he must both ***plead*** and ***prove*** compliance with the patent marking statute. *See* Plaintiff's Br. at 10 (noting that "relevant period" of inquiry for marking is August 17 to November 3, 1999) and 19 (claiming fulfillment of "obligation to plead compliance with § 287"). Because the Plaintiff has not pled, and cannot prove, compliance with Section 287, summary judgment is appropriate.[5]

### A. Bowling's Complaint Does Not Plead Constructive Notice Through Marking.

The sole allegation in the complaint concerning notice consists of the following:

[5] Plaintiff's statement that the question of marking is, ultimately, a jury question does not preclude summary judgment where it is appropriate, as here. *See Cybiotronics, Ltd. v. Golden Source Electronics Ltd.*, 130 F. Supp. 2d 1152, 1160-61 (C.D. Cal. 2001) ("Though the determination of proper marking is a question of fact, it is appropriate to resolve on summary judgment where there is no issue of material fact as to substantial or consistent marking.").

> Defendant Hasbro had actual knowledge of United States Patent No. 5,938,197, and its infringing activities at least since Hasbro received notice from the Plaintiff have been and continue to be willful and deliberate.

Complaint at ¶14; *see also* Plaintiff's Br. at 19 (quoting ¶ 14 of Complaint as relevant portion of Plaintiff's pleading). That language makes no reference to constructive notice or marking, or to the marking statute. Indeed, it speaks only to "actual knowledge." "Actual knowledge" of a patent is entirely independent of constructive notice through marking. As the Court of Appeals for the Federal Circuit explained,

> the issue of willfulness turns on the actual knowledge of the infringer, and is ***unrelated*** to the adequacy of constructive notice by the patentee. In determining whether the patentee marked its products sufficiently to comply with the constructive notice requirement, ***the focus is not on what the infringer actually knew, but on whether the patentee's actions were sufficient, in the circumstances, to provide notice in rem***.

*Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1446 (Fed. Cir. 1998) (emphasis added).

The Plaintiff's pleading could not be clearer. Paragraph 14 of the Complaint should be understood to allege actual knowledge – which would be relevant to a charge of willfulness on Hasbro's part – but not constructive notice. It should be understood in that fashion because those are the precise words that the Plaintiff chose to use. He did not allege that he had complied with Section 287. He did not allege that he was entitled to damages from the date of the issuance of his patent. He did not allege that Hasbro was "on notice" of the patent or even that Hasbro was liable for infringement prior to November 3, 1999. The Plaintiff only pled that Hasbro had actual notice "at least" since November 3, 1999.[6] And, of course, saying "at least" is very different from saying "before," which is how the Plaintiff now wishes his Complaint to read.

---

[6] As discussed *supra* at n. 1, Bowling now claims that the Complaint's reference to notice related to communications from Hasbro in September 1999, but that is flatly untrue. The Complaint expressly references "notice from plaintiff." The first such notice came on November 3, 1999.

There is also a significant difference between pleading "notice" and "knowledge." As noted above, "knowledge" of a patent is relevant to a willfulness inquiry. But without notice, the plaintiff is not entitled to damages for infringing goods, whether or not the defendant had "actual knowledge" of the patent. *See*, *e.g.*, *Amsted Indus. v. Buckeye Steel Castings*, 24 F.3d 178, 187 (Fed. Cir. 1994) (reversing a district court refusal to grant judgment as a matter of law where there had been no actual notice; observing that "[i]t is irrelevant, contrary to the district court's conclusion, whether the defendant knew of the patent or knew of his own infringement."). Again, the Plaintiff only pled knowledge. Without pleading constructive notice, he cannot recover on such a claim.

The cases upon which the Plaintiff relies to rewrite his Complaint into one that states a claim for pre-notice damages are of no avail. *AVID Identification Sys.*, *Inc. v. Phillips Elecs. N. Am. Corp.*, 2006 U.S. Dist. LEXIS 30981, at *6 (E.D. Tex. May 17, 2006) merely applied the rule in *Sentry Prot. Prods. Inc. v. Eagle Mfg. Co.*, 400 F.3d 910 (Fed. Cir. 2005), essentially that pleading willful infringement with full knowledge of the patent satisfies the pleading requirement. These cases are distinguishable from the present situation, and furthermore present a flawed understanding of the Supreme Court decision upon which their analysis is exclusively based.

First, the cases are distinguishable because in each case the complaint's reference to willful and knowledgeable infringement was made in the ***absence of actual notice to the alleged infringer***. That is, unlike this situation, the reference in the plaintiffs' pleadings to willful infringement could only have referred to constructive notice, since there was no allegation of actual notice. *See AVID*, 2006 U.S. Dist. LEXIS 30981 at *6-7; *see also Sentry Prot.*, 400 F.3d

at 918.[7] This distinction is significant to the apparent exception to the rule of required pleading established by the Supreme Court and consistently upheld in subsequent decisions. As explained in Hasbro's opening memorandum, the general rule for notice is that it may be had only by (1) constructive notice through marking in compliance with Section 287, or (2) actual notice, by a specific charge of infringement. The latter, actual notice, may come in the form of a written communication like the one sent by the Plaintiff to Hasbro on November 3, 1999, or by filing a complaint alleging infringement. In the absence of earlier actual notice, a complaint's allegation that the defendant's infringement was willful and knowing is, by irrefutable inference, an allegation that the defendant was on notice ***prior to the filing of the complaint***. This notice could only be constructive; consequently, it is only reasonable for a court under those particular circumstances to view the allegations of the complaint to constitute pleading constructive notice through marking. Those circumstances do not apply here because (as the Plaintiff's complaint does, in fact, state) the Plaintiff gave Hasbro actual notice of its alleged infringement.

Second, to the extent the Plaintiff's cited references stand for the proposition stated – that the Plaintiff need not really plead constructive notice – they are wrong. The Supreme Court, followed by the Federal Circuit, has stated unequivocally that the Plaintiff bears the dual (and independent) burdens of pleading and proving constructive notice through marking. *Dunlap v. Schofield*, 152 U.S. 244 (1894) (plaintiff alleged only actual notice) ("By the elementary principles of pleading, therefore, the duty of alleging, and the burden of proving, either [constructive notice or actual notice] is upon the plaintiff."); *Maxwell v. J. Baker, Inc.*, 88 F.3d

---

[7] The other case relied upon by the Plaintiff does not appear to reflect an accurate statement of the law. In *Civix-DDI, L.L.C. v. Cello P'ship*, 387 F. Supp. 2d 869 (N.D. Ill. 2005), the court declined to enter summary judgment in the absence of pleading compliance with the marking statute because, it opined, the Federal Circuit has declined to "strictly follow" the rule. *Id.* at 901 n. 38. All courts are in agreement that the plead-and-prove rule derives from the Supreme Court case of *Dunlap v. Schofield*, 152 U.S. 244 (1984), which explicitly noted the separate requirements of pleading and proving constructive notice. Nothing in the *Dunlap* decision suggests that the waiver resulting from failing to plead marking is only fatal where there is demonstrable prejudice to the defendant.

1098, 1111 (Fed. Cir. 1996) ("As the patentee, Maxwell had the burden of pleading and proving at trial that she complied with the statutory requirements.").

**B. Even If True, Bowling's Marking Scheme Was Legally Inadequate.**

A patentee is only "entitled to damages from the time when it either began marking its product in compliance with section 287(a) or when it actually notified [the accused infringer] of its infringement, whichever was earlier." *American Medical Sys., Inc. v. Medical Eng'g Corp.*, 6 F.3d 1523, 1537 (Fed. Cir. 1993). But to comply with section 287(a), a patentee must do much more than the Plaintiff has accomplished here. "[O]nce marking has begun, it must be substantially consistent and continuous in order for the party to avail itself of the constructive notice provisions of the statute." *Id.* Even if one credits Bowling's entire story about sending letters and patent labels, and even if one assumes (without any substantial evidence) that Bowling's customers actually did what they promised to do, Bowling failed to consistently and continuously mark his products during the relevant time period.

This is obvious from the documents on which Bowling relies to prove his marking scheme. He sent letters to 40 customers; only 13 returned signed agreements. Contrary to his own threat to stop doing business with customers who refused to countersign the agreement, Bowling continued to sell dice with no assurance whatsoever that the customers would display his patent information. This is not a situation where a patentee, having reasonably relied on others to effect his marking scheme, has been let down by those licensees. *See, e.g., Maxwell*, 86 F.3d at 1111. Bowling did not act reasonably if his purposes were to ensure marking. In fact, 71% of the dice the Plaintiff sold during the relevant period were sold to entities who had failed (or refused) to sign the agreement, or to entities that had never even received the agreement (and who, presumably, had no idea what to do with any patent labels that were included in shipments

of dice). To borrow the Plaintiff's parlance of having "marked … his dice" (*see* Plaintiff's Br. at 1), the Plaintiff failed to mark nearly three-quarters of the dice he distributed.

In terms of consistent and continuous marking, even allowing a few percent of the patented goods to be distributed without marking can be fatal to a claim of constructive notice. *See, e.g.*, *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1446 (Fed. Cir. 1998) (considering whether a disputed claim of 96.6% marking was adequate); *Hazeltime Corporation v. Radio Corporation of America*, 20 F. Supp. 668 (D.C.N.Y. 1937) (marking less than 65% of patented articles was insufficient to give notice). "[A]dequately marking a patented product only on occasion, and not as a matter of routine, is insufficient to support a finding of compliance with section 287(a)." *Calmar, Inc. v. Emson Research, Inc.*, 850 F. Supp. 861, 867 (C.D. Cal. 1994). Or, as the Federal Circuit put it, the "world cannot be 'put on notice' if the patentee marks certain products, but continues to ship unmarked products." *American Medical Sys. v. Medical Eng'g*, 6 F.3d 1523, 1538 (Fed. Cir. 1993). Such notice requires that the plaintiff mark "substantially all" his products, not 29% of them. *Id.*

But even if the Plaintiff had managed to get the agreement of every single customer to whom he sold dice, his scheme would still be inadequate. His letters told his customers to label all of the Crystal Caste dice, but not all of the dice were patented. In effect, he was telling them to mark non-patented goods. Indeed, if his customers followed his suggestion and marked the display case in which his dice were displayed, even the Plaintiff understood that the case would contain non-patented goods. For example, in his product catalog, the Plaintiff shows this display case, which includes both "crystal dice" and other, non-patented dice from Crystal Caste:




Such labeling is deficient as a matter of law to place the public on notice of the nature of the Plaintiff's patent rights. Marking unpatented goods can constitute the offense of "false marking" under the Patent Act. *See* 35 U.S.C. § 292 (providing civil fine for deceptively marking non-patented goods with the "word 'patent' or any word or number importing that the same is patented"). More importantly for the present discussion, if the public were to see a sticker on the display depicted above, it would have no idea what was actually patented, whether it was the display itself, the crystal dice, or the other dice. The same holds true with the little bins that the Plaintiff apparently provided to some of his customers, which they would have used to carry the Plaintiff's dice, whether patented or unpatented.

Finally, the Plaintiff's marking scheme fails because he ***never did anything to assure marking after August 15, 1999***. After sending out initial letters, to his then-current customers, he never bothered to send out another letter or to ask any other customers for their agreement to assist in labeling bins containing his dice. As a result, Bowling sent out literally thousands of dice without even putting those customers on notice of his patent rights. It would have been simple for Bowling to send them patent agreement letters prior to sending them their first shipment of goods, but for whatever reason he elected not to do so. Far from ensuring that

"substantially all" of his dice would be marked, the Plaintiff knowingly shipped dice to customers with no reasonable expectation that they would have any markings whatsoever.

**C. Bowling Mischaracterizes The Testimony of Steen Jensen.**

In an effort to avoid having to admit that one of his major distributors never saw the patent label agreement letter, never signed it, and never took any actions to display any patent markings (or to assure that its own customers would do so), Bowling denies various of Hasbro's proposed facts concerning the deposition testimony of Steen Jensen, who had been the buyer for Berkeley Top Line North. These denials cannot be interposed in good faith as they are predicated in part upon testimony that Mr. Jensen explicitly corrected later in his deposition. To this end, Bowling misleadingly defines "Berkeley Top Line North" as "Berkeley" when he fully knows that there were three separate entities identified by Bowling as being among his distributors: Berkeley Top Line North, Berkeley Top Line South, and Berkeley Top Line East. *Compare* Plaintiff's Statement of Disputed and Undisputed Facts at 4 *with* Exhibit I to Hasbro's Statement of Undisputed Facts at B00705. Bowling's business records show countersigned patent agreements from Berkeley Top Line South and Berkeley Top Line East (and corresponding check marks next to the two entities on the list, presumably indicating that the countersigned letter had been received), but ***not*** for Berkeley Top Line North. *See id.* at B00708 and B00710.

The deposition testimony quoted by Bowling in denying Hasbro's proposed facts came upon Mr. Jensen's initial review of document B00708, and Mr. Jensen testified that it was likely signed by Robert Waros, who worked with him at Berkeley Top Line North. On redirect, however, Mr. Jensen noted that the letter had been sent to Berkeley Top Line South, not North, and then stated the following:

> I didn't note South before. But he started in South. Then he came North and worked for me. And when he was down south for a time, he was their buyer. So I think that's what is going on here. This is something he dealt with in our southern location at some point before he came up and joined the North staff.

*See* Jensen Dep. at 80:6-18 (**Exhibit B**). In other words, Mr. Jensen confirmed that at the time the letter was signed (which had been addressed to the "South" location), Mr. Waros had not been at Berkeley Top Line North at all, and expressly changed his earlier testimony, which had been based on a misunderstanding resulting from his failure to notice that the letter had been addressed to Berkeley Top Line South. Plaintiff's counsel was present for the deposition and was fully aware of this testimony, and yet cited the earlier, incorrect testimony in support of Bowling's denial of Hasbro's proposed facts.

Bowling also denies that "Steen Jensen has no recollection of ever seeing the stickers or even knowing that the dice were patented, despite the fact that he had detailed knowledge of Bowling's dice, their inventory at Berkeley Top Line North, and Berkeley Top Line North's fulfillment of orders for 'crystal dice' to its own customers," but his denial is again inadequate. He cites to the same withdrawn testimony of Steen Jensen discussed *supra*, and then offers a variety of evidence that has nothing to do with the proposed undisputed fact. Brazenly, his response even includes a statement that Berkeley Top Line North "received such a letter" (meaning one of Bowling's patent agreement letters), a statement that finds no evidentiary support anywhere in the record; the Plaintiff is simply making that up. *See* Plaintiff's Statement of Disputed and Undisputed Facts at 4-5. The proposed fact stated that "Steen Jensen has no recollection of ever seeing the stickers or knowing that the dice were patented." Bowling offers no evidence to contradict that statement. The proposed fact stated that Jensen had "detailed knowledge of Bowling's dice, their inventory at Berkeley Top Line North, and Berkeley Top Line North's fulfillment of orders for 'crystal dice' to its own customers." Bowling offers no

evidence to contradict that statement. While it may be true that there were things that Jensen did not know about (which is what the Plaintiff's proffered evidence concerns), he certainly had detailed knowledge about the dice and their inventory levels, as Jensen personally ordered the dice and performed physical inventories of the dice. *See* Jensen Dep. at 11:9-12:15 (Jensen personally performed inventory counts on dice, including Crystal Caste dice).

Bowling also tries to deny the assertion that Jensen did not know that the dice were patented by reference to Jensen's testimony that at some point during the year after the marking period in question, he had a conversation with Bowling after which he had an "impression" that Bowling "had some say or some claim on these dice." But that equivocal statement by Jensen supports precisely Hasbro's point: that he did not know about a patent, which he would have had Bowling actually gained the sort of compliance from Berkeley Top Line North that he now claims to have gotten from all of his customers.

Bowling also does not present any evidence to contradict Mr. Jensen's testimony that Berkeley Top Line North routinely discarded all packaging sent by Bowling and kept the "crystal dice" in inventory in small tubs. Hasbro cannot understand Bowling's refusal to acknowledge this to be a standard procedure, as Jensen testified that "Usually the dice would come in small plastic bags, and those bags would be torn open and the dice would be poured into the bins and the plastic bag would be thrown away." Jensen Dep. at 24:22-25:2.

Finally on this issue, Bowling offers nothing to contradict Hasbro's proposed undisputed fact that Berkeley Top Line North did not provide any notice of the patented nature of the dice to its customers. This statement is entirely justified in light of Mr. Jensen's testimony, which made clear that Berkeley Top Line North fulfilled its orders to customers by taking dice from bins, which did not contain patent stickers, placing the dice in boxes to be sent to its customers. There

was no mechanism by which Berkeley Top Line would have provided any patent notice to its own customers. *See* Jensen Dep. at 24:22-25:12.

Taken as a whole, Steen Jensen's testimony reveals the inadequacy of the Plaintiff's marking scheme even where he had sent out a letter and included patent labels in his bags of loose dice. Berkeley Top Line North did not sign the letter, and did nothing to protect the Plaintiff's patent rights. It did not maintain its inventory in a manner that allowed for patent stickers to be provided to its own customers, and it did nothing to ensure that its customers – retail stores at which the public would actually see the Plaintiff's patented goods – would display any patent information associated with the patented dice. There is no basis upon which to conclude that the public would have received any notice of the Plaintiff's patent. Without such notice, the Plaintiff's claims for damages based upon constructive notice must fail.

## IV. **Conclusion**

For the foregoing reasons and for the reasons set forth in Hasbro's opening memorandum of law, Hasbro respectfully requests that the Court enter partial summary judgment in its favor,

limiting the Plaintiff's damages to those associated with infringement proved to have occurred after November 3, 1999.

HASBRO, INC.
By its Attorneys,

/s/ Jeffrey K. Techentin________
Todd D. White (# 5943)
Jeffrey K. Techentin (#6651)
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
(401) 274-7200
Fax: (401) 751-0604/ 351-4607
Dated: July 19, 2006

Of Counsel:

David K. S. Cornwell, Esq.
Tracy-Gene G. Durkin, Esq.
Sterne Kessler Goldstein Fox
1100 New York Avenue, NW
Washington, D.C. 20005

## CERTIFICATE OF SERVICE

TO:

Craig M. Scott, Esq.
Christine K. Bush, Esq.
Duffy & Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903

David K. S. Cornwell, Esq.
Sterne Kessler Goldstein Fox
1100 New York Avenue, NW
Washington, D.C. 20005

Thomas J. Leach, Esq.
Law Firm of Merchant and Gould P.C.
3200 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402-2215

I hereby certify that I filed the within Reply Memorandum of Law in Support of Motion for Partial Summary Judgment through the ECF system on the 21st day of August, 2006, and that notice will be sent electronically to the above-named counsel who are registered participants identified on the Mailing Information for Case No. 05-229S.

/s/ Jeffrey K. Techentin__________

*390106_1*