UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MICHAEL BOWLING, a Resident of Arizona, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 05-229 S |
| HASBRO, INC., a Rhode Island Corporation, | : | |
| Defendant. | : | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO STRIKE DECLARATION OF CLIVE JEZARD**

Defendant/Plaintiff-in-Counterclaim Hasbro, Inc. ("Hasbro") respectfully submits this Reply Memorandum of Law in support of its motion to strike the Declaration of Clive Jezard (the "Jezard Declaration"), which the Plaintiff/Defendant-in-Counterclaim Michael Bowling ("Bowling") filed in opposition to Hasbro's Motion for Partial Summary Judgment. Bowling has presented, essentially, three arguments to justify his eleventh-hour designation of Mr. Jezard as a witness in this action: (1) that Jezard is a lay witness, and not an expert; (2) that Jezard's testimony is "rebuttal"; and (3) that Jezard was properly disclosed. Bowling's arguments are incorrect both as to the facts and the governing law. The Jezard Declaration should therefore be stricken.[1]

Bowling's third contention, that Jezard was properly disclosed by producing documents with his name on them is easily dispatched. Bowling produced documents containing Mr. Jezard's name that suggested a commercial relationship between Bowling's company, Crystal

---

[1] Hasbro had urged striking the declaration based upon the apparent inclusion of a facsimile signature, rather than an original signature. Bowling's counsel has since asserted that the signature appearing in the Jezard Declaration is, in fact, a scanned original signature. Hasbro accepts that representation and therefore withdraws its objection based upon the originality of the signature.

Caste, and Jezard's firm, Dice & Games Ltd. By the context of the documents in Bowling's production, it appears that the documents were contained in a folder, the label for which indicated that the contents pertained to non-U.S. distributors of Bowling's products. Until Bowling submitted the Jezard Declaration, Hasbro had no information whatsoever that Jezard or his firm had been involved in the production of molds for Crystal Caste dice. To the contrary, the documents produced by Bowling suggested that they had been created by King Cards GmbH, a company located in Germany. None of the documents produced by Bowling contained any of the pertinent information in the Jezard Declaration (*e.g.*, the description of the supposed limitations of the "spark erosion" molding process), nor did they suggest that Jezard might possess such information. This cannot constitute a "disclosure" as required by the Federal Rules of Civil Procedure.

As explained below, it is beyond dispute that Jezard is offering expert opinion evidence, that the Plaintiff was required to disclose such evidence no later than February 24, 2006, and that the Plaintiff never disclosed Jezard as an expert. It is also beyond dispute that even if Bowling merely intended to call upon Jezard for his fact testimony, he was obliged to disclose him to Hasbro both pursuant to Fed. R. Civ. P. Rule 26(a)(1) and in response to Hasbro's Interrogatory No. 16, which asked him to:

> Identify all persons who are likely to have personal knowledge of any fact alleged in the complaint, or your Answer to Hasbro's counterclaim, indicating by each such person whether they have been contacted, interviewed, or interrogated on your behalf and the facts and circumstances to which each such person has relevant knowledge.

Bowling never disclosed Jezard pursuant to either, independent obligation. *See* Hasbro's Opening Br. at **Exhibit A** (Bowling's Rule 26(a)(1) disclosures); *see also* Bowling's Response to Interrogatory No. 16 (**Exhibit A** hereto).

Knowing of his failure to disclose Jezard in accord with his discovery obligations, Bowling attempts to excuse his attempt to side-step the discovery process by claiming that Jezard is not the type of witness whom he had to disclose, ever. That is incorrect, as shown definitively even by the cases Bowling relies upon in his opposition papers.

## I. <u>The Jezard Declaration Consists of Expert Testimony.</u>

The Jezard Declaration contains what can only be described as expert testimony that must be governed by Fed. R. Evid. Rules 702 and 703 (testimony by experts) and not Rule 701 (opinion testimony by lay witnesses). Jezard's statement addresses (1) his conclusions about how difficult it would be to place the patent number on Bowling's dice; (2) the method by which the "molding tools" used to manufacture Bowling's dice were made ("spark erosion"); (3) the limitations of the "spark erosion" process with respect to creating lettering on the molding tools; (4) the manufacturing process for Bowling's dice; (5) his opinion about whether the "barreling process" would remove any patent markings placed on the die; (6) his opinion as to alternatives to the spark erosion process for placing a patent mark on the dice; (7) his opinion about the increased cost of pursuing those alternative methods of placing a patent mark on the dice; and (8) his observation that he has never been asked to put a patent number on a die. Categories (1), (3), (5), (6), and (7) are unmistakably in the nature of technical, expert testimony. Such testimony must be disclosed or it may not be used. Fed. R. Civ. P. Rule 26(a)(2); *see also Vigilant Ins. v. East Greenwich Oil Co.*, 234 F.R.D. 20, 22 (D.R.I. 2004) ("The plain language of Rule 26(a)(2)(A) requires disclosure of ***any person*** who may present expert testimony at trial.") (emphasis added).

Bowling relies on Rule 701, arguing that Jezard is really just a lay witness offering a non-technical opinion based upon his observations on the job. This reliance is entirely misplaced.

Rule 701 ***only*** permits opinion evidence that is "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Rule 701 permits, for example, police officers to testify that Post-It notes are likely notes of drug orders and that the number "4" on one such note likely indicates a quantity of drugs (*U.S. v. Maher*, 454 F.3d 13, 24 (1st Cir 2006)) or a lay witness to interpret the meaning of "code words" used in a conversation (*U.S. v. Lizardo*, 445 F.3d 73, 83 (1st Cir. 2006)). Bowling's sole explanation for this reliance is that Jezard's analysis is based upon his own experience. *See* Plaintiff's Br. at 7 (citing *U.S. v. Maher*, *supra*). Whether the witness's knowledge comes from personal experience is, of course, not dispositive of the question of whether his or her testimony is "expert" within the meaning of Rules 701 and 702; thus Rule 702 explicitly recognizes that an ***expert's*** qualification can be based on "knowledge, skill, experience, training, or education."

The question for the Court in determining whether Rule 701 or Rule 702 is applicable is whether or not the proffered testimony is based on scientific, technical, or other specialized knowledge. In 2000, Rule 701 was amended specifically to exclude such testimony "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." Fed. R. Evid. Rule 702 advisory committee's note. Moreover, "By channeling testimony that is actually expert testimony to Rule 702, the amendment also ensures that a party will not evade the expert witness disclosure requirements set forth in Fed.R.Civ.P. 26 and Fed.R.Crim.P. 16 simply by calling an expert witness in the guise of a layperson." *Id.* That is precisely what Bowling has done with Jezard.

"Lay opinion testimony is admissible only to help the jury or the court to understand the facts about which the witness is testifying and not to provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events."

*United States v. Peoples*, 250 F.3d 630, 641 (8th Cir. 2001). Thus Rule 701 might permit Jezard to explain the scientific principles involved in using electrical discharges to portions of a substrate to create a mold tool: such explanations would be helpful to a fact-finder to understand facts as to which Jezard had actually been percipient. What Rule 701 does not permit, however, is for a witness to appraise such facts, speculate about the technical limitations of the process, forecast whether a given technical process could be used effectively under circumstances that he has not witnessed, or opine on the scope of technical alternatives to a given process. Yet that is what Jezard does. That is the very essence of technical expert testimony governed by Rule 702 (and, *a fortiori*, by the disclosure requirements of Rule 26(a)).

Jezard's testimony is highly technical and can only be described as "scientific, technical, or […] specialized." *See* Fed. R. Evid. Rule 702. Jezard says that the manufacturing process used to create the molding tools that are, in turn, used to manufacture the Plaintiff's dice are made using a process that he calls "spark erosion." In the United States, spark erosion is commonly called electrical discharge machining ("EDM"), and is a process by which a die tool may be fabricated by the "carving" away of materials by pulses of electrical energy, in the place of mechanical grinding or cutting of material. *See*, *e.g.*, Electrical Discharge Machining – Wikipedia, http://en.wikipedia.org/wiki/Electrical_discharge_machining (**Exhibit B**). At least one court has observed that EDM technology – the very subject of the Jezard declaration – can hardly be explained without reference to technical experts. In *AG Fur Industrielle Elek. AGIE v. Sodick*, the United States District Court for the District of Illinois found it noteworthy that a lawyer, armed only with his own observations and photographs, could opine on issues relating to claim construction and infringement in a patent dispute involving EDM machines without

reference to expert testimony. 748 F. Supp. 1305, 1328 n. 1b (N.D. Ill. 1990).[2] Yet that is precisely what the Plaintiff wants the Court to believe Mr. Jezard is doing: not offering a technical opinion based upon an understanding of the limitations of the EDM manufacturing process, but just recalling the facts as he has seen them. Thus the Plaintiff states that "Mr. Jezard makes factual statements about his personal knowledge by virtue of the extensive experience he has gained while working in a manufacturing plant and manufacturing Mr. Bowling's dice." Plaintiff's Br. at 7.

Jezard does not describe the manufacturing process itself (which, as noted above, might constitute lay testimony admissible under Rule 701). Rather, he opines that with spark erosion it "would be very difficult, if not impossible" to place a patent mark on the Plaintiff's dice. He reaches this conclusion, according to his declaration, based upon the technical limitations of the spark erosion process (which "will only provide shallow lettering" as the size of lettering is reduced) and the size of the Plaintiff's dice. Jezard Declaration at ¶¶ 5-8. He further surmises that if one were to mold the Plaintiff's dice using spark erosion to include a patent mark, the "shallow lettering" would be removed in the post-molding processes used on the Plaintiff's dice. *Id.* at ¶¶ 9-11. He concludes by suggesting that the only alternatives to using EDM to mark the dice would be laser etching and silk screening, and that either process would "likely double the price of the die." *Id.* at ¶¶ 12-13.

Each of these statements is in the nature of technical expert testimony, and Hasbro should have had the right to explore the validity of his technical conclusions as part of its expert discovery in this case. For example, Jezard appears to be flatly incorrect in his statement that

---

[2] Hasbro is aware of at least one other case in which a litigant has actually presented an expert witness on the subject of EDM technology. *See Payer v. B.B. Becker, LLC*, 2005 WL 3073243 (S.D.N.Y. Sept. 30, 2005) (Expert Report of Donald J. Glaser).

EDM only provides for shallow lettering where it is used to etch small lettering. According to publicly available sources, EDM is touted as an ideal tooling solution for precisely this situation because it allows for tooling of high depth-to-diameter ratios (*i.e.*, deep but very narrow holes, grooves, etc.). *See*, *e.g.*, Harry C. Moser, *When Should you EDM?*, available at http://www.charmillesus.com/harrymms.cfm (**Exhibit C**). Hasbro is also left with many unanswered questions: What experience does he have with using EDM that causes him to reach his stated conclusions? How much material is removed in the prebarreling and barreling processes he describes? How does he know that those processes would actually remove any lettering that the EDM process could create? Why does he consider that the only alternatives would be laser etching and silk screening? How does he know about the cost of such processes? The Plaintiff's failure to disclose Jezard as a witness, let alone an expert witness, has precluded Hasbro from exploring these questions.

Had Jezard been disclosed as an expert, Hasbro would have (1) had an opportunity to review his conclusions and the rationale underlying those opinions; (2) had an opportunity to depose him on the subject; (3) had an opportunity to test the validity of his statements of scientific conclusion; and (4) had the chance to designate its own expert(s) on the subject. The Plaintiff's failure to identify Jezard as an expert completely eviscerated Hasbro's ability to respond.[3]

## II. <u>Even If Jezard Were A Lay Witness, He Was Required to Be Disclosed.</u>

Plaintiff does not deny his obligation to disclose his witnesses. Rather, he claims that

---

[3] The Plaintiff's offer to "cooperate" in a deposition of Jezard did nothing to cure the prejudice to Hasbro. Jezard is in the United Kingdom and not amenable to a subpoena from this Court. The Plaintiff denied having control over Jezard such that Hasbro could be ensured of actually securing his appearance at a deposition. Moreover, Hasbro had just two weeks from the date on which Jezard was disclosed to the deadline for its reply memorandum on its Motion for Partial Summary Judgment, a period during which the Plaintiff's counsel knew that Hasbro's attorneys were on vacation. The Plaintiff's offer was entirely illusory.

Jezard is merely a "rebuttal" witness who need not be disclosed pursuant to Hasbro's discovery requests or his obligations under the Federal Rules of Civil Procedure. This argument is wrong.

The Jezard Declaration is offered in support of the Plaintiff's claim that he was permitted, as a matter of law, to engage in a marking scheme other than marking the dice because, in the words of the applicable statute, "from the character of the article" physical marking of the dice "cannot be done." *See* Plaintiff's Br. at 2; *see also* 35 U.S.C. § 287(a). Bowling admits that he bears the burden of proof on this issue. *Id.*

Bowling claims that he had no idea that Hasbro would contend that he was required to mark the dice, that Hasbro only raised the issue after the close of fact discovery, and that Jezard is therefore a "rebuttal" witness who need not be disclosed. *See id.* at 1-2 (citing cases). Factually, this claim is belied by his own testimony, which he omitted from his brief. In January of 2006, Hasbro explicitly asked the Plaintiff at his deposition about what efforts he made towards marking the dice individually:

> Q. Did you explore any packaging alternatives that would allow you to mark each die?
>
> A. Nothing was viable.
>
> Q. What did you consider?
>
> A. Well, the price point was so small, you couldn't sell them singlely.
>
> Q. You sold the dice singlely, correct?
>
> A. At trade shows on a table.

Bowling Dep. at 215:7-14 (**Exhibit D**). Hasbro also asked what the Plaintiff had done with respect to figuring out whether his marking scheme was sufficient:

> Q. Did you seek any advice with respect to the manner in which you were marking these items with the patent number?

> A. Advice from? I'm not sure --
>
> Q. Anyone.
>
> A. The only ones I talked over marking was with my attorneys.
>
> Q. Did you consult with your attorneys with respect to the decision to put stickers on these bins?
>
> A. I believe that's privileged. Is that privileged?
>
> Q. It's a yes or no question. If the answer is yes, I'll probably stop, but it's a yes or no question as to whether you consulted with them?
>
> A. I don't know to be honest. I wish I could say yes or no. I don't recall. I know we talked about labeling.
>
> Q. Okay. Did you consult with anyone else other than your attorneys with respect to how you should mark these dice with your patent number?
>
> A. No.

*Id.* at 216:3-22. Indeed, the Plaintiff's own testimony at his deposition in January of this year raised the issue of whether the dice could be marked individually. *See* Plaintiff's Br. at 4 ("we couldn't mark the individual dice") (quoting Bowling Dep. at 173). Bowling could not have been surprised that marking was at issue, and that Hasbro would challenge the manner in which the Plaintiff purported to mark his dice with a patent number.[4]

More importantly, the Plaintiff's claim to have been blindsided on this issue is a complete red herring. Legally, it is the Plaintiff's burden to show compliance with the marking statute if he wishes to recover damages for alleged infringement prior to actual notice to Hasbro. That is not in dispute. Plaintiff's Br. at 2. Rather, Plaintiff claims that because his own testimony meets a "burden of production" on the issue of whether the dice were of a character that they could be

---

[4] The Plaintiff's complaint that Hasbro never told him that it considered his marking scheme to be inadequate (Plaintiff's Br. at 6) is mystifying. Plaintiff does not allege any duty on Hasbro's part to do so because there is none.

marked, Jezard's testimony is merely rebuttal to Hasbro's claim that they could have been marked. Plaintiff's Br. at 3-5. This "rebuttal" material therefore falls within Rule 26(a)(1)(A)'s exception to the disclosure requirement pertaining to witnesses called "solely for impeachment." *Id.* at 2. This analysis reflects a fundamental misunderstanding of civil practice.

Rebuttal evidence is "that which is given to explain, repel, counteract, or disprove facts given in evidence by the adverse party." 31A C.J.S. *Evidence* § 3 (1996). "It embraces all testimony which tends to counteract or overcome the legal effect of the ***evidence for the adverse party***." *Id.* (emphasis added). *See also Bowen v. Hackett*, 387 F. Supp. 1212, 1224 (D.R.I. 1975) (noting role of rebuttal evidence as responsive to evidence offered by other party). Jezard is not "rebutting" anything that Hasbro has put into evidence; indeed, Hasbro has merely directed the Court to the dice, the Plaintiff's testimony about the dice, and the testimony of the Plaintiff's expert about the dice and patent markings on dice. There is nothing to "rebut" except the Plaintiff's own expert, who candidly stated that dice can be marked with a patent number and who acknowledged that some dice are actually marked with a legible patent number. Clearly, Jezard is not offered to "rebut" Hasbro's evidence.[5]

Moreover, the Plaintiff is wrong to characterize Jezard's testimony as "impeachment" evidence that might not need to be disclosed under Rule 26(a)(1)(A). Black's Law Dictionary (8th Ed. 2004) defines "impeachment" as the "act of discrediting a witness, as by catching the witness in a lie or by demonstrating that the witness has been convicted of a criminal offense." Again, what or who would Jezard be impeaching? Kevin Cook, the Plaintiff's expert? The Plaintiff himself? Certainly no Hasbro witness, because there have been no Hasbro witnesses

---

[5] Bowling mischaracterizes "rebuttal" in this context, claiming that Jezard is rebutting Hasbro's "allegations" with respect to the possibility of marking the dice themselves. Plaintiff's Br. at 5. As described *supra*, the term "rebuttal" in the evidentiary sense does not concern arguments or contentions, but actual evidence.

who have testified on these subjects. Just as clearly, Jezard is not offered to "impeach" anyone.

The conclusion that Jezard's evidence is neither rebuttal nor impeachment is perfectly reasonable in light of one central principle that the Plaintiff admits, but then tries to dodge: he bears the burden of proof on the capable-of-marking issue. The Plaintiff contends that because he, himself, has testified that it would be impractical to mark his dice with a patent number, any further proof would just be rebuttal evidence. *See* Plaintiff's Br. at 5. This is incorrect. The Plaintiff is free to present multiple witnesses on a given topic; the fact that he believes that the first one met his "burden of production" on an issue doesn't make his second witness a "rebuttal" witness. Following the Plaintiff's logic, a party could simply identify one witness under Rule 26(a)(1)(A) where that witness was capable of testifying regarding each element of its claim or defense and hide all the other witnesses it intended to call, revealing them after close of discovery as "rebuttal" witnesses.

This result would be absurd and contrary to the disclosure requirements inherent in the Federal Rules. The rules provide that a party is to disclose every witness whom it may call as a witness in support of its claims or defenses. Jezard is clearly offered in support of the Plaintiff's claim that he was entitled to rely on a patent marking scheme that did not involve fixing the patent number to the dice themselves. He is a witness whom the Plaintiff had to disclose, or face exclusion of the evidence under Fed. R. Civ. P. Rule 37(c)(1).[6]

---

[6] Rule 37 requires that nondisclosed evidence be excluded unless there is "substantial justification" for the failure to disclose. The Plaintiff never explains how his failure to disclose an expert witness could be substantially justified, instead merely stating conclusory that it is and that Hasbro would not be prejudiced by the introduction of the evidence. As explained above, Hasbro is directly prejudiced by the Plaintiff having revealed a new witness (expert or otherwise) after the close of fact and expert testimony, thereby cutting off Hasbro's ability to inquire into his knowledge and opinions. Moreover, the Plaintiff's claim that the Jezard testimony is on a "limited" point is entirely inappropriate. Plaintiff's Br. at 7. Apparently the import of the Jerzard Declaration is not so limited that the Plaintiff is willing to withdraw it from consideration by the Court; likewise, Hasbro believes that the issue of whether the Plaintiff's dice are capable of being marked is one that should be decided by evidence properly presented in accord with the applicable Rules of Civil Procedure. The Plaintiff should not be heard to disregard the rules and then escape the consequences of his actions by claiming that it's really not very important anyway.

Bowling relies on the *Vigilant Insurance* case, *supra*, to avoid exclusion of the evidence based on Judge Smith's observation that under Rule 37(c)(1) "exclusion of undisclosed witnesses is not mandatory." Plaintiff's Br. at 2-3. Contrary to the Plaintiff's suggestion, the *Vigilant* decision does ***not*** stand for the proposition that unexcused failure to make required disclosures is something that should simply be ignored by the Court without sanction. Bowling fails to note that Judge Smith's decision to permit the testimony of undisclosed witnesses was based on the unique circumstances of that case and was only reached based upon his imposition of a separate sanction for the nondisclosure. He held that the failure to disclose merited the preclusion of testimony of five undisclosed witnesses "but for the lack of communication between all counsel and EG Oil's counsel's ignorance of Vigilant's Rule 26(a)(1) disclosures." 234 F.R.D. at 25. Those circumstances are not present here, nor are there any other circumstances that might warrant any deviation from the default remedy for unjustified nondisclosure: preclusion of the use of the evidence at trial, at a hearing, or on a motion.

## III. Conclusion

For the foregoing reasons, Hasbro, Inc. respectfully requests that the Declaration of Clive Jezard be stricken.

HASBRO, INC.
By its Attorneys,

/s/ Jeffrey K. Techentin__________

Todd D. White (# 5943)
twhite@apslaw.com
Jeffrey K. Techentin (#6651)
jtechentin@apslaw.com
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
(401) 274-7200
Fax: (401) 751-0604/ 351-4607
Dated: September 2, 2006

Of Counsel:

David K. S. Cornwell, Esq.
davidc@skgf.com
Tracy-Gene G. Durkin, Esq.
tdurkin@skgf.com
Sterne Kessler Goldstein Fox
1100 New York Avenue, NW
Washington, D.C. 20005

**CERTIFICATE OF SERVICE**

TO:

Craig M. Scott, Esq.
Christine K. Bush, Esq.
Duffy & Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903

Thomas J. Leach, Esq.
Douglas J. Williams, Esq.
Law Firm of Merchant and Gould P.C.
3200 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402-2215

David K. S. Cornwell, Esq.
Sterne Kessler Goldstein Fox
1100 New York Avenue, NW
Washington, D.C. 20005

I hereby certify that I filed the within Reply Memorandum of Law in Support of Motion to Strike Declaration of Clive Jezard through the ECF system on the 2nd day of September, 2006, and that notice will be sent electronically to the above-named counsel who are registered participants identified on the Mailing Information for Case No. 05-229S.

/s/ Jeffrey K. Techentin__________

*391613_1*