UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MICHAEL BOWLING, a Resident of Arizona, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 05-229 S |
| HASBRO, INC., a Rhode Island Corporation, | : | |
| Defendant. | : | |

**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF**
**<u>MOTION TO CORRECT INVENTORSHIP</u>**

HASBRO, INC.
By its Attorneys,

Todd D. White (# 5943)
twhite@apslaw.com
Jeffrey K. Techentin (#6651)
jtechentin@apslaw.com
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
(401) 274-7200
Fax: (401) 751-0604/ 351-4607
Dated: November 10, 2006

<u>Of Counsel</u>:

David K. S. Cornwell, Esq.
davidc@skgf.com
Tracy-Gene G. Durkin, Esq.
tdurkin@skgf.com
Sterne Kessler Goldstein Fox
1100 New York Avenue, NW
Washington, D.C. 20005

Hasbro, Inc. ("Hasbro") respectfully submits this Supplemental Memorandum of Law in support of its motion to correct the inventorship of U.S. Patent No. 5,938,197 (the "'197 Patent"). Hasbro here addresses two key issues: (1) whether the testimony of Albert Lizarraga has been "corroborated" such that the Court could find him to be the inventor (or a co-inventor) of the '197 Patent, and (2) whether certain dependent claims of the '197 Patent contain patentable subject matter.[1]

## I. Lizarraga Invented The Claimed Dice and Inventorship Should Be Corrected

Hasbro showed by clear and convincing evidence that Lizarraga independently conceived of the claimed die construction, or at the very least made independent, inventive contributions to the patent sufficient to confer the status of joint inventor of the '197 Patent. His testimony is corroborated both by documentary evidence and the testimony of Michael Bowling and his wife. Hasbro's proof, particularly in light of the Plaintiff's inconsistent, inaccurate, and misleading testimony, is sufficient to rebut the presumption enjoyed by the Plaintiff that his patent is valid and that he is the sole and true inventor. Because Hasbro has proof sufficient to overcome the presumption of correctness attendant to the issued patent, the Plaintiff bears the burden of coming forward with substantial evidence that he conceived of the claimed die construction before Lizarraga did. The Plaintiff's case is utterly bereft of evidence other than the self-serving and unreliable testimony of the Plaintiff and his wife. Here, finding Lizarraga to be the true inventor of the claimed dice is appropriate and warranted.

### A. Lizarraga's Testimony is Corroborated by Documents and Testimony, and Therefore The Court Should Consider the Entire Record to Determine if

[1] The Plaintiff only raised this second issue indirectly at the recent evidentiary hearing and has not articulated any particular theory of relevance to questions of inventorship. Hasbro surmises that the Plaintiff contends that the limitations specific to claims 8, 9, 11, 12, 14, and 15 are not eligible for patent protection, and therefore Mr. Lizarraga's contribution to those limitations cannot give rise to any rights in the invention.

**Hasbro Has Met Its Burden**

In order to be proved an inventor of the ’197 Patent, Lizarraga’s testimony that he independently conceived of the claimed die construction must be corroborated in some fashion. The corroboration requirement serves a valuable function in determining inventorship on issued patents: it precludes courts from overturning an issued patent purely on a credibility determination between two purported inventors. Requiring some form of corroboration forces challengers to provide independent evidence that they have not simply “convinced themselves after many years of having had a conception at the basis of a valuable patent.” *Eibel Co. v. Paper Co.*, 261 U.S. 45, 60 (1923). The corroborative evidence need not show inventorship *per se*; thus the Federal Circuit has instructed that corroboration should follow a “rule of reason” that permits virtually any form of independent evidence to corroborate the challenger’s testimony. The corroboration requirement acts as a gatekeeper: without any corroboration, the Court may not consider the alleged inventor’s testimony; but with even a kernel of corroboration, the Court must evaluate the entire record to determine inventorship.

The Federal Circuit’s decision in *Ethicon v. U.S. Surgical Corp.*, 135 F.3d 1456 (Fed. Cir. 1998) is controlling here, and requires that the Court find Lizarraga’s testimony to be corroborated. In *Ethicon*, the district court faced a nearly identical problem to that posed here, having to determine whether sketches drawn by an alleged coinventor reflected independent conception of the idea or were merely drawings made after the named inventor disclosed the concepts. *Id.* at 1464. The Federal Circuit affirmed the trial court’s conclusion that the sketches were *corroboration* of the coinventor’s claim, and because it was undisputed that the claimed coinventor had actually made the sketches, “the trier of fact should be able to assess the sketches ***in light of all the evidence*** to determine whose conceptions they reflect.” *Ethicon v. U.S. Surgical Corp.*, 937 F. Supp. 1015, 1034 (D. Conn. 1996) (trial court decision) (emphasis

added); *see also* 135 F.3d at 1464. *Ethicon* is determinative; the drawings in this case are contemporaneous and indisputably those of the claimed inventor, just as in *Ethicon*, and therefore the corroboration requirement is met and the Court must consider ***all*** of the evidence to determine if Lizarraga's inventorship is proved by clear and convincing evidence.[2]

The record is replete with evidence corroborative of Lizarraga's testimony. First and foremost are the drawings submitted to the patent office (*see*, *e.g.*, **Hg. Exh. F** at B00110). Those documents, coupled with the admission by the Plaintiff that they had been drawn by Lizarraga, corroborate that Lizarraga had fully conceived[3] of the idea at some date prior to the Plaintiff's application for the patent.[4] The drawings need not be corroborated independently. *Price v. Symsek*, 988 F.2d 1187, 1195-96 (Fed. Cir. 1993) (content of physical exhibit needs no

---

[2] Like the Plaintiff here, the plaintiff in *Ethicon* had attempted to argue that because "there is no independent evidence that the sketches reflect [one person's] conceptions rather than [the other's]," they could not be considered corroborating evidence. 937 F. Supp. at 1034. The trial court explicitly rejected that argument, as did the Federal Circuit by implication in its affirmation of the judgment and its determination that the sketches were, in fact, all the corroboration needed to satisfy the "rule of reason." 135 F.3d at 1464. Indeed, the Federal Circuit has recognized that the clear and convincing standard may be met ***exclusively*** through circumstantial evidence. *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1364 (Fed. Cir. 2004). Here, the evidence is both direct and compelling.

[3] Conception is the "formation in the mind of the inventor, of a ***definite*** and ***permanent*** idea of the c***omplete and operative invention***, as it is hereafter to be applied in practice." *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed. Cir. 1986) (citation omitted) (emphasis added). Lizarraga could not have created the drawings without such a "definite and permanent idea" of the claimed dice.

By contrast, Bowling's notion of solving a problem with his earlier prototype dice by turning rectangular facets into triangular sections does not amount to "conception." "An idea is definite and permanent when the inventor has a specific, settled idea, a particular solution to the problem at hand, not just a general goal or research plan he hopes to pursue." *Patient Transfer Sys., Inc. v. Patient Handling Solutions, Inc.*, 2001 WL 936641, at * 13 (E.D. Pa. Aug. 21, 2001) (quoting *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994)). He did not have a "specific[,] particular solution" to the design of the dice. That is why he turned to Lizarraga in the first place. As a matter of law, Bowling's request that Lizarraga provide drawings of a die in the shape of a crystal shard is not conception. *Hayhurst v. Rosen*, 1992 WL 123178, at *11 (E.D.N.Y. May 18, 1992) (a "request to another to create a product that will fulfill a certain function is not conception").

[4] There is no evidence when Lizarraga actually completed the drawings included in the patent application. Presumably it was between September 3, 1997 (when Bowling forwarded similar Lizarraga drawings that lacked numerical indicia to his lawyers) and December 31, 1997, when Bowling's lawyers actually submitted the application with the drawings contained therein. For present purposes, the precise date is immaterial. Bowling acknowledged having sent complete drawings by Lizarraga to his lawyers in September, and it is inescapable that Lizarraga had to complete the drawings before Bowling would have included them. Lizarraga's conception must have been *before* December 31, 1997 and, indeed, *before* September 3, 1997.

corroboration). They are independent evidence that Bowling himself acknowledged to be the work of Lizarraga and are directly corroborative of Lizarraga's testimony. *Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376-78 (Fed. Cir. 1986) (laboratory notebooks are corroborating evidence if there is sufficient proof they existed during relevant time period).

Even if the patent drawings did not exist, however, there is ample corroborative evidence supporting Lizarraga's contribution to the conception of the claimed dice. An alleged inventor may meet his burden to prove he conceived the invention without offering "one piece of evidence [that] in and of itself establishes the prior conception." *Patient Transfer Sys., Inc. v. Patient Handling Solutions, Inc.*, 2001 WL 936641, at *13 (E.D. Pa. Aug. 21, 2001) (quoting *Price v. Symsek*, 988 F.2d 1187, 1194-96 (Fed. Cir. 1993)); *see also Regents of the Univ. of Mich. v. Bristol-Myers Squibb Co.*, 301 F. Supp. 2d 633, 643 (E.D. Mich. 2003) ("The evidence of corroboration must be considered as a whole, not analyzed piecemeal."). Testimony may also be corroborated by "circumstantial evidence of an independent nature" or "oral testimony from someone other than the alleged inventor." *Gemstar-TV Guide Int'l, Inc. v. Int'l Trade Comm'n*, 383 F.3d 1352, 1382 (Fed. Cir. 2004) (citation omitted).

### B. The Corroborative Evidence, Coupled with Lizarraga's Testimony and Contrasted With Bowling's Incredible Testimony, Exceeds the Clear and Convincing Standard

The record here is replete with corroborative evidence that goes far beyond corroborating that Lizarraga was involved in the project, which *Ethicon* held to be sufficient in and of itself. **Def.'s Exh. 13** shows that Bowling valued Lizarraga's work enough to pay him over $2,000.00 for his work prior to the filing of the patent application. **Def.'s Exh. 21** corroborates Lizarraga's testimony that Bowling had described his original idea for dice as being in the shape of a "crystal shard" (B00820), that Bowling's idea for the size of the dice was different from what Lizarraga gave him (*compare id. with* **Def.'s Exh. 12**), and the fact that Lizarraga was assisting him using

"parametric solid modeling" to develop the "specifications" for the dice (B00825). **Def.'s Exh. 29** shows that Bowling's contemporary idea for the size of the dice was different from Lizarraga's (as reflected in the mechanical drawings) (*e.g.*, B00983). **Def.'s Exh. 8** shows that Bowling himself advertised his dice as being in the form of a natural crystal; if he told his artist that the dice would be in the shape of a "crystal shard," as he told Lizarraga, Lizarraga's understanding that Bowling wanted an irregular, natural shape was entirely reasonable:


≠



(Def.'s Exh. 8) (Pl.'s Exh. 50)

But corroboration need not be limited to documentary evidence. The testimony of both Bowling and his wife more than justifies the Court considering Lizarraga's testimony. Michael Bowling admitted that Lizarraga, and not he, had provided the dimensions for the dice that were reflected in the drawings (and which resulted in the dimensions recited in Claims 8, 9, 11, 12, 14, 15, and 16). On that note, the geometrical analysis performed by Mike Hirtle, with which Michael Bowling unequivocally agreed, corroborates Lizarraga's involvement with the development of the specifications for the dice. Elizabeth Bowling, too, testified that she and her husband had discussed the relative size of the end caps on the dice and eventually just accepted what Lizarraga had given them.

But in addition to candidly acknowledging Lizarraga's involvement prior to the patent application, Bowling's testimony goes much farther in corroborating the actual inventive processes undertaken by Lizarraga back in 1997. He testified at deposition, under oath, that he had not given Lizarraga a drawing of a complete die, but rather had just shown Lizarraga the "image of the opposing triangles." Bowling Dep. at 82:5 – 84:24.[5] Asked to draw what he

[5] Bowling's deposition was taken on January 16, 2006, over a month before Hasbro raised any issues regarding Lizarraga's involvement or inventorship in general.

meant, Bowling did not draw 

(the "complete die" that he now claims to have sketched dozens of times before meeting Lizarraga (**Pl.'s Exh. 50**)), but rather drew 

(taken from **Def.'s Exh. 50**). There was no ambiguity in this testimony: Bowling placed the number "2" next to the drawing that he was "using to describe the concept of using opposing triangles," contrasted with his next drawing, which was "how it would actually be laid out on the die." *Id.* That next drawing is, of course, nearly identical to **Pl.'s Exh. 50**: 

. Even if Bowling's description of how he depicted the "image of the opposing triangles" is less complete than Lizarraga's, Bowling's deposition testimony was that he did ***not*** draw the precise thing he has now testified that he had drawn. His testimony is thoroughly inconsistent and irreconcilable. Indeed, Bowling admitted at deposition that prior to the filing of the patent application, he had *never* drawn *any* complete die. *Id.* at 98:2-5. When he thought his patent rights could be lost based on prior public use (because he had told the world that he had invented his die years before he filed the patent application; *see*, *e.g.*, **Def.'s Exh. 49**), he adamantly denied having made, or even drawn, any of his dice before filing his patent application. Now that he risks losing based on inventorship, he swears to have drawn such a die dozens of times. His story is incredible.

Taken as a whole, the evidence shows clearly and convincingly that Lizarraga independently developed the claimed die design. Bowling gave him, at best, a general idea that might fulfill a particular function. When considering whether Lizarraga "invented," it is immaterial whether Bowling had, undisclosed and in the back of his mind, the precise same idea that Lizarraga happened to come up with and present to Bowling. If Lizarraga independently created the die shape prior to the date of Bowling's patent application, Bowling – not Hasbro or Lizarraga – must present competent evidence that he had conceived of the invention before

meeting with Lizarraga. As explained in the following section, he has not done so.

### C. Because Hasbro Has Proved that Lizarraga Invented by Clear and Convincing Evidence, The Burden Shifts to the Plaintiff to Show Conception Prior to Lizarraga's

As a matter of law, where another individual has conceived of and disclosed the invention prior to the patentee's filing date, the invention is not novel and may not be patented by the applicant. *See*, *e.g.*, *Kalman v. Kimberly-Clark Corp.*, 713 F.2d 760, 772 (Fed. Cir. 1983) (invention anticipated where "all limitations of the claim are found in the reference"). As the Fifth Circuit put it, "one obviously cannot be the original inventor if someone else has described or used the subject matter of the claims before the earliest possible moment to which he can trace his invention." *Beckman Instruments v. Chemtronics*, 428 F.2d 555, 561 (5th Cir. 1970).

It is indisputable that Lizarraga's conception and disclosure (to Bowling) predated the patent application. To rebut this, the Plaintiff relies exclusively on the statutory presumption of correctness of the patent, deriving from 35 U.S.C. § 282, and his and his wife's testimony. This is plainly inadequate; "[o]therwise, the named inventor could prevail simply by asserting that the other drew was he was told to draw, regardless of how incredible that assertion might be." *Ethicon*, 937 F. Supp. at 1034-35. It follows that the Plaintiff must advance evidence of – not just assert – prior conception, and this Bowling cannot do.[6] The legal presumption that Bowling conceived of the claimed invention only extends to the date of filing of the patent application, December 31, 1997, several months after Lizarraga's drawings completely disclosed the dice. Because Hasbro has shown an earlier conception and disclosure to the Plaintiff of the entire invention, Bowling must come forward with sufficient evidence to show conception prior to that date. *See*, *e.g.*, *Innovative Scuba Concepts v. Feder Indus.*, 26 F.3d 1112, 1115 (Fed. Cir. 1994)

---

[6] The presumption itself is not evidence. *In re Etter*, 756 F.2d 852, 856 (Fed. Cir. 1985); *Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1562 (Fed. Cir. 1988).

(once pre-application reduction to practice shown, burden of production falls on named inventor to show prior conception).[7] Given the complete and total absence of any independent evidence, the Plaintiff cannot meet this burden. His own testimony is legally insufficient; it is inadequate as a matter of law to establish either conception or reduction to practice. *Chen v. Bourchard*, 347 F.3d 1299, 1309-10 (Fed. Cir. 2003). To meet his burden, Bowling's testimony must be corroborated under the same standard as Lizarraga's. *Lacks Indus., Inc v. McKechnie Veh. Components USA, Inc.*, 322 F.3d 1335, 1349 (Fed. Cir. 2003).[8] His wife's testimony cannot meet this requirement, as "oral testimony of an interested witness must be corroborated by documentary testimony." *Id.* at 1350. Without any drawings, contemporary notes, independent witnesses, or disclosure to his patent attorneys, Bowling cannot meet this burden of production, and his story of pre-filing conception remains uncorroborated. Therefore Lizarraga must be found to be the inventor of the dice.[9]

---

[7] The *Innovative Scuba Concepts* dealt with invalidity under 35 U.S.C. § 102(g), which is not at issue here. To the extent it may be read to require only a burden of production by the Plaintiff in an inventorship case such as this one, it is at odds with a long line of authority imposing a very high burden of proof on patentholders to prove pre-application invention. *See*, *e.g.*, *Thomson Indus., Inc. v. Nippon Thomson Co.*, 298 F. Supp. 466, 472 (E.D.N.Y. 1968) (beyond a reasonable doubt); *Karr v. Botkins Grain & Feed Co.*, 329 F. Supp. 411, 413 (S.D. Ohio 1970); *Gen. Steel Prods. Co. v. Lorenz*, 204 F. Supp. 518, 525 (S.D. Fla. 1962); *Messler v. U.S. Rubber Co.*, 148 F.2d 734, 735-36 (2d Cir. 1945) ("satisfactory and convincing" standard that cannot be met by "more or less interested recollection [by named inventor] of events said to have occurred some eighteen years before"). If the Federal Circuit intended to overrule these cases or to extend its ruling beyond direct challenges to patent validity, it did so without acknowledging that it was doing so. Given Bowling's complete absence of proof, however, the applicable standard is immaterial.

[8] *See also*, *e.g.*, *Tone Bros., Inc. v. Sysco Corp.*, 28 F.3d 1192, 1197 n. 4 (Fed. Cir. 1994) (noting that once burden of production shifts to patent owner to rebut *prima facie* showing of invalidity, patentee must come forward with "convincing evidence"); *Howe v. General Motors*, 252 F. Supp. 924, 936 (N.D.Ill. 1968) (inventor's testimony must be corroborated). Mrs. Bowling's testimony is insufficient corroboration. *See Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1371 (Fed. Cir. 1998) (factors to determine if corroboration meets "rule of reason" include relationship of witness to alleged prior user and the interest of the witness in the subject matter of the suit).

[9] Even if the Court were to conclude, against the weight of *Chen*, *supra*, that the testimony of the Plaintiff and his wife nominally met the burden of production, however, that does not end the inquiry. In that case, the Court must weigh all the evidence and determine whether Hasbro has shown, by clear and convincing evidence, that Lizarraga is the sole or a joint inventor. *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1578 (Fed. Cir. 1996). Given the relative credibility of the witnesses, and the inescapable conclusion that Lizarraga's independent creation of the relative sizes of the components of the dice led directly to many of the patent claims, Hasbro has done so.

## II. Even If Lizarraga Merely Contributed to Dependent Claims, He Must Be Found A Coinventor of The '197 Patent

There is no dispute that Lizarraga actually drew the figures included in the patent application. Bowling admits that he only gave Lizarraga a quickly drawn hand sketch that did not include any specific dimensions, let alone the three specific dimensions from which one can calculate the surface areas of the dice (overall length, end cap height, and overall diameter). Lizarraga testified credibly that the hand drawn sketch comprised irregularly-shaped facets, akin to a natural crystal – like the "shard" the Plaintiff described in his business plan. After struggling to design a crystal shaped die as he had been asked to do, Lizarraga gave up and decided to create geometrically shaped die, which he did through the "parametric solid modeling" process. His story was reasonable and consistent with the Plaintiff's deposition testimony. However, even if this Court believes that Lizarraga and Bowling merely had a miscommunication and that Bowling intended for Lizarraga to create the very geometric die that Lizarraga created, Lizarraga ***must*** be named as an inventor because he contributed to several of the ***dependent*** claims. Specifically, Lizarraga constructed the virtual models from which the specific surface areas of Claims 8, 9, 11, 12, 14, and 15 were derived; and, of course, Claim 16 is no more than a generalization of the relative surface areas calculated from the Lizarraga models (from 2.7:1 for the six-sided die to 2.3:1 for the ten-sided die to 2.06:1 for the twenty-sided die).

At the hearing, the Plaintiff suggested that the incremental differences recited by the dependent claims are not patentable. If that were the case, one must ask why the dependent claims were drafted in the first place (by the same lawyers now representing the Plaintiff) and were presented to the Patent & Trademark Office as if they were valid, albeit dependent, claims. Because dependent claims must contain all of the limitations of the independent claims on which they are based, it is axiomatic that if a dependent claim is infringed, the independent claim from

which it depends is also infringed. Therefore the dependent claim is superfluous if the independent claim is infringed. The only reason to pursue patent protection for a dependent claim is in the event that the independent claim is found to be invalid; in that case, a patentee may enforce those dependent claims that remain valid. For the patentee to suggest that the incremental elements recited in the dependent claims do not add to the patentability of the dependent claims suggests that the dependent claims that the Plaintiff drafted – and asked the government to protect – have no value. Following the Plaintiff's reasoning, the dependent claims are either infringed (along with the broader independent claim) or they are invalid (along with the independent claims) and therefore have no value beyond the value of the independent claims. It would make no sense to take this position in the patent application process, and the Plaintiff should be estopped by his participation in that process from reversing position now. The only logical explanation is that the incremental elements recited by the dependent claims are, in fact, "substantial" as ***required*** by 37 C.F.R. 1.75(b). The implicit conclusion of the Patent & Trademark Office to that effect, by permitting the patent to issue, should be upheld.

The incremental elements recited in the dependent claims cannot be ignored when determining inventorship. Further, there is overwhelming evidence that Lizarraga invented many or all of those incremental elements. In contrast, there is nothing to suggest that Bowling had any inventorship of the elements recited in the Claims 8, 9, 11, 12, 14, 15, and 16. Therefore, Lizarraga must be added as an inventor to the '197 patent.

## CONCLUSION

Because the evidence clearly and convincingly shows that Lizarraga was either the true inventor or, at a minimum, a co-inventor of one or more claims of the '197 Patent, Hasbro respectfully asks that its Motion to Correct Inventorship be granted.

Respectfully submitted,

HASBRO, INC.
By its Attorneys,

/s/ Jeffrey K. Techentin
Todd D. White (# 5943)
twhite@apslaw.com
Jeffrey K. Techentin (#6651)
jtechentin@apslaw.com
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
(401) 274-7200
Fax: (401) 751-0604/ 351-4607
Dated: November 10, 2006

Of Counsel:

David K. S. Cornwell, Esq.
davidc@skgf.com
Tracy-Gene G. Durkin, Esq.
tdurkin@skgf.com
Sterne Kessler Goldstein Fox
1100 New York Avenue, NW
Washington, D.C. 20005

**CERTIFICATE OF SERVICE**

TO:

Craig M. Scott, Esq.
Christine K. Bush, Esq.
Duffy & Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903

Thomas J. Leach, Esq.
Douglas J. Williams, Esq.
Law Firm of Merchant and Gould P.C.
3200 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402-2215

David K. S. Cornwell, Esq.
Sterne Kessler Goldstein Fox
1100 New York Avenue, NW
Washington, D.C. 20005

I hereby certify that I filed the within Supplemental Memorandum of Law in Support of Motion to Correct Inventorship through the ECF system on the 10th day of November, 2006, and that notice will be sent electronically to the above-named counsel who are registered participants identified on the Mailing Information for Case No. 05-229S.

/s/ Jeffrey K. Techentin__________

*398156_1*