IN THE UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MICHAEL BOWLING,<br>a Resident of Arizona,<br><br>Plaintiff,<br><br>v.<br><br>HASBRO, INC.,<br>a Rhode Island Corporation,<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | C.A. No. 05-229S |

**PLAINTIFF'S REPLY TO DEFENDANT'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF MOTION TO CORRECT INVENTORSHIP**

## INTRODUCTION

As a matter of law, and after a full evidentiary hearing on the issue, Hasbro has not proved by clear and convincing evidence that Lizarraga—and not Bowling—is the true inventor. Further, and fatal to Hasbro's claim, Lizarraga admits there is no corroborating evidence that he conceived of equal and identical extension member facets before Bowling.

In fact, Lizarraga does not even claim he is an inventor. Rather, Hasbro suggested that Lizarraga might have contributed to the design and paid him $10,000 for whatever "rights" he might have in the invention and secured his agreement to cooperate in Hasbro's defense. Now Hasbro desperately attempts to make Lizarraga an inventor to escape liability for its willful infringement. Far from establishing Lizarraga is an inventor, the un-refuted evidence established that Bowling conceived of every claim of the '197 patent before he hired and disclosed his invention to Lizarraga to prepare formal patent drawings.

Hasbro's supplemental brief attempts to avoid summary judgment by misstating inventorship law and the facts to this Court. Hasbro incorrectly argues that *Bowling* must

corroborate that he conceived of the invention before Lizarraga. Hasbro is wrong, which is highlighted by the absence of *any* legal authority for its assertion.[1] Hasbro—not Bowling—must prove by clear and convincing evidence that Lizarraga contributed significantly to the conception of the invention, and that burden remains at all times on Hasbro. Hasbro also incorrectly argues that the patent's presumption of validity only extends to the filing date of the application. (Hasbro's Br. at 7.) Hasbro cites no authority for this assertion because that is also flat wrong.

The evidence presented at the hearing established that Bowling conceived of every aspect of the claimed invention before Bowling disclosed his invention to Lizarraga. Bowling's testimony was confirmed by his wife's testimony, Julie Daulton's deposition testimony, and Bowling's prototype dice, which has sides that are *identically shaped and of equal surface area*.

Realizing after the hearing that it is unbelievable to think that Bowling did not know that the dice had to have sides of identical shape and equal surface area to produce random numbers, Hasbro reverts back to its unsupportable argument that Lizarraga conceived of the die's sizes and ratios of extension member facets to end-cap facets. On this point, however, both Bowling and Lizarraga agree—Bowling provided Lizarraga with the appropriate size of the dice and the ratio of surface areas of the end-cap and extension-member facets. Lest there be any doubt, Lizarraga refused to claim that he contributed to these ratios in the assignment drafted by Hasbro.

## ARGUMENT

### A. Hasbro Has Not Proven By Clear And Convincing Evidence That Lizarraga Is An Inventor And Bowling's Summary Judgment Motion Should Be Granted

#### 1. No independent evidence corroborates Lizarraga's vague testimony that his conception was prior to Bowling's

[1] Hasbro argues that Bowling must corroborate his testimony regarding inventorship under the same standard as Lizarraga citing *Lacks Indus., Inc. v. McKechnie Veh. Components USA, Inc.*, 233 F.3d 1335, 1349 (Fed. Cir. 2003). (Hasbro's Brief at 8.) This case does not stand for that proposition; rather it confirms that Lizarraga's (the alleged co-inventor's) testimony must be corroborated and that burden remains with Hasbro. Moreover, Hasbro cites cases dealing with interferences and invalidity under §102(g), which are inapplicable here.

Nothing in the record corroborates Lizarraga's vague oral testimony that he—and not Bowling—conceived of any part of the invention. Hasbro claims the mechanical drawings Lizarraga prepared at Bowling's direction corroborate Lizarraga's testimony. These drawings, made *after* Bowling disclosed his invention to Lizarraga, do not independently corroborate that Lizarraga—and not Bowling—conceived of the invention. That Bowling admits that Lizarraga prepared the formal drawings is irrelevant because that is what Bowling hired him to do.

Hasbro cites *Price* arguing that the drawings need not be independently corroborated. (Hasbro's Br. at 3.) However, the issue is not whether the drawings need corroboration, but whether the drawings corroborate Lizarraga's testimony that he—and not Bowling—conceived of the invention. On this point the drawings cannot possibly corroborate Lizarraga's testimony because he prepared the drawings *after* Bowling disclosed the invention to him. Hasbro's cite to *Hybritech* points out the fallacy of Hasbro's argument—that the drawings could only corroborate Lizarraga's testimony if Lizarraga produced the drawings before Bowling disclosed his invention to Lizarraga. (*Id*. at 4.) There is no dispute that Lizarraga prepared the drawings after he met with Bowling and after Bowling disclosed his invention to Lizarraga.

Hasbro's reliance on *Ethicon v. U.S. Surgical Corp.*, 135 F.3d 1456 (Fed. Cir. 1998), is also misplaced because *Ethicon* is distinguishable from the present case. In *Ethicon*, the court applied the "rule of reason" analysis and found that the alleged co-inventor's testimony was sufficiently corroborated by overwhelming and independent circumstantial evidence. At issue was whether the alleged co-inventor conceived of the material in drawings he drew, which resembled the patent figures, or whether he merely drew what the named inventor conceived of and instructed him to draw. *Id*. at 1464. The Court in *Ethicon* did not find that the drawings alone corroborated the alleged inventor's testimony, but rather found that the nature of what was

drawn, which required knowledge of sophisticated electrical engineering concepts that the named inventor did not possess, in combination with other independent circumstantial evidence corroborated the alleged inventor's claim. *Id*.

Specifically, in *Ethicon* the court found that the following circumstantial evidence sufficiently corroborated the alleged inventor's testimony: (1) the named inventor initially lied about who drew the drawings, and altered and backdated drawings to make it look like he independently invented the elements at issue; (2) the named inventor's need for a person with expertise in electronics; (3) the alleged co-inventor's background in electronics; (4) expert testimony that the sketches dealt with sophisticated concepts that only the alleged inventor, having training in electrical engineering and electronics, could have conceived of and drawn; (5) the named inventor's proposal that he and the alleged inventor work together to develop new products; (6) the informal business relationship between the parties; (7) the length of time they worked together; (8) the absence of any pay to the alleged inventor for his work; (9) the similarity between the alleged inventor's sketches and the patent figures; and (10) the letter in which the alleged inventor stated that he could no longer be a member of the named inventor's business. *Id*. at 1462, 1464. On this evidence, the Federal Circuit found that the nature of the drawings, which the named inventor could not have conceived of, in addition to the independent circumstantial evidence sufficiently corroborated the inventorship claim by clear and convincing evidence. *Id*. at 1464.

The facts of the present case are not only distinguishable from *Ethicon*, but they establish that Lizarraga is not an inventor. Significantly, in *Ethicon* the court found that the named inventor could not have conceived of the sophisticated electrical concepts in the drawings at issue because he did not have the background in electronics required to conceive of and

understand the concepts in those drawings. Unlike in *Ethicon*, Bowling—not Lizarraga—had continuing experience with dice design and is a degreed engineer. Moreover, Bowling hired Lizarraga for his drafting skills. He did not hire Lizarraga for engineering skills in dice design because Lizarraga does not possess those skills. Bowling never proposed that he and Lizarraga work together to develop new products. Bowling paid Lizarraga for his drafting services. And finally, unlike the named inventor in *Ethicon,* who lied, altered documents and backdated documents, Bowling's testimony is consistent and credible. Thus, the facts in *Ethicon* serve to highlight that no such evidence exists in the present case to corroborate Lizarraga's testimony.

**2. Hasbro's claimed corroborating evidence is insufficient to meet the clear and convincing standard because it does not corroborate prior conception by Lizarraga.**

Hasbro erroneously argues that *Ethicon* held that simply corroborating that the alleged inventor was "involved in the project" was sufficient "in and of itself" to establish co-inventor status. (Hasbro's Br. at 4.) That, of course, is not *Ethicon's* holding. And none of the "additional evidence" Hasbro cites corroborates Hasbro's allegation that Lizarraga contributed significantly to the conception of the invention. Lizarraga only testified that he made the extension member facets identically shaped and of equal surface areas—nothing more. Yet Hasbro argues that Lizarraga contributed to the conception of the size of the dice and the ratios of surface areas of extension member facets to end cap facets. No evidence independently corroborates this testimony.

First, Hasbro cites Bowling's payment to Lizarraga for his drafting services and argues that such payment is corroborating evidence. However, in *Ethicon*, the *lack* of such payment was found to be circumstantial corroborating evidence establishing co-inventor status. *Ethicon*,

at 1464. That Bowling paid Lizarraga for his drafting services is circumstantial evidence that he did not contribute to the conception of the invention.

Second, nothing about Bowling's business plan, which describes Bowling's invention as looking similar to a "crystal shard," corroborates Lizarraga's testimony that he conceived of the extension member facets being identically shaped and of equal surface areas. To this point, Bowling and Bowling's wife clearly testified that Bowling provided Lizarraga with a verbal description of the die and a sketch like the following: 

. (Pl.'s Exh. 50.) In addition, Lizarraga testified at his deposition that it was not possible for him to draw what Bowling provided him because it was over nine years ago. (SUF at 30.[2]) However, Lizarraga did recall that Bowling provided him with a three-dimensional multi-faceted sketch that had end caps. (*Id*. at 30, 33.) Hasbro's argument that an advertising brochure made after the invention, which shows an irregular crystal, also provides no corroboration for Lizarraga's testimony.

Third, Hasbro alleges that Lizarraga's drawings and the testimony of Bowling and his wife corroborate that Lizarraga contributed to the conception of the size of the dice and the ratios of surface areas of the extension member facets to the end cap facets. In particular Hasbro alleges that Lizarraga contributed to dependent claims 8, 9, 11, 12, 14, 15, and 16. (Hasbro's Br. at 5.) However, Lizarraga did not claim to have conceived of the different sizes of the dice, let alone the ranges contained in these dependent patent claims. In fact, Lizarraga testified that Bowling provided him with a sketch and an overall length and diameter. (SUF at 16-19, 23-24.) That the sizes in Lizarraga's drawings might fall within the patent claims does not corroborate that Lizarraga determined the size of the dice or the ratios of surface areas of the facets.

---

[2] "SUF at _____" are cities to Bowling's Statement Of Undisputed Facts In Support Of Plaintiff's Motion For Summary Judgment (Court Docket No. 47).

Moreover, before inventorship was even an issue, Bowling testified that he determined the appropriate size of the dice. (SUF at 16-19, 23-24.) Lizarraga testified that he did not conceive of the ratio of the surface area of the extension member facets to the surface area of the end cap facets being approximately 2-3:1. (SUF 36; *see also* Pl.'s Exh. 13.(Lizarraga striking from the draft assignment that he "invented" and that he contributed to the ratio of the surface area of the extension member facets to the end cap facets); compare Pl.'s Exh. 12 with Pl.'s Exh. 11).

Fourth, Bowling's testimony at his deposition is entirely consistent with his and his wife's testimony at the hearing regarding the sketch that Bowling provided Lizarraga. At Bowling's deposition, he testified that he provided Lizarraga with a sketch like the following:




. (SUF at 17.) At the hearing, Bowling and his wife testified that Bowling provided Lizarraga with a sketch like the following:




. (Pl.'s Exh. 50.) At the hearing, Bowling explained that he merely used the images of opposing triangles to explain his invention to Mr. Techentin. And that his earlier testimony referring to a "complete die" referred to a drawing having different views of the die rather than his sketch. None of this corroborates Lizarraga's testimony that he conceived of the equal and identical extension member facets.

Finally, Bowling's after-the-fact advertising and marketing puffery does nothing to corroborate that Lizarraga contributed to the conception of the invention. Hasbro's additional "evidence" fails to corroborate Hasbro's claim that Lizarraga contributed significantly to the conception of the invention and is far from clear and convincing evidence required to establish him as an inventor. *Gemstar-TV Guide Int'l, Inc. v. Intl. Trade Comm'n.*, 383 F.3d 1352, 1382-1383 (Fed. Cir. 2004) (reversing a trial court's finding of co-invention due to lack of

corroboration despite accepting that the alleged co-inventor's testimony was more credible than the inventor's).

### 3. **Hasbro's Burden to Prove by Clear and Convincing Evidence That Lizarraga is an Inventor Remains at All Times With Hasbro**

The law is unequivocal that Hasbro—not Bowling—must prove by clear and convincing evidence that Lizarrraga contributed significantly to the conception of the invention. *Acromed Corp. v. Sofamor Danek Group, Inc.*, 253 F.3d 1371, 1379 (Fed. Cir. 2001). To do so, Hasbro must provide independent evidence that corroborates Lizarraga's testimony. *Id*. Because Lizarraga testified that he believed that he contributed to the extension member facets being identically shaped and of equal surface area and nothing more, Hasbro must produce evidence that corroborates this testimony. It has not done so; and summary judgment is appropriate.

Hasbro cites to no case that supports its allegation that the legal presumption extends only to the filing date of the patent because this is flat wrong. Hasbro relies on nothing more than Lizarraga's uncorroborated oral testimony—which is legally insufficient—to establish that Lizarraga, and not Bowling, conceived of the invention. Moreover, none of the cases cited by Hasbro stand for the proposition that Bowling must prove his conception by the same standard that Hasbro must to establish Lizarraga as a co-inventor. Hasbro cites *Lacks Indus., Inc. v. McKechnie Veh. Components USA, Inc.*, 322 F.3d 1335, 1349 (Fed. Cir. 2003), which does not stand for the proposition that Bowling's testimony must be corroborated; rather it confirms that the alleged co-inventor's testimony must be corroborated. The burden of proof never shifts to Bowling. *Innovative Scuba Concepts v. Feder Indus.*, 26 F.3d 1112, 1115 (Fed. Cir. 1994).

However, Bowling does not simply rely on Hasbro's failure of proof, but has presented evidence that he in fact conceived of the invention before meeting with Lizarraga. Bowling's testimony is corroborated by his wife, the deposition testimony of his patent attorney, Julie

Daulton, and by the physical prototype die—which establishes that Bowling knew before he ever met Lizarraga that the extension member facets needed to be identically shaped and of equal surface area to produce random numbers. (Pl.'s Exh. 46.)

**B. Lizarraga provided nothing more than drafting services, which does not rise to the level of co-invention.**

Finally, an inventor, such as Bowling, may solicit the assistance of others when perfecting the invention without "losing" any patent rights. *Acromed Corp.*, 253 F.3d at 1379-80; *Hess*, 106 F.3d at 981 (*quoting Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 624 (Fed. Cir. 1985) ("an inventor 'may use the services, ideas, and aid of others in the process of perfecting his invention without losing his right to a patent'")). The law is clear that to be a joint inventor, Lizarraga must have contributed in some significant manner to the conception of the invention.[3] *Gemstar-TV Guide Int'l*, 383 F.3d at 1381. Beyond conception, an alleged co-inventor must show that his contribution to the claimed invention is not insignificant in quality, when compared to the full invention, and that he did *more than merely explain to the real inventor well-known concepts or the current state of the art*. *Acromed Corp.*, 253 F.3d at 1379 (emphasis added).

Lizarraga's uncorroborated oral testimony that he contributed the extension member facets being identically shaped and of equal surface area—which he did not—is nothing more than contributing that which Bowling already knew as it was well known in the art of dice. Such a contribution does not rise to the level of invention required to add him as a co-inventor. Hasbro's claim also presupposes that Bowling, a degreed engineer and dice designer, did not previously know that dice must be symmetrical, i.e. having facets of identical shapes and equal

[3] Bowling disagrees with Hasbro to the extent it argues that certain dependent claims, as a whole, do not contain patententable subject matter. Regardless, those issues are not part of the present inventorship motion and Bowling waives no rights concerning those issues.

surface areas, for the die to generate random numbers[4] or that Bowling did not know the appropriate size to make the die. The un-refuted testimony at the hearing, and the actual prototype dice with extension member facets that are identically shaped and of equal surface area, prove that Bowling not only understood that concept, but that he had used it in dice years before he ever met Lizarraga.

**CONCLUSION**

Because Hasbro has failed to present sufficient corroborating evidence to meet the clear and convincing standard of proof that Lizarraga is an inventor, the court should deny Hasbro's Motion to Correct Inventorship and grant Bowling's motion for summary judgment that Lizarraga is not an inventor.

Plaintiff,
Michael Bowling,

Date: November 21, 2006

By his attorneys,

/S/ Thomas J. Leach

Douglas J. Williams, *pro hac vice*
Thomas J. Leach, *pro hac vice*
MERCHANT & GOULD, P.C.
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(612) 332-5300
(612) 332-9081 (Facsimile)

Craig M. Scott, Esq. (#4237)
Christine K. Bush, Esq. (#5587)
DUFFY SWEENEY & SCOTT, LTD
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700
(401) 455-0701 (Facsimile)

[4] During its claim construction argument, Hasbro makes much of the fact that Column 4, lines 55-64 of the '197 patent discusses the center of mass being the center of symmetry. (SUF at Exh. E.) This language shows that Bowling also knew that in addition to having facets that were identically shaped and of equal surface area (symmetrical), for the dice to be fair the density of the dice must also be uniform. For example, the dice would not be fair despite being symmetrical if half of it was made of lead and the other half of balsa wood.

**CERTIFICATION**

TO:

Todd D. White, Esq.
Jeffrey K. Techentin, Esq.
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345

David K. S. Cornwell, Esq.
Tracey-Gene G. Durkin, Esq.
Sterne Kessler Goldstein & Fox P.L.L.C.
1100 New York Avenue N.W.
Washington, DC 20005

I hereby certify that I caused the within *plaintiff's reply to defendant's supplemental memorandum of law in support of motion to correct inventorship* to be filed through the ECF system on the 21st day of November, 2006, and it will be sent electronically to the above-named counsel who are registered participants identified on the Notice of Electronic Filing for Case No. 05-229S.

/S/ Thomas J. Leach