IN THE UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MICHAEL BOWLING,<br>a Resident of Arizona, | : | |
| Plaintiff, | : | C.A. No. 05-229S |
| v. | : | |
| HASBRO, INC.,<br>a Rhode Island Corporation, | : | |
| Defendant. | : | |

**BOWLING'S MEMORANDUM IN OPPOSITION TO HASBRO'S MOTION TO STAY OR, IN THE ALTERNATIVE, FOR LEAVE TO RE-OPEN EXPERT DISCOVERY AND BOWLING'S MOTION TO EXCLUDE HASBRO'S UNTIMELY CONTENTIONS**

## INTRODUCTION

Hasbro's motion is a transparent attempt to (1) get a new dice expert after the court disqualified its designated "dice expert," (2) add dozens of new invalidity contentions on the eve of trial after its others failed, and (3) delay and increase costs to Bowling, an individual litigant. Hasbro knew or should have known about the "new" prior art it now wants to add 15 months after the close of discovery and on the eve of trial. Between the time this dispute arose and discovery closed, Hasbro has had more than seven years to find prior art. The '487 patent that is the centerpiece of Hasbro's argument is listed on one of the key prior art references Hasbro has possessed since at least 1999, and the mineralogy books have been in print for over 200 years.

All of the factors support denying a stay. First, granting a stay at this late stage will severely prejudice Bowling by delaying his day in court and significantly increasing his costs. The reexamination process will likely take years, probably longer, to complete. That does not include any appeals or additional reexaminations Hasbro or one of its surrogates might later file.

Meanwhile, memories will fade and witnesses will become unavailable, making it harder for Bowling to prove his case. Second, reexamination will not simplify the issues in this case. Statistically, there is a 90% chance that years from now we will be right back here dealing with the same issues. The PTO rules do not preclude Hasbro from remaking arguments that fail in reexamination. The reexamination process only deals with patents and printed publications and cannot resolve Hasbro's other defenses, such as, §112, laches, equitable estoppel, and its counterclaim of non-infringement and copyright infringement. Moreover, because the technology is simple and understandable to a jury, the PTO's technical expertise adds little. Finally, stays are disfavored after discovery is complete and the case is ready for trial. Here, discovery is complete, claim construction is complete, dispositive motions have been briefed, argued and decided, and the case is ready for trial.

Knowing that a stay is inappropriate at this late stage, Hasbro asks the Court to reopen expert discovery so it can obtain a new expert and present new invalidity contentions at trial. Notably, Hasbro previously chose not to retain a technical expert, but rather chose to disclose an employee as its technical expert so it did not have to prepare an expert report. Hasbro's request will force Bowling to augment its expert report (or obtain another expert to prepare a different report), re-take expert depositions, and defend against dozens of new contentions. Hasbro proposes that all this be done without the benefit of fact discovery on Hasbro's new contentions.

The time for expert discovery has long since passed. As a large corporation, Hasbro has ample resources to conduct discovery and build a record—as illustrated by its $10,000 payment to Lizarraga during this litigation in exchange for an inventorship defense. Hasbro also had over seven years to discover prior art and develop that record. Hasbro is reaching for any possible defense to its willful infringement. Hasbro should not be allowed to disregard the Federal Rules

and the Court's Scheduling Order by injecting dozens of new contentions on the eve of trial because its other defenses failed.

To support its motion, Hasbro mischaracterizes the information in its reexamination request. Hasbro's reexamination request is based on U.S. Patent No. 4,497,487 ("the '487 patent") and drawings of minerals that date back to the 1800s. Hasbro grossly misrepresents what the '487 patent discloses and when it obtained that patent. Likewise, the mineralogy publications simply do not disclose dice and are not in the field of relevant prior art.

Hasbro claims, without support, that it "discovered" this information after discovery closed, but does not tell the Court when this discovery occurred. Discovery closed over fifteen months ago. Moreover, the '487 patent to Crippen is cited on the face of U.S. Patent No. 5,224,708 ("the '708 patent"), which is the key reference in the prosecution history of Bowling's patent. To argue that Hasbro just "discovered" this patent is disingenuous at best. More importantly, Hasbro misrepresents, as it did at the recent status conference, that the '487 patent discloses dice having different sized facets. The law is clear that Hasbro's reliance on the '487 patent figure's dimensions is inappropriate. Moreover, the specification of the '487 patent squarely contradicts Hasbro's argument that the sides are of different sizes. The '487 patent discloses dice with identical facets just like the '708 patent, which was considered by the patent examiner.

This case should not be stayed. Every factor considered in deciding whether to grant or deny a stay weighs heavily against staying the case. Hasbro's motion is nothing more than an attempt to gain a tactical advantage over Bowling.

## ARGUMENT

### A. Hasbro Misrepresents When It Obtained The '487 Patent And What It Discloses.

#### 1. Hasbro knew or should have known of the '487 patent years ago.

Hasbro misrepresents when it "discovered" the '487 patent. Hasbro ordered the prosecution history of Bowling's patent in 1999—over 7 years ago. (Ex. A at 8.) The key reference cited in that prosecution history against Bowling's patent application was the '708 patent. The '487 patent to Crippen is cited on the face of the '708 patent:



US005224708A

United States Patent [19]

Gathman et al.

[11] Patent Number: 5,224,708

[45] Date of Patent: * Jul. 6, 1993

[54] SYMMETRICAL DICE WITH CARD INDICIA

[76] Inventors: Richard W. Gathman, 42 N. 4th St., Jeffrey M. Breed, 1611 St. Mary St., both of Lewisburg, Pa. 17837

| | | | |
|---|---|---|---|
| 3,608,905 | 9/1971 | Edison | 273/146 |
| [illegible] | [illegible] | Sigg | 35/31 |
| 4,465,279 | 8/1984 | Larson | 273/146 |
| 4,497,487 | 2/1985 | Crippen | 273/146 |

Nonetheless, Hasbro argues that it did not "discover" the '487 patent until after discovery closed; this is tantamount to ignoring what was plainly in front of it for over seven years. With any diligence, Hasbro could have disclosed its invalidity contentions regarding this patent during discovery.

#### 2. The '487 patent does not disclose Bowling's invention.

Hasbro also misrepresents what the '487 patent discloses. Contrary to Hasbro, the '487 patent *does not* disclose a die having facets of *different* shape and surface areas—as Bowling's invention claims. (*See* Hasbro's Brief at 2-5.) The '487 patent discloses a die with facets that are all identical. The '487 patent discloses dice ("a chance device") for generating random numbers for picking lottery numbers. (Ex. B, Col. 4:39-41.) The '487 patent specifically discloses dice in the shape of an icosahedron. An icosahedron "is a solid figure contained by twenty equal and equilateral triangles." Euclid, *The Elements*, 945, Sir Thomas L. Heath trans., Barnes & Noble Publishing Inc. 1908 (2006) (Ex. C).

Hasbro improperly asks the Court to rely on the relative dimensions in Figures 3 and 4 of the '487 patent and to ignore what the patent actually discloses. It is improper to rely on drawings not explicitly made to scale for invalidity arguments. *Nystrom v. Trex Co., Inc.*, 424 F.3d 1136, 1149 (Fed. Cir. 2005). Nowhere in the '487 patent does it explicitly state that Figures 3 and 4 are made to scale. It is well established that "patent drawings do not define the precise proportions of the elements and may not be relied on to show particular sizes if the specification is completely silent on the issue." *Hockerson-Halberstadt, Inc. v. Avia Group Intl', Inc.*, 222 F.3d 951, 956 (Fed. Cir. 2000); *see In re Wright*, 569 F.2d 1124, 1127 (CCPA 1976) ("Absent any written description in the specification of quantitative values, arguments based on measurement of a drawing are of little value."). In *Nystrom*, the Federal Circuit reversed a grant of summary judgment of invalidity over models based on dimensions in patent drawings not explicitly drawn to scale. 424 F.3d at 1149.

In fact, the same incorrect arguments could be made about Figure 3 in the '708 patent, the key patent over which the PTO granted Bowling's patent. For example, under Hasbro's incorrect argument, relying solely on measuring the non-scale drawings of the '708 patent, Figure 3 also has triangular facets of different sizes. When one "observes and measures" the King of hearts and the Ace of spades triangles in the '708 patent they are different:





('708 Patent at Figure 3. (Ex. D).)

As shown above, the Ace of spades triangle's base measures 1.5 centimeters and the King of hearts triangle's base measures 2.0 centimeters. In evaluating the '708 patent, the patent examiner did not rely on simply "observation and measurement" of the relative dimensions of the prior art drawing, but instead considered what the specification as a whole disclosed to one skilled in the art. *Panduit Corp v. Dennison Mfg Co.*, 810 F.2d 1561, 1568 (Fed. Cir. 1987) (stating a prior art patent must be considered in their entirety, i.e., as a whole including portions that lead away from the invention in suit). Like the '708 patent, the '487 patent discloses a random number generator where all sides are identical—it does so by defining the shape as an icosahedron. The '487 patent adds nothing new to the '708 patent, which was considered by the PTO when it allowed Bowling's patent. Contrary to Hasbro, the '487 patent does not invalidate any claims of Bowling's patent. Allowing Hasbro to argue this "new" prior art would be legal error and obviously calculated to confuse the jury, both of which are improper.

**B. Vague Drawings of Mineral And Crystalline Structures Do Not Invalidate A Claim To A Game Die.**

Having lost its other invalidity defenses, Hasbro is attempting to interject new invalidity arguments on the eve of trial. Hasbro is a large company with many resources. If it truly believed that mineralogy or crystallology texts dating from the 1800's are germane to game dice, it could have developed and disclosed these theories within the timeframe mandated by the Federal Rules and the Court's Scheduling Order, or sought relief to supplement its disclosures in advance of briefing and arguing of dispositive motions. Hasbro, however, did neither.

Again, Hasbro fails to tell the Court exactly when it learned of this information. Although Hasbro claims it "discovered" the mineralogy or crystallology texts after discovery closed, discovery closed fifteen months ago. If Hasbro had this information months ago, it should have raised these issues then.

Moreover, Hasbro overstates the significance of the mineral and crystalline structure drawings. The drawings of natural crystal structures do not anticipate claims to a specific shape of die as Hasbro claims. A patent claims is anticipated under 35 U.S.C. §102 only if each and every claim limitation is disclosed in a single prior art reference. *Transclean Corp. v. Bridgewood Serv., Inc.*, 290 F.3d 1364, 1370 (Fed. Cir. 2002). All the claims of Bowling's patent are to a die. (Ex. E at Col. 7-10.) None of the drawings of mineral structures Hasbro relies on discloses a die. Additionally, one cannot tell from the mineral structure drawings whether they are symmetrical, i.e. the shape of *all* the facets, or whether the facets are the same size. Therefore, they cannot anticipate the claims of Bowling's patent.

Hasbro is also incorrect that these drawings of mineral and crystalline structures render Bowling's patent claims obvious under 35 U.S.C. §103(a). Drawings of various crystalline shapes are not relevant or analogous art. Courts look at two criteria to determine whether a prior art reference is analogous art that should be considered: (1) whether the art is from the same field of endeavor, regardless of the problem addressed; and (2) if the reference is not within the field of the inventor's endeavor, whether the reference still is reasonable pertinent to the particular problem with which the inventor is involved. *In Re Clay*, 966 F.2d 656, 658-59 (Fed. Cir. 1992). Drawings of mineral or crystalline structures have nothing to do with dice and are not reasonably pertinent to creating random number generators.

Hasbro's brief illustrates the point. Not one of the patents cited in Hasbro's brief (or cited in Hasbro's reexamination request or reviewed in preparation for this opposition) references mineral or crystalline structures as prior art. (Ex. F.) With respect to these patents, neither the patent applicants nor the patent examiners referenced crystals or minerals as prior art to game dice inventions. Hasbro's brief demonstrates that the Patent Office has granted patents on dice

shapes although similar crystalline shapes existed in books years before the patents were filed. Below are allowed dice patents next to published crystal or mineral structures:




(Hasbro's Brief at 10)




(Hasbro's Brief at 12)

Other examples exist as well:



(Ex. G at Pl XI, Fig.5; Ex. H at Figs. 1 and 2.)

**C. *KSR* Does Not Help Hasbro.**

Hasbro's argument that the recent Supreme Court decision in *KSR Int'l v. Teleflex*, 550 U.S. __, 127 S. Ct. 1727, 1734 (2007) supports its obviousness position is wrong. First, the Supreme Court's decision in *KSR* recently affirmed the obviousness test set fourth over forty years ago in *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1 (1966). *KSR*, 127 S. Ct. at 1734; *Takeda Chem. Indus, Ltd v. Alphapharm Pty., Ltd*, No. 06-1329, 2007 U.S. App. LEXIS 15349 at *10 (Fed. Cir. June 28, 2007) (Ex. I.) Hasbro could have raised these same contentions under the *Graham* test that did and still does control the obviousness inquiry. *Id.*

Hasbro's argument that it would have been obvious to construct Bowling's claimed die out of the various mineral and crystalline teachings is also meritless. Hasbro provides the Court

with only two pages from the books illustrating mineral and crystalline structures.[1] Even if a dice designer looked at mineral and crystalline structures in designing dice, there are literally millions of different shapes to choose from with no guidance to choose the shapes that Hasbro alleges are similar to Bowling's claimed die. *See Takeda Chem. Indus.*, 2007 U.S. App. LEXIS 15349 at *10 (finding an invention not obvious to try where the prior art disclosed a broad selection of compounds that might work) (Ex. I.)

Hasbro's argument is based on impermissible hindsight—using Bowling's patent as a blue print to select portions from millions of mineral and crystalline structures to recreate Bowling's novel die. *Interconnect Planning Corp. v. Band Sys., Inc.*, 774 F.2d 1132, 1143 (Fed. Cir. 1985) (stating where "prior art references require selective combination by the court to render obvious a subsequent invention, there must be some reason for the combination other than the hindsight gleaned from the invention itself."). If Bowling's invention was so obvious, why did no one create a die like Bowling's in the almost 200 years these mineralogy books have been in print?

**D. The Factors Considered In Determining Whether To Stay Litigation Weigh Decidedly Against Staying This Case.**

A court is under no obligation to delay its own proceedings by yielding to the PTO reexaminations. *Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001). "Where such a stay could result in a tactical advantage to one party over the other, this Court will not employ its discretion to stay the ordinary course of its proceedings." *E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.*, 711 F. Supp. 1205, 1208 (D. Del. 1989); *Cognex Corp. v. Nat'l Instr. Corp.*, No. 00-442, 2001 U.S. Dist. LEXIS 25555, at *8 (D. Del. June 29, 2001) (court should decline motion for stay in case where stay will forestall imminent trial date) (Ex. J.) The decision to grant or deny a stay rests within the Court's broad range of discretionary

[1] In reality, the books contain at least 57 pages illustrating mineral and crystalline structures. (Ex. G.)

powers. *Viskase Corp.*, 261 F.3d at 1328. That discretion is guided, however, by several considerations, including the prospect that a stay may be requested for the purpose of delay and providing the movant with an unfair tactical advantage. That discretion should also be guided by the Federal Rules, which are "construed and administered to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1.

District courts consider the following factors in determining whether to grant or deny a stay of litigation pending reexamination proceedings: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question in the trial of the case; and (3) whether discovery is complete and whether a trial date has been set. *See Cognex*, 2001 U.S. Dist. LEXIS 25555, at *3-*4 (Ex. J) *St. Clair Intellectual Property Consultants, Inc. v. Sony Corp.*, No. 01-557, 2003 U.S. Dist LEXIS 27397, at *3 (D. Del. Jan. 20,2003) (Ex. K); *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406-07 (W.D.N.Y. 1999). Each of these factors weighs heavily against granting a stay.

**1. A stay would unduly prejudice and present a clear tactical disadvantage to Bowling.**

A stay in this case will prejudice Bowling and presents a clear tactical disadvantage to him because it would delay his day in court and add unnecessary expense. *See, e.g., DuPont,* 711 F. Supp. at 1208 n.9; *Cognex*, 2001 U.S. Dist. LEXIS 25555 at *8 (finding that where a reexamination was requested late in a case any delay in the trial date would prejudice the non-moving party.) (Ex. J.) Hasbro must make out a clear case of hardship or inequity in being required to go forward with the litigation if there is *even a possibility* that Bowling will be harmed. *Imax Corp. v. In-Three, Inc.*, 385 F. Supp. 2d 1030, 1032 (D. Cal. 2005). Hasbro has no authority that supports its claim that "new" prior art supports granting a stay.

Discovery closed over fifteen months ago. Pretrial submissions were due June 29, 2007. (*See*, *infa*, fn. 2). The case was ready for trial. Courts almost uniformly find that granting a stay of litigation *after* discovery has concluded and the trial date has been set creates undue prejudice to the non-moving party. *Cognex.* 2001 U.S. Dist. LEXIS 25555, at *8 (Ex. J) ("given the late stage of [Defendant's] request, the Court finds that any delay from the October trial date at this late stage in the litigation would necessarily prejudice [Plaintiff]."); *St. Clair Intellectual Property Consultants*, 2003 U.S. Dist LEXIS 27397, at *5 (Ex. K) ("discovery is complete and the trial date weeks away and therefore, the delay that will result while the reexamination proceedings go forward will unduly prejudice St. Clair in the presentation of its case"); *Implant Innovations, Inc.* v. *Nobelpharma AB*, No. 93-7489, 1994 U.S. Dist. LEXIS 2033, at *9-*10 (N.D. Ill. Feb. 25, 1994) (Ex. L) (same); *Enprotech Corp. v. Autotech Corp.*, 15 U.S.P.Q.2d 1319, 1320 (N.D. Ill. 1990) (same); *Xerox*, 69 F. Supp.2d at 406 (same); *San Giacomo* N.A., *Ltd* v. *Pilliod Furniture, Inc.*, No. 95-00739, 1996 US. Dist. LEXIS 14440, at *5 (M.D.N.C. Aug. 13, 1996) (Ex. M) (same); *Agar Corp* v. *Multi-Fluid Inc.*, 983 F. Supp. 1126, 1128 (S.D. Tex. 1997) (same); *Wayne Automation Corp. v. R.A. Pearson Co.*, 782 F. Supp. 516, 519 (E.D. Wash. 1991) (same).

A stay of such a lengthy duration would severely and unfairly prejudice Michael Bowling, particularly given that he has already invested enormous time and resources in discovery, expert reports, summary judgment motions, claim construction, a hearing on inventorship, and in preparing his case for trial. The trial date of June 1, 2006, was already delayed once by Hasbro's "inventorship" arguments. If this case is stayed for a multi-year period, "witnesses may become unavailable, their memories may fade, and evidence may be lost while the PTO proceeding takes place." *Gladish* v *Tyco Toys, Inc*, U.S.P.Q.2d 1718 (E.D. Cal.

1993) (denying motion to stay); *Whatley v. Nike, Inc.*, 54 U.S.P.Q.2d 1124, 1125 (D. Or. 2000) (denying motion to stay, in part, out of concern for the "preservation of witness memories."); *Alltech, Inc. v. Cenzone Tech, Inc.*, No. 06-0153, 2007 U.S. Dist. LEXIS 19989 at *8 (S.D. Cal. March 21, 2007) (denying a stay in part because of the prejudice caused by loss of evidence and fading of memories) (Ex. N). In fact, Eileen Sefchick, the alleged designer of Hasbro's accused dice, has already left Hasbro's employ, and Bowling will not be able to compel her appearance at trial. Rather than have her appear in person for the jury to evaluate her credibility, the jury will have to settle for watching her deposition.

Hasbro asserts that Bowling will not be unduly prejudiced by delaying his day in Court because the stay would be of limited duration as the PTO purportedly reexamines patents "with special dispatch." (Hasbro's Brief at 22.) Hasbro also contends that the prejudice to Bowling of delaying his day in Court will not be undue because "royalty damages would fully compensate any harm done during the stay." (*Id*. at 23.)

First, a quick resolution of the reexamination proceedings is highly unlikely. If the requested reexamination is granted by the PTO, it is unlikely that there will be final decisions on the issues involved in the proceeding for several years—possibly longer. Indeed, some courts have found that the expected duration of a typical reexamination proceeding (on average, 19-20 months for an *ex parte* proceeding, *excluding* the time for appeals) may be too long to justify a stay of litigation. *See, e.g.*, *Cognex*, 2001 U.S. Dist. LEXIS 25555, at *6 (Ex. J) (denying motion to stay, discovery was near conclusion and a trial date was scheduled; moreover, "median reexamination time is 16 months .... the trial in this case will likely be completed prior to any action by the PTO"); *Rohm and Haas Co.* v. *Brotech Corp.*, 24 U.S.P.Q.2d 1369, (D. Del. 1992) (although court initially stayed litigation pending outcome of reexamination, when the case was

assigned to a new judge, the stay was lifted primarily to comply with the speedy trial provisions of the Civil Justice Reform Act); *Whatley*, 54 U.S.P.Q.2d 1at 1126 (denying the stay because case had been pending for almost two years, discovery had been extensive and the average time for a reexamination, not including any appeal, is 19.2 months); *Xerox*, 69 F. Supp.2d at 407 (same); *Remington Arms Co., Inc. v. Modern Muzzleloading, Inc.*, No. 97-00660, 1998 U.S. Dist. LEXIS 21526, at *4 n.2 (M.D.N.C. Dec. 17, 1998) (Ex. O) (same); *NTP, Inc. v. Research in Motion, Ltd.*, 397 F. Supp.2d 785, 788 (E.D. Va. 2005) (same); *see also, In re Am. Academy of Science Tech. Center*, 367 F.3d 1359 (Fed. Cir. 2004) (affirming the PTO Board's claim construction in a reexamination where, after numerous rehearing requests and appeals, the PTO's findings were not confirmed until ten years after the reexamination was first requested). Thus, contrary to Hasbro's representations, if the requested reexaminations are granted by the PTO, it will likely take years before they are finally resolved.

For this Court to stay this litigation pending resolution of the requested reexaminations (which the PTO has not yet granted) could place this action and the parties in limbo for years to come. Hasbro contends that Bowling would suffer no prejudice during this time because "royalty damages will fully compensate any harm done." (Hasbro's Brief at 23.) That does not account for the difficulty in proving its case because of lost evidence, faded memories, and unavailable witnesses. Moreover, that argument may have some truth when both sides are well funded corporations, but Michael Bowling is an individual with limited resources. Should this case be stayed pending reexamination, Hasbro could continue to file reexamination after reexamination with the PTO effectively precluding Bowling from his day in court.

For all of these reasons, a multi-year stay of this litigation would result in undue prejudice to Bowling, much of which could not be remedied by a money judgment.

**2. The reexamination, if granted by the PTO, is unlikely to narrow the issues for trial.**

Hasbro has not withdrawn its copyright claim, which is unaffected by the reexamination request and thus can go forward. Hasbro's counterclaim for copyright infringement and declaratory judgment of non-infringement cannot be resolved through reexamination. In situations such as these, in which reexamination will not resolve all of the issues involved in the litigation, courts have often denied motions to stay. *See, e.g.*, *Cognex Corp.*, 2001 U.S. Dist. LEXIS 25555 at *5 (rejecting an argument that reexamination will greatly simplify issues when there remains other claims of copyright infringement) (Ex. J); *Gladish*, 29 U.S.P.Q.2d at 1720 (denying a motion to stay where several issues, including (1) issues of invalidity that did not fall into the narrow categories the PTO considers on a request for reexamination, (2) issues of infringement, and (3) the issue of whether the case was exceptional, would remain unless all claims of the patent were cancelled as a result of reexamination); *Imax*, 385 F. Supp. at 1033 (denying stay in part because "[e]ven if the PTO eliminates all of the claims of the 294 Patent, which is statistically unlikely, the court must still address In-Three's counterclaims).

Additionally, reexamination is a circumscribed procedure, limited to patent validity under 35 U.S.C. §§ 102 and 103 based only upon analyzing prior art patents and printed publications. 35 U.S.C. § 302; 37 C.F.R. § 1.552(a), (c). Thus, in this case, although the requested reexamination may (if the Court allows) involve some of the same issues presented in defendant's affirmative defenses that the patent-in-suit is invalid, the reexamination, even if granted by the PTO, cannot resolve the Defendant's other affirmative defenses, i.e., invalidity under 35 U.S.C. § 112 (Amended Answer and Counterclaim at First Affirmative Defense), waiver, laches and/or estoppel (*Id.* at Second Affirmative Defense), and non-infringement (*Id.* at Eighth Affirmative Defense).

Even if the PTO grants the reexamination, it is unlikely to narrow the issues for trial. Hasbro's papers do not disclose that 90% of all *ex parte* reexaminations result in confirming the patentability of at least some of the reexamined patent's original claims. *See* PTO's Ex Parte Reexamination Filing Data at ¶ 8 (Ex. P); *Hoechst Celanese Corp v. B.P. Chemical, Ltd.*, 78 F.3d 1575, 1584 n.2. (Fed. Cir. 1996). As shown above, Hasbro's "new" prior art is either cumulative to what was before the PTO or irrelevant to dice. There is a reasonable expectation that the reexamination, if granted, will result in confirming the patentability of Bowling's claims.

Hasbro further argues that it would be unfair to allow the PTO to evaluate validity of its "new" evidence while precluding it from the jury because of the potential for inconsistent results. The possibility that the PTO and the jury might come to different conclusions does not support a stay. "The two forums take different approaches in determining validity and on the same evidence could quite correctly come to different conclusions." *Chrysler Motors Corp. v. Auto Body Panels of Ohio*, No. 89-393, 1990 U.S. Dist. LEXIS 644, at *3-*4 (S.D. Ohio Jan. 22, 1990) (Ex. Q.) Courts recognize that "although there is the possibility that the defendant will be subjected to conflicting results in the parallel proceedings before this Court and the PTO, the danger is 'more apparent than real.'" *Id*. at 408 (citations omitted). That is because in court the party asserting invalidity must establish invalidity by clear and convincing evidence. *Id*. In the PTO, however, invalidity need only be shown by a preponderance of the evidence.

In addition, the PTO considers validity on a different record than the courts. *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1428 (Fed. Cir. 1998). For example, the PTO, on reexamination, considers only patents and printed publications, whereas the Court may also consider other types of prior art. Additionally, the PTO interprets the claims differently than the court. The PTO reviews the claims for validity using the broadest reasonable interpretation of the claim, whereas

the Court's construe claims *de novo*, as understood by one of ordinary skill in the art. *SRAM Corp. v. AD-II Eng'g, Inc.*, 465 F.3d 1351, 1359 (Fed. Cir. 2006). Thus, in any patent infringement case there exists the chance that the patent could later be held invalid and quite probably on a different record.

The existence of a substantial number of issues that will remain for the Court to resolve here even after the PTO completes the reexamination suggests strongly that the requested stay is unlikely to result in any significant judicial economies or efficiencies. Moreover, allowing Hasbro to file a reexamination request in the eleventh-hour to add dozens of new contentions in the litigation would reward such litigation tactics and further complicate this case. *See Xerox*, 69 F. Supp. 2d at 407 (stating that parties should not be permitted to abuse the reexamination process by applying for reexamination after protracted, expensive discovery or trial preparation). The most efficient thing that this Court can do is to let this case proceed to trial such that both parties can have their day in court. As at least one court has found in denying a motion to stay pending reexamination, it is not reexaminations that result in judicial economies and efficiencies, but rather, it is "[f]irm trial settings [that] resolve cases and reduce litigation costs." *Soverain Software v. Amazon.com, Inc.*, 356 F. Supp.2d 660, 663 (E.D. Tex. 2005).

**3. That discovery closed over one year ago, dispositive motions are resolved, and the case is ready for trial weighs heavily against a stay.**

Courts are less likely to grant stays when the reexamination request is filed late in the litigation. *Alltech*, 2007 U.S. Dist. LEXIS 19989 at *8 (Ex. N). Discovery closed more than fifteen months ago. Dispositive motions have been briefed, argued, and ruled upon. The Court has heard and ruled on claim construction. Pretrial submissions were due on June 29, 2007, until Hasbro's counsel requested they be suspended under the guise of "narrowing the scope" of the

parties pretrial memoranda.[2] (*See* Docket No. 98.) This factor, like the above factors, weighs strongly against staying this case.

**E. Hasbro's Alternative Request To Reopen Expert Discovery To Present Its New Contentions Should Also Be Denied And Its New Contentions Should Be Excluded From Trial.**

Expert discovery should not be reopened and Hasbro should be precluded from raising any of its new invalidity contentions because it is too late and it would harm Michael Bowling. Bowling served its first set of interrogatories on Hasbro on September 16, 2005, which requested "all facts and reasons for Hasbro's contention that [Bowling's] patent is invalid." (Ex. S.) Hasbro responded alleging that Bowling's patent was invalid because of Bowling's prior public use of the invention. (Ex. A.) Hasbro did not claim that Bowling's patent was invalid over the prior art. On January 17, 2006, Bowling took the 30(b)(6) deposition of Hasbro seeking Hasbro's invalidity contentions. (Ex. T at 86:23-88:10.) During that deposition, Hasbro's designee, Kurt Benson, a patent lawyer of 25 years, admitted, on behalf of Hasbro, that Hasbro's only basis for concluding that Bowling's patent may be invalid is Bowling's alleged prior use. (*Id.*) Mr. Benson confirmed that Hasbro had no other invalidity contentions. (*Id.*) Bowling prepared his case relying on these admissions. Fact discovery closed on April 20, 2006.

---

[2] Hasbro misrepresented its intentions to suspend the date to file pretrial submissions in tactical maneuvering to place it in a better position to request a stay of the proceedings. Hasbro's counsel contacted Bowling's counsel requesting that Bowling agree not to oppose a motion to suspend filing of the pretrial memoranda, which was due on June 29, 2007. Hasbro's counsel represented that it made sense to prepare the pretrial memoranda after the scheduled chambers conference on July 13, 2007, as it would likely narrow the issues. As a professional courtesy to Hasbro, Bowling's counsel agreed. On June 22, 2007, Hasbro filed an unopposed motion to suspend the deadline to file pretrial memoranda. (*See* Court Docket No. 98) On June 26, 2007, at 10:42 a.m. Central Standard Time the Court granted Hasbro's motion to suspend filing of the pretrial memoranda pending the chambers conference. (*See* June 26, 2007 Text Order.) Fifteen minutes later Hasbro supplemented its interrogatory response adding dozens of new prior art references and invalidity contentions. (Ex. R.)

Hasbro never informed Bowling's counsel that it intended to supplement its interrogatory responses adding "newly discovered" art and dozens of new invalidity contentions. Moreover, Hasbro never informed Bowling's counsel that it intended to file a reexamination of Bowling’s patent and request a stay. Had Hasbro's counsel been forthright with Bowling's counsel it would have opposed Hasbro's motion to suspend the pretrial filings and kept this case on track for trial.

Hasbro remained silent for more than a year. On June 26, 2007, on the eve of trial, Hasbro amended its interrogatory responses to add dozens of new invalidity contentions. (Ex. R.) Hasbro's new contentions redefine the case from one that had no obviousness or anticipation arguments into one with dozens. Hasbro adds these new contentions more than a year after discovery closed, after expert reports and depositions were complete, after dispositive motions were ruled on, after the Court's claim construction issued, and on the eve of trial. Hasbro's attempt to ambush Bowling with these new invalidity contentions should be rejected.

Rule 26(e)(2) requires a party to *seasonably* amend a prior response to an interrogatory if the party learns that the response is in some material respect *incomplete or incorrect*. Fed. R. Civ. P. 26(e)(2). The duty to supplement is intended to benefit the recipient of the earlier disclosure by correcting misinformation or omission in the prior disclosure. *See Presstek, Inc. v. Creo, Inc.*, No. 05-65, 2007 U.S. Dist. LEXIS 24170, at *13 (D.N.H. March 30, 2007) (Ex. U). It does not allow a party to add new contentions under the pretext of supplementation. *See Id*. at *13-*16. Rule 26(e) exists to protect *recipients* of information; it is "not designed to give producing parties a way to avoid agreed-upon discovery deadlines." *Id*. at *15.

Rule 37(c) precludes a party from using evidence at trial, who, without substantial justification, fails to disclose information required by Rule 26(e)(2), unless such failure is harmless. Fed. R. Civ. P. 37(c)(1). "The First Circuit has recognized that 'the required sanction in the ordinary case [for a late disclosure in violation of Rule 37] is *mandatory preclusion*.'" *Id*. at *16 (citations omitted) (emphasis added). Hasbro's untimely disclosure is not substantially justified or harmless. As shown above, Bowling is severely harmed by Hasbro's untimely disclosure in having to deal with dozens of new invalidity contentions on the eve of trial after having taken discovery and prepared his case based on Hasbro's admission that there was no

other prior art. To go back now, on the eve of trial, and redo expert discovery would be an extreme burden on Bowling.

Hasbro also does not have any substantial justification for its untimely disclosures. Hasbro was aware of Bowling's patent in 1999 and knew that validity was an issue. It had over *seven years* to search for prior art. In fact, Hasbro knew about the '487 patent in 1999, yet failed to disclose it or its invalidity contentions until over fifteen months after discovery closed. Regarding Hasbro's other "new" prior art, Hasbro only claims that it "discovered" it after discovery closed. However, discovery has been closed for over fifteen months. Hasbro fails to tell the court exactly when it knew of this information. Presumably Hasbro has had this information for many months and chose to disclose it at the last minute to cause delay and to prejudice Bowling's ability to prepare its case. *See Havenfield Corp. v. H & R Block, Inc.*, 509 F.2d at 1272 (precluding evidence as not seasonably supplemented where the party waited about 4 months to supplement its answers). To claim that 35 U.S.C. §282 allows Hasbro to ambush Bowling with this new art ignores its discovery duties. Rule 26(e)(2). *Transclean Corp. v. Bridgewood Serv., Inc.*, 101 F. Supp. 2d 788, 796-798 (D. Minn. 2000) (excluding prior art in a §282 notice because it was not produced in response to discovery requests).

The cases Hasbro cites for the proposition that courts "uniformly allow the evidence [in the reexaminations] to be present at trial," have nothing to do with excluding evidence based on untimely disclosure. (See Hasbro's brief at 27-28.) None of the cases cited by Hasbro states that a party may inject untimely disclosed prior art and contentions simply because they are the basis for a reexamination request. In fact, *In re Columbia* explicitly states that the "courts and PTO may properly reach different conclusions on the same evidence" and a court may "consider different *or* additional evidence." *In re Columbia Univ. Pat. Litig.*, 330 F. Supp.2d 12, 15 (D.

Mass. 2004) (emphasis added). Crediting Hasbro's position would be an invitation for parties to withhold their prior art and invalidity contentions until after discovery closed, file a reexamination request and ambush the opposing party. Such tactics are prohibited by the Federal Rules.

It follows that expert discovery should not be reopened. Hasbro's request to reopen expert discovery is a request to modify the Court's Scheduling Order under Rule 16(b). A scheduling order shall not be modified except for *good cause*. *Id*. This "good cause" standard primarily considers the diligence of the party requesting the amendment. *Bleek v. Supervalue, Inc.*, 95 F. Supp.2d 1118, 1120 (D. Mo. 2000). Hasbro has shown no cause, let alone good cause. The inquiry's focus is on the moving party's reason for seeking to reopen discovery. *Id*. If that party was not diligent, the inquiry should end. *Id.* Waiting over seven years to find prior art is not diligent. A district court has wide discretion in its regulation of pretrial matters and its decision precluding the reopening of discovery is reviewed under the abuse of discretion standard. *Sil-Flo Inc., v. Noble Materials, Inc.*, 917 F.2d 1507, 1514 (10th Cir. 1990). In deciding whether to reopen discovery, courts consider the following factors: (1) whether trial is imminent; (2) whether the request is opposed; (3) whether the non-moving party would be prejudiced; (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court; (5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court; and (6) the likelihood that the discovery will lead to relevant evidence. *Id*.

Hasbro moves to reopen discovery to obtain another expert because its previous "dice expert" was disqualified and to proffer new invalidity contentions. "The fact that a testifying expert was disqualified is not good cause to amend the scheduling order to allow for a

replacement expert." *Moisenko v. Volkswagenwerk Aktiengesellschaft*, No. 96-49, 2000 U.S. Dist. LEXIS 3054, at *6 (W.D. Mich. March 9, 2000) (Ex. V.) Moreover, Hasbro had plenty of time to develop facts concerning invalidity and to retain the appropriate expert. Rather, Hasbro chose to rely on an "employee" expert so it did not have to prepare an expert report. Because Hasbro was not diligent, the inquiry should end.

The remaining factors also all weigh against reopening discovery. Trial is imminent. Bowling will be severely prejudiced as it—unlike Hasbro—has already retained one technical expert to prepare a report. If discovery is reopened Bowling will have to finance a new expert depending on the issues Hasbro raises. It will have to prepare another expert report and take and defend further expert depositions. Moreover, Hasbro will be rewarded by not having prepared a technical expert report earlier and now being able to prepare one with the benefit of all the information developed since discovery closed. Finally, if Hasbro is allowed to go back now and redo expert discovery, it will introduce contentions into this case that Bowling did not take expert discovery on because he relied on Hasbro's admissions. Hasbro's request to redo expert discovery because it is unhappy with the consequences of its choices should be rejected.

**CONCLUSION**

This Court should deny Hasbro's motion to stay this case or in the alternative to reopen expert discovery. All aspects of the case are complete and the case is ready for trial. Granting Hasbro's motion in any respect will severely prejudice Bowling and reward a willful infringer's litigation tactics to obtain a new expert, introduce new invalidity contentions and delay trial of this matter and ultimately avoid judgment.

Michael Bowling,
By His Attorneys,

Date: August 13, 2007

/s/ Thomas J. Leach
Thomas J. Leach, MN (*pro hac vice*)
MERCHANT & GOULD, P.C.
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Phone: 612.332.5300
Fax: 612.332.9081

Craig M. Scott, Esq. (#4237)
Christine K. Bush, Esq. (#5587)
DUFFY SWEENEY & SCOTT, LTD
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700
(401) 455-0701 (Facsimile)

**CERTIFICATE OF SERVICE**

TO:

Todd D. White, Esq.
Jeffrey K. Techentin, Esq.
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345

David K. S. Cornwell, Esq.
Tracey-Gene G. Durkin, Esq.
Sterne Kessler Goldstein & Fox P.L.L.C.
1100 New York Avenue N.W.
Washington, DC 20005

I hereby certify that the within Bowling's Memorandum in Opposition to Hasbro's Motion to Stay or, in the Alternative, for Leave to Re-Open Expert Discovery and Bowling's Motion to Exclude Hasbro's Untimely Contentions with Exhibits A-V were filed through the ECF system on the 13th day of August, 2007, and will be sent electronically to the above-named counsel who are registered participants identified on the Notice of Electronic Filing for Case No. 05-229S.

/s/ Thomas J. Leach__________