# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| MICHAEL BOWLING, a Resident of Arizona, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 05-229 S |
| HASBRO, INC., a Rhode Island Corporation, | : | |
| Defendant. | : | |

**HASBRO' OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES**

Pursuant to Rule 26 and Rule 33 of the Federal Rules of Civil Procedure, Defendant Hasbro, Inc. ("Hasbro") hereby responds to the Plaintiffs' First Set of Interrogatories (the "Interrogatories") as follows.

**GENERAL OBJECTIONS**

1. Hasbro objects to the Interrogatories, and the definitions and instructions contained therein, to the extent that they purport to expand upon Hasbro's obligations under the Federal Rules of Civil Procedure.

2. Hasbro objects to the Interrogatories, and the definitions and instructions contained therein, to the extent they seek the disclosure of information protected from discovery by the attorney-client privilege, the work product doctrine and any other applicable privilege or immunity.

3. Hasbro objects to the Interrogatories, and the definitions and instructions contained therein, to the extent that they are overly broad, unduly burdensome, and/or seek information not relevant to the claim or defense of any party to this action.

4. Hasbro objects to the Interrogatories, and the definitions and instructions

contained therein, to the extent that they request information that is as readily accessible to the Plaintiff as it is to Hasbro. Hasbro has no obligation to undertake any investigation for the Plaintiff.

5. Hasbro objects to the definition of "Describe" contained in the Interrogatories to the extent it seeks to require Hasbro to identify facts and documents "desirable to make such statement and/or description complete," as that definition is both vague and ambiguous. Hasbro cannot ascertain what information the Plaintiff might deem "desirable" in response to the Interrogatories.

6. Discovery in this case is ongoing. Hasbro reserves the right to supplement its responses and objections should additional information become available. These general objections are incorporated into each of the specific answers to the Interrogatories.

**SPECIFIC OBJECTIONS AND RESPONSES**

1. Describe all facts and reasons for Hasbro's contention that the '197 patent is invalid or unenforceable. For each reference or combination of references that Hasbro contends invalidates the '197 patent, specifically identify where each claim element is found in the reference or combination of references. The description should also include a full description of all facts supporting the contention, identification of any documents concerning the contention, and the identity of all persons with knowledge of facts concerning the contentions.

**RESPONSE:** Hasbro contends, upon information and belief, that the '197 patent is invalid and unenforceable as a result of the fact that the die designed by the plaintiff, and which ultimately was described in the '197 patent, had been in public use or on sale for more than one year prior to Mr. Bowling's application for the patent, and as a result of the fact that Mr. Bowling breached his duty of candor and good faith to the U.S. Patent and Trademark Office by making an affirmative misrepresentation of a material fact, and/or by failing to disclose material information, and/or by submitting false material information, coupled with an intent to deceive, specifically by failing to disclose the fact of prior public use of the plaintiff's die to the U.S. Patent and Trademark Office or affirmatively misrepresenting to the U.S. Patent and Trademark

Office the facts relating to the prior public use or sale of the die. Mr. Bowling, and possibly friends or colleagues of Mr. Bowling, have information relevant to this contention, which information will be the subject of discovery yet to be taken by Hasbro in this case. Hasbro expressly reserves the right to supplement its response to this Interrogatory based upon information gathered through the discovery process.

2. Describe all facts and reasons for Hasbro's contention that Hasbro's Accused Dice do not infringe any claim of the '197 patent, including how and why any claim limitation is not met either literally or under the doctrine of equivalents. To the extent that Hasbro construes any claim term different [*sic*] than its ordinary and customary meaning in view of the intrinsic evidence, please provide Hasbro's construction. The description should also include a full description of all facts supporting the contention, identification of any documents concerning the contention, and the identity of all persons with knowledge of facts concerning the contention.

**OBJECTION:** Hasbro objects to this Interrogatory on the grounds that it is overbroad and unduly burdensome and to the extent that it seeks information not relevant to any claim or defense of any party to this action. Hasbro does not know, because the Plaintiff has not identified, which claims of the '197 patent the Plaintiff contends Hasbro's Accused Dice infringe. The '197 patent consists of twenty distinct claims, many of which have no logical application to Hasbro's Accused Dice. For example, Claim 10 refers to a die with ten facets on the "extension member" of the die, and five facets on each of the "endcaps" of the die. To the extent the Interrogatory seeks an explanation of why Hasbro's dice do not infringe claims that the Plaintiff does not contend to have been infringed, such information is not relevant and, consistent with Rule 26 of the Federal Rules of Civil Procedure, not discoverable. Hasbro expressly reserves the right to supplement its response to this Interrogatory in the event the Plaintiff identifies the claims of the '197 patent that he contends to have been infringed by Hasbro.

3. Identify on a monthly basis, from January 1, 1998, to the present, the numbers of Accused Die [*sic*] Hasbro (1) manufactured; (2) purchased; and/or (3) sold, whether individually or included in a Game. If included in a Game, provide the Game's name, the number of Games sold, and the number of die [*sic*] included in the Game.

**RESPONSE:** Hasbro has never manufactured any Accused Dice. Hasbro purchased Accused Dice from two sources. Hasbro purchased dice for inclusion in its Monopoly Millennium Edition game (each of which included two dice) from a vendor in China (Tai Fat Bakelite Industrial Ltd.). Documents identifying the number of units purchased have been or will be produced and, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, the additional information regarding those dice sought by this Interrogatory may be obtained from those documents. As for sales of such dice, all of which occurred in connection with the sale of the Monopoly Millennium Edition game, documents identifying the number of units purchased have been or will be produced and, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, the additional information regarding those dice sought by this Interrogatory may be obtained from those documents.

Hasbro's subsidiary company Wizards of the Coast also purchased dice from the Plaintiff and/or his company, Crystal Caste, for resale at the Wizards of the Coast retail stores. Hasbro lacks knowledge or information regarding the number of units purchased, except that Wizards of the Coast inventory records reflected a total inventory of approximately 4,000 units on or about October 1, 2003. Hasbro has been unable to determine the total number of dice sold by Wizards of the Coast, and after a reasonable investigation, has found no information regarding the number of dice purchased or sold on a monthly basis. Wizards of the Coast no longer maintains any retail stores.

4. For the Accused Die [*sic*] and Games identified in response to Interrogatory No. 3, provide the following information about your sales of the Accused Die [*sic*] and Games, from January 1, 1998, to the present:

(a) the unit selling price;

(c)[*sic*]the total monetary amount received from the total units sold, on a monthly basis from January 1, 1998, forward;

(d) your current inventory, yearly average inventory and monthly average inventory since January 1, 1998, of Games and Accused Die [*sic*];

(e) to whom the sales were made (e.g., wholesalers, retailers, or end users);

(f) all manufacturing costs per Game and Accused Die, on an itemized

basis, including but not limited to:

(i) the cost of raw materials used;

(ii) labor costs for each stage of production; and

(iii) package and quality control costs;

(g) any research and development costs associated with developing and manufacturing or both on a per-unit basis and a monthly basis;

(h) selling costs per unit, including, but not limited to:

(i) advertising expenditures;

(ii) shipping costs; and

(iii) labor costs incidental to selling;

(i) per unit general expenses, and administrative expenses, or both, which in any way include or relate to the sale of the Games or the Accused Die;

(j) the amount of gross profit and net profit realized per unit; and

(k) the net profit margins.

**OBJECTION:** Hasbro objects to this Interrogatory on the grounds that it is overbroad and unduly burdensome and to the extent that it seeks information not relevant to any claim or defense of any party to this action, in that the Interrogatory seeks financial and other data entirely irrelevant to any issue of liability or damages.

**RESPONSE:** For the "Crystal Dice" purchased from the plaintiff or his company identified in response to Interrogatory No. 3, the dice had a retail price of $1.25, although Hasbro does not know that any or all of the dice sold for that amount. Hasbro does not know how much revenue was received from the sale of the dice, all of which sales would have been made to end users. Hasbro currently has no Crystal Dice in inventory. Hasbro has no information about the manufacturing costs of the Crystal Dice, which it purchased at wholesale from the plaintiff or his company for $0.64 per die. Hasbro also has no information regarding the amount of gross profit and net profit realized per unit or the net profit margins for the Crystal Dice.

With respect to the Accused Dice associated with the Monopoly Millennium Edition game, Hasbro purchased a total of 1,464,000 dice (732,000 pairs of dice). Of these 1,464,000 dice, approximately 1,292,000 dice were used in Monopoly Millennium Edition games that were sold by Hasbro (two dice in each of approximately 646,000 games). Approximately 295,792 of

these dice (in approximately 147,896 games) were sold prior to August 1, 1999 and therefore prior to the issuance of the '197 patent. A further approximately 639,392 of these dice (in approximately 319,696 games) were sold between August 1, 1999 and November 1, 1999, and therefore prior to Hasbro receiving actual notice of the plaintiff's patent on November 3, 1999. A further approximately 356,816, and no more than 368,000, dice (in approximately 178,408, or no more than 184,000, games) were sold after November 1, 1999 (*see* Response to Interrogatory No. 8). Of the total 646,000 games containing Accused Dice that were sold by Hasbro, 449,640 were sold at a wholesale price of $28.50 (the "Original Monopoly Millennium Edition"), and 196,360 were sold at a wholesale price of $9.50 (the "Alternate Monopoly Millennium Edition").

By way of further response, documents containing additional information responsive to this Interrogatory, including information relative to costs, from which profit margins might be derived, have been or will be produced and, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, additional information responsive to this Interrogatory may be derived from the records as produced. By way of further response, Hasbro states that it carried no running inventory of either the Original Monopoly Millennium Edition game or the Alternate Monopoly Millennium Edition game. Rather, Hasbro manufactured these products to order and shipped product upon manufacture. Other than samples of the dice, the Original Monopoly Millennium Edition game, and the Alternate Monopoly Millennium Edition game retained for business and litigation purposes, Hasbro has no inventory of these games or of the Accused Dice.

5. Identify the two most knowledgeable people working for or employed by Hasbro concerning the following

a.)[*sic*] the facts surrounding Hasbro's decision to sell the Accused Die or use the Accused die in its Monopoly Millennium Edition game or any other Game;

b) the facts surrounding Hasbro's decision to quit using or selling the Accused Die or Games;

c) any evaluation, analysis, study, consideration, or copying of Bowling's Patented Dice;

d) the manufacturing or purchase of Hasbro's Accused Die;

e) the marketing, advertising, and promotional activities related to Hasbro's

Accused Die or Games; and

f) sales, distribution, financial, and profit information regarding Hasbro's Accused Die or Games.

**OBJECTION:** Hasbro objects to this Interrogatory to the extent it seeks to compel Hasbro to identify "the two most knowledgeable people" with respect to the particular categories identified in the Interrogatory as that phrase is vague and ambiguous. Hasbro construes the interrogatory to seek the identity of two Hasbro personnel with relevant, direct, and discoverable knowledge about the defined categories, and responds accordingly.

**RESPONSE:** Dottie Echlin and Mike Hirtle, Hasbro Games Group, Hasbro, Inc.

6. Identify all dealers, suppliers, salespeople, retailers or distributors through whom Hasbro's Accused Die or Games have previously been or are presently being sold, offered for sale, or otherwise deposed [*sic*] of.

**OBJECTION:** Hasbro objects to this Interrogatory to the extent it seeks to require Hasbro to identify every salesperson involved in the sale of the Monopoly Millennium Edition Game, as that information is not relevant to any claim or defense of any party to this litigation.

**RESPONSE:** Hasbro did not sell either the Original Monopoly Millennium Edition game or the Alternate Monopoly Millennium Edition game through dealers, suppliers, or distributors, but rather sold the games directly to retailers. Documents containing information responsive to this Interrogatory have been or will be produced and, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, additional information responsive to this Interrogatory may be derived from the records as produced. Hasbro expressly reserves the right to supplement its response to this Interrogatory based upon information gathered through the discovery process.

7. State the date and circumstances when Hasbro first became aware of the following: (1) Bowling or Crystal Caste, (2) the Patented Dice, and (3) the '197 patent. The response should identify all documents concerning such facts and all persons knowledgeable about such facts.

**RESPONSE:** Hasbro first became aware of Bowling and the Patented Dice upon

seeing his display at GenCon 1999, in August of 1999 (although at that time, the "Patented Dice" were not yet patented). Mike Gray, of the Hasbro Games Group, is knowledgeable about those circumstances. Hasbro first became aware of the '197 patent in late August or early September 1999, upon Marilyn Adams's review of the Official Gazette – Patents that included the '197 patent. Marilyn Adams, formerly of Hasbro, and Kurt Benson of Hasbro have knowledge of these events.

8. Describe all facts and reasons why Hasbro believes its sale of the Accused Die or Games do not [*sic*] constitute willful infringement of the '197 patent, including the following

a) Identify all documents within the possession, custody, or control of Hasbro relating to any opinion of counsel regarding the '197; and

b) Identify all persons with knowledge relating to the answer to this interrogatory.

**RESPONSE:** Hasbro did not willfully infringe the '197 patent. To the contrary, Hasbro took reasonable steps (a) to discover the existence of the patent, and upon such discovery (b) to ensure that Hasbro did not infringe the patent. Specifically, Hasbro's personnel followed standard procedures to review recently-issued patents in the Official Gazette – Patents, published by the United States Patent and Trademark Office. Prior to the issuance of the '197 patent, Hasbro had no information that a patent application had been filed or that a patent was pending on the plaintiff's dice. Hasbro had developed dice with characteristics similar to the plaintiff's "Patented Dice," and had included such dice in its Monopoly Millenium Edition games for several months before the plaintiff received his patent.

Once the patent issued on August 17, 1999, Hasbro independently discovered the patent through its review of the Official Gazette – Patents. Hasbro thereafter (1) ordered the file history from the U.S. Patent and Trademark Office; and (2) undertook to contact the plaintiff to negotiate a licensing deal under which Hasbro would be able to continue to include the dice in its Monopoly Millenium Edition Games (which Hasbro had been selling before the patent issued) and under which the plaintiff would be compensated reasonably for his intellectual property.

Despite Hasbro offering a royalty amounting to approximately 80% of the cost of the dice, the plaintiff refused to enter into a licensing agreement with Hasbro. Once Hasbro concluded that no mutually-acceptable licensing deal could be agreed upon (a conclusion that it reached within a matter of weeks of the issuance of the patent) Hasbro immediately undertook to cease distribution of the Monopoly Millennium Edition games containing dice that the plaintiff contends to be infringing on the '197 patent and ordered an investigation into the validity of the patent.

To that end, Hasbro voluntarily committed enormous resources, and significant money, towards not infringing on the '197 patent, including obtaining traditional dice to replace the dice in the games and placing them in the games, designing and applying changes to the packaging to reflect the fact that the dice would not be included in the game, editing television commercials that had highlighted Hasbro's dice, and destroying dice that had been produced but not used. Far from willfully infringing, Hasbro spent nearly $70,000 in order not to infringe on the plaintiff's patent.

Despite these good faith efforts, a number of Monopoly Millennium Edition games were distributed after Hasbro received actual notice of the '197 patent on November 3, 1999. Specifically, Hasbro delivered an order of approximately 178,408, but no more than 184,000, games to Avon that contained dice that the plaintiff contends infringe the '197 patent. Hasbro's release of this order despite its significant efforts to avoid further shipment of games with the allegedly infringing dice was entirely accidental. Indeed, had Hasbro intended to continue to sell product containing the allegedly infringing dice, it would have been more lucrative to release a significant quantity of the original Millenium Edition games, which sold for $28.50, as opposed to the less expensive Avon product, which sold for only $9.50. Of course, if Hasbro had actually intended to knowingly violate the plaintiff's patent, it could have (1) not contacted the plaintiff in an attempt to reach a mutually-acceptable licensing arrangement; (2) not changed the dice used

in its games; (3) not destroyed the dice that had not yet been used; (4) not altered its packaging; (5) not changed its television commercials; and, of course, (6) continued to sell games that contained the allegedly infringing dice. It did none of these things because Hasbro did not intend, in any way, to infringe on the plaintiff's patent.

Mike Hirtle and Dottie Echlin, of the Hasbro Games Group, and Kurt Benson, of Hasbro, each have knowledge of the facts responsive to this Interrogatory.

9. Identify all dice, if any, that Hasbro contends constitute acceptable, non-infringing substitutes to the invention disclosed and claimed in the '197 patent, and identify all persons with knowledge of facts that relate to this contention.

**RESPONSE:** Any traditional six-sided die (roughly in the form of a cube) would constitute an acceptable, non-infringing substitute for the invention described in the '197 patent. The invention embodied in the '197 patent consists of bringing a new form to an ancient object: a device for generating a random number from one to six, inclusive. That function is accomplished equally well by any of (1) the plaintiff's "Crystal Dice"; (2) the dice included in the Monopoly Millennium Edition games; and (3) the dice with which virtually every child and adult in America is familiar and that Hasbro has included in the millions of other Monopoly games it has sold. Indeed, the '197 patent is entitled "RANDOM NUMBER GENERATOR FOR GAME PLAYING," which is precisely the function served by traditional six-sided dice.

Mike Hirtle and Dottie Echlin, of the Hasbro Games Group, and the plaintiff, Michael Bowling, each have knowledge of the facts responsive to this Interrogatory.

10. Identify the copyrighted works believed to be infringed, including the physical miniature figures Hasbro sells that are covered by Hasbro's copyrights.

**RESPONSE:** Michael Bowling infringed Hasbro's copyrights in the visual depictions and physical renditions of its "Mind Flayer," "Beholder," and "Cockatrice" figures, each of which either constitutes or has been included in numerous copyrighted works belonging

to Hasbro. These works include both registered and unregistered copyrights. Hasbro has produced, in documentary form, a representative sample of the works that include the copyrighted material. As to the registered copyrights, *see, e.g.*, Copyright Registration Nos. TX-5-817-950; TX-2-191-165; TX-2-653-882; TX-2-818-515; TX-3-223-879; TX-4-143-286; TX-4-375-067; TX-4-334-621; TX-4-334-620; VA-1-126-351; TX-1-314-910; TX-3-643-953; TX-4-182-004; TX-5-364-554; TX-6-001-623; VA-934-193; VA-941-205; VA-954-938; VA-1-130-842; and VA-1-290-942. Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, additional information responsive to this Interrogatory may be derived from the records as produced.

11. State the amount of actual damages Hasbro contends is caused by Bowling's alleged copyright infringement, and identify all documents concerning that contention and all persons with knowledge regarding that contention.

**RESPONSE:** Hasbro does not yet know with certainty what damages it has suffered as a result of Bowling's violation of Hasbro's copyrights. Information germane to Hasbro's damages estimation and valuation are in the exclusive possession of the plaintiff, who has yet to be deposed. By way of further response, Hasbro is entitled to statutory damages under the Copyright Act for Bowling's knowing, willful violation of Hasbro's copyrights. Hasbro expressly reserves the right to supplement its response to this Interrogatory based upon information gathered through the discovery process.

12. Identify all persons who prepared, assisted in the preparation of, or provided information for the answers to the foregoing interrogatories and Bowling's document requests.

**RESPONSE:** Christine Meehan and Kurt Benson, of Hasbro, and Dottie Echlin, of Hasbro Games Group.

I, Christine A. Meehan, am employed by Hasbro, Inc. as a paralegal in Hasbro, Inc.'s corporate counsel's office. I have assembled the information required to answer these interrogatories. Although I do not have personal knowledge of all the information contained herein, I am executing these Answers on behalf of Hasbro, Inc. and Hasbro International, Inc. I affirm my good faith basis as to the accuracy of the information so provided.

For the Plaintiffs, Hasbro, Inc. and
Hasbro International, Inc.

Christine A. Meehan

As to Objections for the Defendant

HASBRO, INC.
By its Attorneys,

Todd D. White (# 5943)
Jeffrey K. Techentin (#6651)
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
(401) 274-7200
Fax: (401) 751-0604/ 351-4607
Dated: November 28, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of November 2005, I caused a true copy of the within to be served on the following individuals in the manner indicated:

Craig M. Scott, Esq. (RI Bar No. 4237)
Christine K. Bush, Esq. (RI Bar No. 5587)
Duffy & Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903
**(by regular mail, postage prepaid)**

Of Counsel:

Douglas J. Williams, Esq.
Matthew A. Doscotch, Esq.
Law Firm of Merchant & Gould P.C.
3200 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402-2215
**(by Federal Express)**

*361201_1.doc*