# EXHIBIT R

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| MICHAEL BOWLING, a Resident of Arizona, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 05-229 S |
| HASBRO, INC., a Rhode Island Corporation, | : | |
| Defendant. | : | |

**HASBRO'S SECOND AMENDED OBJECTIONS AND RESPONSE TO PLAINTIFFS' FIRST SET OF INTERROGATORIES, INTERROGATORY NO. 1**

Pursuant to Rule 26 and Rule 33 of the Federal Rules of Civil Procedure, Defendant Hasbro, Inc. ("Hasbro") hereby amends its prior responses to the Plaintiffs' First Set of Interrogatories (the "Interrogatories") as follows.

**GENERAL OBJECTIONS**

1. Hasbro objects to the Interrogatories, and the definitions and instructions contained therein, to the extent that they purport to expand upon Hasbro's obligations under the Federal Rules of Civil Procedure.

2. Hasbro objects to the Interrogatories, and the definitions and instructions contained therein, to the extent they seek the disclosure of information protected from discovery by the attorney-client privilege, the work product doctrine and any other applicable privilege or immunity.

3. Hasbro objects to the Interrogatories, and the definitions and instructions contained therein, to the extent that they are overly broad, unduly burdensome, and/or seek information not relevant to the claim or defense of any party to this action.

4. Hasbro objects to the Interrogatories, and the definitions and instructions

contained therein, to the extent that they request information that is as readily accessible to the Plaintiff as it is to Hasbro. Hasbro has no obligation to undertake any investigation for the Plaintiff.

5. Hasbro objects to the definition of "Describe" contained in the Interrogatories to the extent it seeks to require Hasbro to identify facts and documents "desirable to make such statement and/or description complete," as that definition is both vague and ambiguous. Hasbro cannot ascertain what information the Plaintiff might deem "desirable" in response to the Interrogatories.

6. Hasbro reserves the right to supplement its responses and objections should additional information become available. These general objections are incorporated into each of the specific answers to the Interrogatories.

**SPECIFIC OBJECTIONS AND RESPONSES**

1. Describe all facts and reasons for Hasbro's contention that the '197 patent is invalid or unenforceable. For each reference or combination of references that Hasbro contends invalidates the '197 patent, specifically identify where each claim element is found in the reference or combination of references. The description should also include a full description of all facts supporting the contention, identification of any documents concerning the contention, and the identity of all persons with knowledge of facts concerning the contentions.

**RESPONSE:** Hasbro contends that the '197 patent is invalid and unenforceable as a result of the fact that the die construction claimed in the '197 patent, was invented either (a) individually by Albert Lizarraga and not the plaintiff, or (b) jointly by Albert Lizarraga and the plaintiff, and as a result of the fact that Mr. Bowling breached his duty of candor and good faith to the U.S. Patent and Trademark Office by making an affirmative misrepresentation of a material fact, and/or by failing to disclose material information, and/or by submitting false material information, coupled with an intent to deceive, specifically by failing to disclose the involvement of Albert Lizarraga in the invention of the subject matter of the '197 patent to the U.S. Patent and Trademark Office or affirmatively misrepresenting to the U.S. Patent and

Trademark Office the facts relating to the invention of the die. The patent is further unenforceable against Hasbro as a result of Hasbro's acquisition of Albert Lizarraga's rights in the invention. The plaintiff, his counsel, Albert Lizarraga, and Susan Lizarraga have information relevant to this contention.

Hasbro further contends that the plaintiff breached his duty of candor and good faith to the U.S. Patent and Trademark Office, and that the patent is invalid and/or unenforceable as a result, by virtue of the plaintiff's affirmative misrepresentation of a material fact and/or failure to disclose material information, and/or submission of false material information, coupled with an intent to deceive, specifically by representing to the U.S. Patent and Trademark Office the fact that the plaintiff had discovered material advantages in the use of the die construction claimed in the '197 patent, and by implication that the plaintiff had manufactured and tested the claimed die construction, when, in fact, the plaintiff had never produced any die in the form claimed in the patent, and therefore could not have performed any testing or other analysis upon which the plaintiff could make any representation regarding discovered advantages to the die construction. The plaintiff and his counsel have information relevant to this contention.

Hasbro further contends that at least claims 1 through 6, 10 through 12, 17, and 18 are invalid and unenforceable on the grounds that they are anticipated by U.S. Pat. No. 4,497,487 ("Chance Device") (the '487 patent). The '487 patent claims a game involving two twenty-sided dice and includes the following two figures to depict those dice in two-dimensional form:



FIG. 3



FIG. 4

According to the "Brief Description of the Drawings," these figures depict a "planar, diagrammatic embodiment of the invention." The fact that the representation is "planar" is also clear from the lines drawn across the edges of the flattened die, highlighted below:



The fact that these figures are planar, schematic representations of the dice disclosed in the '487 patent renders them distinct from the disclosure in U.S. Pat. No. 5,224,708 (issued to Gathman) (the '708 patent), despite the fact that the '708 patent employed a similar drawing to represent a schematic view of a twenty-sided die said to embody that invention. As the plaintiff is aware, the United States Patent and Trademark Office only allowed the '197 patent over the prior, Gathman patent upon an examiner's amendment to the effect that the extension member of the die construction claimed in the '197 patent would be comprised of facets having a surface area that is different from a surface area of the facets comprising the end caps. Based on the examiner's amendment, it is apparent that the examiner considered the '708 patent to disclose a twenty-sided die composed of twenty facets of identical shape and size (and therefore surface area). This conclusion is consistent with the express language of the '708 patent itself, which describes the dice as having "identically shaped flat surfaces" and which includes this same language in the claims. Each of the surfaces in Figure 3 of the '708 patent is properly

understood, and apparently was understood by the examiner, to be an equilateral triangle.

The disclosed die design in Figures 3 and 4 of the '487 patent is not composed of twenty equilateral triangles. Because the figure is planar, determination of the actual "shape" of the depicted facets may be readily accomplished through observation and measurement. In the '487 patent, the dice are shown as being composed of two distinct sets of faces: (1) ten identically-shaped faces, each of which is an equilateral triangle:



and (2) ten identically-shaped faces, each of which is an isosceles triangle arranged to form a regular pentagon:



This first set of faces constitutes the "extension member" in the parlance of the '197 patent, and the second set comprises the two "end caps." There can be no dispute regarding the fact that these two sets of faces have different surface areas. Each of the triangles on the "end caps" has an edge equal to the length of an edge of each of the "extension member" equilateral triangles, but the remaining two edges are shorter and the height of the "end cap" triangles is less than that of the "extension member" faces.

Because the '487 patent discloses polyhedral dice identical to the Gathman patent except that the surface area of the end cap facets is different from the surface area of the extension member facets, this disclosure anticipates at least claims 1 through 6, 10 through 12, 17, and 18 of the '197 patent, even as modified by the examiner's amendment.

Hasbro further contends that at least claims 1 through 9 and 16 through 19 of the '197 patent are invalid and unenforceable on the grounds that they are anticipated by, at a minimum,

the disclosures in François Sulpice Beudant, *Traité Élémentaire de Minéralogie*, v. 2 at Pl. 4 (2$^{d}$ Ed. Paris, Chez Verdière, 1832):




and Jacques Louis Comte de Bournon, *Traité Complet de la Chaux Carbonattée et de l'Arragonite*, v. 3 at Pl. 17 (London, William Phillips, 1808):




Other references from mineralogy and crystallography anticipate certain of the claims of the '197 patent. For example, James D. Dana, *Descriptive Mineralogy* (6th Ed., Edward S. Dana ed., New York, John Wiley & Sons 1909) at 651, anticipates claims 1, 2, 3, and 16 of the '197 patent, but does not reflect the limitation described in claim 4:



As a result, the Dana reference, but for the limitation in claim 4 and in claim 17(b)(iv) that the

extension member facets be "triangular-shaped," also discloses the subject matter of claims 5 through 9, and 17 through 19 of the '197 patent.

By contrast, other figures such as that disclosed in Ian Mercer, *Crystals* at 58 (Cambridge, Mass., Harvard Univ. Press 1990) show facets that are "triangular" in shape, even if not composed of a single triangle; these references therefore anticipate claims 1 through 9 and 16 through 19 of the '197 patent:



Models of crystals like the one depicted immediately above have been sold in the United States and elsewhere for more than 100 years for the study of crystallography, and remain commonplace in geology departments. The model depicted below, for example, is housed at the University of Rhode Island along with many dozens of other models; the one depicted here clearly anticipates at least claim 1 of the '197 patent[1]:

[1] The model depicted here does not have indicia on each of the faces of the object, and therefore does not anticipate claims 2 and 17 of the '197 patent and the corresponding dependent claims. However, it is common for such models to have indicia on each of their facets. For example, the following model from the Krantz series of crystal models shows numerical indicia on each of its faces (from Mercer, *Crystals* at 59):





In addition to the fact that the ’197 patent is invalid or unenforceable because the relevant claims are anticipated, each of the claims of the ’197 patent asserted to have been infringed by Hasbro are and, at the relevant time, would have been obvious to one skilled in the relevant art because they involve only “the simple substitution of one known element for another or the mere application of a known technique to a piece of prior art ready for the improvement.” *KSR Int’l v. Teleflex*, 550 U.S. ___, slip op. at 14 (Apr. 30, 2007).

In light of the close relationship of crystallography, the geometry of crystals, and the pertinent art of the design of dice, the plaintiff’s invention was obvious in light of the prior art at all relevant times. Identical or substantially identical structures are present in the prior art, particularly the prior art in the fields of dice design and crystallography, the differences between which and the claimed die design would be immediately surmounted by application of ordinary skill in the art of the design of dice. Such differences are limited to (1) in some cases, the use of indicia on “extension member” faces, (2) in some cases, the extension of the end caps to a pyramidal point, and (3) the extrapolation of the design of the dice to dice with different numbers of indicating faces. The solution of these differences would have been readily apparent to one with ordinary skill in the relevant arts.

The prior art is replete with representations of the same or substantially the same geometric forms as those claimed in the ’197 patent, including numerous representations of such figures in the context of crystallography and mineralogy.[2] *See* (in addition to the references

[2] The fields of solid geometry and crystallography are inextricably linked and have been for centuries. For

*supra*), *e.g.*, Delvalle Lowry, *Conversations on Mineralogy* (Philadelphia, Uriah Hunt, 1822), at figs. 192, 201, 202, and 203; and George H. Williams, *Elements of Crystallography* (3d Ed. New York, H. Holt & Co., 1892) at 127. One example common to the prior art is depicted below:



[3]

As can be readily seen, this art is identical to the claimed six-sided die construction in the ’197 patent except that the “end caps” are shortened, so that instead of a pyramidal shape, the ends have a sloped, then flattened shape:



Given such prior art, the claimed die construction in the ’197 patent would have been obvious to one of ordinary skill in the art of the design of dice, who would only have to apply well documented and commonly understood principles of dice design to yield the claimed invention in its entirety.

It is well known to those with ordinary skill in the arts of dice and the design of dice that dice for use in generating a variety of randomized outcomes may be formed of polyhedral figures known initially, and primarily, in the crystallographic and mineralogical areas. For example,

---

example, reference continues to be made to “Haüy constructions” of various geometric solids, referring to the process of constructing polyhedra by the accumulation of identical building blocks, a method explained by René Just Haüy in his *Essai d'une théorie sur la structure des crystals appliquée à plusieurs genres de substances crystallisées* (1784). *See, e.g.*, http://mathworld.wolfram.com/HauyConstruction.html.

[3] Bournon, *supra*, at Pl. 17.

many of the traditional shapes for polyhedral dice are, in addition to being known geometric figures, also well-known crystallographic figures. The cube, for instance, which is the basis of the most common six-sided dice, is known in geometry as a Platonic solid, but also in crystallography as the crystalline form of fluorite. Stylistic modifications to the basic cubic form for a six-sided die echo other crystal forms as well:


[4]

[5]

[6]

Likewise, the tetrahedron, commonly used as the basis for a four-sided die (and claimed as such in U.S. Pat. No. 3,208,754), is the basic crystal form of copper antimony sulfide (also known eponymously as tetrahedrite):


[7]


[8]

[9]

Diamond, among other substances, naturally crystallizes into a regular octahedron, its most common crystal habit and the basis of the common eight-sided die:

---

[4] M. Reeks, *Hints for Crystal Drawing* (New York, Longman, Greens & Co. 1908) at 25.

[5] F.S. Beudant, *Minéralogie* (Paris, Langlois & Leclercq 1851) at 22.

[6] U.S. Pat. No. 1,539,015.

[7] Beudant, *supra* at n. 5, at 23.

[8] Wm. Phillips, *An Elementary Introduction to Mineralogy* (Brooke and Miller, eds., London, Longman *et al*. 1852) at 13.

[9] http://www.dicecollector.com/D4_OPAQUE_SHARP_SOLID_DRAGON_1.jpg.



[10]

[11]

[12]

Closely related is the tetragonal bipyramid, similar in form but consisting of isosceles faces. This crystal form and the corresponding playing die are depicted immediately below:


[13]

[14]

Where the design of dice departs from the most common forms of polyhedral dice, and where the dice have other than four, six, eight, ten, twelve, and twenty sides, the form of dice becomes steadily more disconnected from common geometry while the connection between crystallography and dice design becomes almost seamless. The most common twelve-sided dice, for example, are formed of pentagonal dodecahedra, a form also called a "pyritohedron" based on the fact that this form is a crystal habit of the mineral pyrite.


[15]


[16]

[17]

---

[10] J. Müller, *Grundzüge der Krystallographie* (Braunschweig, Friedrich Vieweg & Sohn 1845) at 22.

[11] http://www.dicecollector.com/D8_OPAQUE_SHARP_SOLID_DIAMOND_DICE_01.jpg.

[12] U.S. Pat. No. 4,717,154.

[13] Edward S. Dana, *A Text-Book of Mineralogy* (New York, John Wiley & Sons 1908) at 60.

[14] http://www.dicecollector.com/D8_OPAQUE_SHARP_SOLID_TSR.jpg.

[15] James D. Dana, *Descriptive Mineralogy* (6th Ed., Edward S. Dana ed., New York, John Wiley & Sons 1909) at 85.

[16] U.S. Pat. No. 3,608,905.

Another well-known method of producing twelve-sided dice is to employ a rhombic, not pentagonal, dodecahedron, a shape known as the crystal form of garnets and other minerals.


[18]


[19]

[20]


[21]

[22]

A further method of producing dice with different numbers of sides (so long as the total number of sides is even) is based on the use of dipyramidal structures analogous to the octahedral diamond example, above. Twelve-sided dice can be (and have been) made in the form of a truncated hexagonal dipyramid, the crystal habit of Bucklandite.



[23]


[24]

As noted above, eight-sided dice can be (and have been) made of square, or tetragonal, bipyramids, the crystal habit of scheelite. Four-sided dice can be (and have been) made in the form of a tetragonal disphenoid, a crystal habit of chalcopyrite:

---

[17] http://www.dicecollector.com/D12_OPAQUE_ROUNDED_SOLID_1.jpg.

[18] Fredrick Accum, *Elements of Crystallography* (London, Longman, Hurst, Rees, Orme, and Brown, 1813) at Pl. II.

[19] U.S. Pat. No. 1,517,113.

[20] U.S. Pat. No. 3,904,208.

[21] http://www.dicecollector.com/D12_OPAQUE_SHARP_SOLID_5.jpg.

[22] http://www.dicecollector.com/D12_OPAQUE_ROUNDED_SOLID_BLACK_LOUVRE_EGYPTIAN_COPY.jpg.

[23] http://www.dicecollector.com/LOTTERY_07_ROLL_TO_RICHES.jpg.

[24] Dana, *supra* at n. 15, at 517.


[25]


[26]


[27]

Indeed, mineralogy has proved a great resource for dice design, whether directly or indirectly. One designer, at least, has created a six-sided die in the form of a tristetrahedron, known primarily as a crystal habit of the mineral sphalerite



[28]

[29]

Other six-sided dice have been made of hexagonal prisms (a crystal habit of calcite), which can be modified (to avoid the possibility of the die landing on the ends) by the addition of "end caps":


[30]

[31]

The use of "end caps" is common in the prior art. U.S. Pat. No. 5,150,900, for example, discloses rounded end caps on an octagonal prism die:

---

[25] Reeks, *supra* at n. 4, at 95.

[26] U.S. Pat. No. 4,346,900.

[27] http://www.dicecollector.com/D4_OPAQUE_ROUNDED_SWIRL_WEDGE.jpg.

[28] Edward S. Dana, *A Text-Book of Mineralogy* (New York, John Wiley & Sons 1908) at 48.

[29] http://www.dicecollector.com/PAPER_D06_MY_DESIGN_TRIAKIS_TETRAHEDRON_PIPPED.jpg.

[30] Dana, *supra* at n. 28, at 54.

[31] http://www.dicecollector.com/METAL_BRASS_D6_05.jpg.



FIG. 2

Utilizing pyramidal end caps, as the plaintiff did, on a prismatic die yields the crystal form of quartz[32]:

266.



[33]

In fact, this is apparently exactly what the plaintiff himself did in creating a "crystal"-shaped four-sided die for inclusion with his set of "crystal dice." He took a standard elongated cube and placed pyramidal "end caps" on the form in order to prevent the dice from landing on any but the four rectangular faces. The Plaintiff's die is virtually indistinguishable from the artwork created in the crystallographic context:

Fig. 349.



[34]



[35]

Such use of pyramidal end caps comprised of discrete facets is nothing new, but rather is present in the prior art involving the design of dice; and indeed, the use of pyramidal structures is itself suggested by the crystallographic prior art:

---

32 Edward S. Dana, *A Text-Book of Mineralogy* (New York, J. Wiley & Sons 1908) at 83.

33 Dana, *supra* at n. 28, at 83.

34 P. Groth, *Physikalische Krystallographie* (Leipzig, Wilhelm Engelmann 1905) at 427.

35 http://crystalcaste.com/mm5/graphics/00000001/011xxF.gif.



[36]


[37]

Other aspects of dice design involve the interpolation or extrapolation of existing crystal forms to yield additional types of dice, which do not occur naturally. For example, dice designers have varied the hexagonal prism die form, referenced above, by selecting a different number of sides, creating dice that consists of a prism of some selected number of non-pinacoidal sides:


[38]



[39]

Likewise, the notion of using dipyramidal or deltahedral structures (common in mineralogy) can be expanded to permit the creation of a theoretically infinite variety of dice. U.S. Pat. No. D323,684 discloses one such die, a fifty-sided bipyramidal structure. That die, the die manufactured under that patent, and other die forms following the same basic pattern are depicted immediately below:


[40]


[41]


[42]


[43]

---

36 U.S. Pat. No. 4,566,697.

37 Müller, *supra* at n. 10, at 26.

38 http://www.dicecollector.com/D08_OPAQUE_SHARP_SOLID_STICK_02.jpg

39 U.S. Pat. No. 4,900,034.

40 U.S. Pat. No. D323,684.

41 http://www.dicecollector.com/D50_OPAQUE_ROUNDED_SOLID.jpg.

Essentially, die design has often comprised nothing more than the placement of indicia on certain, or all, faces of a corresponding crystal figure to create a functioning die. That is precisely what the plaintiff did in designing his dice, regardless of whether he believed the design to be innovative. One example not involving the plaintiff involves the 24-sided die disclosed (but not claimed) in U.S. Pat. No. 4,489,946. That die consists of a tetrahexahedron with indicia on each of the 24 faces of the polyhedron. The tetrahexahedron – the crystal habit of copper – has been well known in the crystallographic and mineralogical areas for centuries. *See*, *e.g.*, Tennant and Mitchell, *Mineralogy and Crystallography* (London, R. Griffin & Co., 1860) at 308; P. Groth, *Physikalische Krystallographie* (Leipzig, Wilhelm Engelmann, 1905) at 521.


[44]


[45]


[46]

The dice are formed merely by placing indicia on the faces, something that is already reflected in the crystallographic reference shown above. Only subtly different from the tetrahexahedral shape of copper crystals, the crystallized form of Leucite forms a trapezohedral 24-sided shape disclosed in the prior art. Once again, dice design tracks the crystallographic forms perfectly:


[47]

Fig. 369.

[48]

897.

[49]


[50]

---

42 http://www.dicecollector.com/D34_OPAQUE_ROUNDED_SOLID_2.jpg.

43 http://www.dicecollector.com/D16_OPAQUE_SHARP_SOLID_METASCAPE.jpg.

44 T. Liebisch, *Geometrische Krystallographie* (Leipzig, Verlag von Wilhelm Engelman, 1881) at 235.

45 U.S. Pat. No. 4,489,946.

46 http://www.dicecollector.com/D24_PRODUCTION_GAMESCIENCE.jpg.

In the context of the ’197 patent, the plaintiff’s invention amounted to nothing more than placing indicia on certain sides of a known crystal form. In essence, his die invention consisted of supplementing the indicia on the following shape, designed some two hundred years ago by Jacques Louis, Comte de Bournon, with five more numbers, a mere ministerial task for anyone with rudimentary knowledge of dice:



In addition, in light of the foregoing examples of various dice shapes, as well as those many others existing in the relevant prior art, it is apparent that there is a “design need or market pressure” to generate new and different shapes for polyhedral dice that renders the relevant patent claims “obvious to try.” *KSR*, *supra*, at 17. Because the plaintiff’s invention, at least as to all claims that he contends Hasbro to have infringed, was obvious in light of the prior art, the claims of the ’197 patent alleged to have been infringed are invalid and/or unenforceable.

---

47 http://webmineral.com/specimens/Leucite.jpg.

48 P. Groth, *Physikalische Krystallographie* (Leipzig, Verlag von Wilhelm Engelmann 1876) at 323.

49 Dana, *supra* at n. 28, at 460.

50 http://www.dicecollector.com/D24_LD_DIFFUSION_01.jpg.

I, Christine A. Meehan, am employed by Hasbro, Inc. as a paralegal in Hasbro, Inc.'s corporate counsel's office. I have assembled the information required to answer these interrogatories. Although I do not have personal knowledge of all the information contained herein, I am executing these Answers on behalf of Hasbro, Inc. I affirm my good faith basis as to the accuracy of the information so provided.

For the Defendant, Hasbro, Inc.

Christine A. Meehan

As to Objections for the Defendant

HASBRO, INC.
By its Attorneys,

Todd D. White (# 5943)
Jeffrey K. Techentin (#6651)
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
(401) 274-7200
Fax: (401) 751-0604/ 351-4607
Dated: June 26, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of June 2007, I caused a true copy of the within to be served on the following individuals by regular mail, postage prepaid:

Craig M. Scott, Esq.
Christine K. Bush, Esq.
Duffy & Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903

Of Counsel:

Thomas J. Leach, Esq.
Douglas J. Williams, Esq.
Law Firm of Merchant and Gould P.C.
3200 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402-2215

David K. S. Cornwell, Esq.
Sterne Kessler Goldstein Fox
1100 New York Avenue, NW
Washington, D.C. 20005

[signature]

*419458_1*