# EXHIBIT T

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

MICHAEL BOWLING,
a Resident of Arizona,
Plaintiff

VS. C. A. NO. 05-229S

HASBRO, INC.,
a Rhode Island Corporation,
Defendant

--------------------/

DEPOSITION OF KURT BENSON, a witness, in the above-entitled cause, taken on behalf of the Plaintiff, pursuant to notice, before Jo Anne M. Sutcliffe, Notary Public in and for the State of Rhode Island, at the offices of Duffy, Sweeney & Scott, Ltd., One Turks Head Place, Providence, Rhode Island, on January 17, 2006, at 9:08 a.m.

APPEARANCES:

FOR THE PLAINTIFF: MERCHANT & GOULD
THOMAS J. LEACH, ESQ.
-AND-
DOUGLAS J. WILLIAMS, ESQ.

FOR THE DEFENDANT: ADLER, POLLOCK & SHEEHAN
JEFFREY K. TECHENTIN, ESQ.



9810b48e-8c7c-4f64-aead-b3783264b920

asking me and the answer is no.
Q. So even if you believed that these dice do infringe under the doctrine of equivalence, you would not admit that?
A. I am telling you that I don't have a position to believe or not believe.
MR. WILLIAMS: Counsel, let me express what our position will be on this issue. That we have traveled here today to take the deposition of the company, the company has designated this particular witness to testify on these issues and the witness has said he has neither a position aye or nay on this issue. Unless we have a complete admission that, in fact, there is infringement under the doctrine of equivalence, we will ask to return to take this deposition if there's anything less than a complete admission at the company's -- at the Defendant's expense to redo this, because we traveled here without any indication that there was anything -- that there was going to be anything other than a complete deposition that could be taken and the witness would be prepared to testify on all issues. So I'm putting you on notice right now if there's



going to be -- if you don't admit it, then we'll either have the witness travel to us or you'll have to pay our expenses to come back to do this, to complete it. That's our position.
MR. TECHENTIN: I understand your statement.
MR. WILLIAMS: Or in the alternative, to seek to preclude any -- more likely, to seek to preclude any assertion of the defense at this late date, since the company has had literally years to look at this issue. I mean, the dispute has been around since the Millennium, and you know, anybody at this point, any reasonable attorney, and obviously, Mr. Benson is such an attorney at 25 years experience, is going to know that liability under the doctrine of equivalence is the same as liability for direct infringement and they would look at that over a five-year period to see if they've got -- if they have a real issue. So we believe the company has had more than enough time to establish this defense and we feel that it's either being withheld from us and we'll seek to preclude any assertion of that defense or any denial of that defense or



certainly to have our fees paid for a return deposition.
MR. LEACH: I just want to touch on one other issue.
Q. In deciding to give an issue to your outside counsel, how close a call is it or do you just give everything to them?
A. When it's involved in a lawsuit, I give everything to them.
Q. Can you turn your attention to Exhibit 1 again please? One more thing on the last topic. What about the first three years when it wasn't a lawsuit?
MR. TECHENTIN: What's the question?
Q. Did you do an analysis then?
A. No, I didn't.
Q. Did you think it was serious enough to have an analysis done?
A. I didn't do an analysis.
Q. Do you wish you had done an analysis?
A. I don't have any strong regrets as to what I did.
Q. Can you turn to Page 7 of Plaintiff's Exhibit 1, and specifically let me direct your attention to



Topic No. 14. Have you read that topic?
A. Yes.
Q. Are you prepared to testify on that topic?
A. Yes.
Q. And you've been designated to testify on that topic?
A. Yes.
Q. Before we go on to Topic 14, I want to jump back to infringement really quick and ask does Hasbro admit that if the accused dice are found to infringe any claim of the 197 patent, that all identical dice also infringe that claim? I'll rephrase the question if you don't understand it.
If the accused dice is found to infringe a claim of the 197 patent, do all other identically or identical accused dice also infringe that claim of the 197 patent?
MR. TECHENTIN: Objection to form.
A. Are you asking me if one die infringes --
Q. Do they all?
A. -- do they all? Yes.
Q. Just so the record is clear, if one accused die is found to infringe a claim of the 197 patent, they all do?





9810b48e-8c7c-4f64-aead-b3783264b920

MR. TECHENTIN: Object to form.
A. All identical dice do, yes.
MR. LEACH: Thank you.
Q. Topic 14. Does Hasbro contend that the 197 patent is invalid?
A. We have reason to believe that it may be.
Q. And why do you believe it may be?
A. In light of possible prior activity by the patentee more than a year before his filing date.
Q. And what activity is that?
A. I wasn't present at the deposition yesterday and I don't know what the testimony was. We have seen articles that refer to the dice as the fact that he developed -- that the patentee developed those dice while he was in college and used them as a gamer when he was in college and then resurrected them and decided to file a patent application many years later when he was working on a Master's thesis, and based on that, we have reason to believe that there may have been prior public use of the invention more than a year before the filing date.
Q. Is that Hasbro's only basis for concluding that the 197 patent may be invalid?



A. Yes.
Q. Do you have any prior references that you believe -- do you have any patents --
MR. WILLIAMS: He just said no. You can skip over that.
Q. Are there any other reasons that Hasbro contends or are there any other reasons for the basis or for the -- let me stop.
Are there any other reasons for Hasbro's contention that the 197 patent is invalid except for the one that you just provided?
A. I don't believe so.
Q. Are you sure there's no others or do you believe --
A. Well, as far as I'm aware at this time, there are no others. I mean, there's always a possibility that if we decided to do a further search, we might turn up something.
Q. When you say "further search", have you done a search at all?
A. Yes.
Q. Have you produced all the documents?
A. As far as I'm aware, yes.



Q. And the results of that search, you've concluded that nothing anticipates or renders obvious the claims of the 197 patent?
A. I don't believe anything anticipates. Obviousness is somewhat of an open question. But I don't really -- I don't -- I haven't concluded that it's invalid based on prior art.
Q. So at this time Hasbro has no other reasons that support its contention that the patent's invalid?
A. That's correct.
Q. Mr. Benson, I understand that you're also designated to testify on Hasbro's royalty calculations.
A. Yes.
Q. Now, earlier I believe your counsel said that Mike Hirtle may be more appropriate.
MR. TECHENTIN: He may be better suited, although candidly, I'm -- I haven't had a lot of time with Mr. Hirtle. Mr. Benson is prepared to talk to the question of royalty amounts, but I'm saying you may want to try twice on that one.
Q. Are you familiar with Hasbro's typical royalty practice?



A. In general, yes.
Q. Can you describe it?
A. We negotiate a reasonable royalty for products that we license.
Q. What are the factors you consider in negotiating that reasonable royalty?
A. I think that's better for Mr. Hirtle.
MR. TECHENTIN: Okay.
A. I think that's much better for Mr. Hirtle.
Q. Do you know what some would be?
A. The significance of the -- of the property being licensed, whether it's close to the value of the entire product or it's just a component.
Q. Do you know what Hasbro's position is on damages in this case?
A. I mean, we made what we felt was a good faith offer six years ago. Since then we've actually been enlightened by the fact that we don't believe that there was any marking on the product as sold and potentially our good faith offer was on the high side at that time.
We based our offer on a cost percentage of the overall product; in other words, we calculated how much our cost for the dice was --