UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MICHAEL BOWLING, a Resident of Arizona, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 05-229 S |
| HASBRO, INC., a Rhode Island Corporation, | : | |
| Defendant. | : | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HASBRO'S MOTION TO STAY OR, IN THE ALTERNATIVE, FOR LEAVE TO RE-OPEN EXPERT DISCOVERY**

Defendant/Plaintiff-in-Counterclaim Hasbro, Inc. ("Hasbro") respectfully submits this Reply Memorandum of Law in support of Hasbro's motion to stay the trial of this matter or, in the alternative, to re-open discovery on a limited basis. Contrary to the Plaintiff's groundless allegations and unprecedented arguments, the relief sought in Hasbro's motion is fully in accord with the treatment of similar situations by virtually every other court in this country. Principles of public policy and justice, as well as the basic underpinnings of the Federal Rules of Civil Procedure and Federal Rules of Evidence, overwhelmingly favor the inclusion of relevant, probative evidence. The Plaintiff, knowing that the prior art cited by Hasbro is very likely fatal to his infringement claims, asks this Court to disregard those principles, pretend that Hasbro is acting in bad faith, and shut its eyes (and the eyes of the jury) to the truth.

As explained in its opening memorandum ("Hasbro's Opening Memorandum"), staying this action in order to utilize the specialized expertise of the United States Patent and Trademark Office ("PTO") in examining the validity of the '197 Patent is both warranted and well within the discretion of this Court. Alternatively, should the Court reject Hasbro's motion to stay this

matter, expert discovery should be re-opened for the limited purpose of permitting Hasbro to present evidence regarding the validity of the patent-in-suit at trial.

**Introduction and Factual Background**

Hasbro's Opening Memorandum explained the facts germane to this motion, but certain procedural facts are pertinent in reply. Plaintiff Michael Bowling ("Plaintiff" or "Bowling") claims that his cause of action arose in 1999 and 2000. However, Plaintiff sat idly for more than three years until bringing suit in the United States District Court for the District of Arizona on September 16, 2003. The Plaintiff's inattention compounded this initial delay, as he failed to serve Hasbro with process as required by law and rule. The case therefore languished until January 2004 when Judge Bury began a process that ultimately resulted in the Arizona action being dismissed, with prejudice, on March 10, 2004. *See generally* Docket, C.A. No. 03-471 (D. Ariz.) (Hasbro's Opening Memorandum at **Exhibit A**); *see also Bowling v. Hasbro*, 403 F.3d 1373, 1374 (Fed. Cir. 2005). On appeal, the Federal Circuit found that although the trial court was justified in sanctioning Plaintiff's failure to abide by pretrial orders, its *sua sponte* dismissal with prejudice exceeded its discretion. *Bowling*, 403 F.3d at 1378. It therefore reversed and remanded to the trial court. *Id*. at 1379.

Not surprisingly, this delay – which rests entirely at the feet of the Plaintiff, and which amounts to more than five of the seven years that the Plaintiff repeatedly invokes – is never mentioned by the Plaintiff, despite the fact this his opposition memorandum is entirely focused on the equities involved in what his statistics suggest may be a delay of less than half that time. *See* Opposition at **Exhibit P**. Instead of focusing on why this case is where it is at this time, the Plaintiff merely repeats a mantra of "seven years" to create the illusion that he is being victimized by Hasbro. *See id.* at 1, 2, 4, 19, 20. If the man who kills his parents and then begs

for mercy as an orphan displays unmitigated *chutzpah*, the Plaintiff is of a piece with his sloppy, lackadaisical conduct followed by howls of unfairness at comparatively minor delay.

Of equal significance is the Plaintiff's repeated and erroneous reference to this matter being on the "eve of trial." *See* Opposition at 1, 3, 6, 18, 19. Even today, more than a month after Hasbro filed this motion, the parties are still not on the "eve of trial," since no trial date has ***ever*** been set in this case. The Plaintiff could state accurately that the case is two years old, or that there was already an eight-and-one-half month period of fact discovery, or even that the proceedings are relatively advanced. But to claim that the matter is on the eve of trial is simply and unquestionably wrong.

Other "facts" central to the Plaintiff's arguments are equally counterfactual. For example, he claims that "Hasbro has possessed" the 487 Patent to Crippen "since at least 1999." Opposition at 1. That is not true, nor is there any evidence to support the Plaintiff's bald assertion of that fact.[1] The Plaintiff claims that the PTO reexamination process will take "years, probably longer, to complete." *Id.* Even leaving aside the question of what might be "longer" than "years," that assertion is belied by the statistics that he himself attached to his brief, which show that the "average pendency" for reexaminations is less than two years, and the median pendency is less than a year and a half. Opposition at **Exhibit P** (numbered paragraph 7).

---

[1] Rather than using evidence, the Plaintiff argues that Hasbro "possessed" the '487 patent constructively, since that patent number is listed on the face of one of the patents that is listed in the prosecution history of the Plaintiff's patent, which Hasbro obtained back in 1999. *See* Opposition at 4. The Plaintiff fails to mention that the '487 patent is not actually a part of the prosecution history (which Hasbro has previously presented to the Court as **Exhibit F** to its Notice of Request for Judicial Notice (Docket No. 82)), preferring to argue that the '487 patent "was plainly in front of it for seven years." This is akin to arguing that receiving a telephone book means that you've spoken with each of the people named in the White Pages.

Indeed, if the fact that a patent is referenced in another patent of which a party is aware constitutes notice to that party of the entire contents of that cited patent, and if the '487 patent was cited in the "key reference" in the Plaintiff's prosecution history (Opposition at 3, 4), why didn't the Plaintiff cite the '487 patent to the PTO as prior art, as he was obliged to do? The answer, of course, is that the Plaintiff knows full well that this reference cannot constitute such notice, and his past conduct confirms that knowledge.

Even when the Plaintiff gets the facts right, the facts he chooses to present to the Court are entirely irrelevant. For example, he goes to great lengths to suggest that the prior art cited by Hasbro is not relevant to the validity of his patent because patent law provides that patent drawings need not be to scale. On that last point – that patent drawings need not be to scale – he will get no disagreement from Hasbro. But the Plaintiff's use of this principle is a ruse designed to deflect the Court's attention from the real issue. As seen in every single case cited on this point by the Plaintiff, the question of whether drawings are considered to be to scale is relevant to the scope of the patentee's claims (*i.e.*, whether the relative dimensions of the drawings expand or restrict the claims), not an anticipation or obviousness inquiry.

When looking at the patentability of an invention over prior art (as is happening now at the PTO with the Plaintiff's patent), the issue is not whether an earlier patent actually claimed the invention itself, but only whether the disclosures in the earlier patent, including the drawings, would teach one of ordinary skill in the relevant art to produce the invention. In other words, the inquiry that the PTO must make, and the inquiry that the jury would have to make were this case brought to trial, would be what the drawings in the '487 patent disclosed and whether those disclosures rendered the Plaintiff's invention obvious. Consistent with the recent *KSR* decision from the Supreme Court, that is a fluid question informed by common sense. One need not pretend that a drawing doesn't show what it clearly shows just because the drawing does not accurately depict the scope of the claims. If the drawings in the '487 patent shows dice with extension members having different-sized facets from the end caps of dice, one would have to throw common sense out the window to conclude that it doesn't disclose just such dice.

## Argument

### A. The Anticipated PTO Reexamination Process Will Be Short In Comparison To The Plaintiff's Voluntary Delay

Plaintiff claims Hasbro first infringed upon its patent in 1999 or 2000. At deposition, his lawyer confirmed that both Bowling and his lawyer knew of Hasbro's marketing of the "Accused Dice" even before the patent issued in August, 1997. *See* J. Daulton Dep. at 130:25-131:3 (**Exhibit A**). Despite this, Plaintiff waited over 3 years to file any claim at all. When that claim was ultimately filed, it was dismissed for a failure to diligently prosecute the claim when the Plaintiff utterly failed to attend to a show cause order from the court.

Had Bowling acted diligently, the parties would not be here today. Assuming this case proceeded then as it has now, if Bowling had filed suit in 2000, served Hasbro in a timely fashion, and prosecuted this case with reasonable diligence, the reexamination request would have come in 2002. Even if the PTO exceeded its normal timelines, this matter would have been resolved – either by trial or PTO action – two years ago. Bowling is hypocritical in the extreme to cry foul at the prospect of legitimate delay resulting from the PTO conducting a serious review of the validity of the patent when he himself has been the cause of far greater delay in the past.

### B. The Requested Reexamination Presents Genuine, Serious Issues of Patentability With Respect to the Patent in Suit

#### 1. The '487 Patent Discloses the Plaintiff's Invention, or at Least Constitutes Relevant Prior Art with Respect to Obviousness

The Court can be assured that the PTO's review of the Plaintiff's patent will be serious, and that Hasbro has presented genuine, colorable arguments against the validity of the Plaintiff's patent based on prior art that had not been considered by the PTO during the initial examination. Contrary to the Plaintiff's arguments, the '487 patent does, in fact, disclose the Plaintiff's invention, since the drawings clearly depict dice having end cap facets of a different size from

that of the extension member facets. The Plaintiff's only argument to the contrary is the incorrect assertion that because the '487 patent "discloses" an "icosahedron" "for generating random numbers," that necessarily means that it ***only*** discloses a polyhedron comprised of twenty equivalent equilateral triangles. This is a demonstrably incorrect reading of the document. First, the patent does not claim that the device is "for generating random numbers." Second, the patent's specification clearly states that the dice involved may be of different shapes. *See* '487 patent (**Exhibit B** to Hasbro's Opening Memorandum) at Col. 4 l. 37-39. Third, the Plaintiff's citation to Euclid for a definition of "icosahedron" as "a solid figure contained by twenty equal and equilateral triangles" is clever, but completely misleading. The word icosahedron in modern English usage (as opposed to Euclid's use of the term *Είκοσάεδρόν* some 2,400 years ago) means any twenty-sided solid, of which the particular form that Euclid describes is just one example and has its own name, a "regular icosahedron." *See* Icosahedron, http://mathworld.wolfram.com/ Icosahedron.html (last accessed Aug. 21, 2007) ("In general, an icosahedron is a 20-faced polyhedron (where icos- derives from the Greek word for 'twenty' and -hedron comes from the Indo-European word for 'seat')"). When the '487 patent refers to two icosahedral dice, that reference tells the reader absolutely nothing about whether the twenty facets are equivalent or not.

As explained above, the Plaintiff uses the word "disclose" when he should be using the word "claim." These are, of course, different. A patent (or other prior art reference) can disclose something even without claiming it. In the *Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.* case cited by the Plaintiff (Opposition at 5), for example, the Federal Circuit considered in great detail the impact of drawings in the claim construction process.

In *Avia*, the patent included drawings of a shoe with a large "groove" in its sole. During the prosecution of the patent, the patentee had expressly disclaimed shoes with "grooves" as large as the one depicted in the drawing in order to overcome prior art that also had large "grooves" in the soles of shoes. The Federal Circuit explained that the correct claim interpretation was that the express disclaimer during the patent prosecution effectively trumped whatever appeared in the drawings. 222 F.3d 951, 956 (Fed. Cir. 2000). In other words, a patent applicant cannot say one thing to the patent office in order to get a patent, and then "take a mulligan" by expanding the scope of the claims by including a drawing that is at odds with earlier, express statements to the PTO. *See id.* at 957. The court went on to explain the importance of enforcing such disclaimers made during the prosecution process, stating that enforcement was essential to allowing competitors to understand "the totality of the public record" and therefore comprehend the scope of the patentee's claims so that they might, for example, "design[] around" the patent, even if this included designing precisely what had been shown in the patent drawings. *Id*. *Avia* reveals that the Federal Circuit understands what common sense tells us all: that patent drawings, whether or not to scale and whether or not fairly indicative of the scope of the actual claims of a patent, constitute a disclosure to the world, even if they disclose features that are not within the scope of the patentee's claims. If this were not the case, why would the Federal Circuit have troubled itself to distinguish the scope of the claims from the drawings themselves?

Turning back to the '487 patent, the plain implication of *Avia* is that the '487 patent may disclose much more than it claims. Even if the Plaintiff is right that the only dice protected by the claims of the '487 patent are "regular icosahedrons" of twenty equivalent and equilateral

triangles, the fact that its drawings show dice that read on the Plaintiff's patent precisely is of central importance to whether the Plaintiff's patent is valid over that prior art.

Other Federal Circuit decisions, not cited by the Plaintiff, directly refute the Plaintiff's arguments. In *Bruckelmeyer v. Ground Heaters, Inc.*, 445 F.3d 1374 (Fed. Cir. 2006), the court considered whether drawings that had been included in a Canadian patent application but that were omitted from the published patent were prior art that might render a subsequent invention obvious. 445 F.3d at 1377-80. The parties agreed that the drawings were "enabling" of the subsequent invention and therefore, if they were publicly accessible, the drawings would invalidate the subsequent patent. *Id.* at 1378. On appeal, it was argued that the patentee's decision to "remove" the drawings from the patent rendered them not publicly accessible and therefore not prior art. *Id.* at 1377-78. The court rejected that argument, noting that the drawings had not been physically "removed" from the file, just omitted from publication of the final patent, and were therefore publicly accessible and consequently invalidating of the patent. *Id.* at 1380. The *Bruckelmeyer* decision stands unequivocally for the proposition that enabling drawings will invalidate a later patent regardless of whether the drawings are part of a published patent or actually depict the claims.

This issue – whether patents are only germane to validity issues to the extent of their claims – is beyond dispute. The statute governing the citation of prior art in reexamination proceedings defines the relevant material as "patents or printed publications." 35 U.S.C. §§ 301, 302. If printed publications, such as the Beudant and Bournon references contained in Hasbro's reexamination request, may serve as a basis for invalidating a claim when those references have nothing whatsoever to do with patent protection, why would "prior art" that appears in a patent be limited to claimed subject matter? Conversely, if "prior art" is to be construed so narrowly

that only matters that are actually claimed in a patent may be considered as to the validity of an issued patent, what bearing could non-patent publications ever have? Congress could not have been clearer that it intended no such restrictions. Moreover, there is an entire doctrine of patent law surrounding the impact of a patentee disclosing, but not claiming, subject matter. *See Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1106 (Fed. Cir. 1996) ("'subject matter disclosed but not claimed in a patent application is dedicated to the public'") (quoting *Unique Concepts, Inc. v. Brown*, 939 F.2d 1558, 1562-63 (Fed. Cir. 1991)). Disclosures are different from claims, and the Plaintiff knows that.

The Plaintiff also argues that because patent drawings are not required to be drawn to scale, the Court should not rely on the relative dimensions shown in patent drawings for in the context of determining invalidity. *See* Opposition at 5-6. Although the doctrine that patent drawings are not deemed to be made to scale is beyond dispute, the Plaintiff's arguments misapply and misconstrue that doctrine. Hasbro is not arguing that the '487 patent discloses a particular size of playing die and that the size of the die invalidates the Plaintiff's patent, nor is it "reading precise proportions into patent drawings which do not expressly provide such proportions." *See Nystrom v. Trex Co.*, 424 F.3d 1136, 1149 (Fed. Cir. 2005) (cited at Opposition at 5). Rather, it is asking the PTO to consider whether certain drawings in the '487 patent, on the whole, disclose the subject matter of the Plaintiff's patent, as opposed to a "regular icosahedron" consisting of twenty equilateral triangles. That the drawings in the '487 patent depict dice having an extension member with facets of a surface area that is different from the surface area of the facets of the end caps is apparent from casual observation and does not require measurement of the drawings. *See In re Wright*, 569 F.2d 1124, 1127 (CCPA 1976) (finding ***measurements*** of patent drawings to be of little value).

The Plaintiff's application of the "patent drawings are not to scale" maxim would produce an absurd result that would contradict established precedent. *See*, *e.g.*, *Application of Meng*, 492 F.2d 843, 847 (CCPA 1974) (finding that drawing showed "nonidentical external dimensions"). That drawings are not presumed to be precise to the point of mathematical certainty does not render them meaningless. That one side of one triangle might be depicted as five millimeters longer than another side of a different triangle (*see* Opposition at 5-6) does not mean that one skilled in the art cannot look at the drawing and correctly surmise what the drawing depicts. Just as the court in *Meng* could discern from a drawing that slices of cheese had "nonidentical external dimensions," one of ordinary skill in the relevant art could readily discern that the cited figures in the '487 patent illustrated dice with end caps having different surface areas from the extension member.[2] The drawings in the '487 patent depict dice that read precisely on the Plaintiff's patent, even if the precise measurement of the drawings would produce minor technical discrepancies.

**2. The Cited Crystallographic References Anticipate the Plaintiff's Invention, or at Least Constitute Relevant Prior Art with Respect to Obviousness**

Bowling raises two defenses to Hasbro's assertion that the cited crystallographic references anticipate his invention: that the drawings are not specific enough to determine if the disclosed structures embody each of the limitations of the claims of the '197 patent, and that the disclosed structures are not dice. Opposition at 7. Both arguments are unavailing, as they are either belied by the drawings themselves or contrary to law.

---

[2] The court in *Meng* also found it persuasive that the text of the cited patent supported its interpretation of the drawing. That is the case with Hasbro's interpretation of the drawings in the '487 patent as well, which are described in the Specification as "planar, diagrammatic" representations of the dice. 492 F.2d at 847; '487 patent (Hasbro's Opening Memorandum at **Exhibit B**) at col. 2, l. 44-45. Nothing in the text of the patent indicates otherwise, unless one adopts the Plaintiff's interpretation of the word "icosahedron" as defined by the ancient Greeks and not by any modern English usage.

The presence of each element of at least some of Bowling's claims is apparent from an examination of the drawings, as shown by a comparison of Claim 1, to the Beudant drawing:




The Beudant reference has two end caps and an extension member between them; the extension member has a number of discrete facets, each identically shaped with an equal surface area (as shown by the cursive ℓ on each facet representing identity of the facets); each end cap having a number of facets half that of the extension member, each identically shaped with an equal surface area (as shown by the cursive *a* on each facet representing identity of the facets); and each of the extension member facets having a different surface area from each of the end cap facets.

The same result obtains for Claim 2, which adds the element of having indicia on each facet of the extension member (in Beudant, the cursive "ℓ"s). And so on, through each of the claims alleged to have been infringed by Hasbro – Claim 3 adding that the extension member facets be "tapered," Claim 4 adding that they be triangular, Claim 5 adding that the end cap facets be "tapered," Claim 6 adding that they be triangular, Claim 7 adding that the extension member have six facets and each of the end caps have three; Claims 8 and 9 adding ranges of specific dimensions into which the Beudant reference falls. Claim 17 merely restates elements appearing in Claims 1 through 7; since the Beudant reference contains all of those elements, it necessarily reads on Claim 17 as well.

The Plaintiff's argument that the Beudant reference is too vague to determine if "*all* the facets" are identical (presumably referring to the unseen obverse of the structure) is completely unreasonable. His own patent drawings depict precisely the same structure (with only minor differences in the relative sizes of the facets that all fall within the scope of the Plaintiff's claims), and yet he has had no problem whatsoever arguing to this Court that those drawings accurately depict his invention of a die.

His other argument, that the fact that the mineralogical references are not dice and therefore do not anticipate his claims, is contrary to law. It is well established that "[a] prior identical product or process will anticipate even though it is contained in a different and nonanalogous art from that of the later invention." Donald S. Chisum, *Chisum on Patents* § 3.02[3] (2002). Chisum goes on to note that the "discovery of a new use, property, or advantage of an old product or process" will not avoid anticipation by prior art that contains each of the limitations of the claims. *Id.* The mere fact that the Plaintiff calls his shape a die does not render it novel if what came before is precisely the same form.

As to the question of obviousness, the Plaintiff's assertion that crystallography is a "nonanalogous art" is wrong. Although crystallography and mineralogy may be distinct fields from playing dice, that fact does not necessarily mean that the two fields are not "analogous" as that term is used with respect to patent law. There are two distinct categories of prior art that are considered analogous. As the Federal Circuit explains,

> Two criteria have evolved for determining whether prior art is analogous: (1) whether the art is from the same field of endeavor, regardless of the problem addressed, and (2) if the reference is not within the field of the inventor's endeavor, whether the reference still is reasonably pertinent to the particular problem with which the inventor is involved.

*In re Clay*, 966 F.2d 656, 659 (Fed. Cir. 1992) (citing *In re Deminski*, 796 F.2d 436, 442 (Fed. Cir. 1986) and *In re Wood*, 599 F.2d 1032, 1036 (CCPA 1979)). The Plaintiff's bald assertion that the crystallographic references are from a "nonanalogous art" becase "drawings of mineral or crystalline structures" "are not reasonably pertinent to creating random number generators" (Opposition at 7) is incorrect, as shown by the stunning correspondence between crystallography and dice development, as evidenced by the literally dozens of examples contained in Hasbro's Opening Brief.[3] The field of dice design has borrowed heavily from the field of crystallography over the years, and that relationship is precisely the kind that renders a reference "reasonably pertinent" to specific problem being solved.

**C. Proceeding to Trial Immediately Will Not Be More Efficient**

At the heart of the Plaintiff's objection to staying this matter is the erroneous assertion that denying Hasbro's motion to stay will somehow work to be more efficient, as he argues that a stay will "increase costs to Bowling, an individual litigant" and "add unnecessary expense." Plaintiff does not appear to realize that with the reexamination request filed, he will incur the costs and expenses associated with defending his patent in the PTO and, in the unlikely event his patent survives the reexamination process in tact, he will also incur the costs of trying this matter in this Court – precisely the same costs he faces if a stay is granted.[4] The only substantive differences are the timing of some of those costs and the very real possibility that the parties will avoid the costs of trial in the event the PTO rejects or modifies the claims at issue here.

It is also axiomatic that even an immediate trial will not necessarily bring this action to closure; as a result, the PTO review may well be complete even before the litigation has reached

---

[3] The Plaintiff even makes this point himself, including yet another example of a dice patent virtually identical to a drawing of a crystal or mineral structure. Opposition at 8.

[4] This is assuming that the Plaintiff actually intends to defend his patent in the PTO, and not merely abandon it after obtaining a judgment against or a settlement from Hasbro.

conclusion even if a stay is not granted at this point. Any aggrieved party has the right to appeal the jury verdict and the resulting judgment to the Federal Circuit, whose review is itself a lengthy process. Given the apparent willingness of the Federal Circuit to reverse trial courts on patent matters, evidenced by the relatively high rate of reversal in such cases, even a decision by the Court of Appeals may not end the litigation, which could be remanded for further proceedings, including a possible retrial. And, of course, that result would itself be appealable. This is not to say that this litigation is or ever will be *Jarndyce and Jarndyce*,[5] but if the Court is to weigh the impact of a stay pending PTO reexamination, it should not ignore the realities of litigation.

### D. Bowling's Assertion That Some Claims Survive In 90% Of All Reexaminations Is Wrong, Irrelevant, and Misleading

Bowling argues vociferously that Hasbro's reexamination request is really just a red herring because "90% of all *ex parte* reexaminations result in confirming the patentability of at least some of the reexamined patent's original claims." Opposition at 15 (citing PTO Ex Parte Reexamination Filing Data). That statistic is wrong, plain and simple. Bowling derives his 90% number from aggregating those reexaminations where all claims are confirmed (26%) and those where there are claims changes – that is, where the claims are amended in some fashion (64%). There is no indication whatsoever that any part of those 64% included upholding any of the original claims. Bowling's arguments, even if innocently misrepresenting this statistic, highlight the wisdom of Thomas Aquinas: "a small error at the outset ends by being great." Thomas Aquinas, *On Being and Essence*, in *Selected Writings*, 30, 30 (R. McInerny ed. 1998). Contrary to the Plaintiff's arguments, the statistics attached to his brief show that the vast majority of reexaminations have an end result that would, here, put a complete stop to this litigation.

---

5 Charles Dickens, *Bleak House* 4 (MacMillan & Co. 1905) (1853).

In fact, Bowling's own statistics reveal that fully 74% of all reexaminations have resulted in some modification or cancellation of claims and, of all the PTO numbers Bowling has presented, that is the only one of any relevance here. If the PTO invalidates the entire patent, Bowling's infringement case is over. But more importantly, if the PTO modifies the claims that Bowling alleges Hasbro to have infringed, that ends his case as well. After all, Hasbro cannot be retroactively liable for infringement of claims (amended by the PTO) that did not exist when it manufactured and sold the relevant goods. As to the situation where less than all of the claims survive intact, that statistic is irrelevant simply because it is impossible to guess which claims survive. If the PTO invalidates all of Bowling's claims but leaves his claim for a forty-faceted die in tact, the result is precisely the same, for present purposes, as invalidating the entire patent.

As Bowling's statistics indicate, many reviews end in modification of patent claims. To argue that such an outcome would be "unlikely to narrow the issues for trial" is illogical at best. (Opposition at 15). Statistically, there is a 74% chance that the patent will not survive in tact. If there is no claim of patent infringement, this case is greatly streamlined. But statistics are often a poor indicator of future outcomes. More important than any statistic, this actual case presents serious, previously unconsidered prior art for the PTO to review. It is well beyond a mere statistical chance that the PTO will find that 

and 

anticipate .

### E. A Stay is Appropriate Because Re-examination By The PTO Will Narrow (or Avoid) The Issues For Trial and Otherwise Serve the Interests of Justice

The Plaintiff correctly identifies the factors generally considered in weighing a possible stay in favor of PTO review: undue prejudice or clear tactical disadvantage to the nonmovant, whether the stay will simplify the case, and whether discovery is complete and a trial date set.

*See* Opposition at 10. Of course, none of these factors is determinative and the matter is well within the discretion of the trial court. As shown below, on balance the factors firmly support granting a stay during the pendency of the *ex parte* reexamination by the PTO.

**1. A Stay Presents No Unfair Prejudice to Plaintiff**

Although he claims that Hasbro has requested a stay for some undisclosed "tactical advantage"[6] and he complains about the prospect of having to wait for the PTO to examine the prior art identified to it by Hasbro, the Plaintiff offers no meritorious reasons why this matter should not be stayed pending reexamination by the PTO. He argues that a stay would be "prejudicial" and put him at a "clear tactical disadvantage" (Opposition at 10), but is completely incapable of articulating in what manner he will be prejudiced, whether that prejudice would be unfair, or what the tactical disadvantage he might experience might be. For facts, he merely points to the time and litigation resources he has put into this case, to the passage of a "June 1, 2006" trial date that never existed,[7] and that one key witness is no longer with Hasbro. *Id.* at 11-23. Certainly, the same holds true for Hasbro and the Plaintiff with respect the expenditure of to time and resources.[8] As to the trial date, it did not exist. As to the witness, Eileen Sefchick, she left Hasbro in 2000 and has been on the west coast since approximately 2002, well beyond the

---

[6] If the Plaintiff is calling the very real possibility that the PTO would find his current patent invalid a "tactical advantage" for Hasbro, his allegations are accurate for whatever they are worth. But there is no evidence, suggestion, or other reason to believe that the requested stay would somehow, in and of itself, work to Hasbro's advantage or the Plaintiff's disadvantage with respect to the litigation. If memories fade, they fade on both sides; if the Plaintiff wins, he will be paid interest at the statutory rate of 12%.

[7] Presumably, the Plaintiff is referring to the provision in the Pretrial order, entered on September 22, 2005, that required pretrial memoranda to be filed in May of 2006 or 30 days after a decision on any pending dispositive motions, and for the matter to be placed on the trial calendar the following month. Both parties brought dispositive motions at the close of discovery. Unless the Plaintiff believes that the Court should have ruled on the motions even without allowing time for a response by the nonmoving parties, he knows that there never would have been a June 2006 trial even if no extension had been granted in this case, for any purpose, ever.

[8] The Plaintiff makes hay out of being an "individual" litigant, but that is merely a function of the patent in suit being in his name. The Plaintiff conducts his business through a corporate entity (Crystal Caste) that has apparently made significant profits for the Plaintiff. This is not a case of a penniless retiree slipping and falling on the sidewalk in front of some major retailer.

ability of this court to compel her appearance at trial since long before the Plaintiff even bothered to file suit. *See* Sefchick Dep. at 78:1-79:3 (**Exhibit B**). Her testimony, of course, has already been preserved by deposition, as has the testimony of Hasbro through its 30(b)(6) designees.[9] The prejudice to the plaintiff, and his claimed "tactical disadvantage," are entirely illusory.

Without facts, the Plaintiff is left to arguing that a stay is *ipso facto* prejudicial. Opposition at 11. Notably, the cases on which Plaintiff relies for this proposition generally involve requests for reexamination brought by the patentees, not the alleged infringers. In other words, these cases stand only for the proposition that an unwanted delay would be prejudicial to the ***defendant***, not the plaintiff, a distinction that is very real in cases where the defendant continues to market items alleged to be infringing, since those actions would continue to accrue damages if they are ultimately found to infringe. *See, e.g.*, *Cognex Corp. v. Nat'l Instruments Corp.*, 2001 U.S. Dist. LEXIS 25555, at *1 (D. Del. June 29, 2001); *Implant Innovations, Inc. v. Nobelpharma AB*, 1994 U.S. Dist. LEXIS 2003, at *2 (N.D. Ill. Feb. 25, 1994); *San Giacomo N.A., Ltd. v. Pilliod Furniture, Inc.*, No. 95-00739, 1996 US. Dist. LEXIS 14440, at *1-2 (M.D.N.C. Aug. 13, 1996) (noting also that defendant faced potential accumulation of damages during the reexamination period); *Wayne Automation Corp. v. R.A. Pearson Co.*, 782 F. Supp. 516, 517 (E.D. Wash. 1991). Others involve circumstances simply not present here. *See, e.g.*, *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999) (defendant intentionally delayed request for reexamination for eight months in favor of active litigation of case in district court).

---

[9] Here and elsewhere, it is important for the Court to understand that all of the alleged infringing behavior occurred in the past and there is no issue of ongoing infringement. As a result, both Hasbro's and the Plaintiff's damages, if he has any, are set. There will be no new witnesses, no new evidence. Hasbro is confident that it, the Plaintiff, and their respective counsel will not "lose" the evidence relevant to this case. *See* Opposition at 13.

Without any actual or presumed undue prejudice, what remains for the Court to consider, and what is completely absent from the Plaintiff's brief, is the equitable question of whether the Plaintiff should be able to press forward on patent infringement claims based upon a patent that likely will not survive reexamination by the patent office. While the Plaintiff is understandably tolerant of a result wherein Hasbro is forced to pay millions of dollars in royalties for "infringement" of a patent that should never have been granted, that result is abhorrent to fundamental fairness and justice.

### 2. The Procedural Status of This Litigation Does Not Require Denial of a Stay

Plaintiff's argument that the PTO reexamination will not simplify the issues at trial because it may fail to resolve *all* the issues before this Court is a red herring. *See* Opposition at 14-16. Without forecasting the PTO's conclusions, it is impossible to guess if the reexamination will completely nullify the patent claims in this case or not. Of course, Hasbro fully expects they will, and the Plaintiff disagrees. While it is possible that a PTO hearing will be completely dispositive of the patent issues in this case, Hasbro submits that even if the PTO does not completely invalidate the Plaintiff's patent, its review is likely to significantly reduce the number and complexity of the issues at hand. *MercExchange, L.L.C. v. eBay, Inc.*, 2007 WL 2172587, at *6 (E.D.Va. July 27, 2007) ("the primary benefits of the PTO reexamination process are that it can narrow the issues for trial, provide the court guidance, and avoid the waste of significant time and resources if the patents-in-suit were in fact improvidently granted."). The fact that eliminating the patent claims would not be *entirely* dispositive of this case (since Hasbro's counterclaim would remain) is not a legitimate reason to deny Hasbro's motion to stay, let alone the alternative relief sought.

Finally, the fact that discovery has closed is not, standing alone, a sufficient basis for declining to stay this case. The case is not on the "eve of trial," although substantial pretrial activities have taken place. As explained in Hasbro's Opening Memorandum and further below, even if the Court were to deny this motion to stay, it should reopen discovery for a limited period in order to permit Hasbro to present the full record relating to the validity of the patent at trial; of necessity, the trial would still be some months off.

### F. Even If The Court Declines to Stay This Matter, There Is No Basis Upon Which to Preclude Evidence of Invalidity

As discussed more fully in its Opening Memorandum, Hasbro discovered several prior art references that either anticipate one or more claims of the '197 Patent or render the claims obvious in light of that prior art following the close of discovery in this matter. Without proffering any evidence to support his change, Plaintiff asserts that "[p]resumably Hasbro has had this information for many months and chose to disclose it at the last minute to cause delay and to prejudice Bowling…." Opposition Memorandum at 3, 5, 6, 19. This is absolutely untrue. Hasbro has never sought to delay these proceedings beyond extensions necessary for the diligent defense of this case and the prosecution of its counterclaims; it has not been lax in meeting scheduling deadlines set forth by this Court. It has not routinely sought extensions of briefing deadlines, and has even agreed to accelerated deadlines on its own briefing, unilaterally. Nevertheless, the Plaintiff leaps to the conclusion that Hasbro is "attempt[ing] to ambush Bowling" with new invalidity contentions on the eve of trial. Opposition at 17-18.

The result, the Plaintiff urges, should be to exclude all evidence of the invalidity of his patent from the trial of this case. Opposition at 18-21. Lacking any substantive justification for this draconian evidentiary result – a result that, of course, would insulate his patent from a credible claim of invalidity – the Plaintiff claims that the law virtually requires the exclusion of

the evidence. *Id.* at 18. His entire argument, however, presupposes that Hasbro has acted in violation of Fed. R. Civ. P. Rule 26(e)(1), which requires parties to supplement their discovery requests in a timely fashion. There is not a scintilla of evidence to support such a finding.

The First Circuit has provided guidance with respect to evaluating claims that disclosures are made in violation of Rule 26(e)(1). It instructs that in evaluating claims of late disclosure a court "'should look to the conduct of the trial, the importance of the evidence to its proponent, and the ability of the [opposing party] to formulate a response'" and carefully examine "the reason for the proponent's failure to update his discovery seasonably." *Thibeault v. Square D Co.*, 960 F.2d 239, 244 (1st Cir. 1992) (quoting *Johnson v. H.K. Webster, Inc.*, 775 F.2d 1, 8 (1st Cir. 1985) and citing *Davis v. Marathon Oil Co.*, 528 F.2d 395, 403 (6th Cir. 1975)). Applied to the present facts, that rubric weighs exclusively in favor of permitting the evidence to be introduced at trial.

Hasbro's reasons for not disclosing the material prior to the discovery cutoff is straightforward: it had not found the prior art and therefore could not have disclosed it. With respect to the remaining factors, the "conduct of the trial" is inapplicable, as the First Circuit listed that factor to address information that had ***never*** been disclosed prior to its introduction at trial. The importance of this evidence cannot be overstated. On the strength of the proffered prior art, Hasbro contends that the patent claims alleged to have been infringed are invalid, and that there can be no liability for infringement. Without that evidence, it cannot present that contention at all. This is not a situation where the evidence sought to be concluded is merely cumulative or supportive of other available evidence. Finally, the "ability of [the Plaintiff] to formulate a response" is directly keyed to the present motion. If the Court grants Hasbro's alternative request to reopen discovery, the Plaintiff will be fully capable of formulating a

response. He has already retained an expert who expressly reserved the right to opine on questions of validity arising out of prior art issues. Given a reasonable amount of time, the Plaintiff will have ample time to prepare his response. That is precisely what Hasbro is seeking in the event the Court does not stay this case.

This result is consistent with all of the cases cited by the Plaintiff in his Opposition. The Plaintiff has not identified a single case in which the Court ***both*** refused to stay the action to allow the PTO to complete its reexamination before taking the matter to trial ***and*** precluded the defendant from presenting the evidence at trial. Indeed, the sole case cited by the Plaintiff in which prior art references were excluded was one in which the party had failed completely to supplement its discovery responses, which is of course precisely what Hasbro has done here. *See Transclean Corp. v. Bridgewood Serv., Inc.*, 101 F. Supp. 2d 788, 796-98 (D. Minn. 2000).

## Conclusion

For the foregoing reasons, in conjunction with Hasbro's Memorandum, Hasbro reiterates its request for a stay in these proceedings or in the alternative the limited re-opening of discovery.

Respectfully submitted,

HASBRO, INC.
By its Attorneys,

/s/ Jeffrey K. Techentin________
Todd D. White (#5943)
twhite@apslaw.com
Jeffrey K. Techentin (#6651)
jtechentin@apslaw.com
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
(401) 274-7200
Fax: (401) 751-0604/ 351-4607
Dated: August 23, 2007

Of Counsel:

David K. S. Cornwell, Esq.
davidc@skgf.com
Tracy-Gene G. Durkin, Esq.
tdurkin@skgf.com
Sterne Kessler Goldstein Fox
1100 New York Avenue, NW
Washington, D.C. 20005

**CERTIFICATE OF SERVICE**

TO:

Craig M. Scott, Esq.
Christine K. Bush, Esq.
Duffy & Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903

Thomas J. Leach, Esq.
Douglas J. Williams, Esq.
Law Firm of Merchant and Gould P.C.
3200 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402-2215

David K. S. Cornwell, Esq.
Tracy-Gene G. Durkin, Esq.
Sterne Kessler Goldstein Fox
1100 New York Avenue, NW
Washington, D.C. 20005

I hereby certify that I filed the within Reply Memorandum of Law In Further Support of Hasbro's Motion To Stay Or, In The Alternative, For Leave To Re-Open Expert Discovery through the ECF system on the 23rd day of August, 2007, and that notice will be sent electronically to the above-named counsel who are registered participants identified on the Mailing Information for Case No. 05-229S.

/s/ Jeffrey K. Techentin_________

*426446_1*