IN THE UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MICHAEL BOWLING,<br>a Resident of Arizona,<br><br>Plaintiff,<br><br>v.<br><br>HASBRO, INC.,<br>a Rhode Island Corporation,<br><br>Defendant. | : | C.A. No. 05-229S |

**DECLARATION OF MICHAEL BOWLING IN SUPPORT OF BOWLING'S MEMORANDUM IN OPPOSITION TO HASBRO'S MOTION TO STAY OR ALTERNATIVELY RE-OPEN EXPERT DISCOVERY**

I, Michael Bowling declare as follows:

1. My name is Michael Bowling. I am the sole inventor of United States Patent No. 5,938,197 ("the '197 Patent") and the plaintiff in this case.

2. I am filing this declaration to correct two misstatements by Hasbro: (1) that I delayed in filing suit and was not diligent in prosecuting it; and (2) that the '487 patent discloses a die having facets of different sizes and that crystalline structures are relevant in designing dice.

3. While Hasbro attempts to blame me for the delay in filing and prosecuting this suit, it fails to tell the Court that it continuously misrepresented the extent of its sales of the accused dice in settlement negotiations, which made the expense of litigation appear unpractical. I did not rush to litigation because Hasbro misrepresented the extent of its sales and I believed that it was more practical to try to negotiate a settlement. I did not sit idle, but rather tried in good faith to resolve this dispute with Hasbro. I offered to have

my attorneys have a face to face meeting and offered to participate in mediation. Hasbro rejected both offers. After many months of investigation and back and forth negotiations I slowly learned that Hasbro was not being honest about the extent of its sales nor negotiating is good faith.

4. From the beginning Hasbro was not honest with me. *After* Hasbro was already selling the Monopoly game with dice covered by my patent, Hasbro's Mike Hirtle, who was in charge of product acquisition, wrote me the following misleading letter:

> Dear Mr. Bowling:
>
> Hasbro Games is interested in exploring the possibility of using the die design disclosed in your recently issued patent number 5,938,197.
>
> Please give me a call at 978-921-3402 at your earliest convenience to discuss.
>
> Sincerely yours,
>
> Michael Hirtle
> Product Acquisition

(Exhibit A.)

5. Realizing that Mr. Hirtle's letter was misleading, I began investigating the extent of Hasbro's infringement and also contacted my patent attorney for help in resolving this dispute. (Ex. B.) In the initial settlement discussion Hasbro represented that it had only sold 269,000 games including the accused dice and that "[n]o further shipments with the accused dice have been or will be made." (Ex. C.)

6. Despite Hasbro's written assurances, through my investigation, I learned that Hasbro continued to sell games with the infringing dice through the 1999-2000 Holiday season. On Mach 6, 2001, my attorney wrote Hasbro's counsel informing him that Hasbro continued to sell games with dice that infringe my '197 patent. (Ex. D.) We asked that Hasbro up-date its sales figures.

7. On April 10, 2001, Hasbro admitted that it sold another 184,000 games in November and December of 1999. (Ex. E.) This brought Hasbro's admitted sales of the Monopoly game with the infringing dice to 453,000. Hasbro again represented that this was total sales of the games including the accused dice.

8. Through my attorney, I continued to attempt to settle this matter with Hasbro. Given Hasbro's misrepresentations, I also continued to investigate whether Hasbro's representations were accurate. (Ex. F.) My investigation indicated that Hasbro was still not being honest about the extent of its sales.

9. In discovery, I learned that Hasbro had in fact sold more than 556,000 Monopoly games containing my accused dice and that Hasbro continued to sell after it assured me it had stopped. I also learned that after Hasbro received my cease and desist letter and just days before Hasbro assured me in writing that it would not sell any more games with the infringing dice, Hasbro purchased 34,000 more infringing pairs of die for its Monopoly game. Thus, throughout settlement negotiations, Hasbro misled me about the extent of its infringing activity. (Ex. G.)

10. Realizing in that Hasbro's sales were far more than it initially represented, I filed suit against Hasbro, trying to get it to talk seriously about settlement. However, during further negotiations, the Arizona Court incorrectly dismissed my case *with prejudice* for not serving the complaint on Hasbro within 120 days, despite Federal Rule 4(m). Significant time and expense was lost by having to appeal that decision to the Federal Circuit, which I ultimately won. After the Arizona Court's decision was reversed, I immediately filed suit in Rhode Island and have been vigorously prosecuting this case.

11. Hasbro also misrepresents what the '487 patent discloses. The '487 patent does not disclose a die that has facets of different sizes. It discloses a dice in the shape of icosahedrons. An icosahedron is made up of 20 equal triangular facets. Moreover, in the context of the '487 patent, which discloses a 20 number random number generator, it only makes sense that it discloses a die with 20 equal facets. Thus, one skilled in the art would recognize that the '487 patent discloses a random number generator with 20 *equal sides*.

12. Hasbro's claim that mineralogy book are relevant to dice design is also incorrect. One skilled in the art of dice design would not consider mineralogy books or crystalline structure when designing dice. I have not seen a die patent that references or contains crystalline structures listed as prior art. If dice with my structure would have been so obvious, why did non one create a die like my invention before now given that the crystalline structures that Hasbro claims renders my patent obvious have appeared in nature for literally millions of years and been in print for over 200 years.

13. I have personal knowledge regarding the facts contained in this declaration.

I declare under penalty of perjury that is foregoing is true and correct.

August 24, 2007

Date

[signature]

Michael Bowling