UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MICHAEL BOWLING, a Resident of Arizona, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 05-229 S |
| HASBRO, INC., a Rhode Island Corporation, | : | |
| Defendant. | : | |

**MOTION FOR RECONSIDERATION OF ORDER ON MOTION TO STAY OR, IN THE ALTERNATIVE, TO REOPEN DISCOVERY WITH RESPECT TO NEWLY-IDENTIFIED INVALIDITY EVIDENCE**

Defendant/Plaintiff-in-Counterclaim Hasbro, Inc. ("Hasbro") respectfully moves for reconsideration only of those portions of this Court's order [Docket No. 113] on its Motion to Stay Proceedings Pending *Ex Parte* Reexamination of Patent or, in the Alternative, for Leave to Re-Open Expert Discovery (the "Motion to Stay") which specifically exclude certain prior art references from evidence at trial. Hasbro does not here seek reconsideration of the Court's denial of the Motion for Stay or of the relief sought in the Motion for Stay.

As explained in the accompanying Memorandum of Law, equity bars Plaintiff's complaint about the timing of Hasbro's disclosure because (a) Plaintiff affirmatively misrepresented facts to the Court in his rebuttal of the significance of Hasbro's invalidity evidence and (b) Plaintiff has seemingly actively concealed evidence pertaining directly to the validity of the patent in suit. Additionally, the timing of Hasbro's disclosure of invalidating prior art references was both justified and harmless to Plaintiff, and therefore the exclusion of the evidence is not warranted under Fed. R. Civ. P. Rules 26(e)(2) and 37(c)(1).

Pursuant to L.R. (civ) 7(e), Hasbro requests oral argument on this motion.

Respectfully submitted,

HASBRO, INC.
By its Attorneys,

/s/ Jeffrey K. Techentin___________
Todd D. White (#5943)
twhite@apslaw.com
Jeffrey K. Techentin (#6651)
jtechentin@apslaw.com
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
(401) 274-7200
Fax: (401) 751-0604/ 351-4607
Dated: November 14, 2007

Of Counsel:

David K. S. Cornwell, Esq.
davidc@skgf.com
Tracy-Gene G. Durkin, Esq.
tdurkin@skgf.com
Sterne Kessler Goldstein Fox
1100 New York Avenue, NW
Washington, D.C. 20005

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MICHAEL BOWLING, a Resident of Arizona, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 05-229 S |
| HASBRO, INC., a Rhode Island Corporation, | : | |
| Defendant. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RECONSIDERATION OF ORDER ON MOTION TO STAY OR, IN THE ALTERNATIVE, TO REOPEN DISCOVERY WITH RESPECT TO NEWLY-IDENTIFIED INVALIDITY EVIDENCE**

Defendant/Plaintiff-in-Counterclaim Hasbro, Inc. ("Hasbro") respectfully submits this Memorandum of Law in support of its Motion for Reconsideration of Order on Motion to Stay or, in the Alternative, to Reopen Discovery with Respect to Newly-Identified Invalidity Evidence [Docket No. 113] (the "Order"). This motion for reconsideration is directed ***solely*** at the Order's exclusion of the prior art references identified in Hasbro's June 26, 2007 disclosure to Plaintiff and does not seek reconsideration of the Court's denial of Hasbro's Motion to Stay or its denial of the relief sought therein.

Hasbro respectfully submits that three independent grounds justify reconsideration of the Court's determination to exclude the prior art references. First, Plaintiff affirmatively misrepresented facts presented to the Court with respect to the relevance and significance of the prior art, and in particular misstated his own knowledge that gems and crystals have long been considered by the United States Patent and Trademark Office ("PTO") to be relevant prior art for dice patents – knowledge that he has had since long before this case was even filed. Second,

Hasbro has only now, this past week, discovered that Plaintiff has seemingly actively concealed evidence pertaining directly to the validity of the patent in suit, failing to disclose in response to discovery requests the PTO's initial rejection of a claim embodying Plaintiff's claimed dice design as anticipated or obvious in light of prior art. Plaintiff should therefore not be heard to complain that Hasbro was untimely in its discovery and disclosure of other, analogous invalidity evidence. Finally, because the decision to exclude the evidence was issued *sua sponte* and without any motion by Plaintiff, Hasbro has never had an opportunity to present evidence regarding the justification for the timing of Hasbro's disclosure, nor has Plaintiff made any showing of harm resulting from that timing. Under these circumstances, Hasbro respectfully submits that reconsideration of the Court's exclusion of the evidence is warranted, taking into account the actual circumstances surrounding that disclosure. Those circumstances are set forth in the accompanying Declaration of Jeffrey K. Techentin.

Even if Plaintiff's discovery violations and his affirmative misrepresentations of fact to the Court regarding the validity of his patent did not justify reconsideration of the exclusion of Hasbro's invalidity evidence, such exclusion is not warranted because the timing of Hasbro's disclosure of invalidating prior art references was both (1) substantially justified and (2) harmless to Plaintiff. Under the plain language of the applicable rules, specifically Fed. R. Civ. P. Rules 26(e)(2) and 37(c)(1), and established First Circuit caselaw, exclusion is only appropriate where the timing was ***neither*** substantially justified ***nor*** harmless.

## I. Hasbro's Invalidity Evidence Should Not Be Excluded.

### A. Plaintiff Actively Deceived Hasbro and the Court in Opposing the Motion for Stay.

One of the bases upon which the Court determined to exclude the Cited Prior Art was that Plaintiff would be prejudiced as a result of the timing of Hasbro's disclosure. *See* Order at 3-4.

Because Bowling has never moved to exclude the evidence, he has never been called upon to show how he would actually be harmed by the disclosure; instead, his briefs have just asserted, again and again, that the disclosure came late. *See*, *e.g.*, Plaintiff's Supplemental Memorandum [Docket No. 110] at 1 (urging exclusion because "Hasbro cannot justify its withholding of that information until just before trial" without any assertion of harm) and Plaintiff's Opposition to Motion to Stay [Docket No. 100] at 18 (asserting, without explanation, that Plaintiff would be harmed solely because he would have to "deal with" evidence of invalidity at trial). The reality, though, is that Plaintiff has known throughout this litigation that invalidity based on prior art is at issue in this case (or certainly ***should have been*** had Plaintiff complied with his discovery obligations) and, given the significant passage of time since Hasbro's disclosure, the timing of that disclosure was harmless to Plaintiff. Aside from that fact, though, Plaintiff should not be heard to complain about the timing of Hasbro's disclosure based on his own actions.

**1. Plaintiff Deceived the Court by Submitting a Declaration in Opposition to Hasbro's Motion to Stay that Was Knowingly False.**

In a transparent attempt to persuade the Court that (1) mineral and crystal references came as a complete surprise to him, and (2) Hasbro's invalidity evidence was weak, Plaintiff submitted a declaration, under oath. Docket No. 102. In order to ensure that Hasbro would have no opportunity to rebut his statements, Plaintiff submitted the declaration the day after Hasbro filed its reply brief on the Motion to Stay. He did so without leave and without any accompanying memorandum. Hasbro moved to strike the declaration on that basis, among others; no formal ruling on the motion has been entered. *See* Docket No. 105. Most of Plaintiff's declaration was devoted to spinning the events leading up to Plaintiff having filed suit in 2003, but the latter portion provided a substantive response to Hasbro's assertion that the mineralogical references in the Cited Prior Art invalidate the patent (despite the fact that Plaintiff

calls his own company "Crystal Caste"). *See generally* Docket No. 102. This declaration was ***knowingly false***.

Paragraph 12 of the declaration is reproduced in full below:

> 12. Hasbro's claim that mineralogy book are relevant to dice design is also incorrect. One skilled in the art of dice design would not consider mineralogy books or crystalline structure when designing dice. I have not seen a die patent that references or contains crystalline structures listed as prior art. If dice with my structure would have been so obvious, why did non one create a die like my invention before now given that the crystalline structures that Hasbro claims renders my patent obvious have appeared in nature for literally millions of years and been in print for over 200 years.

Each of the "facts" supporting Plaintiff's position is wrong, and Plaintiff knew that when he signed the declaration under penalty of perjury.

First, Plaintiff and/or his counsel knew full well that one skilled in the art of dice design ***would*** consider crystalline structures when designing dice because the PTO had cited crystalline structures as prior art for dice patents, and had done so in the context of Plaintiff's own patent applications. U.S. Pat. No. D267,569 to Polite, for example, cites to U.S. Pat. No. D141,259 to Fine, labeled a "Design for a Diamond or Similar Article." Placed side by side, one can readily understand why the PTO would have found these two patents to be relevant to one another:

| **D267,569 to Polite** | **D141,259 to Fine** |
|---|---|
|  |  |

Plaintiff (or his counsel) could not have been ignorant of this reference; the Polite design patent is the very first prior art reference listed on the patent in suit:

[56] **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D. 267,569 | 1/1983 | Polite | D21/41 |
| 1,271,551 | 7/1918 | Ebner et al. | 273/146 |
| 1,795,562 | 3/1931 | King et al. | 273/146 |
| 4,239,226 | 12/1980 | Palmer | 273/146 |
| 5,150,900 | 9/1992 | Onzo | 273/146 |
| 5,203,562 | 4/1993 | Smith | 273/146 |
| 5,224,708 | 7/1993 | Gathman et al. | 273/146 |

Plaintiff must have seen the Polite reference, and if that is true, he cannot truthfully say that he has "not seen a die patent that references or contains crystalline structures listed as prior art." Perhaps the truth is that Plaintiff never bothered to look at the references contained in the dice patents he has seen, but his affirmative statement to the Court regarding the references in those patents unequivocally suggests that he has done so. Plaintiff's statement as it relates to the Polite patent is either deliberately false or deliberately misleading.

But as his statement relates to other patents, there can be no doubt whatsoever that he knew gems and crystals to be relevant prior art and that his averments to the Court were directly contrary to that knowledge.[1] It is impossible that Plaintiff has never even seen gems and crystals cited as prior art to dice patents because ***Plaintiff's own published dice patents cited crystal references as prior art***. Plaintiff was issued U.S. Pat. No. D436,635 on January 23, 2001, and U.S. Pat. No. D455,462 on April 9, 2002. Each of those patents listed the Polite patent as well as U.S. design patents D232,652 to Hoffer ("Gem") and D402,226 to Wolf ("Jewelry Stone"). The '635 patent's references are shown here:

[1] The Plaintiff testified at deposition that prior to filing his patent application, he had gone through an "egregious" process of reviewing patents or patent abstracts in order to ascertain if his shape had previously been patented. *See* Bowling Dep. at 86:11 – 89:15 (**Exhibit A**).

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| D. 232,652 | * | 9/1974 | Hoffer | D11/90 |
| D. 267,569 | * | 1/1983 | Polite | D21/373 |
| D. 402,226 | * | 12/1998 | Wolf | D11/90 |
| 1,271,551 | | 7/1918 | Ebner et al. | 273/146 |
| 1,795,562 | | 3/1931 | King et al. | 273/146 |
| 3,904,208 | * | 9/1975 | Grossman | 273/146 |
| 4,239,226 | | 12/1980 | Palmer | 273/146 |
| 5,150,900 | | 9/1992 | Onzo | 273/146 |
| 5,203,562 | * | 4/1993 | Smith | 273/146 |
| 5,224,708 | | 7/1993 | Gathman et al. | 273/146 |
| 5,690,331 | * | 11/1997 | Sides | 273/146 |

Both the Hoffer and Wolf patents are for gem shapes. They are even explicitly shown on the first page of Plaintiff's patents as belonging to class "D11/90." Class D11 is for "Jewelry, Symbolic Insignia, and Ornaments," and subclass 90 is for faceted jewelry.[2] The images from the Hoffer and Wolf patents leave no doubt that the PTO considered that crystal and gem forms were relevant, not only to dice generally, but to Plaintiff's claimed die design in particular:

| D232,652 to Hoffer ("Gem") | D402,226 to Wolf ("Jewelry Stone") |
|---|---|
|  |  |

Because Plaintiff's own die patent cites gems and "faceted jewelry" as prior art, his sworn statement that "I have not seen a die patent that references or contains crystal structures listed as prior art" is flatly false. Does he seriously wish the Court to believe that he has never seen his own patents? The same patents that he was actually shown and questioned about at the hearing on October 26, 2006?[3] His desire to enforce his patent appears to have clouded his recollection. If this were merely some tangential comment, perhaps it could be excused. But it was not. Plaintiff came forward as someone whom this Court has previously found to have a

---

2 *See* "Full Title for class D11 subclass 90," http://www.uspto.gov/go/classification/shadowFiles/defsd11sf.htm? D11_90&S&17&3L&3O&3P#3P (last accessed Nov. 9, 2007) (**Exhibit B**).

3 The Plaintiff's two design patents were entered as full Exhibits 1 and 2 at the hearing on inventorship after Hasbro's counsel questioned Plaintiff regarding their similarity to the patent in suit. *See* 10/26/06 Trans. at 165-69.

degree of expertise in dice to opine on whether or not Hasbro's validity evidence had any merit. *Cf.* 5/29/07 Decision and Order at 23 (noting that Bowling had been "using, designing, and inventing polyhedral dice for some time"). The very point of his declaration was to convince the Court that no one has ever linked crystals and dice before. His facts on this point are precisely what he misstated. His misrepresentation could not be innocent, and should not be excused.

**2. Plaintiff Deceived the Hasbro by Failing to Disclose the Fact that the PTO Initially Rejected the Equivalent of Claim 1 of His Patent Anticipated or Obvious.**

Plaintiff has not limited himself to inaccurate statements under oath; he has also engaged in discovery abuse in an effort to conceal invalidity evidence. Just this past week, Hasbro learned for the first time that the PTO in a related case actually rejected a claim that was precisely analogous to Claim 1 of the patent in suit "under 35 U.S.C. 102(b) as being anticipated by or, in the alternative, under 35 U.S.C. 103(a) as obvious over **Polite**." Office Action Summary (**Exhibit C**) at 2-3 (emphasis in original).

The background of this determination, as Hasbro has been able to determine without the benefit of discovery, is as follows. On September 26, 2000, Plaintiff submitted a continuation application under 37 C.F.R. § 1.53(b) of his prior application that had matured into the '197 patent (the patent in suit). **Exhibit D**. As a continuation application, this subsequent application disclosed and claimed only the invention that had been disclosed in his prior-filed application and did not disclose any subject matter not previously disclosed. *See* 37 C.F.R. § 1.78(a)(3), (4). Along with the continuation application, Plaintiff submitted a Preliminary Amendment (**Exhibit E**), canceling the claims that had been asserted in the '197 patent and requesting consideration of eleven new claims. The first of those claims pertained to a "method for generating a random number comprising" the die design disclosed and claimed in Claim 1 of the'197 patent with two additional limitations: (1) that "each of the [extension member] discrete facets [has] indicia

representing a different number," and (2) that the random number is generated by dropping the die on a surface. *Id.* at 2. Other than the "method" language and the limitation pertaining to indicia, the language used in the continuation application was precisely the same as that used in Claim 1 of the '197 patent, as indeed it had to be in order to qualify as a continuation application. Compare *id.* with **Exhibit F** (Claim 1 of the '197 patent).

In the course of its examination of the continuation application, the PTO rejected the claim, finding that the structure claimed – that is, the exact same structure claimed in Claim 1 of the '197 patent – was either obvious or anticipated by the prior art. The PTO explained:

> **Polite** discloses (fig 2) a die having a first and second end caps with a body therebetween; an extension member having a first number of discrete facets being identically shaped and having equal surface areas (10) and where the second number of end caps is ½ of the first (5). It would have been obvious to one of ordinary skill in the art to have modified the apparatus to have included a variety of different number of sides. The number of sides and ends is not critical to the apparatus.

**Exhibit C** at 3. In other words, the PTO examiner concluded that the Polite patent (mentioned above) anticipated the basic structure of the patent in suit as it was claimed in Claim 1 of this patent. Ultimately, the claim was allowed over Polite after Plaintiff's counsel, Julie Daulton, Esq., argued that the Polite reference was different from Plaintiff's claim. Because this was not disclosed in discovery, Hasbro cannot ascertain any facts surrounding that determination beyond what is shown in the file history.

Hasbro only discovered the PTO examiner's rejection of this claim when, in the course of its trial preparation, counsel happened to order a copy of the prosecution history files for some of Plaintiff's dice patents. *See generally* Declaration of David Cornwell. Specifically, on Friday, November 2, 2007, Hasbro's counsel ordered the prosecution histories of two patents issued to Bowling: U.S. Pat. Nos. 6,123,332 and 6,318,720. *Id.* at ¶ 2. Counsel received the file wrapper

of the ’332 patent that same day, and that of the ’720 patent on November 5, 2007. *Id.* at ¶¶ 3,4.

The PTO’s treatment of Claim 1 of what would become the ’720 patent is incontestably relevant to the continuing validity of the ’197 patent; one claim could not be patentable if the other was not ***because they were the same in all material respects***; indeed, if the narrower (later claim) were invalid, it is impossible that the broader, earlier claim was valid. But despite valid discovery requests from Hasbro in this litigation, Plaintiff never disclosed the fact that the PTO had issued a determination that the subject matter of Claim 1 to be anticipated or obvious. Plaintiff offered no relevant objections to the requests. In full, the exchange of Hasbro’s requests and Plaintiff’s response, which took place in 2005, was as follows:

> **Request No. 12**
>
> All documents that evidence, refer to or otherwise relate to any prior art, of which Bowling is aware, either directly or indirectly, as relating to the subject die or any part thereof.
>
> **Response to Request No. 12**
>
> Plaintiff objects to this request to the extent that it calls for information subject to the attorney-client privilege or the work-product doctrine. Subject to this and the General Objections, Plaintiff will produce responsive documents.

**Exhibit G** at 9. There can be no question that a PTO determination that the subject matter of one of the claims of the patent in suit is unpatentable over prior art constitutes a “document that … refer[s or relates] to any prior art … as relating to the subject die.”

This was not the only request to which the ’720 patent application was responsive. Specifically, Hasbro’s Second Set of Requests for Production of Documents included the following request, to which Plaintiff responded as noted:

> **Request No. 1**
>
> All documents that evidence, concern, or relate to the design of any dice invented, designed, created, manufactured, or sold by

> Bowling, including without limitation sketches, drawings, CAD files (*e.g.*, ".dwg" files), textual descriptions, patent applications, draft patent applications, copyright registrations, correspondence concerning the invention, design, creation, manufacture, and sale.
>
> **Response to Request No. 1**
>
> Plaintiff objects to this request to the extent that it seeks information protected by the attorney-client privilege or the work-product doctrine. Plaintiff further objects to this request as overly broad and unduly burdensome in that it requests "all documents that evidence, concern, or relate to" Bowling's design of "any" dice invented and/or sold. Plaintiff objects to this request to the extent it seeks documents that are irrelevant to any claim or defense or not reasonably calculated to lead to the discovery of admissible evidence. Subject to these and the General Objections, responsive documents have previously been produced.

**Exhibit H** at 5.[4]

Plaintiff certainly should have produced the '720 file history in response to Request No.

---

[4] In light of Plaintiff's relevance objection, it is important to note that in the Order, the Court was mistaken in its description of Hasbro's invalidity contentions. The Court stated that "Until Hasbro's introduction of prior art, its sole basis for alleging invalidity of the '197 patent was a theory of prior use." Order at 2 n.1. First, Hasbro has consistently asserted that "Upon information and belief, the '197 Patent is invalid for failure to comply with conditions and requirements for patentability specified in 35 U.S.C. §§ 102, 103 and/or 112," which would include invalidity based on obviousness or anticipation. *See*, *e.g.*, Answer and Counterclaim [Docket No. 3] at 4 (First Affirmative Defense).

Second, Hasbro has asserted invalidity based on inequitable conduct on the part of Plaintiff, who had misrepresented the facts underlying his invention to the PTO. Specifically, Hasbro asserted a year and a half ago that Plaintiff had committed inequitable conduct by failing properly to disclose the fact that Albert Lizarraga had participated materially in the invention of the dice, and further that:

> the plaintiff breached his duty of candor and good faith to the U.S. Patent and Trademark Office, and that the patent is invalid and/or unenforceable as a result, by virtue of the plaintiff's affirmative misrepresentation of a material fact and/or failure to disclose material information, and/or submission of false material information, coupled with an intent to deceive, specifically by representing to the U.S. Patent and Trademark Office the fact that the plaintiff had discovered material advantages in the use of the die construction claimed in the '197 patent, and by implication that the plaintiff had manufactured and tested the claimed die construction, when, in fact, the plaintiff had never produced any die in the form claimed in the patent, and therefore could not have performed any testing or other analysis upon which the plaintiff could make any representation regarding discovered advantages to the die construction. The plaintiff and his counsel have information relevant to this contention.

*See* Techentin Decl. at **Exhibit B** at 3.

12 and there can be no excuse for "overlooking" the document because it was already in the hands of his attorneys. Plaintiff has used the same firm, Merchant & Gould of Minneapolis, for all of his patent work as well as this litigation. His primary attorney for prosecuting his patents was Julie Daulton, Esq., whom Hasbro deposed in this case and who testified that to her knowledge, her files had been reviewed in the context of this litigation. *See* J. Daulton Dep. at 19:5-23 (**Exhibit I**).[5] Asked to produce documents that refer or relate to prior art, Plaintiff refused to produce a document that was not just ***evidence*** of relevant prior art, it was an actual determination of the subject involving a back-and-forth between Plaintiff and the PTO.

Indeed, the documents that Plaintiff did elect to share with Hasbro appear to have been engineered specifically to avoid Hasbro's discovery of the PTO decision as it relates to Claim 1. The patent documents produced by Plaintiff included the following: (1) the patent in suit, (2) the prior art referred to on the face of the patent in suit, (3) the file history for the patent in suit, and (4) Plaintiff's other U.S. patents, ***except for the '720 patent***.[6] That is, Plaintiff never produced the very patent the application for which had been rejected in a manner that suggested a serious issue with validity of the patent in suit, and never produced the prior art referenced by the PTO in the context of his other applications for patents on the very same invention (nor has he produced any international patent applications or cited art from those patents). It appears that

[5] Merchant & Gould are, of course, highly qualified and nationally-recognized patent counsel. The lawyers certainly appreciated the significance of the PTO's review of continuation applications filed by the Plaintiff with respect to the patent that he seeks to enforce through litigation. It would be surprising, to say the least, if the litigators had not actively consulted with Ms. Daulton about Plaintiff's patents and the PTO's actions on the various applications, and even more surprising if they somehow failed to review their firm's own files. But even if they just completely failed to investigate the matter, Ms. Daulton's unquestionable knowledge of the PTO's rejection of Claim 1 is imputed to the other lawyers in her firm, which would include the litigators currently representing Plaintiff in this litigation. *See, e.g., Edwards v. Gould Paper Corp. Long Term Disability Plan*, 352 F. Supp. 2d 376, 381 (E.D.N.Y. 2005) ("It is well settled that the knowledge of a single attorney within a firm is to be imputed to the entire firm"). They knew the PTO had rejected Claim 1, and they knew it was never disclosed to Hasbro.

[6] Hasbro had not even noticed Plaintiff's omission of the '720 patent prior to this past week because the patent was publicly available and Hasbro had independently obtained Plaintiff's published patents, which are available on line at www.uspto.gov. Plaintiff's applications, however, are not available on line.

Plaintiff wanted this litigation to proceed without any serious investigation of the validity of his patent, and he tailored his document production accordingly.

Plaintiff's failure to produce this information to Hasbro was either intentional or the result of gross negligence. The PTO's initial rejection of Claim 1 of the '720 patent, although eventually allowed over the prior art, strongly suggests that Claim 1 of the '197 patent is likewise invalid or unenforceable. Plaintiff's attempt to enforce Claim 1 of the '197 patent against Hasbro may rise to the level of patent misuse and fraud, and may even render the crime-fraud exception to the attorney-client privilege applicable. *See, e.g.*, *Motorola v. Vosi Techn., Inc.* 2002 WL 1917256 at *6 (N.D.Ill. Aug. 19, 2002). For now, no discovery has been had on the subject and too few facts are known to address the issue directly. But whatever the ultimate fallout of Plaintiff's discovery violation may be, it would be entirely inappropriate to foreclose Hasbro from presenting evidence of invalidity of the patent in suit after Plaintiff hid the ball on similar invalidity evidence throughout the litigation.

### B. The Timing of Hasbro's Disclosure Was Substantially Justified and Is Harmless to Plaintiff.

Hasbro was substantially justified in disclosing its evidence of invalidity at the time that it did so. To put the matter as simply as possible, Hasbro could not have produced its invalidity evidence during discovery because it did not have that evidence. Rather, as explained in detail in the accompanying Declaration of Jeffrey K. Techentin, Hasbro had no hint that mineralogical or crystallographic references might exist that anticipated or rendered obvious Plaintiff's dice invention until well after discovery closed. Separately, but of equal importance, one of the references cited by Hasbro and excluded in the Order was not a crystallographic reference at all, but a dice patent. There can be no argument that Hasbro's citation of a dice patent as prior art would come as any sort of surprise to Plaintiff. Hasbro disclosed that patent to Plaintiff just two

weeks after Hasbro first reviewed it, and Plaintiff will have had the patent for more than six months before trial – six times the amount of time the Patent Act presumes to be sufficient for a party to prepare for trial. *See* 35 U.S.C. § 282. Under these circumstances, exclusion of the patent is not warranted.

#### 1. The Timing of Hasbro's Disclosure of Mineralogical References Was Substantially Justified and Harmless to Plaintiff.

Hasbro only happened upon the first mineralogical reference of interest in November 2006. Techentin Decl. at ¶ 17. Hasbro diligently followed up on that information, a process that included liaising with the Natural History Museum in London and attempting to locate and review numerous early 19th Century works, the vast majority of which were not in English and many of which were not available anywhere near Rhode Island. Over the course of several months, Hasbro amassed a significant amount of information that Plaintiff's basic shape was well known in crystallography and mineralogy as long as 200 years ago.

Even with this information, however, Hasbro did not believe that it had sufficient information to assert invalidity of the patent in light of those references, primarily because Hasbro lacked any information regarding a specific "teaching, suggestion, or motivation" to combine crystallographic or mineralogical references in the context of dice design. This so-called "TSM" test for obviousness resulted from controlling Federal Circuit precedent, which remained in force until April 30, 2007. On that date, the Supreme Court handed down its decision in *KSR v. Teleflex*, 550 U.S. ___, 127 S.Ct. 1727 (2007). In *KSR*, the Supreme Court rejected the "TSM test" as it had previously been applied in patent cases under Federal Circuit precedent. *See KSR*, 127 S.Ct. at 1742.

Until *KSR* came down, crystallographic references were, in Hasbro's view, inadequate to establish a good faith invalidity defense based on the doctrine of obviousness regardless of how

closely they might resemble Plaintiff's claimed invention. Given the applicability of the TSM test to obviousness, and Hasbro's conclusion that it had insufficient facts to assert obviousness under the TSM test in good faith, Hasbro could not have asserted that the crystallographic and/or mineralogical references rendered the '197 patent obvious consistent with its obligations under Fed. R. Civ. P. Rule 11 – even if it had been in possession of that information during the discovery period.

*KSR* changed that analysis. The Court rejected the Federal Circuit's rigid application of the test, which required courts to "look only to the problem the patentee was trying to solve" and that a "person of ordinary skill attempting to solve a problem will be led only to those elements of prior art designed to solve the same problem." *Id.* In the context of this case, that had meant that prior art references would not be relevant in the obviousness context unless they were designed to solve the problem of generating random numbers – the essential function of Plaintiff's dice. Of course, none of the mineralogical references or the crystal models that Hasbro had located had been designed for this purpose. As of April 30, 2007, that fact was no longer dispositive of the obviousness inquiry and from the very next day, Hasbro continued its review of the evidence with the benefit of the new legal parameters articulated by the Supreme Court.

Hasbro promptly undertook several actions necessary to determine whether, in fact, it could assert the mineralogical references as invalidating art. Hasbro continued to search for and identify references that would inform the question of obviousness. At the same time, because the obviousness inquiry is informed by the perspective of one of ordinary skill in the relevant art, Hasbro sought out and consulted with an experienced dice designer and manufacturer, James Koplow of Koplow Games in Boston, Massachusetts. Hasbro's initial consultation with Mr.

Koplow took place just over a month after the KSR decision. Due to scheduling difficulties, counsel was unable to meet with Mr. Koplow to discuss Hasbro's invalidity contentions until June 27, 2007, the day after Hasbro served its amended interrogatory response disclosing its invalidity contentions.

Hasbro did not allow the fact that it could not meet face-to-face with Mr. Koplow to delay the process leading up to the disclosure of the prior art to Plaintiff. From shortly after the *KSR* decision came down until almost immediately before Hasbro served its amended interrogatory response, Hasbro continued actively to research and draft the information that was ultimately contained in its amended interrogatory response. In the end, Hasbro completed its investigation, analysis, and drafting of its disclosure in less than four weeks. Hasbro did not even have copies of many significant prior art references until it was in the midst of drafting its response. For example, it did not receive the relevant pages from Beudant's *Traité Élémentaire de Minéralogie* until June 12, 2007, just two weeks before Hasbro disclosed them to Plaintiff. Hasbro's first record of having seen Dana's *Descriptive Mineralogy* was on June 7, 2007. Likewise, Hasbro did not obtain hard copies of Bournon's *Traité Complet de la Chaux Carbonattée et de l'Arragonite* until after it served its interrogatory response, opting to provide Plaintiff with an image found on the internet rather than waiting to disclose the reference.

Based on the preliminary information amassed prior to the *KSR* decision and the further information discovered during May and June 2007, and also based on conversations with Mr. Koplow and others experienced in dice design that took place during June 2007, Hasbro satisfied itself that the crystallographic and mineralogical references that it had located could be asserted in good faith to render the '197 patent invalid based upon the post-*KSR* standard. Hasbro therefore committed to supplementing its earlier interrogatory response with respect to invalidity.

Hasbro made that determination on June 25, 2007, and served the interrogatory response the very next day.

The basic facts are therefore (1) Hasbro did not have any of the invalidating art prior to the close of discovery, (2) Hasbro did not believe it could assert that the patent was obvious in light of the mineralogical references until after the *KSR* decision was issued on April 30, 2007, and (3) Hasbro disclosed the prior art less than two months after the *KSR* decision, on June 26, 2007. Although the disclosure came after the close of discovery, there was no undue delay on Hasbro's part, nor was there any intent on Hasbro's part to "ambush" Plaintiff with the information on the eve of trial (*see infra* at § I.C.).

**2. <u>There Was No Undue Delay in Disclosing U.S. Pat. No. 4,497,487</u>.**

Of course, not all of the prior art cited by Hasbro in its interrogatory response consisted of crystallographic references; one reference was to a dice patent, specifically U.S. Pat. No. 4,497,487 (the "'487 patent"). The '487 patent is the reference that the PTO studied in detail in its grant of Hasbro's request for *ex parte* reexamination of the '197 patent, concluding mathematically that the '487 patent appears to disclose Plaintiff's claimed die construction. *See* 10/30/07 Letter from J. Techentin to Smith, J.

There is no evidence to suggest that the '487 patent was ever seen in the course of Hasbro's initial prior art searches or at any time before June 10, 2007. It was not disclosed to the PTO by Plaintiff in the context of his application for the '197 patent, nor was it disclosed to Hasbro in the context of this litigation. Hasbro concedes that it is possible that the patent was seen at some point but that the reviewer disregarded the reference as irrelevant in light of the prosecution history of the '197 patent.

The reason the '487 patent would not immediately appear to be relevant is that the images that it contains bear a superficial, but misleading, similarity to another patent (U.S. Pat.

No. 5,224,708 issued to Gathman), which had been actively considered by the PTO. A side-by-side comparison of the drawings shows why a cursory review might not reveal the critical distinctions between the Crippen patent and the Gathman reference:

| **Gathman** | **Crippen** |
| --- | --- |
|   |   |

On June 10, 2007, however, counsel for Hasbro read the patent's claims and specifications carefully in light of the drawing sheets. As this Court determined in the context of its *Markman* ruling in this case just ten days earlier, the patent's drawings may disclose embodiments of the claimed invention additional to the disclosed preferred embodiments, and may even be a source of information relevant to determining the scope of the claims themselves. *See* Opinion and Order [Docket No. 97] at 12 (concluding that claims construction that excludes depicted dice would be "an absurd result"). Counsel's review revealed that the Crippen patent did not describe the die as having twenty equal sides, as did the Gathman patent, but only as a die with twenty sides; making no reference whatsoever to the sides being equal. More importantly, it described the pictures of the die, such as Figure 3 depicted above, as planar representations of the die, a description that is borne out by the presence of "hash marks" across the various faces of the die indicating that each of the faces is depicted as lying flat.

Hasbro disclosed the Crippen patent in its amended interrogatory response 15 days after it was discovered, on June 26, 2007.

**3. Neither Hasbro's Mineralogical References Nor The '487 Patent Should Be Excluded from Evidence.**

As the Court correctly observed in its Order, exclusion of evidence as a result of late disclosure is appropriate only where the "late disclosure" was neither substantially justified nor harmless. Order at 4-5. Taking all of the circumstances into account, Hasbro respectfully submits that its disclosure of the invalidity evidence in June 2007 was substantially justified; moreover, there is no evidence whatsoever that the ***timing*** of the disclosure is anything but harmless to Plaintiff – as opposed to its substance, which Hasbro submits is devastating to his claim of patent infringement.

Hasbro respectfully submits that reconsideration is appropriate on this matter because the decision to exclude the evidence was made without any evidence beyond the mere fact that Hasbro's disclosure came after the close of discovery. There is, of course, no bright line rule to the effect that matters disclosed after the discovery cutoff are excluded; therefore an inquiry into the justification for the timing of the disclosure and the potential unfair prejudice to the other party is warranted. *See*, *e.g.*, *Santiago-Diaz v. Laboratorio Clinico Y De*, 456 F.3d 272, 276-77 (1st Cir. 2006) ("preclusion is not a strictly mechanical exercise"). Because the Court excluded the evidence *sua sponte*, no such inquiry was made. Hasbro respectfully suggests that in light of the full facts, and particularly in light of the nearly seven months that Plaintiff will have had to prepare for the introduction of the evidence at trial, exclusion is not warranted.

Indeed, this case could not be any more different from that of *Zoltek Corp. v. U.S.*, cited in the Order at 4. *Zoltek* concerned a failure to produce documents despite discovery requests and even a motion to compel the documents where those documents had been in the hands of the non-producing party for three years. 71 Fed. Cl. 160, 164-66 (2006). Here, Hasbro did not have some of the information disclosed until literally days before its disclosure. The only way

Hasbro's disclosure could have come significantly earlier is if Hasbro had been able to divine the intention of the United States Supreme Court and begin the process of disclosing the prior art references before the *KSR* decision at the end of April 2007. As it was, Hasbro disclosed the information just two months later and what will be more than six months before trial. Although it is factually inapposite, the Court's reasoning in *Zoltek* is instructive. Despite the fact that the government failed to produce the documents for three years, the court in *Zoltek* still found that the "extreme sanction" of exclusion was not warranted, favoring a monetary sanction as a penalty for violating the duty to supplement the government's discovery responses and curing any prejudice by allowing an appropriate deposition. *Id.* at 171.[7] Here, there are no grounds for any monetary sanction, because Hasbro did not fail to supplement its responses with information that it had, and there is no need for further discovery to cure any prejudice to Plaintiff.[8]

The legal parameters governing the possible exclusion of this evidence are well settled. Rule 37 provides the sanction imposed by the Court in its Order, specifically subsection (c)(1) of the Rule, which states in relevant part:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial unless the failure was substantially justified or is harmless.

Substantial justification means justification sufficient to satisfy a reasonable person that parties could disagree as to whether compliance with the disclosure requirement was required. *See*

---

[7] Hasbro acknowledges that this case was not, as of the date of disclosure, on precisely the same procedural footing as the *Zoltek* case. When the *Zoltek* sanctions decision was made, there was no trial date set and discovery was ongoing. In this case, although there was no trial date set, discovery was closed and the setting of a trial date would have been the next logical step. However, any prejudice that might have inured to Plaintiff has been more than cured by the intervening months.

[8] Hasbro, and not Plaintiff, wanted to re-open discovery. That request was denied, and Hasbro is not moving for reconsideration of that decision. On the other hand, Plaintiff opposed the re-opening of discovery without ever

*Sheppard v. River Valley Fitness One*, 428 F.3d 1, 12 (1st Cir. 2005) (upholding sanctions against attorney for wrongful withholding of discovery). In the words of the Supreme Court, substantial justification means "'justified in substance or in the main — that is, justified to a degree that could satisfy a reasonable person.'" *Id.* (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). In passing on whether preclusion should be granted, the First Circuit has instructed courts to look to "'the history of the litigation, the proponent's need for the challenged evidence, the justification (if any) for the late disclosure, and the opponent's ability to overcome its adverse effects.'" *Santiago-Diaz*, 456 F.3d at 276-77 (quoting *Macaulay v. Anas*, 321 F.3d 45, 51 (1st Cir. 2003).

All of these factors militate against preclusion of the evidence. As for the "history of the litigation," it is Plaintiff, and not Hasbro, who has been derelict in discovery. *See supra* at § I.B. Hasbro's need of the evidence is paramount; without it, Hasbro is precluded from proving what the PTO will likely conclude, albeit possibly too late for this litigation: that Plaintiff should never have been issued his patent in the first place. The evidence of the patent's invalidity goes to the heart of Plaintiff's claims and amounts to a substantial defense that will be eliminated without the evidence. As explained above, the timing of Hasbro's disclosure was eminently justified, since it literally lacked the evidence, or any reasonable basis for obtaining the evidence, until well after the close of discovery.[9]

---

moving to exclude the invalidity evidence. Presumably, Plaintiff does not believe that any further discovery is necessary, in whatever form.

9 It is true that Hasbro could have found the '487 patent earlier than it did. As explained above, however, it required more than casual observation of the '487 patent to ascertain its true significance. Under those particular circumstances, Hasbro respectfully submits that it was duly diligent in its review of prior art patents and that its failure to identify that particular patent earlier is excusable. Certainly the Patent Act contemplates that some prior art will be located as little as 30 days prior to trial, and that is why the Code provides that the default is for such information to be admissible as of right if provided more than 30 days prior to trial. *See* 35 U.S.C. § 282; *see also Eaton Corp. v. Appliance Valves Corp.*, 790 F.2d 874 (Fed. Cir. 1986) (allowing presentation of prior art disclosed less than 30 days before trial where patentee was neither surprised nor prejudiced by its introduction). The fact that disclosure is also governed by the Federal Rules of Civil Procedure does not suggest that post-discovery disclosure

Finally, Plaintiff faces no burden whatsoever in overcoming the "adverse effects" of the timing of Hasbro's disclosure, a fact that is also fatal to any claim that Plaintiff would be harmed by the introduction of the invalidity evidence at trial. Plaintiff has stated affirmatively that his invention and the prior art cited by Hasbro are of such a low technological sophistication that they may readily be understood by a layperson. Plaintiff has asserted unambiguously that no expert testimony is necessary for the presentation of this prior art at trial, telling the Court that "Federal Circuit law is clear that in cases such as this, where the technology is easily understandable, expert testimony is unnecessary" and "the law is clear that [an expert] is not required." Plaintiff's Supplemental Memorandum in Opposition to Motion to Stay [Docket No. 110] at 2-3. Plaintiff did assert that he would need "a few weeks" to identify and retain an additional expert, but only in the event that the Court were to allow Hasbro to designate an expert. Unless the Court were to grant Hasbro's request to reopen expert discovery (and Hasbro is not seeking reconsideration of that portion of the Order), Plaintiff cannot have been "harmed" by having to seek out, retain, and present any additional expert testimony. If 30 days was sufficient for Plaintiff to identify, retain, and present an expert witness on the subject, Plaintiff cannot possibly articulate a basis for needing more than six months to prepare for the evidence to be presented at trial without an expert.

Plaintiff has now had all of the prior art references on which Hasbro intends to rely for four and a half months. Trial is still nearly two months away. Plaintiff does not need an expert. Plaintiff has offered no explanation of anything that he might need in order to prepare himself for the introduction of this evidence. Even if Plaintiff was surprised to learn that his "crystal" dice sold under the name "Crystal Caste" might have been anticipated or rendered obvious by other

---

mandates exclusion; rather, that just means that the disclosure of prior art references must also be examined under the factors applicable to other disclosures.

crystals, that surprise in the intervening months has surely given way to full and complete preparation for trial. There is no harm to Plaintiff and he is fully capable of overcoming any adverse effects from the timing of Hasbro's disclosure.

Because each and every factor applicable to determining whether to exclude the prior art evidence favors allowing it at trial, Hasbro respectfully requests that the Court reconsider its Order excluding that evidence.

**C. Hasbro Has Not "Ambushed" Plaintiff.**

In its Order, the Court concluded that Hasbro's disclosure of the Cited Prior Art after the discovery cutoff amounted to a "last minute ambush." Order at 4. With deference to the Court, this conclusion is unfounded. As explained below, Hasbro acted diligently to produce the information to Plaintiff and did not delay unnecessarily. But moreover, when Hasbro produced the information, it immediately offered various solutions designed precisely to avoid any prejudice to Plaintiff. Faced with Plaintiff's objection to the timing of the disclosure, Hasbro offered to meet and confer with Plaintiff's counsel on the subject. Plaintiff declined. Hasbro then invited Plaintiff to raise the matter immediately with the Court. Plaintiff declined that invitation as well. Hasbro raised the matter itself at the Chambers conference held on July 13, 2007.

At that conference, Hasbro suggested that the appropriate course of action in light of this substantial evidence of invalidity that would likely be considered by the United States Patent and Trademark Office ("PTO") was to stay the case in its entirety to permit the PTO to determine if the patent in suit is valid at all. Far from trying to "ambush" Plaintiff at trial, Hasbro was actively suggesting that there should be no trial at all, since that would be an enormous waste of resources (for the Court as well as the parties) in the likely event that the patent would be found

invalid. But even if the case were not to be stayed, Hasbro suggested that the Court reopen discovery for an appropriate period of time precisely to permit the parties to address the invalidity evidence so they would not be "ambushed" at trial.

If Hasbro had sprung this information at trial without having disclosed it, Plaintiff could genuinely complain of ambush. If Hasbro had fought to introduce the evidence without permitting Plaintiff the time he needed to consider the evidence, that might also constitute an ambush. But none of that happened. Rather, Hasbro disclosed the evidence promptly and made every effort to ensure that Plaintiff would have ample time to consider it before trial. In fact, Plaintiff had already been in possession of all of the information – the Cited Prior Art and Hasbro's contentions about its significance – for fully four months before the Court ordered it to be excluded, and will have had that information for more than six months before trial.

## III. Conclusion

For the foregoing reasons, Hasbro respectfully requests reconsideration of that portion of the Court's Order excluding Hasbro's mineralogical and crystallographic references and U.S. Pat. No. 4,497,487 from evidence at trial.

Respectfully submitted,

HASBRO, INC.
By its Attorneys,

/s/ Jeffrey K. Techentin__________
Todd D. White (#5943)
twhite@apslaw.com
Jeffrey K. Techentin (#6651)
jtechentin@apslaw.com
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
(401) 274-7200
Fax: (401) 751-0604/ 351-4607
Dated: November 14, 2007

Of Counsel:

David K. S. Cornwell, Esq.
davidc@skgf.com
Tracy-Gene G. Durkin, Esq.
tdurkin@skgf.com
Sterne Kessler Goldstein Fox
1100 New York Avenue, NW
Washington, D.C. 20005

**CERTIFICATE OF SERVICE**

TO:

Craig M. Scott, Esq.
Christine K. Bush, Esq.
Duffy & Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903

Thomas J. Leach, Esq.
Douglas J. Williams, Esq.
Anthony R. Zeuli, Esq.
Law Firm of Merchant and Gould P.C.
3200 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402-2215

David K. S. Cornwell, Esq.
Tracy-Gene G. Durkin, Esq.
Sterne Kessler Goldstein Fox
1100 New York Avenue, NW
Washington, D.C. 20005

I hereby certify that I filed the within Motion for Reconsideration and Memorandum of Law in support thereof through the ECF system on the 14th day of November, 2007, and that notice will be sent electronically to the above-named counsel who are registered participants identified on the Mailing Information for Case No. 05-229S.

/s/ Jeffrey K. Techentin_________

*434580_1*