UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MICHAEL BOWLING, a Resident of Arizona, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 05-229 S |
| HASBRO, INC., a Rhode Island Corporation, | : | |
| Defendant. | : | |

**DECLARATION OF JEFFREY K. TECHENTIN IN**
**SUPPORT OF MOTION FOR RECONSIDERATION**

JEFFREY K. TECHENTIN, under penalty of perjury, declares as follows:

1. I am a partner with the firm of Adler Pollock & Sheehan, P.C., attorneys for defendant Hasbro, Inc. ("Hasbro"). I submit this declaration based on personal knowledge in support of Hasbro's motion for reconsideration of this Court's ruling on Hasbro's Motion to Stay Proceedings Pending *Ex Parte* Reexamination of Patent or, in the Alternative, for Leave to Re-Open Expert Discovery (the "Motion to Stay").

2. Hasbro brought its Motion to Stay based upon two related facts: first, that Hasbro had discovered two independent bodies of prior art that Hasbro contends render the patent in suit (U.S. Pat. No. 5,938,197 (the "'197 patent")) to be invalid, and second, that Hasbro had requested that the United States Patent and Trademark Office ("PTO") conduct an *ex parte* reexamination of the '197 patent based on those prior art references (the "Cited Prior Art").

3. As indicated in its title, the Motion to Stay sought two forms of relief: that these proceedings be stayed pending the outcome of the PTO's consideration of Hasbro's request for

reexamination and, alternatively, that the Court re-open expert discovery to permit Hasbro to submit expert testimony with respect to the Cited Prior Art.

4. In its decision on the Motion to Stay, the Court denied both forms of relief requested by Hasbro. *See* Order [Docket No. 113] at 1.

5. In the Order, the Court found "the timing of events leading up to [the Motion to Stay]" to be dispositive. *Id.* The Court correctly noted that the discovery closure date was April 20, 2006, that Plaintiff had submitted an interrogatory to Hasbro during the discovery period seeking information regarding Hasbro's invalidity contentions, and that Hasbro did not disclose the Cited Prior Art until it served an amended interrogatory response on Plaintiff on June 26, 2007. *Id.* at 1-2. A copy of the amended interrogatory response is attached hereto as **Exhibit A**.[1]

---

[1] The Court was mistaken, however, in its description of Hasbro's invalidity contentions. The Court stated that "Until Hasbro's introduction of prior art, its sole basis for alleging invalidity of the '197 patent was a theory of prior use." Order at 2 n.1. First, Hasbro has consistently asserted that "Upon information and belief, the '197 Patent is invalid for failure to comply with conditions and requirements for patentability specified in 35 U.S.C. §§ 102, 103 and/or 112," which would include invalidity based on obviousness or anticipation. *See, e.g.*, Answer and Counterclaim [Docket No. 3] at 4 (First Affirmative Defense).

Second, Hasbro has asserted invalidity based on inequitable conduct on the part of Plaintiff, who had misrepresented the facts underlying his invention to the PTO. Specifically, Hasbro asserted a year and a half ago that Plaintiff had committed inequitable conduct by failing properly to disclose the fact that Albert Lizarraga had participated materially in the invention of the dice, and further that:

> the plaintiff breached his duty of candor and good faith to the U.S. Patent and Trademark Office, and that the patent is invalid and/or unenforceable as a result, by virtue of the plaintiff's affirmative misrepresentation of a material fact and/or failure to disclose material information, and/or submission of false material information, coupled with an intent to deceive, specifically by representing to the U.S. Patent and Trademark Office the fact that the plaintiff had discovered material advantages in the use of the die construction claimed in the '197 patent, and by implication that the plaintiff had manufactured and tested the claimed die construction, when, in fact, the plaintiff had never produced any die in the form claimed in the patent, and therefore could not have performed any testing or other analysis upon which the plaintiff could make any representation regarding discovered advantages to the die construction. The plaintiff and his counsel have information relevant to this contention.

*See* **Exhibit B** at 3.

6. As of June 26, 2007, this case was not assigned to the trial calendar. The Court issued a trial notice on October 31, 2007, assigning the matter to the December 2007 trial calendar. Docket No. 112. Today, the Court issued a Notice withdrawing the prior Trial Notice and indicating that the case is to be assigned to the January 2008 trial calendar.

7. In addition to denying the relief sought by Hasbro, the Court concluded that Hasbro's "late disclosure [of the Cited Prior Art] is neither harmless nor justified," and therefore ruled as an evidentiary matter that the Cited Prior Art would be excluded from trial. Order at 4.

8. Plaintiff had never moved, and still has not moved, to exclude the Cited Prior Art.

9. In excluding the Cited Prior Art as evidence at trial on the grounds that it was not timely disclosed in violation of Fed. R. Civ. P. Rules 26(e)(2) and 37(c)(1), the Court necessarily found that Hasbro's failure to supplement its interrogatory response earlier was not either (a) substantially justified, or (b) harmless.

10. Because the Court's evidentiary ruling was made without any motion having been brought by Plaintiff, Hasbro has never had an opportunity to respond to such a motion and therefore has not offered any evidence as to why the timing of its disclosure was substantially justified. Also, because Plaintiff has never moved to exclude the evidence, he has never made any representation about how the timing of the disclosure has been unfairly prejudicial to him, nor has Hasbro had an opportunity to demonstrate that the timing of the disclosure was harmless.

11. In order that the Court might reconsider its Order based upon a record of the actual events underlying the timing of Hasbro's disclosure of the Cited Prior Art, I offer this declaration in support of Hasbro's motion for reconsideration of the Order excluding the Cited Prior Art from evidence at trial.

**Hasbro's Initial Investigation of Prior Art**

12. Hasbro did not fail to conduct a prior art analysis before the expiration of the discovery period. Rather, Hasbro, through counsel and outside agencies, undertook a reasonable examination of what it believed to be the relevant field of prior art: dice, patents involving dice, and printed publications concerning dice. Hasbro searched international patents, U.S. patents, websites containing collections of dice and even consulted with its in-house personnel familiar with dice. Hasbro undertook this examination before and during the discovery period and even disclosed the investigations on its privilege log. *See, e.g.*, Amended Privilege Log at 16-17 (showing validity searches by Polyresearch Service, Matt Kasap, Inc., and others).

13. Hasbro's validity searches did not reveal the Cited Prior Art.

14. During discovery, Hasbro therefore lacked a factual basis upon which to assert that Plaintiff's patent was invalid as "anticipated" under 35 U.S.C. § 102 or "obvious" under 35 U.S.C. § 103, and therefore had nothing to disclose as such in response to Plaintiff's interrogatory on the subject.

15. None of Hasbro's counsel in this case, including myself, has any specialized knowledge or expertise with respect to dice or dice design beyond the knowledge and experience gained through their role as counsel to Hasbro in this case.

**Hasbro's Discovery of Crystallographic References**

16. After the close of discovery in April 2006, Hasbro first learned that there might be references outside the limited array of existing dice and dice patents that might be relevant to the patentability of Plaintiff's invention under either 35 U.S.C. § 102 or § 103.

17. Specifically, on approximately November 17, 2006, a month after briefing was complete on dispositive motions, I was informed by my co-counsel that he had recently found a

book on minerals while at the library with his daughter, and that the book contained a picture of a crystal model from the early 19th Century that reportedly had a shape similar to Plaintiff's dice. Along with that information he sent this picture of the crystal model:



The model on the right, I later learned, was said to have been made by Jacques Louis Compte de Bournon, a French aristocrat who was a pioneer in the field of mineralogy.

18. At the time I received this information from my co-counsel, and through and until after April 30, 2007, when the United States Supreme Court decided the case of *KSR v. Teleflex*, 550 U.S. ___, 127 S.Ct. 1727 (2007), Hasbro had no knowledge or information of any "teaching, suggestion, or motivation" (as that term was used in the relevant case law) to combine crystallographic or mineralogical references in the context of dice design. Mere crystallographic references were therefore, in Hasbro's view, inadequate to establish a good faith invalidity defense based on the doctrine of obviousness regardless of how closely they might resemble Plaintiff's claimed invention.

19. Given the applicability of the TSM test to obviousness, and Hasbro's conclusion that it had insufficient facts to assert obviousness under the TSM test in good faith, Hasbro could not have asserted that the crystallographic and/or mineralogical references rendered the '197 patent obvious consistent with its obligations under Fed. R. Civ. P. Rule 11 – even if it had been in possession of that information during the discovery period.

20. Nevertheless, I continued my investigation in the hopes of finding either (a) anticipating references as to which the so-called TSM test would not be applicable, or (b)

additional information, including an express teaching, suggestion or motivation to combine the prior art teachings, sufficient to establish a good faith basis for an assertion of invalidity under the doctrine of obviousness.

21. My investigation of the Compte de Bournon's crystal model led me to the Natural History Museum in London, United Kingdom, which I was informed held hundreds of crystal models of various shapes. In approximately December 2006, I began to correspond with one of the curators of the Natural History Museum in order to inquire about the nature of the collection, the specific shapes of crystal forms represented, and whether there were printed publications containing photographs of all or parts of the collection (which might constitute prior art under the Patent Act). My contact at the museum described the models for me and told me that, to his knowledge, there had been no publications containing photographs of the models. Based on his representations of the shapes, I ordered photographs of several crystal models on Hasbro's behalf.

22. On January 15, 2007, I first received photographs of various crystal models from the Natural History Museum, including models from the Bournon collection. Among those photographs was one of the following crystal model, the shape of which is virtually identical to the six-sided die claimed in the '197 patent:



23. The crystal model depicted above is not itself considered to be prior art under the Patent Act because it is an object in a non-public collection housed outside the United States, and

had not been used in the United States. My discovery of that model was therefore only a hint that there might be invalidating prior art references; by itself, it was irrelevant as a matter of law.

24. At approximately the same time, I began investigating mineralogy and crystallography treatises to determine if there were references to the same crystal form in printed publications that would constitute prior art under the Patent Act. Some of the references contained shapes that were similar in some respects to Plaintiff's dice, such as the following, which according to my records I found on or about February 12, 2007:



Fig. 201.

25. In addition to checking crystallography and mineralogy texts generally, I also sought to determine whether Bournon's crystal form (of which he had made a model) had been depicted in any printed publications. My research suggested that in the early 19th Century, another Frenchman by the name of François Sulpice Beudant had been charged with cataloguing Bournon's collection of crystals, and therefore I looked for references by Beudant to determine if he had included a drawing of the particular Bournon model now housed in London.

26. I also continued to search other early mineralogical references (my review of the literature having found that after the 19th Century, the academic interest in crystallography *per se* waned in favor of geology, rendering modern references less helpful). This task was complicated by the fact that most of the references that I was searching were in French and German, and I have only limited fluency in French and no significant knowledge of German.

27. From early 2007 until the end of April, I continued my research and found numerous references in the fields of mineralogy and crystallography that contained shapes similar or identical to shapes utilized in dice design, including shapes similar to Plaintiff's claimed design.

**The *KSR* Decision and Hasbro's Assertion of Obviousness**

28. On April 30, 2007, the United States Supreme Court issued its opinion in *KSR v. Teleflex*, referenced above. In that decision, the Supreme Court rejected the "TSM test" as it had previously been applied in patent cases under Federal Circuit precedent. *See KSR*, 127 S.Ct. at 1742.

29. Specifically, the Court rejected the Federal Circuit's rigid application of the test, which required courts to "look only to the problem the patentee was trying to solve" and that a "person of ordinary skill attempting to solve a problem will be led only to those elements of prior art designed to solve the same problem." In the context of this case, that had meant that prior art references would not be relevant in the obviousness context unless they were designed to solve the problem of generating random numbers. Of course, none of the mineralogical references or the crystal models created by Bournon or others, had been designed for this purpose.

30. However, with the *KSR* decision, Hasbro's analysis of the information that it had with regard to the validity of the '197 patent was fundamentally changed. From the day after the *KSR* decision came down, Hasbro began to review the evidence in light of these new legal parameters.

31. Because the obviousness inquiry is informed by the perspective of one of ordinary skill in the relevant art, Hasbro sought out and consulted with an experienced dice designer and manufacturer, James Koplow of Koplow Games in Boston, Massachusetts. Hasbro's initial

consultation with Mr. Koplow took place in June 2007. Due to scheduling difficulties among myself and Mr. Koplow, I was not able to meet with him to discuss Hasbro's invalidity contentions until June 27, 2007, the day after Hasbro served its amended interrogatory response disclosing the Cited Prior Art.

32. Hasbro did not wait for input from outside experts to begin the process leading up to the disclosure of the Cited Prior Art to Plaintiff. From shortly after the *KSR* decision came down until almost immediately before Hasbro served its amended interrogatory response, I was actively researching and drafting the information that was ultimately contained in the interrogatory response.

33. During the initial portion of this process, various motions (some of which were potentially case-dispositive) were under advisement with the Court. On May 30, 2007, the Court ruled on the pending motions. Once that ruling had issued, Hasbro knew that the matter would proceed to trial in the ordinary course. Precisely to avoid unfair charges that Hasbro was attempting to "ambush" Plaintiff with this information, Hasbro (and I in particular, acting on its behalf) significantly "stepped up" efforts to determine whether there was a good faith basis to assert invalidity under 35 U.S.C. § 102 or § 103 and, if so, to disclose that contention. To that end, Hasbro completed its investigation, analysis, and drafting of its disclosure in less than four weeks.

34. In the course of drafting the interrogatory response, I discovered or came into possession of additional references that either anticipate or render obvious the claims of the '197 patent. On June 7, 2007, I contacted the Boston Athenaeum to request that they send me copies of the relevant pages from Beudant's *Traité Élémentaire de Minéralogie*. I received those pages

in electronic form on June 12, 2007. The images provided by the Athenaeum included the following:




35. At approximately the same time, I and others acting on Hasbro's behalf sought out a copy of Bournon's *Traité Complet de la Chaux Carbonattée et de l'Arragonite*. I had found a scanned copy of the book on the internet site http://books.google.com (and was therefore able to discern that it contained what appeared to be an anticipating image), but was unable to locate a physical copy in time to include it with Hasbro's supplemental interrogatory response. Rather than waiting to have a copy of the actual book, Hasbro included a copy of the scanned image in its interrogatory response:




Ultimately, I was able to find a copy of the book at the Linda Hall Library in Kansas City, Missouri and I immediately requested a copy of relevant pages on a "rush" basis. Those pages were delivered to me on July 5, 2007, and have since been produced to Plaintiff.

36. Other references included among the Cited Prior Art were likewise not in Hasbro's possession until just before the amended interrogatory response was served on Plaintiff. The earliest reference to Dana's *Descriptive Mineralogy* (cited in the amended interrogatory

response at 6) that I have been able to locate in my own files is June 7, 2007, less than three weeks before service of the interrogatory response.

37. Based on the preliminary information amassed prior to the *KSR* decision and the further information discovered during May and June 2007, and also based on conversations with Mr. Koplow and others experienced in dice design that took place during June 2007, Hasbro satisfied itself that the crystallographic and mineralogical references that it had located could be asserted in good faith to render the ’197 patent invalid based upon the post-*KSR* standard. Hasbro therefore committed to supplementing its earlier interrogatory response with respect to invalidity. Hasbro made that determination on June 25, 2007, and served the interrogatory response the very next day.

**<u>The Discovery of the ’487 Patent</u>**

38. During the course of my researching and drafting the amended interrogatory response, I again reviewed various dice patents online in order to include images from the patents to illustrate the principle that the prior art contained numerous shapes that were identical, or nearly identical, to known crystal forms, as in the following example (from page 13 of the amended interrogatory response):


25


26


27

39. On June 10, 2007, I was engaged in this process and happened across U.S. Pat. No. 4,497,487 (the "’487 patent"). The ’487 patent is among the Cited Prior Art, and the reference that the PTO studied in detail in its grant of Hasbro’s request for *ex parte* reexamination of the ’197 patent.

40. I do not recall having seen the ’487 patent prior to June 10, 2007. I have reviewed the results of the validity searches conducted on behalf of Hasbro in connection with this action, and the ’487 is not disclosed in any of those searches. It was not disclosed to the PTO by Plaintiff in the context of his application for the ’197 patent, nor was it disclosed to Hasbro in the context of this litigation. However, it is possible that it was seen but that the reviewer disregarded the reference as irrelevant in light of the prosecution history of the ’197 patent.

41. The reason the ’487 patent would not immediately appear to be relevant is that the images that it contains bear a superficial, but misleading, similarity to another patent (U.S. Pat. No. 5,224,708 (issued to Gathman), which had been actively considered by the PTO. A side-by-side comparison of the drawings shows why a cursory review might not reveal the critical distinctions between the Crippen patent and the Gathman reference:

| **<u>Gathman</u>** | **<u>Crippen</u>** |
|---|---|
|  |  |

42. On that Sunday morning, however, I did more than glance at the pictures and read through the claims to determine what was disclosed in the Crippen patent; I also read the patent’s claims and specifications carefully in light of the drawing sheets. As this Court determined in the context of its *Markman* ruling in this case just ten days earlier, the patent’s drawings may

disclose embodiments of the claimed invention additional to the disclosed preferred embodiments, and may even be a source of information relevant to determining the scope of the claims themselves. *See* Opinion and Order [Docket No. 97] at 12 (concluding that claims construction that excludes depicted dice would be "an absurd result").

43. The Crippen patent, I found, did not describe the die as having twenty equal sides, as did the Gathman patent, but only as a die with twenty sides; it made no reference whatsoever to the sides being equal.[2] More importantly, it described the pictures of the die, such as Figure 3 depicted above, as planar representations of the die, a description that is borne out by the presence of "hash marks" across the various faces of the die indicating that each of the faces is depicted as lying flat.

44. Based on my review of the Crippen patent, I immediately saved the patent as a .pdf image to my home computer. The "Document Properties" for that file (attached as **Exhibit C**) show that the file was created June 10, 2007 at 6:41 a.m with the file name "Pat 4497487 (anticipating art).pdf".

45. Hasbro disclosed the Crippen patent in its amended interrogatory response just two weeks later, on June 26, 2007.

**<u>Communications with Plaintiff's Counsel After Hasbro's Disclosure</u>**

46. Just hours after Hasbro served its amended interrogatory response on June 26, 2007, counsel for Plaintiff wrote to me to demand that Hasbro withdraw its invalidity

---

[2] The PTO has expressly concluded that the Gathman patent discloses a die with twenty equal sides. That conclusion was central to its decision on Plaintiff's application that he would have to amend his claims to indicate that the extension member facets and end cap facets would be of different surface areas in order to overcome Gathman.

contentions and asked me to "contact [him] tomorrow to meet and confer on this issue." **Exhibit D**.

47. I responded by e-mail immediately, advising that I would be unavailable at specified times and inviting Plaintiff's counsel to advise what time would be convenient for the meet-and-confer. **Exhibit E**.

48. I received no response to that e-mail, so on the next day (the day on which Plaintiff's counsel had asked to meet and confer) I sent another e-mail offering to meet and confer. **Exhibit F**.

49. Immediately after sending my second e-mail, I received another letter by facsimile from Plaintiff's counsel. **Exhibit G**. In his second letter, Plaintiff's counsel made no mention of meeting and conferring, but instead reiterated his demand that Hasbro withdraw its invalidity contentions. The letter complained about the timing of the disclosure and accused Hasbro of "vexatious" litigation tactics, but did not articulate any manner in which Plaintiff would be unduly prejudiced by Hasbro's invalidity contentions.

50. I responded by e-mail within the hour to inquire whether Plaintiff had any genuine interest in resolving the issue promptly or just wanted to complain about the timing (**Exhibit H**):

> I received your second letter. I'm guessing this means that, contrary to your letter last evening, you don't want to talk about this situation. Suffice it to say that we disagree.
>
> The question remains: would you like to try to confer with the court on this issue soon, or wait for the scheduled conference? As I said in my e-mail yesterday, we're happy to do either one and would certainly not object to *pro hac* counsel appearing telephonically (I know there were difficulties scheduling the conference for a time when you, Doug, and the judge were available in person). Unless we hear to the contrary, we'll just assume you wish to proceed on the 13th.

51. Plaintiff's counsel responded that Plaintiff had no interest in addressing the issue before the previously-scheduled chambers conference on July 13, 2007, more than two weeks after Hasbro served its amended interrogatory response. **Exhibit I**.

52. At the chambers conference, counsel and the Court discussed the impact of Hasbro's assertion of the Cited Prior Art as invalidating and Hasbro's request that the PTO conduct an *ex parte* reexamination of the patent. After discussion, it was decided that Hasbro would file a motion to stay or, in the alternative, to reopen expert discovery. Counsel for Hasbro voluntarily undertook an accelerated briefing schedule in order not to delay matters more than necessary. Citing international travel plans, Plaintiff's counsel requested and received more time than would normally be permitted for briefing.

53. Once briefing was complete on the Motion to Stay, the Court heard oral argument and, at the end of the hearing, directed further briefing on certain limited issues. The Court initially directed simultaneous briefing but, at the request of Plaintiff's counsel, ultimately permitted Plaintiff additional time after Hasbro's brief to file his supplemental materials.

54. Plaintiff has never moved, *in limine* or otherwise, to exclude the Cited Prior Art from evidence at trial, nor has he ever offered to do so or stated any intention of doing so.

55. Plaintiff has never articulated any theory under which he would be harmed – beyond the simple fact that his patent might be found invalid – by the timing of Hasbro's disclosure of the Cited Prior Art.

56. If this matter proceeds to trial on or about January 8, 2007, as is presently anticipated, Plaintiff will have had the Cited Prior Art and a full explanation of Hasbro's invalidity contentions for over six months prior to the start of trial.

57. Plaintiff has asserted unambiguously that no expert testimony is necessary for the presentation of the Cited Prior Art at trial, telling the Court that "Federal Circuit law is clear that in cases such as this, where the technology is easily understandable, expert testimony is unnecessary" and "the law is clear that [an expert] is not required." Plaintiff's Supplemental Memorandum in Opposition to Motion to Stay [Docket No. 110] at 2-3. Plaintiff did assert that he would need "a few weeks" to identify and retain an additional expert, but only in the event that the Court were to allow Hasbro to designate an expert.

58. One component of Plaintiff's contention that no expert testimony is necessary is that the technology involved is readily understandable and that the appropriate skill level is that of a lay person; in other words, the judge and the jury are equally well equipped to consider the question of obviousness as someone who actively designs dice. *Id.*

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 14, 2007, in Providence, Rhode Island.

JEFFREY K. TECHENTIN

**CERTIFICATE OF SERVICE**

TO:

Craig M. Scott, Esq.
Christine K. Bush, Esq.
Duffy & Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903

Thomas J. Leach, Esq.
Anthony R. Zeuli, Esq.
Douglas J. Williams, Esq.
Law Firm of Merchant and Gould P.C.
3200 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402-2215

David K. S. Cornwell, Esq.
Tracy-Gene G. Durkin, Esq.
Sterne Kessler Goldstein Fox
1100 New York Avenue, NW
Washington, D.C. 20005

I hereby certify that I filed the within Declaration of Jeffrey K. Techentin through the ECF system on the 14th day of November, 2007, and that notice will be sent electronically to the above-named counsel who are registered participants identified on the Mailing Information for Case No. 05-229S.

/s/ Jeffrey K. Techentin________

*434300_1*