# EXHIBIT A

# Hasbro's Proposed Jury Instructions


I. Pre-Trial Instructions ..... 2
A. The Nature of the Action and the Parties ..... 2
B. United States Patents ..... 3
C. Patent Litigation ..... 4
D. Contentions of the Parties ..... 5
E. Trial Procedure ..... 7
F. Glossary of Patent Terms ..... 8
II. Post Trial Instructions ..... 9
A. Patent Instructions ..... 9
1. Summary of Patent Issues ..... 9
2. Claim Construction – Generally ..... 10
3. Claim Construction for the Case ..... 11
4. Infringement – General ..... 12
5. Direct Infringement – Knowledge of Patent or Intent to Infringe is Immaterial ..... 13
6. Direct Infringement – Literal Infringement ..... 14
7. Infringement of Dependent Claims ..... 15
8. Direct Infringement – Infringement Under the Doctrine of Equivalents ..... 16
9. Limitations on the Doctrine of Equivalents – Prior Art ..... 17
10. Limitations on the Doctrine of Equivalents – Prosecution History Estoppel ..... 18
11. Limitations on the Doctrine of Equivalents – Subject Matter Dedicated to the Public 19
12. Summary of Invalidity Defense ..... 20
13. Derivation ..... 21
14. Prior Public Use ..... 22
15. Inequitable Conduct - Generally ..... 23
16. Materiality ..... 24
17. Intent to Deceive or Mislead ..... 25
18. Balancing of Materiality and Intent ..... 26
19. Damages – Generally ..... 27
20. Date Damages Begin ..... 28
21. Reasonable Royalty ..... 29
22. Reasonable Royalty – Definition ..... 30
23. Reasonable Royalty – Relevant Factors ..... 31
24. Reasonable Royalty – Timing ..... 33
25. Willful Infringement ..... 34
26. Copyright Infringement - Generally ..... 35
B. Copyright Instructions ..... 36
1. Elements of a Copyright Infringement Claim ..... 36
2. Burden of Proof ..... 37
3. Ownership of the Copyright ..... 38
4. Copying ..... 39
5. No Requirement that Infringer Manufactured or Copied ..... 41
6. Multiple Infringements ..... 42
7. Damages ..... 43

# I. PRE-TRIAL INSTRUCTIONS

## A. The Nature of the Action and the Parties

This is a patent and copyright case. The patent involved in this case relates to playing dice. That is, dice such as one might use in playing a board game.

During the trial, the parties will offer testimony to familiarize you with dice.

The United States Patent and Trademark Office has granted a patent to Mr. Bowling for an invention relating to dice. Mr. Bowling is the owner of the patent, which is identified by the Patent Office number: 5,938,197 (which may be called "the '197 patent"). This patent may also be referred to as "Mr. Bowling's patent."

The copyrights involved in this case relate to fictional monsters that are part of the game "Dungeons and Dragons," which is sold by Hasbro. Hasbro has registered works with the United States Copyright Office that have been given registration numbers TX-1-314-910; TX-1-134-908; TX-2-191-165; TX-2-653-882; TX-2-818-515; TX-3-643-953; TX-3-223-879; TX-4-182-004; TX-4-143-286; TX-4-375-067; TX-4-334-621; TX-4-334-620; TX-5-364-554; TX-5-817-950; TX-6-001-623; VA-934-193; VA-941-205; VA-954-938; VA-1-126-351; VA-1-130-842; and VA-1-290-942.

During the trial, the parties will offer testimony to familiarize you with the copyrights at issue.

Source: American Intellectual Property Law Ass'n, *AIPLA's Model Patent Jury Instructions* (2005).

**B. United States Patents**

A valid United States patent gives its owner the right to exclude others from making, using, offering to sell, or selling the patented invention within the United States or importing it into the United States. During the trial, the parties may offer testimony to familiarize you with how one obtains a patent from the United States Patent and Trademark Office (sometimes referred to as “the PTO”).

I will briefly describe some of the terms for you so that you have some background in patent terminology. The Patent and Trademark Office, the PTO, is in the Washington, DC area and is an agency of the Federal Government. It has more than three-thousand technically educated examiners who examine applications for patents.

The application is the initial set of papers filed with the PTO by the applicant. In addition to some other papers such as the inventor’s oath, the application includes a specification, which must have a written description of the invention telling what the invention is, how it works, and how to make and use it so as to enable others skilled in the art to do so and what the inventor believed at the time of filing to be the best way of making his or her invention. The specification concludes with one or more numbered sentences. These are the claims. The purpose of the claims is to particularly point out what the applicant regards as the invention. When the patent is eventually issued by the PTO, the claims define the scope of the patent owner’s exclusive rights during the life of the patent. It is my job to decide the meaning of the patent claims. Before you decide any questions concerning patent infringement or validity, I will tell you the meaning of the claims of the ‘197 patent. After the applicant files the application, a PTO examiner reviews (or examines) the patent application to determine whether the claims are patentable and whether the specification adequately describes the invention claimed. In examining a patent application, the patent examiner makes a search of the PTO records for prior art to the patent application claims. The patent examiner considers, among other things, whether each claim defines an invention that is new, useful, and not obvious in view of this prior art. The prior art is defined by statute and, when the parties are done presenting evidence, I will give you specific instructions as to what constitutes prior art in this case. But generally it is technical information and knowledge that was known to the public either before the invention by the applicant or more than a year before the filing date of the patent application.

Following the prior art search and examination of the application, the patent examiner advises the applicant in writing what the patent examiner has found and whether he has “allowed” any claim. This writing from the patent examiner is called an “office action.” More often than not, the initial office action by the patent examiner rejects the claims. The applicant then responds to the office action and sometimes changes the claims or submits new claims. This process may go back and forth between the patent examiner and the applicant for several months or even years until the patent examiner is satisfied that the application and claims are patentable.

The collection of papers generated by the patent examiner and the applicant during this time of corresponding back and forth is called the “prosecution history.” This history of written correspondence is contained in a file in the PTO, and consequently some people call this prosecution history the “file history” or the “file wrapper.”

Source: American Intellectual Property Law Ass’n, *AIPLA’s Model Patent Jury Instructions* (2005).

## C. Patent Litigation

Someone is said to be infringing on claims of a patent when they, without permission from the patent owner, import, make, use, offer to sell, or sell the patented invention, as defined by the claims, within the United States before the term of the patent expires. A patent owner who believes someone is infringing on the exclusive rights of the patent may bring a lawsuit like this to stop the alleged infringing acts and recover damages. The patent owner has the burden to prove infringement of the claims of the patent. The patent owner also has the burden to prove damages caused by that infringement, which are adequate to compensate for the infringement. Damages may not be less than a reasonable royalty for the use made of the invention.

A person sued for allegedly infringing a patent can deny infringement and also can defend by proving the asserted claims of the patent are invalid or unenforceable. The accused infringer has the burden to prove invalidity by clear and convincing evidence. In evaluating infringement or invalidity, each claim is to be evaluated independently.

I will now briefly explain the parties' basic contentions in more detail.

Source: American Intellectual Property Law Ass'n, *AIPLA's Model Patent Jury Instructions* (2005).

### D. <u>Contentions of the Parties</u>

Mr. Bowling contends that Hasbro made, used, offered to sell, or sole a product that infringes claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 16, 17, 18, and 19 of the '197 patent. Mr. Bowling has the burden of proving that Hasbro infringes the '197 patent by a preponderance of the evidence. That means that Mr. Bowling must show that it is more likely that Hasbro's die infringes than it does not infringe.

There are two ways in which a patent claim can be directly infringed. First, a claim can be literally infringed. Second, a claim can be infringed under what is called the "doctrine of equivalents". To determine literal infringement, you must compare the accused product with each claim that Mr. Bowling asserts is infringed. It will be my job to tell you what the patent claims mean. You must follow my instructions as to the meaning of the patent claims.

A patent claim is literally infringed only if Hasbro's product includes each and every element in that patent claim. If Hasbro's product does not contain one or more elements in that claim, Hasbro does not literally infringe that claim. You must determine literal infringement with respect to each patent claim individually.

You may find that Hasbro's product infringes a claim of the '197 patent even if not every element of that claim is present in Hasbro's product. However, to do so, you must find that there is an equivalent component in Hasbro's product for each element of the patent claim that is not literally present in Hasbro's product. This is called infringement under the doctrine of equivalents.

Mr. Bowling has the burden of proving by a preponderance of the evidence that Hasbro's product contains the equivalent of each element of the claimed invention that is not literally present in Hasbro's die.

Hasbro denies that it infringed the '197 patent. Hasbro also contends that even if it infringed the '197 patent, Mr. Bowling's failure to mark his patented dice with patent numbers precludes Mr. Bowling from collecting any damages for any infringement prior to the date on which Mr. Bowling placed Hasbro on notice of the alleged infringement.

Hasbro also contends that the '197 patent is invalid or unenforceable. Hasbro contends that the patent is invalid because Mr. Bowling's invention was derived from another person who had completely conceived of the invention and communicated that conception to Mr. Bowling. Hasbro also contends that the patent is invalid because the invention had been in public use more than one year prior to Mr. Bowling's patent application. Hasbro also contends that the patent is unenforceable due to the inequitable conduct of Mr. Bowling, who Hasbro contends made material misstatements of fact to the PTO in order to obtain the '197 patent.

Invalidity and unenforceability are defenses to infringement. Therefore, even though the PTO examiner has allowed the claims of the '197 patent, you, the jury, have the ultimate responsibility for deciding whether the claims of the '197 patent are valid and enforceable. Hasbro bears the burden of proving invalidity or unenforceability by clear and convincing evidence. This is a higher burden than a preponderance of the evidence, but it does not require proof beyond a reasonable doubt. Clear and convincing evidence is evidence that shows it is highly probable that the claims are invalid.

Mr. Bowling claims that he has suffered damages as a result of Hasbro's infringement in the form of a reasonably royalty on each of Hasbro's sales of an infringing product. I will explain to you at the end of the case how a reasonable royalty is determined. Mr. Bowling must prove by

the more probable than not standard the damages he has suffered as a result of Hasbro's alleged infringement.

Source: American Intellectual Property Law Ass'n, *AIPLA's Model Patent Jury Instructions* (2005).

## E. **Trial Procedure**

We are about to commence the opening statements in the case. Before we do that, I want to explain to you a little bit about the procedures that we will be following during the trial and the format of the trial. This trial, like all jury trials, comes in six phases. We already have been through the first phase, which is to select you as jurors. We are now about to begin the second phase, the opening statements. The opening statements of the lawyers are statements about what each side expects the evidence to show. The opening statements are not evidence in the case.

The evidence comes in the third phase, when the witnesses will take the witness stand and the documents will be offered and admitted into evidence. In the third phase, Mr. Bowling goes first in calling witnesses to the witness stand. These witnesses will be questioned by Mr. Bowling's counsel in what is called direct examination. After the direct examination of a witness is completed, the opposing side has an opportunity to cross-examine the witness. After Mr. Bowling has presented his witnesses, Hasbro will call its witnesses, who will also be examined and cross-examined. The parties may present the testimony of a witness by reading from their deposition transcript or playing a videotape of the witness' prior deposition testimony. A deposition is the sworn testimony of a witness taken before trial and is entitled to the same consideration as if the witness had testified at trial.

The evidence often is introduced somewhat piecemeal, so you as jurors need to keep an open mind as the evidence comes in. Wait until all the evidence comes in before you make any decision. In other words, keep an open mind throughout the entire trial.

After we conclude the third phase, the lawyers again have an opportunity to talk to you in what's called "closing argument," which is the fourth phase. Again, what the lawyers say is not evidence. The lawyers' closing arguments to you are for the purpose of helping you in making your decisions.

The fifth phase of the trial is when I read you the jury instructions. In that phase, I will instruct you on the law. I have already explained a little bit about the law to you. But later, in this fifth phase of the trial, I will explain the law in much more detail.

Finally, in the sixth phase of the trial it will be time for you to deliberate. You can then evaluate the evidence, discuss the evidence among yourselves and make a decision in the case. You are the judges of the facts. I will explain to you the rules of law that apply to this case, and I will also explain to you the meaning of the patent claims. You must follow my explanation of the law and the claims whether you agree with me or not. Nothing I say or do during the course of the trial is intended to indicate what your verdict should be.

Source: American Intellectual Property Law Ass'n, *AIPLA's Model Patent Jury Instructions* (2005).

**F.** Glossary of Patent Terms

**Application –** The initial papers filed by the applicant in the United States Patent and Trademark Office (also called the Patent Office or PTO).
**Claims –** The numbered sentences appearing at the end of the patent that define the invention. The words of the claims define the scope of the patent owner's exclusive rights during the life of the patent.
**File wrapper –** See "prosecution history" below.
**License –** Permission to use the patented invention, which may be granted by a patent owner (or a prior licensee) in exchange for a fee called a "royalty" or other consideration.
**Office action –** Communication from the patent examiner regarding the specification of the patent application and/or the claims pending in the patent application.
**Patent Examiners –** Personnel employed by the PTO who review (examine) patent applications, each in a specific technical area, to determine whether the claims of a patent application are patentable over the prior art before the examiner and whether the disclosure adequately describes the invention.
**Prior art –** Knowledge that is available to the public either prior to the invention by applicant or more than one year prior to the filing date of the application. [Insert additional types of prior art if applicable, *e.g.*, nonpublic art.]
**Prosecution history –** The written record of proceedings between the applicant and the PTO, including the original patent application and later communications between the PTO and applicant. The prosecution history may also be referred to as the "file wrapper" of the patent during the course of this trial.
**References –** Any item of prior art used to determine patentability.
**Specification –** The information that appears in the patent and concludes with one or more claims. The specification includes the written text, the claims, and the drawings. In the specification, the inventor sets forth a description telling what the invention is, how it works, and how to make and use it so as to enable others skilled in the art to do so and what the inventor believed at the time of filing to be the best way of making his or her invention.
**Ordinary skill in the art –** The level of experience, education, and/or training that those individuals who work in the area of the invention possess.

Source: American Intellectual Property Law Ass'n, *AIPLA's Model Patent Jury Instructions* (2005).

## II. POST TRIAL INSTRUCTIONS

### A. Patent Instructions

#### 1. Summary of Patent Issues

I will now summarize the issues that you must decide and for which I will provide instructions to guide your deliberations. You must decide the following [four] main issues:

1. Whether Mr. Bowling has proved that Hasbro infringed Claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 16, 17, 18, and 19 of the ‘197 patent.
2. Whether Mr. Bowling has proved that Hasbro engaged in willful acts of infringement.
3. Whether Mr. Bowling has proved that he complied with the patent marking statute prior to November 3, 1999 such that Mr. Bowling could be entitled to any damages for infringement prior to that date.
4. Whether Hasbro has proved that Claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 16, 17, 18, and 19 of the ‘197 patent are invalid.
5. Whether Hasbro has proved that Claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 16, 17, 18, and 19 of the ‘197 patent are unenforceable.
6. What amount of damages, if any, Mr. Bowling has proved.

Source: American Intellectual Property Law Ass’n, *AIPLA’s Model Patent Jury Instructions* (2005).

**2. Claim Construction – Generally**

Before you decide whether Hasbro has infringed the claims of Mr. Bowling's patent or whether Mr. Bowling's patent is invalid, you will have to understand the patent claims. The patent claims are numbered sentences at the end of the patent. The patent claims involved here are Claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 16, 17, 18, and 19, beginning at column 7, line 42 of the patent, which is exhibit ___ in evidence. The claims are "word pictures" intended to define, in words, the boundaries of the invention. Only the claims of the patent can be infringed. Neither the written description, nor the drawings of a patent can be infringed. Each of the claims must be considered individually. You must use the same claim meaning for both your decision on infringement and your decision on invalidity.

Source: American Intellectual Property Law Ass'n, *AIPLA's Model Patent Jury Instructions* (2005). 35 U.S.C. § 112; *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005); *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277 (Fed. Cir. 2000); *Tanabe Seiyaku Co. v. United States Int'l Trade Comm'n*, 109 F.3d 726 (Fed. Cir. 1997); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996); *Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820 (Fed. Cir. 1989); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878 (Fed. Cir. 1988); *Panduit Corp. v. Dennison Mfg. Co.*, 836 F.2d 1329 (Fed. Cir. 1987); *Amstar Corp. v. Envirotech Corp.*, 823 F.2d 1538 (Fed. Cir. 1987).

### 3. <u>Claim Construction for the Case</u>

It is my job as judge to provide to you the meaning of any claim language that must be interpreted. You must accept the meanings I give you and use them when you decide whether any claim of the patent has been infringed and whether any claim is invalid. I will now tell you the meanings of the following words and groups of words from the patent claims.

"Discrete facets being identically shaped and having equal surface areas" means "discrete facets being identically shaped and having equal surface areas, without regard to negligible variances in surface area caused by indented indicia."

"Extension member facets being equal in surface area" means "extension member facets being equal in surface area, without regard to negligible variances in surface area caused by indented indicia."

You should give the rest of the words in the claims their ordinary meaning in the context of the patent specification and prosecution history.

Source: American Intellectual Property Law Ass'n, *AIPLA's Model Patent Jury Instructions* (2005). *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878 (Fed. Cir. 1988).

## 4. Infringement – General

Questions _____ through _____ of the Verdict Form read as follows: [READ TEXT OF INFRINGEMENT VERDICT QUESTIONS].

I will now instruct you as to the rules you must follow when deciding whether Mr. Bowling has proven that Hasbro infringed any of the claims of the ‘197 patent.

Patent law gives the owner of a valid patent the right to exclude others from importing, making, using, offering to sell, or selling the patented invention within the United States during the term of the patent. Any person or business entity that has engaged in any of those acts without the patent owner's permission infringes the patent. Here, Mr. Bowling alleges that Hasbro's accused die infringes Claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 16, 17, 18, and 19 of Mr. Bowling's ‘197 patent.

You have heard evidence about both Mr. Bowling's commercial product and Hasbro's accused product. However, in deciding the issue of infringement you may not compare Hasbro's accused product to Mr. Bowling's commercial product. Rather, you must compare Hasbro's accused product to the claims of the ‘197 patent when making your decision regarding infringement.

Source: American Intellectual Property Law Ass’n, *AIPLA’s Model Patent Jury Instructions* (2005). 35 U.S.C. §§ 281, 271; *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999); *Andco Envtl. Processes, Inc. v. Niagara Envtl. Assocs., Inc.*, 206 U.S.P.Q. 656, 662 (W.D.N.Y. 1980).

**5. <u>Direct Infringement – Knowledge of Patent or Intent to Infringe is Immaterial</u>**

In this case, Mr. Bowling asserts that Hasbro has directly infringed the patent. Hasbro would be liable for directly infringing Mr. Bowling's patent if you find that Mr. Bowling has proven that it is more likely than not that Hasbro has made, used, offered to sell, or sold the invention defined in at least one claim of Mr. Bowling's patent.

Someone can directly infringe a patent without knowing that what they are doing is an infringement of the patent. They also may infringe even though they believe in good faith that what they are doing is not an infringement of any patent.

Source: American Intellectual Property Law Ass'n, *AIPLA's Model Patent Jury Instructions* (2005). 35 U.S.C. § 271(a); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330 (Fed. Cir. 2001); *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999); *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988); *Hughes Aircraft Co. v. United States*, 717 F.2d 1351, 1361 (Fed. Cir. 1983), *overruled on other grounds*, *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 234 F.3d 558, 574 (Fed. Cir. 2000).

## 6. <u>Direct Infringement – Literal Infringement</u>

To determine literal infringement, you must compare the accused product with each claim that Mr. Bowling asserts is infringed, using my instructions as to the meaning of the patent claims.

A patent claim is literally infringed only if Hasbro's product includes each and every element in that patent claim. If Hasbro's product does not contain one or more elements recited in a claim, Hasbro does not literally infringe that claim. You must determine literal infringement with respect to each patent claim individually.

The accused product should be compared to the invention described in each patent claim it is alleged to infringe, not to the Mr. Bowling's preferred or commercial embodiment of the claimed invention. The same element of the accused product may satisfy more than one element of a claim.

Source: American Intellectual Property Law Ass'n, *AIPLA's Model Patent Jury Instructions* (2005). *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330-31 (Fed. Cir. 2001); *Wenger Mfg. Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1231 (Fed. Cir. 2001); *Gen. Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 981 (Fed. Cir. 1997); *Martin v. Barber*, 755 F.2d 1564, 1567 (Fed. Cir. 1985); *Amstar Corp. v. Envirotech Corp.*, 730 F.2d 1476, 1483 (Fed. Cir. 1984).

### 7. <u>Infringement of Dependent Claims</u>

There are two different types of claims in the patent. One type of claim is called an independent claim. The other type of claim is called a dependent claim.

An independent claim is a claim that does not refer to any other claim of the patent. An independent claim must be read separately from the other claims to determine the scope of the claim.

A dependent claim is a claim that refers to at least one other claim in the patent. A dependent claim incorporates all of the elements of the claim to which the dependent claim refers, as well as the elements recited in the dependent claim itself.

For example, Claim 1 is an independent claim and recites several elements. Claim 2 is a dependent claim that refers to Claim 1 and includes an additional element or limitation. Specifically, Claim 2 has all of the elements of Claim 1 plus the additional element that each of the extension member facets have printed indicia on them. Claim 2 requires each of the elements of Claim 1, as well as the additional elements identified in Claim 2 itself.

Likewise, Claim 17 is an independent claim and recites several elements. Claim 18 is a dependent claim that refers to Claim 17 and includes an additional element or limitation. Specifically, Claim 18 has all of the elements of Claim 1 plus the additional elements that each of the facets of the end caps of the die are triangular shaped. Claim 18 requires each of the elements of Claim 17, as well as the additional elements identified in Claim 18 itself.

To establish literal infringement of the dependent claims, specifically Claims 2, 3, 4, 5, 6, 7, 8, 9, 16, 18, and 19 of the ‘197 patent, Mr. Bowling must show that it is more likely than not that the Hasbro's product includes each and every element of each of those claims.

If you find that the claim from which a dependent claim depends is not literally infringed, then you cannot find that the dependent claim is literally infringed. In the examples I provided just now, that means that if you find that Claim 1 is not literally infringed, then you cannot find that Claims 2, 3, 4, 5, 6, 7, 8, 9, or 16 are infringed, and if you find that Claim 17 is not infringed, then you cannot find that Claims 18 or 19 are infringed.

Source: American Intellectual Property Law Ass’n, *AIPLA’s Model Patent Jury Instructions* (2005). *Wolverine World Wide v. Nike Inc.*, 38 F.3d 1192, 1199 (Fed. Cir. 1994); *Wilson Sporting Goods v. David Geoffrey & Assocs.*, 904 F.2d 677 (Fed. Cir. 1990); *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1553 nn.9&10 (Fed. Cir. 1989); *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 626 (Fed. Cir. 1985).

**8. <u>Direct Infringement – Infringement Under the Doctrine of Equivalents</u>**

If you decide that Hasbro's product does not literally infringe an asserted patent claim, you must then decide whether that product infringes the asserted claim under what is called the "doctrine of equivalents." Under the doctrine of equivalents, the product can infringe an asserted patent claim if it includes parts that are identical or equivalent to the requirements of the claim. If the product is missing an identical or equivalent part to even one part of the asserted patent claim, the product cannot infringe the claim under the doctrine of equivalents. Thus, in making your decision under the doctrine of equivalents, you must look at each individual requirement of the asserted patent claim and decide whether the product has an identical or equivalent part to that individual claim requirement.

A part of a product is equivalent to a requirement of an asserted claim if a person of ordinary skill in the field would think that the differences between the part and the requirement were not substantial as of the time of the alleged infringement. One way to decide whether any difference between a requirement of an asserted claim and a part of the product is not substantial is to consider whether, as of the time of the alleged infringement, the part of the product performed substantially the same function, in substantially the same way, to achieve substantially the same result as the requirement in the patent claim.

In deciding whether any difference between a claim requirement and the product is not substantial, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the part with the claimed requirement. The known interchangeability between the claim requirement and the part of the product is not necessary to find infringement under the doctrine of equivalents. The same element of the accused product may satisfy more than one element of a claim.

Source: American Intellectual Property Law Ass'n, *AIPLA's Model Patent Jury Instructions* (2005). *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950); *Johnson & Johnson Assoc. v. R.E. Service Co.*, 285 F.3d 1046 (Fed. Cir. 2002) (en banc); *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998); *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 397 (Fed. Cir. 1994).

**9. Limitations on the Doctrine of Equivalents – Prior Art**

You may not find that a component in Hasbro's product is equivalent to an element of the patent claim if by doing so the patent claim would cover products that were already in the prior art.

Source: American Intellectual Property Law Ass'n, *AIPLA's Model Patent Jury Instructions* (2005). *Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1576-77 (Fed. Cir. 1994); *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677 (Fed. Cir. 1990).

## 10. Limitations on the Doctrine of Equivalents – Prosecution History Estoppel

You are instructed that the doctrine of equivalents is limited by what is called "prosecution history estoppel." As you have already heard, during prosecution of the patent, the patent applicant often makes arguments and amendments in an attempt to convince the PTO examiner to grant the patent. The party seeking to obtain a patent may amend his patent claims or submit arguments in order to define or narrow the meaning of the claims to obtain the patent. Once it has done so, it is not entitled to patent coverage under the doctrine of equivalents that would be so broad that it would cover the same feature that was used to distinguish the invention during the prosecution of the patent.

In this case, you are instructed that prosecution history estoppel applies and the doctrine of equivalents analysis cannot be applied to the following elements of the asserted claims:

From Claim 1, the element that each of the discrete facets of the extension member having a surface area that is different from a surface area of each of the discrete facets of the end caps.

And, from Claim 17, the element that each of the discrete facets of the extension member having a surface area that is different from a surface area of each of the discrete facets of the end caps.

Unless each of these elements is literally present within [Hasbro's] product, there can be no infringement of the claim.

Source: American Intellectual Property Law Ass'n, *AIPLA's Model Patent Jury Instructions* (2005). *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 152 L. Ed. 2d 944, 122 S. Ct. 1831 (2002); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 304 F.3d 1289 (Fed. Cir. 2002); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997).

### 11. <u>Limitations on the Doctrine of Equivalents – Subject Matter Dedicated to the Public</u>

When a patent discloses subject matter but does not claim it, the patent has dedicated that unclaimed subject matter to the public. If you find that the ‘197 patent discloses, but does not claim, subject matter alleged to be equivalent to an element of the patent claim, then you cannot find that the component alleged to be equivalent in Hasbro’s product is equivalent to that element of the patent claim. This is true even if the failure to claim the subject matter was wholly unintentional.

Source: American Intellectual Property Law Ass’n, *AIPLA’s Model Patent Jury Instructions* (2005). *Toro Co. v. White Consol. Indus., Inc.*, 383 F.3d 1326 (Fed. Cir. 2004); *Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.*, 285 F.3d 1046, 1054-55 (Fed. Cir. 2002) (en banc).

## 12. <u>Summary of Invalidity Defense</u>

Hasbro contends that the asserted claims of the patent-in-suit are invalid and/or unenforceable. Hasbro has the burden of proving by clear and convincing evidence that each claim is invalid or unenforceable.

Claims of an issued patent may be found to be invalid or unenforceable. Thus, you must determine whether each of Mr. Bowling's claims is invalid or unenforceable.

Hasbro contends that all of the asserted patent claims are invalid and/or unenforceable for the following reasons:

Hasbro contends that the patent is invalid because Mr. Bowling's invention was derived from another person who had completely conceived of the invention and communicated that conception to Mr. Bowling. Hasbro also contends that the patent is invalid because the invention had been in public use more than one year prior to Mr. Bowling's patent application. Hasbro also contends that the patent is unenforceable due to the inequitable conduct of Mr. Bowling, who Hasbro contends made material misstatements of fact to the PTO in order to obtain the '197 patent.

I will now instruct you in more detail why Hasbro alleges that the asserted claims of the '197 patent are invalid and/or unenforceable

Source: American Intellectual Property Law Ass'n, *AIPLA's Model Patent Jury Instructions* (2005).

**13. <u>Derivation</u>**

The patent laws require that the inventor on a patent be the true inventor of the invention covered by the patent claims. An inventor on a patent is not the true inventor if he "derived" the invention from someone else. An invention is said to be "derived" from another person if that other person conceived of the patented invention and communicated that conception to the inventor named on the patent. Conception of an invention occurs when the inventor has formed the idea of how to make and use every aspect of the patented invention, and all that is required is that it be made, without the need for further inventive effort. Derivation may be of the invention itself or of an obvious variation of the invention. If an inventor derived the patented invention from someone else, then the patent claims covering the invention are invalid.

In this case, Hasbro contends that the claims of the '197 patent are invalid because Mr. Bowling derived the invention of those claims from the work of Albert Lizarraga. If you find that Hasbro has proved that it is highly probable that Mr. Bowling derived the invention covered by the claims of the '197 patent, then you must find that the claims are invalid.

Specifically, you have heard testimony that Albert Lizarraga prepared the drawings that are contained in the '197 patent and delivered them to Mr. Bowling prior to Mr. Bowling having filed his patent application on January 6, 1998. If you find that it is highly probable that at the time Mr. Lizarraga gave the drawings of the dice to Mr. Bowling, Mr. Lizarraga had fully conceived of the invention and communicated that information to Mr. Bowling, you should find that Mr. Bowling derived the invention from Mr. Lizarraga, unless Mr. Bowling has proven that he conceived of the invention prior to having received the drawings from Mr. Lizarraga. To prove this earlier conception, Mr. Bowling's evidence must be convincing, meaning that he must show it was highly probable that he conceived of the invention prior to receiving the drawings of the dice from Mr. Lizarraga. In addition, Mr. Bowling's testimony, by itself, is insufficient to meet his burden of showing earlier conception of the invention. Mr. Bowling's testimony in this regard must be corroborated by independent evidence or he cannot establish conception of the invention prior to the date of his patent application.

Source: The Federal Circuit Bar Ass'n, *Model Patent Jury Instructions*. *Pannu* v. *Iolab Corp.*, 155 F.3d 1344, 1349 (Fed. Cir. 1998); *Gambro Lundia AB* v. *BaxterHealthcare Corp.*, 110 F.3d 1573, 1576-78 (Fed. Cir. 1997); *Oddzon Prods., Inc.* v. *Just Toys, Inc.*, 122 F.3d 1396, 1401 (Fed. Cir. 1997); *Lamb-Weston, Inc.* v. *McCain Foods, Ltd.*, 78 F.3d 540, 544 (Fed. Cir. 1996); *Price* v. *Symsek*, 988 F.2d 1187, 1190 (Fed. Cir. 1993).

**14. <u>Prior Public Use</u>**

Hasbro contends that each of the claims of the '197 patent was anticipated because the invention defined in that claim was publicly used in the United States more than one year before Mr. Bowling filed his U.S. patent application on January 6, 1998.

You are instructed that the invention defined by Claims 1 through 20 of the '197 patent was invented on January 6, 1998. A patent claim is invalid if the invention defined by that claim was publicly used by anyone in the United States more than one year before Mr. Bowling filed his patent application, that is before January 6, 1997. An invention is publicly used if it is used by the inventor or by a person who is not under any limitation, restriction, or obligation of secrecy to the inventor. Secret use by a third party is not an invalidating public use. If the public use was an experimental use performed in order to bring the invention to perfection or to determine if the invention was capable of performing its intended purpose then such a use does not invalidate the claim.

Source: American Intellectual Property Law Ass'n, *AIPLA's Model Patent Jury Instructions* (2005). 35 U.S.C. § 102(a), (b); *SmithKline Beecham Corp. v. Apotex Corp.*, 365 F.3d 1306 (Fed. Cir. 2004); *Netscape Commc'ns Corp. v. Konrad*, 295 F.3d 1315 (Fed. Cir. 2002); *EZ Dock, Inc. v. Schafer Sys. Inc.*, 276 F.3d 1347 (Fed. Cir. 2002); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 840 F.2d 902 (Fed. Cir. 1988); *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261 (Fed. Cir. 1986); *JA LaPorte, Inc. v. Norfolk Dredging Co.*, 787 F.2d 1577 (Fed. Cir. 1986); *In re Caveney*, 761 F.2d 671 (Fed. Cir. 1985); *TP Lab., Inc. v. Prof'l Positioners, Inc.*, 724 F.2d 965 (Fed. Cir. 1984); *Kinzenbaw v. Deere & Co.*, 741 F.2d 383 (Fed. Cir. 1984); *DL Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144 (Fed. Cir. 1983); *In re Smith*, 714 F.2d 1127 (Fed. Cir. 1983); *WL Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540 (Fed. Cir. 1983); *In re Smith*, 714 F.2d 1127 (Fed. Cir. 1983); *Honeywell, Inc. v. Sperry Rand Corp.*, 180 U.S.P.Q. 673 (D. Minn. 1973).

**15. <u>Inequitable Conduct - Generally</u>**

Hasbro contends that Mr. Bowling may not enforce the ‘197 patent against Hasbro because Mr. Bowling engaged in inequitable conduct before the Patent and Trademark Office during prosecution of the ‘197 patent. “Inequitable conduct” refers to the intentional failure to meet this duty of candor and good faith. To prove inequitable conduct occurred, Hasbro must prove that it is highly probable that the patent applicant or the applicant’s attorney or representative, intentionally withheld or misrepresented information with an intent to mislead or deceive the Patent & Trademark Office. Applicants are required to prosecute patent applications with candor, good faith, and honesty. This duty of candor and good faith extends to all inventors named on a patent application, all attorneys and agents involved in preparing and prosecuting the application, and every other person involved in a substantial way with the prosecution of the patent application. Each individual with such a duty must disclose all information known to that individual to be material. Hasbro asserts that Mr. Bowling obtained the ‘197 patent through inequitable conduct.

Specifically, Hasbro contends that the following statement by Mr. Bowling to the PTO in his application, and which appears in the published patent, was knowingly false and offered to convince the PTO of the patentability of his invention:

> The inventor has discovered that the configuration of the die [] is advantageous. In particular, the shape of the end caps [] provides for more bounce when dropping die [] onto a surface. That is, to generate a random number, the user holds die [] above a surface at a sufficient distance, such that when die [] is dropped onto the surface, die [] rolls before eventually resting upon one of the facets [] of the extension member []. The number or indicia [] displayed on the facet [] which is in the uppermost position is the number which has been randomly generated. The shapes of the end caps [] provide for more bounce and randomness when die [] is dropped onto a surface. The tapered, triangular shapes of end caps [] provide for surfaces which can abut and engage the surface on which die [] is being dropped, to create a more interesting and amusing outcome.

Hasbro bears the burden of establishing inequitable conduct by clear and convincing evidence. To determine whether the ‘197 patent was obtained through inequitable conduct, you must determine that Mr. Bowling, his representative, or someone involved in a substantial way with the prosecution of the application withheld or misrepresented information that was material to the examination of the patent application, and that this individual or individuals acted with an intent to deceive or mislead the PTO.

Source: American Intellectual Property Law Ass’n, *AIPLA’s Model Patent Jury Instructions* (2005). *Bristol-Myers Squibb Co. v. Phone-Poulenc Rorer, Inc.*, 326 F.3d 1226 (Fed. Cir. 2003); *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268 (Fed. Cir. 2001); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253 (Fed. Cir. 1997).

**16. <u>Materiality</u>**

Hasbro contends that Mr. Bowling's statement to the Patent and Trademark Office that he had "discovered" certain advantages to his invention was material information known by Mr. Bowling to be false and was misrepresented to the Patent and Trademark Office during the prosecution of the '197 patent. If you find that the applicant, the applicant's representative, or other individuals involved in some substantial way with the prosecution of the application withheld or misrepresented information when applying for the '197 patent, you must determine whether that information was material.

Information is material if it establishes, either alone or in combination with other information, that a claim of the patent application would more likely than not meet one of the requirements for a patent, such as the requirements that the invention be new, useful, and non-obvious. Information is also material if it refutes or is inconsistent with the information provided or arguments made by the applicant to persuade the Patent and Trademark Office that the invention is entitled to patent protection. Information that is "cumulative" of, or adds little to, other information the examiner already had is not material.

Source: American Intellectual Property Law Ass'n, *AIPLA's Model Patent Jury Instructions* (2005). 37 C.F.R. § 1.56 (2003); *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358 (Fed. Cir. 2003); *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226 (Fed. Cir. 2003); *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315 (Fed. Cir. 2000); *Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321 (Fed. Cir. 1998); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253 (Fed. Cir. 1997).

**17. <u>Intent to Deceive or Mislead</u>**

Hasbro contends that Mr. Bowling's statement to the Patent and Trademark Office that he had "discovered" certain advantages to his invention was material information that was misrepresented to the PTO during the prosecution of the '197 patent with the intent to deceive or mislead the PTO. If you determine that material information was withheld or misrepresented to the PTO, you must next determine whether such information was withheld or misrepresented with the intent to deceive or mislead the PTO. Intent to deceive the PTO may be found from direct evidence. Such direct evidence is rare, however, and as a result, the law allows deceptive intent to be inferred from the facts and surrounding circumstances. In determining whether or not there was intent to deceive or mislead the PTO, you should consider the totality of the circumstances, including the nature of the conduct and evidence of the absence or presence of good faith.

Source: American Intellectual Property Law Ass'n, *AIPLA's Model Patent Jury Instructions* (2005). *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226 (Fed. Cir. 2003); *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268(Fed. Cir. 2001); *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315 (Fed. Cir. 2000); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253 (Fed. Cir. 1997); *LaBounty Mfg., Inc. v. United States Int'l Trade Comm'n*, 958 F.2d 1066 (Fed. Cir. 1992).

**18. <u>Balancing of Materiality and Intent</u>**

If you determine that Hasbro has proven by clear and convincing evidence that material information was withheld or misrepresented and that there was an intent to deceive or mislead the PTO, you must then balance the degree of materiality and the degree of intent to determine whether or not the evidence is sufficient to establish clearly and convincingly that there was inequitable conduct committed in the prosecution of the '197 patent. Where the materiality of the withheld or misrepresented information is high, the showing of intent needed to establish inequitable conduct is proportionally less.

Source: American Intellectual Property Law Ass'n, *AIPLA's Model Patent Jury Instructions* (2005). *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226 (Fed. Cir. 2003); *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268 (Fed. Cir. 2001); *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315 (Fed. Cir. 2000); *Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321 (Fed. Cir. 1998); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253 (Fed. Cir. 1997).

**19. <u>Damages – Generally</u>**

If you find that the accused device infringes any of the claims of the '197 patent, and that these claims are not invalid, you must determine the amount of damages to be awarded Mr. Bowling for the infringement. On the other hand, if you find that each of the asserted patent claims is either invalid or is not infringed, then you need not address damages in your deliberations. The amount of those damages must be adequate to compensate Mr. Bowling for the infringement. Your damage award should put Mr. Bowling in approximately the financial position it would have been in had the infringement not occurred; but, in no event may the damage award be less than a reasonable royalty. You must consider the amount of injury suffered by Mr. Bowling without regard to Hasbro's gain or losses from the infringement. You may not add anything to the amount of damages to punish the accused infringer or to set an example.

Mr. Bowling has the burden of proving each element of its damages by a preponderance of the evidence.

The fact that I am instructing you as to the proper measure of damages should not be construed as intimating any view of the Court as to which party is entitled to prevail in this case. Instructions as to the measure of damages are given for your guidance in the event you find the evidence in favor of Mr. Bowling.

Mr. Bowling claims that he has suffered damages as a result of Hasbro's infringement in the form of a reasonably royalty on each of Hasbro's sales of an infringing product. I will explain to you at the end of the case how a reasonable royalty is determined. Mr. Bowling must prove by the more probable than not standard the damages he has suffered as a result of Hasbro's alleged infringement.

Source: American Intellectual Property Law Ass'n, *AIPLA's Model Patent Jury Instructions* (2005). 35 U.S.C. § 284 (2004); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964); *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F. 3d 1370, 1381-82 (Fed. Cir. 2003); *Vulcan Eng'g Co. v. FATA Aluminum, Inc.*, 278 F.3d 1366, 1376 (Fed. Cir. 2002); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-1109 (Fed. Cir. 1996); *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1119 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1544-45 (Fed. Cir. 1995); *Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 870 (Fed. Cir. 1993); *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1574 (Fed. Cir. 1988); *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1326 (Fed. Cir. 1987).

## 20. <u>Date Damages Begin</u>

The date that Mr. Bowling first gave notice to Hasbro of its claim of patent infringement is the date at which patent damages begin to be calculated. That date is in dispute here, and it is up to you to determine what that date is. Mr. Bowling has the burden to prove by a preponderance of the evidence the date it gave notice.

Mr. Bowling can give notice in two ways. The first way is to give notice to the public in general. Mr. Bowling can do this by placing the word "patent" or the abbreviation "PAT" with the number of the patent on substantially all the products it sold that included the patent invention. This type of notice is effective from the date Mr. Bowling began to mark substantially all of his products that use the patented invention with the patent number. If Mr. Bowling did not mark substantially all of his products that use the patented invention with the patent number, or if Mr. Bowling continued to sell unmarked products, then Mr. Bowling did not provide notice in this way.

The patent laws require that in order for Mr. Bowling to have marked his products effectively, he had to fix on the dice themselves the word "patent" or the abbreviation "PAT" together with the number of the patent. The patent laws permit a patentee, where the nature of the article is such that it cannot be marked, to fix to the article, or to packaging in which the article is contained, a label containing that information. Mr. Bowling bears the burden of proving his compliance with these marking requirements by a preponderance of the evidence.

A second way Mr. Bowling can provide notice of its patent is to communicate to Hasbro a specific charge that the accused die infringed the '197 patent. This type of notice is effective from the time it is given. The parties agree that Mr. Bowling provided this type of notice to Hasbro on November 3, 1999. If you find that Mr. Bowling did not properly mark his products, then Mr. Bowling can only recover damages for infringement that occurred after November 3, 1999.

Source: American Intellectual Property Law Ass'n, *AIPLA's Model Patent Jury Instructions* (2005). 35 U.S.C. § 287(a); *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345 (Fed. Cir. 2001); *Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1327-28 (Fed. Cir. 2001); *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1353 (Fed. Cir. 2001); *Amsted Indus., Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 184-87 (Fed. Cir. 1994); *Devices for Med., Inc. v. Boehl,* 822 F.2d 1062-1066 (Fed. Cir. 1987).

**21. <u>Reasonable Royalty</u>**

Mr. Bowling is seeking a reasonable royalty as his patent damages. Generally, the patent laws define a reasonable royalty as the reasonable amount that someone wanting to use the patented invention should expect to pay to the patent owner and the owner should expect to receive.

The patent law specifically provides that the amount of damages that Hasbro must pay Mr. Bowling for infringing Mr. Bowling's patent may not be less than a reasonable royalty for the use that Hasbro made of Mr. Bowling's invention. A reasonable royalty is not necessarily the actual measure of damages, but is merely the floor below which damages should not fall. Mr. Bowling is entitled to a reasonable royalty for all infringing sales.

Source: American Intellectual Property Law Ass’n, *AIPLA’s Model Patent Jury Instructions* (2005). 35 U.S.C. § 284; *Crystal Semiconductor Corp. v. Tritech Microelecs. Int’l, Inc.*, 246 F.3d 1336, 1354 (Fed. Cir. 2001); *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1574 (Fed. Cir. 1998); *Minco, Inc. v. Combustion Eng’g, Inc.*, 95 F.3d 1109, 1119 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1579 (Fed. Cir. 1989).

**22. Reasonable Royalty – Definition**

A royalty is a payment made to the owner of a patent by a non-owner in exchange for rights to make, use, or sell the claimed invention. A reasonable royalty is the royalty that would have resulted from a hypothetical negotiation between the patent owner and a company in the position of Hasbro taking place just before the infringement began. You should also assume that both parties to that negotiation understood the patent to be valid and infringed and were willing to enter into a license.

Source: American Intellectual Property Law Ass'n, *AIPLA's Model Patent Jury Instructions* (2005). *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co*., 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1121 (S.D.N.Y. 1970), *modified and aff'd sub nom., Georgia-Pacific Corp. v. United States Plywood Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971).

## 23. <u>Reasonable Royalty – Relevant Factors</u>

In determining the value of a reasonable royalty, you may consider evidence on any of the following factors:

Any royalties received by the licensor for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

The rates paid by Hasbro to license other patents comparable to the '197 patent.

The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

The licensor's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

The effect of selling the patented product in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of its non-patented items; and the extent of such collateral sales.

The duration of the '197 patent and the term of the license.

The established profitability of the product made under the '197 patent; its commercial success; and its current popularity.

The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

The extent to which Hasbro has made use of the invention; and any evidence that shows the value of that use.

The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

The opinion testimony of qualified experts.

The amount that a licensor and a licensee (such as Hasbro) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

Source: American Intellectual Property Law Ass'n, *AIPLA's Model Patent Jury Instructions* (2005). *Tec Air, Inc. v. Denso Mfg. Mich., Inc.*, 192 F.3d 1353, 1362 (Fed. Cir. 1999); *Fonar Corp. v. Gen. Elec. Co.*, 107 F.3d 1543, 1552-53 (Fed. Cir. 1997); *Mahurkar v.*

*C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989); *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 898-900 (Fed. Cir. 1986); *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1079 (Fed. Cir. 1983); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), *modified and aff'd sub nom.*, *Georgia Pacific Corp. v. United States Plywood Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971).

**24. <u>Reasonable Royalty – Timing</u>**

Although the relevant date for the hypothetical reasonable royalty negotiation is just before the infringement began, you may consider in your determination of reasonable royalty damages any actual profits by Hasbro after that time and any commercial success of the patented invention in the form of sales of the patented or infringing products after that time. You may only consider this information, however, if it was foreseeable at the time that the infringement began.

Source: American Intellectual Property Law Ass'n, *AIPLA's Model Patent Jury Instructions* (2005). *Trell v. Marlee Elecs. Corp.*, 912 F.2d 1443, 1446, 1448 (Fed. Cir. 1990); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1581 (Fed. Cir. 1989); *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1575-76 (Fed. Cir. 1988); *Studiengesellschaft Kohle, mbH v. Dart Indus.*, Inc., 862 F.2d 1564, 1571-72 (Fed. Cir. 1988).

## 25. **Willful Infringement**

Mr. Bowling also contends that Hasbro has willfully infringed the '197 patent claims. If you find on the basis of the evidence and the law as I have explained it, that Hasbro directly or indirectly infringes at least one claim of the '197 patent, you must then decide whether or not Hasbro's infringement was willful.

When a person becomes aware that a patent may have relevance to his or her activities, that person has a duty to exercise due care and investigate whether or not his or her activities or proposed activities infringe any valid, enforceable claim of the patent. If that person did not do this and is found to have infringed the patent claims, then the infringement was willful. The issue of willful infringement is relevant, not to your decision of whether or not there is infringement, but rather to the amount of damages to which Mr. Bowling is entitled. A finding of willful infringement may, in certain circumstances, entitle the patent owner to increased damages. If you decide that Hasbro willfully infringed the '197 patent claims, then it is my job to decide whether or not to award increased damages to Mr. Bowling.

Although, as I explained before, Mr. Bowling must prove infringement by the more probable than not standard, the burden of proving that the infringement was willful is the highly probable standard.

To establish willful infringement, Mr. Bowling must prove two things by the highly probable standard. First, Mr. Bowling must prove that Hasbro was aware of the '197 patent. Second, Mr. Bowling must prove that Hasbro proceeded with the activities that are accused of infringement without a good faith belief that the patent was either invalid, not infringed, or both. In determining whether or not Hasbro acted in good faith, you should consider all of the circumstances

The fact that you may have determined that Hasbro was wrong and that the '197 patent is infringed does not mean that Hasbro's infringement was willful. All that is required to avoid a finding of willful infringement is that Hasbro had a good faith belief that it did not infringe or that the patent was invalid, and that Hasbro's belief was reasonable under all of the circumstances.

Source: The Federal Circuit Bar Ass'n, *Model Patent Jury Instructions*. 35 U.S.C. § 284 (Supp. 2001); *WMS Gaming Inc.* v. *Int'l Game Tech.*, 184 F.3d 1339, 1354 (Fed. Cir. 1999); *Georgia-Pacific Corp.* v. *United States Gypsum Co.*, 195 F.3d 1322, 1334 (Fed. Cir. 1999); *John's Hopkins University* v. *Cellpro*, 152 F.3d 1342, 1363 (Fed. Cir. 1998); *Comark Comm, Inc.* v. *Harris Corp.*, 156 F.3d 1182, 1191 (Fed. Cir. 1998); *SRI Int'l, Inc.* v. *Advanced Tech. Labs.*, 127 F.3d 1462, 1465 (Fed. Cir. 1997); *Critikon, Inc.* v. *Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1259-60 (Fed. Cir. 1997); *Nat'l Presto Indus.* v. *W. Bend Co.*, 76 F.3d 1185, 1192-93 (Fed. Cir. 1996); *Stryker Corp.* v. *Intermedics Orthopedics Inc.*, 96 F.3d 1409, 1414 (Fed. Cir. 1996); *Graco, Inc.* v. *Binks Mfg. Co.*, 60 F.3d 785, 792 (Fed. Cir. 1995); *Amsted Indus. Inc.* v. *Buckeye Steel Castings Co.*, 24 F.3d 178, 180 (Fed. Cir. 1994); *Westvaco Corp.* v. *Int'l Paper Co.*, 991 F.2d 735, 745 (Fed. Cir. 1993); *Minnesota Mining & Mfg.* v. *Johnson and Johnson Orthopedics, Inc.*, 976 F.2d 1559, 1580 (Fed. Cir. 1992); *Ortho Pharm. Corp.* v. *Smith*, 959 F.2d 936, 944 (Fed. Cir. 1992); *Read Corp.* v. *Portec, Inc.*, 970 F.2d 816, 826-30 (Fed. Cir. 1992); *Studiengesellschaft Kohle* v. *Dart Indus., Inc.*, 862 F.2d 1564, 1579 (Fed. Cir. 1988); *Underwater Devices, Inc.* v. *Morrison-Knudsen, Co.*, 717 F.2d 1380, 1390 (Fed. Cir. 1983).

**26. <u>Copyright Infringement - Generally</u>**

Hasbro also has brought a claim against Mr. Bowling for copyright infringement. "Copyright" is the name for the protection that the law extends to an author of an original work against the unauthorized appropriation of that work by others. You are probably accustomed to hearing the word "author" used for writers. But under the copyright law, any creator of an original work is referred to as the author. That is the term we use in the copyright law for the creator of an original work. A “copyright” grants the owner the exclusive right to copy, reproduce and sell the protected work. A copyrighted work can be a literary work, musical work, dramatic work, pantomime, choreographic work, pictorial work, graphic work, sculptural work, motion picture, audiovisual work, sound recording, architectural work, mask works fixed in semiconductor chip products, or a computer program. The owner of a copyright generally has the right to exclude any other person from reproducing, preparing derivative works, distributing, performing, displaying, or using the work covered by copyright for a specific period of time. One who reproduces or distributes a copyrighted work during the term of the copyright infringes the copyright, unless licensed by the copyright owner.

In this case, Hasbro is, and at all relevant times has been, the owner of various copyrights granting it exclusive rights under United States copyright law with respect to the Dungeons and Dragons characters known as the Mind Flayer, Cockatrice and Beholder. Michael Bowling, without the permission or consent of Hasbro, caused the manufacture of the Elfsera Set 6 pewter figurines, which he then sold to the public. Hasbro contends that Mr. Bowling’s actions constitute infringement of its copyrights and its exclusive rights under those copyrights.

17 U.S.C. § 102.

**B. Copyright Instructions**

**1. <u>Elements of a Copyright Infringement Claim</u>**

Subject to certain defenses, one who reproduces, prepares derivative works, or distributes a copyrighted work during the term of the copyright, infringes a copyright, unless licensed by the copyright owner.

To prove that Mr. Bowling infringed Hasbro's copyright, Hasbro may show that Mr. Bowling had access to Hasbro's copyrighted work and that there are substantial similarities between Mr. Bowling's work and Hasbro's work.

*Feist Publications, Inc. v. Rural Tel. Service Co.*, 499 U.S. 340, 361 (1991); *Latin American Music Co. v. The Archdiocese of San Juan of the Roman Catholic & Apostolic Church*, 499 F.3d 32, 38 (1st Cir. 2007); *Mag Jewelry Co., Inc. v. Cherokee, Inc.*, 496 F.3d 108, 114 (1st Cir. 2007); *T-Peg, Inc. v. Vermont Timber Works, Inc.*, 459 F.3d 97, 108 (1st Cir. 2006); *Johnson v. Gordon*, 409 F.3d 12, 17 (1st Cir. 2005).

2. **Burden of Proof**

The burden of proving the elements of a copyright infringement claim is on Hasbro, and Hasbro must prove those elements by a preponderance of the evidence. To prove something by a preponderance of the evidence means merely that it must prove that it is more likely than not. This standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case. Thus, after you have heard all of the evidence, if it seems more likely that Hasbro had one or more copyrights protecting its depictions of the Mind Flayer, Cockatrice and Beholder monsters, and that it is more likely than not that Mr. Bowling copied those characters in creating his Elfsera Set of figurines, then Hasbro has met its burden.

*CMM Cable Rep., Inc. v. Ocean Coast Properties, Inc.*, 97 F.3d 1504, 1524 (1st Cir. 1996); *Grubb v. National Football League Properties, Inc.*, 901 F.Supp. 36, 38 (D. Mass. 1995); *Lotus Development Corp. v. Borland Intern., Inc.*, 788 F. Supp. 78, 86-87 (D. Mass. 1992).

### 3. **<u>Ownership of the Copyright</u>**

To prove that it is the owner of the copyrighted works, Hasbro need only show either that it is the owner of the copyright of the depictions of the Mind Flayer, Cockatrice and Beholder monsters, or that it is licensed by the owners of those works, permitting Hasbro to claim ownership of those works or the exclusive rights to the works. Hasbro's certificates of registration of its copyrights are what is called prima facie evidence of the element of ownership. In other words, if there is no evidence against Hasbro as to ownership, the registration certificate alone establishes ownership. Once the registration certificates have been produced, the burden shifts to the alleged infringer to prove that procedural infirmities exist with respect to the copyright. Ownership of a copyright may pass from party to party by any means of conveyance. Thus, if TSR, Inc. or Wizards of the Coast had a valid copyright protecting the images of the monsters in question, so too does Hasbro.

*Milene Music, Inc. v. Gotauco*, 551 F.Supp. 1288, 1293 (D.R.I. 1982); *CMM Cable Reps, Inc. v. Ocean Coast Props., Inc.*, 97 F.3d 1504, 1513 (1st Cir. 1996); *Johnson v. Gordon*, 409 F.3d 12, 17 (1st Cir. 2005); *Saenger Organization, Inc. v Nationwide Ins. Licensing Associates, Inc.*, 119 F.3d 55, 59-60 (1st Cir. 1997); 17 U.S.C. § 201(d)(1).

### 4. Copying

In addition to establishing that it is the copyright owner of the depictions of the monsters, Hasbro must also prove that the defendant actually copied the protected work.

Actual copying is rarely provable through direct evidence. Therefore, an inference of copying will be made when it can be shown that the infringer had access to the copyrighted material and then produced an item substantially similar to the copyrighted work. A work is substantially similar when the ordinary observer looks at the two items and comes to the conclusion that they are, for all intents and purposes, the same item. The burden then shifts to the alleged infringer to produce evidence of originality of his work.

On the subject of access, access means proof sufficient to show that Mr. Bowling or whoever created Mr.Bowling's work had a reasonable opportunity to view the Hasbro's work. Hasbro is not required to show that whoever produced Mr. Bowling's work actually saw Hasbro's work. In addition, Hasbro is not required to show that some particular channel of communication existed through which the work was seen.

It is sufficient for Hasbro to show that Mr. Bowling had reasonable opportunity to copy Hasbro’s work. That would be a showing that Mr. Bowling had access to the Hasbro's work.

On the subject of similarity, if you find similarities between the works, you must ask yourselves whether the similarities are or are not of the kind that would be likely to occur without copying. Similarity can result from copying, but there are other possible explanations for similarity.

On the other hand, certain similarities may be very convincing proof of copying. The more original, the more unusual or imaginative or arbitrary is the material that you find to be similar in both works, the less likely that similarity is a coincidence. The more extensive the similarity and the more it extends to small arbitrary details, the more likely as a matter of common sense that it is due to copying, rather than to coincidence, or the suggestiveness of the subject matter.

Hasbro claims in this case that Mr. Bowling violated its exclusive rights to reproduce and distribute its copyrighted works, or, in the alternative, violated its exclusive right to prepare a derivative work based on the copyrighted work, through his manufacture and sale of the Elfsera Set 6 pewter figurines. One who either reproduces or distributes a copyrighted work during the term of the copyright infringes the copyright, unless licensed by the copyright owner. Copyright owners have the exclusive right to prepare derivative works based on the copyrighted work.

Hasbro is not required to prove that the Elfsera Set 6 figurines are exactly the same as the Mind Flayer, Cockatrice and Beholder monsters. Instead Hasbro need only show that the figures manufactured by Mr. Bowling are substantially similar to the copyrighted characters. An item is substantially similar to a copyrighted item, and therefore infringes on the copyright, if an ordinary observer would look at the two items and conclude that they are so alike as to be

essentially the same. The existence of minor differences does not defeat a claim for copyright infringement.

The inference of copying that results from evidence that the infringer had access to the copyrighted item and that the two items are substantially similar can be overcome by the infringer only if he is able to present affirmative evidence of originality.

The act of producing pewter figurines of characters pictorially displayed in a copyrighted publication, without license from the copyright owners, is copyright infringement. Creating pewter figurines of characters that are substantially similar, though not identical, to those that are protected by a copyright constitutes copyright infringement.

The act of offering for sale pewter figurines of copyrighted characters, without license from the copyright owners, violates the copyright owner's exclusive right of distribution, regardless of whether actual distribution has been shown. The act of offering for sale pewter figurines that are substantially similar to copyrighted monsters, without license from the copyright owners, violates the copyright owner's exclusive right of distribution of derivative works based on the copyrighted work, regardless of whether actual distribution has been shown.

*Matthews v. Freedman*, 157 F.3d 25, 28 (1st Cir. 1998); *Grubb v. K.M.S. Patriots, L.P.*, 88 F.3d 1, 3 (1st Cir. 1996); *Concrete Machinery Co., Inc. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 606-07 (1st Cir.1988); *O'Neill v. Dell Publishing Co.*, 630 F.2d 685, 686 (1st Cir. 1980).

### 5. <u>No Requirement that Infringer Manufactured or Copied</u>

Hasbro does not have to prove that Mr. Bowling was the manufacturer of the infringing items. Copyright protection grants the owner of the copyright the exclusive right to make the first sale or distribution to the public. An act of infringement is committed if the alleged infringer acts in a way so as to deprive the owner of the copyright of that exclusive right. Thus, if you find that Mr. Bowling distributed or sold copyrighted items, regardless of whether he was the manufacturer of those items, he has committed an act of copyright infringement. In other words, if you find that the Elfsera Set 6 figurines are unauthorized copies of the Mind Flayer, Cockatrice and Beholder, and that Mr. Bowling offered those to the public without the authorization of Hasbro, that is enough to support the claim of copyright infringement, even if Mr. Bowling did not create the Elfsera Set 6 figurines.

*Ortiz-Gonzalez v. Fonovisa*, 277 F.3d 59, 62 (1st Cir. 2002); *Data Systems Corp. v. Grumman Systems Support Corp.*, 36 F.3d 1147, 1164 (1st Cir. 1994).

### 6. <u>Multiple Infringements</u>

Hasbro has presented evidence of twenty-one different copyright registration numbers in which one or more of the Mind Flayer, Cockatrice and Beholder monsters is protected. According to the Copyright statute, statutory damages are to be entered for each work that is infringed. A work is not infringed each time an individual copyrighted work is copied, sold or distributed. However, each copyrighted work that is violated constitutes a separate instance of infringement. A compilation, collective work or derivative work is one work for purposes of imposing statutory damages and determining the number of works infringed. For example, if a company had a single copyright protecting a character, and an infringer made one thousand figurines of that character, that would constitute only one act of infringement. However, if the infringer made only one figurine, but it was determined to violate the copyright owner's rights in multiple copyrighted works, each copyrighted work that has been violated provides a separate basis for imposing statutory damages. For every copyrighted work that you find has been infringed by Mr. Bowling, through his sale and distribution of the Elfsera 6 Set figurines, you are to assign another measure of statutory damages.

*Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 191 (1st Cir. 2004); *Gamma Audio & Video, Inc. v. Ean-Chea*, 11 F.3d 1106, 1115-16 (1st Cir. 1993); *Xoom, Inc. v. Imageline, Inc.*, 323 F.3d 279, 285 (4th Cir. 2003); *Walt Disney Co. v. Powell*, 897 F.2d 565, 569-70 (D.C. Cir. 1990).

**7. <u>Damages</u>**

If you find that Hasbro has a valid copyright and you find that that copyright was infringed by Mr. Bowling through his manufacture and sale of the Elfsera Set 6 figurines, then you should find for Hasbro. You must then decide on the amount of damages Hasbro is entitled to recover. If, however, you find that Mr. Bowling's Elfsera Set 6 figurines are not substantially similar to Hasbro's Mind Flayer, Cockatrice and Beholder monsters, you should find for Mr. Bowling.

Hasbro has elected to recover "statutory damages" instead of its actual damages and profits. Under the Copyright Act, Hasbro is entitled to a sum of not less than $750 or more than $30,000 per act of infringement (that is, per copyrighted work infringed by Mr. Bowling's figurines), as you consider just. If, however, you find that the Mr. Bowling's conduct was willful, then Hasbro is entitled to a sum of up to $150,000 per act of infringement (that is, per copyrighted work infringed by Mr. Bowling's figurines), as you consider just. In determining the just amount of statutory damages for Mr. Bowling, you may consider the willfulness of the his conduct, his continuation of infringement after notice or knowledge of the copyright or in reckless disregard of the copyright, the effect of the Mr. Bowling's prior or concurrent copyright infringement activity, and whether profit or gain was established.

"Willful" means that the infringer knew, or should have known that his actions constituted copyright infringement. The knowledge that a person possesses at any given time may not ordinarily be proved directly, because there is no way of directly scrutinizing the workings of the human mind. In determining the issue of what a person knew at a particular time, you may consider any statements made or acts done by that person and all other facts and circumstances received in evidence, which may aid in your determination of that person's knowledge.

17 U.S.C. § 504; *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 355 (1998); *Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 191-92 (1st Cir. 2004); *Gamma Audio & Video, Inc. v. Ean-Chea*, 11 F.3d 1106, 1115-16 (1st Cir. 1993).