EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MICHAEL BOWLING,<br>a Resident of Arizona,<br><br>Plaintiff, | : | C.A. No. 05-229S |
| v. | : | |
| HASBRO, INC.,<br>a Rhode Island Corporation,<br><br>Defendant. | : | |

**PLAINTIFF MICHAEL BOWLING'S PROPOSED JURY INSTRUCTIONS**

Plaintiff Michael Bowling respectfully requests that the Court instruct the jury according to the instructions set forth herein.

Michael Bowling,
By His Attorneys,

Date: December 12, 2007

/s/ Thomas J. Leach__________
Thomas J. Leach, MN (*pro hac vice*)
Anthony R. Zeuli (*pro hac vice*)
MERCHANT & GOULD, P.C.
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Phone: 612.332.5300
Fax: 612.332.9081

Craig M. Scott, Esq. (#4237)
Christine K. Bush, Esq. (#5587)
DUFFY SWEENEY & SCOTT, LTD
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700
(401) 455-0701 (Facsimile)

# TABLE OF CONTENTS


I. The Nature of the Action and the Parties ....................1

A. United States Patents ....................2

B. Patent Litigation ....................4

II. Contentions of the Parties ....................5

III. Trial Procedure ....................6

A. Glossary of Patent Terms ....................8

IV. Post Trial Instructions ....................9

A. Summary of Patent Issues ....................9

V. Infringement ....................10

1. Claim Construction - Generally ....................10

2. Claim Construction for the Case ....................10

3. Infringement - General ....................11

4. Direct Infringement - Knowledge of Patent or Intent to Infringe is Immaterial ....................12

5. Direct Infringement - Literal Infringement ....................12

6. Infringement of Dependent Claims ....................13

7. Infringement of Open Ended or "Comprising" Claims ....................14

8. Direct Infringement – Infringement Under The Doctrine Of Equivalents ....................14

VI. Summary of Invalidity Defense ....................15

VII. Anticipation ....................16

1. Prior Public Use ....................16

VIII. Unenforceability (Inequitable Conduct) ....................17

1. Inequitable Conduct - Generally ....................17

2. Materiality ....................................................................................18

3. Intent to Deceive or Mislead ....................................................................18

4. Balancing of Materiality and Intent ...........................................................19

IX. Damages ....................................................................................19

1. Damages - Generally ....................................................................................19

2. Date Damages Begin ....................................................................................20

3. Reasonable Royalty ....................................................................................22

4. Reasonable Royalty - Definition ....................................................................

5. Reasonable Royalty - Relevant Factors ...........................................................23

6. Reasonable Royalty - Timing ....................................................................25

7. Willful Infringement ....................................................................................26

HASBRO'S COUNTERCLAIM OF COPYRIGHT INFRINGEMENT ..........................26

I. FACTUAL BACKGROUND ....................................................................26

II. NATURE OF THE CLAIM ....................................................................27

1. Burden of Proof ....................................................................................27

2. Preponderance of the Evidence ....................................................................28

3. Idea/Expression ....................................................................................28

4. Copyright Infringement ....................................................................................29

5. Ownership of Valid Copyright ....................................................................29

6. Originality ....................................................................................30

7. Copying ....................................................................................32

8. Evidence of Copyright Infringement ...........................................................33

9. Accessibility ....................................................................................33

10. Substantial Similarity of Protectible Elements and Apparent Explanation for Similarities ....................................................34

11. Damages ....................................................................................................36

12. Statutory Damages ......................................................................................36

13. Curative Instruction .....................................................................................37

# **Preliminary Jury Instructions**

Members of the jury:

Now that you have been sworn, I have the following preliminary instructions for your guidance on the nature of the case and your role as jurors.

These instruction will give you some general rules and guidelines that might apply to any civil case. However, because this is a patent trial which will deal with subject matter that is not within the every day experience of most of us, I will also give you some additional preliminary instruction regarding patents to assist you in discharging your duties as jurors. I will play a short video that the party's have agreed upon.

Before I begin with those instructions, however, allow me to give you an overview of who the parties are and what each contends.

## I. The Nature of the Action and the Parties

This is a patent case. The patent involved in this case relates to game playing dice. Plaintiff, Michael Bowling ("Bowling") invented this new game dice. In 1998, Bowling applied to the United States Patent and Trademark Office for a patent on his new game dice. On August 17, 1999, the United States Patent and Trademark Office granted a patent to Bowling for this invention. Bowling is the owner of the patent, which is identified by the Patent Office number: 5,938,197 (which may be called "the '197 patent"). This patent may also be referred to as the "Bowling patent."

Hasbro, Inc. ("Hasbro") included in its Monopoly Millennium edition game dice that Bowling contends infringe claims 1-9 and 16-19 of his '197 patent. Bowling has sued Hasbro for infringing his '197 patent. Bowling contends that Hasbro willfully infringed his '197 patent.

During the trial, the parties will offer testimony to familiarize you with this invention. For your convenience, we will distribute a glossary of some of the legal and technical terms to which the parties may refer during the trial.

Hasbro countersued Bowling for copyright infringement alleging that Bowling sold figurines known as Elfsera miniatures that infringe copyrights on renditions of Beholder, Cockatrice, and Mind Flayer monsters.

I will now give you a general overview of what a patent is and how one is obtained.

[In the alternative, the Court could play the ABA patent video]

**A. United States Patents**

A valid United States patent gives its owner the right to exclude others from making, using, offering to sell, or selling the patented invention within the United States. During the trial, the parties may offer testimony to familiarize you with how one obtains a patent from the United States Patent and Trademark Office (sometimes referred to as "the PTO").

I will briefly describe some of the terms for you so that you have some background in patent terminology. The Patent and Trademark Office, the PTO, is in the Washington, D.C., area and is an agency of the Federal Government. It has more than three-thousand technically educated examiners who examine applications for patents.

The application is the initial set of papers filed with the PTO by the applicant. In addition to some other papers, such as the inventor's oath, the application includes a specification. The specification must have a written description of the invention, telling what the invention is, how it works, how to make and use it so as to enable others skilled in the art to do so, and what the inventor believed at the time of filing to be the best way

of making the invention. The specification concludes with one or more numbered sentences. These are the claims.

The purpose of the claims is to particularly point out what the applicant regards as the invention. When the patent is eventually issued by the PTO, the claims define the scope of the patent owner's exclusive rights during the life of the patent. It is my job to decide the meaning of the patent claims. Before you decide any questions concerning patent infringement or validity, I will tell you the meaning of the claims of the '197 patent.

After the applicant files the application, a PTO examiner reviews (or examines) the patent application to determine whether the claims are patentable and whether the specification adequately describes the invention claimed. In examining a patent application, the patent examiner makes a search of the PTO records for prior art to the patent application claims. The patent examiner considers, among other things, whether each claim defines an invention that is new, useful and not obvious in view of this prior art. The prior art is defined by statute and, when the parties are done presenting evidence, I will give you specific instructions as to what constitutes prior art in this case. But generally it is technical information and knowledge that was known to the public either before the invention by the applicant or more than a year before the filing date of the patent application.

Following the prior art search and examination of the application, the patent examiner then advises the applicant in writing what the patent examiner has found and whether he has "allowed" any claim. This writing from the patent examiner is called an office action. More often than not, the initial office action by the patent examiner rejects

the claims. The applicant then responds to this and sometimes changes the claims or submits new claims. This process may go back and forth between the patent examiner and the applicant for several months or even years until the patent examiner is satisfied that the application and claims are patentable.

The collection of papers generated by the patent examiner and the applicant during this time of corresponding back and forth is called the prosecution history. This history of written correspondence is contained in a file in the PTO, and consequently some people call this the prosecution history, the file history, or the file wrapper.

**B. Patent Litigation**

Someone is said to be infringing on claims of a patent when he or she, without permission from the patent owner, makes, uses, offers to sell, or sells the patented invention, as defined by the claims, within the United States before the term of the patent expires. A patent owner who believes someone is infringing on the exclusive rights of the patent may bring a lawsuit like this to stop the alleged infringing acts and recover damages. The patent owner has the burden to prove infringement of the claims of the patent. The patent owner also has the burden to prove damages caused by that infringement, which are adequate to compensate for the infringement. Damages may not be less than a reasonable royalty for the use made of the invention.

A person sued for allegedly infringing a patent can deny infringement and also can defend by proving the asserted claims of the patent are invalid. The accused infringer has the burden to prove invalidity by clear and convincing evidence. In evaluating infringement or invalidity, each claim is to be evaluated independently.

I will now briefly explain the parties' basic contentions in more detail.

## II. Contentions of the Parties

Bowling contends that Hasbro used, imported, offered to sell, and sold dice that infringe claims 1-9 and 16-19 of the '197 patent. Bowling has the burden of proving that Hasbro infringes the '197 patent by a preponderance of the evidence. That means that Bowling must show that it is more likely than not that Hasbro's accused dice infringe.

There are two ways in which a patent claim can be directly infringed. First, a claim can be literally infringed. Second, a claim can be infringed under what is called the "doctrine of equivalents." To determine literal infringement, you must compare Hasbro's dice (the accused product) with each claim that Bowling asserts is infringed. It will be my job to tell you what the patent claims mean. You must follow my instructions as to the meaning of the patent claims.

A patent claim is literally infringed only if Hasbro's dice include each and every element in that patent claim. If Hasbro's dice do not contain one or more elements in that claim, Hasbro does not literally infringe that claim. You must determine literal infringement with respect to each patent claim asserted: 1-9; 16-19.

You may find that Hasbro's dice infringe a claim of the '197 patent, even if an element of that claim is not present in Hasbro's dice. However, to do so, you must find that there is an equivalent component in Hasbro's dice for each element of the patent claim that is not literally present in Hasbro's dice. This is called infringement under the doctrine of equivalents.

Bowling has the burden of proving by a preponderance of the evidence that Hasbro's dice contain the equivalent of each element of the claimed invention that is not literally present in Hasbro's accused dice.

Hasbro denies that it is infringing the '197 patent. Hasbro also contends that the '197 patent is invalid and unenforceable.

Invalidity is a defense to infringement. Therefore, even though the PTO examiner has allowed the claims of the '197 patent, and there is a presumption that the examiner did his job correctly and that the patent is valid, you, the jury, have the ultimate responsibility for deciding whether the claims of the '197 patent are valid. Hasbro bears the burden of proving invalidity by clear and convincing evidence. This is a higher burden than a preponderance of the evidence, but it does not require proof beyond a reasonable doubt. Clear and convincing evidence is evidence that shows it is highly probable that the claims are invalid.

Hasbro has counter-sued Bowling for infringing copyrights on Beholder, Cockatrice, and Mind Flayer monsters by selling Elfsera miniature monster figures. To establish that Bowling infringed Hasbro's copyrights, Hasbro must prove that it owns valid copyrights in the Beholder, Cockatrice, and Mind Flayer monsters and that Bowling copied those elements of the Beholder, Cockatrice, and Mind Flayer works that are original. Bowling has alleged defenses to Hasbro's allegations of copyright infringement.

## III. Trial Procedure

We are about to commence the opening statements in the case. Before we do that, I want to explain to you a little bit about the procedures that we will be following during the trial and the format of the trial. This trial, like all jury trials, comes in six phases. We already have been through the first phase, which is to select you as jurors. We are now about to begin the second phase, the opening statements. The opening statements of the

lawyers are statements about what each side expects the evidence to show. The opening statements are not evidence in the case.

The evidence comes in the third phase, when the witnesses will take the witness stand and the documents will actually be offered and admitted into evidence. In the third phase, Bowling goes first in calling witnesses to the witness stand. These witnesses will be questioned by Bowling's counsel in what is called direct examination. After the direct examination of a witness is completed, the opposing side has an opportunity to cross-examine the witness. After Bowling has presented its witnesses, Hasbro will call its witnesses, who will also be examined and cross-examined. The parties may present the testimony of a witness by reading from their deposition transcript or playing a videotape of the witness' prior deposition testimony. A deposition is the sworn testimony of a witness taken before trial and is entitled to the same consideration as if the witness had testified at trial.

The evidence often is introduced somewhat piecemeal, so you as jurors need to keep an open mind as the evidence comes in. Wait until all the evidence comes in before you make any decision. In other words, keep an open mind throughout the entire trial.

After we conclude the third phase, then the lawyers again have an opportunity to talk with you in what's called closing argument, which is the fourth phase. Again, what the lawyers say is not evidence. The lawyers' closing arguments to you are for the purpose of helping you in making your decisions.

The fifth phase of the trial is when I read you the jury instructions. In that phase, I will instruct you on the law. I have already explained a little bit about the law to you. But later, in this fifth phase of the trial, I will explain the law in much more detail.

Finally, in the sixth phase of the trial it will be time for you to deliberate. You can then evaluate the evidence, discuss the evidence among yourselves and make a decision in the case. You are the judges of the facts. I will explain to you the rules of law that apply to this case, and I will also explain to you the meaning of the patent claims. You must follow that law and claim meaning whether you agree with it or not. Nothing I say or do during the course of the trial is intended to indicate what your verdict should be.

**A. Glossary of Patent Terms**

**Application -** The initial papers filed by the applicant in the United States Patent and Trademark Office (also called the Patent Office or PTO).

**Claims -** Claims are the numbered sentences appearing at the end of the patent and define the invention. The words of the claims define the scope of the patent owner's exclusive rights during the life of the patent.

**File wrapper -** See prosecution history below.

**License -** Permission to use the patented invention, which may be granted by a patent owner (or a prior licensee) in exchange for a fee called a "royalty" or other consideration.

**Office action -** Communication from the patent examiner regarding the specification of the patent application and/or the claims pending in the patent application.

**Patent Examiners -** Personnel employed by the PTO who review (examine) patent applications, each in a specific technical area, to determine whether the claims of a patent application are patentable over the prior art before the examiner and whether the disclosure adequately describes the invention.

**Prior Art -** Knowledge that is available to the public either prior to the invention by applicant or more than a year prior to the filing date of the application.

**Prosecution history -** The written record of proceedings between the applicant and the PTO. It includes the original patent application and later communications between the PTO and applicant. The prosecution history may also be referred to as the "file wrapper" of the patent during the course of this trial.

**References -** Any item of prior art used to determine patentability.

**Specification -** The specification is the information that appears in the patent and concludes with one or more claims. The specification includes the written text, the

claims, and the drawings. In the specification, the inventor sets forth a description telling what the invention is, how it works, how to make and use it so as to enable others skilled in the art to do so, and what the inventor believed at the time of filing to be the best way of making the invention.

**Ordinary Skill In Art -** The level of experience, education, and/or training that those individuals who work in the area of the invention possess.

## IV. Post Trial Instructions

### A. Summary of Patent Issues

I will now summarize the issues that you must decide and for which I will provide instructions to guide your deliberations. You must decide the following main issues:

1. Whether Bowling proved by a preponderance of the evidence that Hasbro infringed any of claims 1-9 and 16-19 of the '197 patent.

2. Whether Bowling proved by clear and convincing evidence that Hasbro engaged in willful acts of infringement with respect to the accused dice.

3. Whether Hasbro proved by clear and convincing evidence that claims 1-9 and 16-19 of the '197 patent are invalid.

4. Whether Hasbro proved by clear and convincing evidence that Bowling committed inequitable conduct.

5. What amount of damages, if any, Bowling has proved.

6. Whether Hasbro has proved by a preponderance of the evidence that Bowling infringed any copyrights owned by Hasbro.

7. What amount of damages, if any, Hasbro has proved.

## V. Infringement

### 1. Claim Construction - Generally[1]

Before you decide whether Hasbro has infringed the claims of Bowling's patent or whether Bowling's patent is valid, you will have to understand the patent claims. The patent claims are numbered sentences at the end of the patent. The patent claims involved here are 1-9 and 16-19, beginning at column 7, line 43 of the Bowling patent. The claims are "word pictures" intended to define, in words, the boundaries of the invention. Only the claims of the patent can be infringed. Neither the written description, which we have already discussed, nor the drawings of a patent can be infringed. Each of the claims must be considered individually. You must use the same claim meaning for both your decision on infringement and your decision on validity.

### 2. Claim Construction for the Case[2]

It is my job as judge to provide to you the meaning of any claim language that must be interpreted. You must accept the meanings I give you and use them when you decide whether any claim of the patent has been infringed and whether any claim is invalid. I will now tell you the meanings of the following words and groups of words from the patent claims.

---

[1] 35 U.S.C. 112; *Phillips v. AWH Corp.*, 415 F.3d 1303, 75 U.S.P.Q.2d 1321 (Fed. Cir. 2005); *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277 (Fed. Cir. 2000); *Tanabe Seiyaku Co. v. United States Int'l Trade Comm'n*, 109 F.3d 726 (Fed. Cir. 1997); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996); *Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820 (Fed. Cir. 1989); *Smithkline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878 (Fed. Cir. 1988); *Panduit Corp. v. Dennison Mfg. Co.*, 836 F.2d 1329 (Fed. Cir. 1987); *Amstar Corp. v. Envirotech Corp.*, 823 F.2d 1538 (Fed. Cir. 1987).

[2] *Phillips v. AWH Corp.*, 415 F.3d1303, 75 U.S.P.Q.2d 1321 (Fed. Cir. 2005); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc) *Smithkline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878 (Fed. Cir. 1988).

The phrase "discrete facets being identically shaped and having equal surface areas" in claim 1 means "discrete facets being identically shaped and having equal surface areas, without regard to negligible variances in surface area caused by indented indicia."

The phrase "extension member facets being equal in surface area" in claim 17 means "extension member facets being equal in surface area, without regard to negligible variances in surface area caused by indented indicia."

You should give the rest of the words in the claims their ordinary meaning to one of ordinary skill of the art in the context of the patent specification and prosecution history.

**3. Infringement - General**[3]

The Verdict Form asks: Do you find, by a preponderance of the evidence, that Hasbro's Monopoly Millennium Dice infringes one or more claims of Bowling's United States Patent No. 5,938,197?

I will now instruct you as to the rules you must follow when deciding whether Bowling has proven that Hasbro infringed any of the claims of the '197 patent.

Patent law gives the owner of a valid patent the right to exclude others from making, using, offering to sell, or selling the patented invention within the United States during the term of the patent. Any person or business entity that has engaged in any of those acts without the patent owner's permission, infringes the patent. Here, Bowling alleges that Hasbro's dice infringe claims 1-9 and 16-19 of Bowling's '197 patent.

---

[3] 35 U.S.C. 281, 271; *Seal-Flex, Inc. v. Athletic Track and Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999); *Andco Envtl. Processes, Inc. v. Niagara Envtl. Assocs., Inc.*, 206 U.S.P.Q. 656, 662 (W.D.N.Y. 1980).

You have heard evidence about both Bowling's dice and Hasbro's accused dice. However, in deciding the issue of infringement you may not compare Hasbro's accused dice to Bowling's dice. Rather, you must compare Hasbro's dice to the claims of the '197 patent when making your decision regarding infringement.

**4. Direct Infringement - Knowledge of Patent or Intent to Infringe is Immaterial[4]**

In this case, Bowling asserts that Hasbro has directly infringed the patent. Hasbro would be liable for directly infringing Bowling's patent if you find that Bowling has proven that it is more likely than not that Hasbro has made, used, offered to sell, or sold the invention defined in at least one claim of Bowling's patent.

Someone can directly infringe a patent without knowing that what they are doing is an infringement of the patent. They also may infringe even though they believe in good faith that what they are doing is not an infringement of any patent.

**5. Direct Infringement - Literal Infringement[5]**

To determine literal infringement, you must compare the accused product with each claim that Bowling asserts is infringed, using my instructions as to the meaning of the patent claims.

---

[4] 35 U.S.C. 271(a); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330 (Fed. Cir. 2001); *Seal-Flex, Inc. v. Athletic Track and Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999); *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988); *Hughes Aircraft Co. v. United States*, 717 F.2d 1351, 1361 (Fed. Cir. 1983), *overruled on other grounds, Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 234 F.3d 558, 574 (Fed.Cir. 2000).

[5] *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330-31 (Fed. Cir. 2001); *Wenger Mfg. Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1231 (Fed. Cir. 2001); *General Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 981 (Fed. Cir. 1997); *Martin v. Barber*, 755 F.2d 1564, 1567 (Fed. Cir. 1985); *Amstar Corp. v. Envirotech Corp.*, 730 F.2d 1476, 1483, 221 U.S.P.Q. 649, 655 (Fed. Cir. 1984).

A patent claim is literally infringed only if Hasbro's product includes each and every element in that patent claim. If Hasbro's product does not contain one or more elements recited in a claim, Hasbro does not literally infringe that claim. You must determine literal infringement with respect to each patent claim individually.

The accused product should be compared to the invention described in each patent claim it is alleged to infringe, not to Bowling's preferred or commercial embodiment of the claimed invention. The same element of the accused product may satisfy more than one element of a claim.

**6. Infringement of Dependent Claims**[6]

There are two different types of claims in the patent. One type of claim is called an independent claim. The other type of claim is called a dependent claim.

An independent claim is a claim that does not refer to any other claim of the patent. An independent claim must be read separately from the other claims to determine the scope of the claim.

A dependent claim is a claim that refers to at least one other claim in the patent. A dependent claim incorporates all of the elements of the claim to which the dependent claim refers, as well as the elements recited in the dependent claim itself.

For example, claim 1 of the Bowling patent is an independent claim and recites several elements. Claim 2 is a dependent claim that refers to claim 1 and includes an additional element or limitation. Dependent claim 2 adds the additional element that the die's extension member facets include printed indicia thereon. Thus, dependent claim 2

[6] *Wolverine World Wide v. Nike Inc.*, 38 F.3d 1192, 1199 (Fed. Cir. 1994); *Wilson Sporting Goods v. David Geoffrey & Assocs.*, 904 F.2d 677 (Fed. Cir. 1990); *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1553 nn.9&10 (Fed. Cir. 1989); *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 626 (Fed. Cir. 1985).

requires each of the elements of independent claim 1, as well as the additional element identified in dependent claim 2.

To establish literal infringement of dependent claim 2, Bowling must show that it is more likely than not that the Hasbro's product includes each and every element of independent claim 1 and the element of dependent claim 2.

If you find that independent claim 1 from which claim 2 depends is not literally infringed, then you cannot find that dependent claim 2 is literally infringed.

**7. Infringement of Open Ended or "Comprising" Claims[7]**

The preamble to the claims uses the word "comprising." The word "comprising" means "including the following but not excluding others."

If you find that Hasbro's dice include all of the elements in the claim, the fact that Hasbro's dice might also include additional components would not avoid literal infringement of a claim.

**8. Direct Infringement – Infringement Under The Doctrine Of Equivalents[8]**

If you decide that Hasbro's dice do not literally infringe an asserted patent claim, you must then decide whether that dice infringes the asserted claim under what is called the "doctrine of equivalents." Under the doctrine of equivalents, the dice can infringe an asserted patent claim if it includes parts that are identical or equivalent to the requirements of the claim. If the dice is missing an identical or equivalent part to even

---

[7] *Invitrogen Corp. v. Biocrest Mfg. LP*, 327 F.3d 1364, 1368 (Fed. Cir. 2003); *AFG Indus. v. Cardinal IG Co.*, 239 F.3d 1239, 1244 (Fed. Cir. 2001); *AB Dick Co. v. Burroughs Corp.*, 713 F.2d 700, 703 (Fed. Cir. 1983); *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1271 (Fed. Cir. 1986).

[8] *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950); *Johnson & Johnson Assoc. v. R.E. Service Co.*, 285 F.3d 1046 (Fed. Cir. 2002) (*en banc*); *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998); *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 397 (Fed. Cir. 1994).

one part of the asserted patent claim, the dice cannot infringe the claim under the doctrine of equivalents. Thus, in making your decision under the doctrine of equivalents, you must look at each individual requirement of the asserted patent claim and decide whether the product has an identical or equivalent part to that individual claim requirement. A part of a dice is equivalent to a requirement of an asserted claim if a person of ordinary skill in the field would think that the differences between the part and the requirement were not substantial as of the time of the alleged infringement. One way to decide whether any difference between a requirement of an asserted claim and a part of the dice is not substantial is to consider whether, as of the time of the alleged infringement, the part of the dice performed substantially the same function, in substantially the same way, to achieve substantially the same result as the requirement in the patent claim. In deciding whether any difference between a claim requirement and the product is not substantial, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the part with the claimed requirement. The known interchangeability between the claim requirement and the part of the product is not necessary to find infringement under the doctrine of equivalents. The same element of the accused product may satisfy more than one element of a claim.

**VI. Summary of Invalidity Defense**

Hasbro contends that the asserted claims of the patent-in-suit are invalid. Hasbro has the burden of proving by clear and convincing evidence that each claim is invalid.

Claims of an issued patent may be found to be invalid. Thus, you must determine whether each of Bowling’s claims is invalid.

Hasbro contends that all of the asserted patent claims are invalid for the following reasons: Hasbro alleges that Bowling publicly used the dice claimed in Bowling's patent more than a year before he filed his patent application.

I will now instruct you in more detail why Hasbro alleges that the asserted claims of the '197 patent are invalid.

## VII. Anticipation

### 1. Prior Public Use[9]

Hasbro contends that the claims of the '197 patent were anticipated because the invention defined in the claims were publicly used in the United States more than one year before Bowling filed his U.S. patent application on January 6, 1998. A patent claim is invalid if the invention defined by that claim was publicly used by anyone in the United States more than one year before Bowling filed his patent application, that is before January 6, 1997. An invention is publicly used if it is used by the inventor, or by a person who is not under any limitation, restriction, or obligation of secrecy to the inventor. Secret use by a third party is not an invalidating public use. If the public use was an experimental use performed in order to bring the invention to perfection or to determine if the invention was capable of performing its intended purpose, then such a use does not invalidate the claim.

---

[9] 35 U.S.C. 102(a), (b); *In re Caveney*, 761 F.2d 671 (Fed. Cir. 1985); *DL Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144 (Fed. Cir. 1983); *Honeywell, Inc. v. Sperry Rand Corp.*, 180 U.S.P.Q. 673 (D. Minn. 1973); *In re Smith*, 714 F.2d 1127 (Fed. Cir. 1983); *TP Lab., Inc. v. Professional Positioners, Inc.*, 724 F.2d 965 (Fed. Cir.), *cert. denied*, 469 U.S. 826 (1984); *WL Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540 (Fed. Cir. 1983), *cert. denied*, 469 U.S. 851 (1984); *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261 (Fed. Cir. 1986); *Kinzenbaw v. Deere & Co.*, 741 F.2d 383 (Fed. Cir. 1984), *cert. denied*, 470 U.S. 1004 (1985); *JA LaPorte, Inc. v. Norfolk Dredging Co.*, 787 F.2d 1577 (Fed. Cir.), *cert. denied*, 479 U.S. 884 (1986); *Grain Processing Corp. v. American Maize-Prods. Co.*, 840 F.2d 902 (Fed. Cir. 1988); *In re Smith*, 714 F.2d 1127 (Fed. Cir. 1983); *Netscape Communications Corp. v. Konrad*, 295 F.3d 1315 (Fed. Cir. 2002); *Smithkline Beecham Corp. v. Apotex Corp.*, 365 F.3d 1306 (Fed. Cir. 2004); *EZ Dock, Inc. v. Schafer Sys. Inc.*, 276 F.3d 1347 (Fed. Cir. 2002).

## VIII. Unenforceability (Inequitable Conduct)

### 1. Inequitable Conduct - Generally[10]

Applicants are required to prosecute patent applications with candor, good faith, and honesty. This duty of candor and good faith extends to all inventors named on a patent application, all attorneys and agents involved in preparing and prosecuting the application, and every other person involved in a substantial way with the prosecution of the patent application. Each individual with such a duty must disclose all information known to that individual to be material.

Hasbro contends that Bowling may not enforce his patent against Hasbro because Bowling engaged in inequitable conduct before the Patent and Trademark Office during prosecution of Bowling's patent. "Inequitable conduct" refers to the intentional failure to meet the duty of candor and good faith owed by a patent application to the PTO. To prove inequitable conduct occurred, Hasbro must prove that it is highly probable that the patent applicant, or the applicant's attorney or representative, intentionally withheld or misrepresented information with an intent to mislead or deceive the Patent & Trademark Office.

With respect to inequitable conduct, Hasbro must prove two things by clear and convincing evidence. First, Hasbro must prove by clear and convincing evidence that Bowling, his representative, or someone involved in a substantial way with the prosecution of the '197 patent withheld or misrepresented information that was material to the examination of the patent application. Second, Hasbro must prove by clear and

[10] *Bristol-Myers Squibb Co. v. Phone-Poulenc Rorer, Inc.*, 326 F.3d 1226 (Fed. Cir. 2003); *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268 (Fed. Cir. 2001); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253 (Fed. Cir. 1997).

convincing evidence that the individual or individuals who withheld or misrepresented the material information acted with an intent to deceive or mislead the PTO.

**2. Materiality[11]**

If you find that the applicant, the applicant's representative or other individuals involved in some substantial way with the prosecution of the application withheld or misrepresented information when applying for Bowling's patent, you must determine whether that information was material.

Information is material if it refutes or is inconsistent with the information provided or arguments made by the applicant to persuade the Patent Office that the invention is entitled to patent protection. Information is also material if a "reasonable examiner" would have considered the information important in examining the application. Information that is "cumulative" of, or adds little to, other information the examiner already had is not material.

**3. Intent to Deceive or Mislead[12]**

If you determine that material information was withheld or misrepresented to the PTO, you must next determine whether such information was withheld or misrepresented with the intent to deceive or mislead the PTO. Intent to deceive the PTO may be found from direct evidence. Such direct evidence is rare, however, and as a result, the law

[11] 37 C.F.R. § 1.56 (2003); Dayco Prods., Inc. v. Total Containment, Inc., 329 F.3d 1358 (Fed. Cir. 2003); Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc., 326 F.3d 1226 (Fed. Cir. 2003); PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc., 225 F.3d 1315 (Fed. Cir. 2000); Baxter Int'l, Inc. v. McGaw, Inc., 149 F.3d 1321 (Fed. Cir. 1998); Critikon, Inc. v. Becton Dickinson Vascular Access, Inc., 120 F.3d 1253 (Fed. Cir. 1997).

[12] Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc., 326 F.3d 1226 (Fed. Cir. 2003); GFI, Inc. v. Franklin Corp., 265 F.3d 1268(Fed. Cir. 2001); PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc., 225 F.3d 1315 (Fed. Cir. 2000); Critikon, Inc. v. Becton Dickinson Vascular Access, Inc., 120 F.3d 1253 (Fed. Cir. 1997); LaBounty Mfg., Inc. v. United States Int'l Trade Comm'n, 958 F.2d 1066 (Fed. Cir. 1992).

allows deceptive intent to be inferred from the facts and surrounding circumstances. In determining whether or not there was intent to deceive or mislead the PTO, you should consider the totality of the circumstances, including the nature of the conduct and evidence of the absence or presence of good faith.

**4. Balancing of Materiality and Intent**[13]

If you determine that Hasbro has proven by clear and convincing evidence that material information was withheld or misrepresented and that there was an intent to deceive or mislead the PTO, you must then balance the degree of materiality and the degree of intent to determine whether or not the evidence is sufficient to establish clearly and convincingly that there was inequitable conduct committed in the prosecution of Bowling's patent. Where the materiality of the withheld or misrepresented information is high, the showing of intent needed to establish inequitable conduct is proportionally less.

**IX. Damages**

**1. Damages - Generally**[14]

If you find that Hasbro's accused dice infringe any of the claims of Bowling's patent, and that these claims are valid, you must determine the amount of damages to be awarded to Bowling for the infringement. On the other hand, if you find that each of the

---

[13] Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc., 326 F.3d 1226 (Fed. Cir. 2003); GFI, Inc. v. Franklin Corp., 265 F.3d 1268 (Fed. Cir. 2001); PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc., 225 F.3d 1315 (Fed. Cir. 2000); Baxter Int'l, Inc. v. McGaw, Inc., 149 F.3d 1321 (Fed. Cir. 1998); Critikon, Inc. v. Becton Dickinson Vascular Access, Inc., 120 F.3d 1253 (Fed. Cir. 1997).

[14] 35 U.S.C. 284 (2004); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964); *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F. 3d 1370, 1381-82 (Fed. Cir. 2003); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-1109 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1544-45 (Fed. Cir. 1995); *Wang Labs, Inc. v. Toshiba Corp.*, 993 F.2d 858, 870 (Fed. Cir. 1993); *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1574 (Fed. Cir. 1988); *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1326 (Fed. Cir. 1987); *Vulcan Eng'g Co. v. FATA Aluminum, Inc.*, 278 F.3d 1366, 1376 (Fed. Cir. 2002); *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1119 (Fed. Cir. 1996).

asserted patent claims is either invalid or is not infringed, then you need not address damages in your deliberations. The amount of those damages must be adequate to compensate Bowling for the infringement. Your damage award should put Bowling in approximately the financial position he would have been in had the infringement not occurred; but in no event may the damage award be less than a reasonable royalty. You must consider the amount of injury suffered by Bowling without regard to Hasbro's gain or losses from the infringement. You may not add anything to the amount of damages to punish the accused infringer or to set an example.

Bowling has the burden of proving each element of its damages by a preponderance of the evidence.

The fact that I am instructing you as to the proper measure of damages should not be construed as intimating any view of the Court as to which party is entitled to prevail in this case. Instructions as to the measure of damages are given for your guidance in the event you find the evidence in favor of Bowling.

**2. Date Damages Begin**[15]

You are to begin calculating damages from the date that Bowling first gave notice to Hasbro of its patent. The parties do not agree on when Bowling first gave that notice to Hasbro, so it is up to you to determine what that date is.

Bowling has the burden to prove the date it gave notice by a preponderance of the evidence. Bowling can give notice in two ways. The first way is to give notice to the public in general. Bowling can do this by placing the word "patent" or the

[15] 35 U.S.C. 287(a); *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345 (Fed. Cir. 2001); *Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1327-28 (Fed. Cir. 2001); *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1353 (Fed. Cir. 2001); *Amsted Indus., Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 184-87 (Fed. Cir. 1994); *Devices for Med., Inc. v. Boehl*, 822 F.2d 1062-1066 (Fed. Cir. 1987).

abbreviation "PAT" with the number of the '197 patent on substantially all the products and/or their packaging he sold that included the dice at issue. The law allows Bowling some discretion to decide how to mark his dice.[16] For example, if it was impractical for Bowling to mark the dice because of the size or manufacturing process of the dice, the patent statute allows Bowling to mark the packaging instead.[17] This type of notice is effective from the date Bowling began to mark substantially all of his products or their packaging that use the patented invention with the patent number.

You must decide whether Bowling continuously marked substantially all of his dice by marking their packaging from August 17, 1999 to November 3, 1999 and whether he took reasonable steps to insure his retailers and distributors complied with the marking requirements.[18]

A second way Bowling can provide notice of his patent is to communicate to Hasbro a specific charge that it was selling dice that infringed the '197 patent. This type of notice is effective from the time it is given.

Bowling contends that he gave notice to the public by properly marking substantially all of the packaging of his dice as patented and by taking reasonable steps to insure his retailers and distributors complied with the marking requirements. If you agree with Bowling, you must begin calculating his damages from the date the patent issued, August 17, 1999. On the other hand, Hasbro contends that Bowling's

---

[16] *Sessions v. Romadka*, 145 U.S. 29, 50 (1892).
[17] 35 U.S.C. 287(a); *Sessions v. Romadka*, 145 U.S. 29, 50 (1892); *Metrologic Instruments., Inc. v. PSC, Inc.*, No. 99-4876, 2004 U.S. Dist. LEXIS 24949, at *57 (D. N.J. Dec. 13, 2004); *Rutherford v. Trim-Tex, Inc.*, 803 F. Supp. 158 (N.D. Ill. 1992) (marking of patent number on packaging containing a patentned product is adequate when marking of product itself would cause additional manufacturing burden)*Wayne-Gossard Corp. v. Sondra Mfg. Co.*, 579 F.2d 41, 43 (3d Cir. 1978).
[18] *Maxwell*, 86 F. 3d at 1111-12.

marking was inadequate and that damages start on November 3, 1999, the date Bowling gave notice to Hasbro of its infringement. If you find that Bowling, before filing this lawsuit, did not properly mark the packaging of his products then Bowling can only recover damages for infringement that occurred after he notified Hasbro of the infringement on November 3, 1999.

**3. Reasonable Royalty[19]**

In this case, Bowling seeks damages in the amount of a reasonable royalty for Hasbro's infringement. A royalty is an amount of money that someone pays a patent owner to be able to use the patented invention.

The patent law specifically provides that the amount of damages that Hasbro must pay Bowling for infringing Bowling's patent may not be less than a reasonable royalty for the use that Hasbro made of Bowling's invention. A reasonable royalty is not necessarily the actual measure of damages, but is merely the floor below which damages should not fall. Bowling is entitled to a reasonable royalty for all infringing sales.

**4. Reasonable Royalty - Definition[20]**

A royalty is a payment made to the owner of a patent by a non-owner in exchange for rights to make, use, or sell the claimed invention. A reasonable royalty is the royalty

---

[19] 35 U.S.C. 284;*Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1354 (Fed. Cir. 2001); *Fromson v. Western Litho Plate & Supply Co.*, 853 F.2d 1568, 1574 (Fed. Cir. 1998); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1119 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1579 (Fed. Cir. 1989), *cert denied*, 493 U.S. 1022 (1990).

[20] *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1121 (S.D.N.Y. 1970), *modified and aff'd sub nom., Georgia-Pacific Corp. v. United States Plywood Champion Papers, Inc.*, 446 F.2d 295 (2d Cir.), *cert. denied,* 404 U.S. 870 (1971).

that would have resulted from a willing, hypothetical negotiation between Bowling and a company in the position of Hasbro taking place just before the infringement began, which is August 17, 1999. You should also assume that both parties to that negotiation understood the patent to be valid and infringed and that the licensee would respect the patent.

**5. Reasonable Royalty - Relevant Factors**[21]

In determining the value of a reasonable royalty, you may consider evidence on any of the following factors:

1. Any royalties received by Bowling for the licensing of the patent-in-suit, proving or tending to prove an established royalty.
2. The rates paid by Hasbro to license other patents comparable to the '197 patent.
3. The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.
4. Bowling's established policy and marketing program to maintain his right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

---

[21] *Tec Air, Inc. v. Denso Mfg. Mich., Inc.*, 192 F.3d 1353, 1362 (Fed. Cir. 1999); *Fonar Corp. v. Gen. Elec. Co.*, 107 F.3d 1543, 1552-53 (Fed. Cir. 1997); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989); *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 898-900 (Fed. Cir. 1986); *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1079 (Fed. Cir. 1983); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), *modified and aff'd sub. nom.*, *Georgia Pacific Corp. v. United States Plywood Champion Papers, Inc.*, 446 F.2d 295 (2d Cir.), *cert denied*, 404 U.S. 870 (1971).

5. The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.
6. The effect of selling the patented product in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such collateral sales.
7. The duration of the ‘197 patent and the term of the license.
8. The established profitability of the product made under the ‘197 patent; its commercial success; and its current popularity.
9. The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.
10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.
11. The extent to which Hasbro has made use of the invention; and any evidence that shows the value of that use.
12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.
13. The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing

process, business risks, or significant features or improvements added by the accused infringer.

14. The opinion testimony of qualified experts.

15. The amount that a licensor such as Bowling and a licensee such as Hasbro would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee--who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention--would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

16. Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

**6. Reasonable Royalty - Timing**[22]

Although the relevant date for the hypothetical reasonable royalty negotiation is just before the infringement began, you may consider in your determination of reasonable royalty damages any actual profits by Hasbro after that time and any commercial success of the patented invention in the form of sales of the patented or infringing products after that time. You may only consider this information, however, if it was foreseeable at the time that the infringement began.

[22] *Trell v. Marlee Elecs. Corp.*, 912 F.2d 1443, 1446, 1448 (Fed. Cir. 1990); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1581 (Fed. Cir. 1989), *cert denied*, 493 U.S. 1022 (1990); *Fromson v. Western Litho Plate & Supply Co.*, 853 F.2d 1568, 1575-76 (Fed. Cir. 1988); *Studiengesellschaft Kohle, mbH v. Dart Indus.*, Inc., 862 F.2d 1564, 1571-72 (Fed. Cir. 1988).

**7. Willful Infringement**[23]

If you find that Hasbro infringed the ‘197 patent, either literally or under the doctrine of equivalents, then you must further determine if this infringement is willful. Willfulness must be proven by clear and convincing evidence showing that:

1. Hasbro had actual knowledge of Bowling’s patent, and

2. A reasonable person, with knowledge of Bowling’s patent, would have concluded that: (a) that Hasbro’s actions were highly likely to infringe Bowling’s patent, and (b) that Bowling’s patent was highly likely to be valid, and

3. Hasbro acted even though the Hasbro knew, or it was so obvious that Hasbro should have known, that Hasbro’s actions were highly likely to infringe a valid patent.

In making the determination as to willfulness, you must consider the totality of the circumstances. The totality of the circumstances comprises a number of factors, which include, but are not limited to whether Hasbro intentionally copied the claimed invention or a product covered by Bowling’s patent, whether Hasbro relied on competent legal advice, and whether Hasbro presented a substantial defense to infringement, including the defense that the patent is invalid.

## <u>HASBRO’S COUNTERCLAIM OF COPYRIGHT INFRINGEMENT</u>

## I. FACTUAL BACKGROUND

Hasbro claims infringement of its copyrights because Bowling sold monster figurines produced by e-M4. Bowling denies Hasbro’s allegations.

---

[23] *In re Seagate Technology, LLC*, -- F.3d --, 83 U.S.P.Q.3d 1865 (Fed. Cir. 2007) (en banc); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337,1347 (Fed. Cir. 2004) (en banc).

## II. NATURE OF THE CLAIM

I will now describe Hasbro's counterclaim of copyright infringement against Bowling to be decided by you.

Hasbro claims that it has a valid copyright registration in three monster figurines, namely Beholder, Cockatrice, and Mind Flayer. Hasbro claims that Bowling sold copies of these figurines.

Bowling has asserted several defenses to Hasbro's claims. Bowling claims that it did not infringe the asserted copyrights because they are not copies, but instead Bowling purchased the accused figurines from someone who independently manufactured them and did not copy the copyrighted versions of the figurines.

### 1. Burden of Proof

The fact that a person has brought a lawsuit and is in court seeking damages creates no inference or presumption that that person is entitled to a judgment for any amount at all. Anyone can make a claim, but that fact of making a claim, by itself, in no way tends to establish the claim.

For Hasbro to prevail on its claims, it must prove each and every essential element of a particular claim, including damages, against Bowling by a preponderance of the credible evidence. If Hasbro fails to establish any one of the essential elements of its claims by a preponderance of the evidence, or if the evidence is equally balanced as to any one of the essential elements of a claim, then you must deny Hasbro any recovery on that claim.[24] The party with a burden of proof on a fact cannot satisfy that burden solely by offering a witness's disbelief to prove that the fact exists.[25]

---

[24] *St. Paul Fire and Marine Ins. Co. v. Ellis & Ellis*, 262 F.3d 53 (1st Cir. 2001).
[25] *Janigan v. Taylor*, 344 F.2d 781 (1st Cir. 1965), cert. denied 382 U.S. 379 (1965).

**2. Preponderance of the Evidence**

To establish by a "preponderance of the evidence" means to prove something is more likely than not. In other words, a preponderance of the evidence means the evidence which, when you consider and compare it to the opposing evidence, has more convincing force and produces a belief in your mind that what the proponent of that evidence seeks to prove is more likely true than not true.[26]

**3. Idea/Expression[27]**

Copyright is the name for the protection that the law extends to an author or creator of an original work against the unauthorized appropriation or copying of that work by others. You are probably accustomed to hearing the word "author" used for writers but under the Copyright Law, any creator of an original work is referred to as the author of that work.

The law recognizes that there are at least two competing considerations involved. On the one hand, an original author of a work may have the right to reap the benefit of his or her creativity. On the other hand, progress in art and science requires that everyone have the right to develop and create new works using the same ideas and subjects. The Copyright Law attempts to strike a balance between these competing values, protecting so much of an author's original work as embodies his or her own particular form of expression, but not so much as would prevent others from using the same abstract ideas, common shapes, and general subjects in their own forms of expression. Copyright

---

[26] *Fischl v. Armitage*, 128 F.3d 50 (2nd Cir. 1997); 4 L. Sand *et al., Modern Federal Jury Instructions* ¶ 73.01, at 73-4 (1997).
[27] This section is adapted from 3 Federal Jury Practice and Instruction § 99.01 (1987). The authors note that the model instruction contained in § 99.01 was adapted from the instruction given by the trial court in *Aldon Accessories Limited v. Spiegel, Inc.*, 738 F.2d 548 (2d Cir.), cert denied, 469 U.S. 982, 105 S.Ct. 387, 83 L.Ed.2d 321 (1984).

protection extends only to the original expression of the ideas in an author's work, but never to the ideas themselves. Similarly, copyright protection does not extend to standard geometric forms such as circles and squares.[28] Copyright protection may extend, however, to an original selection and arrangement of such common shapes; such selection and arrangement is considered to be expression, not merely an idea.[29] By analogy, the individual words in the dictionary, or the letters of the alphabet, are not copyrightable, but if they are selected and arranged in an original manner, the resulting text may be protectible expression.

**4. Copyright Infringement**

Hasbro counter-sued Bowling for copyright infringement. To prevail on its claims of infringement, Hasbro must prove that:

(1) Hasbro owns valid copyrights in the beholder, cockatrice, and mind flayer; and

(2) Bowling infringed the rights protected by those copyrights to elements of the beholder, cockatrice, and mind flayer works that are original.[30]

**5. Ownership of Valid Copyright**

Hasbro first has to prove that it owns a work protected by the Copyright Act. To prove this, Hasbro must show that:

(1) Hasbro owns valid copyrights in the beholder, cockatrice, and mind flayer; and the beholder, cockatrice, and mind flayer works, as a whole, are original;

---

[28] *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.2d 127,132 (2d Cir. 2003).

[29] *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L. Ed. 358 (1991); *Atari Games Corp. v. Oman*, 979 F.2d 242 (D.C. Cir. 1992).

[30] *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L. Ed. 358 (1991); *Lotus Dev. Cop. v. Borland Int'l Inc.*, 49 F.3d 807, 813 (1st Cir. 1995) (collecting cases), aff'd 516 U.S. 233 (1996).

(2) Hasbro owns the copyrights asserted;

(3) and that all applicable statutory formalities have been followed.[31]

If Hasbro produces a certificate of copyright, that is prima facie evidence of ownership of a valid copyright. A copyright registration creates a presumption that the copyright is valid.

That presumption is not absolute, and Bowling can rebut the resumption that the asserted copyright are valid by showing that the beholder, cockatrice, and mind flayer are not original or that the formalities of copyright law were not followed.[32] Moreover, where the copyright registrations containing conflicting dates of creation, those dates cancel each other out, and the copyrights are not entitled to a presumption of validity regarding the date of creation.[33]

**6. Originality**

Under the copyright law, originality means that the work was independently created by the author and not copied from other works, and that it contains at least a modicum of creativity. An author's works might resemble other works, but if the author created his work on his own, or at least significant aspects of it, such as selection and arrangement, without copying from other works, and those aspects possess some slight amount of creativity, then those aspects or the entire combination of elements, can be original.

Thus, for the copyrighted beholder, cockatrice, and mind flayer to be original under copyright law, you must find that the figurines were independently created and not

---

[31] *CMM Cable Rep Inc. v. Ocean Coast Props., Inc.*, 97 F.3d 1504, 1513 (1st Cir. 1996).

[32] *CMM Cable Rep, Inc. v. Ocean Coast Props., Inc*., 97 F.3d 1504, 1513 (1st Cir. 1996); *Smith v. Jackson*, 94 F.3d 1213, 1219 (9th Cir. 1996).

[33] *See NBC Subsidiary, Inc. v. Broadcast Information Svcs., Inc.*, 717 f. Supp. 1449, 1451 (D. Colo. 1988) (holding that the prima facie effect of an original and a supplemental registration was neutralized because they contained conflicting statements relating to the issues of the date of publication).

copied from other works.[34] A work need not be completely original. It may include or incorporate elements taken from prior works, from works used with their owner's permission or from works in the public domain. But if you find that the copyrighted beholder, cockatrice, and mind flayer involve variations on pre-existing works or works in the public domain, only the elements the copyrighted beholder, cockatrice, and mind flayer that originated from their creator are original and protected by copyright.[35] Thus, one way Bowling could meet his burden of showing that the beholder, cockatrice, and mind flayer works are not original is by showing that their author did not independently create them.[36] If Bowling proves that the copyrighted figurines are not original because they were copied from prior works, then the burden shifts back to Hasbro to prove that they are original.[37]

Where a work is copied from previous work, there is no precise rule as to how much must have originated from the author in order for the author to claim copyright protection. Trivial originality is not enough. The author must show that he made a more than a modicum of original contribution or more than a modicum of original variation distinguishable from prior works.

In addition, copyright law does not protect designs that contain no artistic expression.[38] For example, a red suit, floppy cap, white trim, black boots, and white beard are stereotypical features common to all renditions of Santa Claus.[39] These standard or stock elements of a Santa Claus are not protected by copyright because they

---

[34] 17 U.S.C. § 102.
[35] *Id.*; *see also CMM Cable Rep v. Ocean Coast Props.*, 97 F.3d 1504, 1516 (1st Cir. 1996).
[36] *CMM Cable Rep v. Ocean Coast Props.*, 97 F.3d 1504, 1513 (1st Cir. 1996).
[37] *CMM Cable Rep v. Ocean Coast Props.*, 97 F.3d 1504, 1513 (1st Cir. 1996).
[38] *See Concrete Machinery Co., Inc. v. Classic Lawn Ornaments*, 843 F.2d 600, 607 (1st Cir. 1988); *see also Yankee Candle*, 259 F.3d at 35; *M &D Int'l. v. Chan*, 901 F. Supp. 1502, 1509 (D. Haw. 1995)
[39] *See, e.g., Russ Berrie & Co. v. Jerry Elsner Co.*, 482 F. Supp. 980, 986 (S.D.N.Y. 1980); *Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738, 742 (9th Cir. 1971).

are not original.[40] Instead, copyright law protects only those elements of a character or figure that involve some element of creativity, such as pose, posture and facial expression, which is why the facial expression of a particular Santa Claus might be protectible under copyright law.[41] Thus, if you find that elements of the copyrighted monsters are simple geometric shapes or to stereotypical features, the copyrights protecting them are not valid copyright in those elements.

**7. Copying**

If you conclude that Hasbro does not own a valid copyright in the beholder, cockatrice, and mind flayer, you must find for Bowling.[42]

If, on the other hand, you find that Hasbro owns a valid copyright in all or part of the beholder, cockatrice, and mind flayer, you then must move to the next stage of the analysis and determine whether Bowling infringed the rights protected by copyright in the beholder, cockatrice, and mind flayer that are original.

To show actionable copying and thereby satisfy this requirement, Hasbro must first prove that the figurines sold by Bowling were copies of the copyrighted version of the monsters and not one or more non-copyrighted versions of the beholder, cockatrice, and mind flayer.[43] To do this, Hasbro must prove either that the manufacturer of the figurines sold by Bowling directly copied Hasbro's version of the beholder, cockatrice, and mind flayer or, if that proof is unavailable, that the manufacturer had access to the copyrighted versions of the beholder, cockatrice, and mind flayer and that the accused

[40] *Gemmy Indus. Corp. v. Chrisha Creations Ltd.*, 72 U.S.P.Q.2D (BNA) 1409 (S.D.N.Y. 2004).
[41] *See Concrete Mach. Co. v. Classic Lawn Ornaments,* 843 F.2d 600, 607 (1st Cir. 1988).
[42] *See Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L. Ed. 358 (1991); *Lotus Dev. Cop. v. Borland Int'l Inc.*, 49 F.3d 807, 813 (1st Cir. 1995) (collecting cases), aff'd 516 U.S. 233 (1996).
[43] *CMM Cable Rep v. Ocean Coast Props.*, 97 F.3d 1504, 1513 (1st Cir. 1996).

product and these versions of the beholder, cockatrice, and mind flayer are so similar that you can conclude that the manufacturer copied the copyrighted versions of the beholder, cockatrice, and mind flayer, and did not use features from other versions.[44]

**8. Evidence of Copyright Infringement**

Hasbro cannot prevail unless it can prove that Bowling infringed. Infringement can be proven either directly or indirectly. An example of direct evidence would be admission by the manufacturer of the figurines Bowling sold that the figurines were copied from the asserted copyrights, or testimony from someone who saw the copyrighted monsters being copied. Direct evidence, however, is frequently not available.

Circumstantial evidence, or indirect evidence, is often resorted to in copyright cases. In these cases circumstantial evidence includes three issues:

(1) did the alleged copyist have access to the copyrighted work;

(2) are there substantial similarities between the accused products and the copyrighted works; and

(3) if there are substantial similarities, could they probably not have occurred without copying, or are there apparent explanations for the similarities.

**9. Accessibility**

To prove access, Hasbro must introduce evidence sufficient to show that the manufacturer had a reasonable opportunity to view the copyrighted works.[45] A mere

---

[44] *CMM Cable Rep v. Ocean Coast Props.*, 97 F.3d 1504, 1513 (1st Cir. 1996); *Lotus Dev. Cop. v. Borland Int'l Inc.*, 49 F.3d 807, 813 (1st Cir. 1995) (collecting cases), aff'd 516 U.S. 233 (1996).
[45] *Grubb v. KMS Patriots, L.P.*, 88 F.3d 1, 3 (1st Cir. 1996).

assertion of access, unsupported by probative evidence, is inadequate.[46] Moreover, "[a]ccess must be more than a bare possibility and may not be inferred through speculation or conjecture."[47] In addition, if Bowling shows that authors of the copyrighted works had access to a design similar, then it becomes Hasbro's burden to prove that authors did not copy their design from another copyright owner.[48]

If you find that the manufacturer of the figurines sold by Bowling had access to the copyrighted monsters, then you must next determine whether the accused figurines are 'substantially similar' to the protected expression in the copyrighted versions of a beholder, cockatrice, and mind flayer.[49]

**10. Substantial Similarity of Protectible Elements and Apparent Explanation for Similarities.**

In assessing substantial similarity, you should consider both the specific individual elements of the designs and the total concept and feel of the accused products and the copyrighted versions of a beholder, cockatrice, and mind flayer. In determining if there is a similar "total concept and feel," you should identify the particular aesthetic decisions that you think make the designs similar in the aggregate.

Using your own eyes and common sense, you must analyze the accused products and the copyrighted version of a beholder, cockatrice, and mind flayer closely enough to figure out in what respects they are similar, and then determine whether those similarities are due to protected expression which is original to the copyrighted designs.

---

[46] *Glanzmann v. King*, 8 U.S.P.Q.2d 1594, 1595 (E.D. Mich. 1988) (*citing Scott v. Paramount Pictures Corp.*, 449 F. Supp. 518, 520 (D.D.C. 1978), aff'd, 197 U.S. App. D.C. 180, 607 F.2d 494 (D.C. Cir. 1979)).
[47] *See Hofmann v. Pressman Toy Corp*., 790 F. Supp. 498, 505 (D.N.J. 1990) (citing *Gaste v. Kaiserman*, 863 F.2d 1061, 1066 (2nd Cir. 1988)).
[48] *See Midway Mfg. Co. v. Bandai-America, Inc.*, 546 F. Supp. 125, 139-40 (D.N.J. 1982).
[49] *Yankee Candle Co. v. Bridgewater Candle Co*., 259 F.3d 25, 33 n. 3 (1st Cir. 2001) (citing *Matthews v. Freedman*, 157 F.3d 25, 27 (1st Cir. 1998)).

Substantial similarity is an elusive concept, not subject to precise definition.[50] The substantial similarity requirement focuses holistically on the total concept and feel of the accused products and the copyrighted version of a beholder, cockatrice, and mind flayer and requires Hasbro to prove that the copying was so extensive that it rendered the works similar so that the accused products represented a wrongful appropriation of the copyrighted versions of a beholder, cockatrice, and mind flayer expressions.[51]

In performing this analysis, you must remember that mere identity of ideas expressed by two works is not substantial similarity giving rise to an infringement action.[52] Ideas cannot be copyrighted.[53] Authors can claim to own an original manner of expressing ideas, but not the ideas themselves.[54] Here, for example, Hasbro cannot prevail on its infringement action simply because the manufacturer also produced a version of the beholder, cockatrice, and mind flayer.[55] Rather, Hasbro must demonstrate that, among other things, the accused products are substantially similar to the original expression in the copyrighted version of a beholder, cockatrice, and mind flayer concepts.

Keep in mind that some ideas lend themselves to only a limited number of expressions, so you have to ask yourselves how many ways the idea of a beholder, cockatrice, and mind flayer could be expressed. If you determine that the idea of a beholder, cockatrice, and mind flayer can only be expressed in a limited number of ways,

---

[50] *Concrete Mach. Co. v. Classic Lawn Ornaments*, 843 F.2d 600, 606-07 (1st Cir. 1988).
[51] *Johnson v. Gordon*, 409 F.3d 12, 18 (1st Cir. 2005); *see Yankee Candle Co. v. Bridgewater Candle Co*., 259 F.3d 25, 33 (1st Cir. 2001).
[52] 17 U.S.C. § 102(b); *Concrete Mach. Co. v. Classic Lawn Ornaments*, 843 F.2d 600, 606-07 (1st Cir. 1988).
[53] *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 547, 105 S. Ct. 2218, 85 L. Ed. 2d 588 (1985).
[54] *Concrete Mach. Co. v. Classic Lawn Ornaments*, 843 F.2d 600, 606-07 (1st Cir. 1988).
[55] *Concrete Mach. Co. v. Classic Lawn Ornaments*, 843 F.2d 600, 606-07 (1st Cir. 1988); *see Mazer v. Stein*, 347 U.S. 201, 218, 74 S. Ct. 460, 98 L. Ed. 630 (1954); *Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738, 742 (9th Cir. 1971).

Hasbro has to show near identity between the works at issue.[56] Similarity, that inevitably stems from the commonality of the subject matter and the selection of the material or medium is not proof of unlawful copying.[57]

You must also remember that if you find that the manufacture copied the copyrighted work – even if Hasbro offers direct evidence of copying – Hasbro cannot recover against Bowling unless the manufacture copied original, protectible elements of the copyrighted works. If the manufacturer copied only those portions of the works, that were not original, or which are otherwise not protectible (for example, if they contain no artistic value) then Bowling is not liable for copyright infringement.

**11. Damages**

You have now been instructed on the law necessary to resolve Hasbro's copyright claims. If you find for Hasbro on its claims of copyright infringement against Bowling, then you must decide the amount of damage, if any, suffered by Hasbro as a result of the infringement.

**12. Statutory Damages**

Instead of recovering its actual damages and Bowling's profits, Hasbro may instead elect to recover damages set by the Copyright statute. The Copyright statute permits an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000.[58] Therefore, if you determine that Hasbro proved that Bowling

[56] *Concrete Mach. Co. v. Classic Lawn Ornaments*, 843 F.2d 600, 606-07 (1st Cir. 1988).
[57] *See M & D Int'l Corp. v. Chan*, 901 F. Supp. 1502, 1516-17 (D. Haw. 1995).
[58] 17 U.S.C. 504(c).

infringed its copyright, then you may assess damages against Bowling in an amount no less than $750 and no more than $30,000.[59]

**13. Curative Instruction**

The fact that I have instructed you regarding damages should not be construed as intimating any view of the Court as to which party is entitled to prevail in this case. Instructions regarding damages are given for your guidance in the event that the evidence leads you to find in favor of Hasbro.

[59] *Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 191 (1st Cir. 2004).