32121ADS

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

C.A. No. 05-229 S

---

MICHAEL BOWLING,

Plaintiff,

vs.

HASBRO, INC.,

Defendant.

---

DEPOSITION OF KEVIN B. COOK

May 22, 2006

Pursuant to Notice taken on behalf of the Defendant at 1050 17th Street, Suite 1950, Denver, Colorado 80202, at 9:06 a.m., before Diane K. Scholl, Registered Professional Reporter and Notary Public within Colorado.

by the specifications, the fact that either a printed indicia or nonimprinted indicia is not of relevance to the '197 patent.

Q. Let me ask this question again. When you analyzed the '197 patent and you looked at the question of whether Hasbro's dice were infringing --

A. Um-hum.

Q. -- you considered the question of whether or not the indentations on Hasbro's accused dice meant that the dice did not literally infringe the patent, correct?

A. I tested the Hasbro's die for purposes of determining whether it rolled true, as we've been discussing, whether the center of mass had been moved. My testing showed that the Hasbro accused die rolled fair within the number of rolls that I made.

Q. How did you test the dice?

A. I rolled it.

Q. How many times?

A. I don't remember precisely, but I seem to recall it was around 400 times.

Q. One of Hasbro's dice?

A. Actually, no. In order to be

certain that I didn't have a defective die, I rolled two and recorded them in equal columns, so like up -- assuming I did 400, I think I did around 200 of each die.

Q. And do you have records of that?

A. I had records of it, but at -- when I was finished with them, I did throw them away.

Q. Why would you throw them away?

A. Because I was satisfied that it rolled correctly.

Q. When did you do this?

A. I did this while I was writing the patent, because I wanted to make sure that the die was a fair die.

Q. When you were writing your expert report?

A. Oh, sorry. Thank you. Thank you. When I was writing the expert report.

Q. Did you share that information with Merchant & Gould?

A. Yes, I did.

Q. Did you share the data or just the conclusion?

A. Just the conclusion.

Q. Did they ask for the data?

A. I don't believe they asked for the data.
Q. Did they tell you what to do with the data?
A. No, not at all. I just wanted to see for myself.
Q. And how did you roll the dice?
A. It was on my girlfriend's kitchen table, and I used several different methods of rolling, meaning -- or several different ways of rolling it. Using my hand, I'd roll it allowing it to roll off the tip of my fingers; I used the dropping method to where you rotate your hand backwards and it drops and bounces; and I usually used the typical craps, "whew," and then having it roll off the palm of my hand between my thumb and forefinger.
Q. And you rolled a total of 400 die rolls or each die 400 times?
A. I believe I did -- again, assuming it was 400, 'cause I'm not a hundred percent sure, I rolled each of the two dice 200 times for a total of 400 die rolls.
Q. And what would have been a statistically significant variation between the

Q. Why does the Hasbro accused die infringe under the doctrine of equivalence other than the fact that you conclude that it infringes literally?

A. Because it performs the same function in the same way and produces the same results.

Q. In other words, the Hasbro accused die performs the same function as the die that is claimed in the '197 patent?

A. That is my interpretation.

Q. And it does so in the same way? The die performs in the same way as the die that's claimed?

A. That is my interpretation.

Q. And the Hasbro die obtains the same result as the die that's claimed?

A. That is my interpretation.

Q. And you know this why?

A. Because the function of both the die in the '197 patent and the Hasbro accused die is to generate random numbers, random results.

The way that the '197 patent and the Hasbro accused die achieve this function is by rolling or casting the die.

The results of the '197 patent die design and the Hasbro accused die is random results, which I tested by rolling the die.
Q. And you tested the Hasbro dice?
A. Yes.
Q. And you're assuming random results in the -- on the part of the '197 patent because that's what's claimed?
A. There -- I couldn't use the commercial embodiment, because it really was not the patent itself.
MR. LEACH: It's -- I think you're misstating the patent when you say --
MR. TECHENTIN: I'm sorry.
MR. LEACH: -- generating random numbers is what's claimed. I disagree with that.
MR. TECHENTIN: Yeah, I -- you're right. I was using it in a nontechnical sense.
Q. (BY MR. TECHENTIN) Random numbers are what the patent generally describes the function of the die being; is that fair?
A. Correct.
Q. And this analysis that you performed comparing the function-way-result of the -- of