UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/008,746 | 08/02/2007 | 5938197 | | 9909 |

23552 7590 10/25/2007

MERCHANT & GOULD PC
P.O. BOX 2903
MINNEAPOLIS, MN 55402-0903

| EXAMINER | |
|---|---|
| CLARKE, S. | |
| ART UNIT | PAPER NUMBER |
| 3993 | |

DATE MAILED: 10/25/2007

Please find below and/or attached an Office communication concerning this application or proceeding.

UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 NEW YORK AVENUE, N.W.
WASHINGTON, DC 20005

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. 90/008,746.

PATENT NO. 5938197.

ART UNIT 3993.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

| ***Order Granting / Denying Request For Ex Parte Reexamination*** | **Control No.**<br>90/008,746 | **Patent Under Reexamination**<br>5938197 | |
|---|---|---|---|
| | **Examiner**<br>Sara S. Clarke | **Art Unit**<br>3993 | |

***--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--***

The request for *ex parte* reexamination filed 02 August 2007 has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments: a)☐ PTO-892, b)☒ PTO/SB/08, c)☐ Other: _____

1. ☒ The request for *ex parte* reexamination is GRANTED.

RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional): TWO MONTHS from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

2. ☐ The request for *ex parte* reexamination is DENIED.

This decision is not appealable (35 U.S.C. 303(c)). Requester may seek review by petition to the Commissioner under 37 CFR 1.181 within ONE MONTH from the mailing date of this communication (37 CFR 1.515(c)). **EXTENSION OF TIME TO FILE SUCH A PETITION UNDER 37 CFR 1.181 ARE AVAILABLE ONLY BY PETITION TO SUSPEND OR WAIVE THE REGULATIONS UNDER 37 CFR 1.183.**

In due course, a refund under 37 CFR 1.26 ( c ) will be made to requester:

a) ☐ by Treasury check or,

b) ☐ by credit to Deposit Account No. _____, or

c) ☐ by credit to a credit card account, unless otherwise notified (35 U.S.C. 303(c)).

cc:Requester ( if third party requester )

**Decision on Request for Reexamination**

1. In the corrected request for reexamination filed August 2, 2007, reexamination of US Patent No. 5,938,197 ("subject patent") with respect to claims 1-20 was requested. A substantial new question of patentability ("SNQ") is raised by the request for reexamination and prior art cited therein for the reasons set forth below. Accordingly, the request for reexamination is GRANTED.

***Prosecution History***

2. The '246 application, which matured into the subject patent, was filed January 6, 1998. At page 3 of the previous examiner's amendment (attached to the Notice of Allowability mailed November 25, 1998), the examiner set forth his reasons for allowance as follows:

> "The patent to Gathman et al. discloses a 20-sided die having a first end cap, a second end cap and an extension member. The first and second end caps each have an equal number of triangular shaped facets, five each. The extension member has a number of triangular shaped facets, twice as many as each of the end cap facets, ten. All the facets of the 20-sided die have the same surface area. None of the cited references alone or in combination teach the claimed 'each of said extension member facets having a surface area that is different from a surface area of each of said first and second end cap facets.'"

***Criteria for Deciding Request***

3. The following is taken from MPEP § 2242:

> For "a substantial new question of patentability" to be present, it is only necessary that:
>
> (A) the prior art patents and/or printed publications raise a substantial question of patentability regarding at least one claim, i.e., the teaching of the (prior art) patents and printed publications is such that a reasonable examiner would consider the teaching to be important in deciding whether or not the claim is patentable; and
>
> (B) the same question of patentability as to the claim has not been decided by the Office in a previous examination or pending reexamination of the patent or in a final holding of invalidity by the Federal Courts in a decision on the merits involving the claim.

4. The examiner notes that both independent claims 1 and 17 of the subject patent include the limitation, "each of said extension member facets having a surface area that

is different from a surface area of each of said first and second end cap facets." The previous examiner of the '246 application referred to this limitation in his reasons for allowance because, "None of the cited references alone or in combination teach [this limitation]."

***US Patent No. 4,497,487 to Crippen***

5. Crippen raises a SNQ with respect to claims 1-6, 10-12, and 17-18 of the subject patent.

6. At pages 10-18 of the request, the requester suggests that Crippen anticipates claims 1-6, 10-12, and 17-18 of the subject patent.

7. Looking at the file history of the earlier concluded examination, it can be seen that Crippen was not addressed in the examination of the application with respect to any of the claims. Moreover, this reference was not previously considered nor addressed in a final holding of invalidity by the Federal Courts. Therefore, this reference cannot be said to raise a question of patentability raised in the earlier concluded examination or in a final holding of invalidity by the Federal Courts in a decision on the merits with respect to claims 1-6, 10-12, and 17-18. See MPEP § 2242.

8. At pages 11 and 16 of the request, the requester asserts that Figs. 3 and 4, "illustrate a planar two-dimensional flattened view of one embodiment of the die construction. *See* col. 2, lines 44-45 of Crippen." The requester also relies upon the lines drawn across the edges of the flattened die of one of the end caps to prove this assertion. See the bottom of page 11 and the top of page 17 of the request. At pages 11 and 17, the requester also observes that the triangles of the extension member are equilateral. At pages 12 and 17, the requester observes that the end caps are regular pentagons with facets that are isosceles triangles having two 54° angles and one 72° angle. Given that the area of a triangle is calculated as




(1) $A = \frac{1}{2}bh$,

where $A$=area, $b$=base length[1], and $h$=height of the facet

[1] $b$, or base length, is the length of the sides of the facets of the extension members. $b$ is also the length of the side of each edge of the end caps.

from the base, and

(2) $h = \frac{1}{2} b \tan\Theta$, where Θ=the angle opposite $h$, then

(3) $A = \left(\frac{1}{2} b\right)^2 \tan\Theta$.

Since Θ=54° for the end caps' facets, and 60° for the facets of the extension, then it appears that the areas are different for the end cap's facets and the extension's facets.

9. However, the requester's calculations are based upon the premise that the end caps are flat. Looking at Figs. 5-8, it appears that the end facets of Figs. 3 and 4 are not flat. Firstly, compare the top left end cap of Fig. 3 to the facets with the same numbers in Fig. 5. In Fig. 5 these facets do not appear to be flat. Secondly, the dice of Crippen are described as "icosahedral" or 20-sided. See col. 2, line 6. If the end facets were flat, the dice would be only 12-sided. Finally, consider the use of the dice of Crippen, i.e., two 20-sided dice are used in a game of chance to pick numbers from 1 to 40. See col. 2, lines 5-13. If the end caps were flat, how could one determine which facet of the end cap is uppermost and is thus the result of a throw? Taking into account these considerations, one of ordinary skill in the art would not come to the conclusion that the end caps of Crippen, as shown in Figs. 3 and 4, are flat.

10. Instead, the end caps are pyramids having a regular pentagon for a base. If $c$ is the height of the line from the regular pentagon's base to the apex of the pyramid, and $h'$ is the height of the pyramid's facets, then

(4) $h' = \sqrt{c^2 + h^2}$ (Pythagorean theorem), and thus the area of the facet is

(5) $A = \frac{1}{2} bh'$, or $A = \frac{1}{2} b\sqrt{c^2 + h^2}$.




The figure above represents one facet of an end cap pyramid. This facet shares an edge $b$ with an edge of the regular pentagon base. $h'$ is the height of the facet of an end cap pyramid from base b to the apex. $h$ is the same as $h$ in the figure at page 2 above, wherein $h$ is the height of one triangle of the regular pentagon base.

11. As discussed at item 4 above, the previous examiner identified the limitation of

"each of said extension member facets having a surface area that is different from a surface area of each of said first and second end cap facets" in his statement of reasons for allowance. Since there is an infinite set of possible heights *c* for the end cap pyramids, it is likely that the areas are different for the end cap's facets and the extension's facets. Thus, Crippen provides a new teaching such that a reasonable examiner would consider Crippen important in deciding whether or not to allow claims 1 and 17, and the claims that depend thereon. Accordingly, Crippen raises a SNQ with respect to claims 1-6, 10-12, and 17-18 of the subject patent.

***Traité Élémentaire de Minéralogie by Beudant***
***and***
***Traité Complet de la Chaux Carbonattée et de l'Arragonite***
***by Comte de Bournon***

12. Beudant and Comte de Bournon raise SNQs with respect to claims 1-20 of the subject patent.

13. At pages 18-24 of the request, the requester suggests that Beudant and Comte de Bournon anticipate claims 1-7 and 17-19 of the subject patent. At pages 31-45 of the request, the requester suggests that claims 1-20 of the subject patent are obvious over Beudant or Comte de Bournon taken with conventional knowledge in the dice art.

14. Looking at the file history of the earlier concluded examination, it can be seen that neither Beudant nor Comte de Bournon was addressed in the examination of the application with respect to any of the claims. Moreover, these references were not previously considered nor addressed in a final holding of invalidity by the Federal Courts. Therefore, these references cannot be said to raise a question of patentability raised in the earlier concluded examination or in a final holding of invalidity by the Federal Courts in a decision on the merits with respect to claims 1-20.

15. At pages 19, 22, 23, 32, and 43 of the request, the requester asserts, "the surface area of the triangles of the extension member and the triangles of the end caps are different," for the object in Fig. 30 of Beudant and the object in Fig. 265 in Comte de Bournon. Looking at these figures, the examiner agrees. As discussed at item 4 above, the previous examiner identified the limitation of "each of said extension member facets having a surface area that is different from a surface area of each of said first and

second end cap facets" in his statement of reasons for allowance. Thus, with respect to this limitation, both Beudant and Comte de Bournon provide new teachings such that a reasonable examiner would consider Beudant and Comte de Bournon important in deciding whether or not to allow claims 1 and 17, and the claims that depend thereon. Accordingly, both Beudant and Comte de Bournon raise SNQs with respect to claims 1-20 of the subject patent.

***Descriptive Mineralogy by Dana***

16. Dana raises a SNQ with respect to claims 1-3 of the subject patent.

17. At pages 24-26 of the request, the requester suggests that Dana anticipates claims 1-3 of the subject patent.

18. Looking at the file history of the earlier concluded examination, it can be seen that Dana was not addressed in the examination of the application with respect to any of the claims. Moreover, this reference was not previously considered nor addressed in a final holding of invalidity by the Federal Courts. Therefore, this reference cannot be said to raise a question of patentability raised in the earlier concluded examination or in a final holding of invalidity by the Federal Courts in a decision on the merits with respect to claims 1-3.

19. At page 25 of the request, the requester asserts, "the surface area of discrete facets of the extension member and the discrete facets of the end caps are different," for the crystal on page 651 of Dana. Looking at Fig. 5 on page 651, the examiner agrees. As discussed at item 4 above, the previous examiner identified the limitation of "each of said extension member facets having a surface area that is different from a surface area of each of said first and second end cap facets" in his statement of reasons for allowance. Thus, Dana provide a new teaching such that a reasonable examiner would consider Dana important in deciding whether or not to allow claim 1, and the claims that depend thereon. Accordingly, Dana raises a SNQ with respect to claims 1-3 of the subject patent.

***Crystals by Mercer***

20. Mercer does not raise a SNQ with respect to claims 1-9 and 16-19 of the subject patent.

21. At pages 26-31 of the request, the requester suggests that Mercer anticipates claims 1-7 and 17-19 of the subject patent. At pages 45-47 of the request, the requester suggests claims 8, 9, and 16 are obvious in view of Mercer.

22. Looking at the file history of the earlier concluded examination, it can be seen that Mercer was not addressed in the examination of the application with respect to any of the claims. Moreover, this reference was not previously considered nor addressed in a final holding of invalidity by the Federal Courts. Therefore, this reference cannot be said to raise a question of patentability raised in the earlier concluded examination or in a final holding of invalidity by the Federal Courts in a decision on the merits with respect to claims 1-9 and 16-19.

23. At page 25 of the request, the requester asserts, "the surface area of discrete facets of the extension member and the discrete facets of the end caps are different," for the crystal on page 58 of Mercer, the wooden model of calcite made by Count de Bournon in the middle column. Looking at this picture, the examiner cannot agree. The picture quality is poor to the extent that the examiner cannot discern the separate facets, which the requester alleges are shown[2]. As such, the examiner cannot tell whether or not Mercer discloses the feature identified by the previous examiner in his reasons for allowance, as discussed at item 4 above, let alone the rest of the claimed features. Thus, Mercer does not provide a new teaching such that a reasonable examiner would consider Mercer important in deciding whether or not to allow claims 1 and 17, and the claims that depend thereon. Accordingly, Mercer does not raise a SNQ with respect to claims 1-7 and 17-19 of the subject patent.

## *Conclusion*

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. 305 requires that ex parte reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)). Extensions of time in ex parte reexamination proceedings are provided for in

---

[2] The examiner inspected both the copy of Mercer in the Patent Office's image file wrapper, available on the examiner's desktop computer system, and the original copy submitted by the requester.

37 CFR 1.550(c).

The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving Patent No. 5,938,197 throughout the course of this reexamination proceeding. The third party requester is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286.

Any paper filed with the Office, *i.e.*, any submission made, by either the patent owner or the third party requester **must** be served on every other party in the reexamination proceeding in the manner provided by § **1.248**. The document must reflect service or the document may be refused consideration by the Office. See 37 CFR 1.550(f).

The patent owner is notified that any proposed amendment to the specification and/or claims in this reexamination proceeding MUST (a) comply with 37 CFR 1.530(d)-(j), 37 CFR 1.52(a) and (b), and (b) contain any fees required by 37 CFR 1.20(c).

**Amendment practice under 37 CFR 1.530(d)-(j) differs from that under 37 CFR 1.121.** In order to prevent any delays in the processing of this proceeding, please make all amendments to the claims as per the following:

Whenever there is an amendment to the claims, there must also be supplied, on pages separate from the pages containing the changes, (a) the status (i.e., pending or canceled), as of the date of the amendment, of all patent claims and of all added claims, and (b) an explanation of the support in the disclosure of the patent for the changes to the claims made by the amendment paper.

Whenever there is an amendment to the claims, the following status identifiers should be used: "(Original)" and "(Amended)," as appropriate. While it is not necessary, for new claims, the status identifier "(New)" may be used. <u>Additions</u> are shown by underlining and [deletions] are shown with single, square brackets. For new claims, the entire text of the proposed new claim must be underlined throughout, including the claim number and the status identifier, if used. It is preferable that cancelled claims be presented as follows: "Claims 1-5 (Cancelled)" within the listing of claims. The text of

the cancelled claim surrounded by brackets should not be presented.

**All changes must be shown relative to the patent under reexamination.** For any subsequent amendments, additions and deletions must be shown relative to the issued patent, NOT relative to any previous amendment. These additions and deletions should be presented in the manner set forth in the paragraph above.

***Contact Information***

**All** correspondence relating to this *ex parte* reexamination proceeding should be directed as follows:

By **U.S. Postal Service Mail**: Mail Stop *Ex Parte* Reexam
Attn: Central Reexamination Unit
Commissioner for Patents
P. O. Box 1450
Alexandria, VA 22313-1450

By FAX: (571) 273-9900
Central Reexamination Unit

By hand: Customer Service Window
Attn: Central Reexamination Unit
Randolph Building, Lobby Level
401 Dulany Street
Alexandria, VA 22314

Any inquiry concerning this communication or earlier communications from the Reexamination Legal Advisor or Examiner, or as to the status of this proceeding, should be directed to the Central Reexamination Unit at telephone number (571) 272-7705.

Signed:

Sara Clarke
Primary Examiner
Central Reexamination Unit
(571) 272-4873

JAK
APJ

***NOTICE RE PATENT OWNER'S CORRESPONDENCE ADDRESS***

Effective May 16, 2007, 37 CFR 1.33(c) has been revised to provide that:

The patent owner's correspondence address for all communications in an *ex parte* reexamination or an *inter partes* reexamination is designated as the correspondence address of the patent.

*Revisions and Technical Corrections Affecting Requirements for Ex Parte and Inter Partes Reexamination*, 72 FR 18892 (April 16, 2007)(Final Rule)

**The correspondence address for any pending reexamination proceeding not having the same correspondence address as that of the patent is, by way of this revision to 37 CFR 1.33(c), automatically changed to that of the patent file as of the effective date.**

This change is effective for any reexamination proceeding which is pending before the Office as of May 16, 2007, including the present reexamination proceeding, and to any reexamination proceeding which is filed after that date.

Parties are to take this change into account when filing papers, and direct communications accordingly.

In the event the patent owner's correspondence address listed in the papers (record) for the present proceeding is different from the correspondence address of the patent, it is strongly encouraged that the patent owner affirmatively file a Notification of Change of Correspondence Address in the reexamination proceeding and/or the patent (depending on which address patent owner desires), to conform the address of the proceeding with that of the patent and to clarify the record as to which address should be used for correspondence.

Telephone Numbers for reexamination inquiries:

| | |
|---|---|
| Reexamination and Amendment Practice | (571) 272-7703 |
| Central Reexam Unit (CRU) | (571) 272-7705 |
| Reexamination Facsimile Transmission No. | (571) 273-9900 |