# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

COPY

| | | |
|---|---|---|
| * * * * * * * * * * * | * | CIVIL ACTION |
| MICHAEL BOWLING | * | 05-229S |
| | * | |
| VS. | * | OCTOBER 26, 2006 |
| | * | VOLUME 1 |
| | * | |
| HASBRO, INC. | * | PROVIDENCE, RI |
| * * * * * * * * * * * | * | |

HEARD BEFORE THE HONORABLE WILLIAM E. SMITH

DISTRICT JUDGE

(MARKMAN HEARING, PLAINTIFF'S MOTION TO CORRECT INVENTORSHIP AND PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT)

APPEARANCES:

FOR THE PLAINTIFF: DOUGLAS J. WILLIAMS, ESQ.
Merchant & Gould, P.C.
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(612) 332-5300

FOR THE DEFENDANT: JEFFREY TECHENTIN, ESQ.
Adler, Pollock & Sheehan
One Citizens Plaza
Providence, RI 02903
(401) 274-7200

Court Reporter: Anne M. Clayton, RPR
One Exchange Terrace
Providence, RI 02903

Proceeding reported and produced by computer-aided stenography

THE COURT: You'll have some rebuttal. I don't mean to suggest that you have to finish everything before noon. Whatever you need.

MR. TECHENTIN: Your Honor, I do have a few witnesses here for the other portions. May I release them until after the afternoon break?

THE COURT: I think that's probably -- we can go off the record.

(Discussion off the record.)

(Short recess.)

THE COURT: Call your first witness.

MR. TECHENTIN: Thank you, your Honor. Hasbro will call Mike Gray.

**MICHAEL L. GRAY**, first having been duly sworn, testified as follows:

THE CLERK: Please state your name and spell your last name for the record.

THE WITNESS: Michael L. Gray, G-R-A-Y.

THE COURT: Good morning, Mr. Gray.

THE WITNESS: Good morning, your Honor.

THE COURT: And you may inquire, Mr. Techentin.

MR. TECHENTIN: Thank you, your Honor.

**DIRECT EXAMINATION BY MR. TECHENTIN**

Q. Good morning, Mr. Gray.
A. Good morning.

being identically shaped and having equal surface areas?
A. Yes.
MR. WILLIAMS: Your Honor, I have an objection. If I might state that for the record.
THE COURT: Yes.
MR. WILLIAMS: At this point, we would object as to the competence of this witness as an expert with respect to patents, no foundation as to his expertise in that area. And also, an objection with respect to his expertise in manufacturing or designing dice. I believe the only thing that we've heard thus far is that he has collected, and he's been interested, and he's used, but there is no adequate foundation for manufacturing dice, designing dice, or his experience at all with interpreting or reviewing patents.
THE COURT: Right. I agree with the objection. I don't think you've laid a foundation for these types of questions for this witness.
Q. Let me back up then. Mr. Gray, do you have any experience in designing dice yourself?
A. Yes. I have designed at least one die myself.
Q. Can you describe that die, please.
A. Yes, it's a six-sided die. It is longer than it is wide. It has labels around the outside. This is

MR. TECHENTIN: Allow me to make an offer of proof.

THE COURT: Go ahead.

MR. TECHENTIN: Maybe that would help. We would submit that Mr. Gray is one reasonably skilled in the relevant art here, which is the design and manufacture of dice, and I can go into manufacture in a moment.

But the purpose of his testimony would be to elucidate what his interpretation in light of that skill is of the disputed claim language. And secondly, to make some observations as to what one, who's familiar with the art, how one would interpret the term "printed" as it relates to indicia.

MR. WILLIAMS: I would expand my foundation objection now if we're going to go into another area. There's simply been no adequate foundation that this person has done anything more than put together a single dice at some point. No educational background as to whether he's, you know, manufacturing expertise, training, engineering, any of those kinds of things that you need to qualify an expert to say I am skilled in the field of manufacturing dice, or that I'm a product designer. What's his training? What's his experience been in there? Simply doing one before doesn't give him that. He may be involved in sales,

and he may be involved in general games that include dice, but that does not make him a person of skill that he can come in here and give expert testimony.

THE COURT: I agree. I have not heard the requisite foundation yet. Maybe there's more there that I haven't heard yet, but to allow the kind of testimony that you seek from this witness, I mean, basically, what I hear the witness saying is that he's got what sounds like a really cool job, flying around the world looking for really good games, but I'm not sure that makes him one skilled in the art for purposes of this patent.

So maybe there's something else there you haven't gotten out of him yet. But if this is it, then I'm not going to allow him to testify on that point.

MR. TECHENTIN: Allow me to inquire just a little further, your Honor.

THE COURT: Sure.

<u>BY MR. TECHENTIN</u>: (Continuing)

Q. Mr. Gray, do you have any educational or training background with respect to product design?

A. My on-the-job experience of having designed between 50 and 100 games, being in the business for 28 years as a game designer, game developer. And working for a company that publishes 100 or more games a year,

Again, I don't think just having a collection is important. As someone who has created many games and that's not just picking the materials for a die but all the other components of a game and everything that makes a game playable and fun. I believe that if you had to select people with experience in the industry, I would be in the top dozen people that have, you know, had experience with a large number of products that have made it to the market.

Q. What is the function that a die plays in a game?

MR. WILLIAMS: Your Honor, I think I want to renew my foundation now that he's moved away from that. I still have not heard the appropriate foundation for an expert in this field. He is an expert perhaps by his OJT with respect to selecting games, to helping develop the games and maybe where the dice is one component, but this is still far from the specific --

THE COURT: I agree. I agree. And I think, you know, I think we've been over this. I think he has a lot of expertise in a lot of areas surrounding games, but he's not an expert on the issue that is before me. He's just an expert on a lot of other parts of the gaming industry. But I think there's some -- maybe it's some misunderstanding about what you need to go into here, but I don't think the kinds of things that

he is an expert on are really what's driving the interpretation or the construction of these claims.

MR. TECHENTIN: Your Honor, obviously, the reason that we're offering Mr. Gray is that he is someone who has 28 years of not only selecting dice but of, you know, of working with dice and is familiar with the lexicon, if you will, of dice. And part of his testimony is to explore whether there is, if you will, jargon involved here. And that's the point that the plaintiff has raised here, that somehow we should deviate from common understanding of the language of the patent because, you know, it's a die. And the point for Mr. Gray to testify is that, no, that he is intimately familiar, not only with dice and their very shapes and so forth, but he's also familiar with the lexicon that people in the relevant industry, the dice industry use when they're describing dice.

So when he, as someone of his background, sees the term printed in the patent, it has a connotation for him. And that's what I would offer to the Court.

MR. WILLIAMS: Same objection, Judge.

MR. TECHENTIN: I would submit, your Honor, that he's eminently qualified to do that and his testimony would be helpful to the Court in its determination.

THE COURT: Mr. Williams?

MR. WILLIAMS: Your Honor, again, now, with respect to the patent, that's drawn to a person of ordinary skill in the art of making and dealing with these dice. So I object to the form of that question. If he wants to talk about printing as it means to somebody who is developing a game, that's different. He's got maybe foundation for that, but he doesn't have the foundation, even close, for what printing means to the manufacturing of dice. That's not there. Or one last thing, pardon the interruption. But as to what it means in the context of patent experience, no foundation whatsoever about his understanding of that --

THE COURT: Yeah, I do think you need to lay a little more foundation in this precise area before you ask him those questions.

Q. Mr. Gray, could you explain for the Court, please, what experience you have with respect to the identification and selection of different types of dice?

A. When designing a game, it's important to select components that are -- that fit the various criteria for the product. When it comes to dice, I've spoken about age and cost and other things, but how a die is used and how it's made are relevant. The reason

from actually working at TSR where we made dice that had more than just six sides, I've made acquaintance of people in the dice business. So I have done that.
Q. For example, if Hasbro wanted to make, wanted to suggest a change to a suggested die, would you be involved in arranging for that?
A. They would ask me what they were going to do, and then it would be other people that interfaced with the factories that would, you know, deal with the manufacturer. It would not be me. I'm in design. And the actual manufacturing of the plastics and ordering how many thousands of them, and how they are going to be shipped to us, you know, and all of that is done by people with engineering and manufacturing jobs.
MR. WILLIAMS: Your Honor, I would like to also add to my objection in light of this testimony the witness is saying that he knows people that do this stuff, he's been associated with people, he's worked with a company that has these people, but he's not the person. There still isn't that appropriate foundation.
MR. TECHENTIN: Your Honor --
THE COURT: Let him finish.
MR. WILLIAMS: Your Honor, if I might be able -- we're hearing a lot of stuff about what he's an expert in. But maybe if I would be permitted to conduct a

brief amount of voir dire as to what he should be an expert in and whether he has that that might get us more to the point because we seem to be going around in circles. If the Court would permit a little voir dire on my objection.

MR. TECHENTIN: Your Honor, I understand that Mr. Williams and I may have a disagreement as to what the relevant qualifications must be. And apparently, Mr. Williams is suggesting that in order to testify as to the meaning of the terms that are included in the patent, Mr. Gray must have been, essentially, a dice manufacturer, and we would submit that that's inappropriate here, that there is no -- that this is not the sole criterion by which one would be qualified to speak to the understanding of the dice terms that are used in the patent. Rather one like Mr. Gray who has lived his whole adult life in a world where dice are being designed, procured, and included in games that his background and expertise are such that he is well-qualified to inform the Court as to how the patent should be understood by the public that is being put on notice by it.

THE COURT: Okay. Well, I think that some voir dire by Mr. Williams is probably appropriate. I think it's appropriate for him to explore the qualifications

and expertise of the witness as part of his objection to this testimony being taken as expert testimony. It's clear to me that you have a fundamental disagreement about what is meant by one of ordinary skill in the art. And I'm not sure I'm going to be able to resolve that right at this moment. My inclination is to go ahead and let Mr. Williams do his voir dire, then I'll probably take the testimony and decide what to do with it later, whether I think it's really someone skilled in the art or not. Okay. Why don't you go ahead and inquire, Mr. Williams.

**VOIR DIRE EXAMINATION BY MR. WILLIAMS**

Q. Good morning, Mr. Gray.
A. Good morning.
Q. Mr. Gray, we skipped over your educational background. What is that, sir?
A. I have a bachelor's degree in Psychology from Carlton College in Northfield, Minnesota.
Q. Very fine college.
A. Thank you.
Q. Do you have any technical training whatsoever from Carlton College?
A. No, sir.
Q. Do you have -- did you take mathematics?
A. Yes.

Q. What mathematics did you take at Carlton?
A. I took calculus, several classes freshman year. And I suppose astronomy would be considered mathematics, and I took physics, which is mathematics in college.
Q. Did you take any courses in geometry or in statistics and probability, and in trigonometry, those kinds of courses?
A. In psychology, I took a statistics class in college. And then in grade school and high school geometry is explored.
Q. You're not a trained mathematician, your training is not in geometry, your training is not in particle physics, those kinds of things?
A. Correct.
Q. Have you ever been involved in the manufacturing of products like dice, specifically dice?
A. No, sir.
Q. Have you ever, aside from the one that you designed, which I think is Exhibit 41A, have you ever designed any other dice?
A. No, sir.
Q. Have you ever been hired to provide counsel about how you would go about fabricating a die or designing a dice?

A. No, sir.
Q. Has anyone ever regarded you as an expert in the area of designing a dice or in fabricating a dice?
A. No, sir.
Q. What I'm trying to get to, also, is that in the company, if the company was to say who would you go to who would be able to look at a particular technical drawing, and you're trying to find out if that particular drawing has the, you know, certain geometric configuration or certain shape with respect to manufacturing, would they come to you for that?
A. No, sir.
Q. Would they go to somebody else?
A. Yes, sir.
Q. Do you have any expertise in understanding and evaluating technical drawings?
A. Just from my 28 years of experience at the company, but it's not my expertise.
Q. You don't have the appropriate expertise to be qualified as a person to interpret technical drawings?
A. Right.
Q. Do you have any experience whatsoever in interpreting patents?
A. No, sir.
Q. Do you have any patents?

A. I actually do, yes, sir.

Q. In what area?

A. In game design.

Q. Anything with respect to dice?

A. No. Not specifically. It's on game play and components in games that I've worked on.

Q. Do you have anything with respect to the manufacture of product that would be similar to dice? For example, what kinds of limitations there would be in terms of how you imprint marking on plastic, for example, do you have any experience in manufacturing like that?

A. Experience in man -- define "experience in manufacturing." I mean, as someone with 28 years of experience of game design, and as a collector of games, and as someone who deals with inventors around the world, I do believe that, as Hasbro is the world's largest game manufacturer, that if they wanted somebody to talk to, which is why I'm here, about what do you feel about any aspect of game design, they would select me.

Q. Now, there are people in the country who are dice experts, that people are regarded as people who have expertise specifically in dice, are there not?

A. I would believe they would be the dice

manufacturers.
Q. And dice designers?
A. To be honest with you, I only know one person who I would consider a dice designer.
Q. Who is that?
A. Lou Saki.
Q. Are there any dice historians, people who have studied, made a point of studying dice and of keeping track of them and publishing articles about dice, are there those kind of people?
A. No. Other than just my experience with this case, I know that many people collect dice, but the only one that I know of, and again, it's because of this case is Mr. Cook, who has a Guinness Book of World Records.
Q. Mr. Cook?
A. Your dice expert.
Q. Our Cook. He's the only one you know of, correct?
A. Yes. I mean in all my years of the business, there aren't a lot of people -- I couldn't name another person who I know who is a dice expert. It's a specific, you know, hobby type thing, I would think.
Q. So you admit then that you're not an expert in dice design or manufacture?
A. No, I didn't admit that. I think I am -- I mean, if you dig down, of people who have been in the

business for a long time, I would say that to anyone in the industry that I am someone who has a lot of experience in the components of games.

Q. I'm not talking about the components of games, sir. I want to be real specific. With respect to dice, are you an expert in the manufacture and design of dice?

A. No.

MR. WILLIAMS: Thank you very much. Your Honor, no further questions. I would move at that point he's identified other people who would be within his company, other manufacturers that he's talked to. And he's identified our expert as a person with skill in the field, but he has disqualified himself to give the testimony that they've asked for.

THE COURT: Thank you.

MR. TECHENTIN: Your Honor, I would point out that he didn't. I don't think he acknowledged Mr. Cook as being the expert that Mr. Williams would like.

THE COURT: We'll get to Mr. Cook later and deal with him on his own merits. That's not determinative -- what he believes is not determinative on that. But I think you're going nowhere here with this effort to obtain expert testimony from this witness on this subject. So my suggestion is we just

move on.

MR. TECHENTIN: To the next witness, your Honor?

THE COURT: Yes.

MR. TECHENTIN: All right, your Honor. You may step down.

THE COURT: Thank you, Mr. Gray. And I hope you understand this isn't about you. As I said, you've got a lot of expertise. We're just in a very precise area with this patent.

MR. TECHENTIN: Hasbro would call Michael Hirtle, please, your Honor.

THE CLERK: Please raise your right hand.

THE WITNESS: I prefer to just affirm. If I could just affirm.

THE CLERK: Okay.

**MICHAEL O'HARA HIRTLE**, having been affirmed, testified as follows:

THE CLERK: Please state your name and spell your last name for the record.

THE WITNESS: Michael O'Hara Hirtle. H-I-R-T-L-E.

THE COURT: All right. Good morning, Mr. Hirtle.

THE WITNESS: Good morning.