IN THE UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MICHAEL BOWLING,<br>a Resident of Arizona,<br><br>Plaintiff,<br>v.<br><br>HASBRO, INC.,<br>a Rhode Island Corporation,<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | C.A. No. 05-229S |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT HASBRO'S MOTION IN *LIMINE* TO PRECLUDE TESTIMONY OF PLAINTIFF'S EXPERT WITNESS, NEIL N. LAPIDUS**

## I. Introduction

Plaintiff Michael Bowling ("Bowling") respectfully requests that the Court deny Defendant Hasbro Inc.'s ("Hasbro") motion to preclude Neil N. Lapidus's ("Lapidus") expert testimony. Lapidus possesses decades of experience as an accountant and in managing the Litigation and Valuation Services Department of Lurie Besikof Lapidus & Company, LLC, a sizable Midwest firm. Lapidus has served as an expert to multiple courts and has testified at trial on a wide variety of financial matters, including patent damages. His testimony has never been precluded. Furthermore, he is qualified to opine on intellectual property licensing. Moreover, he has provided advice to parties in the toy industry regarding licensing agreements. In providing his expert report, see, Expert Report of Damages of Neil N. Lapidus, CPA ("Lapidus Report"), Docket No. 134-2, Lapidus has applied the proper analytical framework to the facts of this case, and has drawn supportable and reliable conclusions as to the amount of damages, including a reasonable royalty, which Bowling intends to introduce at trial.

## II. Legal Argument

### A. Lapidus is Well Qualified to Offer an Expert Opinion on a Reasonable Royalty From a Hypothetical Negotiation Between Bowling and Hasbro

Federal Rule of Evidence 702 states that "a witness qualified as an expert by knowledge, skill, experience, training, or education may testify" in the form of an opinion or otherwise if scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or to determine a fact in issue. Fed. R. Evid. 702.

An expert need not be the world's foremost authority on a subject to assist the jury in understanding the evidence or determine a fact in issue. *See United States v. Vargas*, 471 F.3d 255, 262 (1st Cir. 2006) ("It is not required that experts be ‘blue-ribbon practitioners' with optimal qualifications."); *Levin v. Dalva Bros*., 459 F.3d 68, 78 (1st Cir. 2006) ("As such, expert witnesses need not have overly specialized knowledge to offer opinions."), citing *Gaydar v. Sociedad Instituto Gineco-Quirurgico Y Planificacion Fam*., 345 F.3d 15, 24-25 (1st Cir. 2003). Instead, "the test is whether, under the totality of the circumstances, the witness can be said to be qualified as an expert in a particular field through any one or more of the five bases enumerated in Rule 702 -- knowledge, skill, experience, training, or education." *Santos v. Posadas De P.R. Assocs*., 452 F.3d 59, 64 (1st Cir. 2006).

In fact, several courts have found that expert witnesses generally do not require any particular credentials, or specialization in a precise field, at all. *See, e.g., Tuf Racings Prods, Inc. v. Am. Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000)("The notion that *Daubert* . . . requires particular credentials for an expert witness is radically unsound," and "[a]nyone with relevant expertise enabling him to offer responsible opinion testimony helpful to judge or jury may qualify as an expert witness."); *Exum v. General Electric Co.*, 819 F. Supp. 2d 1158, 1163 (D.C. Cir. 1987)("The rule does not require the expert to have personal familiarity with the

subject of his testimony; ‘experience' is only one among the five different ways to demonstrate an expert is qualified."); *McCloud v. Goodyear Dunlop Tires N. Am., Ltd.*, 479 F. Supp. 2d 882, 888 (C.D. Ill. 2007)("Courts have allowed experts in a broader field to testify to matters that are a specific subset of their field, even though the expert did not specialize in the more specific subset."). Accordingly, the applicable threshold for a witness's qualifications is particularly low.

Although the law does not require a high bar of credentials for experts, Lapidus has strong credentials which exceed the low threshold. He has worked in accounting and the financial world for decades. He has substantial experience in analyzing local and multi-national companies, and has advised a variety of clients in assorted industries as to the terms and conditions for licensing their product -- including the gaming industry, the recording industry, "big box" retailers, general retailing, jewelry, and manufacturing. Moreover, he has advised companies involved in toy invention and distribution regarding the financial terms incorporated into their licensing agreements, and that he further supported his knowledge base by viewing comparable licensing agreements specific to the toy and game industry. See, Deposition of Neil Lapidus ("Lapidus Dep."), attached hereto as Exh. A, at pp. 62-65. Hasbro repeatedly argues that Lapidus lacks specific experience in the toy or game industries, despite the fact that Lapidus expressly testifies to the contrary.[1] Lastly, Hasbro fails to elucidate what unique factors, characteristics, or training Lapidus lacks, such that his experience in licensing, both general, and in the toy industry, disqualifies him from offering his expert opinion.

[1] It is worth noting that Hasbro’s own proposed expert on damages, Barry Sussman, has no demonstrable experience with the toy and gaming industry, according to his Curriculum Vitae. Like Lapidus, Sussman possesses a background in accounting. However, there is no indication that he possesses any specialized knowledge or training regarding the toy and game industries, and instead, his report only provides that he has experience with the following industries: apparel, bottling, chemicals, computer hardware and software, consumer products, electronics, filtration/water purification, medical products, pharmaceuticals, security and telecommunications.

When Hasbro's counsel inquired into his background, during his deposition, Lapidus related that his experience provided him with familiarity in the financial aspects of licensing for a wide variety of industries, ***including*** clients in the toy and gaming industry, where he worked on licensing issues and decision making relating to pricing, including royalties and fees for toy inventors and distributors.[2] *Id.* He has attended multiple CLE courses on the analytical framework provided in *Georgia-Pacific Corp. v. United States Plywood Corp*, 318 F. Supp. 1116, 1120 (D.C.N.Y. 1970), aff'd 446 F.2d 295 (2nd Cir. 1971), cert. denied 404 U.S. 870 (1971). The courts have never ruled that his expert testimony was inadmissible for any reason. Lapidus Dep. at pp. 53, 57. Hasbro's unfounded disparagement of Lapidus's credentials is entirely without merit and does not rise to the level of disqualification.

Moreover, the cases upon which Hasbro relies do not mandate, let alone support, disqualification of Lapidus. For example, in *State Contracting & Engineering Corp. v. Condotte America, Inc.*, 346 F.3d 1057, 1073 (Fed. Cir. 2003), the expert expressly stated that he lacked knowledge and experience as to forming a reasonable royalty. Similarly, in *Abbott Labs. v. Brennan*, 952 F.2d 1346, 1351-52 (Fed. Cir. 1991), an expert admitted that he was "not an expert on patent royalties, and that he had no prior experience of analyzing the market for a medical device, <u>or any other product</u>." Neither case is applicable here, as Lapidus has knowledge and experience relating to the subject matter of his proposed testimony – namely damage calculations and arriving at royalty rates resulting from licensing agreements – both in general practice and in the toy industry.

Hasbro also cites to an unpublished opinion from the Eastern District of Louisiana, where a proposed expert with twenty years of experience as a patent attorney, a degree in mathematics, and a M.S. in Nuclear Engineering was allowed to testify at trial. *See Cameco Indus., Inc. v.*

---

[2] Lapidus did not name any specific toy or game clients due to confidentiality agreements.

*Louisiana Cane Mfg., Inc.*, 1995 U.S. Dist. LEXIS 11294 at *9-11 (E.D. La. July 27, 1995) (Attached hereto as Exh. B). Such lofty accomplishments are not required to perform as an expert witness. All that is required under Federal Rule of Evidence 702, *Daubert* and its progeny, is that the expert is qualified through "knowledge, skill, experience, training, or education." Lapidus exceeds that threshold and is assuredly as accomplished as the expert in *Cameco Industries*.

While Hasbro argues that Lapidus is not sufficiently experienced in the toy and game industry, despite his history and knowledge, such arguments ultimately go to the weight of Lapidus's opinion for the jury to consider and not to the admissibility of his testimony. *See Mitchell v. United States,* 141 F.3d 8, 15 (1st Cir. 1998). Therefore, the Court should find that Lapidus is qualified to testify as an expert.

### B. **Lapidus's Expert Opinion on Prejudgment Interest is Proper and Helpful to the Court**.

One of Hasbro's primary arguments is that Lapidus's expert opinion recommends that Bowling be awarded compounded prejudgment interest at the Rhode Island Statutory Rate of Interest (12%). Hasbro argues that such testimony is inadmissible as an "improper subject for expert testimony,"[3] and that "his failure to calculate interest properly underscores his total lack of qualification as an expert in patent infringement damages." Hasbro's Motion to Preclude Lapidus, Docket No. 134, at pp. 26-27. Hasbro fails to elucidate how Lapidus miscalculated the applicable prejudgment interest in this case, and misguidedly posits that this Court is prohibited from assessing compounded prejudgment interest in a patent infringement action. In arguing that Lapidus qualifications are undermined by his opinion that prejudgment interest should be

[3] It is notable that Hasbro’s own proposed expert witness opines as to the applicable rate of prejudgment interest in his report, and agrees with Lapidus that the appropriate rate is 12%. Hasbro’s argument that inclusion of prejudgment interest in an expert report is an improper area for expert testimony is heavily belied by this inclusion.

compounded, Hasbro vastly misinterprets Lapidus's opinion, and demonstrates its own unfamiliarity with the applicable statutes and Federal Circuit precedent. Therefore, the Court should find no basis to exclude Lapidus's expert opinion as to the proper award of prejudgment interest.

Pursuant to 35 U.S.C. §284, the court shall award "damages adequate to compensate for the infringement," inclusive of "interest and costs as fixed by the court." "Prejudgment interest should ordinarily be awarded absent some justification for withholding such an award." *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983). Accordingly, the award, rate, and method of computing, whether compounded or uncompounded, is left to the discretion of the court. *See Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1555 (Fed. Cir. 1995)("the determination whether to award simple or compound interest is a matter largely within the discretion of the district court"); *Bio-Rad Labs., Inc. v. Nicolet Instr. Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986). Furthermore, Section 284 expressly allows the court to "receive expert testimony as an aid to the determination of damages or of what royalty would be reasonable under the circumstances." A number of courts have approved of expert testimony in formulating an appropriate amount of prejudgment interest arising from patent infringement. *See, e.g., Electro Sci. Indus. Inc. v. Gen. Scanning Inc.*, 247 F.3d 1341, 1353-54 (Fed. Cir. 2001); *Seal-Flex, Inc. v. W.R. Dougherty & Assocs.*, 254 F. Supp. 2d 647, 657 (D. Mich. 2003); *TiVo Inc. v. EchoStar Comms. Corp.*, 2006 U.S. Dist. LEXIS 64291 (E.D. Tex. August 17, 2006) (Attached hereto as Exh. C).

In his report, Lapidus expressly noted that "a number of possible rates may be used, and the Court has final discretion." Lapidus Report, at p. 15. Lapidus opines that the most appropriate <u>rate</u> of interest can be taken from Rhode Island statutory law, which is mirrored in Hasbro's expert's report. However, at no point does Lapidus opine that Rhode Island's statutory

method of computing prejudgment interest should control. In point of fact, Lapidus is absolutely correct in acknowledging that it is left to the Court's discretion to calculate and assess the proper method of assessing interest, and whether the interest should be compounded. At no point does Lapidus's opinion misstate applicable Rhode Island law. Tellingly, Hasbro's fails to cite any binding or persuasive Federal authority addressing the calculation of prejudgment interest arising in patent infringement cases, and limits its citations solely to Rhode Island state court cases arising under Rhode Island state law. See, Hasbro's Memorandum in Support of Motion in Limine to Preclude Testimony of Plaintiff's Expert Witness Neil N. Lapidus, Docket No. 134, at pp. 24, 27. In light of the foregoing, it is entirely proper for Lapidus to opine in his role as a damages expert as to the appropriate amount of prejudgment interest to award Bowling. Hasbro's expert expects to give such testimony. Therefore, the Court should deny Hasbro's motion to exclude, and consider Lapidus's expert opinion, when the time comes to assess prejudgment interest.

C. **Lapidus's Opinions as to a Reasonable Royalty Rate are Reliable, Factually Supported, and Helpful.**

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), as now codified by Rule 702 of the Federal Rules of Evidence, created a "flexible test" for reliability of expert testimony. *Id*. at 594-95. The Court in *Daubert* held that, under Rule 702, "general acceptance" is not a necessary precondition to the admissibility of scientific or other specialized opinion evidence. *Id.* at 597. The trial judge is assigned the task of ensuring that an expert's testimony both rests on reliable foundation and is relevant to the task at hand. *Id.; Kumho Tire Co., Ltd., v. Carmichael*, 526 U.S. 137, 141 (1998). Many factors bear on the reliability inquiry and there is no "definitive checklist or test." *Id.* at 593.

Under these standards, Lapidus's qualified opinions, based on demonstrable facts, arrives at a reliable measure of damages that will prove helpful to the jury at trial – namely, a reasonable royalty rate. In general, the methodology he has applied is well supported and reliable. As noted by the Federal Circuit, "[t]his court has "endorsed the conceptual framework of a hypothetical negotiation between patentee and infringer as a means for determining a reasonable royalty," and the "[f]actors relevant in a reasonable royalty determination using this method include those set out in *Georgia-Pacific*." *Micro Chemical Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1393 (Fed. Cir. 2003). Hasbro concedes that Lapidus applied the proper framework, namely the *Georgia Pacific* factors, in analyzing a reasonable royalty. Furthermore, Hasbro does not argue that any facts relied upon by Lapidus were faulty or unsupported. Instead, Hasbro attacks the conclusions drawn by Lapidus, and unsurprisingly, argues that its view of the facts should control the outcome of Lapidus's analysis. Neither of these arguments provides that Lapidus's opinion is the product of an unreliable method, or that the method of analysis was applied unreliably to the undisputed facts of the case. The entirety of Hasbro's argument goes, instead, to the weight of Lapidus's conclusions as to the reasonable royalty. Accordingly, this Court should permit Lapidus to present his testimony at trial.

In Lapidus's Report, and as confirmed by his deposition testimony, Lapidus applied the *Georgia Pacific* framework in determining a reasonable royalty based upon a hypothetical negotiation at the onset of infringement between Bowling and Hasbro. Lapidus expressly cited, and applied each of the accepted fifteen factors, and found that twelve of them weighed in favor of a higher royalty rate. In his report, Lapidus recites the pertinent factors existing at the time of the hypothetical negotiation at the onset of infringement, and expressly opines that "the timing of events surrounding the hypothetical negotiations, overall, indicates that the royalty rate would be

high in relation to other license agreements negotiated by Hasbro and other industry standards." Lapidus Report, at pp. 7-8. Lapidus's ultimate conclusion is that the hypothetical negotiation would result in an agreed royalty rate of $0.5825 per die that was reasonable and equivalent to a 5.28% royalty rate across both versions of the Monopoly board game. His analysis of the *Georgia Pacific* factors: 1) noted that Hasbro had previously paid royalty rates between 1 and 8% of net sales; 2) arrived at a royalty rate consistent with two other relevant licensing agreements from elsewhere in the industry, and 3) observed that Bowling's pricing strategy was to charge a retailer buying directly from him the wholesale price of $0.64 per die. Lapidus cited the established business practices of Bowling, the commercial relationship between Hasbro and Bowling, Hasbro's need for the dice, and the market and desirability of Bowling's dice. Lapidus accounted for the cost Hasbro previously incurred in acquiring the infringing die, and subtracted that amount from the price typically charged by Bowling. Further, he reasoned that the resulting gross margins, when accounting for the adjustments in cost associated with licensing Bowling's dice, fell within the range of the 1999 Engineering Quick Costs. In his analysis of a hypothetical negotiation, Lapidus analyzed the available facts, and drew conclusions based on the accepted and reliable framework for assessing a reasonable royalty.

At his deposition, Lapidus explained the method for his assessment that $0.5825 was a reasonable royalty. He provided that, in light of the hypothetical negotiation based upon the *Georgia Pacific* factors, including Bowling's pricing strategy and Hasbro's cost to acquire the product, that the parties would have ultimately settled on that price. Lapidus further testified that Bowling may have started any hypothetical negotiation at his retail price of $1.29 per die, or at an even higher price point. Lapidus Dep. at pp. 240-242.

Given that Lapidus applied the *Georgia Pacific* factors, and arrived at a reasonable royalty rate, the Court should find that Lapidus's expert opinion exceeds the threshold for admissibility. Other courts have denied similar motions to exclude experts under equivalent circumstances. *See, e.g., Micro Chemical Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1393 (Fed. Cir. 2003)(finding damages expert testimony reliable by "properly appl[ying]the accepted *Georgia-Pacific* methodology to Micro Chemical's version of the disputed facts, explaining the effect each factor would have on a negotiated royalty"); *Freeman v. Gerber Prods. Co*., 450 F. Supp. 2d 1248, 1262 (D. Kan. 2006) ("Where an expert utilizes the accepted *Georgia-Pacific* analysis and explains the effect that each factor would have on a negotiated royalty, as Mr. Finch did here, the issue of whether that opinion is based on sufficiently reliable facts is not a valid basis for excluding testimony under Rule 702"); *Univ. of Pittsburgh v. Townsend*, 2007 U.S. Dist. LEXIS 24620 at *23-26 (E.D. Tenn. Mar. 30, 2007) (finding damages expert opinion sufficiently reliable where expert included costs to produce product and evaluated comparable royalty rates in industry) (Attached hereto as Exh. D); *St. Clair Intellectual Prop. Consultants, Inc. v. Canon, Inc*., 2004 U.S. Dist. LEXIS 19475 (D. Del. 2004) (finding the "testimony is the product of reliable principles and methods," as the expert used "the fifteen *Georgia Pacific* factors in his reasonable royalty calculation," and "[h]e is also using, as a starting point for his analysis, a hypothetical negotiation by the parties as of the date the alleged infringement began in April, 1995.") (Attached hereto as Exh. E); *E-Z Dock v. Schafer Sys., Inc.*, 2003 U.S. Dist. LEXIS 3634 at *17-18 (D. Minn. Mar. 8, 2003) (concluding that damages expert application of *Georgia Pacific* factors was reliable and "that any shortcomings in Cobb's ‘reasonable royalty' analysis go to the weight rather than the admissibility of his analysis, and are more appropriately the subject

of cross-examination than a motion to exclude and go more to the weight than the admissibility of his testimony.") (Attached hereto as Exh. F).

For example, in *Pioneer Hi-Bred Int'l, Inc. v. Ottawa Plant Food, Inc.*, 219 F.R.D. 135, 143 (N.D. Iowa 2003), a case which is closely on point, a party challenged a damage expert's opinion of a reasonable royalty that was the same as the patent owner's profit. *Id.* The accused infringer argued that the expert failed to perform any analysis, or provide any economic, logical, or legal basis to determine the reasonable royalty rate he proffered. The court found that "[t]his dispute . . . boils down to a disagreement with an expert's conclusions, which is not a basis for the court to exclude the opinion, or the weight to be given his opinions." *Id* [citations omitted]. The court noted that "the Supreme Court emphasized in *Daubert, 509 U.S. at 595-96, 113 S. Ct. 2786*, 'Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof'" as the proper means for weighing expert opinion evidence, and not wholesale preclusion. *Id.*, quoting *United States v. Vesey*, 338 F.3d 913, 917 (8th Cir. 2003).

Indeed, much of Hasbro's unfounded criticism of Lapidus's analysis argues against the weight of Lapidus's opinion, and not to its admissibility. As this Court has previously noted, "[m]ost importantly for the instant motion [in *limine* to exclude expert testimony], 'the ultimate credibility determination and the testimony's accorded weight are in the jury's province.'" *Beacon Mut. Ins. Co. v. OneBeacon Ins. Group*, 253 F. Supp. 2d 221, 223 (D.R.I. 2003), quoting *Seahorse Marine Supplies, Inc. v. Puerto Rico Sun Oil Co.*, 295 F.3d 68, 81 (1st Cir. 2002). Furthermore, "criticisms . . . are not sufficiently weighty to justify exclusion of the survey altogether under the applicable gate-keeper standard," and any of Hasbro's criticisms "are best challenged by the type of 'vigorous cross-examination [and] presentation of contrary evidence' envisioned by *Daubert*." *Id.* at 226, citing *Daubert*, 509 U.S. at 596.

The cases cited by Hasbro are all inapposite to the potential exclusion of Lapidus's testimony. Among the cases most heavily relied on by Hasbro, is *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 476 F. Supp. 2d 1143 (N.D. Cal. 2007). There, a court found a number of unsupportable inferences rendered a damages expert opinion of a reasonable royalty unreliable. Specifically, the expert's report determined a reasonable royalty for a computer chip was "the average retail price of a notebook computer." *Id.* at 1155. However, the amount reached in the reasonable royalty calculation was unsupported by any factual basis, and premised on an alleged premium paid by another company for a non-patented product. *Id.* Lastly, the hypothetical royalty rate would have tripled the cost of the accused products. *Id.* at 1155-56.

The factors present in *Monolithic Power* are not present here. All of the accused products which Lapidus includes in his analysis are Monopoly board games, and he specifically addresses each of Hasbro's products which include the infringing dice, and the royalty rate's potential impact on each line of products. The calculated royalty rate per die was based upon actual sales of the patented product to wholesale suppliers, and Lapidus noted that the dice sell at a much higher retail price -- namely $1.29 or $1.39 per die. Lapidus Dep. at pp. 240-242. Lastly, the impact on the price of the Monopoly board games was minimal, and as noted by Lapidus, fell within the range contemplated by the 1999 Engineering Quick Costs report. Lapidus Rep. at p. 14.

Similarly, Hasbro cites *Minebea Co., Ltd v. Papst*, 2005 U.S. Dist. LEXIS 11946 (D.D.C. June 21, 2005), where an experienced patent and licensing attorney's testimony as to a reasonable royalty rate was deemed too speculative to satisfy Rule 702. There, the court noted that the expert failed to provide a basis, either verbally, or as a result of some computation, for reaching a reasonable royalty rate of $1.00 per motor, and he could not explain why higher

figures would be inappropriate within the *Georgia Pacific* framework. Lapidus's report and testimony suffer from none of these analytical flaws, as he explained that the reasonable royalty rate that he arrived at was based upon a hypothetical negotiation, which reflected the *Georgia Pacific* factors, inclusive of Bowling's pricing strategy of selling manufacturers a wholesale price of $0.64 per die. His subsequent calculation reflected Hasbro's actual cost of acquiring the infringing dice, and was not premised on some arbitrary or capricious figure. Lapidus's report recounts Hasbro's business and marketing conditions, and noted that after Hasbro attempted to remove the die, negative reviews on retailing websites resulted. Further, Lapidus compared the resulting rate with those found elsewhere in the toy industry, as well as with Hasbro's prior licensing agreements, and found such a rate to be reasonable.

Additionally, in another case cited by Hasbro, *Avocent Huntsville Corp. v. Clearcube Tech., Inc.*, 2006 U.S. Dist. LEXIS 55307 (N.D. Ala. July 28, 2006) (Attached hereto as Exh. G), the purported expert focused his analysis on the incorrect time period for assessing a hypothetical negotiation date – namely the date of the lawsuit instead of the time of the first infringement. *Id.* at *83. Here, Lapidus applied the proper time frame for his analysis. His report reflected that "a 'reasonable royalty' is the amount that the parties would have hypothetically been expected to negotiate at the onset of infringement, August 17, 1999," which is the date of the '197 patent's issuance. Accordingly, Hasbro's reliance on *Avocent Huntsville Corp.* is unfounded. Moreover, Hasbro has failed to demonstrate how the basis for Lapidus's opinions was not disclosed in his report,[4] or how the probative value of his testimony would be outweighed by any concern listed in Federal Rule of Evidence 403.

---

[4]In Hasbro's Motion, the "Background" section argues that Lapidus failed to account for the importance of August 17, 1999 in his reasonable royalty analysis in his written report. No reference to August 17, 1999, or Lapidus's deposition testimony regarding that date, is presented in any of Hasbro's legal argument section. Moreover, that date is expressly referenced in the Lapidus Report as the date upon which Bowling's patent issued, and accordingly,

## III. <u>Conclusion</u>

For the aforementioned reasons, Bowling respectfully requests that the Court deny Hasbro's motion, and allow Lapidus to provide expert testimony at trial.

Michael Bowling,
By His Attorneys,

Date: January 7, 2008

s/Thomas J. Leach
Thomas J. Leach, MN (*pro hac vice*)
Anthony R. Zeuli (*pro hac vice*)
MERCHANT & GOULD, P.C.
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Phone: 612.332.5300
Fax: 612.332.9081

Craig M. Scott, Esq. (#4237)
Christine K. Bush, Esq. (#5587)
DUFFY SWEENEY & SCOTT, LTD
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700
(401) 455-0701 (Facsimile)

is the date upon which Lapidus analyzed the hypothetical negotiation, as expressly noted by Lapidus. *See* Lapidus Report, at pp. 4-6; see also, *Applied Med. Res. Corp. v. United States Surgical Corp.*, 435 F.3d 1356, 1364 (Fed. Cir. 2006). Accordingly, Lapidus's opinion is grounded on facts disclosed in his written report.

**CERTIFICATE OF SERVICE**

TO:

Todd D. White, Esq.
Jeffrey K. Techentin, Esq.
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345

David K. S. Cornwell, Esq.
Tracey-Gene G. Durkin, Esq.
Sterne Kessler Goldstein & Fox P.L.L.C.
1100 New York Avenue N.W.
Washington, DC 20005

I hereby certify that the within *Objection and Memorandum of Law in Opposition to Defendant Hasbro's Motion in Limine to Preclude Testimony of Plaintiff's Expert Witness Neil N. Lapidus* was filed through the ECF system on the 7th day of January, 2008, and will be sent electronically to the above-named counsel who are registered participants identified on the Notice of Electronic Filing for Case No. 05-229S.

/s/ Thomas J. Leach