# EXHIBIT C

10 of 318 DOCUMENTS

**AMERICAN SEATING COMPANY, Plaintiff-Appellant, v. USSC GROUP, INC., Defendant-Cross Appellant.**

**2007-1112,-1135**

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

***2008 U.S. App. LEXIS 1864***

**January 29, 2008, Decided**

**PRIOR HISTORY:** [*1]

Appeal from the United States District Court for the Western District of Michigan in case no. 1:01-CV-578. Senior Judge Avern C. Cohn.

*Am. Seating Co. v. USSC Group, Inc., 2006 U.S. Dist. LEXIS 60128 (W.D. Mich., Aug. 24, 2006)*

**DISPOSITION:** AFFIRMED.

**COUNSEL:** Todd R. Dickinson, Fisher & Dickinson, of Ada, Michigan, argued for plaintiff-appellant. Principal counsel on the brief was Conrad J. Clark, Clark & Brody, of Washington, DC. With him on the brief was Christopher W. Brody.

Richard A. Gaffin, Miller, Canfield, Paddock and Stone, P.L.C., of Grand Rapids, Michigan, argued for defendant-cross appellant. With him on the brief was Catherine T. Dobrowitsky.

**JUDGES:** Before MAYER and BRYSON, Circuit Judges, and FOGEL, District Judge *

* The Honorable Jeremy D. Fogel, District Judge for the Northern District of California, sitting by designation.

**OPINION BY:** MAYER

**OPINION**

MAYER, Circuit Judge.

American Seating Company ("American Seating") appeals the judgment of the United States District Court for the Western District of Michigan granting-in-part USSC Group, Inc.'s ("USSC") motion for judgment as a matter of law, setting aside the portion of a jury verdict compensating American Seating for convoyed sales of passenger seats related to USSC's infringement of *Patent No. 5,888,038* (the "*'038 patent*"). USSC cross-appeals the district court's [*2] orders denying its motion for summary judgment on grounds of invalidity for public use and the parties' cross motions for a new trial following the jury verdicts on infringement and validity. *Am. Seating Co. v. USSC Group, No. 01-00578, 2006 U.S. Dist. LEXIS 60128 (W.D. Mich. Aug. 24, 2006)*. On each issue, we affirm.

BACKGROUND

American Seating owns the *'038 patent*, entitled "Tie-Down for Wheelchairs," which is directed toward a wheelchair restraint system that complies with the Americans with Disabilities Act ("ADA") for use in mass transit vehicles. The invention uses a combination of belts and moving arms to secure wheelchairs and hold them in place while buses and trains are in motion. USSC manufactures wheelchair tie-down devices, the VPRo I and VPRo II.

American Seating sued USSC and others on September 7, 2001, for infringement of, inter alia, the *'038 patent*. The district court determined that neither the VPRo I nor VPRo II literally infringes the *'038 patent*. American Seating appealed, and this court reversed the finding as to the VPRo I, affirmed as to the VPRo II, and remanded because of claim construction error to determine whether the VPRo I literally infringed and whether the VPRo II infringed under [*3] the doctrine of equivalents. *Am. Seating Co. v. USSC Group, 91 F. App'x 669 (Fed. Cir. 2004)*. On remand, the trial court granted summary judgment to American Seating on the claim that the VPRo I literally infringed the *'038 patent*, and left for the jury the issues of public use and infringement by the VPRo II. The jury concluded that USSC failed to show that American Seating's tie-down restraint system was in public use before the critical date, and awarded American Seating damages totaling $ 2,326,129 in lost profits.

Of the damage award, $ 1,366,612 related to lost profits from infringing sales by USSC of the VPRo I, and $ 959,517 to lost profits as a result of USSC's infringing offers to sell the VPRo I that resulted in deliveries of the VPRo II. Of the infringing VPRo I sales, $ 387,931 was allocated to lost profits from diverted sales of American Seating's patented tie-down restraint system, and $ 971,681 was allocated to lost profits from diverted collateral sales of accompanying passenger seats. Of the infringing offers to sell the VPRo I that resulted in deliveries of the non-infringing VPRo II, $ 288,919 related to lost profits from sales of tie-down restraint systems, and [*4] $ 670,598 to lost profits from collateral sales of passenger seats. Following the jury verdict, USSC moved for judgment as a matter of law, a new trial or remittitur. The trial court granted USSC's motion in-part by setting aside the portion of the verdict relating to convoyed sales, thereby reducing the overall award to $ 676,850. American Seating appeals, and USSC cross-appeals. We have jurisdiction under *28 U.S.C. § 1295(a)(1)*.

DISCUSSION

We review a district court's grant of judgment as a matter of law in a case tried to a jury de novo by reapplying that standard under the law of the regional circuit. *Dystar Textilfarben GmbH & Co. v. C.H. Patrick, 464 F.3d 1356, 1359 (Fed. Cir. 2006)*. To grant a motion for judgment as a matter of law, the trial court must determine that the non-moving "party has been fully heard on an issue during a jury trial and . . . a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." *Fed. R. Civ. P. 50(a)(1)*. In the Sixth Circuit, judgment as a matter of law is appropriate "when 'viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the [*5] jury, and reasonable minds could come to but one conclusion in favor of the moving party.'" *Johnson Controls, Inc. v. Jay Indus., Inc., 459 F.3d 717, 723 (6th Cir. 2006)* (quoting *Tisdale v. Fed. Express Corp., 415 F.3d 516, 527 (6th Cir. 2005)* (internal quotation marks omitted)).

We likewise review a district court's summary judgment determinations de novo. *Netscape Commc'ns Corp. v. Konrad, 295 F.3d 1315, 1319, 63 U.S.P.Q.2d 1580, 1582 (Fed. Cir. 2002)*. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. Summary judgment is improper "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*. When ruling on a motion for summary judgment, all of the non-movant's evidence is to be credited, and all justifiable inferences drawn in the non-movant's favor. *Id. at 255*.

I. Validity

USSC contends that American Seating's *'038 patent* is invalid for [*6] public use. An invention "in public use" more than one year prior to the date of the application for a patent in the United States is unpatentable. *35 U.S.C. § 102(b)*. The purpose of the public use bar to patentability is to discourage "the removal of inventions from the public domain which the public justifiably comes to believe are freely available." *Bernhardt, L.L.C. v. Collezione Europa USA, Inc., 386 F.3d 1371, 1379 (Fed. Cir. 2004)* (internal quotation marks omitted). Whether a patent is invalid for public use is a question of law based on underlying facts. *Netscape, 295 F.3d at 1320*. The test for whether an invention is ineligible for a patent due to the *section 102(b)* public use bar "is whether the purported use: (1) was accessible to the public; or (2) was commercially exploited." *Invitrogen Corp. v. Biocrest Mfg., L.P., 424 F.3d 1374, 1380 (Fed. Cir. 2005)*. Consideration of public use includes analysis of, *inter alia*, the nature of and public access to activities involving the invention; confidentiality obligations imposed upon observers; commercial exploitation; and the circumstances surrounding testing and experimentation. Id.; *Netscape, 295 F.3d at 1320*. An invention is [*7] in public use if it is shown to or used by an individual other than the inventor under no limitation, restriction, or obligation of confidentiality. *Petrolite Corp. v. Baker Hughes Inc., 96 F.3d 1423, 1425 (Fed. Cir. 1996)* (citing *In re Smith, 714 F.2d 1127, 1134 (Fed. Cir. 1983))*. However, "use of an invention by the inventor himself, or of any other person under his direction, by way of experiment, and in order to bring the invention to perfection, has never been regarded as such a use." *City of Elizabeth v. Am. Nicholson Pavement Co., 97 U.S. 126, 134, 24 L. Ed. 1000 (1877)*.

A patent carries a statutory presumption of validity, *35 U.S.C. § 282*, so USSC had the burden to show by clear and convincing evidence that the inventors of the wheelchair tie-down system placed their invention in public use more than one year before filing the *'038 patent* application. *Bernhardt, 386 F.3d at 1378*. The inventors, James Ditch and Freridoun Razavi, applied for a patent on December 2, 1996, and later assigned their patent to American Seating to commercialize the product. Ditch was the Director of Maintenance for the Long Beach Transit Authority when, in 1994, he and bus retrofitter Razavi invented the tie-down wheelchair [*8] restraint system with the goal of better and more efficiently serving Long Beach's wheelchair bound customers while reducing the maintenance problems associated with an

earlier generation of wheelchair restraints. As they improved the invention, on several occasions Ditch and Razavi placed evolving prototypes in an out-of-service bus for the purpose of soliciting feedback from friends and colleagues who to varying degrees assisted in the invention's development.

Contrary to USSC's argument, the fact that the inventors revealed the prototype to a select group of individuals without a written confidentiality agreement is not dispositive. When access to an invention is clearly limited and controlled by the inventor, depending upon the relationships of the observers and the inventor, an understanding of confidentiality can be implied. *Id. at 1381*; *Moleculon Research Corp. v. CBS, Inc., 793 F.2d 1261, 1265-66 (Fed. Cir. 1986)*. In this case, the jury was entitled to conclude that Ditch, Razavi, and the limited number of people permitted to view the tie-down restraint system prototype shared a general understanding of confidentiality. Ditch demonstrated the prototype on an out-of-service bus, [*9] solicited feedback, and removed the invention to store under his control. There was no evidence that the prototype was placed in service before December 1995, and no evidence that an unrestricted number of people unconnected with the development of the invention observed the invention in use. The district court properly confirmed the jury verdict that the *'038 patent* is not invalid for public use.

II. Lost Profits

Whether a party may be awarded lost profits is a question of law that we review de novo. *Mitutoyo Corp. v. Cent. Purchasing, LLC, 499 F.3d 1284, 1291 (Fed. Cir. 2007)*. We agree with the trial court's conclusions that American Seating failed as a matter of law to meet its burden of establishing a functional relationship between passenger seats and the patented restraint system, and the jury properly awarded damages for lost profits on USSC's deliveries of the VPRo II predicated upon offers to sell the infringing VPRo I. See *BIC Leisure Prods. v. Windsurfing Int'l, 1 F.3d 1214, 1218 (Fed. Cir. 1993)* ("To recover lost profits as opposed to royalties, a patent owner must prove a causal relation between the infringement and its loss of profits. The patent owner must show that 'but [*10] for' the infringement, it would have made the infringer's sales.").

A. Convoyed Sales

A "convoyed sale" refers to the relationship between the sale of a patented product and a functionally associated non-patented product. A patentee may recover lost profits on unpatented components sold with a patented item, a convoyed sale, if both the patented and unpatented products "together were considered to be components of a single assembly or parts of a complete machine, or they together constituted a functional unit." *Rite-Hite Corp. v. Kelly Co. Inc., 56 F.3d 1538, 1550 (Fed. Cir. 1998)*. "Our precedent has not extended liability to include items that have essentially no functional relationship to the patented invention and that may have been sold with an infringing device only as a matter of convenience or business advantage." Id. Damages on these items would exceed that which suitably compensates for the infringement. Id.

A functional relationship does not exist when independently operating patented and unpatented products are purchased as a package solely because of customer demand. The fact that customers prefer that passenger seats and tie-down wheelchair restraint systems come from a single [*11] supplier for ease of purchase, repair, and uniform design and appearance, does not compel the conclusion that the seats and tie-down system are "analogous to components of a single assembly or . . . parts of a complete machine."

Here, the trial court granted USSC's motion to set aside the verdict for convoyed sales because the record evidence, viewed in the light most favorable to American Seating, was insufficient as a matter of law for the jury to find that the patented tie-down system and unpatented passenger seats were part of a single functional unit. The evidence demonstrated that (1) neither flip-up nor fixed passenger seats are covered by the claims of the *'038 patent*; (2) the tie-down operates independently of the passenger seats; and (3) bus buyers do not require that passenger seats and tie-downs be purchased from the same company. Tie-downs and passenger seats were usually but not always purchased by bus manufacturers from the same company; package sales were for reasons of convenience and "one-stop shopping," not because of an absolute requirement that the two items function together. Although the specification refers to a preferred embodiment in which the tie-down of [*12] the invention is located "adjacent chairs that fold against the side of the bus," *U.S. Patent No. 5,888,038* col.1, ll.60-61 (filed Aug. 4, 1997), the claims make no mention of the passenger seats and the references to the "adjacent chairs" do not indicate any functional relation between the seats and the wheelchair tie-downs. Cf. *Juicy Whip, Inc. v. Orange Bang, Inc., 382 F.3d 1367, 1372 (Fed. Cir. 2004)* (noting that the non-patented syrup was central to the "visual appearance" of the patented dispenser and therefore could be included in the lost profits analysis).

A bus utilizing American Seating's tie-down restraint system and outfitted by USSC's passenger seats would be equally as functional as a bus furnished with only American Seating products. The evidence shows that passenger seats command a market value and serve a useful purpose independent of the patented product. Cf.

*Rite-Hite, 56 F.3d at 1550* (citing *Paper Converting Mach. Co. v. Magna-Graphics Corp., 745 F.2d 11 (Fed. Cir. 1984)* (indicating that lost profit damages are properly granted for collateral products that have no useful purpose or market value independent of the patented product)). Because it is clear that no interrelated [*13] or functional relationship inheres between the seats and the tie-down restraint system on a passenger bus, the district court was correct that the jury had no basis to conclude that lost profits on collateral sales of passenger seats were due American Seating.

B. VPRo II Lost Sales

It is undisputed that the patented features of American Seating's tie-down wheelchair restraint system prompted consumer demand, in large part because of its efficiency and ADA-compliance, and that USSC's VPRo I restraint system infringes these patented features. It is also undisputed that USSC's VPRo II restraint system does not infringe. In instances involving five transit authorities, however, the jury awarded American Seating lost profit damages for USSC sales of the non-infringing VPRo II restraint system, because in those cases USSC first made infringing offers to sell the VPRo I, but ultimately delivered the VPRo II.

To prove lost profits from lost sales, the patent owner bears the initial burden to show a reasonable probability that "but for" the infringement, he would have made the sales. *Grain Processing Corp. v. Am. Maize-Products Co., 185 F.3d 1341, 1349 (Fed. Cir. 1999)*; *State Indus., Inc. v. Mor-Flo Indus., Inc., 883 F.2d 1573, 1577 (Fed. Cir. 1989)*. [*14] Once this reasonable probability is shown, the burden shifts to the infringer to show that the "but for" causation analysis is unreasonable under the specific circumstances. *Grain Processing, 185 F.3d at 1349*. Here, it appears the jury determined that American Seating met its initial burden, and that USSC failed to persuasively rebut. The evidence upon which the jury relied included: (1) an e-mail from USSC's Vice President of Sales, Richard Klotz, announcing on March 16, 2004, that the VPRo I would no longer be available, that orders already placed would be filled by the VPRo II, and naming several jobs that needed to be "switched over" to the VPRo II; (2) testimony analyzing such correspondence by David McLaughlin, Vice President of American Seating, and Kathleen Kedrowski, American Seating's damages expert at trial; and (3) inconsistent testimony by Christian Hammarskjold, president and owner of USSC, regarding the events surrounding the sales in question, and whether customers were effectively informed about the switch. USSC did not prove that its customers specifically consented to receive the VPRo II rather than the VPRo I for the sales in question. On the following instruction, [*15] the jury concluded that USSC offered to sell the infringing device to the five relevant customers, not the non-infringing substitute.

> American Seating also seeks to recover profits it claims it lost due to USSC's offer to sell its VPRo I when, prior to delivery, the order was changed to the noninfringing VPRo II. To recover any lost profits as a result of each such offer to sell, American Seating must show that USSC made an offer to sell the VPRo I to a customer, that the customer agreed to purchase the VPRo I, that USSC substituted the VPRo II when it delivered the product, and that but for the offer to sell the VPRo I, American Seating would have made the sale. You must determine what the customer would have done. . . .

USSC argues that the jury's award of lost profit damages for sales of the non-infringing VPRo II after April 2002 was not supported by substantial evidence. It also argues that Grain Processing created a bright-line rule that the presence of a non-infringing replacement product precludes lost profit damages in all circumstances. However, USSC overlooks that Grain Processing instructs that a non-infringing replacement product is not considered a substitute unless it [*16] is "acceptable to all purchasers of the infringing product." *Id. at 1343*. In other words, buyers must view the substitute as equivalent to the patented device. See *id. at 1347*.

Here, the jury did not conclude that customers viewed the VPRo II as an equivalent substitute for American Seating's patented wheelchair restraint system. It viewed specimens and demonstrations of both the VPRo I and VPRo II, and heard testimony from Lee Peterson, a regional sales manager for American Seating, that USSC's Klotz admitted that a manager of the Los Angeles County Metropolitan Transit Authority objected to the switch from the VPRo I to VPRo II because of differences in the way the two devices lock into use. On all the evidence, it was reasonable for the jury to decline to find that the VPRo II was an acceptable substitute for the patented device and the infringing VPRo I.

Grain Processing says that patentees have "significant latitude to prove and recover lost profits for a wide variety of foreseeable economic effects of the infringement." *Id. at 1350*. Although the evidence in this case was relatively sparse, it sufficed for the jury to assume that USSC offered the VPRo I for sale and then substituted [*17] the non-infringing VPRo II--a bait-and-

switch--and to find that absent USSC's offer to sell the VPRo I, the sales would have gone to American Seating.

CONCLUSION

Accordingly, the judgment of the United States District Court for the Western District of Michigan is affirmed.

AFFIRMED.