IN THE UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MICHAEL BOWLING,<br>a Resident of Arizona,<br><br>Plaintiff,<br>v.<br><br>HASBRO, INC.,<br>a Rhode Island Corporation,<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | C.A. No. 05-229S |

**PLAINTIFF'S MOTION IN *LIMINE* TO PRECLUDE TESTIMONY OF DEFENDANT'S EXPERT WITNESS, BARRY SUSSMAN**

## I. Introduction

The opposing experts in this case have followed parallel paths of methodology to reach their conclusions. Given the Court's recent indication that it will exclude Plaintiff Michael Bowling's ("Bowling") expert, Neil Lapidus, the Court should equally exclude Defendant Hasbro, Inc.'s ("Hasbro") expert, Barry Sussman. [1] Mr. Sussman's expert report is no more reliable than Mr. Lapidus's because both applied the same *Georgia-Pacific* factors used to determine a reasonable royalty rate and both focused on a particular fact as setting limits beyond which the parties would not have negotiated. In fact, Mr. Sussman's expert report is less reliable because he relied on irrelevant facts and expressly limited the *Georgia-Pacific* factors by the particular fact he chose.

## II. Legal Standard

Expert testimony should be excluded unless "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Monsanto Co.*

[1] Should the Court allow the testimony of Mr. Lapidus, Bowling withdraws this Motion in *Limine* to Preclude Testimony of Mr. Sussman.

*v. David*, ___ F.3d. _____, 2008 U.S. App. LEXIS 2493, *13 (Fed. Cir. Feb. 5, 2008) (quoting Fed. R. Evid. 702). "The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 595 (1993).

## III. Argument

### A. Mr. Sussman's Testimony is Based on Less Reliable Facts than Mr. Lapidus's.

In analyzing the *Georgia-Pacific* factors, Mr. Sussman relied on inappropriate facts. Other than those inappropriate facts, Mr. Sussman relied on substantially the same types of facts as Mr. Lapidus.

#### i. Mr. Sussman Inappropriately Relied on Irrelevant Settlement Negotiations.

Settlement negotiations are irrelevant to determining a reasonable royalty. *Rite-Hite Corp. v. Kelly Co., Inc.*, 774 F. Supp. 1514, 1535 (E.D. Wis. 1991), *aff'd in relevant part, rev'd on other grounds*, 56 F.3d 1538 (Fed. Cir. 1995) ("Such settlement-induced royalty agreements are determined largely by factors that are not considered in the 'hypothetical royalty negotiation' analysis that this court must perform.") Indeed, Hasbro concedes that evidence of settlement negations between the parties is irrelevant. (Letter from Hasbro's counsel to the Court (March 6, 2008) ("Here, that means the specific terms of any offers or demands made post-infringement would be irrelevant to the reasonable royalty calculation.") (Ex. A).)

Nevertheless Mr. Sussman repeatedly relied on the settlement negations between Bowling and Hasbro. In analyzing the *Georgia-Pacific* factor of the rates paid by the licensee for the use of other patents comparable to the patent in suit, Mr. Sussman relied on the fact that Hasbro offered to Bowling a royalty of $0.04 per die and rejected a counteroffer from Bowling of $0.25 per die. (Sussman Rpt. at 14.) Similarly, in analyzing the factor of the licensor's policy to maintain its patent monopoly, Mr. Sussman relied on the fact that Hasbro rejected Bowling's

offer of $0.25 per die. (*Id.* at 17.) These settlement negotiation facts are unreliable for determining a reasonable royalty. Thus, Mr. Sussman's testimony is inherently less reliable than Mr. Lapidus's.

**ii. Other than the Settlement Negations, Mr. Sussman and Mr. Lapidus Considered Similar Facts.**

Both Mr. Sussman and Mr. Lapidus considered similar relevant facts. Both considered the following facts: Bowling had never given a license for his patent (Sussman Rpt. at 12; Lapidus at 8); Hasbro had taken numerous licenses regarding games, many for a five percent royalty rate (Sussman Rpt. at 13; Lapidus Rpt. at 8); the nature of the license that would have been given and taken at the hypothetical negotiation (Sussman Rpt. at 15; Lapidus Rpt. at 9); the commercial relationship of the parties (Sussman Rpt. at 17; Lapidus Rpt. at 9); the expected product life of Hasbro's Monopoly Millennium games (Sussman Rpt. at 19; Lapidus at 11); and the royalty rate of other licenses in the industry (Sussman Rpt. at 25-26; Lapidus Rpt. at 13-14).[2] Thus, should the Court find that Mr. Lapidus's testimony is not based on sufficient facts, it should equally find that Mr. Sussman's testimony is not based on sufficient facts.

**B. Mr. Sussman Employed the Same Principles and Methods as Mr. Lapidus**

Both Mr. Sussman and Mr. Lapidus discussed the *Georgia-Pacific* factors before determining a hypothetically negotiated royalty. (Sussman Rpt. at 11; Lapidus Rpt. at 8.) The reports of both experts have distinct sections for each factor including a discussion of the applicable facts. (Sussman Rpt. at 12-29; Lapidus Rpt. at 8-15.) Neither report identifies a specific, mathematical affect of any of the factors on a royalty rate. Rather, both reports merely

[2] Although Mr. Sussman and Mr. Lapidus disagree over some facts, e.g. Mr. Sussman believes that parties would have been in an inventor-promoter relationship while Mr. Lapidus believes they would have been in a supplier-customer relation, each is permitted to consider their understandings of the facts. *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1392 (Fed. Cir. 2003) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of the facts underlying one expert's testimony.")

identify the general affect of a factor as favoring one of the parties, or favoring a higher or lower rate. (Sussman Rpt. at 27-29; Lapidus Rpt. at 8-15.) Thus, should the Court find that Mr. Lapidus's testimony is not the product of reliable methods and principles, it should equally find that Mr. Sussman's testimony is not the product of reliable methods and principles.

**C. Mr. Sussman Less Reliably Applied the *Georgia-Pacific* Factors than Mr. Lapidus**

Although Mr. Sussman discussed all the *Georgia-Pacific* standards, he limited his consideration of a reasonable royalty rate by one particular fact of his choosing. Mr. Lapidus, on the other hand, did not limit his consideration even though his reasonable royalty rate also reflects one particular fact.

**i. Mr. Sussman Improperly Limited His Reasonable Royalty Analysis to the Cost of Switching to a Non-Infringing Alternative**

While the availability of a non-infringing alternative is one relevant factor to determining a reasonable royalty, it is not the only factor. *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387,1393 (Fed. Cir. 2003); *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1571-72 (Fed. Cir. 1996). Indeed, the availability of a non-infringing alternative is not one of the *Georgia-Pacific* factors. *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (D.C.N.Y. 1970), *aff'd*, 446 F.2d 295 (2nd Cir. 1971). Furthermore, there is nearly always a non-infringing alternative when a reasonable royalty is the measure of damages. *See Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1350-51 (Fed. Cir. 1999) (holding that the existence of a non-infringing alternative dictates when a reasonable royalty, rather than lost profits, defines the measure of damages). Thus, reliance purely on the cost of switching to a non-infringing alternative would render the *Georgia-Pacific* factors superfluous. The Federal Circuit, however, continues to endorse the *Georgia-Pacific* factors. *Micro Chem.*, 317 F.3d at 1393.

Nevertheless, Mr. Sussman inappropriately limited his reasonable royalty rate to the cost of switching the accused dice for standard dice. Mr. Sussman testified to the following at the hearing on January 24, 2008:

> Q. . . . And after doing the Georgia-Pacific analysis, isn't it true that you come to the exact number that it would have cost Hasbro to switch out the dice, i.e. 15 cents?
>
> A. Yes, because standard methodology understands and contemplates that the maximum that a licensee would be willing to pay for technology is that cost that it would take to convert to other acceptable technology. . . .

(Sussman Tr. at 37.) This testimony recites Mr. Sussman's position in his report that "[t]he cost of an acceptable non-infringing alternative can cap a royalty that a 'prudent' licensee will be willing to pay. (Sussman Rpt. 29.) Even in the summary of his opinion, Mr. Sussman only cited one fact – "Hasbro had non-infringing alternative dice that were commercially acceptable, and available to use in its Monopoly Millennium Edition games in August 1999." (*Id.* at 2.) Despite discussing the *Georgia-Pacific* factors, Mr. Sussman superseded these Federal Circuit endorsed factors with one of his own choosing.

**ii. Both Mr. Sussman and Mr. Lapidus Adopted a Particular Fact.**

Mr. Sussman's and Mr. Lapidus's royalty rate reflect one particular fact. Mr. Lapidus's reflects Bowling's wholesale price for his dice. (Lapidus Rpt. at 15.) Mr. Sussman's reflects the cost of replacing the accused dice with standard dice. (Sussman Rpt. at 2, 29.) Neither expert used their particular fact as a starting point, nor showed how each *Georgia-Pacific* factor specifically led to the adoption of their particular fact as a reasonable royalty. Thus, should the

Court find that Mr. Lapidus did not reliably apply the *Georgia-Pacific* factors, it should equally find that Mr. Sussman did not reliably apply the *Georgia-Pacific* factors.

## IV. Conclusion

Mr. Sussman improperly relied on irrelevant facts and improperly limited his analysis of the *Georgia-Pacific* factors. Other than these improper applications of accepted reasonable royalty methodology, Mr. Sussman and Mr. Lapidus follow parallel paths to their respective royalty rates. Should the Court exclude the testimony Mr. Lapidus, it should equally exclude the testimony of Mr. Sussman.

Michael Bowling,
By His Attorneys,

Date: March 10, 2008

/s/ Thomas J. Leach
Thomas J. Leach, MN (*pro hac vice*)
Anthony R. Zeuli (*pro hac vice*)
MERCHANT & GOULD, P.C.
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Phone: 612.332.5300
Fax: 612.332.9081

Craig M. Scott, Esq. (#4237)
Christine K. Bush, Esq. (#5587)
DUFFY SWEENEY & SCOTT, LTD
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700
(401) 455-0701 (Facsimile)