UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MICHAEL BOWLING, a Resident of Arizona, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 05-229 S |
| HASBRO, INC., a Rhode Island Corporation, | : | |
| Defendant. | : | |

**DEFENDANT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING PLAINTIFF'S INEQUITABLE CONDUCT BEFORE THE UNITED STATES PATENT AND TRADEMARK OFFICE**

Defendant Hasbro, Inc. ("Hasbro") respectfully submits these Proposed Findings of Fact and Conclusions of Law with respect to Plaintiff's inequitable conduct before the United States Patent & Trademark Office ("PTO").

**Findings of Fact**

1. Plaintiff Michael Bowling ("Bowling") is the owner of U.S. Pat. No. 5,938,197 (the "'197 patent"). *See generally* Plaintiff's Exhibit 1.

2. Bowling submitted the application (assigned number 09/003,246) that ripened into the '197 patent on January 6, 1998. That application sought utility patent protection for Bowling's invention. *Id.*

3. In his application for the '197 patent, Bowling described certain advantages and improvements over existing art. Specifically, Bowling stated (*id.* at Col. 4, Lines 39-54) (reference numerals omitted):

> The inventor has discovered that the configuration of the die [] is advantageous. In particular, the shape of the end caps [] provides for more bounce when dropping die [] onto a surface. That is, to generate a random number, the user holds die [] above a surface at a sufficient distance, such that when die [] is dropped onto the surface, die [] rolls before eventually resting upon one of the facets [] of the extension member []. The number or indicia [] displayed on the facet [] which is in the uppermost position is the number which has been randomly generated. The shapes of the end caps [] provide for more bounce and randomness when die [] is dropped onto a surface. The tapered, triangular shapes of end caps [] provide for surfaces which can abut and engage the surface on which die [] is being dropped, to create a more interesting and amusing outcome.

4. At the time he submitted the application containing the foregoing language, Bowling had never created a die in the form claimed in the ’197 patent. Bowling had not created any prototypes of the die and did not obtain samples from his manufacturer until approximately six months after he submitted his patent application.

5. Because he had no die to examine or test, Bowling could not have “discovered” any properties or characteristics of the die or its performance. Bowling did not perform any testing or analysis that could have supported his assertions.

6. Bowling had no basis for his assertions that he had discovered that the claimed die design “provides for more bounce” and that the shapes of the end caps “provide for more bounce and randomness” and “create a more interesting and amusing outcome.”

7. Given that the acknowledged prior art contained numerous examples of dice useful in generating random numbers, Bowling’s new dice design would not have merited utility patent protection (as opposed to design patent protection) unless it were shown that it offered some advantage or improvement over the prior art with respect to its function, *i.e.* generating random numbers.

8. Because he had never analyzed or tested a die of his new design, Bowling knew that he had no basis upon which to assert any "discovery" regarding the function of the claimed die design.

9. Bowling's baseless assertions that the new die design was "more random" or generated "more bounce" than the prior art were therefore made with the intent of securing patent protection.

10. Bowling's baseless assertions that the new die design was "more random" or generated "more bounce" than the prior art were material because they contributed to the PTO's determination that the invention constituted patentable subject matter under 35 U.S.C. § 101.

11. Bowling's baseless assertions that the new die design was "more random" or generated "more bounce" than the prior art were made with the intent to deceive the PTO because they were known to be false at the time of making and with the intent that the PTO rely upon them in its determination of patentability of Bowling's invention.

**<u>Conclusions of Law</u>**

12. A patent is unenforceable due to inequitable conduct where there is clear and convincing evidence that the patent applicant (1) either "made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted false material information, and (2) intended to deceive the [PTO]." *Cargill, Inc. v. Canbra Foods, Ltd.*, 476 F.3d 1359, 1363 (Fed. Cir. 2007).

13. Bowling's statement that he had "discovered" characteristics of his die design affirmatively misrepresented that he had tested the die, or alternatively failed to disclose

the material information that his statements regarding the utility of the claimed die design was based upon speculation and conjecture. In either event, the information submitted was false.

14. Bowling's misstatements were made with the intent to deceive the PTO.

15. Bowling's misstatements were material, even if they would not have rendered the invention unpatentable, because they are of a type that a reasonable examiner would find important in deciding whether to allow the claims of the application. *Digital Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1314 (Fed. Cir. 2006).

16. Bowling's actions constitute inequitable conduct.

17. The '197 patent is therefore unenforceable as it was procured through inequitable conduct. Balancing the equities of this case, Bowling's attempt to mislead the PTO into providing utility patent protection for a die design that provided no actual advancement of the state of the art beyond a new ornamental design for dice merits a finding of unenforceability of Bowling's '197 patent. *See Cargill*, 476 F.3d at 1365.

Respectfully submitted,

HASBRO, INC.

By its Attorneys,

/s/ Jeffrey K. Techentin___________

Todd D. White (# 5943)
twhite@apslaw.com
Jeffrey K. Techentin (#6651)
jtechentin@apslaw.com
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
(401) 274-7200
Fax: (401) 751-0604/ 351-4607
Dated: March 25, 2008

Of Counsel:

David K. S. Cornwell, Esq.
davidc@skgf.com
Tracy-Gene G. Durkin, Esq.
tdurkin@skgf.com
Sterne Kessler Goldstein Fox
1100 New York Avenue, NW
Washington, D.C. 20005

**CERTIFICATE OF SERVICE**

TO:

Craig M. Scott, Esq.
Christine K. Bush, Esq.
Duffy & Sweeney & Scott, Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903

Thomas J. Leach, Esq.
Anthony R. Zeuli, Esq.
Douglas J. Williams, Esq.
Law Firm of Merchant and Gould P.C.
3200 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402-2215

David K. S. Cornwell, Esq.
Tracy-Gene G. Durkin, Esq.
Sterne Kessler Goldstein Fox
1100 New York Avenue, NW
Washington, D.C. 20005

I hereby certify that I filed the within Proposed Findings of Fact and Conclusions of Law Regarding Plaintiff's Inequitable Conduct Before the United States Patent and Trademark Office through the ECF system on the 25th day of March, 2008, and that notice will be sent electronically to the above-named counsel who are registered participants identified on the Mailing Information for Case No. 05-229S.

/s/ Jeffrey K. Techentin________

*449022_1*