# Exhibit M

**Tom Leach**

**From:** Tony Zeuli
**Sent:** Friday, April 04, 2008 11:18 AM
**To:** Tom Leach
**Subject:** FW: witnesses

Anthony R. Zeuli
Merchant & Gould
80 S. 8th Street
Suite 3200
Minneapolis, MN 55402
612-371-5208 (tel)
612-332-9081 (fax)

The contents of this message may be privileged and confidential. Therefore, if this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author.

---

**From:** Tony Zeuli
**Sent:** Tuesday, March 18, 2008 7:34 PM
**To:** Tom Leach
**Subject:** FW: witnesses

---

**From:** Techentin, Jeffrey [mailto:Jtechentin@apslaw.com]
**Sent:** Thursday, March 13, 2008 1:13 PM
**To:** Tony Zeuli
**Cc:** Craig Scott; Tom Leach; White, Todd
**Subject:** RE: witnesses

Thanks. Here's our order:

In the patent case:

1. Eileen Sefchick
2. Kurt Benson
3. Mike Hirtle
4. Dottie Echlin
5. Doreen Mars
6. Eric Burke
7. Irina Slavina
8. Tom McCabe
9. Barry Sussman

And in the copyright case:

1. Mike Gray
2. Michael Bowling

We would fit in Julie Daulton and Steen Jensen (read-ins) as needed.

-----Original Message-----
**From:** Tony Zeuli [mailto:TZeuli@merchantgould.com]
**Sent:** Thursday, March 13, 2008 2:06 PM
**To:** Techentin, Jeffrey
**Cc:** Craig Scott; Tom Leach
**Subject:** RE: witnesses

Jeff,

Bowling plans on calling the following witnesses in the following order (I've also added my best guest as to when we'd start with each witness but obviously this is effected greatly by your cross examination):

Bowling (Monday)

Gray (Tues)

Benson (Tues)

Hirtle (Tues)

Mars (Tues/Wed)

Jensen (Wed)

Burke (Wed)

Etchlin (Wed)

Thanks, Tony

Anthony R. Zeuli
Merchant & Gould
80 S. 8th Street
Suite 3200
Minneapolis, MN 55402
612-371-5208 (tel)
612-332-9081 (fax)

The contents of this message may be privileged and confidential. Therefore, if this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author.

---

**From:** Techentin, Jeffrey [mailto:Jtechentin@apslaw.com]
**Sent:** Thursday, March 13, 2008 12:44 PM
**To:** Tony Zeuli
**Subject:** RE: witnesses

ok

-----Original Message-----

**From:** Tony Zeuli [mailto:TZeuli@merchantgould.com]
**Sent:** Thursday, March 13, 2008 1:27 PM
**To:** Techentin, Jeffrey
**Subject:** RE: witnesses

ok. Thanks. Let's exchange lists at 1 CT?

thx

Anthony R. Zeuli
Merchant & Gould
80 S. 8th Street
Suite 3200
Minneapolis, MN 55402
612-371-5208 (tel)
612-332-9081 (fax)

The contents of this message may be privileged and confidential. Therefore, if this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author.

---

**From:** Techentin, Jeffrey [mailto:Jtechentin@apslaw.com]
**Sent:** Thursday, March 13, 2008 8:21 AM
**To:** Tony Zeuli
**Subject:** RE: witnesses

Consider it confirmed.

-----Original Message-----
**From:** Tony Zeuli [mailto:TZeuli@merchantgould.com]
**Sent:** Thursday, March 13, 2008 9:00 AM
**To:** Techentin, Jeffrey
**Subject:** Re: witnesses

Jeff, we can agree to exchange full list of witnesses based on the terms in your email below. Pls confirm and we can exchange lists today.

Tony

----- Original Message -----
From: Techentin, Jeffrey <Jtechentin@apslaw.com>
To: Tony Zeuli
Cc: cscott@duffysweeney.com <cscott@duffysweeney.com>; Tom Leach; White, Todd <TWhite@apslaw.com>
Sent: Wed Mar 12 18:43:48 2008
Subject: Re: witnesses

Tony,

Where do we stand on this? The issue doesn't seem so complicated.

Jeff.

To comply with IRS regulations, we advise that any discussion of Federal tax issues in this e-mail is not

intended or written to be used, and cannot be used, (i) to avoid any penalties imposed under the Internal Revenue Code or (ii) to promote, market or recommend to another party any transaction or matter addressed herein.

This e-mail message is confidential and is intended only for the named recipient(s). It may contain information that is subject to the attorney client privilege or the attorney work-product doctrine or that is otherwise exempt from disclosure under applicable law. If you have received this e-mail message in error, or are not the named recipient(s), please immediately notify the sender and delete this message from your computer and destroy all copies. Thank you.

----- Original Message -----
From: Techentin, Jeffrey
To: 'Tony Zeuli' <TZeuli@merchantgould.com>
Cc: Craig Scott <cscott@duffysweeney.com>; Tom Leach <TLeach@merchantgould.com>; White, Todd
Sent: Wed Mar 12 13:37:44 2008
Subject: RE: witnesses

Tony,

As we discussed, what I'd been looking for was your concept of the first couple witnesses just so we can make travel arrangements for the Hasbro people if you intend to call any East Longmeadow personnel in the front-end of your case. But if you want to exchange the full order of witnesses I'm fine with that and can do so immediately. As for your second condition, though, I think it's a little strong – you've left out only our signing the agreement in blood on pains of a lifetime in the Gulag.

I don't see why we can't just exchange the list as representations of counsel that these are the current plans. But if you want some express condition, I'd propose an agreement that the order wouldn't change except pursuant to the Court's schedule, agreement of the parties, on adequate notice to the other party (I'd suggest 24 hours), or as a result of an emergency. I can tell you that we're firm with respect to our intentions for the order of witnesses, so I don't anticipate any last-minute juggling.

As for the stipulation, please try to get me something as soon as you can. I think it would be helpful to be able to address this with the court tomorrow morning. Even if we can't formalize an agreement by then, it would be good to know where the parties are in that respect, including whether the stipulation is DOA.

Thanks,

Jeff.

-----Original Message-----
From: Tony Zeuli [mailto:TZeuli@merchantgould.com]
Sent: Wednesday, March 12, 2008 1:06 PM
To: Techentin, Jeffrey
Cc: Craig Scott; Tom Leach
Subject: RE: witnesses

Jeff,

Thank you for your patience. After discussing it with Craig, who reminded me that we agreed to a 24 hour

pre-notice at the pretrial hearing, I am fine with modifying that along the following lines so that Hasbro witnesses can plan travel:

1) Both parties will provide today a list of witnesses in the order to be called (live and video) and

2) the order shall not change subject to the Court's schedule, the parties' agreement or an emergency which is brought to the Court's attention and approved.

Please let me know if we can agree on the above, and we can exchange witness lists today. We also need to work through the exhibits today, so if you haven't done so, please schedule that with Tom.

Also, with respect to the proposed stipulation. Let me send you a counter offer and see if we can reach agreement. I can have something to you tomorrow.

Thanks,

Tony

Anthony R. Zeuli

Merchant & Gould

80 S. 8th Street

Suite 3200

Minneapolis, MN 55402

612-371-5208 (tel)

612-332-9081 (fax)

The contents of this message may be privileged and confidential. Therefore, if this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author.

---

From: Techentin, Jeffrey [mailto:Jtechentin@apslaw.com]
Sent: Wednesday, March 12, 2008 6:30 AM
To: Tony Zeuli
Subject: RE: witnesses

Tony,

Thanks. I'd appreciate it if you could give me a call first thing this morning to discuss a couple other logistical issues.

Jeff.

-----Original Message-----
From: Tony Zeuli [mailto:TZeuli@merchantgould.com]
Sent: Tuesday, March 11, 2008 6:42 PM
To: Techentin, Jeffrey
Subject: witnesses

jeff,

i am sorry but i haven't connected with craig this afternoon. i will call as soon as Craig and I connect tomorrow.

tz

Anthony R. Zeuli

Merchant & Gould

80 S. 8th Street

Suite 3200

Minneapolis, MN 55402

612-371-5208 (tel)

612-332-9081 (fax)

The contents of this message may be privileged and confidential. Therefore, if this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author.

# Exhibit N

3200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota
55402-2215 USA
TEL 612.332.5300
FAX 612.332.9081
www.merchant-gould.com

# Merchant & Gould

An Intellectual Property Law Firm

A Professional Corporation

Direct Contact | **612.336.4665**
**tleach@merchant-gould.com**

March 2, 2006

***Via Facsimile***

Jeffrey K. Techentin
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903

***Re:*** ***Bowling v. Hasbro, Inc.***
***C.A. No. 05-229S***
***M&G File No. 12206.4-US-ZA***

Dear Jeff:

As we have discussed and as you are well aware, Rule 11 requires that you perform a reasonable inquiry and determine, *before* filing Hasbro's Answer And Counterclaims, that Hasbro's denial of infringement and counterclaim of non-infringement are well grounded in fact and legally tenable. In patent infringement actions, this means you must have construed each asserted claim of the '197 patent and compared those claims, on an element-by-element bases, to Hasbro's Accused Die before filing Hasbro's Answer And Counterclaims. *See View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed Cir. 2000). This analysis includes an analysis under the doctrine of equivalents, as infringement is established if the claim elements are literally *or* equivalently present in the Accused Die. Because patent infringement actions are so expensive, Rule 11 is particularly important to prevent large companies like Hasbro from forcing individuals like Mr. Bowling to spend significant amounts of money to address claims that are not well grounded in fact or law.

Indeed you have caused Mr. Bowling to spend significant resources dealing with this issue when it appears that neither Hasbro nor you satisfied your Rule 11 obligation before filing Hasbro's Answer And Counterclaims denying infringement. Despite knowing about infringement for over 5 years, Hasbro admitted it never conduct an infringement

analysis under the doctrine of equivalents. Instead Hasbro made clear in its 30(b)(6) deposition that it relied on you for that analysis. More troubling is that after denying infringement in its Answer, Hasbro admitted that its Accused Die is equivalent to the claimed die—Hasbro admitted that its Accused Die performs the same function, in the same way, to provide the same result as the die claimed in the '197 patent. Thus, not only does it appear that Hasbro and you failed to satisfy your Rule 11 obligation, but it appears that Hasbro filed its Answer And Counterclaim denying both literal and equivalent infringement for the improper purpose of harassing Mr. Bowling and driving up his litigation costs.

Please confirm by March 8, 2006, that you satisfied your Rule 11 obligation *before* filing Hasbro's Answer And Counterclaim. In particular, confirm that you construed the claims of the '197 patent, compared those claims to the accused die, and performed a doctrine of equivalence analysis before filing Hasbro's Answer and Counterclaim denying infringement. In addition, confirm that you conducted your recently disclosed "prosecution history estoppel analysis" *before* filing Hasbro's Answer And Counterclaim. If that "analysis" was done before filing Hasbro's Answer And Counterclaim, explain why you did not provided it in Hasbro's initial response to Bowling's Interrogatory No. 2 or in Hasbro's 30(b)(6) deposition, but rather provided it just days before Bowling's expert report was due.

If Hasbro did not satisfy its Rule 11 obligation before filing its Answer And Counterclaim denying infringement, we will move for sanctions and ask for Bowling's attorney's fees and costs in prosecuting Hasbro's baseless pleading.

Sincerely,

Thomas J. Leach

Thomas J. Leach

TJL:sgl

cc: Craig Scott (via facsimile)

# Exhibit O

Merchant & Gould
An Intellectual Property Law Firm

3200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota
55402-2215 USA
TEL 612.332.5300
FAX 612.332.9081
www.merchant-gould.com

A Professional Corporation

Direct Contact | 612.336.4665
tleach@merchant-gould.com

March 23, 2006

***Via Facsimile***

Jeffrey K. Techentin
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903

***Re:*** ***Bowling v. Hasbro, Inc.***
***C.A. No. 05-229S***
***M&G File No. 12206.4-US-ZA***

Dear Jeff:

You have not responded to my March 2, 2006 letter regarding Hasbro's Rule 11 violation. This is not a matter I take lightly and ask that you take it seriously as well. Hasbro, as well as your law firm, continues to force Mr. Bowling to spend considerable amounts of time and money on a claim that appears to have been asserted for the improper purpose of harassing Mr. Bowling and driving up his litigation costs.

Having received no response to my March 2, 2006 letter, I assume that neither you nor Hasbro met your Rule 11 obligations regarding infringement. Yet Hasbro continues to deny infringement and force Mr. Bowling to spend considerable resources addressing this issue. Hasbro's recently created "prosecution history estoppel argument," which is entirely unsupportable in law and fact, only highlights Hasbro's commitment to increasing Mr. Bowling's litigation costs. Thus, aside from Hasbro's willful infringement, Mr. Bowling will seek sanctions and his attorneys' fees under Rule 11 and 35 U.S.C. § 285.

Sincerely,

Thomas J. Leach

TJL:sgl

cc: Craig Scott (via facsimile)

Minneapolis/St. Paul
Denver
Seattle
Atlanta
Washington, DC

# Exhibit P

ADLER POLLOCK & SHEEHAN P.C.

One Citizens Plaza, 8th floor
Providence, RI 02903-1345
Telephone 401-274-7200
Fax 401-751-0604 / 351-4607

175 Federal Street
Boston, MA 02110-2890
Telephone 617-482-0600
Fax 617-482-0604

www.apslaw.com

March 24, 2006

***Via Facsimile Transmission***

Thomas J. Leach, Esq.
Law Firm of Merchant and Gould P.C.
3200 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402-2215

Re: ***Michael Bowling v. Hasbro, Inc.***
C.A. No. 05-229S

Dear Tom:

Please allow this letter to respond to yours of March 2 and 23, 2006, in which you suggest, and then accuse, Hasbro of filing its Answer and Counterclaim in violation of Rule 11.

First, please understand that I, my firm, and Hasbro take such allegations very seriously. While I believe ungrounded Rule 11 practice to be abhorrent and all too often confused with zealous advocacy, and my firm's practice is consistent with that belief, we are cognizant both of our duties under the applicable rules and the significance of allegations of infringement of those rules. With that in mind, please allow this letter to respond to the substantive charge you have leveled: that Hasbro's denial of infringement -- a legal conclusion as to which your client bears the burden of proof -- is *per se* violative of Rule 11. As explained below, this charge is completely without merit, and I strongly suggest that you confer with your local counsel before acting on your stated intention to level this charge in court.

Second, there is no merit to your suggestion that Hasbro has acted improperly in any respect, let alone in violation of Rule 11. The law you recite in your March 2, 2006, letter is inaccurate, and the *View Engineering* case does not even arguably stand for the proposition that you state. In fact, I would note that the *View Engineering* case stands for the unremarkable proposition that a plaintiff must take careful steps before commencing a patent infringement action to ensure that he does not needlessly burden a defendant with the costs and burden of defending a meritless lawsuit; in light of the revelation that your client failed to disclose the inventorship role of Mr.

ADLER POLLOCK & SHEEHAN P.C.



***Via Facsimile Transmission***

Lizarraga in the patent application process, I would submit that the relevance of the *View Engineering* decision to this case, if any, is very different from what you suggest. In any event, Hasbro is aware of no support for your basic contention, that a defendant's simple denial of liability constitutes a violation of Rule 11.

Indeed, I suspect that you know the contrary to be the case. Thus your response to Hasbro's copyright infringement claim denied liability despite your acknowledgement of the copyrights and your client's full knowledge of the unmistakable resemblance between Hasbro's copyrighted material and your client's goods. It is impossible to reconcile your claimed view of the law and your own pleading in this matter.

Finally, I would note that your argument is premised on the idea that there is no merit to the non-infringement position asserted by Hasbro. On this issue, I would anticipate that we would disagree on such material issues as whether your client has any valid patent rights, whether there is literal infringement, and whether your client's activities during the prosecution of the patent estop him from seeking to recover under the doctrine of equivalents. That disagreement, at least in my mind, should not rise to the level of trading accusations of Rule 11 violations that will not amount to anything more than a further costly distraction.

Very truly yours,

JEFFREY K. TECHENTIN
jtechentin@apslaw.com

cc: Craig M. Scott, Esq. *(Via Facsimile Transmission)*
Todd D. White, Esq.

*376240_1.doc*

# AP&S

ADLER POLLOCK & SHEEHAN P.C.

PROVIDENCE -- Telephone No. (401) 274-7200, 7th Floor Facsimile Operator, Extension 200

| | | | |
|---|---|---|---|
| To: | Thomas J. Leach, Esq. | Date: | March 24, 2006 |
| Company | Law Firm of Merchant and Gould P.C. | **Fax No:** | **401-351-4607** |
| Fax No.: | **(612) 332-9081** | # Pages | 3 |
| Tel. No.: | (612) 336-4665 | | |
| From: | JEFFREY K. TECHENTIN, ESQ. | | |

This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If the reader of the message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us at the PROVIDENCE address below via the U.S. Postal Service. Thank you

**Message:**

NOTE: IF YOU DO NOT RECEIVE ALL THE PAGES OR IF A PROBLEM ARISES DURING TRANSMISSION, PLEASE CALL THE NUMBER LISTED AT THE TOP OF THIS PAGE.

www.apslaw.com

**Providence**
**One Citizens Plaza, 8th Floor**
**Providence, Rhode Island 02903-1345**
**Tel: 401-274-7200**
**Fax: 401-351-4607/401-751-0604**

**Boston**
**175 Federal Street, 12th Floor**
**Boston, Massachusetts 02110-2890**
**Tel: 617-482-0600**
**Fax: 617-482-0604**

# Exhibit Q

Merchant & Gould
An Intellectual Property Law Firm

3200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota
55402-2215 USA
TEL 612.332.5300
FAX 612.332.9081
www.merchant-gould.com

A Professional Corporation

Direct Contact | 612.336.4665
tleach@merchant-gould.com

March 28, 2006

***Via Facsimile***

Jeffrey K. Techentin
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903

***Re:*** ***Bowling v. Hasbro, Inc.***
***C.A. No. 05-229S***
***M&G File No. 12206.4-US-ZA***

Dear Jeff:

This letter responds to your March 24, 2006 letter regarding whether Hasbro satisfied its Rule 11 obligations.

First, your letter fails to directly address the issues raised in my March 2, 2006 letter. Namely, whether anyone, on behalf of Hasbro, conducted a reasonable investigation into whether Hasbro's accused dice infringe under the doctrine of equivalents *before* filing Hasbro's Answer and Counterclaim denying infringement. Rule 11 requires, before filing a pleading with the court, that an attorney make a reasonable inquiry into the facts and law to determine whether the pleading is well grounded in law and fact. See *Mars Steel Corp. v. Continental Bank*, 880 F.2d 928, 932 (7th Cir. 1989) (en banc) (noting that under Rule 11 "a paper filed in the best of faith . . . is sanctionable if counsel neglected to make 'reasonable inquiry' beforehand").

The record is clear that Hasbro did not conduct any investigation into infringement under the doctrine of equivalents. Moreover, Hasbro all but admits that its accused dice infringe under the doctrine. Yet in its Answer, Hasbro denied infringement and counterclaimed for non-infringement. Thus, it appears that not only did Hasbro fail to conduct a proper inquiry before pleading, but Hasbro's Answer and Counterclaim was filed for the improper purpose of driving up Bowling's litigations costs. That Hasbro's non-

infringement allegations were filed in its Answer and Counterclaim, and that Bowling bears the burden of proof on these issues, does not relieve Hasbro of its Rule 11 obligations.

In addition, the violation is not premised on the merits of Hasbro's prosecution history estoppel "analysis," but rather on whether that analysis was done before Hasbro filed its Answer and Counterclaim. If such an analysis was done before filing Hasbro's answer, why was it not disclosed in Hasbro's initial interrogatory responses or in its 30(b)(6) deposition? Given the circumstances, it appears that Hasbro's prosecution history estoppel "analysis" was created after the fact in response to Hasbro's admissions concerning the doctrine of equivalents infringement.

Second, the *View Engineering* case simply illustrates what a reasonable inquiry entails in a patent dispute. Thus, before you can attest to having conducted a reasonable inquiry regarding non-infringement, it makes sense that you consider the scope of the claims and conduct a literal and doctrine of equivalents infringement analysis.

Finally, while you claim that you abhor Rule 11 accusations, you suggest that Mr. Bowling, or I, have violated Rule 11 by denying Hasbro's allegations of copyright infringement. Unlike the circumstances surrounding Hasbro's Answer and Counterclaim, you make these allegations without any facts to suggest that I did not satisfy my Rule 11 obligation. To be sure before filing Mr. Bowling's answer to Hasbro's counterclaim of copyright infringement, I conducted a reasonable inquiry into those allegations and that pleading is well grounded in fact and law.

Sincerely,

Thomas J. Leach

TJL:sgl

cc: Craig Scott (via facsimile)

# Exhibit R

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MICHAEL BOWLING,<br>a Resident of Arizona,<br>Plaintiff, | : | C.A. No. 05-229S |
| v. | : | |
| HASBRO, INC.,<br>a Rhode Island Corporation,<br>Defendant. | : | |

**OFFER OF JUDGMENT**

Pursuant to FED. R. CIV. P. 68, Plaintiff Michael Bowling ("Bowling") offers to allow judgment in favor of Defendant Hasbro, Inc. ("Hasbro") and against Bowling in the amount of $2,300.00, which sum includes interest and all costs and attorneys' fees incurred by Hasbro to the date of the offer for Hasbro's counterclaim of copyright infringement (Count II of Hasbro's Answer and Counterclaim).

This offer of judgment is made solely for the purposes specified in FED. R. CIV. P. 68. Evidence of this offer is not admissible except in a proceeding to determine costs and this offer is not to be construed as an admission that Bowling is liable in this action or that Hasbro has suffered any damage.

Michael Bowling,
By his attorneys,

Craig M. Scott, Esq. (R.I. Bar #4237)
Christine K. Bush, Esq. (R.I. Bar #5587)
DUFFY SWEENEY & SCOTT, LTD
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700
(401) 455-0701 (Facsimile)

Douglas J. Williams
Douglas J. Williams, *pro hac vice*
Thomas J. Leach, *pro hac vice*
MERCHANT & GOULD, P.C.
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(612) 332-5300

Dated: October 25, 2005

CH1 3186423v.2

# Exhibit S

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

MICHAEL BOWLING, A RESIDENT OF ARIZONA, )
)
Plaintiff, )
)
vs. ) C.A. No. 05-229 S
)
HASBRO, INC., A RHODE ISLAND CORPORATION, )
)
Defendant. )
)

THE VIDEO TAPED DEPOSITION OF ALBERT LIZARRAGA

Tucson, Arizona
March 17, 2006
9:11 a.m.

COPY

WENDY J. PULLIUM, RPR
Arizona Certified Court Reporter No. 50247

ESQUIRE DEPOSITION SERVICES

COUNSEL APPEARING:

For the Plaintiff Bowling:

LAW FIRM OF MERCHANT AND GOULD, P.C.
BY: Thomas J. Leach, Esq.
BY: Douglas Williams, Esq.
3200 IDS Center, 80 South Eighth Street
Minneapolis, Minnesota 55402-2215

For the Defendant Hasbro:

ADLER POLLOCK & SHEEHAN, P.C
BY: Jeffrey K. Techentin, Esq.
One Citizens Plaza, 8th Floor
Providence, Rhode Island 02903-1345

For the Deponent Lizarraga:

LAW OFFICES OF GABROY, ROLLMAN & BOSSÉ, P.C.
BY: Scott H. Rash, Esq.
3507 North Campbell Avenue, Suite 111
Tucson, Arizona 85719

ALSO PRESENT: Michael Bowling

* * * *

BE IT REMEMBERED that pursuant to Notice for taking depositions in the above-styled cause, the video taped deposition of Albert Lizarraga was taken upon oral examination at the Offices of Kathy Fink & Associates, Inc., in the City of Tucson, State of Arizona, before WENDY J. PULLIUM, RPR, Arizona Certified Reporter #50247, on the 17th day of March 2006, commencing at the hour of 9:11 a.m. in a certain cause now pending before the United States District Court for the District of Rhode Island.

* * * *

MR. TECHENTIN: Object to form.
THE WITNESS: I don't think at that point.
BY MR. LEACH:
Q. At what point did he suggest that, you know, you may be an inventor or you may have did more than just draw what Mr. Bowling told you to draw?
MR. TECHENTIN: Object to form.
THE WITNESS: Maybe third time we talked or something like that.
BY MR. LEACH:
Q. Can you recall that conversation? Can you explain it?
A. Not specifically. Just something to the fact that when I mentioned there was a little bit more than just doing a drawing, I said, well, I did a little bit of the design too, so. And then it may have come up with I may have possible rights.
Q. Is he the one that suggested that you may have rights?
A. I believe so. Possible rights.
Q. Possible rights.
A. And I said, I don't know. You know, I don't understand the patent laws or any of that.
Q. Did he tell you that he thought you were an inventor?



A. Not -- no, not that he thought I was; there's possibilities, but left it at that, pretty kind of open.
(Sotto voce discussion between Mr. Williams and Mr. Leach.)
BY MR. LEACH:
Q. At what point did Mr. Techentin say he was going to send you something?
A. Actually, in the first meeting I wanted to verify who he was, so he did send me the patent and the complaints, because -- just because I am talking to somebody over the phone, I didn't -- I wanted to verify, you know, this person was legit.
Q. In the earlier, these earlier meetings that we are talking about, did he say that Hasbro may be willing to pay you some money?
A. Not at the first couple meetings.
Q. When did money first come up?
A. Maybe fourth meeting, something like that. Fourth, fifth, I am not sure.
Q. And how did that come up? Did Mr. Techentin say Hasbro may be willing to pay you something?
A. Just the fact that if it was found that I had any rights, that you know, if I was interested in -- if it was defined that I had any rights, would I



be willing to give them to Hasbro. That's kind of how it came up, and I am like, sure. But we would talk about it depending on the money and the conditions of the contract and all that. I wanted to make sure nothing defined that I was, that I was saying that I was the inventor.
Q. You wanted to make sure what?
A. I wanted to make sure that nothing defined that I was stating that I was part inventor.
Q. So you don't believe you are part inventor?
A. I'm not saying that. I am saying I don't have the legal background to know what constitutes what is an inventor and what is not. So I didn't want to put myself in that position, so...
If somebody else says based on the facts that I'm part inventor, okay, but I am not making that call.
MR. LEACH: Can you mark that, please.
(Deposition Exhibit No. 9 was marked for identification.)
BY MR. LEACH:
Q. I am handing you what's been marked as Exhibit 9. Can you review that, please.
And what is this document?
A. What is the document? This is the license



agreement that Jeff sent to me to review. What kind of document, I mean, in terms of license agreements, what they mean and all that, I was not a lawyer, I don't know how these things work. So I told Mr. Techentin that I was going to have legal representation review this document.
Q. And you did that?
A. Yes.
Q. And who did you have review it?
A. My attorney.
Q. And who is that?
A. Steve Bossé.
Q. Did you at some point communicate back to Mr. Techentin whether this draft was acceptable or not?
A. I did not. I -- at that point I had Steve Bossé have any further conversations with Mr. Techentin.
Q. So it was Mr. Bossé that spoke with Mr. Techentin, basically negotiated the agreement with --
A. Correct.
Q. -- Mr. Techentin?
And is it true that this initial agreement is a license agreement?

A. I am not a lawyer, I don't know what kind of agreement it is, although it says it there. But what it states, how it works.
Q. Did you generally understand what the document --
A. Somewhat. But that's why I seeked legal counsel.
Q. At some point did you make some changes to this draft?
A. I was provided a second draft by Mr. Bossé, and I looked at that and made some changes to that a little bit.
(Deposition Exhibit No. 10 was marked for identification.)
BY MR. LEACH:
Q. Can you turn to the second page of Exhibit 9, that would be page 1 of the license agreement. And in paragraph (e) it talks about, it has Roman numeral (i), (i), (ii), (iii) and (iv).
Are you familiar with those paragraphs?
A. Somewhat.
Q. Isn't it true that at some point you struck out paragraphs (iii) and (iv)?
A. Yes.
Q. I am handing you what's been marked as



Exhibit 10 (indicating).
Can you turn to page 2 of 3. And on that page, this looks like an e-mail from you to Steve Bossé saying you don't want the previous word in there, "invented", and say re: defined. If this is acceptable, of course.
A. Re: defined, meaning change the word "invented" to "defined". Not redefined, but. Re: defined.
Q. Sure. So do you know when you were talking compensation, what, what was the negotiation on compensation? Can you describe that a little bit?
A. That was between my attorney and Mr. Techentin.
Q. So you have no idea how much they were talking about back and forth?
A. Not at the beginning. I mean, there was an amount provided to me at the beginning by Mr. Techentin when we first started.
Q. How much was that?
A. Twenty-five hundred.
Q. And that wasn't enough?
MR. RASH: Object to the form of the question.
THE WITNESS: Enough for what?



BY MR. LEACH:
Q. For what you were going to provide Hasbro.
A. I didn't feel it was enough because I'm getting dragged into this and I need to pay for legal counsel.
Q. Do you know what you asked for?
A. At the end?
Q. Not at the end but after. When they said 2500, did you come back and say, well, I want this much?
A. No, I did not.
Q. At any time did you ask for a different amount?
A. Well, that's where my attorney worked with Mr. Techentin.
Q. Do you know what he asked for?
A. No, I don't.
Q. When did you find out that Hasbro would pay you $10,000?
A. At the end, close to the end, Mr. Bossé said they're only willing to go up to 7500. And I said, well, offer them 10,000 and I'll sign today.
Q. So you said if they would give you 10,000 today, you would sign?
A. Correct.



Q. And did they do that? Did they pay you? Did Hasbro pay you the $10,000?
A. Yes.
Q. And you signed that day?
A. I signed on the day that I said I would sign. The check came after.
MR. LEACH: Please mark this.
(Deposition Exhibit No. 11 was marked for identification.)
BY MR. LEACH:
Q. So you do have some interest in this case in that you were paid $10,000 for the testimony you're giving, correct?
MR. TECHENTIN: Object to form.
MR. RASH: Join.
THE WITNESS: I have no interest in the outcome of this case at this point.
BY MR. LEACH:
Q. If you said you didn't contribute at all to the invention, would they have paid you $10,000, do you believe?
MR. RASH: Object to foundation.
MR. TECHENTIN: Object to form.
THE WITNESS: I don't believe they would, no, would have.

# Exhibit T

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

COPY

| | |
|---|---|
| * * * * * * * * * * * * | * CIVIL ACTION |
| MICHAEL BOWLING | * 05-229S |
| | * |
| VS. | * MARCH 4, 2008 |
| | * |
| | * |
| HASBRO, INC. | * PROVIDENCE, RI |
| * * * * * * * * * * * | * |

HEARD BEFORE THE HONORABLE WILLIAM E. SMITH
DISTRICT JUDGE
(MOTIONS IN LIMINE)

**APPEARANCES**:

FOR THE PLAINTIFF: ANTHONY R. ZEULI, ESQ.
and THOMAS J. LEACH, ESQ.
Merchant & Gould, P.C.
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(612) 332-5300

CRAIG M. SCOTT, ESQ.
Duffy, Sweeney & Scott
One Turks Head Place
Suite 1200
Providence, RI 02903

FOR THE DEFENDANT: JEFFREY TECHENTIN, ESQ.
and TODD WHITE, ESQ.
Adler, Pollock & Sheehan
One Citizens Plaza
Providence, RI 02903
(401) 274-7200

Court Reporter: Anne M. Clayton, RPR
One Exchange Terrace
Providence, RI 02903

Proceeding reported and produced by computer-aided stenography

68

Q. Do you have any stake in the outcome of any question as to whether you were an inventor or co-inventor of the dice claimed in the 197 patent?
A. No.
MR. TECHENTIN: Thank you. I don't have any further questions.
MR. WILLIAMS: Why don't we take a few-minute break and then start.
VIDEOGRAPHER: We're going off the record. The time is 10:55.
(A break was taken.)
VIDEOGRAPHER: We are back on the record, the time is 11:25.

EXAMINATION

BY MR. LEACH:
Q. Mr. Lizarraga, do you know that Mike Bowling has a degree from Arizona State University in engineering?
MR. WILLIAMS: Arizona.
MR. LEACH: Or Arizona.
THE WITNESS: No.
BY MR. LEACH:
Q. Do you know that he has taken courses in mathematics, geometry, physics, and trigonometry?

69

A. No.
Q. Do you also know that Mr. Bowling was a gamer and used dice in a lot of games that he's played and worked on designing dice and stuff like that?
A. Well, you just said did you also know. Well, I don't know the first things that you told me.
Q. Okay. Did you know that he was a gamer and he's used dice in games and stuff?
A. I knew he collected dice and he was into dice, yeah.
Q. And you also knew when he came to you the dice he wanted -- or the dice that he showed you that he wanted to draw, were to generate random numbers, correct?
COURT REPORTER: Was to generate what?
MR. LEACH: Random numbers.
THE WITNESS: I don't know if he said that, but he just talked about dice, so I would assume so.
BY MR. LEACH:
Q. You understood that he wanted the dice to generate random numbers, correct?
A. I would assume, yes. Whether he specifically said make it random, I just assumed. That's why I made it the way I did.
Q. Because that's the purpose of the dice,

70

right?
A. Correct.
Q. So is it your testimony -- so is it your testimony that you taught Mr. Bowling that irregular surfaces would generate irregular responses?
MR. RASH: Object to form.
MR. TECHENTIN: I'm going to object to form as well.
THE WITNESS: What did you say?
BY MR. LEACH:
Q. Is it your testimony that you're the one that taught Mr. Bowling that an irregular surface would generate irregular responses?
A. That I taught him?
Q. Yeah, that you came back and told him that, that he didn't already know it.
MR. RASH: Object to form.
THE WITNESS: I didn't tell him. I just said that based on the sketch, I couldn't make it the way he showed it to me, so this is what I came up with.
BY MR. LEACH:
Q. But it's not your testimony that he didn't know that before he contacted you?
MR. TECHENTIN: Object to form.

71

THE WITNESS: I don't know that.
BY MR. LEACH:
Q. You don't know what he knew before that?
A. Correct.
Q. And you also testified that you've never seen a patent before you were shown the 197 patent; is that correct?
A. Correct.
Q. And in your work at Ratheon you routinely support engineers, correct?
A. Correct.
Q. As a draftsman designer, correct?
A. Well, I did in a design capacity years ago, and I still interface because my people support them now.
Q. Okay. So at one time you did work as a design draftsman?
A. Yes.
Q. You did both that work.
And that's the same type of work you did in working for Mr. Bowling, correct?
A. Same type of work in terms of design?
Q. Yeah.
A. I was used a design capacity, sure.
Q. Are you a named inventor on any patents?

A. No, I am not.
Q. So in all the time that you worked as a designer for Raytheon working with engineers as a designer, you've never been named as an inventor on a patent, correct?
MR. TECHENTIN: Object to form.
THE WITNESS: Correct.
COURT REPORTER: And the answer was "correct"?
THE WITNESS: Correct, that I have not been named as a -- on any patent.
BY MR. LEACH:
Q. You also testified that you first met Mr. Bowling at his house, correct?
A. In person at his house, yeah.
Q. Okay.
A. We spoke on the phone prior.
Q. And what did you speak about over the phone?
A. Probably that, that I -- something about that I heard that he was interested in getting some help on a design or drawings or something to that effect, and when we were going to hook up and, you know, where and that kind of thing.
Q. The logistics?
A. (No audible response.)



Q. And when you first --
COURT REPORTER: You have to answer out loud.
MR. RASH: Was it yes? When he said logistics, did you mean to say yes?
THE WITNESS: Logistically to me means coordinating and getting together --
BY MR. LEACH:
Q. Scheduling.
A. -- so yes.
Q. And when you first met Mr. Bowling at his house, was Mr. Bowling's wife present?
A. I believe so.
Q. And is it at that meeting that Mr. Bowling disclosed to you his dice concept and design?
A. Yes.
Q. And he provided you with a 3D hand-drawn sketch?
A. As far as I recall, yeah.
Q. And it had a mid section and end caps?
A. I believe it did.
Q. And it had opposing triangles?
A. That I am not sure.
Q. Can you tell me a little bit about when Mr. Techentin first contacted you, what was the



conversation?
A. Well, Mr. Techentin actually contacted my father first because he was looking for me because we share the same name.
Q. Okay.
A. My father gave me Mr. Techentin's phone number and I contacted Mr. Techentin.
Q. And can you explain the conversation?
A. He -- first he wanted to validate that I was the person that worked on the drawings for Mr. Bowling and that I was the one working at Hughes, make sure I was the right person.
Q. Okay. And what else was said?
A. Then he was asking about a -- if I could help to define a time line as to when I worked with Mike on these dice.
Q. Okay. Anything else?
A. (Witness shakes head.)
Q. So in the first conversation he identified you as the person that worked with Mike on the dice and a time line and that's it?
A. Yes.
Q. When did you talk to him next?
A. Maybe four days later or something like that.



Q. In the first meeting did he suggest that you may be an inventor on the 197 patent?
MR. TECHENTIN: Object to form.
THE WITNESS: On the first meeting, no, I don't think so, or the first talk I don't believe so.
BY MR. LEACH:
Q. Do you know how that talk ended?
A. Which talk?
Q. The first time you spoke with Mr. Techentin.
A. The first one was I said I would look for drawings, see if I could find the drawings that I created.
Q. And in the second meeting what did you talk about?
A. I said I looked all over and I couldn't find any drawings.
Q. Did he ask you and -- did you have any discussions about what your involvement was in preparing the dice?
A. There was some talk about as to the drawing and that I just created the drawings, and then somehow we got to the fact that I did a little more than the drawings, so actually with the design as well.
Q. Was it Mr. Techentin's suggestion that you did more than just create drawings?

refresh his recollection or to possibly use it for impeachment purposes.

So I'll withhold ruling on whether you can actually do that until I read these cases. And so that's something I'll have to give you a ruling on before you actually ask those questions. Okay?

MR. TECHENTIN: Thank you, your Honor.

MR. ZEULI: Your Honor, could I ask a question for clarification purposes?

THE COURT: Yes.

MR. ZEULI: It sounds like what you're suggesting is that they may be able to ask plaintiff the questions about these offers. And I would suggest that in this same body of case law, and I have one additional case, that whole section of negotiations, settlement negotiations is off limits. It's all swept out as both irrelevant under the reasonable royalty analysis as well as a settlement negotiations protected under Rule 408.

THE COURT: But I didn't rule on that yet. That's my point. I said I was going to reserve on that.

MR. ZEULI: Okay. That's what I didn't know. Thank you.

THE COURT: All right. Next is Lizarraga. I

think I understand your argument on this. I actually want to focus my questions to Hasbro here because I'm not sure I buy this argument, frankly, that my earlier ruling somehow doesn't cover this. So I'll give you one chance to try to convince me of that.

MR. TECHENTIN: With that auspicious beginning to the argument, your Honor --

THE COURT: I just want to make sure your expectations don't get raised too much.

MR. TECHENTIN: The argument is a simple one. Your Honor was asked to decide something that is a question of law. What we are now presenting is a substantially similar question, but it is one of fact, that it is a jury question, that is whether or not Mr. Bowling's invention of these dice was derived from information that was given to him by Mr. Lizarraga.

We freely admit that these are two sides of the same coin, but they are, in fact, treated distinctly and that one is a question of law for the Court to decide, and the other is a question of fact for the jury to decide. Under those circumstances, it seems to us that the decision of the Court on the Lizarraga inventorship motion is not preclusive of our submission of the same evidence, and it would be the same evidence to the jury.

I can perhaps offer up this, your Honor, which would be to say that if your Honor's inclination is to not allow that to go to the jury but to decide as a matter of law, that our derivation claim is similarly incapable of meeting the clear and convincing standard, the same standard as your Honor applied before, then we could save a little bit of trial time, not present that, and simply make an offer of proof and preserve the issue. But if your Honor is not inclined to take that away from the jury, then we'd like the opportunity to present that testimony to the jury so they can decide for themselves whether Hasbro can show by clear and convincing evidence that Mr. Lizarraga conceptualized this invention, communicated it to Mr. Bowling and Mr. Bowling derived his own invention from Mr. Lizarraga's work.

THE COURT: Doesn't the derivation argument just like the inventorship argument require that there be proof of a corroboration to the testimony of Lizarraga?

MR. TECHENTIN: Yes, your Honor. And there is corroboration of Mr. Lizarraga.

THE COURT: Didn't I rule that Hasbro failed to produce evidence of corroboration and that's what my prior ruling says, doesn't it? I said in the prior ruling, the evidence upon which Hasbro relies to

corroborate Lizarraga's uncertain testimony fails to prove a contribution to the conception of the invention by clear and convincing evidence.

MR. TECHENTIN: Yes, your Honor. And respectfully --

THE COURT: How do you get around that?

MR. TECHENTIN: -- we take issue with your Honor's understanding of the corroboration requirement. We would submit that Mr. Lizarraga's testimony is fully corroborated by both the drawings that are admitted to have been produced by him and by Mr. Bowling's testimony that Mr. Lizarraga drew the drawings for him and got those drawings from him. That's the corroboration necessary. It puts him at the place, and it puts him in the context of preparing this. And respectfully, this is an issue that we briefed before, and I don't seek to reargue this at this point, but I will restate the point that the corroboration requirement doesn't require that the corroborating evidence prove the inventive aspect by this purported co-inventor. It doesn't require that. It merely requires some showing that this isn't fiction. And that Mr. Bowling provides in spades by saying that he hired Mr. Lizarraga, told him to go out and make these drawings and got the drawings from him. And those

physical drawings that are part of the record are the corroboration. That's our point there. If your Honor's evidentiary ruling would be the same on the derivation point, then perhaps this is a non-starter, but that would be our position.

THE COURT: I know you disagree with it, but I dealt with your claim that the drawings are corroborating very explicitly in my prior ruling.

So I really think what this gets down to is that you disagree with my ruling on the level of corroboration and whether it could meet the clear and convincing standard; and that, you know, certainly, I respect your right to do that, but I see this motion as really effectively just a way to kind of get me to reconsider that ruling. And in fact, the main case that I relied on in my whole discussion of this area was, in fact, a derivation case, not an inventorship case.

MR. TECHENTIN: I realize that, your Honor. I would just point out this isn't our motion so we weren't trying to use the motion to get to reargue that.

THE COURT: Okay. It's their motion, but you were trying to put the evidence on.

MR. TECHENTIN: Yes, your Honor. We most

definitely were trying to get the jury to make a decision as to whether we could meet this burden.

THE COURT: Okay. Well, I'm going to grant the plaintiff's motion to exclude the testimony of Lizarraga as a co-inventor and preclude you from making that argument. You can make your offer of proof, and I think that will satisfy the record in terms of preserving your issue for appeal.

MR. TECHENTIN: Thank you, your Honor.

THE COURT: I don't know how you want to make your offer of proof. Do you want to put it in writing, or do you want to just at some point go on the record and do it orally? It's really up to you.

MR. TECHENTIN: Your Honor, if it's all the same to the Court, I'd rather put it in writing. I think that's the easiest thing. You don't have to fit it in.

THE COURT: That's fine. Next is plaintiff's motion to exclude the expert testimony of Michael Gray with respect to dice.

So I remember Mr. Gray's testimony pretty well. And I think I made some rulings with respect to him at the Daubert hearing and I precluded him from testifying. But as I understand it, you, Hasbro, intends to put him on for a different purpose than what you previously suggested. So why don't you come up and

# Exhibit U

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| MICHAEL BOWLING, a Resident of Arizona, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 05-229 S |
| HASBRO, INC., a Rhode Island Corporation, | : | |
| Defendant. | : | |

**HASBRO' OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES**

Pursuant to Rule 26 and Rule 33 of the Federal Rules of Civil Procedure, Defendant Hasbro, Inc. ("Hasbro") hereby responds to the Plaintiffs' First Set of Interrogatories (the "Interrogatories") as follows.

**GENERAL OBJECTIONS**

1. Hasbro objects to the Interrogatories, and the definitions and instructions contained therein, to the extent that they purport to expand upon Hasbro's obligations under the Federal Rules of Civil Procedure.

2. Hasbro objects to the Interrogatories, and the definitions and instructions contained therein, to the extent they seek the disclosure of information protected from discovery by the attorney-client privilege, the work product doctrine and any other applicable privilege or immunity.

3. Hasbro objects to the Interrogatories, and the definitions and instructions contained therein, to the extent that they are overly broad, unduly burdensome, and/or seek information not relevant to the claim or defense of any party to this action.

4. Hasbro objects to the Interrogatories, and the definitions and instructions

Office the facts relating to the prior public use or sale of the die. Mr. Bowling, and possibly friends or colleagues of Mr. Bowling, have information relevant to this contention, which information will be the subject of discovery yet to be taken by Hasbro in this case. Hasbro expressly reserves the right to supplement its response to this Interrogatory based upon information gathered through the discovery process.

2. Describe all facts and reasons for Hasbro's contention that Hasbro's Accused Dice do not infringe any claim of the '197 patent, including how and why any claim limitation is not met either literally or under the doctrine of equivalents. To the extent that Hasbro construes any claim term different [*sic*] than its ordinary and customary meaning in view of the intrinsic evidence, please provide Hasbro's construction. The description should also include a full description of all facts supporting the contention, identification of any documents concerning the contention, and the identity of all persons with knowledge of facts concerning the contention.

**OBJECTION:** Hasbro objects to this Interrogatory on the grounds that it is overbroad and unduly burdensome and to the extent that it seeks information not relevant to any claim or defense of any party to this action. Hasbro does not know, because the Plaintiff has not identified, which claims of the '197 patent the Plaintiff contends Hasbro's Accused Dice infringe. The '197 patent consists of twenty distinct claims, many of which have no logical application to Hasbro's Accused Dice. For example, Claim 10 refers to a die with ten facets on the "extension member" of the die, and five facets on each of the "endcaps" of the die. To the extent the Interrogatory seeks an explanation of why Hasbro's dice do not infringe claims that the Plaintiff does not contend to have been infringed, such information is not relevant and, consistent with Rule 26 of the Federal Rules of Civil Procedure, not discoverable. Hasbro expressly reserves the right to supplement its response to this Interrogatory in the event the Plaintiff identifies the claims of the '197 patent that he contends to have been infringed by Hasbro.

3. Identify on a monthly basis, from January 1, 1998, to the present, the numbers of Accused Die [*sic*] Hasbro (1) manufactured; (2) purchased; and/or (3) sold, whether individually or included in a Game. If included in a Game, provide the Game's name, the number of Games sold, and the number of die [*sic*] included in the Game.

# Exhibit V

Merchant & Gould
An Intellectual Property Law Firm

3200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota
55402-2215 USA
TEL 612.332.5300
FAX 612.332.9081
www.merchant-gould.com

A Professional Corporation

Direct Contact | 612.336.4665
tleach@merchant-gould.com

December 1, 2005

**VIA FACSIMILE**

Jeffrey K. Techentin
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903

*Re:* ***Bowling v. Hasbro, Inc.***
***C.A. No. 05-229S***
***M&G File No. 12206.4-US-ZA***

Dear Jeffrey:

I have received Hasbro's answers to Bowling's first set of discovery requests. Given that Hasbro's responses are over five weeks late, I was surprised to see that Hasbro's responses are incomplete and include objections that Hasbro waived. I address Hasbro's incomplete responses below.

**1. HASBRO WAIVED ALL OBJECTIONS BY SERVING ITS RESPONSES OVER FIVE WEEKS LATE**

Hasbro has waived all objections to Bowling's discovery requests by filing its responses over five weeks late. *See* Fed. R. Civ. P. 33(b)(4); *Tropix, Inc. v. Lyon & Lyon*, 169 F.R.D. 3, 5 (D. Mass. 1996) (holding that a party that fails to respond to interrogatories and document requests waives all objections and must provide full and complete responses). Indeed, I told you that Hasbro waived any objections by refusing to timely respond to Bowling's discovery requests. You agreed. Thus, please supplement Hasbro's answers to Bowling's discovery requests immediately by providing all information and documents withheld based upon Hasbro's general or specific objections.

## 2. HASBRO'S FAILED TO FULLY RESPOND TO BOWLING'S INTERROGATORIES 2-8

**Interrogatory No. 2**

Hasbro's overly broad objection to Interrogatory No. 2 is meritless. Hasbro bases its "overly broad objection" on a claim it knows is not at issue in this case. Apparently, Hasbro recognized that claims 1-9 are at issue and thus based its "objection" on claim 10. Even if Hasbro's objections were not waived—and they were—such an objection does not relieve Hasbro from responding to the request to the extent that it is not objectionable. Fed. R. Civ. P. 33(b)(1). Bowling contends that the Accused Dice infringe at least claims 1-9 and 16-19 of the '197 patent. Hasbro's response fails to describe any facts or reasons why Hasbro's Accused Dice do not infringe these claims of the '197 patent. Please provide Bowling with Hasbro's substantive response to this request immediately.

**Interrogatory Nos. 3, 4, and 6**

Hasbro responded to Interrogatories 3, 4 and 6, by stating that it will produce documents pursuant to Rule 33(d) of the Federal Rules of Civil Procedure. Rule 33(d) allows a party to answer an interrogatory by producing business records as long as "the burden of deriving or ascertaining the answer is substantially the same" for the parties *and* the party producing the business records specifies the "records from which the answer may be derived." Hasbro has not specified which documents contain the information responsive to this request, or even if such documents have been produced. Moreover, it is unlikely that the burden of obtaining such information from those documents is substantially the same for Bowling as it is for Hasbro. Please provide responses to these interrogatories or identify by bates numbers the documents that provide the information responsive to these requests. If such documents have not yet been produced, please produce them immediately.

**Interrogatory No. 5**

In response to Interrogatory No. 5, Hasbro attempts to rewrite Bowling's interrogatory alleging that the phrase "the two most knowledgeable people" is "vague and ambiguous." The interrogatory seeks the two people most knowledgeable about various topics. Hasbro's objection is baseless. Please identify the two people most knowledgeable about each category immediately.

**Interrogatory Nos. 7 and 8**

Hasbro's responses to Interrogatories 7 and 8 fail to identify documents concerning or relating to the information requested in the interrogatories. Please provide this information immediately.

## 3. HASBRO FAILED TO FULLY RESPOND TO BOWLING'S DOCUMENT REQUESTS

Most of Hasbro's responses to Bowling's document requests state, "documents have been or will be produced." Please confirm that Hasbro has produced all responsive documents. If Hasbro has not yet produced all responsive documents, identify for which document requests Hasbro has not provided all responsive documents. Also, for requests to which Hasbro objected, state whether Hasbro is withholding any documents based on its objections. If so, please produce such documents immediately.

Regarding documents that Hasbro produced which contain redactions, please produce unredacted copies as Hasbro waived any objections based on privilege.

**Document Request No. 9**

In response to this document request, Hasbro objects that "Hasbro has not denied 'that any of its products infringe any of the claims of the '197 patent.'" By this statement I assume that Hasbro admits its Accused Dice infringe at least one claim of the '197 patent. Moreover, as explained above, by filing its responses late, Hasbro has waived any objections to Bowling's document requests and its objections are improper. Please state whether Hasbro is withholding any documents based on its objections. If so, please produce such documents immediately.

**Document Request No. 16**

Document Request No. 16 asks for all documents concerning Hasbro's decision to copy Bowling's Patented Dice. This request includes all documents concerning Hasbro's copying, review, or inspection of Bowling's patented Dice. Please state whether Hasbro is withholding any documents based on its objections. If so, please produce such documents immediately.

**Document Request No. 19**

Hasbro's objection that this request is overly broad, unduly burdensome, and does not seek relevant information is baseless. Documents are discoverable if they are likely to lead to the discovery of admissible information. Moreover, the request is narrowly tailored to obtain customer complaints regarding dice included in the Monopoly Millennium Edition board game. Such dice are at the very heart of this dispute. Please state whether Hasbro is withholding any documents based on its objections. If so, please produce such documents immediately.

**Document Request No. 24**

Document Request No. 24 asks Hasbro for all documents and things sufficient to evidence Avalon Hill's attendance at the August 1998 Gen Con game fair held in Milwaukee, Wisconsin. It is irrelevant that Avalon Hill was not part of Hasbro in 1998. If Hasbro has documents responsive to this request in its possession, custody, or control it must produce such documents. Please state whether Hasbro is withholding any documents based on its objections. If so, please produce such documents immediately.

**Document Request Nos. 37 and 38**

Hasbro's objections to these requests are baseless. The standard for discovery is whether the documents requested are likely to lead to the discovery of admissible evidence. Hasbro's licenses, agreements, and documents concerning royalties related to board games are directly relevant to one of the main issues in this case—damages. Please state whether Hasbro is withholding any documents based on its objections. If so, please produce such documents immediately.

**Document Request No. 42**

Hasbro's objection that this request is overly broad and unduly burdensome is baseless. Request No. 42 seeks information that is directly relevant to damages. For example, Hasbro puts at issue when certain sales of its Monopoly Millennium Edition games were sold. Thus, monthly sales information is directly relevant to damages, and such documents should be produced. Moreover, in response to Bowling's Interrogatory No. 4, Hasbro answered by stating that it would produce documents under Fed. R. Civ. P. 33(d). That request mirrors this document request, yet Hasbro refuses to produce such documents in response to this document request. Please state whether Hasbro is

withholding any documents based on its objections. If so, please produce such documents immediately.

**4. HASBRO'S ILLEGIBLE DOCUMENTS**

The following documents are illegible and need to be re-produced: Hasbro Bates numbers HA 7, 236, 237, 264, 267, and 268. Please produce legible copies immediately.

I will call you either Thursday, December 1, 2005, in the afternoon or on Friday, December 2, 2005, to meet and confer regarding Hasbro's incomplete responses to Bowling's discovery requests.

Sincerely,

Thomas J. Leach

TJL

cc: Craig Scott (via facsimile)

# Exhibit W

Merchant & Gould
An Intellectual Property Law Firm

3200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota
55402-2215 USA
TEL 612.332.5300
FAX 612.332.9081
www.merchant-gould.com

A Professional Corporation

Direct Contact | 612.336.4665
tleach@merchant-gould.com

December 6, 2005

**VIA FACSIMILE**

Jeffrey K. Techentin
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903

***Re: Bowling v. Hasbro, Inc.***
***C.A. No. 05-229S***
***M&G File No. 12206.4-US-ZA***

Dear Jeffrey:

In our meet and confer of Friday, December 2, 2005, Hasbro agreed to provide the following information on or before December 15, 2005:

(1) Full and complete responses to Bowling's Interrogatory No. 2;
(2) Full and complete responses to Interrogatory Nos. 3, 4, and 6, including sales of the Accused Die on a monthly basis, to what retailers such Accused Die were sold, and documents sufficient to determine the remaining information requested in these interrogatories; and
(3) The two most knowledgeable Hasbro employees for categories (a)-(f) listed in Interrogatory No. 5.

Regarding Bowling's document requests, you agreed on behalf of Hasbro to produce documents responsive to Bowling's Document Requests Nos. 37 and 38. In addition you agreed on behalf of Hasbro to check if Hasbro had better copies of Hasbro's document bates numbers HA 7, 236, 237, 264, 267, and 268. Also, please confirm your representation, in writing, that Hasbro is not withholding any documents based on any of Hasbro's objections, aside from privilege.

Finally, we have met and conferred regarding these issues and if Hasbro does not provide full and complete responses on or before December 15, 2005, as agreed, we will be forced to take the matter to the Court.

Sincerely,

Thomas J. Leach

TJL

cc: Craig Scott (via facsimile)

# Exhibit X

Merchant & Gould
An Intellectual Property Law Firm

3200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota
55402-2215 USA
TEL 612.332.5300
FAX 612.332.9081
www.merchant-gould.com

A Professional Corporation

Direct Contact | 612.336.4665
tleach@merchant-gould.com

December 23, 2005

**VIA FACSIMILE**

Jeffrey K. Techentin
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903

***Re:*** ***Bowling v. Hasbro, Inc.***
***C.A. No. 05-229S***
***M&G File No. 12206.4-US-ZA***

Dear Jeffrey:

I am in receipt of Hasbro's amended interrogatory responses. Hasbro's amended response to Bowling's Interrogatory No. 5 continues to be evasive and unresponsive. In our meet and confer, Hasbro agreed to fully answer this interrogatory. Yet Hasbro continues to maintain its objection that the phrase "the two most knowledgeable people" is "vague and ambiguous," and attempts to rewrite Bowling's interrogatory to avoid answering the question posed. Hasbro never raised this issue in our meet and confer, and, if it had, I would have explained the phrase's meaning. Indeed, it was not raised because Hasbro knows full well what information the interrogatory requests. Moreover, as I explained, Hasbro has waived any objections to the interrogatories by not timely responding.

Hasbro's persistent attempt to rewrite Bowling's interrogatory is inappropriate. Please answer the question posed—namely, identify the two most knowledgeable people working for Hasbro or employed by Hasbro concerning the listed categories. Please provide Hasbro's response by January 9, 2006.

Sincerely,

Thomas J. Leach

TJL

cc: Craig Scott (via facsimile)

Minneapolis/St. Paul
Denver
Seattle
Atlanta
Washington, DC

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MICHAEL BOWLING, a Resident of Arizona, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 05-229 S |
| HASBRO, INC., a Rhode Island Corporation, | : | |
| Defendant. | : | |

**HASBRO' AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

Pursuant to Rule 26 and Rule 33 of the Federal Rules of Civil Procedure, Defendant Hasbro, Inc. ("Hasbro") hereby amends its prior responses to the Plaintiff's First Set of Interrogatories (the "Interrogatories") as follows.

**GENERAL OBJECTIONS**

1. Hasbro objects to the Interrogatories, and the definitions and instructions contained therein, to the extent that they purport to expand upon Hasbro's obligations under the Federal Rules of Civil Procedure.

2. Hasbro objects to the Interrogatories, and the definitions and instructions contained therein, to the extent they seek the disclosure of information protected from discovery by the attorney-client privilege, the work product doctrine and any other applicable privilege or immunity.

3. Hasbro objects to the Interrogatories, and the definitions and instructions contained therein, to the extent that they are overly broad, unduly burdensome, and/or seek information not relevant to the claim or defense of any party to this action.

4. Hasbro objects to the Interrogatories, and the definitions and instructions

claims of the '197 patent under the doctrine of equivalents is the subject of further discovery and, Hasbro anticipates, of expert testimony in this case. Hasbro expressly reserves its right to supplement its response to this Interrogatory on the basis of such further discovery and to disclose any anticipated expert testimony in accord with the applicable Rules of Civil Procedure and orders of the Court.

Hasbro further contends that its die does not infringe any Hasbro further contends that its die does not infringe, either literally or under the doctrine of equivalents, Claims 10, 11, 12, 13, 14, 15, 16, and 20 of the '197 patent. Claims 10, 11, and 12 pertain to a die with twenty facets; Hasbro's die had just twelve facets. Likewise, Claims 13, 14, 15, and 20 pertain to a die with forty facets; again, Hasbro's die had just twelve facets. Claim 16 identifies a die wherein the "ratio of a surface area of each of said extension member facets to a surface area of each of said first end cap discrete facets is about 2-3:1." The ratio of the surface areas of the "extension member facets" on Hasbro's die to the surface areas of the "end cap discrete facets" on Hasbro's die is in excess of 3.5:1.

Hasbro is not aware of any documents, other than the '197 patent and the application therefor, that support or concern these contentions. Hasbro is not aware of any individuals who possess particularized knowledge relevant to these contentions.

5. Identify the two most knowledgeable people working for or employed by Hasbro concerning the following

a.)[*sic*] the facts surrounding Hasbro's decision to sell the Accused Die or use the Accused die in its Monopoly Millennium Edition game or any other Game;

b) the facts surrounding Hasbro's decision to quit using or selling the Accused Die or Games;

c) any evaluation, analysis, study, consideration, or copying of Bowling's Patented Dice;

d) the manufacturing or purchase of Hasbro's Accused Die;

e) the marketing, advertising, and promotional activities related to Hasbro's Accused Die or Games; and

f) sales, distribution, financial, and profit information regarding Hasbro's Accused Die or Games.

**OBJECTION:** Hasbro objects to this Interrogatory to the extent it seeks to compel Hasbro to identify "the two most knowledgeable people" with respect to the particular categories identified in the Interrogatory as that phrase is vague and ambiguous. Hasbro construes the interrogatory to seek the identity of two Hasbro personnel with relevant, direct, and discoverable knowledge about the defined categories, and responds accordingly.

**RESPONSE:** (a) Dottie Echlin and Mike Hirtle, Hasbro Games Group, Hasbro, Inc.; (b) Kurt Benson, Hasbro Legal Department, Hasbro, Inc. and Dottie Echlin, Hasbro Games Group, Hasbro, Inc.; (c) Dottie Echlin and Mike Hirtle, Hasbro Games Group, Hasbro, Inc.; (d) Dottie Echlin and Mike Hirtle, Hasbro Games Group, Hasbro, Inc.; (e) Dottie Echlin and Mike Hirtle, Hasbro Games Group, Hasbro, Inc.; and (f) Dottie Echlin and Mike Hirtle, Hasbro Games Group, Hasbro, Inc.

# Exhibit Y

# Merchant & Gould

An Intellectual Property Law Firm

3200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota
55402-2215 USA
TEL 612.332.5300
FAX 612.332.9081
www.merchant-gould.com

A Professional Corporation

Direct Contact | 612.336.4665
tleach@merchant-gould.com

February 27, 2006

***Via Facsimile***

Jeffrey K. Techentin
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903

***Re:*** ***Bowling v. Hasbro, Inc.***
***C.A. No. 05-229S***
***M&G File No. 12206.4-US-ZA***

Dear Jeff:

Hasbro has not produced any correspondence with its retailers, such as, Wal-Mart, K Mart, Costco, etc., concerning sales of the Monopoly Millennium edition games. Hasbro has also not produced any vendor agreements with these retailers concerning the Monopoly Millennium games. Please produce all correspondence and representative samples of each of Hasbro's vendor agreements concerning the Monopoly Millennium edition games. These documents are covered by at least Bowling's Document Request Nos. 53 and 64. Please produce these documents by Friday, March 3, 2006.

Sincerely,

Thomas J. Leach

TJL:sgl

cc: Craig Scott (via facsimile)

Minneapolis/St. Paul
Denver
Seattle
Atlanta
Washington, DC

# Exhibit Z

3200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota
55402-2215 USA
TEL 612.332.5300
FAX 612.332.9081
www.merchant-gould.com

# Merchant & Gould

An Intellectual Property Law Firm

A Professional Corporation

Direct Contact | 612.336.4665
tleach@merchant-gould.com

February 28, 2006

***Via Facsimile***

Jeffrey K. Techentin
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903

***Re:*** ***Bowling v. Hasbro, Inc.***
***C.A. No. 05-229S***
***M&G File No. 12206.4-US-ZA***

Dear Jeff:

I am in receipt of your letter dated February 28, 2006, stating that Hasbro does not have any documents concerning any agreements or correspondence with its retailers, such as Wal-Mart, K-Mart, Costco etc. that relate to or cover sales of the Monopoly Millennium games. I find it hard to believe that Hasbro sold its Monopoly Millennium games to these companies without any correspondence or agreements in place to dictate the terms of such transactions. Your letter confirms that Hasbro does not have *any* agreements or contracts that relate to transactions between Hasbro and its retailers that apply to the sales of the Monopoly Millennium games, including the games that contained the accused die. Your letter also confirms that Hasbro does not have any correspondence between Hasbro and these retailers concerning the Monopoly Millennium game. If this is not the case, and Hasbro is merely construing Bowling's requests narrowly to avoid producing responsive documents, please let me know immediately.

Sincerely,

Thomas J. Leach

TJL:sgl

cc: Craig Scott (via facsimile)

Minneapolis/St. Paul
Denver
Seattle
Atlanta
Washington, DC

# Exhibit AA

# Merchant & Gould

An Intellectual Property Law Firm

3200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota
55402-2215 USA
TEL 612.332.5300
FAX 612.332.9081
www.merchant-gould.com

A Professional Corporation

Direct Contact | 612.336.4665
tleach@merchant-gould.com

March 1, 2006

***Via Facsimile***

Jeffrey K. Techentin
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903

***Re:*** ***Bowling v. Hasbro, Inc.***
***C.A. No. 05-229S***
***M&G File No. 12206.4-US-ZA***

Dear Jeff:

In our phone conversation yesterday regarding our letters of February 27 and 28, 2006, I explained that Bowling's Document Request Nos. 53 and 64 were not limited to agreements specific to the Monopoly Millennium game, but included any agreements that concern the Monopoly Millennium games. With that clarification, you agreed, on behalf of Hasbro, to search for and produce any agreements between Hasbro and its retailers, such as Wal-Mart, Costco, K-Mart, etc., that apply to the sale of its Monopoly Millennium edition games. As discovery closes on March 20, 2006, please, by Wednesday, March 8, 2006, either produce these documents or confirm that no such agreements exist.

Sincerely,

Thomas J. Leach

TJL:sgl

cc: Craig Scott (via facsimile)

Minneapolis/St. Paul
Denver
Seattle
Atlanta
Washington, DC

# Exhibit AB

Merchant & Gould
An Intellectual Property Law Firm

3200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota
55402-2215 USA
TEL 612.332.5300
FAX 612.332.9081
www.merchant-gould.com

A Professional Corporation

Direct Contact | 612.336.4665
tleach@merchant-gould.com

March 28, 2006

***Via Facsimile***

Jeffrey K. Techentin
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903

***Re:*** ***Bowling v. Hasbro, Inc.***
***C.A. No. 05-229S***
***M&G File No. 12206.4-US-ZA***

Dear Jeff:

This letter addresses deficiencies in (1) Hasbro's Responses to Bowling's Fourth Set of Document Requests; (2) Hasbro's Objections and Responses to Plaintiff's Third Set of Requests For Admissions To Hasbro, Inc.; (3) Hasbro's Objections and Responses to Plaintiff's Fourth Set of Interrogatories; and (4) Hasbro's refusal to produce underlying financial documents. As fact discovery closes on April 20, 2006, I will contact you to meet and confer on these issues today.

**1. Hasbro's Responses to Bowling's Fourth Set of Document Requests:**

**Request No. 81** asks for documents sufficient to establish the gross and net profit margins, selling price, and cost for each version of the Monopoly game. Hasbro objects to this request as irrelevant to a claim or defense and as overly broad and unduly burdensome. Hasbro's objections are improper because they are boilerplate and unsupported—a form specifically rejected by the courts. *Rosenberg v. John-Manville Corp.*, 85 F.R.D. 292, 296 (E.D. Pa. 1980) (the objecting party "must specifically show how, despite the broad and liberal construction afforded the Federal Discovery Rules, each interrogatory . . . is overly broad, burdensome or oppressive . . . ."). This request specifically seeks documents to establish the profit margin of each version of the Monopoly game, not just the Monopoly Millennium game. These documents are relevant to show how profitable the Monopoly

Millennium version was compared to other versions of Monopoly. This information goes directly to the issue of damages in this case. Hasbro responded that such documents have already been produced. They have not. Please produce these documents immediately.

**Request No. 82** asks for all license agreements concerning the copyrights Hasbro asserts against Bowling. Hasbro objected to this request as seeking irrelevant documents and as being overly broad and unduly burdensome. Again, Hasbro's objections are improper as they do not specify why the request is overbroad or burdensome. This request is directly relevant to damages in this case. Whether and how much Hasbro licenses the copyrights at issue is relevant to the amount and reasonableness of any damage award. Please produce responsive documents immediately.

**Request No. 83** asks for a copy of each asserted copyright registration. In response, Hasbro states, "responsive documents have or will be produced." Have all such documents been produced? If not, when will Hasbro produce them?

**Request No. 89** asks for all documents concerning Hasbro's deposition of Eileen Sefchick. Hasbro objects to this request as seeking irrelevant documents and as being overly broad and unduly burdensome. Again these boilerplate objections are improper. Please confirm that you are not withholding any non-privileged documents based on these objections, such as, documents exchanged before you represented Ms. Sefchick.

**Request No. 90** asks for all prior art to the '197 patent. Hasbro's response states that all documents have been or will be produced. Please confirm that you have produced all prior art. Moreover, we will move to strike any prior art that Hasbro has unreasonably delayed in producing.

**Request No. 93** asks for documents sufficient to establish the meaning of the various abbreviations or terms contained in Hasbro's financial document bates labeled HA008041. Hasbro states that no responsive documents exist. To the extent that Hasbro can generate a report from its accounting database that is responsive to this request it must do so.

**Request No. 94** asks for documents sufficient to establish which products the various Material Numbers in Hasbro document HA008040 correspond to. Hasbro states that no responsive documents exist. To the extent that Hasbro can generate a report from its accounting database that is responsive to this request it must do so.

**2. Hasbro's Objections and Responses to Plaintiff's Third Set of Requests For Admissions To Hasbro, Inc.**

In Hasbro's responses to Plaintiff's Third set of Requests for Admissions, Hasbro failed to appropriately respond to a number of the requests for admissions. In particular, Hasbro inappropriately rewrote the request or answered the wrong request. For example, in Request Nos. 90 and 92, Hasbro admits that the "Accused Dice perform substantially the same function as the die shown in Figure 4 of the '197 patent." The request, however, asks for Hasbro to "admit that the Accused Dice perform substantially the same function as the dice claimed in the '197 patent." Please respond to the request asked. Hasbro attempts the same word games in Bowling's Requests for Admission Nos. 112-14. For example, Request No. 114 asks for Hasbro to "admit that Kurt Benson, on behalf of Hasbro, admitted that Hasbro's Accused Dice perform substantially the same result as the dice claimed in the '197 patent." Hasbro improperly rewrote, and failed to answer, the request. For example, Hasbro admitted "that the Accused Dice perform substantially the same result as the die shown in Figure 4 of the '197 patent." Please answer the questions posed immediately.

**3. Hasbro's Objections and Responses to Plaintiff's Fourth Set of Interrogatories:**

Hasbro refused to respond to Plaintiff's Fourth Set of Interrogatories stating that Bowling has exceeded the limit allowed by the Federal Rules of Civil Procedure. Please explain how Hasbro is counting Bowling's interrogatories so Bowling can determine if Hasbro's count is accurate.

**4. Hasbro's Refusals To Produce Supporting Financial Documents:**

As we have discussed for many months now, Hasbro has not produced documents responsive to Bowling's Document Request No. 42 or, as discussed above, Request No. 81. The documents Hasbro originally produced regarding the cost of the Monopoly Millennium game were inaccurate estimates. Recently Hasbro updated its response to Bowling's Interrogatory No. 4 providing cost information and profit margins. As we have discussed, please produce the underlying documents from which this information was derived. For example, I expect to see reports regarding (1) the total about of money received from the total units sold on a monthly basis; (2) the manufacturing costs; (3) the sales and advertising costs; and (4) the profit and loss statements. Such documents should have been produced months ago.

Sincerely,

Thomas J. Leach

TJL:sgl

cc: Craig Scott (via facsimile)

# Exhibit AC

Merchant & Gould
An Intellectual Property Law Firm

3200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota
55402-2215 USA
TEL 612.332.5300
FAX 612.332.9081
www.merchant-gould.com

A Professional Corporation

Direct Contact | 612.336.4665
tleach@merchant-gould.com

March 3, 2006

***Via Facsimile***

Jeffrey K. Techentin
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903

***Re:*** ***Bowling v. Hasbro, Inc.***
***C.A. No. 05-229S***
***M&G File No. 12206.4-US-ZA***

Dear Jeff:

On February 8, 2006, Hasbro produced its privilege log. Upon reviewing Hasbro's privilege log, it is apparent there are numerous deficiencies in the descriptions set forth therein.

First of all, we are unable to determine which of the individuals listed as the author and recipients of the allegedly privileged documents work in the legal department at Hasbro such that any privileges might apply. Please provide me with a summary of the people in Hasbro's legal department. In addition please list all of the Hasbro employee's that were recipients of the documents and communications included in the privilege log, so that Mr. Bowling can determine whether any privileges were waived.

There are a number of documents that Hasbro apparently believes are privileged in which an attorney is merely carbon copied on a communication. The attorney client privilege only applies to communications made to solicit or provide legal advice. Simply because an attorney is one of the recipients of a communication does not mean that such communications are privileged. For example, document HA00623-625 was sent to a number of individuals, one of whom was Kurt Benson. Unless this communication was for the provision of legal advice, it is not subject to the attorney client privilege.

In the same fashion, a number of the privilege log entries fail to indicate whether any legal advice is being sought or provided. For example, documents HA000364 and HA000365 contain communications from Kurt Benson to a number of recipients. Nothing in the entry indicates that Kurt Benson was providing legal advice or soliciting information for the provision of legal advice. Please revise the descriptions of the communications to verify that they were for the purposes of providing legal advice.

Further with respect to documents HA000364 and HA000365, it is unclear how the changeover in dice for this game is subject to the work product privilege as any communications concerning the changeover would not have been made in anticipation of litigation. Rather, the reason the dice were changed in this game was to avoid any further liability. Accordingly, it does not appear that the work product privilege should apply to these documents.

At the end of the privilege log there are three pages of documents for which no description has been provided. Please provide descriptions sufficient to enable me to determine whether the documents are subject to any privileges, or produce the documents immediately.

Finally, document HA000548 was apparently sent to Julie R. Daulton. Ms. Daulton is an attorney with Merchant & Gould, and clearly any communications to her would not be subject to the attorney client privilege. Please produce this document.

Sincerely,

Thomas J. Leach

TJL:snd