IN THE UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

MICHAEL BOWLING, a Resident of Arizona,

Plaintiff,

v.

HASBRO, INC., a Rhode Island Corporation,

Defendant.

C.A. No. 05-229S

**CORRECTED MEMORANDUM OF LAW IN SUPPORT OF MICHAEL BOWLING'S MOTION FOR ATTORNEYS' FEES UNDER 35 U.S.C. §285, 28 U.S.C. §1927 AND THE COURT'S INHERENT EQUITABLE POWERS[1]**

## I. INTRODUCTION

Plaintiff, Michael Bowling ("Bowling") moves under 35 U.S.C. §285 and 28 U.S.C. §1927 for an award of fees and sanctions in the above captioned case for the litigation misconduct of Hasbro, Inc. ("Hasbro"). Hasbro improperly multiplied the proceedings to force Bowling to either abandon his claim or spend far more than any potential recovery. To allow Hasbro to use the court system to effectively preclude an individual litigant from any viable recourse allows infringers, such as Hasbro, to infringe with impunity. An award of fees and litigation expenses is proper in cases such as this where it is grossly unjust that the prevailing party be left to bear the burden of his own counsel fees, which through no fault of his own, exceed the recovery.

This was not a frivolous lawsuit based on a weak claim. To the contrary, Hasbro admitted infringement and the jury awarded more than double what Bowling offered to settle for in 1999. Rather than make a good faith attempt to settle the dispute years ago,

[1] This memorandum clarifies the scope of relief sought in Bowling's motion for attorney's fees (Dkt. No. 214) and also corrects some typographical errors.

Hasbro chose to spend many times more in legal fees than what Bowling was willing to settle for in 1999. Hasbro's conduct went beyond zealous advocacy to asserting counterclaims and defenses for which it had no Rule 11 basis and engaging in costly discovery abuses. This conduct increased litigation costs so much that without recovering fees, Bowling's victory is a pyrrhic one.

## II. ARGUMENT

### A. This Case is Exceptional and Warrants an Award to Bowling of His Attorneys' Fees and Expenses Under 35 U.S.C. §285 and 28 U.S.C. §1927.

Section 285 of the Patent Statute authorizes the Court "in exceptional cases" to award reasonable attorney fees to the prevailing party." 35 U.S.C. §285. The principal purposes of § 285 are to compensate the prevailing party for its monetary outlays in the prosecution or defense of the suit, *Central Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983), and "to discourage infringement of a patent by anyone thinking that all he would be required to pay if he loses the suit would be a royalty." *Rohm& Haas v. Crystal Chem. Co.*, 736 F.2d 688, 691 (Fed. Cir. 1984). Awarding attorneys' fees is appropriate when "bottomed upon a finding of unfairness or bad faith in the conduct of the losing party, or some other equitable consideration of similar force, which makes it grossly unjust that the winner of the particular lawsuit be left to bear the burden of his own counsel fees." *Id* (emphasis omitted). Under §285, an award of attorney fees encompasses all reasonable litigation expenses incurred that relate to the performance of legal services. *Central Soya Co.*, 723 F.2d at 1577-78.

In *Central Soya*, the Federal Circuit interpreted "attorney fees" under §285 to "include those sums that the prevailing party incurs in the preparation for the

performance of legal services related to the suit," and awarded all expenses in addition to attorney fees. *Id.* Moreover, in a case such as this, where a prevailing party "has obtained excellent results, his attorney should recover a fully compensatory fee," which encompasses all hours reasonably expended on the litigation. *Mathis v. Spears*, 857 F.2d 749, 754 (Fed. Cir. 1988).

The award of attorney fees under §285 requires a threshold determination that this is an "exceptional case." 35 U.S.C. §285. A case may be found exceptional under §285 without bad faith or willful infringement. *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1574 (Fed. Cir. 1996); *Rambus Inc., v. Infineon Tech. AG*, 318 F.3d 1081, 1106 (Fed. Cir. 2003) (affirming a finding of exceptionality under §285 based on misconduct alone). Litigation misconduct may suffice to make a case exceptional under §285. *Id.*

Section 285 is an important tool to deter and sanction misconduct by parties to litigation, and thereby defend the court and the judicial process against abuse. *Mathis v. Spears*, 857 F.2d 749, 754 (Fed. Cir. 1988). Like §285's litigation misconduct deterrent function, 28 U.S.C. §1927 also protects litigants from attorneys who unreasonably and vexatiously multiply the expense of proceedings. An attorney who unreasonably and vexatiously multiplies the proceedings in any case may be required to satisfy the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct. 28 U.S.C. §1927.

### B. Hasbro's Conduct Throughout This Dispute Makes This Case Exceptional And Requires An Award of Bowling's Attorneys' Fees and Costs.

#### 1. Hasbro Mislead Bowling In Presuit Settlement Discussions, Driving Up Bowling's Costs.

From the beginning of this dispute, Hasbro's actions unnecessarily drove up Bowling's fees by not being forthcoming about its infringing activity. In 1999, Hasbro included in its Monopoly Millennium Board game dice that admittedly infringe Bowling's U.S. Patent No. 5,938,197 ("the '197 patent"). After Hasbro had already sold hundreds of thousands of games containing the infringing dice, Hasbro sent Bowling a letter stating that it was "interested in exploring the possibility of using the die design disclosed" in his '197 patent. (Ex. A.)

Bowling realized that Hasbro's letter was misleading and asked Hasbro to stop selling his patented dice. Bowling also offered to settle this dispute with Hasbro paying $200,000 for its infringement. (Ex. B at 2.) Hasbro continued to sell the infringing games for nearly two months before responding to Bowling's cease and desist letter. In its response, Hasbro claimed that it sold only 269,000 games and assured Bowling that it had stopped selling the infringing dice as of November 1, 1999. (Ex. C at ¶ 1, 2.) In that same letter, Hasbro offered Bowling only $7,500 to settle the dispute. (*Id.* at last paragraph.) Hasbro justified its $7,500 offer by stating that "[t]his calculation is based on the *typical practice* of Hasbro in *comparable situations* when dealing with outside inventors." (*Id.* at ¶ 4.(emphasis added)

Bowling and his attorneys were forced to continue to investigate Hasbro's sales to determine if Hasbro's representations were accurate. They were not. Only after Bowling discovered that Hasbro continued to sell infringing games after November 1, 1999, and

brought it to Hasbro's attention, did Hasbro admit that it continued to sell the infringing games. (Ex. D at ¶ 1.) Bowling learned that Hasbro sold a total of 556,828 infringing games and about 184,000 were sold after November 1, 1999. (*Id.*) Michael Hirtle, Hasbro's licensing expert, also admitted that Hasbro had never employed the alleged "typical practice" of calculating a royalty and that there were no "comparable situations" to this one. Hasbro's presuit misrepresentations support a finding that this case is exceptional under §285. *See Kloster Speedsteel AB v. Crucible Inc.*, 793 F.2d 1565, 1580 (Fed. Cir. 1986) ("bad faith in pretrial and trial stages, by counsel or party, may render the case exceptional under §285").

Bowling seeks fees and costs associated with its presuit investigation, which was unreasonably and vexatiously multiplied by Hasbro's misleading representations. Bowling's associated fees are $4,507.[2]

**2. Hasbro's Discovery Abuses Drove Up Bowling's Litigation Costs and Hindered Prosecution of Its Claims.**

After suit was filed, Hasbro continued to drive up Bowling's costs. During discovery Hasbro refused to respond to Bowling's first set of discovery requests until more than a month after they were due. Hasbro never requested an extension, it simply ignored Bowling. Bowling was forced to write Hasbro multiple times, meet and confer, and bring the matter to the Magistrate Judge just to get responses—all with no adverse consequence to Hasbro. (Exs. E, F, G.)

When Hasbro did finally respond, it did not provide complete answers. For example, Bowling's Interrogatory No. 2 sought Hasbro's non-infringement position. Hasbro claimed not to know what claims were asserted against its six-sided dice and

[2] (*See* Affidavit of Thomas J. Leach filed in support of the present motion. ("Leach Affidavit at ¶ 21."))

objected to the request because some of the claims were to ten and twenty sided dice. (Ex. U at 3.) Hasbro did not address the claims to six sided dice. (*Id.*) Bowling was forced to write Hasbro and then have a meet and confer to obtain a complete answer as to its non-infringement position. (Exs. V, W.)[3]

Hasbro designated a 30(b)(6) witness on the topic of infringement, which includes doctrine of equivalents infringement, that was not prepared to provide Hasbro's basis for non-infringement under the doctrine of equivalents. Bowling's counsel demanded that Hasbro either admit infringement or pay to redo the deposition at Hasbro's costs. (Ex. H, Ex. I at 82:7-84:2.) After Hasbro's witness could provide no basis for why it does not infringe under the doctrine of equivalents, Hasbro refused to pay Bowling's costs to redepose a prepared witness. (Ex. J.)

While these tactics are less effective against a large well-funded corporation, they are devastating to an individual litigant who cannot continuously fight every issue. Bowling asks for his fees and costs associated with Hasbro's discovery abuses, which amount *conservatively* to $19,574.

### 3. Hasbro Withheld Eric Burke's Declaration While it Submitted to the Court David Wheeler's Contrary Declaration.

In moving for summary judgment on marking, Hasbro made arguments and filed a declaration while withholding a declaration that directly contradicted Hasbro's assertions. Hasbro moved for summary judgment arguing that Bowling did not properly mark. (Dkt. Nos. 37.) In support of its motion, Hasbro submitted an emergency motion

---

[3] Hasbro's conduct persisted throughout discovery. For example, Hasbro's attempted to rewrite Bowling's discovery request to avoid answering the questions posed. (Ex. X.) Bowling sought correspondence with Hasbro's retailers regarding the Monopoly Millennium game. (Ex. Y.) Hasbro objected to the request and responded that it had no such documents. After Bowling realized how narrowly Hasbro read the request, Bowling clarified it in a meet and confer and Hasbro agreed to produce the documents. (Exs. Z, AA.) Such examples are abundant. (*See eg.,* Exs. AB, AC.)

to supplement its reply brief with an October 6, 2006 declaration of David Wheeler, the owner of Dragon's Lair. (Dkt. No. 81.)[4] Mr. Wheeler's declaration stated that *he did not recall* receiving instructions from Crystal Caste regarding patent stickers or taking any action regarding displaying patent information about Crystal Caste dice. (*Id.* at ¶5.)[5] Hasbro argued to the Court that "Dragon's Lair sold numerous crystal dice since 1999 without giving any notice to its customers that these dice were patented." (*Id.* at 3 (Memo. in Support of Emergency Mot. for Leave to File Supp. Materials).)

Hasbro made these arguments to the Court despite having in its possession a declaration from another Dragon's Lair employee, Eric Burke, stating that the Crystal Caste display case had two stickers on it that read "U.S. Patent # 5938197":

> 10. The display case in which the crystal-shaped dice had previously been displayed has two stickers on it, each of which says "Choking Hazard! Not for children under 14 yrs. U.S. Patent # 5938197." The stickers are on the outside of the case, on each end face of the display case.

(Dkt. No. 84 at ¶10.) Mr. Burke's declaration was dated August 30, 2006—more than a month *before* Mr. Wheeler's October 6, 2006 declaration. This litigation misconduct may suffice, by themselves, to make a case exceptional under §285. *Rambus Inc. v. Infineon Tech. AG*, 318 F.3d 1081, 1106 (Fed. Cir. 2003).

Bowling seeks its fees and costs associated with Hasbro's motion for partial summary judgment regarding marking and the associated motions regarding the contrary declarations and Hasbro's baseless argument that Bowling's post actual notice marking

[4] Both Hasbro's emergency motion and the Wheeler declaration are both listed as Docket No. 81, despite appearing to be two different entries.

[5] Bowling's counsel subsequently contacted Mr. Wheeler about his declaration. Mr. Wheeler stated that he told Mr. Techentin that he could not confirm whether or not he had received such instruction. Moreover, Mr. wheeler did not recall Mr. Techentin asking him to investigate whether Crystal Caste's dice were marked with the patent sticker. When he did, he found the '197 patent stick on the bin that contained the Crystal dice in 1999. (Dkt. No. 83. at ¶¶5-7.)

activity amounted to Habit evidence. Bowling seeks fees in the amount of $48,278.60.[6] *See id.* at 1106 (finding misconduct alone supported the determination that the case was exceptional under §285 and awarding fees that related to the misconduct.)

**4. Hasbro Misled Bowling's Counsel to Gain Tactical Advantages.**

Hasbro misrepresented its intentions to suspend the date to file pretrial submissions in tactical maneuvering to place it in a better position to request a stay of the proceedings. Hasbro's counsel contacted Bowling's counsel requesting that Bowling agree not to oppose a motion to suspend filing of the pretrial memoranda, which was due on June 29, 2007. Hasbro's counsel represented that it made sense to prepare the pretrial memoranda after the scheduled chambers conference on July 13, 2007, as it would likely narrow the issues. As a professional courtesy to Hasbro, Bowling's counsel agreed. On June 22, 2007, Hasbro filed an unopposed motion to suspend the deadline to file pretrial memoranda. (Dkt. No. 98.) On June 26, 2007, at 10:42 a.m. Central Standard Time the Court granted Hasbro's motion to suspend filing of the pretrial memoranda pending the chambers conference. (Ex. K.) Fifteen minutes later Hasbro supplemented its interrogatory response adding dozens of new prior art references and invalidity contentions. (Ex. L.) Had Hasbro been forthright with Bowling, Bowing would have opposed the motion to suspend filing of the pretrial memoranda.

During trial Hasbro also requested that the parties agree to the witnesses that will be called and their order as a courtesy to Hasbro’s witnesses. Hasbro represented that they were "firm with respect to our intentions for the order of witnesses" and did not "anticipate any last-minute juggling." (Ex. M.) Bowling provided his list and Hasbro

---

[6] (Leach Affidavit at ¶ 21.)

provided its list. Hasbro's list did not mention calling Mr. Bowling or Mr. Cook. Hasbro then called Mr. Bowling in its case-in-chief. And during the hearing on inequitable conduct, Hasbro disregarded the agreement, presumably because it was not filed as a stipulation, and entered the deposition testimony of Mr. Cook.

**5. Hasbro Asserted Defenses and Counterclaims for which it Had No Rule 11 Basis, Driving Up Bowling's Legal Fees and Costs.**

Hasbro pled affirmative defenses and counterclaims of non-infringement despite never having done an infringement analysis. (*Compare* Dkt. No. 3 at ¶ 12-15, *with*, Ex. I at 70:24-71:2, 79:23-80:8.) Hasbro forced Bowling through years of expensive discovery dealing with infringement issues and trial preparation. Yet, days before trial Hasbro admitted infringement.

Bowling took a 30(b)(6) deposition of Hasbro to discover its non-infringement position. Hasbro designated its patent lawyer, Kurt Benson, on the topic of its non-infringement position. Mr. Benson, on behalf of Hasbro, admitted that it had not done a doctrine of equivalents analysis.[7] (Ex. I at 70:24-71:2.) Mr. Benson went on to admit that Hasbro's accused dice infringe under the doctrine of equivalents, i.e. they perform substantially the same function, in substantially the same way, to achieve substantially the same results as the patented dice. (*Id.* at 79:23-80:8.) This function/way/result test is one way to establish that a product infringes under the doctrine of equivalents. *Warner-Jenkins Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40-41 (1997).

Despite not doing a doctrine of equivalents analysis and admitting that the accused dice meet the test for the doctrine of equivalence infringement, Hasbro maintained its non-infringement position. Bowling's counsel wrote Hasbro seeking its

[7] A product can infringe a patent either literally or under the doctrine of equivalents. *Warner-Jenkins*, 520 U.S. at 21.

Rule 11 bases for asserting affirmative defenses and counterclaims of non-infringement. (Ex. N.) Hasbro ignored that letter. Bowling again wrote Hasbro regarding its failure to state its Rule 11 bases and informed Hasbro that it would seek sanctions and fees under §285. (Ex. O.) Hasbro never claimed that it satisfied Rule 11 before it pled non-infringement. (Exs. P, Q.) Yet Hasbro forced Bowling to spend considerable resources dealing with this issue for years, until just before trial when Hasbro admitted infringement. (Dkt No. 201.)

Bowling respectfully requests its fees and costs associated with dealing with infringement issues after Hasbro's 30(b)(6) witness, Mr. Benson, admitted doctrine of equivalents infringement as Hasbro continued to contest infringement until days before trial. Bowling's fees associated with infringement issues after the 30(b)(6) deposition are $95,310.25. (*See* Leach Affidavit at ¶ 21.)

**6. Hasbro Asserted Willful Copyright Infringement Counterclaims Against Bowling for Copyrights It Did Not Own and Under Which It had No Right to Sue.**

After Bowling sued Hasbro, Hasbro asserted counterclaims of willful copyright infringement against Bowling (not his company) for selling figurines Hasbro alleged infringed some 21 different copyrights. Crystal Caste ceased selling the accused products immediately upon learning of Hasbro's claim. (Ex. I at 93:12-15.) Hasbro never sued the manufacturer of the figurines. (*Id.* 103:13-22.) Yet Hasbro maintained its claim against *Bowling* for years despite knowing that Crystal Caste sold the products and its profits were a mere $168 for the sale of 18 sets of the accused figurines. Hasbro also knew that Crystal Caste merely purchased and resold the figurines and had no hand in their design. (*Id.* at 102:5-10.) Hasbro, however, maintained that *Bowling's* copyright infringement

was willful and sought damages of $90,000. (*Id.* at 98:21-100:16; 111:23-112:3.) Bowling served a Rule 68 Offer of Judgment offering $2,300—more than the statutory minimum of damages—to try to resolve the issue.[8] Hasbro did not respond and made no counter offer. (Ex. R.)

Hasbro made no effort to prove its cases on copyright infringement, yet forced Bowling to defend against the claims right up until the eve of trial. To prove copyright infringement Hasbro would have to prove two elements: (1) ownership of the copyrights and (2) actionable copying. *Feist Publications Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). The asserted copyrights were not registered in Hasbro's name. Thus, Bowling served document requests on Hasbro seeking all licenses agreements concerning the asserted copyrights. Hasbro objected stating the information was not relevant and the request was overbroad:[9]

> **REQUEST NO. 82**: All license agreements concerning the copyrights Hasbro asserts against Bowling.
>
> **OBJECTION:** Hasbro objects to Request No. 82 to the extent that it seeks information not relevant to any claim or defense of any party to this action, and further on the grounds that it is overbroad and unduly burdensome.

Despite this document request, Hasbro improperly withheld license agreements in its possession concerning the asserted copyrights. Those licenses show that Hasbro did not own the copyrights and did not have standing to sue under them because Hasbro was

---

[8] As Crystal Caste was unaware of Hasbro's copyrights until Hasbro's counterclaims, and because it immediately stopped selling the accused products, it is likely that any statutory damage award would be reduced to $200 per infringement. *See* 17 U.S.C. § 504(c)(2). Thus, Hasbro's damages should be no more than $600.

[9] The Court will recall that during a hearing regarding Judicial Notice on March 4, 2008, Hasbro's counsel represented that Bowling never requested the licenses related to the asserted copyrights. However, Bowling's counsel quickly pointed out Bowling's request no. 82, which specifically requested those license agreements.

not an exclusive licensee. 17 U.S.C. § 501(b); *Latin Am. Music Co. v. Archdiocese*, 499 F.3d 32, 41-42 (1st Cir. 2007) (affirming that a non-exclusive licensee lacks standing to bring a copyright infringement claim). Had Hasbro produced these license agreements, Bowling could have moved for summary judgment and avoided needless discovery and trial preparation.

Hasbro also did not obtain the complete certified copyrights, but instead asked the Court to take judicial notice that the *partial* copyright registrations were authentic and that Hasbro had the right to sue under them. (Dkt. No. 171.) Hasbro attempted, through "judicial notice," to establish that it had the right to sue under the copyrights. The Court properly denied Hasbro's attempt to establish ownership and authenticity of the asserted copyrights through judicial notice.

Hasbro also never tried to prove copying. Because neither Bowling nor Crystal Caste had any hand in designing the figurines, and because Crystal Caste merely purchased the figurines from eM-4 Miniatures and resold them, Hasbro had to show that eM-4 copied the protected designs. To prevail, Hasbro must establish not simply that eM-4 copied some monster figures, but specifically that eM-4 copied Hasbro's *design*. *See Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 54 (2d Cir. 1936). Hasbro never took any discovery of eM-4 to determine whether they had access to the copyrighted material or whether they copied the protected designs.

Hasbro maintained its copyright action for years, driving up Bowling's litigation costs, until just before trial when it voluntarily dismissed the claim. (Dkt. No. 189.) Hasbro vexatiously and unnecessarily multiplied the proceedings against an individual litigant, over a mere $168 profit for Crystal Caste's sale 18 sets of figurines. *See Bolivar*

*v. Pocklington*, 975 F.2d 28, 33 (1st Cir. 1992) (affirming an award of sanctions under 28 U.S.C. §1927 for maintaining an action that unnecessarily multiplied the proceedings and increased the costs of litigation.)

Notwithstanding the above, Bowling is not seeking[10] $31,472.25,[11] in fees associated with defending Hasbro's counterclaims of copyright infringement. Bowling agreed not to do so in a stipulation to dismiss the copyright claim right before trial to avoid the expense and time in dealing with it at trial. (Dkt. No. 189).

**7. Hasbro Paid Mr. Lizarraga $10,000 so It Could Argue That Lizarraga Was a Co-inventor from Which Hasbro Purchased Patent Rights.**

After Hasbro's prior use defense failed, Hasbro sought out Mr. Lizarraga ("Lizarraga"), the drafts person Bowling hired to prepare formal drawings for Bowling's patent application. Hasbro's counsel suggested to Lizarraga that he might be a co-inventor, and paid him $10,000. (Ex. S at 76:4-77:3; 82:18-25.) However, in the nine years since Bowling paid Lizarraga for the formal drawings and the patent issued, Lizarraga never claimed to be a co-inventor. Yet Lizarraga assigned essentially a "quit claim" of his rights provided that Hasbro would indemnify him for any claims Bowling might bring against him. (*Id.* at 67:2-9.)

During Lizarraga's deposition it became clear that Hasbro—not Lizarraga—claimed he was a co-inventor:

Mr. Leach: And how did [money] come up? Did Mr. Techentin say Hasbro may be willing to pay you something?

---

[10] In order to minimize costs, Bowling agreed to Hasbro's last-minute dismissal of its copyright claim. The stipulation included a provision that Bowling would not seek fees for defending the copyright claim. (Dkt. No. 189.)

[11] (*See* Leach Affidavit at ¶ 21.)

Mr. Lizarraga: Just the fact that if it was found that I had any rights, that you know, if I was interested in—if it was defined that I had any rights, would I be willing to give them to Hasbro. That's kind of how [money] came up, and I am like, sure. But we would talk about it depending on the money and the conditions of the contract and all that. **I wanted to make sure that nothing defined that I was, that I was saying that I was the inventor.**

Mr. Leach: You wanted to make sure what?

Mr. Lizarraga: **I wanted to make sure that nothing defined that I was stating that I was part inventor.**

(*Id.* at 77:21-78:9 (emphasis added).)

Neither Hasbro nor Lizarraga could produce a single document that corroborated Hasbro's claim that Lizarraga was a co-inventor. The law requires corroboration, in the form of documents, to meet the clear and convincing standard to correct inventorship. *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1358 (Fed. Cir. 2004). Despite having no corroboration, Hasbro plowed ahead amending the pleadings, taking depositions, and filing its motion to correct inventorship. Bowling was forced to respond to the motion in its own summary judgment motion and conduct a multiple day hearing on inventorship. The Court held that Hasbro's claim that Lizarraga was a co-inventor was neither corroborated nor clear and convincing and granted Bowling's motion for summary judgment that Lizarraga was not a co-inventor (Dkt. No. 97.)

Bowling seeks its fees and costs associated with having to defend against Hasbro's inventorship claims. Bowling's fees and costs in connection with this work total $174,747.[12]

[12] (*See* Leach Affidavit at ¶ 21.)

### 8. After Losing Its Inventorship Argument On Summary Judgment Hasbro Continued To Press It, Forcing Bowling To Move In *Limine* To Exclude It.

After the Court granted summary judgment that Lizarraga was not a co-inventor, Hasbro renamed that argument calling it "derivation" in its pretrial brief and continued to assert it. (Dkt. No. 129 at 6.) Hasbro listed Lizarraga as one of its trial witnesses. (*Id.* at 14) Bowling was forced to file a motion in limine to exclude evidence of inventorship at trial. (Dkt. No. 136.) The Court granted Bowling's motion and questioned why Hasbro even raised it as it was already decided. (Ex. T at 22-27 (Mot. in Limine Hr. Tr., dated Apr. 4, 2008).)

Bowling seeks fees and costs in the amount of $ 2,985.50 associated with having to file and argue this motion in *limine*.[13]

### C. This Case Is Exceptional And Bowling Should Recover All Reasonable Fees Associated With Prosecuting The Lawsuit.

Because this is an exceptional case Bowling should be awarded all reasonable fees associated with prosecuting his suit against Hasbro. Hasbro succeed in making this case so expensive that any possible recovery would be dwarfed by the costs to obtain it. It would be unjust to have Bowling pay for his fee especially when they were so multiplied by Hasbro's conduct. Moreover, despite Hasbro's enormous effort on every possible issue, Bowling prevailed. Awarding attorneys' fees is appropriate here where it is grossly unjust that Bowling be left to bear the burden of his own attorney's fees caused by Hasbro's bad conduct. As such Bowling request all other attorney's fees associated with successfully prosecuting his case. (*See* Leach Affidavit at ¶ 22.)

---

[13] (*See* Leach Affidavit at ¶ 21.)

## III. CONCLUSION

Hasbro's conduct throughout this case has needlessly, vexatiously and unreasonably increased the cost to Bowling. Hasbro took a case that could have settled for $200,000 and spent at least five times that amount in legal fees ensuring that any recovery Bowling obtained would be less than his costs and fees required to obtain it – a pyrrhic victory. Bowling won nearly ever issue in this case, yet Hasbro assured that any recovery would pale in comparison to the price to obtain that recovery. Bowling respectfully seeks fees in the amount of $344,094.35 associated with Hasbro's litigation misconduct.[14] Bowling also seeks fees in preparing the present motion, memorandum in support thereof, exhibits, and affidavits. (*See* Leach Affidavit at ¶25.)

Michael Bowling,
By His Attorneys,

Date: April 10, 2008

/s/ Thomas J. Leach
Thomas J. Leach, MN (*pro hac vice*)
MERCHANT & GOULD, P.C.
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Phone: 612.332.5300
Fax: 612.332.9081

/s/ Craig M. Scott
Craig M. Scott, Esq. (#4237)
Christine K. Bush, Esq. (#5587)
DUFFY SWEENEY & SCOTT, LTD
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700
(401) 455-0701 (Facsimile)

[14] The $344,094.35 request does not include the fees associated with Hasbro's copyright claim.

**CERTIFICATE OF SERVICE**

TO:

Todd D. White, Esq.
Jeffrey K. Techentin, Esq.
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345

David K. S. Cornwell, Esq.
Tracey-Gene G. Durkin, Esq.
Sterne Kessler Goldstein & Fox P.L.L.C.
1100 New York Avenue N.W.
Washington, DC 20005

I hereby certify that the within Corrected Memorandum Of Law In Support Of Michael Bowling's Motion For Attorneys' Fees Under 35 U.S.C. §285, 28 U.S.C. 1927 And The Court's Inherent Equitable Powers was filed through the ECF system on the 10th day of April, 2008, and will be sent electronically to the above-named counsel who are registered participants identified on the Notice of Electronic Filing for Case No. 05-229S.

/s/ Craig M. Scott