IN THE UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MICHAEL BOWLING, a Resident of Arizona, | : | |
| Plaintiff, | : | C.A. No. 05-229S |
| v. | : | |
| HASBRO, INC., a Rhode Island Corporation, | : | |
| Defendant. | : | |

**PLAINTIFF'S REPLY TO DEFENDANT'S OBJECTION TO MOTION FOR ATTORNEYS' FEES UNDER 35 U.S.C. § 285, 28 U.S.C. § 1927 AND THE COURT'S INHERENT EQUITABLE POWER**

## I. INTRODUCTION

Hasbro, Inc. ("Hasbro") did not respond to the substance of Michael Bowling's Motion for Attorneys' Fees. Instead, Hasbro offers a diversion: the allegation that Mr. Bowling has "hidden the ball . . . ." (Objection at 2.) Notwithstanding the detailed allegations of litigation misconduct, Hasbro takes issue with Bowling's supporting affidavit. The Court should reject Hasbro's invitation to divert focus from Hasbro's litigation conduct. The events and occurrences in Bowling's Motion are well known to the parties, and to the Court. Plaintiff detailed the allegations and provided supporting materials in accordance with the Local Rules. An award of attorneys' fees is appropriate based on Hasbro's litigation misconduct and its decision to force Bowling through the expense of contentious litigation and a full trial.

## II. ARGUMENT

### A. Hasbro fails to address Bowling's numerous, detailed allegations of litigation misconduct.

Bowling's Motion sets forth a comprehensive and detailed discussion of specific instances of misconduct, which justify an award of attorneys' fees in this case. Hasbro declines to respond, citing only the "sheer number and scurrilous nature of the charges" leveled by Plaintiff. (Objection at 1-2.) The Court can review the record on the merits: the record of Hasbro's conduct is fully developed.

#### 1. Litigation misconduct poses a question separate from the sufficiency of the supporting fee documentation.

In basing the entirety of its briefing on Bowling's fee affidavit, Hasbro ignores its own litigation conduct that resulted in the unreasonable multiplication of the cost of these proceedings and the filing of this motion:

- Hasbro misled Bowling in presuit settlement discussions. Hasbro misrepresented its sales and its "typical practice" for calculating royalties in "comparable situations." (*See* Dkt 214-2 at Exs. A, C.) Hasbro's pattern of misrepresentation increased Bowling's attorneys' fees by forcing additional investigation of Hasbro's representations. *See Kloster Speedsteel AB v. Crucible Inc.*, 793 F.2d 1565, 1580 (Fed. Cir. 1986) ("[B]ad faith in pretrial and trial stages, by counsel or party, may render the case exceptional under § 285").

- Hasbro ignored its discovery obligations. Hasbro repeatedly declined to provide timely responses, complete responses, and proffered an unprepared Rule 30(b)(6) witness on infringement. (*See* Dkt. 214-2 at Exs. E, F, G, H, U, V, W, X.)

- Hasbro intentionally withheld the Eric Burke Declaration (Dkt. No. 84.) which contradicted the David Wheeler Declaration (Dkt. No. 81.) and arguments of counsel in the Memorandum of Law in Support of Emergency Motion for Leave to File Supplemental Materials (Dkt. No. 81.) (*See* Dkt. 214-2 at 6-8.)

- Minutes after an unopposed motion suspending the filing of pretrial motions was entered, Hasbro supplemented its interrogatory responses with dozens of

new prior art references and invalidity contentions. (*See* Dkt. 214-2 at Ex. L.) Hasbro misrepresented its intentions with regard to trial witnesses Bowling and Cook. (*See id.*, Ex. M.)

- Hasbro asserted baseless defenses and counterclaims, including its position on noninfringement (which Hasbro ultimately admitted). (*See* Dkt. 214-2 at 9-10.)

- Hasbro paid Mr. Lizarraga (a draftsperson employed by Mr. Bowling) $10,000 so Hasbro could argue that Mr. Lizarraga was a co-inventor, *even though Mr. Lizarraga himself did not believe he was a co-inventor.* (*See* Dkt. 214-2, Ex. S at 77:21-78:9.)

- Hasbro improperly attempted to rename and resurrect its "inventorship" argument as a new "derivation" argument, which required Plaintiffs to exclude the dismissed claims *in limine*. (*See* Dkt. 214-2, Ex. T at 22-27.)

Section 285, 28 U.SC. § 1927, and the Court's inherent power provide for an award of attorneys' fees in light of the litigation misconduct highlighted above. Hasbro could have settled this case in 1999 for $200,000. (*See* Dkt. 214-2, Ex. B at 2.) Hasbro chose instead to implement a costly, scorched earth litigation strategy ensuring that any recovery would be less than the costs to obtain it.

Hasbro's decision to force Bowling, an individual, to address, respond, and defend against these tactics should result in Hasbro having to reimburse Bowling. Hasbro pursued meritless avenues for relief, advanced theories lacking basis in law or fact, and refused to accept this Court's rulings on the merits. The cost of this litigation was needlessly multiplied by Hasbro's conduct. Litigation misconduct may suffice, in itself, to make a case exceptional under § 285, and to award attorneys' fees. *See*, *e.g.*, *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1034 (Fed. Cir. 2002). Similarly, the Court may award attorneys' fees under 28 U.S.C. § 1927 for the vexatious and unwarranted multiplication of legal proceedings. Under these provisions and the

Court's inherent power, the Court should grant Bowling attorneys' fees in the amount of $344,094.35.

**B. The Leach Affidavit complies with LR Cv 54.1. The Supplemental Leach Affidavit provides additional supporting documentation.**

The Local Rules set requirements for the timing and supporting papers to be submitted with a motion for attorneys' fees. LR Cv 54.1. Plaintiff attempted in good faith to comply with Local Rule Cv 54.1 after consultation with local counsel. The product of this effort is the Leach Affidavit. Hasbro's Objection is devoted to the Leach Affidavit. Accordingly, Bowling responds as follows and provides the Supplemental Leach Affidavit, which provides additional information for billing entry itemization.

**1. The Leach Affidavit provides an itemized statement of time expended by each attorney, together with a brief description of the services performed during each period of time itemized.**

Local Rule Cv 54.1(b)(1)(A) requires an itemized statement of all time expended by each attorney. The Leach Affidavit includes such a statement for each attorney, including tasks performed, hours identified by litigation misconduct, applicable billing rates, and a summary description of why services provided by each identified attorney were necessary. (*See* Dkt. 214-5 at ¶¶ 12-24.) The Leach Affidavit acknowledged that Bowling would provide detailed billing entries for *in camera* review. (*See id.* at ¶ 22.) Bowling now provides those entries (redacted) in the Supplemental Leach Affidavit. (*See generally* Supp. Leach Aff. ¶¶ 29.)

Hasbro's complaint regarding the Leach Affidavit is a diversion from its own misconduct. However, to the extent the Supplemental Leach Affidavit is useful to the Court in resolving Bowling's request for attorneys' fees, it has been provided.

**2. The Leach Affidavit provides a statement of the reasons why the identified legal services were reasonably necessary.**

The Leach Affidavit provides a description of the attorneys' fees and the reasons why the identified services were necessary. (*See* Dkt. 214-5 at ¶¶ 12-24.) In addition, Bowling's moving papers set forth the nature of the Hasbro misconduct which necessitated the identified legal services. (*See* Dkt. 214-2 at 4-15.) To the extent an additional statement is required, it is provided in the Supplemental Leach Affidavit. (*See generally* Supp. Leach Aff. ¶¶ 29.)

**3. The Leach Affidavit provides a statement of the hourly fee customarily charged by counsel in like cases.**

Hasbro's complaint that the Leach Affidavit fails to provide a statement of the hourly fee customarily charged by counsel in like cases is without merit. The Leach Affidavit provides comprehensive data regarding the hourly fees customarily charged by counsel in like cases based on AIPLA economic surveys. (*See* Dkt. 214-5 at ¶¶ 5-10.) *See also Mathis v. Spears*, 857 F.2d 749, 755-56 (Fed. Cir. 1988) (labeling as "fantas[y]" a challenge to the reasonableness of using APLA/AIPLA surveys to determine the reasonableness of rates).

The Leach Affidavit and the Supplemental Leach Affidavit further contain a statement for each time keeper with regard to his or her hourly rate charged in like cases. For example, for timekeeper Anthony Zeuli, a senior litigation partner at Merchant & Gould, the Leach Affidavit contains the following statement with regard to Mr. Zeuli's rate:

> 15. Anthony Zeuli is a senior litigation partner at Merchant & Gould. Mr. Zeuli's undergraduate degree is in physics and he is admitted to practice before the U.S. PTO. Mr. Zeuli's hourly rates for the years 2003 through 2008 were as follows: 2003 = $325,

> 2004 = $340, 2005 = $255, 2006 = $390, 2007 = $410 and 2008 = $430. His credentials and experience justify his rate, and according to the AIPLA surveys, his rate is reasonable in comparison to rates charged by similarly situated intellectual property attorneys.

(Dkt. 214-5 at ¶ 15.) Similar statements of hourly rates were included for each other timekeeper for whom reimbursement was sought. (*See* Dkt. 214-5 at ¶¶ 12-21.) The Leach Affidavit identifies "the hourly fee customarily charged by counsel in like cases," for each of the relevant years, and provides a comparison against competent survey information. *See id.* There is no basis for Hasbro's complaint as to hourly fee.

**4. The Leach Affidavit provides a statement a description of any fee agreement made with counsel's client regarding the case.**

Hasbro asserts that the Leach Affidavit is defective because it describes the fee agreement with Mr. Bowling as a "contingent fee agreement," and incorrectly attempts to import limitations from the Rhode Island Rules of Professional Conduct into the requirements of Local Rule Cv 54.1.[1] Hasbro fails to proffer a genuine dispute relating to contingent fee agreement (i.e., how the details of such an agreement might be relevant to Hasbro's litigation misconduct).

**5. The Leach Affidavit contains other pertinent factors, as identified by Rule 1.5 of the Rules of Professional Conduct promulgated by the Rhode Island Supreme Court.**

The Rhode Island Rules of Professional Conduct identify "other pertinent factors" considered in assessing the reasonableness of a fee:

---

[1] The Rhode Island Rules of Professional Conduct, like the rules of professional conduct in other states, require that "[a] contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated." *See* R.I. Rules of Prof. Conduct Rule 1.5(c). Local Rule Cv 54.1(b)(1)(D), however, requires only a "description of any fee agreement made with counsel's client regarding the case."

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

*See* R.I. Rules of Prof. Conduct Rule 1.5(a). Although Hasbro asserts that "no other data is included" in Bowling's supporting documentation, the Leach Affidavit provides credentials, educational background, and experience for the attorneys involved. (*See, e.g.*, Dkt. 214-5 at ¶ 15.) Moreover, in addition to providing fee information, the Leach Affidavit contains further discussion of the work actually performed. *See id.* Other factors, such as the complexity of patent litigation, the contingent nature of the fee agreement, and the success achieved by Plaintiff's counsel are further noted in the Leach Affidavit.

**B. The fact that Plaintiff's counsel represented Mr. Bowling on a contingent fee agreement is not relevant.**

Hasbro attempts to distinguish "fees billed" in this case from the contingent nature of the fee agreement. No such distinction is warranted. As with many other firms, Bowling's attorneys recorded their time for this matter no differently than if they had been paid hourly. Thus, the *actual time* worked by Bowling's attorneys may be used for

the lodestar calculation. The lodestar approach applies notwithstanding a contingent fee agreement between plaintiff and his attorney. *See Blanchard v. Bergeron*, 489 U.S. 87, 92-93 (1989); *see Codex Corp. v. Milgo Electronic Corp.*, 717 F.2d 622, 631-32 (1st Cir. 1983) (holding that the lodestar fee may be adjusted upward or downward to reflect the contingent nature of the engagement); *see also Fuhr v. School Dist. of City of Hazel Park*, 364 F.3d 753, 762 (6th Cir. 2004).

Notwithstanding Bowling's contingent fee agreement with his attorneys, his attorneys recorded their actual time worked in this case. (*See*, *e.g.*, Dkt. 214-5 at ¶ 24.)

### C. Hasbro's argument that the Leach Affidavit bears "several tell-tale signs of inaccuracy" is incorrect.

Hasbro's first claim of inaccuracy is a semantic attack: attorneys' fees "billed" by Bowling's counsel. As explained above, counsel's usual practice is to account for "billed" to a matter all time spent working on the matter. Hasbro's counsel likely has the same procedure for matters not traditionally "billable" (i.e., *pro bono*, lobbying, contingent, etc.) to the client on a monthly basis. Regardless, there is no legitimate dispute as to how Bowling's counsel kept track of time in this matter. Hasbro's second claim of inaccuracy is the lack of bills; this claim is addressed by the Supplemental Leach Affidavit, which identifies and itemizes fees billed in this case.

Hasbro's also claims that the Leach Affidavit is inaccurate or improper because it identified fees by full hours, rather than by tenths of an hour. As shown in the Supplemental Leach Affidavit, however, hours identified as "full hours" simply evidence the conservative practice of rounding *down* the total hours for each attorney. (*See* Supp. Leach Aff. at ¶ 30.)

**D. Bowling should receive all his attorneys' fees.**

Hasbro's final argument relates to the fact that Bowling's total fees exceed $1,000,000 in this litigation. (*See* Dkt. 214-5 at ¶ 24.)[2] Bowling's Motion calls attention to the fact that the parties have spent millions litigating a case where Hasbro *admitted infringement* and could have settled for $200,000. (*See* Dkt. 214-2, Ex. B at 2.) Instead, Hasbro offered $7,500. (*Id.*, Ex. C at 2.) Litigation misconduct may provide the basis for finding this case exceptional under § 285. *Rambus Inc. v. Infineon Techs. Ag*, 318 F.3d 1081, 1106 (Fed. Cir. 2003).

The amount of the award should bear relation to the extent of the misconduct. *Id.* In this case, Hasbro's misconduct began in 1999. Attorneys' fees are appropriate when "bottomed upon a finding of unfairness or bad faith in the conduct of the losing party, or some other equitable consideration of similar force, which makes it grossly unjust that the winner of the particular lawsuit be left to bear the burden of his own counsel fees." *Rohm & Haas v. Crystal Chem. Co.*, 736 F.2d 688, 691 (Fed. Cir. 1984) (emphasis omitted).

**E. Bowling's reliance on the AIPLA economic survey was proper and the AIPLA is now supplemented by the Prentiss Declaration.**

Local Rule Cv 54.1(b)(2) provides:

> *Unless otherwise permitted by the Court*, a motion for attorneys' fees also shall be accompanied by an affidavit regarding the reasonableness of the requested hourly fee from a disinterested attorney admitted to practice in Rhode Island who is experienced in handling similar cases and familiar with the usual and customary charges by attorneys in the community who have comparable experience in similar cases.

LR Cv 54.1. In the affidavit of Thomas J. Leach (Dkt. No. 214-5.) filed on April 7, 2008, Bowling referenced numerous attached AIPLA surveys and requested that, in light of the

[2] Hasbro has apparently declined to provide its own total fees billed in this litigation for comparison.

economic survey data provided, Bowling not be required to file an affidavit from a disinterested attorney. (Dkt. 214-5 at ¶ 11.) The AIPLA economic surveys are approved by the Federal Circuit in determining the reasonableness of rates. *See*, *e.g.*, *Mathis*, 857 F.2d at 755-56.

Hasbro does not challenge the hourly rates sought by Bowling. However, notwithstanding these facts, Bowling submits contemporaneously herewith in the Declaration of R. Daniel Prentiss, which opines that the rates charged by Bowling's counsel were reasonable. (*See* Prentiss Decl. at ¶ 8.)

## III. CONCLUSION

Hasbro's litigation misconduct unreasonably and vexatiously multiplied the cost of these proceedings beyond what Bowling could recover in a verdict. A case that Hasbro might have settled for $200,000 instead resulted in the expenditure of millions of dollars in legal fees. Bowling's victory, in that regard, is hollow – which appears to be Hasbro's past and present strategy in this case. Notwithstanding that fact that Bowling won nearly ever issue in this case, Hasbro drove the cost of victory far beyond Bowling's recovery. Bowling respectfully requests fees in the amount of $344,094.35 associated with Hasbro's litigation misconduct, as well as its fees in preparing the present motion, memorandum in support thereof, exhibits, and affidavits. (*See* Dkt. 214-5 at ¶25.)

Plaintiff,
Michael Bowling,
By his attorneys,

Date: April 21, 2008

s/Thomas J. Leach
Anthony R. Zeuli, *pro hac vice*
Thomas J. Leach, *pro hac vice*
MERCHANT & GOULD, P.C.
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(612) 332-5300
(612) 332-9081 (Facsimile)

s/Christine K. Bush
Craig M. Scott, Esq. (#4237)
Christine K. Bush, Esq. (#5587)
DUFFY SWEENEY & SCOTT, LTD
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700
(401) 455-0701 (Facsimile)

**CERTIFICATE OF SERVICE**

TO:

Todd D. White, Esq.
Jeffrey K. Techentin, Esq.
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345

David K. S. Cornwell, Esq.
Tracey-Gene G. Durkin, Esq.
Sterne Kessler Goldstein & Fox P.L.L.C.
1100 New York Avenue N.W.
Washington, DC 20005

I hereby certify that the within *Plaintiff's Reply to Defendant's Objection To Motion For Attorneys' Fees Under 35 U.S.C. § 285, 28 U.S.C. 1927 And The Court's Inherent Equitable Powers* was filed through the ECF system on the 21st day of April, 2008, and will be sent electronically to the above-named counsel who are registered participants identified on the Notice of Electronic Filing for Case No. 05-229S.

s/Christine K. Bush
Christine K. Bush

H:\Clients\Bowling\Pleadings\Reply In support of Motion for Attorneys Fees.DOC