# ATTACHMENT C

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/008,746 | 08/02/2007 | 5938197 | 12206.4USRX | 9909 |

23552 7590 03/26/2008

MERCHANT & GOULD PC JRD
P.O. BOX 2903
MINNEAPOLIS, MN 55402-0903

| EXAMINER | |
|---|---|
| | |
| ART UNIT | PAPER NUMBER |
| | |

DATE MAILED: 03/26/2008

Response: Apr 26, 2008 DJ

Please find below and/or attached an Office communication concerning this application or proceeding.

RECEIVED
MAR 3 1 2008
MERCHANT & GOULD
MINNEAPOLIS, MN 55402

PTO-90C (Rev. 10/03)

ATTACHMENT C

UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patents and Trademark Office
P.O.Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 NEW YORK AVENU, N.W.
WASHINGTON, DC 20005

Date: MAILED
MAR 26 2008
CENTRAL REEXAMINATION UNIT

**EX PARTE REEXAMINATION COMMUNICATION TRANSMITTAL FORM**

REEXAMINATION CONTROL NO. : 90008746
PATENT NO. : 5938197
ART UNIT : 3900

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified ex parte reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the ex parte reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

David K.S. Cornwell
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 NEW YORK AVENUE, N.W.
WASHINGTON, DC 20005

MAILED

MAR 26 2008

CENTRAL REEXAMINATION UNIT

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. 90/008,746.

PATENT NO. 5938197.

ART UNIT 3993.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

| **Office Action in Ex Parte Reexamination** | **Control No.** 90/008,746 | **Patent Under Reexamination** 5938197 | |
|---|---|---|---|
| | **Examiner** Sara S. Clarke | **Art Unit** 3993 | |

***-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --***

a☐ Responsive to the communication(s) filed on ____ . b☐ This action is made FINAL.
c☒ A statement under 37 CFR 1.530 has not been received from the patent owner.

A shortened statutory period for response to this action is set to expire ____ month(s) from the mailing date of this letter. Failure to respond within the period for response will result in termination of the proceeding and issuance of an *ex parte* reexamination certificate in accordance with this action. 37 CFR 1.550(d). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).** If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days will be considered timely.

Part I THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☒ Notice of References Cited by Examiner, PTO-892.
2. ☒ Information Disclosure Statement, PTO/SB/08.
3. ☐ Interview Summary, PTO-474.
4. ☐ ____.

Part II SUMMARY OF ACTION

1a. ☒ Claims *1-20* are subject to reexamination.

1b. ☐ Claims ____ are not subject to reexamination.

2. ☐ Claims ____ have been canceled in the present reexamination proceeding.

3. ☒ Claims *2-20* are patentable and/or confirmed.

4. ☒ Claims *1* are rejected.

5. ☐ Claims ____ are objected to.

6. ☐ The drawings, filed on ____ are acceptable.

7. ☐ The proposed drawing correction, filed on ____ has been (7a)☐ approved (7b)☐ disapproved.

8. ☐ Acknowledgment is made of the priority claim under 35 U.S.C. § 119(a)-(d) or (f).

   a)☐ All b)☐ Some* c)☐ None of the certified copies have

   1☐ been received.

   2☐ not been received.

   3☐ been filed in Application No. ____ .

   4☐ been filed in reexamination Control No. ____.

   5☐ been received by the International Bureau in PCT application No. ____.

   * See the attached detailed Office action for a list of the certified copies not received.

9. ☐ Since the proceeding appears to be in condition for issuance of an *ex parte* reexamination certificate except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte* Quayle, 1935 C.D. 11, 453 O.G. 213.

10. ☐ Other: ____

cc: Requester (if third party requester)

## DETAILED ACTION

### *Statutory Basis(es) for Claim Rejections*

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

### *Rejections Proposed in Reexamination Request*

**1.** At pp. 10-18 of the request filed August 2, 2007, the requester suggests that US Patent No. 4,497,487 to Crippen anticipates claims 1-6, 10-12, and 17-18 of the subject patent. The examiner disagrees.

**1A.** At pp. 11 and 16 of the request, the requester asserts that Figs. 3 and 4, "illustrate a planar two-dimensional flattened view of one embodiment of the die construction. *See* col. 2, lines 44-45 of Crippen." The requester also relies upon the lines drawn across the edges of the flattened die of one of the end caps to prove this assertion. See the bottom of p. 11 and the top of p. 17 of the request. At pp. 11 and 17, the requester also observes that the triangles of the extension member are equilateral. At pp. 12 and 17, the requester observes that the end caps are regular pentagons with facets that are isosceles triangles having two 54° angles and one 72° angle. Given that the area of a triangle is calculated as

(1) $A = \frac{1}{2} bh$,

where $A$=area, $b$=base length[1], and $h$=height of the facet from the base, and

(2) $h = \frac{1}{2} b \tan\Theta$, where Θ=the angle opposite $h$, then

(3) $A = \left(\frac{1}{2} b\right)^2 \tan\Theta$.




Since Θ=54° for the end caps' facets, and 60° for the facets of the extension, then it appears that the areas are

[1] $b$, or base length, is the length of the sides of the facets of the extension members. $b$ is also the length of the side of each edge of the end caps.

different for the end cap's facets and the extension's facets.

**1B.** However, the requester's calculations are based upon the premise that the end caps are flat. Looking at Figs. 5-8, it appears that the end facets of Figs. 3 and 4 are not flat. Firstly, compare the top left end cap of Fig. 3 to the facets with the same numbers in Fig. 5. In Fig. 5 these facets do not appear to be flat. Secondly, the dice of Crippen are described as "icosahedral" or 20-sided. See col. 2, line 6. If the end facets were flat, the dice would be only 12-sided. Finally, consider the use of the dice of Crippen, i.e., two 20-sided dice are used in a game of chance to pick numbers from 1 to 40. See col. 2, lines 5-13. If the end caps were flat, how could one determine which facet of the end cap is uppermost and is thus the result of a throw? Taking into account these considerations, one of ordinary skill in the art would not come to the conclusion that the end caps of Crippen, as shown in Figs. 3 and 4, are flat.

**1C.** Instead, the end caps are pyramids having a regular pentagon for a base. If $c$ is the height of the line from the regular pentagon's base to the apex of the pyramid, and $h'$ is the height of the pyramid's facets, then

(4) $h' = \sqrt{c^2 + h^2}$ (Pythagorean Theorem), and thus the area of the facet is

(5) $A = \frac{1}{2}bh'$, or $A = \frac{1}{2}b\sqrt{c^2 + h^2}$.




The figure above represents one facet of an end cap pyramid. This facet shares an edge $b$ with an edge of the regular pentagon base. $h'$ is the height of the facet of an end cap pyramid from base b to the apex. $h$ is the same as $h$ in the figure at p. 1 above, wherein $h$ is the height of one triangle of the regular pentagon base.

**1D.** "The express, implicit, and inherent disclosures of a prior art reference may be relied upon in the rejection of claims under 35 U.S.C. 102 or 103." MPEP § 2112. In this case, Crippen does not expressly disclose that the surface areas of the extension member facets are different from the surface areas of the end caps' facets. Moreover, considering the use of the dice of Crippen, i.e., two 20-sided dice are used in a game of chance to pick numbers from 1 to 40, the implication of Crippen's specification is that the disclosed dice are regular icosahedra, i.e., icosahedra with twenty equilateral

triangles as faces, so that the chances of landing on any one side are equal. Thus, Crippen does not imply that the surface areas of the extension member facets are different from the surface areas of the end caps' facets. Finally, since there is an infinite set of possible heights *c* for the end cap pyramids, it is likely that the areas are different for the end cap's facets and the extension's facets. "Inherency, however, may not be established by probabilities or possibilities. The mere fact that a certain thing may result from a given set of circumstances is not sufficient." In re Robertson, 169 F.3d 743, 745, 49 USPQ2d 1949, 1950-51 (Fed. Cir. 1999), quoting Continental Can Co. v. Monsanto Co., 948 F.2d 1264, 1269, 20 USPQ2d 1746, 1749 (Fed.Cir. 1991), quoting In re Oelrich, 666 F.2d 578, 581, 212 USPQ 323, 326 (CCPA 1981). Thus, while it is likely that the areas are different for the end cap's facets and the extension's facets, since it does not necessarily follow from Crippen's disclosure, Crippen does not inherently disclose different surface areas. Accordingly, Crippen does not anticipate claims 1 and 17 and the claims that depend thereon (the remaining claims).

**2.** At pages 18-24 of the request, the requester suggests that Beudant ("Traité Elémentaire de Minéralogie") anticipates claims 1-7 and 17-19 of the subject patent. The examiner disagrees.




**2A.** It cannot be assumed that all of the facets marked with "*l*", in Fig. 30[2] of this reference, are congruent. Looking at Figs. 1 and 2, while the three visible facets are marked with the same letter, these facets clearly are not of the same size and shape. Moreover, since Fig. 30 does not include dashed lines to show non-visible features, it cannot be assumed that the non-visible facets are the same as the visible facets. Therefore, based upon the information of record, it cannot be concluded that (a) the facets of the extension member are equal in surface area, as is required in claims 1 and 17, (b) the facets of the end caps are identically shaped, as is required in claim 1.

**2B.** Moreover, with respect to claim 17, this claim requires, "each of said extension member facets having indicia thereon indicating a number." Looking at Beudant, it is clear that this labeling occurs merely in the drawings so that angles or facets may be

easily referenced. The labeling in the drawings does not represent that the actual 3-dimensional crystal portrayed includes any printed indicia thereon. As such, this reference fails to show the required structure including the indicia. An analogy follows: consider patent drawings with reference characters. Reference characters, which indicate a surface, are drawn on the surface. This does not mean that the object, which is depicted with a reference character indicating a surface, actually includes this reference character on the surface.

**3.** At pages 18-24 of the request, the requester suggests that Comte de Bournon ("Traité Complet de la Chaux Carbonatée et de L'Arragonite") anticipates claims 1-7 and 17-19 of the subject patent. The examiner disagrees for the same reasons given at items 2A and 2B above with respect to Beudant.

**4.** At pp. 31-45 of the request, the requester suggests that claims 1-20 of the subject patent are obvious over Beudant ("Traité Elémentaire de Minéralogie") or Comte de Bournon ("Traité Complet de la Chaux Carbonatée et de L'Arragonite") taken with conventional knowledge in the dice art. The examiner disagrees.

**4A.** More specifically, at p. 32 of the request, the requests states, "While the Beudant publication and the Comte de Bournon publication both disclose crystals, each of the discrete facets of each crystal has printed indicia thereon such that it would have been obvious to one of ordinary skill in the art at the time the invention was made that the crystals may each act as a die." However, see item 2B above.

**4B.** On its face, crystals and the dice art do not appear to be analogous. However, at p. 32 of the request, the requester suggests, "Furthermore, it is well known and conventional to those of ordinary skill in the dice art that dice for use in generating a variety of randomized outcomes may be formed of polyhedral figures known initially, and primarily, in the crystallographic and mineralogical areas." To support this conclusion, the requester provides examples of traditional shapes of dice, which are also well known crystallographic figures. See p. 33 of the request. Other than the requester's suggestion, the examiner can find no evidence in the record that suggests that it was well known in the dice art to use naturally occurring crystals as dice. The

---

[2] Fig. 30 of Beudant is shown most clearly at p. 7 of the request.

examiner notes that the paper abstract “Late Roman Gemstone Dice: Tools for Divination” by Genevra Kornbluth, provided in the information disclosure statement dated December 2007 and on the page labeled “HA008835,” and the book “Games, Gods and Gambling” by F. N. David[3], teach that the ancient Greeks and Romans used dice made of crystals. However, neither of these references specifies whether or not the geometric forms of the crystals used for gaming were cut or naturally occurring. Finally, it is unclear, based upon the record, whether or not there is any functional overlap between naturally occurring crystals and dice. See MPEP § 2141.01(a). Thus, on balance, the evidence of record does not support the conclusion that naturally occurring crystals logically would have commended themselves to the inventor's attention in considering his invention as a whole. Accordingly, the evidence of record does not support a prima facie case of obviousness.

**5.** At pages 24-26 of the request, the requester suggests that Dana anticipates claims 1-3 of the subject patent. The examiner agrees that claim 1 is anticipated, but not claims 2 and 3.




**Claim 1** is rejected under 35 U.S.C. 102(b) as being anticipated by Dana (“Descriptive Mineralogy”).

**5A.** Dana discloses the invention as claimed including a body having first and second, opposite end caps and an extension member therebetween; said extension member has a first number of discrete facets, which are identically shaped and have equal surface areas and has a first number (6) of facets *w*; said first and second end caps each has a second number (3) of discrete facets, which are identically shaped and have equal surface areas; said second number (3) is half of said first number (6); and finally, the surface area of the discrete facets of the end caps being different than the surface area of the facets of the extension member. See Fig. 5 at p. 651. The dashed lines in this figure show the non-visible facets of the object.

**5B.** With respect to claims 2 and 3, claim 2 requires, “each of said extension member discrete facets include printed indicia thereon.” Fig. 5 at p. 651 shows the labels "*w*" on

[3] David, F. N. Games, Gods and Gambling. N.Y., Hafner Publishing Co., 1962. pp. 11 and 12. [retrieved online 3/17/2008 from <http://hdl.handle.net/1880/41346>].

the extension member facets. However, looking at this reference, it is quite clear that this labeling occurs merely in the drawings so that angles or facets may be easily referenced in the text. The labeling in the drawings does not represent that the actual 3-dimensional crystal portrayed includes any printed indicia thereon. As such, this reference fails to show the structure that is required in claim 1 of the subject patent with printed indicia on the facets, as required in claim 2.

**6.** At pages 26-31 of the request, the requester suggests that Mercer ("Crystals") anticipates claims 1-7 and 17-19 of the subject patent. At pages 45-47 of the request, the requester suggests claims 8, 9, and 16 are obvious in view of Mercer. The examiner disagrees.

**6A.** As discussed at items 20-23 of the order granting reexamination, the examiner said that Mercer does not raise a SNQ because the picture quality of the copies of Mercer was poor to the extent that the examiner could not discern the separate facets, which the requester alleges were shown.

**6B.** In the copy of this reference provided by the owner in the IDS filed December 31, 2007, a crystal is shown having an extension member and end caps. The facets of the extension member are clearly larger than those of at least the upper end cap. Moreover, one of the extension member facets includes indicia thereon. However, not enough detail is shown to discern (a) whether or not the extension member facets are identically shaped and sized, as required in claim 1; (b) whether or not the extension member facets are equal in surface area and triangular-shaped, as required in claim 17; and (c) how many facets the ends caps have relative to the extension member (see claims 1 and 17). Thus, since it is unclear whether or not Mercer shows the features of the independent claims, this reference does not anticipate claims 1-7 and 17-19.

**6C.** With respect to the suggested obviousness rejection, the "conventional knowledge in the dice art" alleged by the requester does not cure the deficiencies of Mercer listed at item 6B above.

***Statement of Reasons for Patentability and/or Confirmation***

The following is an examiner's statement of reasons for patentability and/or confirmation of the claims found patentable in this reexamination proceeding:

**7.** The prior art of record does not disclose, singly or in combination, the

combination of elements of **claim 2 and the claims that depend thereon (claims 3-15)** including the structure of claim 1 and the indicia of claim 2. The prior art of record does not disclose, singly or in combination, the combination of elements of **claim 17 and the claims that depend thereon (claims 18-20)** including the recited structure and the indicia. While the photos labeled "crystal models from the Comte de Bournon collection, c. 1810", especially the page labeled "HA008850" appears to show crystals which may have the structure of claims 1 and 17, including indicia, this reference is deficient because it is unclear whether it is a prior art printed publication under any of the appropriate sections of 35 U.S.C. 102. See MPEP § 2258(I). Moreover, since these photos only show one side of the models, it is unclear whether or not (a) the facets of the extension member are equal in surface area, as is required in claims 1 and 17, (b) the facets of the end caps are identically shaped, as is required in claim 1.

**8.** The prior art of record does not disclose, singly or in combination, the combination of elements of **claim 16** including the specific ratio recited in this claim.

Any comments considered necessary by PATENT OWNER regarding the above statement must be submitted promptly to avoid processing delays. Such submission by the patent owner should be labeled: "Comments on Statement of Reasons for Patentability and/or Confirmation" and will be placed in the reexamination file.

***Conclusion***

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. 305 requires that ex parte reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)). Extensions of time in ex parte reexamination proceedings are provided for in 37 CFR 1.550(c).

The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving Patent No. 5,938,197 throughout the course of this reexamination proceeding. The third party requester is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286.

Any paper filed with the Office, *i.e.*, any submission made, by either the patent owner or the third party requester **must** be served on every other party in the reexamination proceeding in the manner provided by § **1.248**. The document must reflect service or the document may be refused consideration by the Office. See 37 CFR 1.550(f).

The patent owner is notified that any proposed amendment to the specification and/or claims in this reexamination proceeding MUST (a) comply with 37 CFR 1.530(d)-(j), 37 CFR 1.52(a) and (b), and (b) contain any fees required by 37 CFR 1.20(c).

**Amendment practice under 37 CFR 1.530(d)-(j) differs from that under 37 CFR 1.121.** In order to prevent any delays in the processing of this proceeding, please make all amendments to the claims as per the following:

Whenever there is an amendment to the claims, there must also be supplied, on pages separate from the pages containing the changes, (a) the status (i.e., pending or canceled), as of the date of the amendment, of all patent claims and of all added claims, and (b) an explanation of the support in the disclosure of the patent for the changes to the claims made by the amendment paper.

Whenever there is an amendment to the claims, the following status identifiers should be used: "(Original)" and "(Amended)," as appropriate. While it is not necessary, for new claims, the status identifier "(New)" may be used. Additions are shown by underlining and [deletions] are shown with single, square brackets. For new claims, the entire text of the proposed new claim must be underlined throughout, including the claim number and the status identifier, if used. It is preferable that cancelled claims be presented as follows: "Claims 1-5 (Cancelled)" within the listing of claims. The text of the cancelled claim surrounded by brackets should not be presented. Regarding claims depending from a canceled claim, see MPEP § 2260.01.

**All changes must be shown relative to the patent under reexamination.** For any subsequent amendments, additions and deletions must be shown relative to the issued patent, NOT relative to any previous amendment. These additions and deletions should be presented in the manner set forth in the paragraph above.

***Contact Information***

**All** correspondence relating to this *ex parte* reexamination proceeding should be directed as follows:

By **U.S. Postal Service Mail**: Mail Stop *Ex Parte* Reexam
Attn: Central Reexamination Unit
Commissioner for Patents
P. O. Box 1450
Alexandria, VA 22313-1450

By FAX: (571) 273-9900
Central Reexamination Unit

By hand: Customer Service Window
Attn: Central Reexamination Unit
Randolph Building, Lobby Level
401 Dulany Street
Alexandria, VA 22314

Any inquiry concerning this communication or earlier communications from the Reexamination Legal Advisor or Examiner, or as to the status of this proceeding, should be directed to the Central Reexamination Unit at telephone number (571) 272-7705.

Signed:
Sara Clarke

Sara Clarke
Primary Examiner
Central Reexamination Unit
(571) 272-4873

***NOTICE RE PATENT OWNER'S CORRESPONDENCE ADDRESS***

Effective May 16, 2007, 37 CFR 1.33(c) has been revised to provide that:

The patent owner's correspondence address for all communications in an *ex parte* reexamination or an *inter partes* reexamination is designated as the correspondence address of the patent.

Revisions and Technical Corrections Affecting Requirements for Ex Parte and Inter Partes Reexamination, 72 FR 18892 (April 16, 2007)(Final Rule)

The correspondence address for any pending reexamination proceeding not having the same correspondence address as that of the patent is, by way of this revision to 37 CFR 1.33(c), automatically changed to that of the patent file as of the effective date.

This change is effective for any reexamination proceeding which is pending before the Office as of May 16, 2007, including the present reexamination proceeding, and to any reexamination proceeding which is filed after that date.

Parties are to take this change into account when filing papers, and direct communications accordingly.

In the event the patent owner's correspondence address listed in the papers (record) for the present proceeding is different from the correspondence address of the patent, it is strongly encouraged that the patent owner affirmatively file a Notification of Change of Correspondence Address in the reexamination proceeding and/or the patent (depending on which address patent owner desires), to conform the address of the proceeding with that of the patent and to clarify the record as to which address should be used for correspondence.

Telephone Numbers for reexamination inquiries:

| | |
|---|---|
| Reexamination and Amendment Practice | (571) 272-7703 |
| Central Reexam Unit (CRU) | (571) 272-7705 |
| Reexamination Facsimile Transmission No. | (571) 273-9900 |

Date Mailed: December 28, 2007

Sheet 1 of 5

| FORM 1449* INFORMATION DISCLOSURE STATEMENT IN AN APPLICATION (Use several sheets if necessary) | Docket Number: 12206.0004USRX | Control Number: 90/008,746 |
|---|---|---|
| | Applicant: Bowling | |
| | Filing Date: August 2, 2007 | Group Art Unit: 3993 |

**U.S. PATENT DOCUMENTS**

| EXAMINER INITIAL | DOCUMENT NO. | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|
| | 1,271,551 | 01/09/1918 | Ebner et al. | | | |
| | 1,517,113 | 11/25/1924 | Greene | | | |
| | 1,539,015 | 05/26/1925 | Mitchell | | | |
| | 1,555,447 | 09/1925 | Bernstein | | | |
| | 1,795,562 | 03/10/1931 | King et al. | | | |
| | 3,208,754 | 09/1965 | Sieve | | | |
| | D232,652 | 03/1931 | King et al. | | | |
| | 3,608,905 | 09/28/1971 | Edison | | | |
| | 3,904,208 | 09/09/1975 | Grossman | | | |
| | 4,055,348 | 10/1977 | Marzoni, Jr. | | | |
| | 4,239,226 | 12/16/1980 | Palmer | | | |
| | 4,346,900 | 08/31/1982 | Lamlee | | | |
| | D,267,569 | 01/11/1983 | Polite | | | |
| | 4,489,946 | 12/25/1984 | Burgos | | | |
| | 4,497,487 | 02/1985 | Crippen | | | |
| | 4,678,190 | 07/1987 | Dery | | | |
| | D323,684 | 02/04/1992 | Thompson | | | |
| | 4,566,697 | 01/28/1986 | Vickers | | | |
| | 4,717,154 | 01/05/1988 | Miller | | | |
| | D304,208 | 10/1989 | Loftus | | | |
| | 4,900,034 | 02/13/1990 | Bereuter | | | |
| | 5,150,900 | 09/29/1992 | Onzo | | | |
| | 5,203,562 | 04/20/1993 | Smith | | | |
| | 5,224,708 | 07/06/1993 | Gathman et al. | | | |
| | 5,375,845 | 12/1994 | Cooter et al. | | | |
| | 5,511,782 | 04/1996 | Maley | | | |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /SC/

| EXAMINER /Sara Clarke/ | DATE CONSIDERED 03/15/2008 |
|---|---|

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; draw line through citation if not in conformance and not considered. Include copy of this form for next communication to the Applicant.

Date Mailed: December 28, 2007

Sheet 2 of 5

| | | |
|---|---|---|
| FORM 1449* INFORMATION DISCLOSURE STATEMENT | Docket Number: 12206.0004USRX | Control Number: 90/008,746 |
| IN AN APPLICATION | Applicant: Bowling | |
| (Use several sheets if necessary) | Filing Date: August 2, 2007 | Group Art Unit: 3993 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | D383,799 | 09/1997 | Beaumier et al. | | | |
| | 5,690,331 | 11/1997 | Sides | | | |
| | D389,874 | 01/1998 | Kazangian | | | |
| | 5,839,725 | 11/1998 | Conway | | | |
| | D402,226 | 12/1998 | Wolf | | | |
| | 5,938,197 | 08/17/1999 | Bowling | | | |
| | 6,123,332 | 09/26/2000 | Bowling | | | |
| | D436,635 | 01/2001 | Bowling | | | |
| | 6,318,720 | 11/2001 | Bowling | | | |
| | D455,462 | 04/2002 | Bowling | | | |
| | D517,612 | 03/2006 | Bowling | | | |

**FOREIGN PATENT DOCUMENTS**

| | DOCUMENT NO. | DATE | COUNTRY | CLASS | SUBCLASS | TRANSLATION | |
|---|---|---|---|---|---|---|---|
| | | | | | | ~~YES~~ | ~~NO~~ |
| | ~~EP 0 928 624 A1~~ | ~~07/14/1999~~ | ~~EP~~ | | | | |
| | ~~FR 972 622~~ | ~~02/1951~~ | ~~France~~ | | | | |
| | ~~FR2 383 685~~ | ~~03/1977~~ | ~~France~~ | | | | |
| | ~~DE 698 21 901~~ | ~~07/1999~~ | ~~Germany~~ | | | | |

**OTHER DOCUMENTS** (Including Author, Title, Date, Pertinent Pages, Etc.)

| | | |
|---|---|---|
| | | Complaint, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S with Exhibit A, filed May 24, 2005 |
| | | Answer and Counterclaim, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S with Exhibits A-D, filed August 5, 2005 |
| | | Plaintiff's Answer to Counterclaim, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S, filed August 29, 2005 |
| | | Amended Answer and Counterclaim, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S, filed May 26, 2006 |
| | | Plaintiff's Answer to Amended Counterclaim, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S, filed June 12, 2006 |
| | | Hasbro's Objections and Responses to Plaintiff's First Set of Interrogatories, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S, served November 28, 2005 |
| | | Hasbro's Amended Objections and Responses to Plaintiff's First Set of Interrogatories, Interrogatory No. 1, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S, served May 5, 2006 |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /SC/ foreign refs not provided /SC/

| | |
|---|---|
| EXAMINER /Sara Clarke/ | DATE CONSIDERED 03/15/2008 |

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; draw line through citation if not in conformance and not considered. Include copy of this form for next communication to the Applicant.

*Substitute Disclosure Statement Form (PTO-1449) Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

Date Mailed: December 28, 2007

Sheet 3 of 5

| | | |
|---|---|---|
| FORM 1449* INFORMATION DISCLOSURE STATEMENT | Docket Number: 12206.0004USRX | Control Number: 90/008,746 |
| IN AN APPLICATION | Applicant: Bowling | |
| (Use several sheets if necessary) | Filing Date: August 2, 2007 | Group Art Unit: 3993 |

| | | |
|---|---|---|
| | | Hasbro's Second Amended Objections and Responses to Plaintiff's First Set of Interrogatories, Interrogatory No. 1, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S, served June 26, 2007 |
| | | Plaintiff's Opening Claim Construction Brief, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S with Exhibits A-I, filed June 6, 2006 |
| | | Defendant's Claim Construction Brief, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S with Exhibits A-I, filed June 20, 2006 |
| | | Plaintiff's Reply to Hasbro's Claim Construction Brief, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S with Exhibits J-K, filed June 30, 2006 |
| | | Memorandum of Law in Support of Motion to Correct Inventorship, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S with Exhibits A-F, filed May 31, 2006 |
| | | Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment and Objection to Defendant's Motion to Correct Inventorship, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S, filed June 19, 2006 |
| | | Statement of Undisputed Facts in Support of Plaintiff's Motion for Summary Judgment Motion, Michael Bowling. v. Hasbro, Inc., Civil Action No. 05-229-S with Exhibits A-N, filed June 19, 2006 |
| | | Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S with Exhibits A-H, filed July 10, 2006 |
| | | Statement of Disputed and Undisputed Facts in Opposition to Plaintiff's Motion for Summary Judgment, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S with Exhibits A-J, filed July 10, 2006 |
| | | Plaintiff's Reply to Defendant's Objection to Plaintiff's Motion for Summary Judgment, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S, filed July 27, 2006 |
| | | Opinion and Order, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S, dated May 30, 2007 |
| | | ~~Expert Witness Report of Kevin B. Cook with Amended Attachment A, Michael Bowling v. Hasbro, Inc., Civil~~ Action No. 05-229-S, served February 22, 2006 |
| | | Deposition Transcript of Albert Lizarraga dated March 17, 2006, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S |
| | | Deposition Transcript of Susan Lizarraga dated March 17, 2006, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S |
| | | Deposition Transcript of Julie Daulton dated April 11, 2006, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S |
| | | Deposition Transcript of Kevin Cook dated May 22, 2006, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S |
| | | Deposition Transcript of Kevin Cook dated September 5, 2006, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S |
| | | Deposition Transcript of Kurt Benson dated January 17, 2006, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S |
| | | Hearing Transcript Volume I and II dated October 26-27, 2006, Michael Bowling v. Hasbro, Inc., Civil Action |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /SC/ Kevin Cook Expert Wit. Report not provided. /SC/

| | |
|---|---|
| EXAMINER /Sara Clarke/ | DATE CONSIDERED 03/17/2008 |
| EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; draw line through citation if not in conformance and not considered. Include copy of this form for next communication to the Applicant. | |

*Substitute Disclosure Statement Form (PTO-1449)

Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

Date Mailed: December 28, 2007

Sheet 4 of 5

| FORM 1449* INFORMATION DISCLOSURE STATEMENT IN AN APPLICATION (Use several sheets if necessary) | Docket Number: 12206.0004USRX | Control Number: 90/008,746 |
|---|---|---|
| | Applicant: Bowling | |
| | Filing Date: August 2, 2007 | Group Art Unit: 3993 |

| | | |
|---|---|---|
| | | No. 05-229-S |
| /SC/ | | Kevin Cook's (D12) Twelve Sided Dice, pages from www.dicecollector.com, produced as HA000642-645 in Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S |
| /SC/ | | Photo of die produced as HA008804 in Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S |
| /SC/ | | Photo of die produced as HA008806 in Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S |
| /SC/ | | Photo of die produced as HA008807 in Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S |
| /SC/ | | Photo of die produced as HA008809 in Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S |
| /SC/ | | Photo of die produced as HA008810 in Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S |
| /SC/ | | Photo of die produced as HA008811 in Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S |
| /SC/ | | "A Complete List of Fair Dice," by Edward Taylor Pegg, Junior, produced as HA008404-8443 in Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S |
| | | ~~"Elements of Crystallography," by Fredrick Accum, produced as HA008803-8804 in Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S~~ |
| /SC/ | | "Le Cours Elementaire," produced as HA008805-8807 in Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S |
| /SC/ | | "An Elementary Introduction to Mineralogy," by William Phillips, produced as HA00808-8811 in Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S |
| /SC/ | | "Chaux Carbonatee," produced as HA008815-8816 in Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S |
| /SC/ | | "A Text-Book of Mineralogy," by Edward S. Dana, produced as HA008817-8821 in Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S |
| /SC/ | | "The System of Mineralogy," by James D. Dana, produced as HA008822-8828 in Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S |
| /SC/ | | "Physikalische Krystallographie," produced as HA008829-8831 in Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S |
| /SC/ | | "The 97th Annual Meeting of the Archaeological Institute of America," produced as HA008832-8835 in Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S |
| /SC/ | | "Geometrische Krystallographe," produced as HA008836-8837 in Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S |
| /SC/ | | "Conversations of Mineralogy," by Delvalle Lowry, produced as HA00883-88839 in Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S |
| /SC/ | | "Crystals," produced as HA008840-8843 |
| /SC/ | | "Grundzuge der Krystallographie," produced as HA8844-8845 in Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S |

"Elements of Crystallography" by Accum not provided.

| EXAMINER /Sara Clarke/ | DATE CONSIDERED 03/17/2008 |
|---|---|
| EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; draw line through citation if not in conformance and not considered. Include copy of this form for next communication to the Applicant. | |

Date Mailed: December 28, 2007

Sheet 5 of 5

| | | |
|---|---|---|
| FORM 1449* INFORMATION DISCLOSURE STATEMENT IN AN APPLICATION (Use several sheets if necessary) | Docket Number: 12206.0004USRX | Control Number: 90/008,746 |
| | Applicant: Bowling | |
| | Filing Date: August 2, 2007 | Group Art Unit: 3993 |

| | | |
|---|---|---|
| /SC/ | | "Hints for Crystal Drawing," by Margaret Reeks, produced as HA00846-8847 in Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S |
| | | ~~"Elements of Crystallography," by George H. Williams, produced as HA008848-8849 in Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S~~ |
| /SC/ | | Crystal Models from the Comte de Bournon Collection, c. 1810, produced as HA008850-8856 in Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S |
| /SC/ | | Printouts of webpages of www.dice.collector.com depicting collection of dice, printed on December 28, 2007, pp. 1-414. |
| /SC/ | | Deposition of Michael Bowling, dated January 16, 2006, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S |

**23552**
PATENT TRADEMARK OFFICE

/SC/

"Elements of Crystallography" by Williams illegible. /SC/

| | |
|---|---|
| EXAMINER /Sara Clarke/ | DATE CONSIDERED 03/17/2008 |
| EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; draw line through citation if not in conformance and not considered. Include copy of this form for next communication to the Applicant. | |

Date Mailed: January 7, 2008

Sheet 1 of 3

| FORM 1449* AMENDED INFORMATION DISCLOSURE STATEMENT IN AN APPLICATION (Use several sheets if necessary) | Docket Number: 12206.0004USRX | Control No. 90/008,746 |
|---|---|---|
| | Applicant: Bowling | |
| | Filing Date: August 2, 2007 | Group Art Unit: 3993 |

**U.S. PATENT DOCUMENTS**

| EXAMINER INITIAL | DOCUMENT NO. | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|
| 03/17/2008 | 4,497,487 | 02/05/85 | Crippen | | | |

**FOREIGN PATENT DOCUMENTS**

| | DOCUMENT NO. | DATE | COUNTRY | CLASS | SUBCLASS | TRANSLATION YES | TRANSLATION NO |
|---|---|---|---|---|---|---|---|
| /SC/ | File History for EP 0 928 624 | | EP | | | | |

**OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, Etc.)**

| | | |
|---|---|---|
| /SC/ | | Hasbro's Objections and Responses to Plaintiff's First Set of Requests for Admission to Hasbro, Inc., Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S, served January 9, 2006 |
| /SC/ | | Hasbro's Objections and Responses to Plaintiff's Third Set of Interrogatories, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S, served January 9, 2006 |
| /SC/ | | Hasbro's Amended Objections and Response to Plaintiff's First Set of Interrogatories, Interrogatory No. 4, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S, served February 17, 2006 |
| /SC/ | | Hasbro's Amended Objections and Response to Plaintiff's First Set of Interrogatories, Interrogatory No. 2, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S, served February 22, 2006 |
| /SC/ | | Hasbro's Amended Objections and Response to Plaintiff's Third Set of Requests for Admission, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S, served March 9, 2006 |
| /SC/ | | Hasbro's Motion for Leave to Amend Affirmative Defenses and Counterclaim, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S, filed March 27, 2006 |
| /SC/ | | Hasbro's Memorandum of Law in Support of Motion for Leave to Amend Affirmative Defenses and Counterclaim with Exhibits A-F, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S, filed March 27, 2006 |
| /SC/ | | Memorandum of Law in Support of Plaintiff's Objection to Hasbro's Motion for Leave to Amend Affirmative Defenses and Counterclaims, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S, filed April 13, 2006 |
| /SC/ | | Declaration of Michael Bowling in Support of Bowling's Memorandum in Opposition to Hasbro's Motion for Leave to Amend Affirmative Defense and Counterclaims, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S, filed April 13, 2006 |
| /SC/ | | Hasbro's Reply Memorandum of Law in Support of Motion for Leave to Amend Affirmative Defenses and Counterclaim with Exhibits A-E, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S, filed April 28, 2006 |
| /SC/ | | Declaration of Jeffrey K. Techentin in Support of Motion to Amend Affirmative Defenses and Counterclaims with Exhibits A-B, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S, filed April 28, 2006 |
| /SC/ | | Memorandum and Order, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S, dated May 12, 2006 |

| EXAMINER /Sara Clarke/ | DATE CONSIDERED 03/17/2008 |
|---|---|

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; draw line through citation if not in conformance and not considered. Include copy of this form for next communication to the Applicant.

*Substitute Disclosure Statement Form (PTO-1449)

Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

Date Mailed: January 7, 2008

Sheet 2 of 3

| | | |
|---|---|---|
| FORM 1449*<br>AMENDED INFORMATION DISCLOSURE STATEMENT<br><br>IN AN APPLICATION<br><br>(Use several sheets if necessary) | Docket Number: 12206.0004USRX | Control No. 90/008,746 |
| | Applicant: Bowling | |
| | Filing Date: August 2, 2007 | Group Art Unit: 3993 |

| | | |
|---|---|---|
| /SC/ | | Hasbro's Second Amended Objections and Responses to Plaintiff's First Set of Interrogatories, Interrogatory No. 2, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S, served September 19, 2006 |
| /SC/ | | Hasbro's Notice of Request for Judicial Notice with Exhibits A-N, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S, filed October 19, 2006 |
| /SC/ | | Hasbro's Supplemental Memorandum of Law in Support of Motion to Correct Inventorship, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S, filed November 10, 2006 |
| /SC/ | | Plaintiff's Reply to Defendant's Supplemental Memorandum of Law in Support of Motion to Correct Inventorship, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S, filed November 21, 2006 |
| /SC/ | | Hasbro's Reply Memorandum of Law in Support of Motion to Correct Inventorship, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S, filed January 5, 2007 |
| /SC/ | | Plaintiff's Sur-Reply in Support of Hasbro's Motion to Correct Inventorship, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S, filed January 18, 2007 |
| /SC/ | | Hasbro's Motion to Stay Proceeding Pending *Ex Parte* Reexamination of Patent with Exhibits A-H, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S, filed July 20, 2007 |
| /SC/ | | Hasbro's Reply Memorandum of Law in Further Support of Hasbro's Motion to Stay or, in the Alternative, for Leave to Re-Open Expert Discovery with Exhibits A-B, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S, filed August 23, 2007 |
| /SC/ | | Hasbro's Supplemental Memorandum in Support of it Motion to Re-Open Discovery with Exhibits A-C, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S, filed September 28, 2007 |
| /SC/ | | Plaintiff's Supplemental Memorandum in Support of its Objection to Hasbro's Alternative Motion for Leave to Re-Open Expert Discovery and Add Untimely Invalidity Contentions with Exhibits A-E, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S, filed October 5, 2007 |
| /SC/ | | Letter to Judge Smith from Hasbro, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S, dated October 30, 2007 |
| /SC/ | | Letter to Judge Smith from Bowling, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S, dated October 30, 2007 |
| /SC/ | | Order Denying Hasbro's Motion to Re-Open Discovery with Respect to Newly-Identified Invalidity Evidence, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S, dated November 5, 2007 |
| /SC/ | | Hasbro's Motion for Reconsideration of Order on Motion to Stay or, in the Alternative, for Leave to Re-Open Discovery with Respect to Newly-Identified Invalidity Evidence with Exhibits A-I, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S, filed November 14, 2007 |
| /SC/ | | Declaration of David K.S. Cornwell in Support of Motion for Reconsideration with Exhibits A-B, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S, filed November 14, 2007 |
| /SC/ | | Declaration of Jeffrey K. Techentin in Support of Motion for Reconsideration with Exhibits A-I, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S, filed November 14, 2007 |
| /SC/ | | Supplemental Declaration of Jeffrey K. Techentin in Support of Motion for Reconsideration with Exhibit A, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S, filed November 19, 2007 |

| | |
|---|---|
| EXAMINER /Sara Clarke/ | DATE CONSIDERED 03/17/2008 |
| EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; draw line through citation if not in conformance and not considered. Include copy of this form for next communication to the Applicant. | |

*Substitute Disclosure Statement Form (PTO-1449)

Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

Date Mailed: January 7, 2008

Sheet 3 of 3

| | | |
|---|---|---|
| **FORM 1449*** **AMENDED INFORMATION DISCLOSURE STATEMENT** | Docket Number: 12206.0004USRX | Control No. 90/008,746 |
| **IN AN APPLICATION** | Applicant: Bowling | |
| (Use several sheets if necessary) | Filing Date: August 2, 2007 | Group Art Unit: 3993 |

| | | |
|---|---|---|
| /SC/ | | Plaintiff's Objections to Defendant's Motion for Reconsideration and Plaintiff's Request for Fees with Exhibits A-G, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S, filed December 3, 2007 |
| /SC/ | | Hasbro's Reply Memorandum of Law in Support of Motion for Reconsideration of Order on Motion to Stay or, in the Alternative, for Leave to Re-Open Discovery with Respect to Newly-Identified Invalidity Evidence, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S, filed December 5, 2007 |
| /SC/ | | Hasbro's Pretrial Memorandum with Exhibits A-B, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S, filed December 12, 2007 |
| /SC/ | | Plaintiff's Pretrial Memorandum with Exhibits A-E, Michael Bowling v. Hasbro, Inc., Civil Action No. 05-229-S, filed December 12, 2007 |
| /SC/ | | File History for 6,123,332 |
| /SC/ | | File History for 6,318,720 |
| /SC/ | | File History for D436,635 |
| /SC/ | | File History for D455,462 |
| /SC/ | | File History for D517,612 |
| /SC/ | | File History for 5,938,197 |

**23552**
PATENT TRADEMARK OFFICE

| | |
|---|---|
| EXAMINER /Sara Clarke/ | DATE CONSIDERED 03/17/2008 |
| EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; draw line through citation if not in conformance and not considered. Include copy of this form for next communication to the Applicant. | |

*Substitute Disclosure Statement Form (PTO-1449)

Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

# SACRED DICE:
# A COMPARISON OF THE ORACLES OF ANCIENT INDIA AND ANCIENT ISRAEL

A Thesis
Presented to
The Faculty of the Graduate School
University of Missouri-Columbia

In Partial Fulfillment
Of the Requirements for the Degree

Master of Arts

by
CRYSTAL KRONER

Dr. Signe Cohen, Thesis Supervisor

DECEMBER 2005

Much later Greek paintings show children throwing these bones into a circle drawn on the ground. In her study *Gods, Games, and Gambling*, F. N. David speculates that these objects probably existed as precursors to dice, after practitioners refined them down to smaller sizes over time. [6] She supports this by the direct correspondence between the features of ceremonial dice and astragali, where over time imitations came to be carved from stone, she states:

> "The transition from astragalus to the die probably took place over thousands of years, and it is possible that the first primitive dice were made by rubbing the round sides of the astragalus until they were approximately flat. There are many of these osselots in existence, and they could not have been entirely satisfactory since the honeycomb tissue of the bone marrow has been exposed in some."[7]

Other sites in northern Iraq and Mohenjo Daro have presented dice made of well-fired buff pottery dating back to the third millennium. During the early second millennium, practitioners were using another type of dice that could be harvested from *vibhidaka* trees in the region. These nuts bear a striking resemblance to the features of the astragalus bone, having relatively flat sides. David speculates that, while earlier designs of the dice may have born symbolic engravings, the later forms were refined to show pips denoting a numeric value. Due to their somewhat flat sides, it may have been less difficult to assign particular values to each side of the bone or nut, making them attractive candidates for constructing random events. Many prehistoric and ancient sites also show high numbers of colored stones that may have served for record keeping or money. They also seem to have been deemed useful in constructing random events through lot casting due to their ability to symbolize binary properties rather than

[6] David 1955. 3.
[7] Ibid. 9.

# *Games, Gods and Gambling*

***The origins and history of probability and statistical ideas from the earliest times to the Newtonian era***

F. N. DAVID, D.Sc.
(University of London, University College)

1962
HAFNER PUBLISHING COMPANY
NEW YORK

*Copyright* © 1962
CHARLES GRIFFIN & CO. LTD
42 DRURY LANE LONDON W.C.2

*First published in* 1962

PRINTED IN GREAT BRITAIN BY BELL AND BAIN, LTD., GLASGOW

This is possibly not surprising since even these imperfect dice must have seemed good after the astragali. There are exceptions. A few of the dice I have seen are beautifully made, with tooled edges, and throw absolutely true. In classical times we have also the imitation astragalus cut from stone and decorated with carvings (Plate 4). There are also many variants of lewd figures fashioned in metal or bone. These figures could fall in six ways, have dots from 1 to 6 cut in them—although all positions are not equally probable—and were obviously used for gaming.

The primitive dice which have been found in excavations in England might also be mentioned. These date from the invasion of England by the Romans and are possibly part of the benefits spread by that civilisation. The longbone of an animal such as a deer was taken and shaved so that it was reasonably square in cross-section (Fig. 3). A piece of bone was then cut so that it formed a cube. The resulting die must obviously have been very unsatisfactory since it was a hollow square cylinder with 1 opposite 6, 2 opposite 5 on the solid sides and 3 opposite 4 on the hollow ends, the marks being made with a circular engraving tool. Sometimes the die has a 3 on each of the hollow ends.



**Fig. 3 Hollow die shaped from bone**

The idealisation of the astragalus by the die possibly took place simultaneously in different parts of the world, and the results were not always cubical. Throwing-sticks of the order of 3 inches long and roughly 1 cm. in cross-section were used by many peoples, among them the ancient Britons, the Greeks, the Romans, the Egyptians and the Maya Indians of the American continent. Sometimes the cross-section is a square, sometimes it is elliptical. They are all alike in having only four numbers on them, one on each side of a longitudinal face and the other two at either end of the opposite longitudinal face. The numbers, in contrast to the astragalus, are mostly 1, 2 : 5, 6, though 3 and 4 have been noticed. These are most often marked by cuts, though some are with pips.

The Greek mathematicians worked out the geometry of regular solids in the latter half of the first millennium, and this was

probably followed by the construction of polyhedral dice. The beautiful icosahedron made of rock crystal, in the Musée du Louvre (Fig. 4), is one of these. The sides are numbered in Roman figures one to twenty, and there are also letters engraved, following perhaps the Greek custom of associating letter with number.* The theorems concerning the regular solid had not, however, apparently spread very far because there was produced about this time a solid with 19 faces, supposedly rectangular, a die with 18 faces possibly formed by beating out a cubical die, one



**Fig. 4—Arrangement of icosahedral die**

with 14 faces and so on. There are also a certain number of faked dice from this period. Apart from the device of leaving out one number and duplicating another, an early die has been described in which the " one " side can be lifted to expose a hollow underneath. It is suggested that a small ball of leather could be crammed into this to alter the balance of the throw.

The beginning of the Christian era finds us then with dice, with astragali, with throwing-sticks, with board games, and with games of chance which use neither boards nor men. The idea of counting and enumeration is firmly established but not the concept of number as we know it now. The paraphernalia of chance events has been organised for man's pleasure and entertainment. Randomisation, the blind goddess, fate, fortune, call it what you will, is an accepted part of life. But for an understanding of man's mental attitude towards these chance events, and his conception of chance in general, it is necessary to turn attention to a different stream of thought—divination.

* The Greek system of numbering *c.* 200 B.C. for what we would now write as 1, 2, 3, 4, 5, 6, 7, 8, . . . was $\alpha$, $\beta$, $\gamma$, $\delta$, $\epsilon$, $\sigma$, $\zeta$, $\eta$.

| *Notice of References Cited* | Application/Control No. 90/008,746 | Applicant(s)/Patent Under Reexamination 5938197 | |
|---|---|---|---|
| | Examiner Sara S. Clarke | Art Unit 3993 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| | A | US- | | | |
| | B | US- | | | |
| | C | US- | | | |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | David, F. N. "Games, Gods and Gambling". N.Y., Hafner Publishing Co., 1962. pp. 11 and 12. [retrieved online 3/17/2008 from <http://hdl.handle.net/1880/41346>]. |
| | V | Kroner, Crystal. "Sacred Dice: A comparison of the Oracles of Ancient India and Ancient Israel". University of Missouri-Columbia, 2005. pp. 3-5. [retrieved online 3/17/2008 from <http://proquest.umi.com/pqdweb?did=1203590101&sid=1&Fmt=2&clientId=19649&RQT=309&VName=PQD>]. |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.