IN THE UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MICHAEL BOWLING, Plaintiff, | : | |
| v. | : | C.A. No. 05-229 S |
| HASBRO, INC., Defendant. | : | |

OPINION AND ORDER

William E. Smith, United States District Judge.

This patent infringement action was brought by Plaintiff Michael Bowling ("Bowling"), a professional engineer and "afficionado of fantasy role-playing games, such as Dungeons & Dragons," against Hasbro, Inc. ("Hasbro") alleging infringement of Bowling's United States Patent No. 5,938,197 (the "'197 patent"). Bowling v. Hasbro, 490 F. Supp. 2d 262, 264 (D.R.I. 2007) ("Bowling I"). The '197 patent describes several polyhedral dice, one of which, the six-sided die, is the main subject of this dispute. Bowling alleges that Hasbro, the toy and game company, infringed on his patent during a period of time in 1999 and 2000 by using a similar die in its "Monopoly, Millennium" and "Avon Special" editions of the Monopoly game.[1] Over the course of pre-trial

---

[1] For a more comprehensive summary of the facts and procedural history of this case, the reader is directed to this Court's earlier decisions in Bowling v. Hasbro, 2006 WL 2345941 (D.R.I.

proceedings in this matter, the various claims and counter-claims of the parties were whittled down, leaving for trial only the issue of damages for infringement and Hasbro's counterclaim of inequitable conduct on Bowling's part.

The case was tried to a jury over the course of six days beginning on March 17, 2008. The jury returned a verdict in favor of Bowling totaling $446,182.40; found that Bowling had continuously marked substantially all of his dice or die packaging from August 17, 1999; but that Bowling had failed to show by clear and convincing evidence that Hasbro's infringement was willful. Before this Court is the remaining claim of inequitable conduct, which was not tried to the jury, as well as numerous post-trial motions by both parties, including Hasbro's Motion for Judgment as a Matter of Law ("JMOL") or, in the Alternative, for a New Trial or, in the Alternative, for Remittitur.[2]

---

Aug. 10, 2006); Bowling v. Hasbro, 490 F. Supp. 2d 262 (D.R.I. 2007); Bowling v. Hasbro, 2008 WL 717741 (D.R.I. March 17, 2008).

[2] The following motions are pending:
Docket # 216 - Hasbro's Renewed Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial or, in the Alternative, for Remittitur.
Docket # 211 - Plaintiff Michael Bowling's Motion for Pre- and Post-Judgment Interest.
Docket # 212 - Plaintiff Michael Bowling's Motion for Award of Costs.
Docket # 213 - Plaintiff Michael Bowling's Motion for

I. Inequitable Conduct

Hasbro maintains that statements made by Bowling in his January 6, 1998 patent application to the Patent and Trademark Office ("PTO") constitute inequitable conduct and that such conduct renders the '197 patent unenforceable. At issue, specifically, are certain representations in the application in which Bowling asserts that "[t]he inventor has discovered that the configuration of the die [] is advantageous," and describes the die characteristics that create those advantages. Bowling has since admitted, via deposition and as a witness at trial, that at the time he filed his application he had not yet made a prototype of the dice, but instead based his statements on personal observation, his understanding of the physics of die design, and his general experience with dice. This, Hasbro maintains, is tantamount to knowing misrepresentation.

---

the Expert Fees of Neil Lapidus.

Docket # 214 - Michael Bowling's Motion for Attorneys' Fees under 35 U.S.C. § 285, 28 U.S.C. § 1927 and the Court's Inherent Equitable Powers.

Docket # 215 - Defendant Hasbro Inc.'s Motion for Payment of the Expert Fees of Barry Sussman.

Docket # 241 - Objection and Notice of Appeal of Magistrate Judge Almond's June 2, 2008 Order Denying Leave to File a Motion to Compel.

Patent applicants must prosecute their patent applications in the PTO "with candor, good faith, and honesty." Molins PLC v. Textron, Inc., 48 F.3d 1172, 1178 (Fed. Cir. 1995). Breach of this duty constitutes inequitable conduct. Id. In order for a patent to be considered unenforceable, "there must be clear and convincing evidence that the applicant (1) made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted false material information, and (2) intended to deceive" the PTO. Cargill Inc. v. Canbra Foods, Ltd., 476 F.3d 1359, 1363 (Fed. Cir. 2007). Both essential elements - materiality and intent - must be proven by clear and convincing evidence. M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., 439 F.3d 1335, 1340 (Fed. Cir. 2006). If both are proven, "[t]he court must then determine whether the questioned conduct amounts to inequitable conduct by balancing the levels of materiality and intent, 'with a greater showing of one factor allowing a lesser showing of the other.'" Digital Control Inc. v. Charles Mach. Works, 437 F.3d 1309, 1313 (Fed. Cir. 2006) (citations omitted).

PTO Rule 56, see 37 C.F.R. § 1.56(b), provides:

> [I]nformation is material to patentability when it is not cumulative to information already of record or being made of record in the application, and
>
> > (1) It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim, or

> (2) It refutes, or is inconsistent with, a position the applicant takes in:
> (i) Opposing an argument of unpatentability relied on by the Office, or
> (ii) Asserting an argument of patentability.
>
> A prima facie case of unpatentability is established when the information compels a conclusion that a claim is unpatentable under the preponderance of evidence, burden-of-proof standard, giving each term in the claim its broadest reasonable construction consistent with the specification, and before any consideration is given to evidence which may be submitted in an attempt to establish a contrary conclusion of patentability.

See also Cargill, 476 F.3d at 1364. Additionally, under the so-called "reasonable examiner" standard, information is material if "there is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent." Id. (quotations omitted). In either case, "affirmative misrepresentations by the patentee, in contrast to misleading omissions, are more likely to be regarded as material." Hoffmann-La Roche, Inc. v. Promega Corp., 323 F.3d 1354, 1367 (Fed. Cir. 2003).

Misrepresentation alone is insufficient to render a patent unenforceable. Id. at 1366-67. Instead, "the misrepresentations must be intentional and they must be material to patentability." Id. To establish the requisite intent to deceive, "the involved conduct, viewed in light of all the evidence, including evidence indicative of good faith, must indicate sufficient culpability to

require a finding of intent to deceive." Cargill, 476 F.3d at 1364. Finally, there must be a factual basis for a finding of intent. M. Eagles Tool, 439 F.3d at 1340. While intent may not be inferred solely from the fact that information was not disclosed, id., it may be inferred from the facts and circumstances surrounding the conduct at issue. Cargill, 476 F.3d at 1364.

Here, there is scant evidence to support a finding of misrepresentation or intent to deceive.[3] Bowling never represented that he had produced a prototype of the die when he applied for the patent, and Hasbro has produced no evidence that the patent would not have been granted had the PTO been aware that no prototype then existed. Furthermore, Hasbro has produced no evidence of an intent to deceive on Bowling's part. Instead, Bowling testified at trial that he considers the statements made in his application to be both accurate and true. In conclusion, the evidence is insufficient to establish that any statement made to the PTO by Bowling was either

---

[3] The Federal Circuit has spoken on the increasing tendency of defendants to patent infringement suits to invoke an inequitable conduct allegation, noting that "the habit of charging inequitable conduct in almost every major patent case has become an absolute plague. Reputable lawyers seem to feel compelled to make the charge against other reputable lawyers on the slenderest of grounds, to represent their client's interests adequately, perhaps . . . . A patent litigant should be made to feel, therefore, that an unsupported charge of 'inequitable conduct in the Patent Office' is a negative contribution to the rightful administration of justice." Burlington Indus., Inc. v. Dayco Corp., 849 F.2d 1418, 1422 (Fed. Cir. 1988).

a misrepresentation or intended to deceive, and thus Hasbro's claim of inequitable conduct fails.

II. Hasbro's Renewed Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial, or in the Alternative, for Remittitur.

Hasbro contends that Bowling failed to offer cognizable evidence of damages and that as a result, judgment as a matter of law in Hasbro's favor is warranted. Alternately, Hasbro maintains that if damages are warranted, they should be nominal, calculated either by virtue of a new trial or remittitur. "A motion for judgment as a matter of law only may be granted when, after examining the evidence of record and drawing all reasonable inferences in favor of the nonmoving party, the record reveals no sufficient evidentiary basis for the verdict." Zimmerman v. Direct Fed. Credit Union, 262 F.3d 70, 75 (1st Cir. 2001); Chrabaszcz v. Johnston Sch. Comm., 474 F. Supp. 2d 298, 311 (D.R.I. 2007). The Court must view the facts in the light most favorable to the plaintiff, drawing all reasonable inferences in his favor. Lama v. Borras, 16 F.3d 473, 475 (1st Cir. 1994). Further, the Court's role is not to "evaluate the credibility of the witnesses or the weight of the evidence." Chrabaszcz, 474 F. Supp. 2d at 311. Thus, the jury verdict must stand "unless the evidence, taken in the light most favorable to the prevailing party, points unerringly to an opposite conclusion." Zimmerman, 262 F.3d at 75.

A. Bowling Satisfied the Marking Requirements

First, Hasbro maintains that Bowling failed to sustain his burden of proving that he marked his patented dice, and that as a result, Hasbro can be held liable for damages only beginning on November 10, 1999, the date upon which it received actual notice of infringement. In order to recover damages, a patentee must prove by a preponderance of the evidence that he has complied with the relevant marking statute. Nike, Inc. v. Wal-Mart Stores, Inc., 138 F.3d 1437, 1446 (Fed. Cir. 1998). Sufficient marking is established "either by fixing thereon the word 'patent' or the abbreviation 'pat.', together with the number of the patent, or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice." 35 U.S.C. § 287(a). A patentee must also show that "once marking was begun, the marking was substantially consistent and continuous." Cybiotronics, Ltd. v. Golden Source Elecs. Ltd., 130 F. Supp. 2d 1152, 1160 (C.D. Cal. 2001). Without satisfaction of the marking requirement, unless actual notice of infringement is provided, damages are unavailable. 35 U.S.C. § 287(a).

Based on a preponderance of the evidence standard, the jury found that Bowling had "continuously marked substantially all of his dice, or if not practical, the packaging of the dice, with his

patent number from August 17, 1999, through November 10, 1999." Without evaluating the credibility of the witnesses or weighing the evidence, and drawing all reasonable inferences in Bowling's favor, the evidence presented at trial sufficiently supported the verdict to preclude this Court from granting Hasbro's motion. For example, Bowling testified that prior to the issuance of the '197 patent he supplied his existing customers, both distributors and retailers, with stickers indicating that the dice were "patent pending." He also testified and provided copies of letters indicating that just before issuance, he provided those same customers with patent number stickers and instructed them to place the stickers on the bins out of which the dice were sold. Bowling also testified that after August 15, 1999, for all orders shipped, he included patent number stickers and instructions requiring that they be affixed to the containers out of which the dice were to be sold, that he personally affixed stickers to all tubs or bins he shipped to customers, and that he placed such stickers inside of all bags of loose dice. Bowling also testified that throughout the relevant period, he kept in regular contact with his customers about their marking obligations, and that he had no reason to believe they were not following his instructions. Bowling's assertions were confirmed, at least in part, by the testimony of at least one game

shop employee that display bins in his shop were affixed with Bowling's patent stickers.

Hasbro maintains, essentially, that absent additional evidence to corroborate Bowling's testimonial assertions about marking, the jury could not have found that Bowling met the marking requirements. Particularly, Hasbro asserts that there was insufficient evidence to establish that Bowling continuously marked substantially all of his patented dice, see Am. Med. Sys. Inc. v. Med. Eng'g Corp., 6 F.3d 1523, 1537 (Fed. Cir. 1993), the date when he began marking, id., and that he took reasonable steps to ensure that his customers complied with his marking instructions. Butterfield v. Oculus Contact Lens Co., 332 F. Supp. 750, 761 (N.D. Ill. 1971). On each of these issues, Bowling provided ample testimonial support at trial, and it is not this Court's job, on a Rule 50 motion, to question the weight afforded by the jury to any one witness's testimony.

As to Hasbro's contention that Bowling's strategy of marking the packaging in which the dice were sold or displayed fails to meet the legal standard for marking, this argument likewise fails. This Court, in an earlier decision in this case, addressed this issue by recognizing the situations where package marking is sufficient. See Bowling I, 490 F. Supp. 2d at 276-77 (D.R.I. 2007) (collecting decisions and discussing cases). It was left to the

jury to balance the relevant factors to this inquiry. Id. at 277. There are no grounds upon which to consider the jury's decision to be erroneous. Therefore, Hasbro's renewed motion for JMOL on the issue of marking is denied.

B. The Damage Calculation

Hasbro also maintains that Bowling failed to sustain his burden of proving damages, necessitating JMOL in its favor. Hasbro alternatively claims that the amount of the jury verdict is "patently erroneous," and that as a result, a new trial or remittitur is warranted. Section 284 provides that upon a finding of infringement, "the court shall award the claimant damages adequate to compensate for infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C. § 284. Where, as here, infringement has been proven, but the evidence is not adequate to establish actual damages in the form of lost profits, a patentee is entitled to, at a minimum, a reasonable royalty.[4] Bowling v. Hasbro, No. 05-229S, 2008 WL 717741 at *2 (D.R.I. March 17, 2008) ("Bowling II"). As discussed in Bowling II, wherein Hasbro's motion to exclude

---

[4] A reasonable royalty generally is defined as one "which a person, desiring to manufacture and sell a patented article, as a business proposition, would be willing to pay as a royalty and yet be able to make and sell the patented article, in the market, at a reasonable profit." Bowling II at *2 (quoting Cohesive Tech. v. Waters Corp., 526 F. Supp. 2d 84, 121 (D. Mass. 2007)).

Bowling's proposed damages expert Neil Lapidus was granted, courts look to the so-called "Georgia-Pacific"[5] factors as guidance when asked to calculate a reasonable royalty because actual damages cannot be established. Id. at *2; Georgia-Pacific Corp. v. U.S. Plywood Corp., 318 F. Supp. 1116 (S.D.N.Y. 1970), aff'd, 446 F.2d 295 (2d Cir. 1971), cert denied, 404 U.S. 870 (1971). The jury was instructed in the factors set forth in Georgia-Pacific for determination of reasonable royalty, and applying this standard awarded Bowling $446,182.40 as damages for Hasbro's infringing sales on and after August 17, 1999. So, the question is simply whether there was evidence adduced at trial to support this verdict.

---

[5] The Georgia-Pacific factors are, in brief: (1) royalties that a patentee receives for the patent in suit; (2) rates licensee pays for use of other comparable patents; (3) nature and scope of the license; (4) the licensor's established policy regarding licensing of its technology; (5) commercial relationship between the parties; (6) effect on and extent of derivative or convoyed sales; (7) duration and term of license; (8) established profitability of the product made under the patent, its commercial success, and popularity; (9) utility and advantages of the patented article over old modes; (10) nature of patented invention; character of commercial embodiment of the patent as owned or produced by the licensor; (11) extent to which infringer has made use of invention; (12) portion of profit or selling price customarily allowed; (13) portion of realizable profit attributable to invention; (14) the opinion testimony of qualified experts; (15) the amount a willing licensor and licensee would agree upon at the time of infringement, had both been reasonably and voluntarily trying to reach agreement, including the amount of profit the licensee would be willing to contribute to the license. Bose Corp. v. JBL, Inc., 112 F. Supp. 2d 138, 165-67 (D. Mass. 2000).

1. Renewed Motion for Judgment as a Matter of Law

Hasbro maintains first that because Bowling failed to put forth evidence sufficient to establish a reasonable royalty, judgment should have been rendered in Hasbro's favor. See Transclean Corp. v. Bridgewood Serv., Inc., 290 F.3d 1364, 1376 (Fed. Cir. 2002) (patent holder has burden of proving reasonable royalty it is entitled to recover). Although there may be no explicit burden on the patentee to submit evidence for use as a basis for a reasonable royalty, "it is self evident that there must be enough evidence in the record to allow the fact finder to ascertain a reasonable royalty." Devex Corp. v. Gen. Motors Corp., 667 F.2d 347, 361 (3rd Cir. 1981), aff'd 461 U.S. 648 (1983)); Unisplay v. Am. Elec. Sign Co., 69 F.3d 512, 517 (Fed. Cir. 1995) ("a trier of fact must have some factual basis for a determination of a reasonable royalty"). In the absence of such evidence, despite the requirements of Section 284, no reasonable royalty can be awarded. Devex, 667 F.2d at 361.

To prevail on its renewed motion for JMOL, Hasbro must demonstrate that the damage award was not supported by substantial evidence presented at trial. See Honeywell Int'l Inc. v. Universal Avionics Sys., 426 F. Supp. 2d 211, 223 (D. Del. 2006). "Substantial evidence is defined as 'such relevant evidence from the record taken as a whole as might be acceptable by a reasonable

mind as adequate to support the finding under review.'" Id. As noted above, the Court must consider the evidence in the light most favorable to Bowling, draw all reasonable inferences in his favor, and not question the weight afforded witness testimony by the jury. Id.

Here, Hasbro argues that Bowling, having been precluded from calling its expert witness on the issue of damages, failed to introduce evidence as to what a reasonable royalty should be. However, expert testimony is not required for a reasonable royalty determination. 35 U.S.C. § 284; see also Bowling II, 2008 WL 717741 at *2; Veritas Operating Corp. v. Microsoft Corp., 2008 WL 657936 at *27 (W.D. Wash. Jan. 17, 2008). Rather than use his expert, Bowling satisfied his burden primarily through his own testimony, the testimony of Michael Hirtle who, at the time of infringement was Senior Director of Research and Development at Hasbro, and Dorothy Echlin, Hasbro's then Vice President of Product Engineering. As part of the thorough examinations of both Bowling and Hirtle, along with at least one other Hasbro employee, Bowling's counsel explored and received factual responses to inquiries relating to most, if not all, of the Georgia-Pacific factors. Because the relevant factual predicate for determining a reasonable royalty has been established, it cannot be said that the evidence only supports a verdict in Hasbro's favor. See

Informatica Corp. v. Bus. Objects Data Integration, Inc., 2007 WL 2344962 at *1 (N.D. Cal. Aug. 16, 2007) (judgment as a matter of law is warranted only if "the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict"). Because the record contains a legally sufficient evidentiary basis for a jury to calculate a reasonable royalty, Hasbro's motion for JMOL is denied.

2. Motion for a New Trial or, in the Alternative, For Remittitur

Hasbro contends that the Court should order a new trial or remittitur because the jury's damages award is overly excessive and against the weight of the evidence. When a party files a motion for a new trial "on the amount of damages awarded by a jury, 'the trial court determines whether the jury's verdict is against the clear or great weight of the evidence.'" Unisplay, 69 F.3d at 517 (quoting Standard Havens Prods. v. Gencor Indus., 953 F.2d 1360, 1367 (Fed. Cir. 1991)). While the district court "has wide discretion in determining whether to grant a new trial under this standard," id., the jury's verdict is entitled to deference and must be upheld "unless the amount is grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork." Monsanto Co. v. Ralph, 382 F.3d 1374, 1383 (Fed. Cir. 2004). As for remittitur, should the court

determine that the jury's damage award cannot stand, the patent holder may avoid a new trial "by agreeing to a remittitur of the excessive portion of the damage award," whereby the determination shall "be based on the highest amount of damages that the jury could properly have awarded based on the relevant evidence." Unisplay, 69 F.3d at 519.

The jury returned a damages verdict in the amount of $446,182.40, or approximately $0.40 per die, which corresponds to a royalty of 4% of net sales for the Monopoly Millennium and Avon Special editions. Throughout the proceedings and in its motion for a new trial, Hasbro has maintained that a reasonable royalty in this case cannot exceed $7,068.59, or, approximately $0.010 per game for the Avon Special edition and $0.014 per game for the Monopoly Millennium edition (each edition contains two dice). In Hasbro's view, the jury award here represents something more akin to lost profits, something Bowling neither sought nor adduced evidence in support of.[6] Hasbro's contention alone, however, does not render the jury verdict excessive. TWM Mfg., Inc. v. Dura Corp., 789 F.2d 895, 899 (Fed. Cir. 1986) ("[A]n infringer cannot

---

[6] "To recover lost profits as actual damages, a patent holder must demonstrate that there was a reasonable probability that, but for the infringement, it would have made the infringer's sales." Minn. Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc., 976 F.2d 1559, 1577 (Fed. Cir. 1992); Panduit Corp. v. Stalin Bros. Fibre Works, Inc., 575 F.2d 1152, 1156 (6th Cir. 1978).

successfully argue that the district court abused its discretion in awarding a "high" royalty by simply substituting its own recomputation to arrive at a lower figure.").

The hypothetical willing licensee/licensor approach to calculating a reasonable royalty is a "device in the aid of justice," and must be applied flexibly. TWM Mfg., 789 F.2d at 900. Foremost, it is the court's duty to "ensure that the amount conferred provides adequate compensation to the patentee for the infringement proven." Cornell Research Found., Inc. v. Hewlett-Packard, 2007 WL 4349135 at *59 (N.D.N.Y. Jan. 31, 2007). At the same time, however, despite the element of approximation and uncertainty inherent in the reasonable royalty rubric, the damage award must have a reliable foundation in fact, and "simply must be within the range encompassed by the record as a whole." Unisplay, 69 F.3d at 517, 519.

In this case, the record contains ample evidence as to the parties' relative bargaining positions in the hypothetical negotiation. First, through Bowling's own testimony, the jury learned that Bowling had never licensed his '197 patent, and had no established royalty rate, an issue that Hirtle confirmed would favor Bowling in a negotiation, and furthermore that Bowling's plan was to sell dice directly to customers, not via a licensor/licensee relationship. The jury also learned through Hirtle that Hasbro

would have wanted the '197 patent to be licensed for Hasbro's exclusive use, that Hasbro likely would have agreed to pay a higher royalty in exchange for that exclusivity, and that, generally speaking, Hasbro would have been willing to pay a higher royalty rate for a component which was considered exciting, innovative, or expected to generate "buzz." Although Hirtle maintained that the '197 die was not a significant new feature of the Millennium versions of Monopoly, and thus not a "buzz" generator, the jury viewed an advertisement for the games in which the dice were featured prominently, viewed Millennium game packaging which touted the futuristic dice included within, and heard, via videotaped deposition of Dorothy Echlin, that Hasbro believed that futuristic dice would contribute to the popularity and sales of the Millennium versions of its Monopoly game.

As to the role that the '197 dice played in his existing business, Bowling testified that through his direct sale of the '197 dice he was able to increase sales of his other, non-patented items. Bowling further testified that he sold his dice directly to customers for prices ranging from $0.645 to $0.49 per die, never less, that he made, on average, a profit of $0.50 per die, and that the demand for his crystal shaped die was very high. At the same time, however, Bowling acknowledged that his dice business had suffered overall losses during the period just proceeding the time

of the hypothetical negotiation - the date when the patent was issued. See Harris Corp. v. Ericsson, Inc., 417 F.3d 1241, 1257 (Fed. Cir. 2005) (for purposes of calculating a reasonable royalty, the hypothetical negotiation is considered to have taken place on the date of first infringement). Taking this all into consideration, Bowling asserts that he either would have sold his dice directly to Hasbro for $.645 per die, or that he would have licensed the design to Hasbro for $0.58 per die, factoring in Hasbro's manufacturing costs.

As to Hasbro's position at the time of the hypothetical negotiation, through Hirtle the jury learned that the subject dice accounted for very little of the selling price of the game. Hirtle testified that the dice accounted for 2.4% of the price of the Avon Special edition and only 1.1% of the price of the Monopoly Millennium edition. The retail prices of these games were, respectively, $9.50 and $28.50. No evidence was introduced as to what rates Hasbro pays or has paid to license patented component parts for other Monopoly editions or any of its other toys or games, and Hirtle in fact testified that he was unfamiliar with any similar situation.[7] The jury was informed, however, that the

---

[7] Since trial, it has come to the Court's attention that Hasbro has not only licensed a component part for one of its games, but that it has licensed a unique die for an edition of its Monopoly game with the royalty based on the selling price of the

royalty paid by Hasbro to the family of the man credited with having invented the Monopoly concept, is a sum equal to 3% of net profits of the sale of all Monopoly products. The jury also learned that Hasbro and Bowling were not competitors with each other - rather, Bowling sold to a particular market of dice and gaming enthusiasts and collectors, whereas Hasbro marketed its Millennium edition games to the public at large. Hirtle admitted that the hypothetical negotiation would have taken place during Hasbro's highest selling season, and that at the time, the infringing dice were already in games on store shelves and were featured prominently in advertisements, something that would have prompted Hasbro to offer a higher royalty rate, even if only temporarily. The jury also learned from Hirtle that although the Millennium editions were "limited edition runs," if Hasbro had licensed Bowling's dice, it likely would have considered using the dice in other special editions of well known games.

This evidence covers many of the <u>Georgia-Pacific</u> factors and tends overall to favor Bowling's position. More important, however, was the trial testimony of Hirtle on the issue of industry standards and how they might apply to this case. Hirtle testified

---

game. The license and its details are unknown to the Court and not a part of the record. However, it is perplexing why this information was not disclosed during discovery or at trial.

to the significance of two authoritative reference guides,[8] both of which were introduced into evidence, and both of which state that the standard royalty rate in the toy industry is 5% of net sales. Hirtle also testified that, generally speaking, a lower 3% standard royalty rate would be applied where the toy or game at issue had other obligations, such as another inventor or third party license. Applying the standard formula for calculating royalties,[9] Hirtle demonstrated for the jury that in this case a 5% royalty rate would equal a total sum of $554,499, whereas a 3% rate would equal a total sum of $331,189. Ultimately, the jury awarded $446,182, equal to a 4% rate.

While Hirtle testified to these standard industry rates, and calculated for the jury how those rates would apply to this case, he adamantly denied the applicability of the formula and the rates to Hasbro's use of Bowling's patented dice. Instead, he testified that in cases involving component parts, a royalty would be calculated using a "cost-added" approach wherein the key factor is not the industry standard rate, but is the amount of value that the

---

[8] Hirtle testified to the significance of both "Inside Santa's Workshop," and "The Toy and Inventor's Handbook," both of which were made exhibits and both of which the jury was allowed to examine during deliberations.

[9] The industry standard method consisted of the following equation: (Pairs of Dice) x (Wholesale Price of the Game) x (.9) x (Royalty Rate) = Royalty.

component contributed to the cost of the game. Thus, per Hirtle's formula, a reasonable royalty would be the cost of the component part divided by the cost of the game, multiplied by the net selling price of the game, and then multiplied by a royalty rate of 5%. For the Avon Special and Monopoly Millennium editions, respectively, with costs of 2.4% and 1.1%, the royalty per game would be $0.010 and $0.014, or roughly half a cent per die. Although he could not cite a single occasion when Hasbro had used this formula, and admitted that his formula was not a printed industry standard, Hirtle maintained that the approach "would be taken by pretty much anybody in the inventor relations business."

The jury then was faced with a substantial gap between the royalty amount considered reasonable by Hasbro on one hand and sought by Bowling on the other. Obviously, the jury found unconvincing Hirtle's cost-added approach and considered the industry standard formula, found within well-known and authoritative texts on the toy and game industry, and testified to by Hirtle, to be a more fair and reasonable means of calculating a royalty in this case. In doing so, the jury acted with proper discretion. See United States v. Hill, 2008 WL 2265296 at *1 (11th Cir. June 4, 2008) ("The jury may choose to accept or reject a witness's testimony either in whole or in part."). A jury charged with calculating a reasonable royalty using the hypothetical

negotiation framework faces a difficult chore. See Fromson v. W. Litho Plate & Supply Co., 853 F.2d 1568, 1574 (Fed. Cir. 1998) (rev'd on other grounds). The method requires the jury effectively to ignore the reality of a situation in which warring parties cannot agree to the terms of a license, and to hypothesize as to the terms to which they might agree at another time and place. See generally id. at 1575. As a result, the jury must make certain assumptions and apply a degree of educated guesswork to the situation at hand. See Cornell, 2007 WL 4349135 at *58. (Order adopting Report & Recommendation at 2007 WL 2791129 (Sept. 24, 2007)). In doing so, "there is room for exercise of a common-sense estimation of what the evidence shows would be a 'reasonable' award." Lindemann Maschinenfabrik v. Am. Hoist & Derrick Co., 895 F.2d 1403, 1406 (Fed. Cir. 1990).

Here, the jury rightfully weighed the countervailing positions of the parties against the evidence presented on all or some of the factors fitting into the Georgia-Pacific rubric. See Wright v. United States, 53 Fed. Cl. 466, 475 (2002) (the finder of fact "is neither constrained by [the Georgia-Pacific factors] nor required to consider each one when they are inapposite or inconclusive") (citation omitted). As the finder of fact, the jury was entitled to "reject 'the extreme figures proffered by the litigants as incredible and substitute an intermediate figure as a matter of its

judgment from all of the evidence.'" Fuji Photo Film Co. v. Jazz Photo Corp., 249 F. Supp. 2d 434, 453 (D.N.J. 2003) (quoting Smith Kline Diagnostics, Inc. v. Helena Labs Corp., 926 F.2d 1161, 1168 (Fed. Cir. 1991)). The jury's verdict here is just such an intermediate figure, albeit one significantly closer to the amount sought by Bowling than the nominal figure considered reasonable by Hasbro. More importantly, however, the verdict represents a determination on the part of the jury that in a hypothetical negotiation, a royalty rate calculated using standard industry rates was justified, and that a royalty calculated through the cost-added approach would neither meet the minimal standard set forth in Section 284, nor adequately compensate Bowling for Hasbro's unauthorized use of his patented dice.

The record is replete with facts favoring Bowling in a hypothetical negotiation, and the evidence certainly supports a reasonable royalty significantly higher than the nominal award suggested by Hasbro. While one could reasonably question whether a royalty rate higher than that paid by Hasbro for the Monopoly concept itself is reasonable, there is no basis for the Court to conclude that the verdict fails to contemplate what Hasbro, acting as a "willing and prudent licensee" would have agreed to. Jenn-Air Corp. v. Penn Ventilator Co., 394 F. Supp. 665, 676 (E.D. Pa. 1975); see also Reynolds Spring Co. v. L.A. Young Indus., 101 F.2d

257, 261 (6th Cir. 1939). This Court might agree that the verdict seems high, particularly when compared to the three percent concept royalty. However, where there is evidence from which the jury could derive its conclusion, a grant of remittitur would amount to nothing less than the Court substituting its judgment as if a juror - something that is just not permitted. Therefore, Hasbro's motion for a new trial, or alternatively remittitur, must be and is denied.

III. Other Pending Post-Trial Claims

A. Interest

Prejudgment interest shall be awarded at a rate of 12% per annum not compounded on the $446,182.40 award. See R.I. Gen. Laws. § 9-21-10(a). Prejudgment interest is ordinarily awarded in patent infringement cases. Gen. Motors Corp. v. Devex Corp., 461 U.S. 648, 654 (1983). As 35 U.S.C. § 284 does not specify a rate to be used for prejudgment interest, courts often use the statutory interest rate of the state in which they sit. Brooktree Corp. v. Advanced Micro Devices, Inc., 757 F. Supp. 1101, 1103 (S.D. Cal. 1990). In Rhode Island, this rate is 12% per annum. R.I. Gen. Laws. § 9-21-10(a). Prejudgment interest will run from the date of infringement to the date of judgment, as is typical for patent infringement cases. Nickson Indus., Inc. v. Rol Mfg. Co., 847 F.2d 795, 800 (Fed. Cir. 1988).

Postjudgment interest shall be awarded at 1.35%, compounded annually. See U.S.C. 1961(a)-(b). This award reflects the "rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System for the calendar week preceding the date of the judgment." 28 U.S.C. 1961(a). The judgment was signed, filed, and entered on March 24, 2008. The average 1-year constant maturity Treasury yield was 1.35% for the calendar week ending March 21, 2008. Federal Reserve Board, Selected Interest Rates, available at http://www.federalreserve.gov/releases/h15/20080324/.

The parties shall submit an Order consistent with this opinion for the amount of judgment including the calculation of pre- and post-judgment interest.

B. Attorneys' Fees

Bowling moves under 35 U.S.C. § 285, 28 U.S.C. § 1927 and via the Court's inherent equitable powers for attorneys' fees and sanctions against Hasbro for litigation misconduct.

The Patent Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "Such an award, while unusual, is within the sound discretion of the trial judge in patent cases . . . ." Colortronic Reinhard & Co., K.G. v. Plastic Controls, Inc., 668 F.2d 1, 8 (1st Cir. 1981). Litigation misconduct is a condition sufficient to

make a case "exceptional" under § 285, however, when either "bad faith [or] willful infringement . . . is present the requirement is more readily met." Sensonics, Inc. v. Aerosonic Corp., 81 F.3d 1566, 1574 (Fed. Cir. 1996) (emphasis added). See also Beckman Instruments, Inc. v. LKB Produkter AB, 892 F.2d 1547, 1552 (Fed. Cir. 1989) ("[W]e are aware of few cases in which a patent owner has been granted attorney fees solely on the basis of litigation misconduct, without a concurrent finding of willful infringement."). A determination of litigation misconduct under § 285 "must be supported by clear and convincing evidence." Beckman, 892 F.2d at 1551.

Despite the fact that the jury did not find that Hasbro willfully infringed on the patent, Bowling cites to a host of incidents which he alleges amount to litigation misconduct sufficient to make this case "exceptional." Nevertheless, while both sides may have engaged in litigation tactics that were aggressive, neither side crossed the line in the Court's view. Because there is no clear and convincing evidence that Hasbro's behavior amounts to anything more than zealous advocacy of a complex patent infringement action, Bowling's motion for attorneys' fees under 35 U.S.C. § 285 is denied. For this same reason, the

Court also declines to award attorneys' fees under 28 U.S.C. § 1927[10] and under its inherent equitable powers.[11]

C. Costs

The Court awards costs to Bowling of $15,627.89, pursuant to Federal Rule of Civil Procedure 54(d) and 28 U.S.C. § 1920. Prevailing parties are typically awarded costs. See In re Two Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig., 994 F.2d 956, 962-63 (1st Cir. 1993). Hasbro has contested some of Bowling's requested costs. All of the uncontested costs are awarded. The contested costs will be addressed individually as follows.

Bowling's fees to a private process server for "Service of Summons and Subpoena," $480, are awarded. For service of process, 28 U.S.C. § 1920 only specifically includes fees of a marshal.

---

[10] Pursuant to 28 U.S.C. § 1927, a district court may award costs and attorneys fees against any "attorney who multiplies the proceedings in any case unreasonably and vexatiously." Seemingly tacked-on, Bowling's claims under this statute are virtually indistinguishable from his § 285 claims and without additional authority in support. This Court is therefore equally unpersuaded by his arguments with respect to § 1927.

[11] In connection with Bowling's motion for attorneys' fees, Hasbro filed two motions, one seeking to strike two reply memoranda filed by Bowling (Docket No. 231) as violative of Local Rule 7(b)(2), and another seeking leave to file a motion to compel the production of documents (Docket No. 237) in response to certain attorney billing documents attached to Bowling's motion. As a result of the foregoing disposition, these motions are moot.

However, some courts award private process serving fees due to "the trend toward substitution of private process servers for the U.S. Marshals Service." Shared Med. Sys. v. Ashford Presbyterian Cmty. Hosp., 212 F.R.D. 50, 54 (D.P.R. 2002) (citations omitted); see also Alflex Corp. v. Underwriters Labs., Inc., 914 F.2d 175, 178 (9th Cir. 1990). In a recent unpublished opinion, this Court awarded fees for private service of process. Hasbro, Inc. v. Chang, 2006 WL 2246423, at *2 (D.R.I. 2006).

The cost of the first deposition of Kevin Cook, $1236.75, is awarded. Deposition costs are generally awarded. Templeman v. Chris Craft Corp., 770 F.2d 245, 249 (1st Cir. 1985). An exception is not warranted here.

The trial costs of Michael Bowling, $2410, are not awarded. Parties are generally not awarded witness fees. Barber v. Ruth, 7 F.3d 636, 646 (7th Cir. 1993); 10 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2678 (3d ed. 1998). The Seventh Circuit has held that "the district court may not tax witness fees for party witnesses under 28 U.S.C. § 1920(3)." Haroco, Inc. v. Am. Nat. Bank & Trust Co. of Chicago, 38 F.3d 1429, 1442 (7th Cir. 1994).

The cost of K&B Copy Group, Inc. trial demonstratives, $267.88, is awarded. These items are described on the invoice as "Color Blow-up and Mount 30 x 42 - Matte Finish." Section 1920(4)

includes "fees for exemplification and copies of papers necessarily obtained for use in the case." 28 U.S.C. § 1920(4). Under this section, various kinds of demonstrative evidence may be awarded. See United States v. Davis, 87 F. Supp. 2d 82, 88 (D.R.I. 2000). In Davis, this Court awarded costs for "enlargements of trial exhibits." Id. at 91-2.

The cost of copies of prosecution file histories for patents other than the patent at suit, $563, is awarded. Copies included under § 1920(4) need not be introduced at trial. Rodriguez-Garcia v. Davila, 904 F.2d 90, 100 (1st Cir. 1990). It is only required that they reasonably appeared necessary when they were obtained. Id.

Bowling is awarded costs of photocopies, as they reliably report the number of pages copied for this matter and the price per copy. Because they provide no other evidence as to the necessity of the copies, their requested amount will be reduced by 50% in order to account for unnecessary copies. Costs of photocopies are included under § 1920(4), provided that they are "reasonably necessary to the maintenance of the action . . . ." Id. While a page-by-page justification is not required, Summit Tech, Inc. v. Nidek Co., 435 F.3d 1371, 1380 (Fed. Cir. 2006) (applying First Circuit law), the prevailing party must offer some evidence of necessity, Davis, 87 F. Supp. 2d at 88. In Summit, the prevailing

party documented expenses for all copies produced in the litigation; the court approved reducing this amount by 50% in order to account for unnecessary copies. Summit, 435 F.3d at 1378. See also Rice v. Sunrise Express, Inc., 237 F. Supp. 2d 962, 981 (N.D. Ind. 2002) (awarding 80% of expenses for photocopies used in the litigation in order to account for unnecessary copies).

Courts award photocopy costs at what they determine to be a reasonable rate, which may be different from court to court. See, e.g., In re San Juan Dupont Plaza Hotel Fire Litig., 111 F.3d at 237-38 (reducing per-page photocopy rate in award of costs from $0.25 to $0.10); Zayas v. Puerto Rico, 451 F. Supp. 2d 310, 319 (D.P.R. 2006) (awarding photocopy costs at a rate of $0.10 per copy); Tinch v. City of Dayton, 199 F. Supp. 2d 758, 770 (S.D. Ohio 2002) (awarding photocopy costs at a rate of $0.05 per copy). This Court finds that $0.05 per page is reasonable and will award Bowling photocopy costs at this rate. Accordingly, Bowling's award for photocopy expenses is $1085.08. For all of these reasons, the award of costs totals $15,627.89.

D. Expert Fees

There are two motions seeking payment of expert fees. Turning first to Hasbro's motion, it seeks payment by Bowling for the fees associated with the testimony of its damages expert, Barry Sussman ("Sussman"), who ultimately was not called as a witness at the

trial on this matter. Hasbro paid for Sussman's attendance to testify at the January 16, 2008, Daubert hearing on Hasbro's motion to exclude Bowling's expert witness. See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993) (requiring the district court to act as a "gate-keeper" to determine whether the reasoning or methodology underlying expert testimony is scientifically valid and can be properly applied to the facts at issue). At the Daubert hearing, Hasbro ultimately decided not to call Sussman to testify, however, Bowling called him as a witness and he returned to testify on January 24, 2008. Hasbro maintains that Bowling is obligated under Fed. R. Civ. P. 26(b)(4)(C) to pay the expenses incurred as a result of Sussman's attendance on this second day of the Daubert hearing.

"Unless manifest injustice would result," Fed. R. Civ. P. 26(b)(4)(C) requires a party seeking expert discovery to pay the expert "a reasonable fee for time spent in responding to discovery . . . ." However, a Daubert hearing is not a discovery proceeding, "but an evidentiary hearing designed to screen expert testimony." Knight v. Kirby Inland Marine, Inc., 482 F.3d 347, 356 (5th Cir. 2007). Here, Hasbro requested and paid for Sussman's attendance on day one of the Daubert hearing and, irrespective of its decision not to call him as a witness, was clearly prepared to avail Bowling of the opportunity to cross-examine Sussman at Hasbro's expense.

Therefore, it would not be "manifestly unjust" to "saddle" Hasbro with fees associated with Sussman's testimony simply because he returned to testify for Bowling on a second day of the Daubert hearing. Moreover, because Daubert is a non-discovery proceeding, the requirements of Fed. R. Civ. P. 26(b)(4)(C) do not necessarily apply. Accordingly, Hasbro's motion for the payment of expert fees is denied.

As to Bowling's motion, he contends that Hasbro has failed to pay its expert witness fees totaling $2,590 incurred at the day-long deposition of Neil N. Lapidus ("Lapidus") on May 24, 2006. Hasbro maintains that because Lapidus did not prepare an invoice until nearly two years after his deposition, he never intended to charge for his appearance. For this reason, and for the time, effort and costs Hasbro incurred in deposing Lapidus, who was ultimately disqualified, it contends that it has no obligation to pay. These extenuating circumstances are not enough to convince this Court that it would be manifestly unjust under Fed. R. Civ. P. 26(b)(4)(C) to require Hasbro to pay the costs associated with Lapidus' deposition. Bowling is therefore awarded a total of $2,590 for the payment of reasonable fees owed to Neil N. Lapidus for his time spent during his deposition by Hasbro.

E. Hasbro's Appeal of Magistrate Judge Almond's Order Denying Leave to File a Motion to Compel.

In an order dated June 2, 2008, Magistrate Judge Almond denied for lack of good cause Hasbro's motion for leave to file a motion to compel Bowling to produce documents revealed in Bowling's post-trial motion for attorneys' fees. On such non-dispositive matters, the decision of the Magistrate Judge may be reversed only where it is shown to be "clearly erroneous or contrary to law." Esposito v. Home Depot U.S.A., Inc., 2007 WL 3237269 at *2 (D.R.I. Oct. 30, 2007). In this case, Hasbro maintains that certain documents, the existence of which was revealed through billing records attached as exhibits to Bowling's motion for attorneys' fees, are responsive to its discovery requests. Despite discovery having been closed for over two years, and the jury trial in this matter concluded, Hasbro asserts as a matter of law that Bowling's duty to supplement is on-going and that he should be ordered to produce those documents to Hasbro. See generally Fusco v. Gen. Motors Corp., 11 F.3d 259, 264-66 (1st Cir. 1993) (discussing circumstances under which the duty to supplement exists).

Although Bowling questions the responsiveness of the subject documents, he maintains that even if responsive, the documents, all notes and memoranda created and kept by Bowling's attorneys in anticipation of litigation, are subject to the attorney-client and

work product privileges.[12] Although these documents were not included in Bowling's privilege logs, this omission does not, as Hasbro contends, automatically render the privilege waived. This Court has an obligation to safeguard the virtually sacrosanct privacy of the attorney-client privilege, and absent evidence that Bowling deliberately concealed the existence of these documents, that privilege remains in effect. Here, the Court credits Bowling's assertion that the failure to include the documents was inadvertent. Thus, it would be futile to grant Hasbro's motion for leave to file a motion to compel, as there is nothing for Bowling to produce. Therefore, there was no error in the Magistrate Judge's Order.

It is so ordered.

WESmith

William E. Smith
United States District Judge
Date: 8/23/08

[12] The sought-after items also include a fax and videotape, both of which are either no longer in existence or are no longer in the possession of counsel for Bowling.